# Exhibit 2



HAUSFELD LLP

202.540.7200 ph
202.540.7201 fax

1700 K Street, NW
Suite 650
Washington, DC 20006

Michael D. Hausfeld

November 4, 2013

**BY HAND DELIVERY AND U.S. MAIL**

The Honorable John Z. Lee
United States District Court Judge
United States District Court for the
Northern District of Illinois
219 S. Dearborn Street
Chambers 1262
Chicago, IL 60604

        Re: *Arrington, et al. v. National Collegiate Athletic Association,* Master Docket No. 11-cv-06356

Dear Judge Lee:

    We serve as counsel for the class plaintiffs in the case of *Walker, et al. v. NCAA*, Case No. 1:13-cv-00293 (E.D. Tenn). *Walker* and *Arrington* both seek injunctive medical monitoring relief for NCAA football players due to the increased risk of latent brain injury associated with playing college football. However, the *Walker* litigation differs significantly from *Arrington* in that *Arrington* excludes older class members and class members from 32 states from medical monitoring relief.

    The purpose of this letter is to notify the Court that the anticipated November mediation between *Arrington* Plaintiffs and the NCAA, scheduled pursuant to the Court's Minute Order (Dkt. # 156), suffers from a fundamental Rule 23 adequacy defect. In *Walker*, the NCAA has agreed to mediate the class claims before retired U.S. District Judge Layn Phillips. That mediation is scheduled for February 2014. *Walker*, Dkt. # 41. At present, therefore, the NCAA has agreed to mediate medical monitoring issues in both *Walker* and *Arrington* (presently scheduled for November). Both mediations have been agreed to by the NCAA to occur before the same mediator.[1] *Arrington* counsel cannot fairly or adequately represent the members of the *Walker* class. This staggered schedule for mediation poses a potential substantial risk of conflict of interest infringing on the rights of class members if there was an effort to resolve all

---

[1] The *Walker* class plaintiffs have requested through Judge Phillips, who is also the mediator in *Arrington*, that the *Arrington* mediation and the *Walker* mediation be combined or scheduled simultaneously to allow for the divergent interests of medical monitoring class members to be fairly represented. The parties in *Arrington*, Plaintiff Arrington and Defendant NCAA, have denied that request.

HAUSFELD LLP

11/4/2013
Page 2

medical monitoring claims of all class members at one time without the representation of different sets of counsel.[2]

I. **Introduction**

*Arrington* counsel has repeatedly stated in pleadings filed in this Court, as well as in other federal courts, that for purposes of its class claim for medical monitoring it excludes:

- All NCAA football players who played NCAA football before 2004; and
- All NCAA football players who played in 32 states.

Dkt. # 175 at 2, 3, 20, 28. *Arrington* counsel has further argued that the medical monitoring claims of these class members lack merit.

Therefore, the unilateral representation by *Arrington* counsel at the scheduled November mediation of NCAA college football player class members who played before 2004, or who played in the 32 states excluded from the *Arrington* medical monitoring class, manifests an inadequacy of *Arrington* counsel and a conflict of interest they possess.

Rule 23 jurisprudence is clear that uncertified settlement classes require heightened judicial scrutiny, and that class settlement negotiations are improper where all divergent interests of class members are not represented. The jurisprudence teaches that all divergent interests must be represented "*before* the parties negotiate a final settlement," (*Manual for Complex Litigation Fourth*,§21.612 at p. 498 (emphasis added)), not *after* the final settlement.

It is for this reason that we believe it necessary to notify this Court of this situation, before prejudice to the *Walker* class members might occur. *Arrington* counsel has argued in papers filed in *Walker* that if the *Walker* plaintiffs believe that *Arrington* counsel cannot

---

[2] When non-parties have an interest in a potential resolution that may be achieved at mediation, this Court allows the non-parties to participate in mediation efforts. *See Zurich Capital Markets Inc. v. Coglianese*, 236 F.R.D. 379, 386 (N.D. Ill. 2006) ("the Court has invited the [non-party] Liquidator to participate in certain mediation efforts involving the underlying lawsuit," without requiring the non-party to first file a motion to intervene). Other courts also have allowed larger groups of non-parties to participate in settlement negotiations. *See Lowery v. Cnty. of Riley*, 04-3101-DWB, 2010 WL 1726735, *2 (D. Kan. Apr. 29, 2010) ("FAMI is not a party to this case and it participated in the mediation conference"; noting status as a party was neither required nor conferred by participation in mediation conference); *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1116-17 (9th Cir. 2002) (noting the Court stayed proceedings and suspended mediation "to allow a larger group to participate in settlement negotiations under the supervision of a magistrate judge.").

HAUSFELD LLP

11/4/2013
Page 3

adequately represent them, then the *Walker* plaintiffs should wait for *Arrington* counsel to negotiate a settlement and then object to the settlement once it is offered for review by this Court. *Walker*, Dkt. # 18 (Proposed Intervenors' Opp. to Plaintiffs' Motion to Suggest Consideration of Mediation on an Expedited Basis) at p. 2, 3.

Rule 23 jurisprudence and the *Manual on Complex Litigation* have precisely rejected this type of procedure. *Manual* at §21.612 at p. 498. The settlement negotiation process itself must fairly include and represent all the divergent interests of the class. *Id.* *Arrington* counsel cannot fairly represent the interests of class members when they have argued that their medical monitoring claims lack merit. *Walker*, Dkt. #19 (*Arrington* Plaintiffs' Reply in Support of Motion to Intervene) at p. 2, 4; *In re NCAA Concussion Litig.*, MDL Dkt. No. 2492 (Dkt. # 14) (Reply in Support of *Arrington* Plaintiffs' Motion to Transfer . . . (10/2/13) at p. 3 & n.6, p.4).

The *Arrington* docket does not indicate that these adequacy and conflict of interest issues were brought to this Court's attention at the time the Court ordered the mediation or at any time since then.

## II. Rule 23 Requires That Divergent Interests Must Be Adequately Represented in Any Negotiation of a Class Settlement.

The differences in the *Arrington* and *Walker* proposed medical monitoring classes underscore the *Arrington* counsel's conflict of interest and the necessity of including all interests in the injunctive medical monitoring relief to be present at any mediation session – whether in November 2013 or February 2014. While the *Walker* case seeks medical monitoring for a nationwide class of all living former NCAA college football players in all 50 states, the *Arrington* proposed class seeks medical monitoring only for college football players who played during the timeframe of 2004 to the present, and only for those who played in 18 states. *See Walker* Amended Complaint, Dkt. No. 4 at ¶ 10; *Arrington* Plaintiffs' Memo. in Support of Class Certification, Dkt. No. 175 at p. 20 & n. 76, 28. This enormous difference in scope of the medical monitoring classes affects tens of thousands of former NCAA football players; for example, all three of the class representatives in *Walker* are excluded from the *Arrington* medical monitoring class. A chart of the stark differences in scope between the *Walker* and *Arrington* medical monitoring class claims is illustrated below.

HAUSFELD LLP

11/4/2013
Page 4

|  | **Age of College Football Players Covered** | **College Football Players Covered** |
|---|---|---|
| *Walker* (E.D. Tenn.) | All living former college football players | Former players that reside in all 50 states |
| *Arrington* (N.D. Ill.) | Those that played from 2004-present | Past and current players that played in 18 states |

In excluding all NCAA football players that played prior to 2004, the *Arrington* case fails to seek relief for former college players aged approximately 33 years old and older – precisely the group who are at the greatest risk of progressing into debilitating brain injuries from concussions, as opposed to younger former players. According to a recent chronic traumatic encephalopathy (CTE) study conducted by the Boston University School of Medicine and the Sports Legacy Institute, college football players who are at risk of developing disabling brain disease often do not exhibit symptoms of such disease until 8 to 10 years after experiencing the chronic head injuries caused by playing football. A 2011 published paper explaining the incidence of CTE striking older former football players also found that CTE "has an insidious onset and gradual course" with a "mean age at onset [of] 42.8 years."[3] Thus, the scientific literature illustrates that college football players who played before 2004 – the players who are included in the *Walker* medical monitoring class – are precisely the former NCAA football players with the greatest and most immediate need for medical monitoring; yet they are excluded from the *Arrington* medical monitoring class.

The *Manual for Complex Litigation Fourth* clearly indicates that a class settlement, particularly where the class has not been certified through the adversarial process, involving only one set of counsel, runs the risk of excluding divergent and essential interests. According to the *Manual*, all of these divergent interests must be accommodated to achieve a valid settlement process:

> Settlement will also effectively terminate other pending individual and class actions subsumed in the certified settlement class. Divergent interests must be taken into account and fairly accommodated before the parties negotiate a final settlement.

---

[3] *See* A.C. McKee, *et al.*,"The Spectrum of Disease in Chronic Traumatic Encephalopathy," *Brain – A Journal of Neurology* (2012) at 1-2; B.E. Gavett, *et al.* "Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma," *Clin Sports Med.* (2011) at 183.

HAUSFELD LLP

11/4/2013
Page 5

*Manual* §21.612 at p. 498.

This fundamental principle is embodied in numerous cases. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 627-628 (U.S. 1997) (holding under Rule 23 that a settlement negotiation and global compromise with "no structural assurance of fair and adequate representation for the diverse groups" affected is impermissible); *Hesse v. Sprint Corp.*, 598 F.3d 581, 588-89 (9th Cir. 2010) (holding class plaintiffs cannot settle or release differing claims of other classes, because "[w]ithout adequate representation, a court order approving a claim preclusive class action settlement agreement cannot satisfy due process as to all members of the class."). This Circuit previously reversed the approval of a class action settlement when two other class actions with differing claims – and who were represented by different counsel – were absorbed into the settlement. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 285-86 (7th Cir. 2002).

A mediation on behalf of a class not certified through the adversarial process, carried out by one set of plaintiff's counsel who has excluded the interests of many class members – precisely the present structure of the November mediation in *Arrington* – runs afoul of these basic Rule 23 safeguards. *Arrington* counsel in several filed pleadings has attempted to justify its exclusions from its medical monitoring class. As set forth below, these justifications for exclusion are incorrect, but that is not the main problem – the main problem is that the interests of those excluded class members must be represented in any class settlement negotiation, including the November mediation, and *Arrington* counsel is unable to represent them now that they have argued that their medical monitoring claims lack merit.

Nevertheless, the *Arrington* purported justifications for the exclusions are incorrect. First, *Arrington* counsel attempt to exclude all NCAA football players who played before 2004 from their medical monitoring class because there was no "international consensus on sport concussion management" until 2004. *Walker*, Dkt. #19 (*Arrington* Plaintiffs' Reply in Support of Motion to Intervene) at p. 2, *In re NCAA Concussion Litig.*, MDL Dkt. No. 2492 (Dkt. 14) (Reply in Support of *Arrington* Plaintiffs' Motion to Transfer . . . (10/2/13) at p. 4). There is no requirement under the law of medical monitoring or under the law of contract (both pled in *Walker* and *Arrington*) that the plaintiff must prove an "international consensus." Rather medical monitoring law and contract law require a duty (or a promise), a breach, and a feasible remedy. *Walker* contends all of these elements can be readily proven for class members who played NCAA football *before* 2004.[4]

---

[4] *See, e.g.* "A Summary of Head and Neck Injuries in Collegiate Athletics Using the NCAA Injury Surveillance System," Randall W. Dick, ASTM STP 1229 Earl F. Hoener (Philadelphia 1994); Ch. 17 "Mild Head Injury in Sports: Neuropsychological Sequelae and Recovery of Function," J.T. Barth et al, published in H.S.Levin et al, Mild Head Injury Oxford Press (1989) at 265-272 (describing studies of brain injury in college football players from 1982-1986 done by University of Virginia scientists).

HAUSFELD LLP

11/4/2013
Page 6

      The *Arrington* counsel's purported justification for the exclusion from the medical monitoring class of NCAA former football players who played in 32 states is also incorrect. *Arrington* counsel argues in several federal court pleadings that exhaustive research shows that only 18 states allow for medical monitoring claims "in the absence of present physical injury." *Walker*, Dkt. #19 (Arrington Plaintiffs' Reply in Support of Motion to Intervene) at p. 2, 4 & n. 5, *In re NCAA Concussion Litig.*, MDL Dkt. No. 2492 (Dkt. 14) (Reply in Support of Arrington Plaintiffs' Motion to Transfer . . . (10/2/13) at p. 3, n.6), *In re NCAA Concussion Litig.*, MDL Dkt. No. 2492 (Dkt. 22) (Reply in Support of Arrington Plaintiffs' Motion to Transfer . . . (10/16/13) at p. 3, n.6). This justification ignores the fact that players who played in the 32 states excluded from the *Arrington* medical monitoring class not only have pled a medical monitoring claim, but also have pled a contract claim. There is no element of a contract claim that addresses whether a breach of contract plaintiff may or may not recover "in the absence of a physical injury." Furthermore, the excluded states do recognize medical monitoring in the *presence* of a physical injury[5] and it may be a disputed fact question whether concussions and repeated head trauma suffered by class members playing NCAA football is a physical injury.[6]

      Therefore, class members who played before 2004 and class members who played in the 32 states excluded by the *Arrington* medical monitoring class may obtain relief in the form of medical monitoring under numerous claims, so there is no reason to exclude them from the medical monitoring class. Most importantly, *Arrington* counsel who excluded them from its medical monitoring class are not adequate counsel to represent their interests in obtaining medical monitoring relief in any Rule 23 settlement negotiations, and they have manifested a conflict of interest documented in their filed pleadings. A copy of this letter has been served on all counsel in *Arrington* and *Walker*.

---

[5] *See, e.g., Hinton v Monsanto*, 813 So. 2d 827, 829 (Ala. 2001); *Carroll v. Litton Sys.*, 1990 U.S. Dist. LEXIS 16833, 276 (W.D.N.C. Oct. 29, 1990); *Alsteen v. Wauleco, Inc.*, 2011 WI App. 105, P9 (Wis. Ct. App. 2011); *Bostick v. St. Jude Med., Inc.*, 2004 U.S. Dist. LEXIS 29997, 44-45 (W.D. Tenn. Aug. 17, 2004).

[6] *Arrington's* counsel additional attempt to justify the exclusions from its medical monitoring class – because the class members excluded from the *Arrington* medical monitoring class are included in and/ or subsumed by the *Arrington* Rule 23(c) (4) "core issues" negligence class, (*In re NCAA Concussion Litig.*, MDL Dkt. No. 2492 (Dkt.# 14) (Reply in Support of Arrington Plaintiffs' Motion to Transfer . . . (10/2/13) at p. 4, *In re NCAA Concussion Litig.*, MDL Dkt. No. 2492 (Dkt. # 22) (Reply in Support of Arrington Plaintiffs' Motion to Transfer . . . (10/16/13) at p. 4) – similarly fails to address their manifest conflict of interest and inability to represent these excluded class members. In fact, the "core issues" class *also* excludes all NCAA football players who played before 2004 and does not provide the medical monitoring relief that the *Walker* class seeks for these class members. *Id.*

**HAUSFELD** LLP

11/4/2013
Page 7

Respectfully submitted,

Michael D. Hausfeld
Hausfeld LLP
*Counsel for Plaintiffs Chris Walker, Ben Martin and Dan Ahern*

cc: **BY ELECTRONIC MAIL**

*Plaintiffs' Counsel in Arrington, et al. v. NCAA*

Steve W. Berman
Elizabeth A Fegan
Daniel J. Kurowski
Thomas Ahlering
**Hagens Berman Sobol Shapiro LLP**

Joseph J. Siprut
**Siput PC**

*Plaintiffs' Counsel in Walker, et al. v. NCAA*

Richard S. Lewis
Mindy B. Pava
**Hausfeld LLP**

Renae Steiner
**Heins Mills & Olson, P.L.C.**

Gordon Ball
**Law Offices of Gordon Ball**

Mark J. Feinberg
Shawn D. Stuckey
**Zelle Hofmann Voelbel & Mason LLP**

Daniel S. Mason

HAUSFELD LLP

11/4/2013
Page 8

**Zelle Hofmann Voelbel & Mason LLP**

W. Mark Lanier
Eugene R. Egdorf
**The Lanier Law Firm**

Timothy J. McIlwain
**Timothy J. McIlwain, Attorney at Law, LLC**

Joseph J. DePalma
Steven J. Greenfogel
**Lite DePalma Greenberg, LLC**

Edgar D. Gankendorff
**Provosty & Gankendorff, LLC**

Charles S. Zimmerman
J. Gordon Rudd, Jr.
Brian C. Gudmundson
**Zimmerman Reed, PLLP**

*Counsel for Defendant NCAA*

Mark S. Mester
J. Christian Word
**Latham & Watkins, LLP**

C. Crews Townsend
Kyle W. Eiselstein
Roger W. Dickson
**Miller & Martin, PLLC**

www.hausfeldllp.com    WASHINGTON, D.C. / PHILADELPHIA / SAN FRANCISCO / LONDON