```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3  IN RE:  NATIONAL COLLEGIATE      )  Docket No. 13 C 9116
    ATHLETIC ASSOCIATION STUDENT-    )
 4  ATHLETE CONCUSSION INJURY        )  Chicago, Illinois
    LITIGATION,                      )  February 5, 2014
 5                                   )  10:00 o'clock a.m.

 6              TRANSCRIPT OF PROCEEDINGS - MOTION
                BEFORE THE HONORABLE JOHN Z. LEE
 7
    APPEARANCES:
 8
    For the Arrington Plaintiffs: HAGENS BERMAN SOBOL SHAPIRO, by
 9                                MS. ELIZABETH A. FEGAN
                                  1144 West Lake Street
10                                Suite 400
                                  Oak Park, Illinois 60301
11
                                  SIPRUT PC, by
12                                MS. MELANIE K. NELSON
                                  17 North State Street
13                                Suite 1600
                                  Chicago, Illinois 60602
14
    For the Walker and Morgan     HAUSFELD LLP, by
15  Plaintiffs:                   MR. RICHARD S. LEWIS
                                  1700 K Street NW
16                                Suite 650
                                  Washington, DC 20006
17
                                  LITE DePALMA GREENBERG, by
18                                MS. KATRINA CARROLL
                                  One South Dearborn Street
19                                21st Floor
                                  Chicago, Illinois 60603
20

21

22              ALEXANDRA ROTH, CSR, RPR
                   Official Court Reporter
23               219 South Dearborn Street
                         Room 1224
24               Chicago, Illinois 60604
                     (312) 408-5038
25
```

```
 1   APPEARANCES:   (Continued)

 2   For the Vanzant and          THE DEFEO LAW FIRM, by
     Washington Plaintiffs:       MR. DANIEL T. DeFEO
 3                                924 Main Street
                                  Lexington, Missouri 64067
 4
     For the Hudson Plaintiffs:   McCALLUM METHVIN & TERRELL, by
 5                                MR. JAMES MATTHEW STEPHENS
                                  2201 Arlington Avenue S
 6                                Birmingham, Alabama 35205
                                  (appearing via speaker-phone)
 7
     For Defendant NCAA:          LATHAM & WATKINS, by
 8                                MS. JOHANNA MARGARET SPELLMAN
                                  MR. MARK STEVEN MESTER
 9                                233 South Wacker Drive
                                  Suite 5800
10                                Chicago, Illinois 60606

11   For Proposed Intervenors     EDELSON PC, by
     Moore and Nichols:           MR. JAY EDELSON
12                                MR. ARI SCHARG
                                  350 North LaSalle Street
13                                Suite 1300
                                  Chicago, Illinois 60654
14

15

16

17

18

19

20

21

22

23

24

25
```

1     (Proceedings had in open court:)

2          THE CLERK:  13 C 9116, National Collegiate Athletic

3     Association Student-Athlete Concussion Injury, for motion

4     hearing.

5          MS. FEGAN:  Good morning, your Honor.  Elizabeth Fegan

6     for the Arrington plaintiffs.

7          MR. EDELSON:  Good morning, your Honor.  Jay Edelson

8     for proposed intervenors for Frank Moore and Anthony Nichols.

9          MR. SCHARG:  Good morning.  Ari Scharg also on behalf

10    of the proposed intervenor Frank Moore and Mr. Nichols.

11         MS. SPELLMAN:  Good morning, your Honor.  Johanna

12    Spellman and Mark Mester on behalf of defendants NCAA.

13         MR. LEWIS:  Good morning, your Honor.  Richard Lewis

14    for the Walker and Morgan plaintiffs.

15         MS. CARROLL:  Katrina Carroll also for the Walker and

16    Morgan plaintiffs.

17         MR. DeFEO:  And Daniel DeFeo for the Vanzant and

18    Washington plaintiffs.

19         MS. NELSON:  Melanie Nelson for the Arrington

20    plaintiffs.

21         MR. STEPHENS:  And this is Matt Stephens on the phone

22    for the Hudson plaintiffs.

23         THE COURT:  Good morning, everyone.

24         We are here on motion.  But actually the timing was

25    apropos.  As you all know, the last of the original cases that

1    were before the MDL and the petition, for lack of a better

2    word, for consolidation and transfer, the last case was finally

3    transferred to our court and hit our docket in the last week or

4    so.  And I wanted to wait until at least the original cases all

5    came here before we proceeded with the matter in any general

6    matter.

7          I have and what will be going out today is a case

8    management order No. 1, probably the first of many.  But the

9    case management order sets forth the date of the initial

10    pretrial conference as well as some basic procedures with

11    regard to the handling of this MDL litigation, as well as some

12    time frames for the Court to consider the appointment of

13    liaison counsel and lead counsels for the plaintiff.  At this

14    point it's the Court's intention to appoint two counsel, two

15    attorneys, as lead counsel.  But that will be -- and I set

16    forth the schedule of how that determination will be made.

17    Hopefully there will be some sort of consensus.  But if not,

18    then I will have to decide that.

19          But basically that's all by way of preface to let you

20    know that the order should be hitting the docket today.  I

21    actually hoped it would hit the docket before -- well, early

22    this morning.  But due to various commute issues that wasn't

23    done.  So in any rate, you can anticipate that.

24          With regard to the --

25          MS. FEGAN:  Your Honor, Elizabeth Fegan.

1       On October 19, 2011, this Court already considered the

2  Rule 23(g) issues and appointed interim class counsel.  We have

3  already invested over 3,000 hours in this case, hundreds of

4  thousands of dollars in expert costs.  Both Hagens Berman as

5  well as Siprut are already appointed under the Rule 23(g) as an

6  interim class counsel.

7       THE COURT:  No, I understand that.  And that was with

8  regard to the Arrington matter.  And that's certainly something

9  that the Court will consider and that you can raise if that's

10 something I need to consider and raise.  Hopefully, like I

11 said, the plaintiffs can come to some sort of consensus or

12 agreement as to who those people would be.  But if not, the

13 case management order sets forth the procedure by which the

14 Court can appoint lead counsel in that regard.  And as I said,

15 you can raise those issues as part of that process if you need

16 to.

17      The date that I set for the initial pretrial

18 conference was, or is rather, March 5 at 2:00 p.m.  I thought

19 setting it at 2:00 would give maximum opportunity for people

20 who are out of town to come into town if they so wish.  Also

21 people can anticipate by phone if they wish as well.  And

22 that's all set forth in the case management order.

23      I'll also let you know that the reason why I set that

24 date is that Magistrate Judge Brown also will be in attendance

25 so that she can observe those proceedings.  Okay.

1          So that being said, so that's all by way of preface.

2   What brings us here today is the Walker and Morgan plaintiffs'

3   motion to temporarily enjoin the ongoing Arrington medical

4   monitoring class action negotiations with defendant NCAA.

5   There are also a spat of joinder motions.  The joinder motions

6   are granted to the extent that they have been filed.

7          The motion to file excess pages is also granted up to

8   25 pages.  But that really brings us to the main question,

9   which is, what is the status of that mediation process?

10          MS. FEGAN:  Your Honor, we have engaged and retained

11   Honorable Layn Phillips, who is a retired federal Judge, as a

12   mediator.  We have had multiple in-person sessions both with

13   the NCAA and Judge Phillips as well as with counsel for the

14   insurers.  We have made significant progress.

15          MR. MESTER:  Your Honor, we have another session --

16   session coming up that's been not easy to schedule in part

17   because of all the carriers that are involved and their

18   counsel.  But we agree with Ms. Fegan.  We made substantial

19   progress.

20          THE COURT:  When is the next scheduled --

21          MR. MESTER:  It's tomorrow in New York.

22          THE COURT:  All right.

23          MS. FEGAN:  Your Honor, may I?

24          THE COURT:  Yes.

25          MS. FEGAN:  I would suggest that in -- there is no

1  emergency here.  Rule 23 protects all of the class members in

2  the event of a settlement.  Rule 23 will require us to present

3  to this Court a motion for preliminary approval, which of

4  course all of these counsel can participate.

5       But more importantly to all the class members out

6  there, Rule 23 provides a process by which notice will be given

7  to all of the class members, so they will have the opportunity

8  to consider any settlement.

9       They will then have the opportunity to do one of three

10  things:  They can object to the settlement, which I assume this

11  is kind of a preliminary objection process that counsel is

12  trying to engage in.

13       But two, they will have the opportunity to exclude

14  themselves from any settlement.  And that opportunity is really

15  critical here because if individual players believe or former

16  or current NCAA student athletes believe that the settlement

17  somehow impinges on their rights or that they could do better

18  or get more, for example, they will have the opportunity to

19  exclude themselves from the settlement and pursue those

20  actions.

21       So Rule 23 has already built in a process by which

22  these very issues will be considered.  It is really premature

23  at this point to consider those issues when there is no

24  settlement before the Court, one; and two, where counsel has

25  not even attempted to meet the standards for any injunction.

1    And under the threshold phase, which I know this Court

2    is very familiar with, there is three prongs:  One, there must

3    be a likelihood of success on the merits.  Two, there must be

4    irreparable harm.  And three, the traditional legal remedy must

5    be inadequate.

6    So starting there with the traditional legal remedy,

7    Rule 23 already has in place a process by which these issues

8    will be decided if -- if we reach a settlement.  But two, there

9    is no likelihood of success on the merits here for the movants.

10   That would require this Court to enter a mandatory injunction

11   requiring the NCAA to negotiate with someone else, with folks

12   who have not been in this case for three years, have not

13   invested the time and completed merits discovery, and filed a

14   motion for preliminary -- or for class certification together

15   with hundred pages of facts.

16   And so while they call it a temporary injunction or

17   asking you to temporarily enjoin the negotiations, they're

18   really asking for a mandatory injunction that requires specific

19   performance.

20   THE COURT:  Counsel, why aren't the safeguards of Rule

21   23 sufficient?

22   MR. LEWIS:  Your Honor, Richard Lewis for the -- for

23   Walker and Morgan.  If I could response to that.

24   Your Honor, I think the issue is Rule 23 safeguards.

25   And Rule 23 safeguards, as made clear by Amchem and the cases

1    in our briefs, don't start after the settlement is reached.

2    They particularly apply to the settlement process.

3         And here we have an uncertified class that has not

4    been subject to the adversary process, that has not been

5    subject to judicial review.  Amchem makes clear there is a

6    heightened standard of review by the Court over a settlement

7    when there is an uncertified class.  And it makes clear that

8    there needs to be structural protections in the negotiation

9    process itself.

10         It is too late after parties make a deal where the

11    significant divergent interests of the class have not been

12    represented.  In this case --

13         THE COURT:  So let me ask you this:  What are the

14    significant divergent interests of the class?

15         MR. LEWIS:  Thank you, your Honor.  There are two

16    specific divergent interests that are not represented by

17    Arrington counsel, according to Arrington counsel's own motion

18    for class certification.

19         When Arrington counsel moved for class cert, they took

20    their 50-state class that represented all living -- our

21    concerns is college football players, not the other sports.

22    And they narrowed it.  And they said, we're only going to

23    represent people who played from 2004 to present.  And we're

24    only going to seek certification for people who played in 18

25    states.

1    So they eliminated hundreds of thousands of former

2  college football players.  And most interestingly, the ones who

3  have the greatest need for this medical monitoring, as is clear

4  from Dr. Stern's affidavit attached to our papers, the former

5  football players at greater risk are the ones now in their 30s,

6  40s and 50s.  That's what the research shows.

7    THE COURT:  My question, I guess, with regard to that

8  is, if the class is so defined and your class or those people,

9  individuals, aren't part of that class, why can't they pursue

10  their -- hold on.  Let me get this question out, and then you

11  can answer it.

12    Why can't they pursue their own negotiations and their

13  own settlement and protect their own interests with regard to

14  the NCAA?

15    MR. LEWIS:  Thank you, your Honor.

16    MR. MESTER:  Your Honor, that -- I'm sorry.  That

17  actually is the issue.  We talked a lot about the procedure.

18  We talked a little substance.

19    From my clients' perspective, our interest in

20  settlement is to resolve the class claims once and for all.  We

21  know darn well if we don't have an expansive class that covers

22  all sports and all the time periods and all jurisdictions, we

23  won't get peace.  Our interest is to get peace.

24    We don't think these classes could be certified on a

25  contested basis.  But from a settlement perspective, as we said

1　in the memorandum we submitted on the motion to intervene, the

2　only basis on which the NCA is going to settle is all sports

3　for all times and all jurisdictions.  And that's been precisely

4　what's been discussed every mediation session we've had. that's

5　the only way we'll settle.

6　　　　　So in that sense, your Honor, from a substantive

7　perspective, the two constituencies that Mr. Lewis indicates he

8　is concerned about will be covered, will be eligible for

9　medical monitoring, just like everyone else.  And if they

10　weren't, the NCA wouldn't enter into settlement because it

11　wouldn't achieve its purpose.

12　　　　　MS. FEGAN:  And I think what's real clear here is --

13　to us is that we have not abandoned anyone.  Our second amended

14　complaint, which is the operative pleading and which the NCAA

15　has said multiple times before the panel and others that it's

16　operative pleading, is unlimited in sports.  It's not limited

17　to football players, and it's unlimited in time.

18　　　　　But what we had to do when we presented our best

19　effort to this Court on a contested motion for class

20　certification was put first our best foot forward, which is

21　exactly what counsel for the Morgan plaintiffs has previously

22　done.  In fact, there is a case called Prempro, in which

23　counsel for the Morgan plaintiffs presented to the Court a very

24　narrowed 24-state medical monitoring class.

25　　　　　And there they explained why -- in their briefs, why

1  they did that:  Because they were trying to get and exclude

2  from a liability perspective those states where it would be

3  difficult to get medical monitoring and narrow it to their

4  strongest states.

5        And so they did in the liability context exactly what

6  we did here in the liability context.  That being said, your

7  Honor, in our motion for class certification, we did not

8  exclude the non-18 state plaintiffs.  In fact, we did a

9  50-state core issue class, because the Seventh Circuit

10  recognizes that even were this Court not able to provide

11  damages or money remedies to a full class, it could still deal

12  with the issues of duty and breach by the NCAA.

13        And so we made sure that we put forth the strongest

14  liability case we could, but did not amend our second amended

15  complaint, as sometimes people do at the motion for class cert

16  stage, to ensure that the statute of limitations were still

17  tolled as to the remainder, knowing that if the NCAA ever

18  decided to talk it would want to talk about the whole.

19        That being said --

20        THE COURT:  Let me ask you this, counsel:  Then

21  assuming that a settlement is reached with the NCAA and outside

22  the context of the MDL, let's focus on the Arrington case.

23  Okay?  So assuming that the Arrington plaintiffs were able to

24  negotiate a settlement for the NCAA, then for certification

25  purposes would the class then be modified to be more expansive

1    than the class as originally proposed by the Arrington

2    plaintiffs?

3              MS. FEGAN:  The class will reflect the definition in

4    our second amended complaint, be consistent with that class

5    definition, which is all current and former student athletes at

6    the NCAA, not limited by sport and not limited in time.

7              THE COURT:  So I guess the answer to my question then

8    is, yes.  Then the class definition would be different and

9    broader than the class that was proposed by the Arrington

10   plaintiffs as part of the class certification.

11             MS. FEGAN:  Yes.

12             MR. LEWIS:  Your Honor, Richard Lewis.  May I be heard

13   on this?  Thank you, your Honor.

14             I think counsel for the Arrington parties have

15   demonstrated my point.  The NCAA has made clear that they're

16   only going to negotiate for the global class of living football

17   players, which includes, which explicitly includes, the older

18   players who played 2000 -- before 2004, and specifically

19   includes all 50 states, including the 32 excluded by the

20   Arrington class definition.

21             The case law makes clear that when an intra-class

22   conflict is fundamental -- and nothing could be more

23   fundamental here because this is a medical monitoring case.

24   The 23(c)(4) class that counsel refers to provides no relief

25   whatsoever.  It seeks a declaratory judgment on negligence.

1        We're trying to get relief.  We're trying to get

2   medical testing for the older players now before it's too late.

3   We don't want to be put in the back of the line or told that we

4   are not the best foot to put forward.  We believe the NCAA is

5   only going to sit down to negotiate settlement once.  And under

6   Amchem, those older players must have adequate representation

7   at the table, not afterwards, to file an objection about what

8   might have happened if they did have adequate representation.

9        Arrington counsel in federal pleadings has said that

10   the claims of the former players, who played before 2004, lack

11   merit.  They can't go into negotiation and represent the same

12   clients who they say their claims lack merit.  They had a class

13   representative, Mr. Turner, who played before 2004.  They

14   dropped him when they moved for class cert.

15        MS. FEGAN:  That's incorrect.

16        THE COURT:  Counsel, let's -- they are kind of

17   chomping at the bit.

18        Yes, go ahead.

19        MR. MESTER:  Your Honor, there isn't a conflict.  The

20   settlement is being negotiated with all medical -- all athletes

21   will be eligible for medical monitoring.  There is no

22   discrimination.  There is none of the things that Mr. Lewis --

23        THE COURT:  So all athletes regardless of when they

24   played.

25        MR. MESTER:  Exactly right, your Honor.  And if the

1  Court has any questions with regard to that, I am sure Judge

2  Phillips will be happy to confirm that.  That is absolutely

3  what we negotiate from the outset in this litigation.

4         So the purported conflict that Mr. Lewis keeps

5  referring to simply doesn't exist.  There is no need for anyone

6  else at the table because these athletes will be fully

7  represented and adequately represented.

8         MR. EDELSON:  Your Honor, I'm sorry.  I didn't mean

9  to --

10         THE COURT:  Go ahead.

11         MR. EDELSON:  I felt I had to say something.  The --

12  we haven't talked at all about the real claims here, which is

13  the personal injury claims.

14         THE COURT:  We are getting to that, I'm sure.  I am

15  sure we are going to get to that.

16         MR. EDELSON:  But the idea that there is someone at

17  the table who is bargaining for rights of the personal injury

18  class -- class members is -- is, with respect --

19         THE COURT:  I think that that's -- but I think that's

20  specifically what they are not doing.

21         MR. EDELSON:  Your Honor, they are.  If you read their

22  brief, so it's been difficult, because --

23         THE COURT:  Well, let's try to clarify that now, to

24  the extent one can.  I realize this is a public forum.  I don't

25  want to get too involved into the nuances, the minutia, of

1    those discussions, at least at this point in time.

2            But let me ask you this:  With regard to the

3    settlement or as intended, what happens to the monetary claims,

4    the personal injury claims?

5            MR. MESTER:  Those are preserved, your Honor.  They

6    are not being resolved on a class basis.  Those preserved.

7            MR. EDELSON:  That --

8            MR. MESTER:  May I finish?

9            So class members will have the right to pursue those

10   claims to the extent they feel that they -- that they want to

11   or need to, and that they will not be affected by the

12   settlement.

13           THE COURT:  Does that answer your question?

14           MR. EDELSON:  Well, they've been very slippery.  Can I

15   just ask a clarification?

16           What -- my understanding, based on their papers, is --

17   is that the -- that the class members will be releasing the

18   right to bring class personal injury claims.  If that's true,

19   that affects it.  If not, if they changed their mind and there

20   will be no effect and everyone can move forward, then I can

21   step down and I don't have to keep speaking.

22           THE COURT:  Well, I presume -- and perhaps I shouldn't

23   but I presume that when you say that the class members would

24   be -- that their monetary claims would be preserved is that

25   those monetary claims can themselves, if the Court will certify

1    them, be certified in a class matter.

2           MR. MESTER:  One of the elements of settlement, your

3    Honor, they would need to be pursued on an individual basis,

4    not on a class basis.  And, your Honor, I will be very candid.

5    The reason for that, we don't think those claims are properly

6    certifiable in the first place under Amchem.

7           MR. EDELSON:  How can they negotiate --

8           THE COURT:  Hold on.  Okay.

9           So with regard to the Walker plaintiffs, what is the

10   release that you are seeking in your motion?

11          MR. LEWIS:  Your Honor, with regard to the Walker and

12   Morgan plaintiffs and the joinder motions, we seek specific

13   representation in the negotiation for players who -- football

14   players, NCAA football players, who played prior to 2004, and

15   NCAA football players to played in the 32 states.  Both of

16   those subgroups are excluded by the Arrington medical

17   monitoring class motion.

18          And after the motion, when challenged, they defended

19   their exclusion and said they were right on the merits because

20   there was no consensus about concussion management before 2004,

21   so we should exclude them. And because medical monitoring law

22   doesn't recognize this claim in 32 states, so we should exclude

23   the other group of hundreds of thousands of football players.

24          Both of those groups cannot be adequately represented

25   by the very lawyers who have stated in their own pleadings that

1   their claims lack merit, and then they dropped the class rep

2   who stood for that claim.

3          THE COURT:  Mr. Lewis, let me ask you this:  How

4   extensive of talks have you had with Hagens Berman with regard

5   to this process?  Has that discussion been ongoing?

6          MR. LEWIS:  Your Honor, let me -- let me address that.

7   We have made specific efforts to first speak to the mediator.

8          THE COURT:  Okay.  That's not my question.  My

9   question --

10         MR. LEWIS:  We have not had a direct conversation with

11  Hagens Berman.  They have said repeatedly in their papers that

12  we are copycat lawyers who have nothing to offer the class, and

13  that our case should be dismissed, and we should be thrown out

14  of this litigation.  So that was not an invitation to us to try

15  and confer and reach an agreement.

16         MS. FEGAN:  If I could speak to that.  Rather than

17  reaching out to us about their concerns, they filed a

18  complaint.  They were the first on file in the Eastern District

19  of Tennessee in September of last year, of 2013.  On the day

20  that they filed their complaint, they filed a motion for

21  appointment as lead counsel before the Eastern District of

22  Tennessee.

23         So rather than coming to us or coming to this Court or

24  to the NCAA, frankly, and voicing concerns, they tried to pull

25  a fast one.  In fact, they filed their motion for appointment

1     of lead counsel before summons had even issued to NCAA.

2              So we immediately, rather than have this duel, we

3     immediately sought to intervene there so that we could

4     participate in whatever discussions were going on.  But they've

5     never attempted -- in fact, they called the mediator to ask for

6     information multiple times.  It's been a very bizarre process.

7              That being said, your Honor, I would like to clarify

8     couple things.  Mr. Turner was not dropped at the time of our

9     motion for class certification.  He was a plaintiff that was in

10    very early and disappeared.  So there was a point in time when

11    he did not want to be involved, which is a different issue than

12    the nefarious accusations that are being made at this point.

13             But I certainly think there is a contradiction in what

14    they're saying because they're saying that there has been no

15    adversarial process in the context of the class motion.  And

16    yet it's the class motion on which they are trying to hang

17    their hat.

18             So I think looking at the full record here, the second

19    amended complaint is clearly the complaint at issue.  It's the

20    complaint on which full merits discovery was completed.  And we

21    did exactly what their firm has done multiple times in seeking

22    a narrowed class at the time of the class motion.

23             The Third Circuit did touch on this, and I just want

24    to bring this to the Court's attention.  In Sullivan versus DB

25    Investments, it was an antitrust case.  And there it involves

1    indirect purchaser states, where there is only a limited number

2    of indirect purchaser states where indirect purchasers can

3    bring antitrust actions.

4           But there the plaintiffs settled a 50-state class

5    because at some point the defendant wanted global resolution

6    and peace.  And the objectors came in and said, oh, no, you

7    can't do that.  You can't go from this more narrowed class to a

8    broader class.

9           And the Third Circuit in a very, very considered

10   opinion and long opinion said, no, that's not right, because

11   the consideration of the settlement class is different than

12   consideration of the litigation class.  And there the Third

13   Circuit fully analyzed the reasons why a defendant would want

14   to when it sat down sit down not with multiple different pieces

15   and multiple different people but sit down in one place and

16   achieve global peace.

17          So I would ask that the Court consider that opinion.

18          THE COURT:  Let me ask the NCAA this:  And I am sorry,

19   your name is again?

20          MR. MESTER:  Mark Mester, your Honor.

21          THE COURT:  You said that the next mediation

22   settlement is tomorrow.

23          MR. MESTER:  Yes, your Honor.

24          THE COURT:  And that it was difficult to schedule.  Is

25   there any particular reason it has to be tomorrow?

1          MR. MESTER:  Really, your Honor, difficulty in

2     scheduling.  Judge Phillips' schedule is quite tight.  So we

3     had difficulty getting time from him.  And his assistant Ms.

4     Sperber who has been working with us.  And then the other issue

5     is the multitude of carriers and their counsel, all of whom

6     will be present for this, and their schedules.  These are not

7     easy things to get scheduled.

8          THE COURT:  All right.  The reason being is that it

9     seems to me that it would be very valuable for the respective

10    plaintiffs' counsel to get together and to at least start

11    talking about what has been going on in the mediation, and to

12    try to get that dialogue going, particularly given my

13    inclination to appoint two lead counsel in this case.  I think

14    that providing the various attorneys who represent their

15    plaintiffs in various putative classes to start talking about

16    how they want to pursue this case, how they think this case

17    should be outlined, including the mediation, the status of the

18    mediation, how the mediation should go and those issues, and

19    give them room to do that, I think would be very beneficial.

20    And actually that's what my order provides for counsel to have

21    those discussions.

22          Yes?

23          MS. FEGAN:  You know, my only concern, one of my

24    concerns, is that we are under a confidentiality agreement, and

25    our discussions have been pursuant to Rule 408.  And --

1    THE COURT:  Well, given the fact that -- well, let me

2  ask the NCAA this:  Given the fact you have all these other

3  pending cases against you, do you have any objections to

4  plaintiff at least sharing -- plaintiffs' counsel amongst

5  counsel in this case of record sharing what's the development

6  of the mediation process?

7    MR. MESTER:  Your Honor, we have no objection provided

8  that too is covered by Rule 408.  I would say, though, that we

9  have spent a lot of time and effort negotiating with the Berman

10  firm and the Siprut firm.  We have some momentum.  I think

11  bringing someone in as a full-fledged negotiator at this point

12  very late in the day would be -- would be disruptive.  I think

13  it would make settlement frankly less likely.  But --

14    THE COURT:  I would also say that it might also make

15  the path to settle, the finalization and approval of

16  settlement, a bit smoother, right?  And so you have to weigh

17  that as well.  It's one thing to strike a proposed deal.  It's

18  another thing to get the deal approved.

19    MR. MESTER:  Understood, your Honor.

20    THE COURT:  So I take it that -- I understand that

21  there was a lot of effort to try to get tomorrow's date

22  scheduled.  But I take it there is no particular deadline or

23  time pressures why it has to be tomorrow versus sometime later

24  in the future?

25    MS. FEGAN:  Your Honor, I think -- well, I just would

1  say that we paid $48,000 to secure Judge Phillips' time and

2  that's nonrefundable.  That's going forward.  There is people

3  in the air as we speak.  I think that there is probably more

4  than 20 lawyers in there as we speak going to New York.

5  Significant costs and time.

6          And so, you know, it's -- I think the other urgency

7  here, to the extent that there is urgency, is really just in

8  that, you know, this case, while they filed so late, it really

9  should not start over from the beginning.

10          THE COURT:  It's not going to start over from the

11  beginning.  I can tell you that right now.  I mean, one of the

12  reasons why the JMDL sent it here was precisely because of the

13  developments in the Arrington case.  And certainly to the

14  extent that there has been discovery done in Arrington and what

15  not, my anticipation is the parties use that discovery to the

16  fullest extent possible and not duplicate anything that's

17  already been done.  I think that is consistent with the MDL

18  order and why it was transferred here in the first place.

19          So I have no intentions of starting over from the

20  beginning.  Okay?

21          MS. FEGAN:  Your Honor, may I make one more point

22  about tomorrow?  I don't think -- I could be wrong and I think

23  there are some carriers' counsel in the room.  I don't think we

24  are going to reach final agreement tomorrow.  But I think to

25  stop the process and to have the carriers walk away and think

1   that, you know, we're going back or the machine is working

2   backwards I think would be very detrimental to ultimately what

3   everybody is seeking in this room, which is a medical

4   monitoring class that's going to provide very real and valid

5   relief to the student athletes.

6          So I do ask for that reason that it go forward.  And

7   we will, as you have suggested, be in touch and figure out a

8   way to have meaningful talks with co-counsel.

9          THE COURT:  Is it scheduled just for the day?  How

10  long?

11         MS. FEGAN:  Two days.

12         MR. MESTER:  Two days.

13         THE COURT:  Two days?

14         MR. LEWIS:  May I be heard on this?

15         THE COURT:  Briefly, Mr. Lewis.

16         MR. LEWIS:  Yes, your Honor.  Of course, we are

17  available to immediately confer with other plaintiffs' counsel

18  or defense counsel.  We will do that.

19         We did bring this problem to the Court's attention in

20  a letter in November.  And in early November this Court asked

21  counsel if the Tennessee folks -- there is a transcript

22  attached to the NCAA opposition to our motion, where counsel

23  was asked if the Tennessee folks were going to be part of the

24  ongoing mediation.  And the answer from Arrington counsel was,

25  only Arrington counsel are involved.

1           But the fundamental question is not about the lawyers.

2   It's about representation of the Tennessee plaintiffs and the

3   interest they represent, which is the players before 2004 and

4   in the other 32 states.  We have not been part of the process.

5   We brought this problem to this Court's attention in early

6   November.  We've been excluded since that time.

7           And under the adequacy requirements of Amchem, this is

8   a fundamental intra-class conflict.  And I really think that

9   for these -- this mediation to be success, it has to deal with

10  that.  And -- and sweeping it under the rug or pushing it off I

11  don't thinks is going to help.

12          THE COURT:  What I am hearing, though, is that the

13  settlement that at least currently is contemplated would

14  address all of those people and the proposed settlement class

15  that -- and I say proposed because it has to be certified,

16  obviously, by the Court -- would include those people.  So if

17  that is counsel's intent, then Hagens Berman is basically

18  representing all of those putative -- potential putative class

19  members and the class members that they set forth in their

20  amended complaint.

21          MS. FEGAN:  That's right, your Honor.  And Amchem

22  deals with the situation where you have personal injury

23  claimants and claimants who are seeking property damage or

24  future injury, all from the same pot.  That's not what we are

25  doing here.  So there is no intra-class conflict.  We are

1   treating all of the players, whether they are football or

2   Lacrosse or wrestling -- there is multiple concussion-type

3   sports -- exactly the same, because they all deserve the type

4   of medical monitoring relief that we're seeking.

5           THE COURT:  Okay.  Very well.  This is what we are

6   going to do.  With regard to the mediation that's scheduled for

7   tomorrow, you can go ahead and proceed, particularly given the

8   fact that counsel states that the prospects of it being the

9   final session or there being a final deal struck is not very

10  likely.  But I think that that momentum would be helpful.

11          With regard to the Walker and Morgan plaintiffs'

12  motion for temporary -- for a TRO basically for a seat at the

13  table and participation in the mediation process, I am going to

14  provide the NCAA and the Arrington plaintiffs and anyone else

15  frankly that wants to respond an opportunity to respond to the

16  motion.

17          So today is the 5th.  I do want to take it up in short

18  order and actually want to take it up as part of the initial

19  pretrial conference on the 5th, so we can get it all wrapped

20  up.  So how much time do you need to respond?

21          MS. FEGAN:  14 days?

22          THE COURT:  That's fine.  You said 14.  I'll agree.

23  So February 19 should be the response date.  Okay.

24          Any reply, you don't have to file a reply.  I am

25  feeling you won't need it.  But if you are going to file one,

1    you should file one by the 26th, and I will limit that to five

2    pages.

3            MR. LEWIS:  Thank you, your Honor.

4            THE COURT:  Okay.  And as I said, we will take this up

5    as part of the initial pretrial conference.

6            MS. FEGAN:  May I ask just now just for housekeeping

7    matter, could we have the same 25 pages response?

8            THE COURT:  Yes, I thought that was the agreement.

9    But, yes, you may.

10           MS. FEGAN:  Thank you.

11           THE COURT:  And to the extent that the -- I guess I

12   prefer just as a matter of my review, a consolidated response,

13   but I recognize that might be slightly awkward.  So I will let

14   you use your own best judgment with regard to that.  But

15   perhaps if you could try not to repeat any arguments, that

16   would be helpful.

17           MS. FEGAN:  Thank you.

18           THE COURT:  There is no need to actually use all 25

19   pages.

20           MR. MESTER:  Understood, your Honor.

21           THE COURT:  In the meantime, prior to -- as I said,

22   the case management order No. 1 will go out today.  It does

23   order plaintiffs' counsel, all of plaintiffs' counsel, to meet

24   and to confer about a number of issues, including the

25   settlement process, okay, as well as, as I said, sets forth a

1  procedure by which the Court can appoint lead counsel.  I will

2  say this, as I said, the Court at this point anticipates two.

3  However, if the plaintiffs agree that there might be a

4  different format that might work better, that's something that

5  I would also consider.

6      MR. LEWIS:  Your Honor, one request for clarification.

7  On the confidential 408 settlement materials, do I understand

8  that we can have access to any documents or written materials

9  that are being used in those confidential 408 settlement

10 negotiations, as long as we agree to treat them under 408 as

11 confidential?

12     THE COURT:  I guess, I am going to leave -- with

13 regard to that, I am not going to give you the right to access

14 it.  You can certainly request it.  And I think that it is

15 probably in the interests of Hagens Berman and the NCAA to

16 provide some sort of disclosures to the extent it might be

17 helpful in the discussions, because obviously to the extent

18 that people are appointed as lead counsel, the next question

19 is, will all lead counsel be able to participate in the

20 mediation?  At this point the inclination is probably yes.

21 Okay.  So keep that in mind as you go forward.

22     As I said, the reason is that you are going to -- if

23 there is a proposed settlement, you are going to have to deal

24 with whatever concern the rest of the class has sooner rather

25 than later.  So in my estimation, Judge Phillips probably

1    agrees, probably sooner is better.

2              So that's my ruling on that.  So, no, you don't have

3    the right to it.  But I certainly anticipate that's part of the

4    process to the extent that that documentation might be helpful

5    in those discussions, that the parties can come so some sort of

6    agreement as to that.

7              MR. LEWIS:  Thank you, your Honor.

8              THE COURT:  Okay.  All right.  Is there anything else

9    that we need to address today?

10             MS. FEGAN:  That's all.

11             THE COURT:  Very good.  Thank you.

12             MR. EDELSON:  I'm sorry, your Honor.  I thought you

13   were going to get to our intervention.  We are just not sure

14   where our place is here.

15             THE COURT:  I am giving some thought to that.  You can

16   participate in the initial pretrial conference.  As far as the

17   motion for intervention, that's something that I am going to

18   deal with and I will deal with as part of the case management

19   order that comes out today.

20             MR. EDELSON:  Your Honor, if it's okay, we'd like to

21   also participate in the briefing of this issue.

22             THE COURT:  That's not necessary.  I will have more

23   than sufficient briefs on the issue.

24             MR. EDELSON:  Well --

25             THE COURT:  The answer is no.

1     MR. EDELSON: Thank you, your Honor.

2     THE COURT: Very good. Thank you.

3     MS. FEGAN: Thank you.

4   (Which were all the proceedings had at the hearing of the

5    within cause on the day and date hereof.)

6           CERTIFICATE

7     I HEREBY CERTIFY that the foregoing is a true, correct

8 and complete transcript of the proceedings had at the hearing

9 of the aforementioned cause on the day and date hereof.

10

11 /s/Alexandra Roth         2/6/2014

12 ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   Official Court Reporter      Date
   U.S. District Court

13 Northern District of Illinois
   Eastern Division

14

15

16

17

18

19

20

21

22

23

24

25