IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| *In re: National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation* | Case No: 13-cv-9116 <br> MDL No. 2492 <br><br> Hon. John Z. Lee |
| [This Document Relates to all cases] | Magistrate Judge Brown |

**PLAINTIFF NICHOLS' MOTION TO APPOINT JAY EDELSON
AS LEAD COUNSEL OF THE CLASS PERSONAL INJURY CLAIMS**

**Respectfully submitted by**:

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

| | | |
|---|---|---|
| Robert A. Clifford <br> Shannon M. McNulty <br> CLIFFORD LAW OFFICES, P.C. <br> 120 N. LaSalle Street, Suite 3100 <br> Chicago, Illinois 60602 <br> Tel: 312.899.909 | Brian W. Coffman <br> COFFMAN LAW OFFICES <br> 2615 North Sheffield Avenue <br> Chicago, Illinois 60614 <br> Tel: 773.348.1295 | Richard R. Gordon <br> GORDON LAW OFFICES, Ltd. <br> 211 West Wacker Drive, Suite <br> Chicago, Illinois 60606 <br> Tel: 312.332.5200 |
| Steven K. Mamat <br> STEVEN MAMAT, PLLC <br> 302 S. Main St., Suite 202 <br> Royal Oak, Michigan 48067 <br> Tel: 248.548.1009 | Samuel M. Lasser <br> LAW OFFICE OF SAMUEL LASSER <br> 1934 Divisadero St. <br> San Francisco, California 94115 <br> Tel: 415.994.9930 | |

I.  **INTRODUCTION**

Pursuant to the Court's Case Management Order No. 1 (Dkt. 15, ¶ 11) and Federal Rule of Civil Procedure 23(g), Plaintiff Anthony Nichols[1] respectfully moves for the appointment of his counsel, Jay Edelson ("Edelson") of Edelson PC, as lead class counsel for the limited purpose of representing the putative class's personal injury ("PI") claims against Defendant National Collegiate Athletic Association ("NCAA") in this MDL.

Although the class's PI claims were represented at the outset of this litigation, that is no longer the case. Instead, as the case has progressed, the focus of the litigation has been solely on the class's medical monitoring claims, leaving former NCAA athletes without representation in this case when it comes to their core injuries. This would not be a problem if the prosecution and potential resolution of the medical monitoring claims had no impact on the class's PI claims. However, it is now clear that the strategic moves made by the now named "Medical Monitoring Plaintiffs" threaten to impair the rights of the PI claims. Worse still, prior to Nichols' involvement, Interim Class Counsel was in the process of effectuating a settlement that would have released the *class* PI claims with no corresponding relief given in exchange.

Plaintiff Nichols asks the Court to appoint Edelson as lead counsel of the class's PI claims. Edelson has demonstrated both his commitment and effectiveness in protecting the class's PI claims in numerous ways, including by:

- Moving to intervene in this case once it became apparent that lead counsel had abandoned and would not be pursuing relief on behalf of the class for the personal injuries they've suffered;

- Organizing a coalition of lawyers representing thousands of former NCAA athletes with PI claims, and structuring the coalition in a way that all such attorneys are speaking with one voice, so as to maximize efficiency and the ability to prosecute the claims in an orderly fashion;

---

[1]  The *Nichols* action is captioned *Nichols v. NCAA*, Case No. 1:14-cv-962.

1

- Negotiating with the NCAA regarding the class's PI claims and potentially resolving key issues pertinent to the claims; and

- Being the sole voice representing class PI claims at the May 12, 2014 mediation with Judge Wayne Andersen (ret.) of JAMS.

Ultimately, Edelson has substantial experience prosecuting complex class actions and MDLs of this sort; has shown a commitment to protecting the PI claims; has devoted substantial resources towards successful prosecution of the claims; and has demonstrated an ability to work cooperatively with not only the dozens of attorneys pursuing the same claims, but defense counsel as well. As such, the Court should find Edelson readily meets the requirements for appointment as lead counsel under Rule 23(g), and thus, should appoint him to lead the prosecution of the class PI claims.[2]

## II. Class-Wide PI Claims Were at the Forefront of This Litigation at the Start, But as Time Went On, Interim Class Counsel Shifted The Focus to Medical Monitoring.

When this case started, the initial plaintiffs sought recovery for class-wide PI claims and they appeared to be pursuing those claims. (*See* Declaration of Jay Edelson ["Edelson Decl."], attached hereto Exhibit 1, ¶¶ 5-7.) As the case progressed, however, Interim Class Counsel shifted their focus toward certification of medical monitoring relief as opposed to damages resulting from personal injuries, and on July 19, 2013, moved to certify a limited 19-state medical monitoring class. (11-cv-6356, Dkt. 175.) By shifting their focus toward medical monitoring and abandoning the PI claims at certification with no notice to absent class members (Edelson Decl. ¶ 8.), class members with personal injuries became exposed to statute of limitations, statute of repose, and improper claim splitting defenses, all of which could have the effect of barring their ability to recover for personal injuries suffered.

---

[2] To be sure, Edelson seeks only to be appointed lead of the personal injury class claims. To the extent that those claims are resolved through settlement or if the court ultimately declines to certify such claims, Edelson believes that a steering committee consisting of a broader coalition of firms – i.e., those interested in pursuing PI claims on an individual or mass-tort basis – should be appointed.

Then, shortly after moving for certification on the more narrow issue of medical monitoring relief, the NCAA and Interim Class Counsel informed the Court that they were negotiating a broader settlement that would include a waiver of class members' rights to pursue their PI claims on a class-wide basis—in other words, a post-lawsuit class action waiver. (Edelson Decl. ¶ 11.) Interim Class Counsel made clear that they place no value on the class PI claims, and instead, are "throwing in" that release to try to get a medical monitoring deal done.[3] (*Id*. ¶¶ 8-10.) The net effect of this was to have personal injury rights negotiated away by people who had no concern for them.[4]

### III. ARGUMENT[5]

Edelson is deserving of the requested appointment because he is committed to pursuing this action (leading the effort to pursue and protect the class's PI claims, and expending significant financial and personnel resources on the case), has organized a coalition of attorneys who also intend to pursue such claims, has engaged in negotiations with the NCAA regarding the claims—even potentially resolving several key issues pertinent to their preservation—and has been frequently appointed lead counsel in similarly complex litigation.

### A. Edelson Has Sought to Protect and Preserve the Putative Class's PI claims.

Once it became clear that Interim Class Counsel was no longer interested in continuing

---

[3] There are numerous post-*Amchem* cases that certify personal injury classes. *See, e.g., Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 606 (E.D. La. 2006).

[4] *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 62 (1997) (going to the settlement table without the threat of litigation renders "both class counsel and court . . . disarmed."); *see also Epstein v. MCA, Inc.*, 126 F.3d 1235, 1250 (9th Cir. 1997) ("It is axiomatic that a plaintiff's power to negotiate a reasonable settlement derives from the threat of going to trial with a credible chance of winning.").

[5] In evaluating motions for lead counsel, the Court stated that it would consider "(a) counsel's willingness and ability to commit to a time-consuming project; (b) counsel's ability to work cooperatively with others; and (c) counsel's professional experience in this type of litigation, including any prior appointments as lead counsel" as well as any other factors that were relevant. (Dkt. 15 at 7.)

the prosecution of the class PI claims, Edelson sought to intervene in the *Arrington* action in order to protect and pursue those claims. (11-cv-6359, Dkt. 195.) Recognizing that attorneys from across the country represented former student-athletes with the same interest in pursuing such claims, Edelson organized a meeting of counsel to discuss (i) the case and how the PI claims are impacted by their abandonment at certification, (ii) a leadership structure for the prosecution of the class personal injury claims, (iii) the delegation of work-flow and spheres of responsibility, and (iv) a strategy for litigating in light of the medical monitoring settlement negotiations that were ongoing. (Edelson Decl. ¶¶ 12-14.) The result of that meeting, which took place on March 4, 2014 at the offices of Edelson PC in Chicago Illinois, was the formation of a coalition of 10 attorneys who are focused on pursuing the class's PI claims. (*Id.* ¶¶ 13-14.)

Edelson's efforts described above then led to direct negotiations with the NCAA regarding certain key issues pertinent to the preservation of the class's PI claims, and those initial discussions have led to broader discussions regarding potential relief to be made available to the class. (Edelson Decl. ¶ 15.) As such, Edelson will be the sole voice on behalf of the class PI claims, engaging in further negotiations with the NCAA at the May 12th mediation. (*Id.*)

And, aside from the substantive progress made in the case, Edelson has shown his commitment to protecting and pursuing the class PI claims by expending significant resources on the case, including substantial attorney and staff time investigating and researching the claims, drafting and filing pleadings and engaging in motion practice, and working with experts to value the PI claims, including the value of post-lawsuit class action waivers. (Edelson Decl. ¶ 16.)

    **B.    Edelson Has Demonstrated His Ability to Work Cooperatively With Counsel to Protect the Putative Class's PI claims.**

As noted above, following the issuance of the Court's Case Management Order, and in furtherance of the Court's stated goal of cooperation, Edelson coordinated a meeting of 14 law

firms who were interested in the class PI claims. (Edelson Decl. ¶¶ 12-14.) The result of that meeting was an agreement on a leadership structure to pursue the class PI claims, a plan for prosecuting the claims, including the delegation of work, and the strategy for resolving such claims. (*Id*.) Edelson has also demonstrated his ability to work cooperatively with the NCAA, as evidenced by the productive negotiations that have taken place between Edelson and the NCAA thus far. (*Id*. ¶15.)

### C.     Edelson Has Expertise Litigating Complex Class Actions.

Edelson's expertise and approach has led numerous courts, in this District and beyond, to appoint him lead (or co-lead) of complex MDLs, especially those that present cutting edge legal issues. *See, e.g., In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill. July 16, 2010); *In re Citibank HELOC Reduction Litigation*; 09-cv-0350 (N.D. Cal.); *In re Netflix Privacy Litigation*, No. 5:11-cv-00379 (N.D. Cal.); *In re Facebook Privacy Litig.*, No. 10-cv-2389 (N.D. Cal); *In re Sidekick Litig.*, No. 09-cv-04854 (N.D. Cal.); *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012); *In re Pet Food Prod. Liab. Litig.*, No. 07-2867 (D.N.J. Nov. 18, 2008); *see also* Edelson Decl. 17-19; Firm Resume of Edelson PC, Ex. 1-A.[6]

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff Nichols respectfully requests that the Court enter an Order (i) appointing Jay Edelson Lead Counsel for the Class Personal Injury Claims, and (ii) awarding such other and further relief that the Court deems equitable and just.

---

[6] Further, Edelson's request for appointment as lead counsel of the class personal injury claims is supported by 10 attorneys representing clients with concussion-related personal injury claims against the NCAA. (Edelson Decl. ¶ 20.)

Respectfully submitted,

**ANTHONY NICHOLS**, Individually and on behalf of all others similarly situated,


By: /s/ Ari J. Scharg
    One of his Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Robert A. Clifford
rclifford@cliffordlaw.com
Shannon M. McNulty
smm@cliffordlaw.com
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
Tel: 312.899.9090
Fax: 312.251.1160

Brian W. Coffman
bcoffmanlaw@gmail.com
COFFMAN LAW OFFICES
2615 North Sheffield Avenue
Chicago, Illinois 60614
Tel: 773.348.1295
Fax: 773.248.6013

Richard R. Gordon
richard.gordon@gordonlawchicago.com
GORDON LAW OFFICES, Ltd.
211 West Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel: 312.332.5200
Fax: 312.236.7727

Steven K. Mamat
STEVEN MAMAT, PLLC
302 S. Main St., Suite 202
Royal Oak, Michigan 48067
Tel: 248.548.1009
Fax: 248.548.1012

Samuel M. Lasser
LAW OFFICE OF SAMUEL LASSER
1934 Divisadero St.
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

## CERTIFICATE OF SERVICE

      I, Ari J. Scharg, an attorney, hereby certify that on May 9, 2014, I served the above and foregoing ***Plaintiff Nichols' Motion to Appoint Jay Edelson As Lead Counsel Of The Class Personal Injury Claims***, by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the CM/ECF filing system.

                                       /s/ Ari J. Scharg