**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| *In re: National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation* | Case No: 13-cv-9116 MDL No. 2492 |
| [This Document Relates to all cases] | Hon. John Z. Lee Magistrate Judge Brown |

**DECLARATION OF JAY EDELSON IN SUPPORT OF
PLAINTIFF NICHOLS' MOTION TO APPOINT JAY EDELSON
AS LEAD COUNSEL OF THE CLASS PERSONAL INJURY CLAIMS**

Pursuant to 28 U.S.C. § 1746, I, Jay Edelson, hereby declare and state as follows:

1.     I am over the age of eighteen and am fully competent to make this declaration.  I make this declaration based upon person knowledge unless otherwise indicated. If called upon to testify as to the matters stated herein, I could and would competently do so.

2.     I am an attorney admitted to practice in the State of Illinois and in the United States District Court for the Northern District of Illinois.  I am entering this declaration in support of Plaintiff Nichols' Motion to Appoint Jay Edelson As Lead Counsel For the Personal Injury Claims.

3.     I am the managing Partner at the law firm of Edelson PC, which has been retained to represent Plaintiff Anthony Nichols in this matter.

4.     Attached hereto as Exhibit 1-A is a true and accurate copy of the firm resume of Edelson PC.

5.     The initial concussion-related class action was filed against the National Collegiate Athletic Association ("NCAA") on September 12, 2011, in an action captioned *Arrington v. National Collegiate Athletic Association*, Case No. 11-cv-6356 (N.D. Ill.)  The

Class Action Complaint in *Arrington* sought damages against the NCAA for, *inter alia*, concussion-related personal injuries sustained by student-athletes that played college football. Specifically, the initial complaint (*Arrington* Dkt. 1) alleged a negligence claim and specifically prayed for money to compensate for "past medical expenses" (*id*. ¶ 52), lost earnings and "earnings capacity" (*id*. ¶ 53), "damages" (*id*. ¶¶ 54-56), and "compensatory damages, the amount of which is to be determined at trial" (*id*. at Prayer for Relief).

6.      On November 18, 2011, the *Arrington* plaintiffs filed their Amended Consolidated Class Action Complaint, 11-cv-6356, Dkt. 24, which continued to pursue a negligence claim (*id*. ¶¶ 132-140), and seek compensation for "past medical expenses" (*id.* ¶ 136), "damages" (*id.* ¶¶ 138-39), and "compensatory damages, the amount of which is to be determined at trial" (*id.* at Prayer for Relief).  The *Arrington* Amended Complaint also asserted an unjust enrichment claim to recover money for medical expenses.  (*Id.* ¶ 147-49.)

7.      On March 11, 2013, the *Arrington* plaintiffs filed their Second Amended Class Action Complaint, 11-cv-6356, Dkt. 135, which continued to pursue the same negligence and unjust enrichment theories (*id*. ¶¶ 272-283), seek compensation for medical expenses "incurred and to be incurred" by the class members (*id*. ¶ 274), "medical expenses" (*id.* ¶ 279), "damages" (*id.* ¶ 280), and requested "an award of compensatory damages, the amount of which is to be determined at trial" (*Id*. at Prayer for Relief.)

8.      On July 19, 2013, the *Arrington* plaintiffs moved for class certification, seeking only to certify a limited medical monitoring class under Rule 23(b)(2) and a "core issues" class under Rules 23(b)(3) and 23(c)(4), but not a class seeking relief for personal injuries.  (11-cv-6356, Dkt. 175.)

9.      Then, after moving for class certification, Interim Class Counsel publicly stated

their view that the personal injury claims couldn't be certified on a class-wide basis.  *See* 11-cv-6356, 11/5/13 Hearing Trans. at 10:8-11, Statement of Beth Fegan ("I think it's black letter law that typically . . . mass torts are not certified as class actions."); *see also* http://www.cbssports.com/collegefootball/writer/jeremy-fowler/24162253/concussion-lawyers-targeting-ncaa-in-creative-ways (quoting Steve Berman saying that the law is "absolutely clear" you can't class-action certify a personal injury case based on the 1990s asbestos case *AmChem Products Inc. v. Windsor* that went to the Supreme Court . . . "You can't do it on a class basis . . . "(Edelson's) just wrong.").

10. Further, Interim Class Counsel also took the position that class personal injury claims were never part of the *Arrington* action.  *See* 11-cv-6356, 11/5/13 Hearing Trans. at 12:7-8, Statement of Beth Fegan ("We don't believe that we ever brought class personal injury claims.").

11. At the February 5, 2014 hearing, the NCAA informed the Court that it was negotiating a broader settlement with Interim Class Counsel that would include a waiver of class members' rights to pursue their personal injury claims on a class-wide basis—in other words, a post-lawsuit class action waiver.  (*See* 2/5/14 Hearing Trans. at 16:23-17:6.)

12. Soon after that hearing, I coordinated a meeting of counsel—including both counsel of record, as well as all other known counsel representing clients with concussion-related personal injury claims against the NCAA—to discuss the case and how the personal injury claims are impacted by Interim Class Counsel's abandonment of the claims; a leadership structure for the prosecution of those claims, including the delegation of work-flow and spheres of responsibility; and a strategy for litigating in light of the medical monitoring settlement negotiations that were ongoing.

13.     The meeting was held at the Edelson PC law offices in Chicago, Illinois on March 4, 2014 and was attended personally or telephonically by 14 law firms representing former student athletes from across the country that are either involved in or will be potentially affected by these proceedings.

14.     The result of that meeting was the formation of a coalition of attorneys who are focused on pursuing the class's personal injury claims.

15.     My efforts have led to direct negotiations, on behalf of said coalition, with the NCAA regarding certain key issues pertinent to the preservation of the class's personal injury claims, and those initial discussions have lead to more broad discussions regarding potential relief to be made available to any personal injury class.  I will be engaging in further negotiations with the NCAA at the mediation scheduled for May 12, 2014.

16.     My firm, Edelson PC, has expended significant resources on the actual litigation of the case, including substantial attorney and staff time investigating and researching the claims, drafting and filing pleadings and engaging in motion practice, and working with experts to value the personal injury claims, including the value of post-lawsuit class action waivers.  As importantly, Edelson PC has the necessary experience required to strategically implement those resources in an efficient manner that maximizes the likelihood of success for the class.

17.     My firm has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action, and has frequently been appointed lead class counsel by courts throughout the country.  *See* Ex. 1-A.

18.     My expertise and cooperative approach has lead numerous courts, in this District and beyond, to appoint me lead (or co-lead) of complex MDLs, especially those that present cutting edge legal issues. I was appointed co-lead of the Chase HELOC MDL, Judge Pallmeyer

explained that myself and my co-counsel proved to be "[v]igorous advocates, constructive problem-solvers, and civil with their adversaries." A true and accurate copy of the transcript of the hearing on Plaintiffs' motions for appointment as lead class counsel in the matter styled *In re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill. July 16, 2010) is attached hereto as Exhibit 1-B. After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

19.     Additionally, Judge Holderman has complimented my firm for the successful resolution of an MDL, explaining that my firm's representation of its clients was "consistent with the highest standards of the profession" and "a model of what the profession should be and what the profession should do on behalf of people who have claims of this nature so as to have them resolved in a just, fair, and reasonable way." A true and accurate copy of the transcript of the hearing on Plaintiffs' Motion for Final Approval in the matter styled *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 09-cv-7670 (Nov. 30, 2011) is attached hereto as Exhibit 1-C.

20.     Further, in this matter, my appointment as lead counsel of the class's personal injury claims is supported by Robert A. Clifford and Shannon M. McNulty of Clifford Law Offices, P.C., Brian W. Coffman of Coffman Law Offices, Richard R. Gordon of Gordon Law Offices, Ltd., Steven K. Mamat of Steven Mamat, PLLC, Samuel M. Lasser of Law Office of Samuel Lasser, John J. Driscoll and Chris Quinn of The Driscoll Firm P.C., Jeffrey Raizner of Doyle Raizner LLP, and Lance Arney of Moulton & Arney, LLP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 9, 2014 in Chicago, Illinois.

/s/ Jay Edelson

5

# EXHIBIT 1-A

# EDELSON PC FIRM RESUME

EDELSON PC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado, and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class actions, including privacy suits against comScore, Netflix, Time, Microsoft, and Facebook; numerous Telephone Consumer Protection Act ("TCPA") cases against companies such as Google, Twentieth Century Fox, and Simon & Schuster; class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit; fraudulent marketing cases against software companies such as Symantec; mobile content class actions against all major cellular telephone carriers; the Thomas the Tank Engine lead paint class actions; and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools, and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm.'" (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred, finding that Edelson was "extraordinarily experienced" in "consumer protection class actions generally," including "technology consumer protection class action[s]."

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (order appointing the firm interim co-lead of privacy class action); *see also In re Netflix Privacy Litigation*, No. 5:11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing the sole lead counsel due, in part, to its "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]")

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.,* No. 11-cv-5935 PSG, Dkt. 73 at 9 (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

## PRIVACY/DATA LOSS

### *Data Loss/Unauthorized Disclosure of Data*

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing internet analytics company of improper data collection practices.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litigation*, No. 5:11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.* 12-cv-12831 (E.D. Mich.), *Grenke v. Hearst Communications, Inc.,* 12-cv-14221 (E.D. Mich.), *Fox v. Time, Inc.,* 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 5:09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation,* 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litig.,* No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, 08 CH 00448 (Cook County, IL): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

### *Telephone Consumer Protection Act*

Edelson has been at the forefront to TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 1:10-cv-05260 (N.D. Ill): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D.Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile, et al,* No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D.Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in preliminary approved $6 million settlement.

- *Woodman et al v. ADP Dealer Services, et al.,* 2013 CH 10169 (Cook County, IL): Lead counsel in $7.5 million text spam settlement.

- *Lozano v. 20th Century Fox,* No. 09-cv-05344 (N.D. Ill): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

## CONSUMER TECHNOLOGY

### *Fraudulent Software*

In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cook County, IL): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp., et al.*, No. 3:12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde, et al. v. Support.com, Inc., et al.*, No. 3:12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 2:11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb, et al. v. Cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### Video Games

Edelson PC has litigated cases video game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, 13-cv-01962-MEJ (N.D. Cal.): Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

## Mortgage & Banking

Edelson PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "Prompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank,* N.A., 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, No. 3:09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, Edelson PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### *Mobile Content*

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.* No. 08  CH 15834 (Cook County, Illinois): Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams, et al. v. Motricity*, *Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.,* No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 1:10-cv-02964 (N.D. Ill): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No 3:11-cv-01785-si (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com,* No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30, million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority,* 99 L 11738, (Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at EDELSON PC, and the Chair of the Telecommunications Practice Group. Mr. Andrews has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc.*, No. C 06 2893 CW (N.D. Cal.); *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.); *Lofton v. Bank of America*

*Corp.*, No. 07-5892 (N.D. Cal.); *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Ill.), *Parone v. m-Qube, Inc*. No. 08 CH 15834 (Cook County, Ill.); and *Kramer v. Autobytel*, Inc., No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Mr. Andrews has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging technology. Representative reported decisions include: Lozano v. Twentieth Century Fox, 702 F. Supp. 2d 999 (N.D. Ill. 2010); *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Mr. Andrews has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions. While in law school, Mr. Andrews was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

A native of the Detroit area, Mr. Andrews graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Mr. Andrews is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc.*, et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. *See Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Kramer v. Autobytel, Inc.* (10-cv-02722-CW); *Turner v. Storm8, LLC*, No. 09-cv-05234 (N.D. Cal.); *Standiford v Palm, Inc.*, No. 09-cv-05719-LHK (N.D. Cal.); and *Espinal v Burger King Corporation*, No. 09-cv-20982 (S.D. Fla.). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.* 785 F.Supp.2d 855 (N.D. Cal.); *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal.); and *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770 (N.D.Ill.). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated *magna cum laude* from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON PC'S Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including *Webb v. Cleverbridge, et al.*, 11-cv-4141 (N.D. Ill.); *Ledet v. Ascentive*, 11-cv-294 (E.D. Penn.); and *Drymon v. CyberDefender*, 11 CH 16779 (Cook Cnty, Illinois); and was appointed sole-lead class counsel in *Loewy v. Live Nation*, 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**STEVEN LEZELL WOODROW** is a Partner and Chair of the firm's Banking and Financial Services Practice Group. Mr. Woodrow focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Mr. Woodrow delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Mr. Woodrow as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership*, No. 1:08-cv-00405 (N.D. Ill.); *Williams et. al. v. Motricity, Inc.*, No. 09 CH 19809 (Cook Cnty. Ill.); and *Walker et. al. v. OpenMarket Inc.*, No. 08 CH 40592 (Cook Cnty. Ill.).

Mr. Woodrow has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Mr. Woodrow received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Woodrow is admitted to practice in Colorado (2011) and Illinois (2005).

Mr. Woodrow received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., *magna cum laude*, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**MARK EISEN** is an Associate at Edelson PC, where he focuses on consumer class actions. Prior to joining the firm, Mark clerked for the Honorable Gary Allen Feess, United States District Court for the Central District of California.

Mark received his J.D., *magna cum laude*, from the Boston University School of Law. While in law school, he won the Homer Albers Prize Moot Court Competition, represented BU on the National Moot Court team, and was a note development editor on the BU International Law Journal. Mark's academic note, *Who's Running This Place? A Comparative Look at the Political Appointment System in the United States and Britain, and What the United States Can Learn*, was published in the International Law Journal in the spring of 2012. Most importantly, Mark was active with the Boston University School of Law Softball Team.

Prior to law school, Mark attended the University of Southern California where he earned a B.A., *magna cum laude*, in Political Science and Economics. While there, Mark was a teaching assistant to Professor Dan Schnur. Mark also traveled the country as part of the advance team for John McCain's 2008 presidential campaign.

**CHANDLER GIVENS** is an Associate at EDELSON PC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited Cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He graduated cum laude from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in Washington D.C.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated *magna cum laude* from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., *cum laude*, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON PC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON PC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school Megan externed for the Honorable Judge Bauer in the Seventh Circuit Court of Appeals and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at Edelson PC. David practices in the area of technology and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining Edelson PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at Edelson PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including *Elder v. Pacific Bell Telephone Co., et al.*, 205 Cal. App. 4th 841 (2012), where the California Court of Appeals held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Ins. Co., et al.*, 2013 WL 542854 (N.D. Cal. Feb. 12, 2013), a case where the Defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated *magna cum laude* from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Court of Appeals, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill.

Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., *magna cum laude*, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, *summa cum laude*, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

**JACK YAMIN** is an Associate at EDELSON PC, where he focuses on privacy and consumer class actions.

Jack graduated cum laude from Northwestern University's Accelerated (2-year) JD Program. While in law school, Jack was a member of the Center for Wrongful Convictions, where he worked on post-conviction cases in Illinois appellate courts. Jack also served as a judicial extern to the Honorable Marvin Aspen, a senior judge of the United States District Court for the Northern District of Illinois. Throughout law school, Jack was a member of the Center for Conflict Resolution, where he mediated cases in Illinois courts throughout Chicago.

Prior to joining the firm, Jack worked as a tax consultant for business owners throughout the country, representing clients before the Internal Revenue Service, negotiating installment agreements, and handling tax audits. Jack also spent some time working at a literary agency, helping writers publish novels and marketing their work. Jack graduated *summa cum laude* from Binghamton University, earning his B.A. in philosophy and English literature. He is a member of the Phi Beta Kappa honor society.

# EXHIBIT 1-B

```
 1               IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
   IN RE JPMORGAN CHASE BANK  )  No. 10 C 3647
 4 HOME EQUITY LINE OF CREDIT )
   LITIGATION.                )  Chicago, Illinois
 5                           )  July 16, 2010
                             )  11:00 a.m.
 6

 7                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE REBECCA R. PALLMEYER
 8

 9 APPEARANCES:

10 For the Plaintiffs:    MR. JAY EDELSON,
                          MR. EVAN M. MEYERS
11                        MS. IRINA SLAVINA
                          (Edelson McGuire, LLC,
12                         350 North LaSalle Street, Suite 1300,
                           Chicago, Illinois  60654)
13
                          MR. MARVIN A. MILLER
14                        (Miller Law, LLC,
                           115 South LaSalle Street, Suite 2910,
15                         Chicago, Illinois  60603)

16                        MS. JENNIFER PURCELL
                          (Robin Potter & Associates, PC,
17                         111 East Wacker Drive, Suite 2600,
                           Chicago, Illinois 60601)
18
   For the Defendant:     MS. LEANN P. POPE
19                        MR. MICHAEL G. SALEMI
                          (Burke, Warren, MacKay & Serritella, PC,
20                         330 North Wabash Avenue, 22nd Floor,
                           Chicago, Illinois  60611)
21

22

23
                          PATRICK J. MULLEN
24                    Official Court Reporter
               219 South Dearborn Street, Room 2128,
25                    Chicago, Illinois  60604
                         (312) 435-5565
```

1          THE CLERK:  10 C 3647, In Re J.P. Morgan Chase Bank,

2   ruling.

3          MR. MILLER:  Good morning, Your Honor.  Marvin Miller

4   for Yakas.

5          MS. PURCELL:  Good morning, Your Honor.  Jennifer

6   Purcell for plaintiff Hackett for the record.

7          MR. EDELSON:  Good morning, Your Honor.  Jay Edelson,

8   Evan Meyers, and Irina Slavina for the proposed interim lead

9   counsel group.

10         MS. POPE:  Good morning, Your Honor.  LeAnn Pope on

11  behalf of defendant Chase.

12         MR. SALEMI:  Good morning, Your Honor.  Michael

13  Salemi also on behalf of defendant Chase.

14         THE COURT:  Good morning.  I'm happy you're all here.

15  I think I may have intended to issue a ruling today and have

16  you back in on the 30th of July for the Rule 16 conference, but

17  your being here makes it that much easier for me to simply tell

18  you what my ruling is on this issue regarding whether the Yakas

19  plaintiffs' lawyers should be interim lead counsel or whether

20  the Edelson group and the lawyers working with the Edelson

21  group should be interim lead counsel.

22         I've considered your briefs, including the one most

23  recently filed by the Yakas group, and I would observe that the

24  briefs shed not only heat but light on the issues regarding who

25  should be responsible to supervise the case from here until

3

1    class certification and designation of class counsel.

2            Note that at that point I would want to consider some

3    additional issues beyond what was presented in these papers,

4    for example, the proposed fee arrangements, none of which have

5    been mentioned in these papers and presumably would need to be

6    addressed when the Court is prepared to appoint class counsel.

7            At this time, I am prepared to grant the Edelson

8    lawyers' motion for appointment, and let me just outline some

9    of the reasons.  I think there can't be much question that the

10   Yakas plaintiffs' lawyers are very well equipped to handle

11   complex class actions on behalf of plaintiffs.  They've

12   demonstrated that ability in numerous cases throughout the

13   nation.  Their efforts and their vigorous advocacy have been

14   praised by many, many judges.  The lawyers in -- the Edelson

15   group lawyers also have fine reputations, and it seems to me

16   that they can certainly handle this case effectively and well.

17           The lawyers in their briefs have argued about which

18   group has made a more impressive showing to date, with the

19   Yakas lawyers arguing that they have demonstrated more

20   commitment to the litigation versus other activities in which

21   the Edelson lawyers have been involved, for example,

22   legislative efforts and other nonlitigation type of hearings.

23   The Edelson lawyers note that they've interviewed 150 potential

24   class members and have considered carefully what the interests

25   of those individuals are vis-a-vis this claim.

1          It seems to me that one distinction between the two

2     groups is that the Yakas or Robins lawyers have arguably

3     focused more on litigation and less on these other efforts,

4     whereas potentially it might be characterized as the Edelson

5     group's efforts to focus more on what relief would be most

6     desirable by the class members as opposed to the liability

7     issues.  But that may be a bit of a facile analysis of what's

8     gone on.

9          There has been a debate about whether the class as

10    proposed by the Yakas lawyers is appropriately comprehensive or

11    whether it's sensitive to distinctions within the class.

12    That's something I don't want to hold forth on at this moment,

13    but I know that there are more -- that there are some nine

14    cases at this point, and of those all but one are cases in

15    which the Edelson lawyers are involved either directly or by

16    way of cooperation and meetings with the other lawyers.

17          It's true that the Yakas plaintiffs, as they've

18    pointed out, filed a complaint that survived a motion to

19    dismiss in its entirety.  But as the Edelson lawyers observed,

20    that was only after the initial complaint filed by those same

21    lawyers had been stricken without prejudice to a refiling.

22          The discovery disputes, really, it seems to me they

23    can be looked at in a variety of ways.  I know that one

24    argument is that the plaintiffs in the Yakas cases have been

25    engaged in much more aggressive discovery.  The Edelson people

 1   feel that that doesn't mean much because, A, it happened only

 2   at such point that the Yakas lawyers believed or recognized

 3   that they were going to be denied a leadership role in the

 4   case.  Whether that's true or not, the Yakas lawyers point out

 5   they have served some discovery initially.

 6            Whether that's true or not, it's clear to me that one

 7   of the most important issues that I am to consider is whether

 8   the lawyers who are designated as interim lead counsel at this

 9   point will be vigorous advocates, constructive problem-solvers,

10   and civil with their adversaries, and I'm confident that the

11   Edelson lawyers can do that.

12            I recognize and am sensitive to the concern raised by

13   the lawyers who represent Ms. Yakas that I should be

14   appropriately cautious and suspicious about the preference that

15   may be expressed by defense counsel.  It's very clear to me

16   that a prompt settlement can be in the best interests of the

17   class, no question about that, and indeed one of the reasons

18   that the settlement efforts got off the ground, I'm told in

19   Hackett is that that's one of the requirements that I impose on

20   lawyers.

21            But at the same time, it's also the case, as the

22   Yakas lawyers have pointed out, that a rush to settlement

23   before adequate discovery has been done could be -- could

24   jeopardize the interests of class members whose interests are

25   best served by greater discovery and a more complex and

1   detailed understanding of what the appraisal mechanism was that

2   went on with these home equity lines of credit that are at

3   issue in this case.

4           I'm confident that my own involvement in the

5   supervision of the case will ensure that the plaintiffs are not

6   sold down the river in return for a quick fee or a rapid

7   resolution of this case.  Note that at this point I'm not

8   making a decision about the certification of class counsel

9   overall.  We're talking about the interim, the interim

10  appointment at this point.

11          One comment I'd like to make, I'm sure it's something

12  you thought of.  It sounds as though there was at least some

13  effort at one point to involve the Yakas lawyers on a

14  two-to-one ratio basis, some kind of a discussion along those

15  lines.  It isn't clear to me from the papers why that fell

16  apart, but I would hope that that's something that the Edelson

17  lawyers will continue to entertain, the possibility of

18  including the Robins lawyers, Mr. Miller, Mr. Landskroner, or

19  one of his colleagues in some fashion, because after all those

20  lawyers do represent Ms. Yakas and she's demonstrated a very

21  significant involvement in the case, including her decision to

22  fly here to Chicago just a couple weeks ago.

23          So that's the Court's ruling.  I will see you on July

24  30th for our Rule 16 conference, and I'm hoping that we'll be

25  able to develop a very comprehensive schedule at that point.

7

1    Obviously to that end, you're going to need to meet ahead of

2    time and talk things over.

3         Please do get to me, if at all possible, a couple

4    days before the conference your proposals regarding scheduling.

5    To the extent there are disagreements, if you can lay those

6    out, it would helpful to me in determining how I want to go

7    forward at the conference.  If it turns out that you're unable

8    to do that, let me know that as well so I'm not waiting.  All

9    right?

10        MR. MILLER:  Thank you, Your Honor.

11        MR. EDELSON:  Thank you, Your Honor.

12        MR. PURCELL:  Thank you, Your Honor.

13        MS. POPE:  Thank you, Your Honor.

14   (Proceedings concluded.)

15           C E R T I F I C A T E

16        I, Patrick J. Mullen, do hereby certify that the
     foregoing is a complete, true, and accurate transcript of the
17   proceedings had in the above-entitled case before the Honorable
     REBECCA R. PALLMEYER, one of the judges of said court in
18   Chicago, Illinois, on July 16, 2010.

19
                                   /s/ Patrick J. Mullen
20
                        _____
21                           Official Court Reporter
                            United States District Court
22                          Northern District of Illinois
                                  Eastern Division
23

24

25

# EXHIBIT 1-C

1

1                    UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION

3  IN RE:  KENTUCKY GRILLED CHICKEN COUPON )
                                  )  No. 09 C 7670
4  MARKETING & SALES PRACTICES LITIGATION. )  MDL 2103
                                  )
5                                  )
                                  )  Chicago, Illinois
6                                  )  November 30, 2011
                                  )  9:00 o'clock a.m.
7
                  TRANSCRIPT OF PROCEEDINGS -
8                    Fairness Hearing
        BEFORE THE HONORABLE JAMES F. HOLDERMAN
9

10  APPEARANCES:

11  For Class Plaintiffs:     EDELSON McGUIRE, L.L.C.
                        BY:  MR. MICHAEL J. McMORROW
12                        350 North LaSalle Street
                        Suite 1300
13                        Chicago, Illinois  60654
                        (312) 589-6371
14
  For the Defendants:      SIDLEY AUSTIN, L.L.P.
15                        BY:  MR. THEODORE R. SCARBOROUGH, JR.
                            MS. ELIZABETH M. CHIARELLO
16                        One South Dearborn Street
                        Chicago, Illinois  60603
17                        (312) 853-7000

18

19

20

21

22

23            COLLEEN M. CONWAY, CSR, RMR, CRR
               Official Court Reporter
24      219 South Dearborn Street, Room 2524-A
              Chicago, Illinois  60604
25               (312) 435-5594
           *colleen_conway@ilnd.uscourts.gov*

Case: 1:09-cv-07670 Document #: 127 Filed: 04/04/12 Page 2 of 19 PageID #:1873

2

1        (Proceedings heard in open court:)

2            THE CLERK:  09 C 7670, In Re:  Kentucky Grilled

3    Chicken.

4            MR. McMORROW:  Good morning, Your Honor.

5            Mike McMorrow on behalf of the plaintiffs in the

6    class.

7            THE COURT:  Good morning.

8            MR. SCARBOROUGH:  Good morning, Your Honor.

9            Robert Scarborough and Beth Chiarello on behalf of

10   the defendants.

11           THE COURT:  Good morning.

12           The purpose, obviously, of today's hearing is for

13   counsel and any interested parties -- we have some other folks

14   in the courtroom this morning beyond counsel -- to assist me in

15   deciding whether the proposed Stipulation of Class Settlement,

16   as amended, which I will refer to as the "Settlement

17   Agreement," of the parties in this case is fair and reasonable

18   and adequate pursuant to Federal Rule of Civil Procedure 23(e).

19           I intend to just make some background remarks for the

20   record so that a summary of what has occurred is available in

21   one location and then I will allow any objectors who have

22   followed the procedures of the Court set forth in the

23   preliminary determination that I made to step forward and

24   comment, I will also allow any supporters of the Settlement to

25   comment, and then I will allow anything further from counsel

Case: 1:10-cv-07670 Document #: 52-1 Filed: 05/09/14 Page 37 of 53 PageID #:1673
Case: 1:09-cv-07670 Document #: 127 Filed: 04/04/14 Page 3 of 19 PageID #:1873

3

1    that counsel desires to present, and then I intend to make a

2    determination on the issue and also then supplement today's

3    oral determination with a written memorandum opinion detailing

4    my reasoning.

5           But I want to hear from everyone that desires to be

6    heard on this point so as to ensure that the Settlement that

7    has been reached between the class plaintiffs and the

8    defendants is fair, reasonable, and adequate.

9           So, by way of background, on August 16th, 2011, I

10   preliminarily approved certification of the class for

11   settlement purposes only, and that class included all persons

12   who (a) downloaded an Original or PDF coupon between May 5,

13   2009 at 9:00 a.m. Central time and May 6, 2009 at 11:59 p.m.

14   Central time from *Oprah.com* or *unthinkfc.com* -- well, I will

15   just spell it -- it's *unthinkfc*, u-n-t-h-i-n-k-f-c -- *.com* --

16   and (b) did not receive (i) the KGC Free Meal pursuant to the

17   Original coupon, the PDF coupon, or the Raincheck coupon, (ii)

18   a "Chicken Check" or other compensation from KFC in response to

19   a complaint concerning the Oprah promotion, or (iii) a free

20   meal or other consideration at a restaurant unaffiliated with

21   Defendants that agreed to accept the KGC coupons for the

22   Kentucky Grilled Chicken.

23          The terms "Original coupon," "PDF coupon," "Raincheck

24   coupon," "KGC Free Meal," "Chicken Check," "Oprah promotion,"

25   and "KGC coupons" are given the same meaning as set forth in

1    the Settlement Agreement and should be considered as such.

2    Also on August 16th, 2011, I approved the parties'
3    plan for notifying all potential class members of the proposed
4    Class Action Settlement and of today's hearing. In accordance
5    with the approved notice, the parties -- through the
6    professional settlement administrator, Rust Consulting, Inc. --
7    published a Summary Notice of the proposed Settlement, which is
8    docket number 99-1, Exhibit A -- and we will refer to it as a
9    "Summary Notice" -- in a 2x5 page advertisement in *Parade*
10   magazine on September 11, 2011, which was then inserted in the
11   Sunday edition of nearly 600 daily newspapers nationwide.
12   *Parade* magazine is the Sunday insert that is read nationwide
13   and, consequently, was an appropriate vehicle for publication.

14   The parties also engaged in an internet advertising
15   campaign from September 1, 2011 through September 30, 2011,
16   through the use of the 24/7 Real Media Network, resulting in
17   approximately 18,765,000 "impressions" of the banner ads that
18   had been developed by Rust Consulting, Inc. to inform potential
19   class members of the proposed Settlement Agreement.

20   Additionally, from September 27, 2011 through October
21   26, 2011, the parties engaged in a "keyword campaign" in which
22   certain searches performed through Google Advertising Partners
23   and Bing Search Marketing resulted in 3,221 "impressions" of
24   text ads linking to the Settlement website. The Settlement
25   website was *www.couponmarketinglitigation.com*, and that has

Case: 1:09-cv-07570 Document #: 52-1 Filed: 05/09/14 Page 39 of 53 PageID #:1625
Case: 1:09-cv-07570 Document #: 52-7 Filed: 04/04/14 Page 5 of 19 PageID #:1873

5

1   made available to viewers the following information:  (1) the

2   Summary Notice approved by the Court, both in English and in

3   Spanish; (2) the Detailed Notice approved by the Court, which

4   is at docket entry 99-1, Exhibit B; (3) the Claim Form approved

5   by the Court, which is docket entry 99-1, Exhibit D; (4) the

6   Settlement Agreement; and (5) the Preliminary Approval Order.

7          Now, pursuant to the terms of the notices, all

8   objections to the proposed Settlement Agreement were due in

9   writing by October 26, 2011.  Similarly, any individual

10  desiring to address the Court at today's hearing was required

11  to make his or her intention known by that same date.

12         Only one written objection was submitted in advance

13  of today's hearing, which was filed on October 25, 2011, by

14  Class Member Jill K. Cannata, C-a-n-n-a-t-a, through her

15  individually chosen counsel in Cleveland, Ohio, Mr. Sam

16  Cannata, same spelling as the plaintiff, and that's docket

17  entry number 104.  Ms. Cannata stated in her objection that she

18  does not intend to attend today's fairness hearing.  And the

19  Court is not aware of any class member desiring to address the

20  Court, but I will ask now of those here in the courtroom:  Are

21  there any people desiring to address the Court this morning at

22  this hearing?

23         I see no one indicating in an affirmative manner.  So

24  I will ask further by saying:  If you would desire to address

25  the Court, please raise your hand.

Case: 1:09-cv-07570 Document #: 127 Filed: 04/04/14 Page 6 of 19 PageID #:1875
Case: 1:09-cv-07570 Document #: 127-1 Filed: 05/09/14 Page 40 of 53 PageID #:1926

6

1                All right.  There is no one in the courtroom raising
2     a hand.
3                So had there been anyone here, I would have asked the
4     objectors in attendance to step forward.  And, of course, the
5     notice required them to present a Notice of Intention to
6     Appear, but I have found over the years in addressing these
7     types of cases that, on occasion, individuals who desire to
8     attend the fairness hearing at the last moment make a decision
9     that they would desire to attend court, and I don't want to
10    deprive anyone of that opportunity.  However, there is no one
11    here expressing that interest.  Also, if there were class
12    members here who supported the Settlement, I would have allowed
13    them time to respond.
14               So let me just move forward, then, to Ms. Cannata's
15    written objection as well as the supplement that Ms. Cannata
16    filed on November 27, 2011, which is docket entry 110.
17               I have considered the facts and the arguments set
18    forth in the Plaintiffs' Motion & Memorandum in Support of
19    Final Approval of Class Action Settlement, and Approval of
20    Attorneys' Fees and Incentive Award, docket entry number 108,
21    and let me just ask, is there anything further that any
22    counsel, counsel for the class or counsel for the defendants,
23    desire to say at this time to me?
24               MR. McMORROW:  Your Honor, Mike McMorrow.
25               THE COURT:  Yes.

Case: 1:09-cv-07670 Document #: 52-1 Filed: 05/08/14 Page 41 of 53 PageID #:1627
Case: 1:09-cv-07670 Document #: 52-7 Filed: 04/04/14 Page 7 of 19 PageID #:1573

7

 1          MR. McMORROW:  As the Court's aware, we filed a --

 2   what I like to think is a significant brief in support of the

 3   Motion & Memorandum for Final Approval of the Class Action

 4   Settlement and Approval of Attorneys' Fees and Incentive Award.

 5   That addresses all the arguments raised by Ms. Cannata in her

 6   objection.

 7          THE COURT:  Yes.

 8          MR. McMORROW:  And in her supplement, we obviously

 9   haven't filed a written response to the supplement.

10          THE COURT:  I have evaluated the supplement as well.

11          MR. McMORROW:  Thank you, Your Honor.

12          So I would rest on the papers, Your Honor, unless the

13   Court has any specific questions for me.

14          THE COURT:  All right.  All right.  Well, since you

15   have asked, let me turn to an issue.  And, as I said, I will be

16   issuing a written opinion further explaining my reasoning.  I

17   didn't want to take a lot of time this morning.  I wanted to

18   basically give time to the class members if they desired to

19   respond.

20          But one of the concerns that I have is the magnitude

21   of the fees, and I know that that's always an issue that the

22   Court should carefully evaluate.  And so let me just turn to

23   that point briefly.  And I will hear from you on any point at

24   all.

25          If I find -- and from reviewing your papers, I am

Case: 1:09-cv-07570 Document #: 52-1 Filed: 05/02/14 Page 42 of 53 PageID #:1676
Case: 1:09-cv-07570 Document #: 52-1 Filed: 04/04/14 Page 8 of 19 PageID #:1876

8

1    inclined to find -- that the 33.3% capped, as you have capped

2    it, is reasonable, my question becomes 33.3% of what?  Because

3    the available amount that you are using for the purposes of

4    calculating that 33.3%, or 33 1/3, capped at $515,000, is an

5    amount that actually includes the fees already, does it not?

6            MR. McMORROW:  Yes, Your Honor.  It's based on the

7    common fund approach, and the entirety of the fund that's made

8    available to the class is the normal amount that you base that

9    percentage on, and that includes, that includes the notice

10   costs.  And actually --

11           THE COURT:  Yes.

12           MR. McMORROW:  -- let me -- to just address one quick

13   point --

14           THE COURT:  Sure.

15           MR. McMORROW:  -- really it seems that the only point

16   that Ms. Cannata raises in her supplement to her objection is

17   -- other than the questions about Mr. Cannata, the attorney, is

18   that the costs of notice shouldn't be included in that fee.

19           And there are a couple of cases that we cite in the

20   brief about notice costs, at page 33 of the brief.  As a matter

21   of fact, those are a couple of cases where courts overruled

22   objections of Mr. Cannata on this point.

23           I'd also point out that there are other cases that

24   have made the same point, including a Ninth Circuit case,

25   *Staton versus Boeing* from 2003.  That's 327 F.3d 938, and at

Case: 1:13-cv-09570 Document #: 52-1 Filed: 05/09/14 Page 43 of 53 PageID #:629
Case: 1:09-cv-07570 Document #: 52-1 Filed: 04/04/14 Page 9 of 15 PageID #:1077

9

1    page 975, where the Court also agreed that the cost of

2    providing notice is considered to be part of that benefit made

3    available to the class.

4              And so the amount made available to the class, it

5    doesn't -- it includes any costs that we would recover for

6    attorneys' fees, but those costs, they come out of the fund,

7    but they're not specified in the fund.  And so the 33 1/3

8    percent benchmark, which our request is slightly under, is just

9    the common form of recovery.

10             We talk about it at page 20 of the brief,

11   particularly in footnote 9.

12             THE COURT:  Yes.  Okay.  All right.  Well, let me

13   further evaluate that point.

14             All right.  Anything further you desire to say on

15   that particular point, since we have raised it, for discussion?

16             MR. McMORROW:  Well, also on that particular point,

17   Your Honor, the way the Seventh Circuit handles attorneys' fees

18   in class action suits and common fund cases is normally to try

19   to award the market price and --

20             THE COURT:  Yes.

21             MR. McMORROW:  You know, and the marketplace in a

22   class action suit is almost invariably a third, when you talk

23   about what would the attorney and the clients negotiate *ex ante*

24   as a reasonable fee.  And in this case, our agreements with our

25   clients specify that they agree that a reasonable fee would be

1    one third of any recovery.

2              And if I may, Your Honor, this is similar to, you

3    know, if there were any -- in any case where you're dealing

4    with consumer suits or suits by what I'll call non-corporations

5    or regular people, most of the arrangements are for a

6    contingency fee and the contingency fee is based on, you know,

7    is based on the recovery.  So, for example, in a medical

8    malpractice suit, the attorney would normally negotiate a fee.

9    And I don't know that that -- I should say I'm a little bit

10   talking out of school here because I don't have that much

11   familiarity with medical malpractice retainer agreements.  But

12   the recovery is generally costs of the suit and the third of

13   any recovery.

14             And so, this is the arrangement that was reached *ex

15   ante*, and that's what the Seventh Circuit looks for, is what

16   kind of an agreement would be reached *ex ante*.  And I think in

17   this case, there's no reason to think that the agreements that

18   were reached were anything different from what would normally

19   be reached.  And the Seventh Circuit's practice is to try and

20   predict what that would be.  And there are a number of cases in

21   section V.1. of the brief which talk about that process.

22             And for that reason, for that additional reason, I

23   think it's very reasonable to award us a fee of 32.7% of the

24   fund.

25             THE COURT:  Yes.  And I realize that the cap is 32.7%

1    of the fund, but the concern I have is the fund, it includes

2    the fees, and should there be a reduction, should it be a

3    calculation that is the recovery with the fees deducted and

4    that fee determination being made as 33% or 33 1/3% of that

5    amount.

6              MR. McMORROW:  Well, I don't know that there's any --

7    I'm not aware of any authority to support that, that kind of

8    calculation, Your Honor, and --

9              THE COURT:  Okay.

10             MR. McMORROW:  And I think it would be -- you know, I

11   think it would be a little odd to take the fees out and then

12   compare the fees to the rest of the fund without the fees,

13   because, in any event, no matter what the percentage in any

14   common fund that you were looking at, once you take the

15   attorneys' fees out of that fund, then you're obviously

16   changing that -- you know, you're drastically changing those

17   percentages.  And that's part of the reason why you think of

18   this as -- you know, why you look at the entire fund, and that

19   fund is the entire amount that the defendants made available

20   for the payment of claims and the notice costs and the

21   attorneys' fees.

22             And I'd also like to point out that in this case,

23   unlike the -- there are several -- many common fund cases where

24   the amount of the fund, where there's a portion of it that

25   reverts to the defendant.  In this case, there is no portion of

Case: 1:09-cv-07670 Document #: 127 Filed: 04/04/12 Page 12 of 19 PageID #:1680

1   the fund that reverts to the defendant.  And because of the

2   entire amount that's not claimed by class members, by

3   attorneys' fees, and by notice costs and incentive awards will

4   go to the three *cy pres* recipients that are specified in the

5   amended Settlement Agreement.

6               THE COURT:  Yes.  Okay.  All right.  Separate and

7   apart from the fee situation, then, the fee determination that

8   I must make, anything further with regard to any points on the

9   Settlement itself?

10              MR. McMORROW:  On Ms. Cannata's supplement?  Well,

11  like I said, Your Honor, we -- Ms. Cannata filed her objection

12  on October 26th, I believe, and we responded --

13              THE COURT:  I thought it was the 25th, but that's all

14  right.

15              MR. McMORROW:  I'm sorry.  The 25th.

16              THE COURT:  Yes.

17              MR. McMORROW:  And we responded to those points in

18  the brief in support of final approval.

19              And I'd note that in the supplement, I'd note that in

20  the supplement, the only points that are discussed are --

21              THE COURT:  That was filed on the 27th of November,

22  yes.

23              MR. McMORROW:  Yes, the one filed -- docket number

24  110.

25              THE COURT:  Uh-huh, yes.

1    MR. McMORROW:  The only points that are contested in

2    there are the questions about the allegations about class

3    counsel himself and then the rest of the brief is simply about

4    the inclusion of the post-Settlement Notice costs, which I have

5    already addressed, and I don't think there's anything else that

6    I need to address in that, from that supplement.

7              THE COURT:  Okay.

8              MR. McMORROW:  I would point out -- well, I, you

9    know, won't even point this out, Your Honor.

10             THE COURT:  No, that's all right.  Go ahead.

11             MR. McMORROW:  No, I was just going to say, we

12   reached out -- these supplemental objections, those were filed

13   on Sunday night.  And --

14             THE COURT:  Right.

15             MR. McMORROW:  -- on Monday, we reached out to Mr.

16   Cannata about the supplement, but it was on a point regarding

17   Mr. Cannata as what we consider to be a professional objector.

18             And so I don't know if the Court wants to hear too

19   much about that.  But we did not hear a further response from

20   him.

21             THE COURT:  Yes.  Since neither Mr. Cannata, the

22   attorney, nor Ms. Cannata, the class member objector, is here,

23   perhaps we shouldn't go further on that point.  So thank you.

24             MR. McMORROW:  And if the Court has any other further

25   questions, I'd be happy to attempt to answer them.

Case: 1:09-cv-07670 Document #: 527-1 Filed: 05/09/14 Page 48 of 53 PageID #:1632
Case: 1:09-cv-07670 Document #: 527-1 Filed: 04/04/12 Page 14 of 19 PageID #:1682

14

1          THE COURT:  Okay.  And I appreciate that.  And I

2     appreciate your responses to the questions that I have already

3     asked.

4          Let me then turn to defense counsel.  Is there

5     anything further you desire to present this morning at this

6     hearing?

7          MR. SCARBOROUGH:  We have nothing further, Your

8     Honor.

9          THE COURT:  All right.  I will, as I said, issue my

10    rulings with regard to the fee question itself as well as

11    further address the objections, but I will inform counsel and

12    any class members who happen to be here who have already

13    indicated they don't desire to comment in favor or against the

14    Settlement that I believe that the Settlement here was reached

15    at arm's length, negotiated between counsel who are excellent

16    professionals and zealously represented their respective

17    clients.

18          I personally attended settlement conferences with

19    counsel, made remarks off the record, however, because they

20    were settlement conferences, made remarks regarding proposals

21    that had been advanced, and counsel were responsive and

22    sensitive to the fairness that needed to be reached in

23    connection with this case.  And so I believe that nothing has

24    occurred since the preliminary approval that causes me to

25    believe that this Settlement is not fair, reasonable, and

Case: 1:13-cv-09246 Document #: 527-1 Filed: 05/09/14 Page 49 of 53 PageID #:1635
Case: 1:09-cv-07676 Document #: 227 Filed: 04/04/12 Page 15 of 15 PageID #:1883

15

1   adequate pursuant to Federal Rule of Civil Procedure 23(e).

2   And so, consequently, I do find that.

3          As I said, I will issue a further written order.  I

4   will do that either today or, at the latest, tomorrow.

5          Let's assume that I give myself a one-day extension

6   of time and don't get that out till Friday.  Let me ask counsel

7   how soon could you submit through the *proposed_order* e-mail

8   system, under the e-mail

9   *proposed_order_Holderman@ilnd.uscourts.gov*, the Final Judgment

10  Order consistent with the determinations that are made?

11         MR. McMORROW:  Well, Your Honor, we submitted a

12  Proposed Final Order in connection with the Preliminary

13  Approval --

14         THE COURT:  Yes.

15         MR. McMORROW:  -- motion, and there was a Word

16  version of the Final Approval Order that we provided on August

17  16th.

18         THE COURT:  Right.

19         MR. McMORROW:  And so we can resubmit that order with

20  any changes that Your Honor would like.  I thought it would be

21  presumptuous or, actually, some people thought it would be

22  presumptuous to submit an order prior to today's hearing --

23         THE COURT:  Well --

24         MR. McMORROW:  -- saying that the objections are

25  overruled.

Case: 1:13-cv-09416 Document #: 527-1 Filed: 05/09/14 Page 50 of 53 PageID #:1636
Case: 1:09-cv-07670 Document #: 527 Filed: 04/04/12 Page 50 of 53 PageID #:1684

16

1          THE COURT:  I understand, and --

2          MR. McMORROW:  I could provide a revised order today.

3          THE COURT:  Yes.  Well, why don't you wait until I

4   issue the full opinion articulating the reasons behind it and

5   then finalize this determination that I need to make with

6   regard to the attorneys' fees.

7          And so my question is if I get that out to you by no

8   later than Friday, how soon could you get the Proposed Order in

9   so --

10         MR. McMORROW:  Monday.

11         THE COURT:  -- judgment could be entered?  Monday?

12  All right.  So that would be Monday, December 5th, at the

13  latest.  All right.

14         MR. McMORROW:  Oh, one other minor thing, Your Honor.

15         THE COURT:  Sure.

16         MR. McMORROW:  There were two class members that

17  opted out, Mr. Brown and Mr. Klar.

18         THE COURT:  Yes.

19         MR. McMORROW:  I think -- I'd like to make sure that

20  the final judgment specifies that they're opted out and not

21  bound by the Settlement.

22         THE COURT:  And I appreciate your doing that.  And I

23  believe to adequately have the Final Judgment Order remove them

24  from the class and make it clear that they have opted out, so

25  they can refer to that document and say, "We opted out," or, "I

Case: 1:09-cv-07670 Document #: 527-1 Filed: 05/09/14 Page 51 of 53 PageID #:1037
Case: 1:09-cv-07670 Document #: 527 Filed: 04/04/12 Page 51 of 53 PageID #:1085

17

1    opted out," I think that would be appropriate as well.  So I

2    appreciate your including that in the Proposed Order that you

3    are going to be submitting.

4              Well, on a personal note, I have to say that I truly

5    believe that both sides were represented consistent with the

6    highest standards of the profession.  Both the defense counsel

7    and plaintiffs' counsel did an excellent job in representing

8    their clients in this case.

9              To some extent, I am sad to see the case come to an

10   end because I do enjoy working with outstanding counsel like

11   you folks and observing and participating, as a Court is

12   allowed to do, in the decision-making process that you folks

13   went through in reaching this settlement in this case.  It

14   really is, in my opinion, a model of what the profession should

15   be and what the profession should do on behalf of people who

16   have claims of this nature so as to have them resolved in a

17   just, fair, and reasonable way that these have been resolved so

18   that there is adequate compensation taking into account all the

19   risks of moving forward with the litigation.

20             So, anything further from counsel?

21             MR. McMORROW:  I'd just like to thank the Court for

22   its time and for its attention in this matter and for its kind

23   words towards counsel.

24             MR. SCARBOROUGH:  Absolutely, we would join in that.

25   We do appreciate your time over the summer, Your Honor.  That

18

1    was particularly helpful.  Thank you again.

2            THE COURT:  Well, it was my pleasure, and I

3    appreciate it.

4            So, having addressed all the matters in this case,

5    then, the *In Re:  Kentucky Grilled Chicken Coupon Marketing &*

6    *Sales Practices Litigation*, which in this court is Case No. 09

7    C 7670, and in connection with the Multi-District Litigation

8    panel, MDL 2103, all matters having been resolved, we will

9    stand in recess and we will complete the litigation process

10   through the Final Judgment Order that will be entered shortly

11   after the Proposed Judgment Order is submitted and reviewed by

12   the Court.

13           So I will issue that written opinion, as I have

14   mentioned more than once, and I thank you all.

15           MR. McMORROW:  Thank you very much, Your Honor.

16           MR. SCARBOROUGH:  Thank you very much, Judge.

17           THE COURT:  Thank you.  We will stand in recess.

18       (Proceedings concluded.)

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3

4

5          I, Colleen M. Conway, do hereby certify that the

6   foregoing is a complete, true, and accurate transcript of the

7   proceedings had in the above-entitled case before the

8   HONORABLE JAMES F. HOLDERMAN, Chief Judge of said Court, at

9   Chicago, Illinois, on November 30, 2011.

10

11

12      _/s/ Colleen M. Conway, CSR,RMR,CRR_        _12/19/11_

13          Official Court Reporter              Date
            United States District Court
14          Northern District of Illinois
                  Eastern Division

15

16

17

18

19

20

21

22

23

24

25