```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE      )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-    )
 4   ATHLETE CONCUSSION INJURY        )  Chicago, Illinois
     LITIGATION,                      )  May 22, 2014
 5                                    )  9:00 o'clock a.m.

 6              TRANSCRIPT OF PROCEEDINGS - MOTION
               BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:          HAGENS BERMAN SOBOL SHAPIRO, by
 9                                MS. ELIZABETH A. FEGAN
                                  MR. THOMAS E. AHLERING
10                                1144 West Lake Street
                                  Suite 400
11                                Oak Park, Illinois 60301

12                                SIPRUT PC, by
                                  MR. GREGG MICHAEL BARBAKOFF
13                                17 North State Street
                                  Suite 1600
14                                Chicago, Illinois 60602

15   For the Wolf Plaintiffs:     CORBOY & DEMETRIO, by
                                  MR. WILLIAM T. GIBBS
16                                33 North Dearborn Street
                                  Suite 2100
17                                Chicago, Illinois 60602

18   For Defendant NCAA:          LATHAM & WATKINS, by
                                  MR. MARK STEVEN MESTER
19                                MS. KATHERINE S. WALTON
                                  233 South Wacker Drive
20                                Suite 5800
                                  Chicago, Illinois 60606
21

22

23               ALEXANDRA ROTH, CSR, RPR
                  Official Court Reporter
24               219 South Dearborn Street
                       Room 1224
25               Chicago, Illinois 60604
                    (312) 408-5038
```

```
 1   APPEARANCES:  (Continued)

 2   For Proposed Intervenors      EDELSON PC, by
     Moore and Nichols:            MR. JAY EDELSON
 3                                 350 North LaSalle Street
                                   Suite 1300
 4                                 Chicago, Illinois 60654

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case: 1:13-cv-09116 Document #: 58 Filed: 05/30/14 Page 2 of 13 PageID #:670

Case: 1:13-cv-09116 Document #: 58 Filed: 05/30/14 Page 3 of 13 PageID #:671

3

```
1          (Proceedings had in open court:)
2              THE CLERK:  13 C 9116, NCAA Student Athlete Concussion
3   Injury Litigation, for motion hearing.
4              MS. FEGAN:  Good morning, your Honor.  Elizabeth Fegan
5   for plaintiffs.
6              MR. AHLERING:  Tom Ahlering also for plaintiffs, your
7   Honor.
8              MR. BARBAKOFF:  Good morning, your Honor.  Gregg
9   Barbakoff on behalf of the plaintiffs.
10             MR. GIBBS:  Good morning, your Honor.  Bill Gibbs on
11  behalf of the Wolf plaintiffs.
12             MR. MESTER:  Mark Mester and Katie Walton on behalf of
13  the NCAA.
14             MR. EDELSON:  Good morning, your Honor.  Jay Edelson
15  on behalf of the personal injury plaintiffs.
16             THE COURT:  Good morning, everyone.
17         We are here on a motion to stay a number of the
18  deadlines.  Actually I think it's only one deadline now that
19  really comes into play here that was set by the Court back on
20  April 14.  And that's with regard to the proposed case
21  management schedule.
22         Ms. Fegan, Mr. Mester, would you provide me with an
23  update?
24             MS. FEGAN:  Absolutely, your Honor.  We've used our
25  time productively in the last couple of months to work with
```

1  those cases, I think there were eight to ten, that had filed
2  claims for medical monitoring and medical monitoring classes.
3  We worked through those issues with the plaintiffs and have
4  come up with a consensus on the appropriate way to move
5  forward.
6        We've since had a mediation with the NCAA on our
7  collective -- our consensus views on the scope of an
8  appropriate medical monitoring program. We made great strides
9  at that mediation on May 12 with Judge Andersen and reached
10 consensus on how to move forward. So now we are just in the
11 process of trying to document the settlement, which is going to
12 take some time, lining up the scope of the program, getting
13 together a notice plan for notifying the class. And those
14 issues just take time.
15       So as a group we suggested that 60 days might be an
16 appropriate time for us to be able to present to the Court a
17 motion for preliminary approval of that settlement.
18       THE COURT: Mr. Edelson, Ms. Fegan talks about a
19 consensus view among the plaintiffs. Were you part of that
20 consensus?
21       MR. EDELSON: No. The -- but to be clear, the medical
22 monitoring relief, as your Honor knows, really isn't our
23 concern. So to the extent that they're happy with what they
24 got, that -- that's fine. Our only concern is to the extent
25 that that ends up impacting the personal injury claims. And

1   our understanding is it still is going to, which is -- so that
2   concern, you know, remains, unless they have new information.
3           THE COURT: So with regard to the scope of the -- or
4   the broad terms of the medical monitoring claims and the
5   parties' efforts to try to resolve that particular claim, Mr.
6   Edelson, you don't have any objections to how that's been
7   framed at this point?
8           MR. EDELSON: We haven't been part of the discussion
9   and haven't asked to either. But we trust that they're doing a
10  good job.
11          THE COURT: Let me ask you this, counsel, and I don't
12  know whether you have gotten there yet. But with regard to a
13  proposed settlement class, would the proposed settlement class
14  be under 23(b)(2) or 23(b)(3) or both?
15          MS. FEGAN: Your Honor, I believe it will be a Rule
16  23(b)(2) class what we are asking for --
17          MR. MESTER: Right.
18          MS. FEGAN: -- equitable relief.
19          MR. MESTER: I apologize, your Honor. But with notice
20  which would be akin to a 23(b)(3) and an opportunity to opt
21  out. So it'll be in some sense a hybrid.
22          MS. FEGAN: That's right, your Honor. A (b)(2) class
23  with opportunity to opt out or exclude yourself from the
24  settlement.
25          THE COURT: So it will be 23(b)(2) class with regard

1    to the injunctive relief going forward, 23(b)(3) class with
2    regard to any sort of impact it would have on, say, individual
3    damages claims brought by the class members?
4           MS. FEGAN:  In a sense, your Honor.  Under Rule
5    23(b)(2), if it were just liability, people wouldn't have the
6    opportunity to opt out.  But the cases have recognized that you
7    can move forward in an agreement to just certify a 23(b)(2)
8    settlement class, but agree that the class members would have
9    the opportunity to exclude themselves.  So it won't actually be
10   certified for purposes of settlement under (b)(3) but it is
11   akin to or analogous to a (b)(3) situation where there's the
12   opportunity for exclusion.
13          MR. MESTER:  And, your Honor, what we will be trying
14   to do is avoid the need for the Court to address that sort of
15   authority issue, (b)(2) versus (b)(3), by providing the other
16   procedural protections that are associated with (b)(3) by
17   providing an opportunity to opt out and notice.  So for
18   practical purposes, the settlement class would have those
19   opportunities that it otherwise wouldn't have in a (b)(2)
20   class.  But we wouldn't have to worry as much about whether --
21   what to call it, (b)(2) or (b)(3), because there are elements
22   of -- they're (b)(3) like, to be sure.
23          THE COURT:  Right. And that's -- as I was sitting
24   here trying -- as I was thinking over in my mind kind of what
25   the contours of whatever settlement might be and what the

1 parties would request -- I think I don't know whether thorny
2 issue is the right term, but it certainly is a concern of mine
3 as to whether this class will need to be certified under one or
4 both, particularly if as part of the settlement the putative
5 class members are going to be asked to release any rights to
6 pursue their damages claims on a class-wide basis.
7 You know, I think a question I have, and I don't know
8 the answer to this. Obviously I haven't looked at it so far.
9 But the question I had that came to my mind was whether if you
10 proceeded under 23(b)(2), whether you could bind the class to
11 such a waiver without providing some protection of 23(b)(3),
12 whether notice and really opt-out is enough. I don't know. Or
13 whether the Court would have to engage in the entire 23(b)(3)
14 analysis.
15 And I recognize that that puts the parties, all the
16 parties, in a bit of a -- not an awkward position. But it
17 raises some issues, right? I know that it's been the position
18 of NCAA, for example, that a 23(b)(3) class, at least thus far,
19 that there would be some challenges to plaintiffs certifying a
20 23(b)(3) class.
21 MR. MESTER: Yes, your Honor.
22 THE COURT: And I know that some of the plaintiffs
23 have also -- not all but some of the plaintiffs have also noted
24 that there might be some challenges trying to certify a class
25 under 23(b)(3). And yet where the settlement implicates some

1   of those rights, I'm not really sure what the best way is to
2   proceed with regard to 23(b)(2) or 23(b)(3).
3           Having said that, I recognize that Courts even in
4   settlements in cases that involved some measure of damages have
5   proceeded under 23(b)(2) for certain purposes.  And proceeding
6   under 23(b)(2) in those instances have been upheld in various
7   courts.  And so it's not a clear-cut issue.  I'm glad that you
8   all are thinking about.  I'm sure you are.  And I look forward
9   to what you have to say.  But that is something that we are
10  thinking about.
11          MS. FEGAN:  I appreciate that, your Honor.  And
12  actually we will spend extra time with that and make sure that
13  we address that in our preliminary approval motion.
14          MR. MESTER:  Certainly, your Honor.
15          THE COURT:  So I know that Mr. Edelson on behalf of
16  the Nichols plaintiffs have filed -- has filed a response to
17  the motion for stay.  And I take it that the -- Mr. Edelson,
18  your position is that while you don't object to the stay in and
19  of itself, you would like the Court to maintain its schedule
20  with regard to designating lead counsel, which currently the
21  Court is scheduled to do on May 29, at our next status.  Is
22  that a fair --
23          MR. EDELSON:  That's correct, your Honor.
24          THE COURT:  And I know that the parties -- to the
25  extent that the parties have filed application for lead counsel

1  and any responses that have already been received by the Court
2  and we are starting to look at that. Ms. Fegan, Mr. Mester, is
3  there any reason why the Court on May 29 shouldn't address that
4  issue?
5           MS. FEGAN: Your Honor, the Court is welcome to
6  address the issue. From our viewpoint, what we were trying to
7  do was put an end to kind of some of the vitriolic statements
8  that were being made and thrown around by all sides and just
9  kind of get us to a moment of peace that we could continue to
10 talk to the NCAA. I know Mr. Edelson has been talking to the
11 NCAA. And just allow us that cool-off period to do -- to
12 continue to try to work through the issues. But obviously
13 there are responses on file.
14          MR. MESTER: I think from our perspective, your Honor,
15 it would not be necessarily constructive in what we are trying
16 to achieve because, as counsel mentioned, there -- in some
17 sense and it's I think reflected thus far in the papers, it
18 becomes a preview of what may be potential objections to a
19 settlement instead of trying to work out issues to the extent
20 they can be.
21          So I think all things being considered, it would be --
22 I think it would be helpful to not -- to not get to that issue
23 right away.
24          THE COURT: Mr. Edelson?
25          MR. EDELSON: That's the first thing Mr. Mester said

1  which I thought was a little bit unfair.  We've never acted in
2  any way to try to set up objection.  We have -- I think you
3  have to admit that our conversations are constructive.
4       I didn't mean to address you directly.  I apologize.
5       THE COURT:  I think his sentiment is that there is a
6  significant amount of momentum here and some goodwill built up
7  by everyone.  And the fewer kind of irons thrown into the fire
8  the better, basically is the sense I get from --
9       MR. EDELSON:  Right.  The goodwill and the momentum is
10 really all with those people, which is fine, except for they
11 are trying to negotiate away the rights of -- for people
12 they're now saying that they never represented, they're not
13 going to represent.  And so that's something which I think that
14 the class deserves clarity.  At the end of the day, we are
15 going to end up with a very interesting settlement where you
16 are going to see that the vast majority of the class is not
17 entitled to medical monitoring claims, doesn't want medical
18 monitoring damages, can't get them, but is going to end up with
19 this class-wide release.
20      It's an after-the-fact class-wide waiver that's put
21 upon them.  And they're going to get nothing in exchange.  Ms.
22 Fegan, she is not fighting to get anything in exchange because
23 she said she doesn't represent those people.
24      THE COURT:  Well, I think that there is -- I think
25 there is some disagreement as to Mr. Edelson.  I am sure that

1  Ms. Fegan would disagree with those statements. And I
2  recognize the dispute that is here. I also am not -- I don't
3  know what the terms of the settlement are, what the contours
4  are. So I'm not going to comment on that at this point in
5  time. I don't think it would be appropriate for me to do so.
6      I do think, however, that, you know, it would benefit
7  the class and the litigation as a whole for me to try to
8  address the issues of lead counsel at the next status. And so
9  that certainly at this point is my plan is that since all the
10 responses have been filed for me to address that either prior
11 to or at the next status hearing. That's on May 29. Or I'm
12 sorry. The --
13     MS. FEGAN: That's, right, your Honor.
14     THE COURT: Right, it is on May 29, although we have
15 to see where we are.
16     And I think providing that sort of definitiveness
17 might prove helpful going forward. I recognize, Ms. Fegan, Mr.
18 Mester, what you are saying with regard to the momentum and the
19 relationship that the parties have built. And this is some
20 concern that I have addressed with the parties early on is, I
21 don't know to what extent how good it is to kick some of these
22 disputes down the road. And so it is my intention on May 29 to
23 address the issues of lead counsel.
24     All right. But that said, the motion to stay the
25 proposed case management schedule deadline that was previously

1  set for May 15, that is granted.  With regard to the -- let's
2  talk about May 29, which is obviously next week.  Do the
3  parties think they will have much further to report at that
4  point?
5          MR. MESTER:  No, your Honor.
6          MS. FEGAN:  No.  My suggestion, your Honor, would be,
7  if the Court is inclined to rule on the lead counsel
8  applications, perhaps it's best just to do so without further
9  oral argument.  I don't think that it's going to enlighten the
10 Court any further as to our positions.  And we may just not
11 need the status.
12         MR. MESTER:  I certainly concur with that, your Honor.
13         THE COURT:  Very well.  I think that's what I will do.
14 I will go ahead and rule on the issue of lead counsel by mail.
15 Let's go ahead and set this case then for further status.  We
16 will strike the 29th date and set this for status, how does
17 July 29 look?
18         MS. FEGAN:  Good, your Honor.
19         THE COURT:  Okay.
20         THE CLERK:  9:00 o'clock?
21         THE COURT:  Let's do it at 10:00.
22         THE CLERK:  July 29 at 10:00 o'clock.
23         THE COURT:  And again, if anyone wants to appear by
24 phone if they are out of town, they are more than welcome to do
25 so.

1        One logistical issue, housekeeping matter, is that the
2   NCAA did file a notice with the Court with regard to other
3   cases, tagalong cases, that have been filed.  Have you provided
4   notice to the MDL with regard to those type of cases?
5        MR. MESTER:  On all but one, which we will be doing
6   this week, your Honor.
7        THE COURT:  Okay.  So you will take care of that this
8   week.
9        MR. MESTER:  Yes, your Honor.
10       THE COURT:  Very well.  As I said, we will rule on the
11  lead counsel issue shortly.  And otherwise unless the parties
12  raise any other issues between now and July 29, I will see you
13  then.
14       MS. FEGAN:  Thank you, your Honor.
15       THE COURT:  Thank you.
16    (Which were all the proceedings had at the hearing of the
17       within cause on the day and date hereof.)
18                          CERTIFICATE
19       I HEREBY CERTIFY that the foregoing is a true, correct
20  and complete transcript of the proceedings had at the hearing
21  of the aforementioned cause on the day and date hereof.
22
23   /s/Alexandra Roth                              5/27/2014
    _____      _____
24   Official Court Reporter                        Date
     U.S. District Court
25   Northern District of Illinois
     Eastern Division