**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | ) ) ) ) ) ) ) ) ) ) |

**MDL No. 2492**

**Master Docket No. 1:13-cv-09116**

**Judge John Z. Lee**

**Magistrate Judge Geraldine Soat Brown**

**DECLARATION OF MEDIATOR AND FORMER
UNITED STATES DISTRICT COURT JUDGE LAYN R. PHILLIPS
IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT**

LAYN R. PHILLIPS declares as follows:

1.      I am the one of the mediators in this action and a former United States District Court Judge.  I submit this declaration in support of preliminary approval of the proposed class action settlement between the proposed Settlement Class and the National Collegiate Athletic Association ("NCAA").

2.      At the request of the parties, I conducted an extensive mediation over the course of several months that, when combined with the subsequent effort of the Honorable Wayne R. Andersen (Ret.), produced the proposed settlement that I understand is now being presented to the Court for preliminary approval.  The parties negotiated much of this settlement with my supervision.  The settlement discussions were vigorous, at arm's length, and in good faith.  Based on my extensive experience as a mediator and former judge, my detailed discussions with the parties, and the information made available to me during the mediation, I believe that the proposed settlement (plus attorneys' fees and reasonable costs) represents a fair and reasonable

settlement given the substantial risks involved for both sides. Without waiver of the mediation privilege, I describe below the reasons for my view.

**Qualifications and Experience**

3.      I am a partner at Irell & Manella LLP. I am a member of the bars of Oklahoma, Texas, California and the District of Columbia, as well as the United States Courts of Appeals for the Ninth and Tenth Circuits. I am the former United States Attorney for the Northern District of Oklahoma and a former United States District Court Judge for the Western District of Oklahoma. I founded the Irell & Manella Alternative Dispute Resolution Center, where I have headed the firm's ADR practice since 1991.

4.      I have successfully mediated complex commercial cases, including hundreds of class actions, for over twenty years. Before that, as a federal judge, I presided over hundreds of settlement conferences in complex business disputes and class actions. I have been appointed as a Special Master by numerous federal courts in complex civil proceedings. It is not uncommon for me to settle billions of dollars of disputes on an annual basis. It is my understanding that I was selected by the parties to mediate this important matter in part because of my extensive experience resolving complex, high-visibility disputes of this kind.

**The Mediation Process**

5.      During my supervision, the parties engaged in arm's length, vigorous negotiations over the course of approximately four months. I conducted three face-to-face mediation sessions, each of which included meetings with both sides present, as well as many separate caucus sessions where I met only with one side or the other. I also engaged in telephonic follow-up calls with each party to address issues that were discussed but not resolved in the initial mediation sessions. In addition, counsel for the parties conducted extensive negotiations outside

my presence pursuant to requests that I gave to them. I dedicated considerable time to the joint mediation sessions as well as discussions with the parties outside these formal sessions.

6.      Throughout the process, the parties asserted their respective positions emphatically and persuasively. On occasion, the negotiations were contentious (although both sides were always professional). Because of the number and complexity of issues to be resolved, members of my mediation team and I sometimes multi-tracked mediation efforts by separately addressing different sets of issues with various counsel and the parties' experts during in-person mediation sessions, as well as during the telephonic follow-up process.

7.      Plaintiffs and the NCAA each were represented by highly experienced, effective and aggressive counsel who were steeped in the facts of the case, the applicable law, and the underlying science on concussions. I was satisfied throughout the negotiations that the parties' positions were thoroughly explored and advanced. These counsel presented an impressive array of legal experience, talent, and judgment.

8.      During the course of the mediation and at my request, the parties submitted various mediation materials to me and made multiple presentations regarding their positions on various factual and legal issues. The in-person mediation sessions involved extensive discussions of the strengths and weaknesses of the parties' positions and of possible settlement structures.

9.      The mediation process benefited substantially from the nationally renowned medical experts that Plaintiffs and the NCAA retained to assist them in the settlement negotiations. These medical experts advised the parties on various medical issues related to concussion management and a potential medical monitoring program. I met personally with certain of the parties' experts during the mediation to ensure that the parties were considering all

relevant issues. The parties' experts answered many of the questions I had about how the proposed settlement would operate, and explained the bases for their analyses and conclusions. Through my review of these experts' written reports and through conversations I had with certain of them, it became clear that both parties were receiving advice from physicians who had decades of experience related to concussions and subconcussive hits, were well-versed in the relevant medical literature, and were highly qualified to opine on the effectiveness of a settlement that would provide medical monitoring to student-athletes who may have sustained concussions or subconcussive hits during their playing careers.

10. As would be expected, the proposed terms of the settlement changed substantially over time. Although the parties shared a common goal, they repeatedly proposed very different visions of how to achieve that goal. Throughout the mediation process, I worked constructively with counsel for both parties and suggested they consider possible compromises and solutions.

11. Plaintiffs' counsel zealously represented the proposed class at every step throughout the mediation process. They repeatedly expressed their commitment to protect the interests of current and former NCAA student-athletes and pushed relentlessly to obtain the greatest possible benefits for the proposed class in a settlement that the NCAA could accept. They made clear they were prepared to litigate and try this case if they could not achieve a fair and reasonable settlement result for the proposed class, even though pursuing litigation would risk losing any chance to be compensated for the significant time, effort and money they had invested to date.

12. At the same time, Plaintiffs' counsel recognized – correctly in my judgment – the significant legal and factual hurdles Plaintiffs faced if they proceeded with the litigation. First and foremost, a litigation of this size and complexity can take many years to litigate. By

resolving the litigation at this time, Plaintiffs' counsel, in part, sought to have return-to-play and concussion management rules implemented as soon as possible to help prevent concussion-related injuries. They also sought to ensure that medical monitoring will be available for current and former NCAA student-athletes as soon as possible.

13. Plaintiffs faced several other substantial obstacles to their medical monitoring claim. For example, there was a strong chance the Court would rule that many states do not recognize a claim for medical monitoring. Thus a settlement that provides medical monitoring for current and former NCAA student-athletes, regardless of the state in which they reside, is a significant achievement.

14. In addition, some members of the proposed class may have been concussed many decades ago at a time when concussion science was different than it is today. The science regarding the potential links between concussions and subconcussive hits and subsequent cognitive impairment has evolved significantly in recent years and continues to evolve.

15. Plaintiffs faced other legal hurdles as well, including, but not limited to, various statute of limitations arguments and the assertion of the "assumption of risk" defense based on the NCAA's argument that student-athletes knew at the time they played NCAA sports that their sport could be a dangerous activity and that they assumed that risk when they chose to play.

16. For its part, the NCAA also faced risks if it continued to defend this litigation. For example, the Court may have rejected the NCAA's statute of limitations and assumption of risk defenses. If the NCAA did not succeed on dismissing all of the cases consolidated in this multidistrict litigation proceeding, it would inevitably face years of very expensive discovery and potentially dozens of trials in state and federal courts around the country. Each potential lawsuit

carried with it the risk of a significant damage verdict and a negative precedent that could affect subsequent cases.

17.     In short, both sides faced substantial risks if they chose to litigate these matters and stood to benefit significantly if they could fairly resolve their differences.

**The Fairness and Adequacy of the Proposed Settlement**

18.     The negotiated settlement produced by the mediation process, as reflected in the parties' proposed settlement agreement, represents a thoughtful, deliberative, and comprehensive settlement that will benefit thousands of NCAA current and former student-athletes. If the settlement is approved, current and former NCAA student-athletes will be immediately eligible to participate an innovative screening program and, depending on the outcome of that screening, may be entitled to receive a free in-person medical evaluation. The benefits will be made available promptly after the Effective Date of the settlement and will remain available for 50 years, ensuring that class members who appear healthy today but subsequently develop medical issues that may be related to concussions or subconcussive hits sustained during college can obtain medical monitoring at no cost to them through the settlement fund.

19.     During the mediation, considerable attention was paid to the size of the proposed common fund and to the ability of that fund to satisfy the anticipated cost of medical monitoring for class members who qualify. Plaintiffs and the NCAA were both assisted in these evaluations by qualified actuaries and other experts, and I am comfortable that the proposed common fund is in fact adequate.

20.     Based upon my extensive experience in this case and other complex actions, I believe that the settlement benefits provided to the class members as described above are fair and reasonable in light of the parties' claims and defenses, and the expense, uncertainty and time

inherent in litigating the current and former NCAA student-athletes' claims to judgment.  In particular, it is my considered judgment that Plaintiffs would be unlikely to have obtained more money and benefits without going through years of discovery and trial, where they would face substantial risks of loss due if they could not prove negligence or fraud on the part of the NCAA. The costs and uncertainty of litigation would not end with a trial court judgment, as the losing party likely would appeal, resulting in years of appellate proceedings before any judgment would be finalized.

21.     I also served as a mediator in <u>In re National Football League Players' Concussion Injury Litigation</u>, Case No. 2:12-md-02323 (E.D. Pa.).  The facts and circumstances of this litigation and that litigation, however,  vary in a number of ways as do the scope and purpose of the two proposed settlements reached in both litigations.  As a result, I believe that it would be difficult to undertake a meaningful comparison of the two settlements.

<u>Conclusion</u>

For all the reasons set forth above, the proposed settlement of this litigation was the result of a fair, vigorous, and arm's length mediated negotiation process.  The settlement itself is, in my judgment, fair and reasonable to the proposed class members, given the risks of these litigations and the cost and complexity of trying them to judgment.  I therefore support Plaintiffs' motion for preliminary approval of the proposed settlement.

I declare that the foregoing is true and correct.

Executed this 27th day of July, 2014.


_____
LAYN R. PHILLIPS
Former United States District Court Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on July 28, 2014, a true and correct copy of the foregoing was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

By: */s/ Steve W. Berman*_____