**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | ) ) ) ) ) ) ) ) ) ) | **MDL No. 2492** |
| | | **Master Docket No. 1:13-cv-09116** |
| | | **This Document Relates to All Cases** |
| | | **Judge John Z. Lee** |
| | | **Magistrate Judge Geraldine Soat Brown** |

**DEFENDANT NCAA'S MOTION FOR LEAVE TO FILE
A SUPPLEMENTAL MEMORANDUM CONCERNING
FED. R. CIV. P. 23(b)(2) AND FED. R. CIV. P. 23(b)(3)**

Defendant National Collegiate Athletic Association (the "NCAA"), by and through its

undersigned counsel, respectfully requests leave from the Court to file a supplemental

memorandum (attached hereto as Exhibit A) regarding Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ.

P. 23(b)(3). In support of this motion, the NCAA states as follows:

1.     On July 29, 2014, Plaintiffs Adrian Arrington, Derek Owens, Kyle Solomon,

Angela Palacios, Abram Robert Wolf, Sean Sweeney, Jim O'Conner, Dan Ahern, Paul Morgan,

Jeffrey Caldwell, John DuRocher and Sharron Washington ("Plaintiffs") filed a motion seeking

preliminary approval of a settlement agreement (the "Settlement Agreement") entered into with

the NCAA. See Pls.' Motion for Preliminary Approval (Dkt. #64).

2.     The motion for preliminary approval was addressed by the Court on July 29,

2014, and during that hearing, the Court raised certain issues regarding Fed. R. Civ. P. 23(b)(2)

and Fed. R. Civ. P. 23(b)(3). See Minute Entry (Dkt. #73); see also July 29, 2014 Hr'g Tr., Ex.

B hereto, at 41:12-42:13.

3.     Shortly after the hearing, the Court issued a case management order instructing

Plaintiffs' counsel to "file a supplemental memorandum in support of their Motion for

Preliminary Approval by August 8, 2014." Case Management Order No. 2 (Dkt. #74) at 2. The

NCAA, however, understood the Court at the July 29, 2014 hearing to be requesting

supplemental briefing from both Plaintiffs and the NCAA. See July 29, 2014 Hr'g Tr., Ex. B

hereto, at 44:5-13.

4.      The NCAA believes the attached memorandum may be useful to the Court as it

addresses the issues regarding Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) that were

raised at the July 29, 2014 hearing. See Exhibit A hereto.

WHEREFORE, the NCAA respectfully requests leave to file the supplemental

memorandum attached hereto as Exhibit A.


Dated:  August 8, 2014                          Respectfully submitted,

                                                /s/ Mark S. Mester
                                                Lead Counsel for Defendant
                                                National Collegiate Athletic Association

Mark S. Mester
   mark.mester@lw.com
Johanna M. Spellman
   johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

J. Christian Word
   christian.word@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | **MDL No. 2492** |
| **IN RE NATIONAL COLLEGIATE** | ) | |
| **ATHLETIC ASSOCIATION STUDENT-** | ) | **Master Docket No. 1:13-cv-09116** |
| **ATHLETE CONCUSSION INJURY** | ) | |
| **LITIGATION** | ) | **This Document Relates To:** |
| | ) | **All Cases** |
| | ) | |
| | ) | **Judge John Z. Lee** |
| | ) | |
| | ) | **Magistrate Judge Geraldine Soat Brown** |

I, Mark S. Mester, certify that on August 8, 2014, a true and correct copy of the foregoing

Defendant NCAA's Motion For Leave To File A Supplemental Memorandum Concerning Fed.

R. Civ. P. 23(b)(2) And Fed. R. Civ. P. 23(b)(3) was filed through the ECF system and served

upon the following parties by prepaid first class mail:

Timothy J. McIlwain
TIMOTHY J. MCILWAIN, ATTORNEY AT
LAW, LLC
89 River Street #1538
Hoboken, NJ 07030
Telephone:  877-375-9599
Facsimile:  609-450-7017

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  415-956-1000
Facsimile:  415-956-1008

Edgar D. Gankendorff
PROVOSTY & GANKENDORFF, L.L.C.
650 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone:  504-410-2795
Facsimile:  504-410-2796

/s/ Mark S. Mester

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE NATIONAL COLLEGIATE** | ) | **MDL No. 2492** |
| **ATHLETIC ASSOCIATION STUDENT-** | ) | |
| **ATHLETE CONCUSSION INJURY** | ) | **Master Docket No. 1:13-cv-09116** |
| **LITIGATION** | ) | |
| | ) | **This Document Relates to All Cases** |
| | ) | |
| | ) | **Judge John Z. Lee** |
| | ) | |
| | ) | **Magistrate Judge Geraldine Soat Brown** |

**EXHIBITS TO
DEFENDANT NCAA'S MOTION FOR LEAVE TO FILE
A SUPPLEMENTAL MEMORANDUM CONCERNING
FED. R. CIV. P. 23(B)(2) AND FED. R. CIV. P. 23(B)(3)**

A      Submission of the NCAA Regarding Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) (with exhibits)

B      Excerpted Transcript of July 29, 2014 Proceedings before the Honorable John Z. Lee

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL No. 2492<br><br>Master Docket No. 1:13-cv-09116<br><br>This Document Relates To:<br>All Cases<br><br>Judge John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

SUBMISSION OF THE NCAA REGARDING
FED. R. CIV. P. 23(B)(2) AND FED. R. CIV. P. 23(B)(3)

Defendant National Collegiate Athletic Association ("NCAA") respectfully submits the following memorandum concerning the issues raised by the Court at the July 29, 2014 hearing regarding Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3):

I.        PERTINENT FACTUAL BACKGROUND

On July 29, 2014, Plaintiffs Adrian Arrington, et al. ("Plaintiffs") filed a motion for preliminary approval of a proposed settlement of these consolidated actions.[1] See Pls.' Motion for Preliminary Approval (Dkt. #64).  That motion was, in turn, the subject of discussion before the Court at the July 29, 2014 hearing.  See July 29, 2014 Hr'g Tr., Ex. 1 hereto, at 19-20.

During the July 29, 2014 hearing, the Court raised the question of whether a settlement class certified under Fed. R. Civ. P. 23(b)(2) can waive rights that might otherwise only be

---

[1]     The motion for preliminary approval was filed on behalf of the following individuals: Adrian Arrington, Derek Owens, Kyle Solomon, Angela Palacios, Abram Robert Wolf, Sean Sweeney, Jim O'Conner, Dan Ahern, Paul Morgan, Jeffrey Caldwell, John DuRocher and Sharron Washington.  See Pls.' Motion for Preliminary Approval (Dkt. #64).

properly pursued by a class certified under Fed. R. Civ. P. 23(b)(3).[2]  See July 29, 2014 Hr'g Tr.,

Ex. 1 hereto, at 41:12-42:13.  This issue was briefly addressed with the Court, but the Court

asked for the submission of supplemental briefing on the issue.[3]  See id. at 42:15-43:15.

## II.      RELEVANT PROVISIONS OF THE SETTLEMENT AGREEMENT

Mindful of the United States Supreme Court's decision in Dukes and the uncertainty over

the proper application of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3), the parties agreed

to the certification of the Settlement Class under Fed. R. Civ. P. 23(b)(2).  See Settlement

Agreement (Dkt. #64-1) at ¶ XI(A), p. 36.  They also agreed, however, to provide all members of

the Settlement Class with the procedural protections that are required by Fed. R. Civ. P. 23(b)(3),

namely (1) notice of the Settlement to all members of the Settlement Class and (2) the

opportunity for members of the Settlement Class to opt out of the Settlement Class.[4]  See id. at

¶¶ X, XII(D) , pp. 35-36, 44.

If a member of the Settlement Class opts out, then he or she will not receive the benefits

of the Settlement, but he or she will likewise not be subject to the class waiver called for by the

Settlement Agreement.  See Settlement Agreement (Dkt. #64-1) at ¶ XII(D)(4), p. 45.  And all

members of the Settlement Class who do not opt out will receive the benefits of the Settlement

---

[2]      This issue was also briefly addressed at the May 22, 2014 hearing.  See May 22, 2014 Hr'g
Tr., Ex. 2 hereto, at 5:11-8:14.

[3]      We understood the Court to be requesting at the July 29, 2014 hearing supplemental briefing
from Plaintiffs as well as the NCAA.  See July 29, 2014 Hr'g Tr., Ex. 1 hereto, at 44:5-13.  The
July 29, 2014 Order, however, only directs Plaintiffs' counsel to submit a supplemental
memorandum on this issue.  See Case Management Order No. 2 (Dkt. #74) at 2.  Accordingly,
we have respectfully requested leave to file this paper.  See NCAA's Motion for Leave, filed
contemporaneously herewith.

[4]      Capitalized terms in this paper shall have the meaning ascribed to them in the Settlement
Agreement, which itself is Exhibit 1 to Plaintiffs' motion for preliminary approval.  See
Settlement Agreement (Dkt. #64-1).

but will nevertheless be free to pursue on an individual basis any claims for bodily injury or personal injury as they see fit.  See id. at ¶ XIV(A)(7), p. 48.

In agreeing to provide these additional protections to the Settlement Class, the intent of the parties was to avoid the question of whether medical monitoring claims are properly certified under Fed. R. Civ. P. 23(b)(2) or Fed. R. Civ. P. 23(b)(3).  See Settlement Agreement (Dkt. #64-1) at ¶¶ X, XII(D), pp. 35-36, 44.  By providing notice and an opportunity to opt out, however, the Settlement Class would be tantamount to a Rule 23(b)(3) class in the manner outlined by the Seventh Circuit in Lemon, Jefferson and Johnson.  See disc. infra at 10-12; see also Lemon v. Int'l Union of Operating Eng'rs, 216 F.3d 577, 582 (7th Cir. 2000); Jefferson v. Ingersoll, 195 F.3d 894, 898 (7th Cir. 1999); Johnson v. Mereiter Health Servs. Emp. Ret. Plan, 702 F.3d 364, 370-71 (7th Cir. 2012).

### III.  DISCUSSION

Relevant authorities addressing class waivers and Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) are discussed below.  See disc. infra at 3-12.

### A.  The Ability To Pursue Claims On A Class Basis Is Neither A Substantive Right Nor A Remedy

As the Supreme Court, Seventh Circuit and numerous other courts have repeatedly held, the ability to pursue claims on a class basis is not a substantive right, and class treatment is not itself a remedy.  See, e.g., Ortiz v. Fibreboard, 527 U.S. 815, 845 (1999) (Rule 23 "'shall not abridge, enlarge or modify any substantive right.'") (quoting Amchem v. Windsor, 521 U.S. 591, 613 (1997)).  As the Supreme court made clear in Amchem, Rule 23 does not abridge, enlarge or modify any substantive rights:

3

Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure "shall not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b).

Amchem, 521 U.S. at 613; see also, e.g., Bonanno v. Quizno's, 2009 U.S. Dist. LEXIS 37702, *38-39 (D. Colo. 2009) (upholding class action waiver and holding that "in short, Plaintiffs do not have a substantive 'right' to proceed as a class").[5]

Last year, the Second Circuit echoed the Supreme Court's earlier holding in Amchem. See Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 488 (2d Cir. 2013). In Parisi, the Second Circuit again confirmed that Rule 23 does not create a non-waivable right to pursue claims on a class basis:

> "[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims."
>
>                                             . . .
>
> The availability of the class action Rule 23 mechanism presupposes the existence of a claim; Rule 23 cannot create a non-waivable, substantive right to bring such a claim.

---

[5]     Although presumably an issue more suitable for consideration at final approval, the Supreme Court's decision in Amchem also makes clear that the feasibility of litigating bodily injury or personal injury claims on a class basis is very much open to question. See Amchem, 521 U.S. at 625 (affirming the Third Circuit in reversing class certification in an asbestos injury case and noting "[t]he Committee's warning . . . continues to call for caution when individual stakes are high and disparities among class members great"); see also, e.g., In re Am. Med. Sys., 75 F.3d 1069, 1089 (6th Cir. 1996) (noting "a national trend to deny class certification in drug or medical product liability/personal injury cases" and collecting cases); In re PPA Prods. Liab. Litig., 208 F.R.D. 625, 631-32 (W.D. Wash. 2002) (denying class certification in products liability case); Steering Comm. v. Exxon, 461 F.3d 598, 602 (5th Cir. 2006) (affirming denial of class certification in suit alleging personal injury from exposure to hazardous substance); In re Vioxx, 239 F.R.D. 450, 461 (E.D. La. 2006) ("[C]ertification is inappropriate where each plaintiff's claim will be highly individualized with respect to proximate causation, including individual issues of exposure, susceptibility to illness, and types of physical injuries."); Dhamer v. Bristol-Myers, 183 F.R.D. 520, 532 (N.D. Ill. 1998) (denying class certification in case alleging personal injury associated with nasal spray use).

Id. at 488 (2d Cir. 2013) (quoting Deposit Guaranty v. Roper, 445 U.S. 326, 332 (1980)) (citations omitted); see also, e.g., D.R. Horton v. NLRB, 737 F.3d 344, 357-58 (5th Cir. 2013) ("The use of class action procedures . . . is not a substantive right. . . . Thus, while a class action may lead to certain types of remedies or relief, a class action is not itself a remedy.").

Most recently, the Supreme Court addressed the issue of class waivers in Concepcion and Italian Colors. See AT&T Mobility v. Concepcion, 131 S.Ct. 1740, 1753 (2011); Am. Express v. Italian Colors Rest., 133 S. Ct. 2304, 2310-12 (2013). In Concepcion, the Supreme Court upheld a class action waiver contained in an arbitration agreement, and in Italian Colors, the Supreme Court reaffirmed its ruling in Concepcion, confirming that there is no non-waivable right to seek class treatment of substantive claims:

> One might respond, perhaps, that federal law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration. But we have already rejected that proposition in [Concepcion].

Italian Colors, 133 S.Ct. at 2310; see also, e.g., In re Trans Union Corp. Privacy Litig., 741 F.3d 811, 814 (7th Cir. 2014); Lewis v. Am. Cash Advance Ctrs., 2014 U.S. Dist. LEXIS 917, *8-10 (S.D. Ill. 2014) (relying on both Concepcion and Italian Colors and upholding class waiver and compelling individual arbitration).

### B. The Seventh Circuit And Various Other Courts Have Repeatedly Affirmed And Approved Class Settlements That Include Class Waivers

In part because the ability to pursue claims on a class basis is not a substantive right, the Seventh Circuit and various other courts routinely affirm and uphold settlements that include class waivers. See, e.g., Trans Union, 741 F.3d at 814 n.1; see also, e.g., Sylvester v. Wintrust Fin., 2013 U.S. Dist. LEXIS 140381, *22-33 (N.D. Ill. 2013) (holding that prospective plaintiffs

who signed previous settlement agreements could not join class action involving released claims and rejecting the argument that "the clause is unenforceable because it purports to waive the plaintiffs' federal statutory right to proceed collectively or in this particular suit—rights the plaintiffs argue may not be waived"); Lewis, 2014 U.S. Dist. LEXIS 917 at *8-9 ("More recently, [Italian Colors] held that there is no exception to the FAA's enforcement of agreements to arbitrate where the cost of individual dispute resolution would greatly exceed the award available to any individual."); Homa v. Am. Express, 494 Fed. Appx. 191, 196 (3d Cir. 2012) ("Even if Homa cannot effectively prosecute his claim in an individual arbitration that procedure is his only remedy, illusory or not."); Muriithi v. Shuttle Express, 712 F.3d 173, 181 (4th Cir. 2013) ("[T]he district court erred in holding that the class action waiver was unconscionable."); Pendergast v. Sprint Nextel, 691 F.3d 1224, 1236 (11th Cir. 2012) ("Under Concepcion, both the class action waiver and the arbitration clause must be enforced according to their terms."); Fresco v. Auto. Directions, 2009 U.S. Dist. LEXIS 125233, *23 (S.D. Fla. 2009) (granting final approval under Rule 23(b)(2) to class settlement in which class members waived subsequent right to pursue class actions under Rule 23(b)(3) and certain statutory damages).

In Trans Union, for example, the Seventh Circuit affirmed, for a settlement class certified under Fed. R. Civ. P. 23(b)(1), a class settlement agreement that contained a waiver of all class claims, including claims for money damages that themselves could only be pursued under Fed. R. Civ. P. 23(b)(3). See Trans Union, 741 F.3d at 813-14; see also Order Granting Final Approval (Dkt. #515), In re Trans Union Corp. Privacy Litig., Case No. 1:00-cv-04729 (N.D. Ill., filed Sept. 17, 2008), Ex. 3 hereto, at ¶ 6, pp. 9-10 (certifying settlement class in Trans Union pursuant to Fed. R. Civ. P. 23(b)(1)(A)). Moreover, the parallels between the Settlement

Agreement in this case and the settlement agreement in <u>Trans Union</u> are significant, as Judge

Hamilton's description of the <u>Trans Union</u> settlement makes plain:

> This appeal arises from an unusual class settlement for an estimated 190 million class members. Class settlements usually aim to impose a final and definitive resolution of a dispute, but this one did not. It offered class members certain benefits, including cash, in return for giving up only their right to sue the defendant through class actions or other collective actions. But the settlement left the door open for the vast majority of class members to file individual suits against the defendant, the credit reporting company Trans Union.

<u>Trans Union</u>, 741 F.3d at 812; <u>see also</u>, <u>e.g.</u>, Settlement Agreement (Dkt. #64-1) at ¶ II(NN),

pp. 12-13 (specifically excluding "individual personal or bodily injury claims" from the

definition of "Released Claims").[6]

In the relatively few cases, however, where the approval of a class waiver has been

challenged in the context of a class action settlement, the question of whether members of the

settlement class would receive notice and an opportunity to opt out has been critical. <u>See</u>, <u>e.g.</u>,

<u>Felix v. Northstar Location Servs.</u>, 290 F.R.D. 397, 407 (W.D.N.Y. 2013); <u>see also</u> <u>Crawford v.</u>

---

[6]     The Seventh Circuit approved the class waiver in <u>Trans Union</u> in spite of the fact that the size of the underlying claims at issue in that matter was sufficiently small (<u>i.e.</u>, $100-$1,000) that the inability to proceed on a class basis might well have made it impractical to pursue the claims on an individualized basis:

> In exchange for class members agreeing not to proceed further on a class basis, Trans Union offered online credit monitoring to everyone in the class. Even those who accepted this "basic" in-kind relief were free to head straight back to court to file their claims, so long as they filed individually. <u>We set aside for a moment whether it would make economic sense for them to do so.</u> The statute of limitations, at least, would be no bar. Trans Union agreed to waive that defense for pending PSCs and those commenced within two years.

<u>Trans Union</u>, 741 F.3d at 813-14 (emphasis supplied) (footnote omitted). <u>But see</u> <u>Italian Colors</u>, 133 S.Ct. at 2310 (holding that class waiver was enforceable even if that meant that the underlying claims could <u>not</u> feasibly be pursued on an individualized basis). In contrast, however, claims for bodily injury against the NCAA could feasibly be pursued <u>without</u> resort to the class device, even under the assessment of the lawyers who filed <u>Nichols</u>. <u>See</u> July 29, 2014 Hr'g Tr., Ex. 1 hereto, at 37:5-10 (claiming that most claims for bodily injury of members of the Settlement Class are "worth five figures").

Equifax, 201 F.3d 877, 882 (7th Cir. 2000) (noting lack of notice and an opportunity to opt out in connection with class settlement in which "class members received nothing"). In Felix, for example, the proposed settlement (which included a class waiver) was not approved, but a primary reason was because notice and opt-out rights had not been provided to the settlement class. See Felix, 290 F.R.D. at 407-08. But see, e.g., Trans Union, 741 F.3d at 819 (affirming approval of settlement for settlement class certified under Rule 23(b)(1) that provided for class waiver but did not allow opt outs).[7]

### C. Uncertainty Over Whether Class Claims For Medical Monitoring Are Properly Considered Under Fed. R. Civ. P. 23(b)(2) Or Fed. R. Civ. P. 23(b)(3)

In the wake of the Supreme Court's decision in Dukes, there has been continuing uncertainty over whether class claims for medical monitoring are properly considered under Fed. R. Civ. P. 23(b)(2) or Fed. R. Civ. P. 23(b)(3). Compare Donovan v. Philip Morris, 2012 U.S. Dist. LEXIS 37974, *37 (D. Mass. 2012) (refusing to decertify class certified under Rule 23(b)(2) because "there has been no change in law under Dukes and its progeny as to the issue of whether the relief sought by the plaintiffs is sufficiently injunctive to merit decertification of the class in this case under Fed R. Civ. P. 23(b)(2)"), with Gates v. Rohm & Haas, 655 F.3d 255, 263 (3d Cir. 2011) (questioning whether certification of the proposed medical monitoring class could ever be proper under Rule 23(b)(2) in light of the holding in Dukes). While the Supreme

---

[7] Notably, the settlement in Trans Union did not allow class members to opt out, even though the settlement precluded them from pursuing class claims for money damages, which could only be pursued pursuant to Fed. R. Civ. P. 23(b)(3). See Mem. in Supp. of Motion for Preliminary Approval (Dkt. #462-2), In re Trans Union Corp. Privacy Litig., Case No. 1:00-cv-04729 (N.D. Ill., filed May 20, 2008), Ex. 4 hereto, at 9 ("The parties shall seek certification of the Settlement Class above pursuant to Rule 23(b)(1)(A), with enhanced notice and a full opportunity to object but without the right to opt out from release of their procedural rights only.").

Court ruled in Dukes that a request for backpay under Title VII was tantamount to a claim for money damages under Fed. R. Civ. P. 23(b)(3) and thus could not properly be pursued under Fed. R. Civ. P. 23(b)(2), the question as to the proper characterization of other types of claims has been less clear.  See Wal-Mart v. Dukes, 131 S.Ct. 2541, 2560-61 (2011); see also, e.g., Ellis v. Costco, 657 F.3d 970, 986-88 (9th Cir. 2011) (vacating certification of Rule 23(b)(2) class to allow consideration of the ruling in Dukes and holding that the relevant consideration is no longer what relief "predominates" but rather "what procedural safeguards are required by the Due Process Clause for the type of relief sought").

With respect to medical monitoring in particular, decisions before and after Dukes have run the gamut.  See, e.g., Gates, 655 F.3d at 262-63 ("The remedy of medical monitoring has divided courts on whether plaintiffs should proceed under Rule 23(b)(2) or Rule 23(b)(3)."). Some courts have held that medical monitoring claims should be assessed under Fed. R. Civ. P. 23(b)(2) without regard to the content of the proposed medical monitoring program, whereas other courts have ruled that various types of medical monitoring claims must be addressed under Fed. R. Civ. P. 23(b)(3).  Compare In re Welding Fume Prods. Liab. Litig., 245 F.R.D. 279, 290 (N.D. Ohio 2007) (observing that the plaintiffs "ask the Court to establish an elaborate medical monitoring program of its own, managed by court-appointed court-supervised trustees, pursuant to which a plaintiff is monitored by particular physicians and the medical data produced is utilized for group studies" and holding "Courts routinely find that, under these circumstances, the [requested] relief constitutes injunctive relief as required by Rule 23(b)(2).") (quotations omitted)),  with Thomas v. FAG Bearings, 846 F. Supp. 1400, 1404 (W.D. Mo. 1994) ("[P]laintiffs argue that class treatment is appropriate [under Rule 23(b)(2)] because they seek future medical monitoring.  While plaintiffs seek to couch such damages in the guise of

injunctive relief for the purposes of this motion, their complaint requests 'the future costs of medical monitoring.' Such costs are nothing more than compensation for necessary medical expenses reasonably anticipated to be incurred in the future. Absent anything more than an exchange of money . . . these damages cannot be injunctive in nature. They are simply another element of tort damages.") (quotations omitted). And a few courts have even suggested that in light of Dukes, all class claims for medical monitoring must be considered under Fed. R. Civ. P. 23(b)(3). See, e.g., Gates, 655 F.3d at 263 ("In light of the Supreme Court's recent decision in Dukes, we question whether the kind of medical monitoring sought here can be certified under Rule 23(b)(2) but we do not reach the issue.").[8]

### D. The Settlement Agreement Was Designed To Adhere To Existing Seventh Circuit Precedents With Respect To Notice And An Opportunity To Opt Out

In the aftermath of the 1991 Amendments to Title VII, uncertainty arose over whether claims for money damages "predominated" in employment class actions.[9] See, e.g., Jefferson,

---

[8]  This uncertainty is also reflected in the pleadings in several of the actions consolidated before this Court, including the pleadings in Arrington. See, e.g., Second Am. Compl. (Arrington Dkt. #135) at ¶ 227 (seeking certification of medical monitoring class under both Rule 23(b)(2) and Rule 23(b)(3)); First Am. Compl. (DuRocher Dkt. #9) at ¶ 128 (same); Compl. (Powell Dkt. #1) at ¶ 90 (same); Compl. (Nichols Dkt. #1) at ¶ 41 (same). But see Pls.' Mot. for Class Cert. (Arrington Dkt. #174) at 1 (moving for certification of medical monitoring claims under Rule 23(b)(2) only).

[9]  Prior to the 1991 Amendments to Title VII, compensatory and punitive damages were not available under the statute, and the only available relief was injunctive relief and backpay, which itself was considered "equitable" in nature, allowing for certification under Fed. R. Civ. P. 23(b)(2). See, e.g., Jefferson, 195 F.3d at 896. As a result, requests for certification of employment class claims were routinely considered (and granted) under Fed. R. Civ. P. 23(b)(2). The 1991 Amendments, however, provided a much broader array of relief to claimants, and the issue then became whether the claims for money damages, which would have to be considered under Fed. R. Civ. P. 23(b)(3), "predominated" over the claims for injunctive relief, which could be considered under the less restrictive requirements of Fed. R. Civ. P. 23(b)(2) (i.e., no notice or opportunity to opt out). See id. at 896, 898.

195 F.3d at 898. The Seventh Circuit addressed this issue in a series of decisions beginning with

Jefferson and Lemon, which emphasized the need for notice and an opportunity to opt out if

money damages were anything other than "incidental" to the requested equitable relief. See id.

at 897-99; Lemon, 216 F.3d at 580-81. In Lemon in particular, the Seventh Circuit addressed

various ways to approach this problem and endorsed the approach the parties in this case agreed

to in the Settlement Agreement now before the Court:

> The third option discussed in Jefferson is that the district court might certify the
> class under Rule 23(b)(2) for both monetary and equitable remedies but exercise
> its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class
> members with personal notice and opportunity to opt out, as though the class was
> certified under Rule 23(b)(3).

Lemon, 216 F.3d at 582 (citations omitted); see also id. ("We affirmed and held that the district

court provided opportunities to object that "were tantamount to the protections envisioned by

Fed. R. Civ. P. 23(c)(2) [for classes certified under subsection (b)(3)].") (quoting Williams v.

Burlington Northern, 832 F.2d 100, 104 (7th Cir. 1987)).

The approach advocated in Jefferson and Lemon was later questioned by the Seventh

Circuit in Allstate, but the more recent decision of the Seventh Circuit in Johnson makes clear

that the approach taken in the instant Settlement Agreement remains valid. See In re Allstate,

400 F.3d 505, 508 (7th Cir. 2005). But see Johnson, 702 F.3d at 371 ("In such a case the

preferable alternative might be to stick with the (b)(2) certification but to require that the class

members receive notice and have an opportunity to opt out of the class."). Accordingly, the

parties to the Settlement Agreement adopted the approach suggested in Lemon, Jefferson and

Johnson and agreed to certification of the Settlement Class under Fed. R. Civ. P. 23(b)(2), but

with notice and an opportunity to opt out to all members of the Settlement Class, in part because

the relief to be provided by the Settlement is most akin to money damages.[10] See Lemon, 216

F.3d at 582; Jefferson, 195 F.3d at 898; Johnson, 702 F.3d at 371.

Dated:  August 8, 2014                              Respectfully submitted,

                                                    /s/  Mark S. Mester
                                                    Lead Couunsel for Defendant
                                                    National Collegiate Athletic Association

Mark S. Mester
  mark.mester@lw.com
Johanna M. Spellman
  johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

J. Christian Word
  christian.word@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

---

[10]    Although Plaintiffs sought certification of the Settlement Class under Fed. R. Civ. P. 23(b)(2) in their motion for preliminary approval, there is no principled reason why that motion could not have been brought (at least in the alternative) under Fed. R. Civ. P. 23(b)(3), as the parties have already agreed in the Settlement Agreement to provide members of the Settlement Class with notice and an opportunity to opt out and because the two additional requirements of Fed. R. Civ. P. 23(b)(3), namely predominance and superiority, would be readily satisfied given the relief provided by the Settlement Agreement, the structure of the Settlement Class and the relevant facts and circumstances of the Settlement itself.  See Settlement Agreement (Dkt. #64-1) at passim.  Moreover, the Medical Monitoring Fund and Medical Monitoring Program called for by the Settlement Agreement are admittedly more akin to money damages than injunctive and equitable relief in several important respects.  See, e.g., id. at ¶ IV(A)(1), pp. 16-18 (establishing a medical monitoring fund); id. at ¶ IV(B)(5)(a), p. 24 (providing for reimbursement to members of the Settlement Class of out-of-pocket costs).

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION** | ) ) ) ) ) ) ) ) ) | **MDL No. 2492**<br><br>**Master Docket No. 1:13-cv-09116**<br><br>**This Document Relates to All Cases**<br><br>**Judge John Z. Lee**<br><br>**Magistrate Judge Geraldine Soat Brown** |

**EXHIBITS TO
SUBMISSION OF THE NCAA REGARDING
FED. R. CIV. P. 23(B)(2) AND FED. R. CIV. P. 23(B)(3)**

**1.**     Excerpted Transcript of July 29, 2014 Proceedings before the Honorable John Z. Lee

**2.**     Excerpted Transcript of May 22, 2014 Proceedings before the Honorable John Z. Lee

**3.**     Order Granting Final Approval (Dkt. #515), In re Trans Union Corp. Privacy Litig., Case No. 1:00-cv-04729 (N.D. Ill., filed Sept. 17, 2008)

**4.**     Mem. in Supp. of Motion for Preliminary Approval (Dkt. #462-2), In re Trans Union Corp. Privacy Litig., Case No. 1:00-cv-04729 (N.D. Ill., filed May 20, 2008)

**1**

```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE        )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-      )
 4   ATHLETE CONCUSSION INJURY          )  Chicago, Illinois
     LITIGATION,                        )  July 29, 2014
 5                                      )  2:00 o'clock p.m.

 6           TRANSCRIPT OF PROCEEDINGS - STATUS, MOTION
               BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     ALSO PRESENT:              HONORABLE GERALDINE SOAT BROWN
 9
     For the Plaintiffs:        HAGENS BERMAN SOBOL SHAPIRO, by
10                              MR. STEVE W. BERMAN
                                1918 8th Avenue
11                              Suite 3300
                                Seattle, Washington 98101
12
                                SIPRUT PC, by
13                              MR. JOSEPH J. SIPRUT
                                17 North State Street
14                              Suite 1600
                                Chicago, Illinois 60602
15
                                ZIMMERMAN REED, by
16                              MR. CHARLES S. ZIMMERMAN
                                MR. BRIAN C. GUDMUNDSON
17                                 (appearing telephonically)
                                1100 IDS Center
18                              80 South 8th Street
                                Minneapolis, Minnesota 55402
19

20

21
                      ALEXANDRA ROTH, CSR, RPR
22                     Official Court Reporter
                      219 South Dearborn Street
23                           Room 1224
                      Chicago, Illinois 60604
24                        (312) 408-5038

25
```

```
 1   APPEARANCES:   (Continued)

 2                                  HAUSFELD LLP, by
                                    MR. RICHARD S. LEWIS
 3                                  MS. MINDY B. PAVA
                                       (appearing telephonically)
 4                                  1700 K Street NW
                                    Suite 650
 5                                  Washington, DC 20006

 6                                  LIEFF CABRASER HEIMANN &
                                    BERNSTEIN, by
 7                                  MR. JEREMY J. TROXEL
                                       (appearing telephonically)
 8                                  250 Hudson Street
                                    8th Floor
 9                                  New York, New York 10013

10                                  JAMES C. SELMER & ASSOCIATES, by
                                    MR. JAMES C. SELMER
11                                     (appearing telephonically)
                                    500 Washington Avenue
12                                  Suite 2010
                                    Minneapolis, Minnesota 55415
13
                                    DUGAN LAW FIRM, by
14                                  MR. JAMES R. DUGAN, II
                                       (appearing telephonically)
15                                  MR. DAVID B. FRANCO
                                       (appearing telephonically)
16                                  One Canal Place
                                    365 Canal Street
17                                  Suite 1000
                                    New Orleans, Louisiana 70130
18
                                    BLUESTEIN NICHOLS THOMPSON
19                                  AND DELGADO, by
                                    MR. JOHN CLARKE NEWTON
20                                     (appearing telephonically)
                                    P. O. Box 7965
21                                  Columbia, South Carolina 29202

22                                  THE LANIER LAW FIRM, by
                                    MR. RYAN D. ELLIS
23                                     (appearing telephonically)
                                    6810 FM 1960 West
24                                  Houston, Texas 77069

25
```

```
 1    APPEARANCES:   (Continued)

 2                              McCALLUM METHVIN & TERRELL, by
                                MR. RODNEY MILLER
 3                                 (appearing telephonically)
                                2201 Arlington Ave S
 4                              Birmingham Alabama 35205

 5                              COHEN & MALAD, by
                                MS. LYNN A. TOOPS
 6                                 (appearing telephonically)
                                One Indiana Square
 7                              Suite 1400
                                Indianapolis, Indiana 46037
 8
      For plaintiff Nichols and  EDELSON PC, by
 9    Proposed Personal Injury   MR. JAY EDELSON
      Class:                     MR. ARI JONATHAN SCHARG
10                              350 North LaSalle Street
                                Suite 1300
11                              Chicago, Illinois 60654

12    For Defendant NCAA:        LATHAM & WATKINS, by
                                MR. MARK STEVEN MESTER
13                              MS. JOHANNA MARGARET SPELLMAN
                                233 South Wacker Drive
14                              Suite 5800
                                Chicago, Illinois 60606
15

16

17

18

19

20

21

22

23

24

25
```

1    in proceeding before the MDL panel in this court.

2           Finally the plaintiffs asked the Court to appoint

3    Charles S. Zimmerman of Zimmerman Reed, Mark Zamora of the

4    Orlando Firm PC and James Dugan II of Dugan's Law Firm as

5    members of the executive committee.  And the Court notes that

6    Zimmerman, Zamora and Dugan like Lewis have substantial

7    experience as class counsel and have diligently represented

8    clients in the course of this action.  Thus, that application

9    is approved as well.

10          Finally, in so doing, the Court denies the motion by

11   Mr. Edelson, counsel in the Nichols case, to be appointed lead

12   counsel for putative personal injury class at this stage.  As

13   set forth above, the Court has already determined that the

14   Hagens Berman, Siprut firms are best situated at this point to

15   represent the interests of the class, class as a whole.

16   Therefore, that motion is denied.  But it's denied without

17   prejudice because, as all the parties know, the interaction and

18   the intersection between the 23(b)(2) class and 23(b)(3) class

19   is an issue that is going to be in some ways the heart of the

20   settlement to ensure that the rights of the absent class

21   members are protected.

22          So that's my ruling with regard to the application.

23          MR. SIPRUT:  Thank you very much, your Honor.

24          MR. MESTER:  Thank you, your Honor.

25          THE COURT:  So having done that, let's move to the

1    motion for preliminary approval of settlement.  Mr. Berman, Mr.

2    Mester, is there a particular agenda that the parties propose

3    for this?

4              MR. BERMAN:  Yes, your Honor.  If -- if it's okay with

5    the Court, I though I would just -- since you got a lot of

6    paper, I might go through the settlement for just a few

7    moments, explaining the highlights.  And then our agenda is to

8    ask you to preliminarily approve the settlement.  We know

9    you're not going to do that today.  And that you might either

10   do it without or with a hearing later, that we are at your

11   convenience.

12             There is a second step to this that we haven't

13   finished.  And what we're proposing to do, we think it will

14   take us about 45 days to come up with a notice plan.  So we've

15   agreed on the terms.  And now we're trying to figure out the

16   notice.  And it's a little trickier than normal because what we

17   have to do is to engage a claims administration firm that's

18   actually going to go hire the doctors and come up with

19   protocols to administer the tests if you approve the

20   settlement.

21             We've been working on that, but we're not just there

22   yet because it's not -- hasn't been done that often.

23             THE COURT:  How are you going to go about -- I am sure

24   that the parties have given this some thought.  How are you

25   going to go about trying to identify all the members in the

1   And he actually went for, I think, he, hidden understanding, is

2   arguing against his own interest to explain how hard it is.

3   You've got to get experts.  You've got to find attorneys, all

4   that.

5           And the big problem, your Honor, is that most of the

6   class, the personal injury claims are worth five figures,

7   not -- not six figures, not seven figures.  And so taking the

8   client who has a claim where they might be able to get $20,000,

9   $10,000, $8,000, and saying, go find a personal injury attorney

10  who's going to bring this, they can't.

11          What the -- what the NCAA will get out of this deal is

12  the elimination of billions of dollars of liability.  There

13  will not be personal injury claims brought by 95 percent of the

14  class.  They will never pay them.  They will be gone like that.

15  And they are doing it for $15 million in fees and some secret

16  algorithm.

17          That's our argument.

18          THE COURT:  So let me just cut to the chase then,

19  Mr. Edelson.  Would you have objections to the settlement if

20  the plaintiffs were not waiving their 23(b)(3) rights to

21  proceed on a classwide basis as to personal injury claims?

22          MR. EDELSON:  I would have an objection as a human but

23  not as an attorney.  I wouldn't care.  I mean, I think it's

24  still a bad settlement and silly.  But -- but it really isn't

25  my concern.

1  Mr. Berman's PowerPoint and some of the things Mr. Edelson

2  said, and as probably expected, we do disagree with some of the

3  characterizations of the discovery.  We disagree with some of

4  the characterization what the NCAA -- NCAA did or did not do.

5  But the point of the settlement is to get past those

6  disagreements and to get this litigation resolved.

7          We certainly don't oppose preliminary approval, and we

8  firmly believe that this settlement agreement and the relief

9  that's provided to the class is a very positive step forward

10 for the class and for -- as a whole and for the NCAA.

11         THE COURT:  Okay.  You may be seated.

12         Mr. Berman, Mr. Mester, one of the issues that I

13 raised at a prior hearing was whether or not a class that is

14 certified under 23(b)(2) can waive a right in a bundle of

15 rights that a class may have under 23(b)(3).  Put it that way,

16 it does present a bit of a metaphysical question.  But in fact

17 it's a real one here in that in order for a settlement to be

18 approved at the final stage, the Court needs to find a class

19 certification is appropriate under one of the provisions under

20 Rule 23.

21         Here the parties are asking the Court to certify a

22 settlement class under 23(b)(2).  As part of that settlement

23 the parties are asking the Court to define the settlement so

24 that the class would, unless they opt out, waive the rights to

25 proceed to seek their damages for personal injury under

1   23(b)(3) on a classwide basis.

2          To be frank, one of the first things I did when I got

3   this memo was to go through to see if I can find some cases

4   that would help me in that analysis.  And I recognize that you

5   got a lot to put into this memorandum.  And under the local

6   rules you had 15 pages to do it.  You asked for 25 pages.  That

7   motion is granted.  But still I recognize that 25 pages is not

8   all that much space to address all the issues that you wanted

9   to address.

10          But I am particularly interested in this issue because

11  I do think that it's something that I am going to have to

12  address in my deliberations as I consider whether or not I am

13  going to approve this settlement.

14          Yes, you wanted to say something?

15          MR. MESTER:  Your Honor, I think there are a couple

16  decisions.  One that comes to mind, which modestly post-dates

17  the 1991 amendments of Title VII, was a Seventh Circuit

18  decision Lemon.  And I -- I attempted to refer to it earlier at

19  the earlier hearing when I think I referred to this issue as

20  being somewhat thorny.

21          But as I understand it, your Honor, there is good

22  press, Lemon being one, and I think there are other subsequent

23  decisions, that allow for a hybrid settlement that has elements

24  of (b)(2) and elements of (b)(3).  I think it was certainly

25  always our intention -- I don't want to speak for Mr. Berman,

1    but I believe it was his as well -- that this would be in that

2    sense a hybrid settlement.  It would have elements of (b)(2)

3    but also elements of (b)(3), including but not limited to

4    enhanced notice rights, which would otherwise not be provided

5    under (b)(2).  And equally, if not more important, opt-out

6    rights, which would not be provided under (b)(2) but available

7    under (b)(3).

8          So I think my belief and my understanding is that this

9    settlement combines elements of both.

10         THE COURT:  Okay.

11         MR. BERMAN:  That's correct, your Honor.  We are

12   moving under (b)(2) and (d)(1), which we believe allows you

13   discretion to make this a hybrid settlement, and to send notice

14   and opt-out rights.  And because of the waiver issues and the

15   opt-out issues, it's exactly why we want you to do that.

16         THE COURT:  No, I understand.  And again, I didn't

17   have much time to digest all of the memorandum.  And so I

18   didn't have a chance to go back and look at all the cases that

19   were cited.  But I did look at a couple of those cases.  And it

20   seems that in some of those cases, you had a 23(b)(2) class.

21   And for a variety of reasons the Court decided that additional

22   protections would be appropriate.

23         But in those cases, at least in my cursory review of

24   them, I did not see the class giving up any additional rights

25   other than what they would give up under 23(b)(2); that is,

1    they weren't giving up anything that would implicate 23(b)(3).

2    And so that's really the issue that I want the parties to

3    address.  And I feel that I am going to give you a chance to do

4    that.

5              So I'd like the parties -- I would like the parties

6    who are proposing the preliminary approval of this settlement

7    to file a supplemental memorandum addressing the issue; that

8    is, addressing basically whether under 23(b)(2) class with or

9    without -- with or without additional protections, whether such

10   a class can waive the right to proceed under 23(b)(3).

11             I will give you up to the 15 pages to do so, if you

12   need them all.  How much time would you like to submit that

13   memorandum?

14             MR. BERMAN:  Would seven days be okay?

15             THE COURT:  That would be more than adequate.  So why

16   don't I give you until August 8, that is next Friday, to file

17   the memorandum.  Again, it will be limited to 15 pages,

18   addressing that issue.

19             Now, Mr. Edelson you had requested some time to file a

20   formal written response and/or objections to the settlement

21   that's proposed in the motion.  How much time would you like to

22   file that?

23             MR. EDELSON:  Can we have 28 days?

24             THE COURT:  That will be fine, because I also want you

25   to respond to, if you wish to do so and think appropriate, to

**2**

```
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE      )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-    )
 4   ATHLETE CONCUSSION INJURY        )  Chicago, Illinois
     LITIGATION,                      )  May 22, 2014
 5                                    )  9:00 o'clock a.m.

 6                   TRANSCRIPT OF PROCEEDINGS - MOTION
                     BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:         HAGENS BERMAN SOBOL SHAPIRO, by
 9                               MS. ELIZABETH A. FEGAN
                                 MR. THOMAS E. AHLERING
10                               1144 West Lake Street
                                 Suite 400
11                               Oak Park, Illinois 60301

12                               SIPRUT PC, by
                                 MR. GREGG MICHAEL BARBAKOFF
13                               17 North State Street
                                 Suite 1600
14                               Chicago, Illinois 60602

15   For the Wolf Plaintiffs:    CORBOY & DEMETRIO, by
                                 MR. WILLIAM T. GIBBS
16                               33 North Dearborn Street
                                 Suite 2100
17                               Chicago, Illinois 60602

18   For Defendant NCAA:         LATHAM & WATKINS, by
                                 MR. MARK STEVEN MESTER
19                               MS. KATHERINE S. WALTON
                                 233 South Wacker Drive
20                               Suite 5800
                                 Chicago, Illinois 60606
21

22

23                       ALEXANDRA ROTH, CSR, RPR
                           Official Court Reporter
24                       219 South Dearborn Street
                                 Room 1224
25                       Chicago, Illinois 60604
                              (312) 408-5038
```

```
1    APPEARANCES:   (Continued)

2    For Proposed Intervenors        EDELSON PC, by
     Moore and Nichols:              MR. JAY EDELSON
3                                    350 North LaSalle Street
                                     Suite 1300
4                                    Chicago, Illinois 60654

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   our understanding is it still is going to, which is -- so that

2   concern, you know, remains, unless they have new information.

3         THE COURT:  So with regard to the scope of the -- or

4   the broad terms of the medical monitoring claims and the

5   parties' efforts to try to resolve that particular claim, Mr.

6   Edelson, you don't have any objections to how that's been

7   framed at this point?

8         MR. EDELSON:  We haven't been part of the discussion

9   and haven't asked to either.  But we trust that they're doing a

10   good job.

11         THE COURT:  Let me ask you this, counsel, and I don't

12   know whether you have gotten there yet.  But with regard to a

13   proposed settlement class, would the proposed settlement class

14   be under 23(b)(2) or 23(b)(3) or both?

15         MS. FEGAN:  Your Honor, I believe it will be a Rule

16   23(b)(2) class what we are asking for --

17         MR. MESTER:  Right.

18         MS. FEGAN:  -- equitable relief.

19         MR. MESTER:  I apologize, your Honor.  But with notice

20   which would be akin to a 23(b)(3) and an opportunity to opt

21   out.  So it'll be in some sense a hybrid.

22         MS. FEGAN:  That's right, your Honor.  A (b)(2) class

23   with opportunity to opt out or exclude yourself from the

24   settlement.

25         THE COURT:  So it will be 23(b)(2) class with regard

1  to the injunctive relief going forward, 23(b)(3) class with

2  regard to any sort of impact it would have on, say, individual

3  damages claims brought by the class members?

4          MS. FEGAN:  In a sense, your Honor.  Under Rule

5  23(b)(2), if it were just liability, people wouldn't have the

6  opportunity to opt out.  But the cases have recognized that you

7  can move forward in an agreement to just certify a 23(b)(2)

8  settlement class, but agree that the class members would have

9  the opportunity to exclude themselves.  So it won't actually be

10 certified for purposes of settlement under (b)(3) but it is

11 akin to or analogous to a (b)(3) situation where there's the

12 opportunity for exclusion.

13         MR. MESTER:  And, your Honor, what we will be trying

14 to do is avoid the need for the Court to address that sort of

15 authority issue, (b)(2) versus (b)(3), by providing the other

16 procedural protections that are associated with (b)(3) by

17 providing an opportunity to opt out and notice.  So for

18 practical purposes, the settlement class would have those

19 opportunities that it otherwise wouldn't have in a (b)(2)

20 class.  But we wouldn't have to worry as much about whether --

21 what to call it, (b)(2) or (b)(3), because there are elements

22 of -- they're (b)(3) like, to be sure.

23         THE COURT:  Right.  And that's -- as I was sitting

24 here trying -- as I was thinking over in my mind kind of what

25 the contours of whatever settlement might be and what the

1    parties would request -- I think I don't know whether thorny

2    issue is the right term, but it certainly is a concern of mine

3    as to whether this class will need to be certified under one or

4    both, particularly if as part of the settlement the putative

5    class members are going to be asked to release any rights to

6    pursue their damages claims on a class-wide basis.

7           You know, I think a question I have, and I don't know

8    the answer to this.  Obviously I haven't looked at it so far.

9    But the question I had that came to my mind was whether if you

10   proceeded under 23(b)(2), whether you could bind the class to

11   such a waiver without providing some protection of 23(b)(3),

12   whether notice and really opt-out is enough.  I don't know.  Or

13   whether the Court would have to engage in the entire 23(b)(3)

14   analysis.

15          And I recognize that that puts the parties, all the

16   parties, in a bit of a -- not an awkward position.  But it

17   raises some issues, right?  I know that it's been the position

18   of NCAA, for example, that a 23(b)(3) class, at least thus far,

19   that there would be some challenges to plaintiffs certifying a

20   23(b)(3) class.

21          MR. MESTER:  Yes, your Honor.

22          THE COURT:  And I know that some of the plaintiffs

23   have also -- not all but some of the plaintiffs have also noted

24   that there might be some challenges trying to certify a class

25   under 23(b)(3).  And yet where the settlement implicates some

1    of those rights, I'm not really sure what the best way is to
2    proceed with regard to 23(b)(2) or 23(b)(3).

3         Having said that, I recognize that Courts even in
4    settlements in cases that involved some measure of damages have
5    proceeded under 23(b)(2) for certain purposes.  And proceeding
6    under 23(b)(2) in those instances have been upheld in various
7    courts.  And so it's not a clear-cut issue.  I'm glad that you
8    all are thinking about.  I'm sure you are.  And I look forward
9    to what you have to say.  But that is something that we are
10   thinking about.

11        MS. FEGAN:  I appreciate that, your Honor.  And
12   actually we will spend extra time with that and make sure that
13   we address that in our preliminary approval motion.

14        MR. MESTER:  Certainly, your Honor.

15        THE COURT:  So I know that Mr. Edelson on behalf of
16   the Nichols plaintiffs have filed -- has filed a response to
17   the motion for stay.  And I take it that the -- Mr. Edelson,
18   your position is that while you don't object to the stay in and
19   of itself, you would like the Court to maintain its schedule
20   with regard to designating lead counsel, which currently the
21   Court is scheduled to do on May 29, at our next status.  Is
22   that a fair --

23        MR. EDELSON:  That's correct, your Honor.

24        THE COURT:  And I know that the parties -- to the
25   extent that the parties have filed application for lead counsel

**3**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

In re TRANS UNION CORP. PRIVACY
LITIGATION

Lead Case No. 00 C V4729

MDL Docket No. 1350

Judge Robert W. Gettleman

This Document Relates To:

Magistrate Judge Michael T. Mason

ALL ACTIONS.

## ORDER GRANTING FINAL APPROVAL OF SETTLEMENT
## AND FINAL JUDGMENT

WHEREAS fourteen (14) consolidated putative class actions are currently pending before

this Court in In re Trans Union Corp. Privacy Litigation, Lead Case No. 00 C 4729, MDL Docket

No. 1350 (collectively "MDL Actions");

WHEREAS a putative class action entitled *Frey v. Trans Union*, Case No. 798893, is

pending in the Superior Court of California, County of Orange ("Frey Action"), and a certified

class action entitled *Andrews v. Trans Union LLC*, Case No. 02-18553, is pending in the Civil

District Court for the Parish of Orleans, Louisiana ("Andrews Action");

WHEREAS Plaintiffs (hereafter "Plaintiffs") and Defendants Trans Union LLC ("Trans

Union") and Acxiom Corporation ("Acxiom") (collectively, "the Parties") have reached a

settlement addressing all claims in the MDL Actions, the Frey Action and the Andrews Action,

and the Parties have asked the Court for final approval of the proposed Settlement, as set forth in

the Stipulation of Settlement, dated as of May 20, 2008 (Docket No. 462-3) ("Stipulation"),
pursuant to Federal Rule of Civil Procedure 23(e);

WHEREAS the Settling Parties to the Actions have agreed that, as a condition of
settlement, Plaintiffs and the Plaintiff Settlement Class shall release certain rights with respect to
their claims against Defendants and Defendants' Related Parties specified in the Stipulation;

WHEREAS the Court reviewed and considered the Stipulation and proposed Notice to
the Class in open court;

WHEREAS the Court preliminarily approved the Settlement on May 28, 2008, and on
May 30, 2008, entered the Order Granting Preliminary Approval of Class Action Settlement and
Providing for Notice (Docket No. 468) ("Preliminary Approval Order");

WHEREAS the Court appointed Jon W. Borderud, Joy Bull, Dawn Adams Wheelahan,
Matthew Righetti, and Michael A. Caddell as Settlement Class Counsel for the Settlement Class
in the Preliminary Approval Order;

WHEREAS the Parties have evidenced full compliance with the Preliminary Approval
Order; and

WHEREAS the Court has found that there are substantial and sufficient grounds for
entering this Order Granting Final Approval of Settlement and Final Judgment ("Final Approval
Order");

**IT IS HEREBY ORDERED** as follows:

2

1.    For the purposes of this Final Approval Order, the following terms shall have the following definitions and meanings.

a. "Actions" means the MDL Actions, the Andrews Action, and the Frey Action, as defined herein.

b. "Aggregated Action" shall mean any action in which two or more individual plaintiffs assert claims relating to the same or similar alleged conduct.

c. "Claims Administrator" shall mean Epiq Systems Inc. or such other entity agreed by the parties and authorized by the Court to process claims and to undertake other tasks as set forth in the Stipulation.

d. "Class Action" shall mean an action brought by one or more individual plaintiffs on behalf of a class of similarly situated persons under any applicable state or federal statute or rule, whether certified or uncertified.

e. "Court" means the United States District Court for the Northern District of Illinois, and includes the MDL Actions assigned to the Honorable Robert W. Gettleman and the matters and issues referred to the Honorable Michael T. Mason, United States Magistrate Judge, for decision or resolution.

f. "Defendants" means defendants Trans Union and Acxiom.

g. "Defendants' Related Parties" means each of a Defendant's past or present officers, directors, partners, agents, employees, shareholders, attorneys, accountants or auditors,

3

consultants, legal representatives, predecessors, successors, assigns, parents, subsidiaries, divisions, joint ventures, affiliated entities, and any entity that controls a Defendant, or in which a Defendant has a controlling interest.

h. "Enhanced In-Kind Relief" means the relief being provided by Trans Union pursuant to the Stipulation as set forth in ¶ 2.2(b) therein.

i. "Escrow Account" means the trust account used to hold the Settlement Fund that was paid by Trans Union pursuant to the Stipulation.

j. "Escrow Agent" means the bank or trust company selected by Settlement Class Counsel and approved by Trans Union to hold the Settlement Fund payable by Trans Union pursuant to the Stipulation.

k. "FCRA" means the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

l. "Final" means when the last of the following with respect to the Final Approval Order approving the Stipulation has occurred: (i) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Final Approval Order has passed without any appeal having been filed (which date shall be deemed to be thirty-three (33) days following the entry of the Final Approval Order, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 33rd day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next

4

business day after such 33rd day); and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three (3) business days after a determination of any such motion or appeal that permits the consummation of the Settlement in substantial accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns only the issue of an award of attorneys' fees and expenses from the Settlement Fund.

m. "Firm Offer" means an offer of credit or insurance to a consumer regulated by Section 604(c) of the FCRA (15 U.S.C. §1681b(c)).

n. "Joined Actions" means any action in which any plaintiff asserts both (a) Post-Settlement Claims, and (b) claims relating to any other subject matter whatsoever, regardless of whether the causes of action asserted in the action are created by the same statute, common law principle, or equitable principle.

o. "Named Plaintiffs" means all named Plaintiffs in the Actions.

p. "Notice Administrator" means Hilsoft Notifications or such other entity agreed by the parties and authorized by the Court to provide notice and to undertake other tasks as set forth in the Stipulation.

q. "Plaintiffs" means all Named Plaintiffs in the MDL Actions, the Andrews Action, and the Frey Action, including Cynthia Albert, Mark Andrews, Jeffrey Beadle, Cecilia Comstock, David Feige, Megan Gogerty, Donald Jowers, Victoria Scott Kearley, Geri Mann, Marci Martinelli, Robert and Yvonne Morse, Lawrence and Joan Palazzolo, Heather Payne,

5

Boris and Alla Rozenblitt, Randall J. Stein, Elizabeth H. Turner, Alan Wayne, Nancy M.

Winkelmann, Nancy M. Woods, and Josh Frey, and including each of a Plaintiff's estates, heirs,

executors, guardians, conservators and trustees.

r. "Plaintiffs' Counsel" means Plaintiffs' counsel of record in the Actions.

s. "Plaintiffs' Related Parties" means each of a Settlement Class Member's

estates, heirs, executors, guardians, conservators and trustees.

t. "Plaintiff Settlement Class" is defined as: All consumers who had an open

credit account or an open line of credit from a credit grantor located in the United States at any

time during the period January 1, 1987 to May 28, 2008. The term "Plaintiff Settlement Class"

shall include, without limitation, any classes asserted or certified in the Andrews Action and the

Frey Action. Excluded from the Plaintiff Settlement Class are (a) Defendants and their

predecessors, affiliates, subsidiaries, officers, directors and employees, (b) counsel for any of the

Settling Parties in these Actions, and (c) any and all judges and justices assigned to hear any

aspect of the Actions, along with the staff and spouses of the foregoing and any children residing

in their households.

u. "Post-Settlement Claim" means any claim by a Settlement Class Member (other

than a Plaintiff) against a Defendant that is currently pending or that is asserted after the date of

the Stipulation, which is May 20, 2008, arising out of, or relating to, the facts or claims alleged in

the Actions concerning Defendants' alleged distribution of Target Marketing lists or related

information or concerning Firm Offer claims alleged in any of the MDL Actions, the Andrews

Action, or the Frey Action. The term "Post-Settlement Claims" shall include, without limitation,

6

claims under any legal or equitable theory, whether asserted in the form of a complaint filed in state or federal court, a demand for arbitration, an informal demand letter, or otherwise.

v. "Preliminary Approval" means the preliminary approval of the Stipulation by the Court, conditional certification of the Plaintiff Settlement Class, and approval of the method and content of notice to the Plaintiff Settlement Class.

w. "Settlement" means the settlement entered into by the Settling Parties as set forth and embodied by the Stipulation, and as have been amended by the Settling Parties as provided for therein.

x. "Settlement Class Member" means a person who falls within the definition of the Plaintiff Settlement Class.

y. "Settlement Class Period" means the period commencing on January 1, 1987 to May 28, 2008.

z. "Settlement Class Representative Plaintiffs" means Mark E. Andrews, Jeffrey Beadle, Josh Frey, Megan Gogerty, Donald Jowers, Victoria Scott Kearley, Marci Martinelli, Yvonne Morse, Robert Morse, Lawrence and Joan Palazzolo, Elizabeth H. Turner, Alan Wayne, Nancy M. Winkelmann, and Nancy M. Woods.

aa. "Settlement Fund" means the amount paid by Trans Union pursuant to ¶ 2.1(a) of the Stipulation.

bb. "Settling Parties" means, collectively, each of the Defendants, as defined

7

herein, by and through their counsel of record, and each of the Settlement Class Representative

Plaintiffs on behalf of themselves, all Plaintiffs, and all Settlement Class Members, by and

through Settlement Class Counsel.

cc. "Target Marketing" means selling or advertising goods and services, or

soliciting charitable or political contributions, directly to consumers by mail, telephone, or other

means, which consumers are identified by, among other criteria, targeted financial criteria or

demographic traits. Target Marketing does not include Firm Offers (as defined above).

dd. "Ultimate Approval" means that the Final Approval Order has become Final,

as defined herein.

ee. "Unknown Claims" shall collectively mean all claims, demands, rights,

liabilities, and causes of action of every nature and description arising out of, or relating to, the

facts or claims alleged in the Actions which any person does not know or suspect to exist in his,

her or its favor at the time of the release of claims which, if known by him, her or it, might have

affected his, her or its settlement with and release of claims, and shall include waiver of the

provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor.

2. The Court has jurisdiction over the subject matter of this litigation and personal

jurisdiction over all Parties and the members of the Plaintiff Settlement Class for purposes of this

litigation.

8

3. The Court finds that (a) the proposed Plaintiff Settlement Class is so numerous as to make joinder impracticable; (b) the claims of the Plaintiffs are typical of the claims of the Plaintiff Settlement Class they seek to represent; (c) the interests of the Plaintiff Settlement Class will be, and have been, fairly and adequately represented by Plaintiffs and their counsel of record in the Actions; and (d) common questions of law and fact exist as to all Settlement Class Members.

4. The Court is satisfied that Hilsoft Notifications, the appointed Notice Administrator, has met all requirements the Court set forth in its Preliminary Approval Order. The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law.

5. The Court finds that the requirements for certifying a settlement class pursuant to Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure have been met and are appropriate under the circumstances of this case.

6. The Court therefore certifies a Plaintiff Settlement Class pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, defined as: All consumers who had an open credit account or an open line of credit from a credit grantor located in the United States at any time during the period January 1, 1987 to May 28, 2008. The term "Plaintiff Settlement Class" shall include, without limitation, any classes asserted or certified in the Andrews Action and the Frey Action.

9

Excluded from the Plaintiff Settlement Class are (a) Defendants and their predecessors, affiliates, subsidiaries, officers, directors and employees, (b) counsel for any of the Settling Parties in these Actions, and (c) any and all judges and justices assigned to hear any aspect of the Actions, along with the staff and spouses of the foregoing and any children residing in their households. The Court finds that the Plaintiff Settlement Class satisfies the requirements of Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure.

7. The Court has considered all objections, including those that may not technically qualify as objections and those that were filed after the objection deadline. After considering all objections, and all briefing and oral argument offered in support or in opposition to same, and for the reasons stated in open court at the September 10, 2008 final approval hearing, the Court finds that they are without merit.

8. Accordingly, all objections are hereby **OVERRULED**.

9. The Settlement set forth in the Stipulation is hereby finally approved as fair, reasonable, and adequate as to each Settlement Class Member. The Settlement is hereby finally approved in all respects.

10. All Named Plaintiffs are deemed to have released, and by operation of this Final Approval Order shall have, fully, finally, and forever released, relinquished and discharged Defendants, and each of them, and Defendants' Related Parties, from any and all claims, including Unknown Claims, arising out of, or related to, the facts or claims alleged in the MDL Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and

10

all such claims relating to the Firm Offer claims alleged in any of the MDL Actions and/or the Frey Action. The release in this Paragraph applies to the Named Plaintiffs' individual claims only.

11. All Settlement Class Members who receive the Enhanced In-Kind Relief are, along with their respective Plaintiffs' Related Parties, deemed to have released, and by operation of this Final Approval Order shall have, fully, finally, and forever released, relinquished, and discharged Defendants, and each of them, and Defendants' Related Parties from any and all claims, including Unknown Claims, arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all such claims related to Defendants' alleged distribution of Firm Offer lists or related information.

12. All Settlement Class Members who receive a cash distribution from the Settlement Fund pursuant to paragraph 17(c) of this Final Approval Order are, along with their respective Plaintiff's Related Parties, deemed to have released, and by operation of this Final Approval Order shall have, fully, finally, and forever released, relinquished, and discharged Defendants, and each of them, and Defendants' Related Parties from any and all claims, including Unknown Claims, arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all such claims related to Defendants' alleged distribution of Firm Offer lists or related information.

13. All Settlement Class Members who are not Named Plaintiffs and who do not receive

11

either of the benefits described in paragraph 11 or paragraph 12 of this Final Approval Order are, along with their respective Plaintiff's Related Parties, deemed to have released, and by operation of this Final Approval Order shall have, fully, finally, and forever released and relinquished their procedural rights to pursue any claims, including Unknown Claims, arising out of or related to the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all such claims related to Defendants' alleged distribution of Firm Offer lists or related information, as either (A) named plaintiffs or class members in any Class Action, (B) plaintiffs in any Joined Actions, or (C) plaintiffs in any Aggregated Action.

14. As to the Named Plaintiffs, all Settlement Class Members who receive the Enhanced In-Kind Relief, and all Settlement Class Members who receive a cash distribution from the Settlement Fund pursuant to paragraph 17 of this Final Approval Order, the Court hereby dismisses with prejudice their individual claims in the MDL Actions against the Defendants. As to all Settlement Class Members who are not Named Plaintiffs and who do not receive either of the benefits described in paragraph 12 or 13 of this Final Approval Order, the Court hereby dismisses the MDL Actions without prejudice against the Defendants, subject to the limitation on procedural rights described in paragraph 13 of this Final Approval Order.

15. The Court finds that the Named Plaintiffs provided invaluable participation in this Litigation, and have duly earned the proposed Incentive Awards. Accordingly, the Court directs the Escrow Agent to pay each Named Plaintiff the sum of $3,750.00 from the Escrow Account within 30 days of Ultimate Approval of the Settlement.

12

16. All Settlement Class Members who are not Named Plaintiffs, along with their respective Plaintiffs' Related Parties, are enjoined and barred from filing, commencing, prosecuting, intervening, or participating in any claims, including Unknown Claims, arising out of or related to the facts or claims alleged in the Actions arising out of state or federal law, including (i) any and all such claims related to Defendants' alleged distribution of Target Marketing lists or related information, and (ii) any and all such claims related to Defendants' alleged distribution of Firm Offer lists or related information, as either (A) named plaintiffs or class members in any Class Action, (B) plaintiffs in any Joined Actions, or (C) plaintiffs in any Aggregated Action.

17. The Settlement Fund shall be held in the Escrow Account by an Escrow Agent and the use or disbursement of such funds shall be as provided herein:

a. Expenses of notice and administration shall be invoiced by the Notice Administrator and the Claims Administrator, respectively, and paid from the Settlement Fund. In no event shall the total expenses associated with notice and administration increase the amount paid by Trans Union as part of the settlement;

b. Within 10 days after Ultimate Approval, Attorneys' Fees and Costs shall be paid from the Settlement Fund as provided in Section 4 of the Stipulation;

c. Within 30 days after Ultimate Approval, a distribution of One Hundred and Fifty Thousand Dollars ($150,000) will be made from the Settlement Fund to one or more qualified 501(c)(3) charities jointly chosen by Trans Union and plaintiffs and approved by the Court as provided in Paragraph 2.3 of the Stipulation.

13

d. Trans Union shall be entitled to receive reimbursement from the Settlement Fund equal to any amounts paid to satisfy settlements or judgments arising from Post-Settlement Claims, not including any defense costs. Trans Union shall have the option to settle any suit or pre-suit demand, or litigate any suit, involving Post-Settlement Claims. On a quarterly basis, Trans Union shall report on lawsuits filed asserting these claims to a Committee comprised of representatives chosen equally by Trans Union and Settlement Class Counsel. Such quarterly reports shall include (i) the name of each person asserting a Post-Settlement Claim receiving a payment from Trans Union or which reimbursement was taken from the Settlement Fund, (ii) the amount paid to each such person, (iii) the name of each law firm or attorney receiving a payment from Trans Union for which reimbursement was taken from the Settlement Fund, (iv) the amount paid to each such law firm or attorney, (v) the date on which each payment was made, (vi) a brief description of the nature of the claim that was the basis for the payment, (vii) a copy of any complaint, demand for arbitration, informal demand letter or similar document in which the Post-Settlement Claims at issue were asserted, and (viii) any agreement memorializing the resolution of the Post-Settlement Claims. Any dispute about the propriety of a reimbursement received by Trans Union shall be resolved by the Court. In the event the Court finds any such reimbursement amount improper, Trans Union shall return such amount, plus interest at the same rate earned on the Settlement Fund, to the Settlement Fund within 10 business days.

e. In the event that any Post-Settlement Claims remain pending at the end of the two-year period following Ultimate Approval, the Committee will in good faith estimate an amount to be retained in the Settlement Fund in respect of any future settlement or judgment on such Post-Settlement Claims, for reimbursement to Trans Union. Any dispute about the amount

14

of the good faith estimate shall be resolved by the Court.

f. At the conclusion of the two-year period following Ultimate Approval, all money remaining in the Settlement Fund and not retained for pending claims pursuant to paragraph 17(b) of this Final Approval Order may be paid to Settlement Class Members as provided herein. At the conclusion of the two-year period following Ultimate Approval, Settlement Class Counsel shall make a recommendation to the Court concerning the use and allocation of any amount remaining in the Settlement Fund. Such recommendation shall consider as its first preference the distribution of the funds remaining in the Settlement Fund, if any, to those persons who registered during the registration period to receive a possible distribution, unless the Court determines that the amount remaining in the Settlement Fund cannot feasibly be distributed to claimants taking into account the number of claimants, the relative cost of claims administration, and the amount that would be distributed per claimant. If the amount remaining in the Settlement Fund is determined to be less than can feasibly be distributed to persons who registered for a distribution, then the amount remaining in the Settlement Fund will be distributed to one or more qualified 501(c)(3) entities jointly chosen by Trans Union and Settlement Class Counsel and approved by the Court.

18. Should the Settlement not become effective in accordance with its terms, this Final Approval Order shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

15

19. If the Settlement does not receive Ultimate Approval, then the Settlement, any Stipulation, and the settlement term sheet shall become null and void. In addition if this Settlement becomes null and void, the Defendants shall not be prejudiced in any way from opposing the certification of a class or classes in the Actions or in any other litigation that is not one of the Actions. Further, the Settlement Fund, including interest earned, less taxes and tax expenses that have been properly disbursed pursuant to this Stipulation and any notice and administration expenses that have been incurred pursuant to this Stipulation but have not yet been disbursed, shall be returned to Trans Union if (a) the Settlement does not receive Final Approval, and a revised settlement is not submitted by the Settling Parties to the Court within 180 days following the Court's failure to grant such Final Approval, or (b) an Order of the Court giving Final Approval to the Settlement is overturned after exhaustion of all appeals, and a revised settlement is not submitted to the Court within 180 days following the exhaustion of all such appeals.

20. Neither this Final Approval Order, the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of this Final Approval Order, Stipulation or the Settlement: (a) is or may be deemed to be, or may be used as an admission or evidence of, the validity of any claims asserted in the Actions, or of any wrongdoing or liability on the part of Defendants, or (b) is or may be deemed to be, or may be used as an admission or evidence of, any fault or omission of any of the Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal. Defendants may file the Stipulation and/or this Final Approval Order in any action that has been

16

or may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion, or any similar defense or counterclaim.

21. The Court finds (a) that the amount paid by Trans Union constituting the Settlement Fund is sufficient to deter future Target Marketing and Firm Offer conduct of the kind at issue in MDL No. 1350, (b) that the amount paid by Trans Union constituting the Settlement Fund represents the full disgorgement of all relevant profits realized by Trans Union, and (c) that Trans Union has ceased the conduct at issue in MDL No. 1350.

22. All agreements made and Orders entered during the course of the Actions relating to the confidentiality of information shall continue in full force and effect subsequent to entry of this Final Approval Order and Final Judgment.

23. The Court shall rule on the application of Plaintiffs' Counsel for reimbursement of fees and expenses at a later date. The pendency of the application for fees and expenses shall not delay or affect the finality of this Final Approval Order and Final Judgment.

24. Pursuant to and as required by ¶6.13 of the Stipulation, and to the extent permitted by applicable law, the Court retains jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation. The Court specifically retains jurisdiction to enforce the terms of any and all injunctive relief set forth herein. To the extent permitted by applicable law and required by ¶2.1(d) of the Stipulation, the Court also retains jurisdiction to implement the Settlement as it pertains to: The award or

17

distribution of any and all Settlement Funds transmitted to and held by the Escrow Agent as

required by the Stipulation, including any award or distribution of attorneys' fees and expenses,

Class Representative Incentive Awards, any payment of expenses of the Notice Administrator

and Claims Administrator, any cy pres distribution permitted by the Stipulation, and the

disposition of the residual amount of the Settlement Fund as set forth in the Stipulation. Nothing

herein shall affect the release of claims or the final dismissal with prejudice of the MDL Actions,

each as provided in this Order, which release and dismissal are intended to preclude relitigation

of any released claims. See Shapo v. Engle, 463 F.3d 641, 646 (7th Cir. 2006).

IT IS SO ORDERED.

Dated: September ____17____, 2008.

**ROBERT W. GETTLEMAN**
**UNITED STATES DISTRICT JUDGE**

18

**4**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re TRANS UNION CORP.
PRIVACY LITIGATION

_____

**THIS DOCUMENT RELATES TO:**

    **ALL CASES**

_____

**Lead Case No. 00 cv 4729**
**MDL Docket No. 1350**
**Judge Robert Gettleman**
**Magistrate Judge Michael T. Mason**

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...........................................................................1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................1

    A.    Plaintiffs' Claims ...........................................................1

    B.    Procedural Background and Settlement Negotiations ...........................2

III.   THE PROPOSED SETTLEMENT AND RELEASE TERMS ...........................................2

    A.    Definition of the Settlement Class. .............................................4

    B.    Settlement Fund. ....................................................................4

        1.    Cy pres distribution for "no-internet" class members ...............................4

        2.    Notice and administration costs ........................................5

        3.    Post-Settlement Claims.........................................................5

        4.    Final Distribution of Fund ...................................................5

    C.    In-Kind Relief. ....................................................................6

    D.    Statute of Limitations. ............................................................7

    E.    Releases. ...............................................................................8

    F.    Incentive Awards and Attorneys' Fees and Expenses. ...........................8

    G.    Class Certification....................................................................9

    H.    Disgorgement of Profits. ...........................................................9

    I.    Additional Provisions...............................................................9

IV.   PRELIMINARY APPROVAL SHOULD BE GRANTED............................................10

    A.    A Class Action Settlement is Favored and Should be Preliminarily Approved if it Falls Within the Range of Reasonableness .......................................10

B. The Court Should Grant Preliminary Approval Because the Settlement is Within the Range of Possible Approval ....................................................................... 12

    1. Factor One: the Settlement is eminently fair when comparing the strength of Plaintiffs' case to the amount of Defendants' settlement offer ............ 13

    2. Factor Two: Trial will likely be complex, lengthy, and costly. ............... 15

    3. Factor Three: lack of opposition to Settlement among affected parties. ... 15

    4. Factor Four: numerous competent counsel support approval of the settlement ........................................................................................... 15

    5. Factor Five: the Settlement was proposed late in litigation and discovery was virtually complete .......................................................................... 16

V. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 ................................. 17

VI. CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER .............................. 18

VII. CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Albert v. Trans Union*,
    346 F.3d 734 (7th 2003) ...................................................................3

*Alliance To End Repression v. City of Chicago*,
    561 F. Supp. 537 (N.D. Ill. 1982) ....................................................10

*Allstate Ins. Co.*,
    400 F.3d 505 (7th Cir. 2005)............................................................17

*Andrews v. Trans Union*,
    917 So. 2d. 462 (La. App. 4 Cir., 8/17/05) ....................... 2, 3, 4, 10

*Dalton v. Alston & Bird*,
    741 F. Supp. 157 (S.D. Ill. 1990) ....................................................10

*De La Fuente v. Stokely-Van Camp., Inc.*,
    713 F.2d 225 (7th Cir. 1983)............................................................19

*Doe v. Guardian Life Ins. Co. of Am.*,
    145 F.R.D. 466 (N.D. Ill. 1992)......................................................20

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985)............................................................11

*Frey v. Trans Union, et al.*,
    Cause No. 798893, Superior Court of Orange Co. Cal. (1998) ....................... 2, 4, 10, 17

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982)............................................................10

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002)....................................................11

*Hispanics United of DuPage County v. Village of Addison*,
    988 F. Supp. 1130 (N.D. Ill. 1997) .................................................12

*Horowitz v. Pownall*,
    105 F.R.D. 615 (D. Md. 1985)........................................................20

*In Re Trans Union*,
    211 F.R.D. 328 (N.D. Il. 2002).........................................................2

*In Re Trans Union*,
   326 F. Supp. 893 (N.D. Il. 2004) ...................................................................3

*In Re Trans Union*,
   2005 U.S. Dist. Lexis 17548 (N.D. Ill. Aug. 17, 2005) ..................................3

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ................................................................... 10, 11

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ......................................................................19

*Martinelli v. Trans Union Corp.*,
   .................................................................................................................2

*McHan v. Grandbouche*,
   99 F.R.D. 260 (D. Kan. 1983) ....................................................................20

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ....................................................................19

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ................................................................ 11, 12

*Safeco Insurance v. Burr*,
   _____ U.S. _____, 127 S.Ct. 2201 (2007) ..............................................13

*Synfuel Techonologies, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ......................................................................11

## RULES

FED. R. CIV. P. 23 ..................................................................2, 9, 10, 17, 19, 20

## SECONDARY SOURCE

MANUAL FOR COMPLEX LITIGATION § 1.46 (1981) ...................................11

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002).......10

## I.     INTRODUCTION

After many months of arms-length negotiations, Plaintiffs (hereafter "Plaintiffs" or "Class Representatives") have reached an agreement with Trans Union Corp. ("Trans Union") and Acxiom Corporation to resolve this case.  Plaintiffs and Defendants now wish to commence the settlement approval process and seek entry of an order that grants preliminary approval of the "Settlement Agreement" attached hereto, certifies a provisional settlement class, approves the parties' proposed notice to the Class, and directs that notice be given to Class members as proposed.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiffs' Claims

In this class action, Plaintiffs assert causes of action on behalf of themselves and others similarly situated for violations of the Fair Credit Reporting Act ("FCRA").  In particular, Plaintiffs allege that Trans Union, a consumer reporting agency, engaged in two types of practices resulting in the disclosure of consumer information in violation of FCRA.

First, Plaintiffs allege Trans Union violated FCRA when it used consumer credit information for the purpose of generating target marketing lists containing the names and addresses of consumers who met certain financial or credit criteria.  Trans Union thereby disclosed consumers' credit information without having a "permissible purpose" for doing so under the FCRA.  Trans Union's target marketing database, the "List Master File" contained more than 190 million names from which Trans Union created target marketing lists.

Second, Plaintiffs allege Trans Union violated FCRA by providing its customers with lists of consumer names and addresses that Trans Union selected based on credit eligibility for making firm credit or insurance offers.  While FCRA allows a consumer reporting agency to

provide such reports, it places limitations on the information that can be made available. Plaintiffs allege that Trans Union disclosed more information than FCRA permits.

**B.      Procedural Background and Settlement Negotiations**

This coordinated proceeding includes fourteen related class actions (the "MDL Cases") filed against Trans Union in United States District Court.  The first MDL Case, *Martinelli v. Trans Union Corp.*, was commenced in California state court and removed to the Northern District of California in early 1999.  In 2000, the Judicial Panel on Multidistrict Litigation transferred *Martinelli* and the other MDL cases to this Court for all pre-trial proceedings. Additional cases were transferred in the years that followed.  In addition to the MDL cases, a class action styled *Frey v. Trans Union, et. al.,* Cause No. 798893, was filed in Orange County, California Superior Court in 1998 (the "*Frey Action*"), and a class action styled *Andrews v. Trans Union* LLC, Case No. 02-18553, was filed in the Civil District Court for the Parish of New Orleans, Louisiana in December, 2002 (the "*Andrews Action*"), and certified as a class action for Louisiana consumers.  The *Frey Action*, the *Andrews Action*, and the MDL Cases are collectively referred to herein as the "Actions."

Following transfer to this Court, Plaintiffs filed a Consolidated Complaint, which Defendants' moved to dismiss.  Defendants also moved, at that time, for an order that a nationwide FCRA class could not be certified under FRCP 23.  In September 2002, the Court granted Defendants' motion to dismiss in part, and dismissed Plaintiffs' declaratory and injunctive claims and state law claims for invasion of privacy and misappropriation.  *In Re Trans Union*, 211 F.R.D. 328 (N.D. Il. 2002).  The Court also struck Plaintiffs' claims for nominal damages and ruled that Plaintiffs' could not certify a national target marketing class seeking statutory damages of $100 to $1000 per class member under FCRA.  Plaintiffs then sought

appellate review of certain of these rulings, but the Seventh Circuit declined review and/or dismissed the appeal for lack of subject matter jurisdiction. *Albert v. Trans Union*, 346 F. 3d 734 (7th 2003). *See* Declaration of Christopher T. Micheletti In Support of Preliminary Approval ("Micheletti Decl.") ¶¶2-3, 18-19, Exh. 12.

Plaintiffs filed a Second Amended Class Action Complaint (the "Complaint") in November 2002, claiming violations of the FCRA, invasion of privacy, misappropriation, violation of California unfair competition statutes, and unjust enrichment, and seeking damages and equitable relief. Defendants again moved to dismiss, and the Court again granted the motion in part, dismissing with prejudice Plaintiffs' invasion of privacy, misappropriation, and unjust enrichment claims. *In Re Trans Union*, 326 F. Supp. 893 (N.D. Il. 2004). Significantly, Plaintiffs' FCRA and California unfair competition claims survived. *Id.* ¶20, Exh. 13.

During the time period 1999 through 2004 and beyond, Plaintiffs engaged in extensive merits and class-related discovery. *See* § II B, *infra*. Plaintiffs moved to certify various classes in 2004, and in August 2005, this Court denied the motion in part, but did certify an Illinois "firm offer" class. *In Re Trans Union*, 2005 U. S. Dist. Lexis 17548 (N.D. Ill. Aug. 17, 2005). Micheletti Decl. ¶21, Exh. 14. On the same day as the Court in this action certified the Illinois Firm Offer Class, the Louisiana Court of Appeals affirmed certification of the Louisiana class. *Andrews v. Trans Union*, 917 So. 2d. 462 (La. App. 4 Cir., 8/17/05).

In September, 2005, the Court referred the matter to the Honorable Michael T. Mason for a settlement conference (Rec. Doc. 188). Following referral, the parties engaged in settlement conferences resulting in a March 2006 agreement in principle to settle (the "First Proposed Settlement"). Following additional negotiations, MDL counsel filed a motion for preliminary approval of the First Proposed Settlement in November 2006. Louisiana Plaintiffs filed an

Objection, and the First Settlement was withdrawn at the Court's suggestion. Louisiana Plaintiffs then filed additional briefing in response to Magistrate Judge Mason's request.

On September 28, 2007, MDL Counsel moved for preliminary approval of a Second Proposed Settlement, to which Louisiana and Texas Counsel objected. In January 2008, Magistrate Judge Mason issued a Report and Recommendation recommending that the Second Proposed Settlement be rejected. On March 4, 2008, Judge Gettleman overruled Trans Union's and MDL Counsel's objections to the Magistrate Judge's recommendation and rejected the Second Proposed Settlement. At the March 4 hearing, Judge Gettleman stated that Louisiana and Texas Counsel should be included in any further settlement negotiations.

Since then, the Court has assisted Louisiana Counsel, Texas Counsel and MDL Counsel in continuing negotiations with Trans Union. These negotiations resulted in an agreement in principle to settle reached on April 24, 2008, and the execution of the final Settlement Agreement on May 20, 2008.

## III.  THE PROPOSED SETTLEMENT AND RELEASE TERMS

The principal terms of the Stipulation of Settlement (the "Settlement Agreement"), which is attached hereto as Exhibit "A," are set forth below.

**A.  Definition of the Settlement Class.**  The "Settlement Class" consists of all persons who had an open credit account or open line of credit from a credit grantor located in the United States at any time during the period of January 1, 1987, to the date of preliminary approval. The class shall include, without limitation, any classes asserted or certified in *Andrews* and *Frey*.

**B.  Settlement Fund.**  Trans Union will create a cash settlement Fund in the amount of $75,000,000 (the "Fund").

### 1. Cy pres distribution for "no-internet" class members

An initial distribution of $150,000 will be made from the Fund to one or more qualified 501(c)(3) entities jointly chosen by Trans Union and Plaintiffs and approved by the Court. This distribution is in consideration of class members who do not have access to the internet.

### 2. Notice and administration costs

Costs of notice and administration shall be paid from the Fund.

### 3. Post-Settlement Claims

The balance of the Fund shall be deposited in an appropriate interest-bearing account, with interest accruing to the Fund, and the Fund to bear any taxes and administration costs thereon.

Trans Union may obtain reimbursement from the Settlement Fund for amounts it pays to satisfy settlements or judgments arising from lawsuits asserting Post-Settlement Claims (including any plaintiffs' attorneys' fees and costs, but not including any defense costs). A Post-Settlement Claim is a claim by a Settlement Class Member against a Defendant that is currently pending (excluding those of Plaintiffs) or that is asserted after the date of this Stipulation relating to Defendants' alleged distribution of Target Marketing lists or related information or Firm Offer lists or related information and arising out of, or related to, the facts or claims alleged in the Actions arising out of state or federal law. The term "Post-Settlement Claim" shall include, without limitation, claims under any legal or equitable theory, whether asserted in the form of a complaint filed in state or federal court, a demand for arbitration, an informal demand letter, or otherwise.

On a quarterly basis, Trans Union shall report on lawsuits filed asserting these claims to a Committee comprised of representatives chosen equally by Trans Union and Settlement Class

Counsel. Such quarterly reports shall include (a) the name of each Post-Settlement Claimant receiving a payment from Trans Union for which reimbursement was taken from the Settlement Fund, (b) the amount paid to each such Post-Settlement Claimant, (c) the name of each law firm or attorney receiving a payment from Trans Union for which reimbursement was taken from the Settlement Fund, (d) the amount paid to each such law firm or attorney, (e) the date on which each payment was made, (f) a brief description of the nature of the claim that was the basis for the payment (g) a copy of any complaint, demand for arbitration, informal demand letter or similar document in which the Post-Settlement Claims at issue were asserted; and (h) any agreement memorializing the resolution of the Post-Settlement Claims. Settlement Class Counsel shall be entitled to request additional information from Trans Union as they deem necessary and appropriate to substantiate the propriety of reimbursement payments, and Trans Union shall not unreasonably withhold any such information requested. Any dispute about the propriety of a reimbursement received by Trans Union shall be resolved by the Court. In the event the Court finds any such reimbursement amount improper, Trans Union shall return such amount, plus interest at the same rate earned on the Settlement Fund, to the Settlement Fund within 10 business days.

In the event that any Post-Settlement Claims remain pending at the end of the limitations period, the Committee will in good faith estimate an amount to be retained in the Fund in respect of any future settlement or judgment on such Post-Settlement Claims.

### 4. Final Distribution of Fund

After expiration of the limitations period, if any unexpended money remains in the Fund other than money being reserved in respect of pending Post-Settlement Claims, that money may be made available to class members through an administrative claims process. Settlement Class

6

members will have the opportunity to register to receive a pro-rata share of the amount remaining in the Fund.  After analysis and recommendation by Plaintiffs' counsel, the Court will determine if the amount remaining in the Fund is sufficient for a pro-rata distribution to registered class members.  If not, the amount remaining in the Fund will be distributed to 501(c)(3) entities recommended by the parties and approved by the Court.

C.     **In-Kind Relief.**  Trans Union shall provide six months of the Trans Union credit monitoring service, having a retail value of $59.75, to all Settlement Class members who request it.  The process for requesting this service shall be as follows: Commencing on the first day on which class notice is disseminated and continuing through the fourteenth day after the Final Fairness Hearing, Settlement Class Members shall be able to register at the settlement website. Upon Ultimate Approval, the Claims Administrator will notify Settlement Class Members who registered, at the email address they provided, that Basic In-Kind Relief is available and can be claimed at a designated website.  The Claims Administrator may reasonably provide this notice in stages so as to avoid overloading the website's capacity to provide Basic In-Kind Relief.  The services comprising Basic In-Kind Relief may be initiated in this fashion by Settlement Class Members for six months following Ultimate Approval.  The six months of credit monitoring service provided in this Section shall be offered by Trans Union in addition to any other credit monitoring or other service to which Settlement Class Members are entitled, either by purchase or for any other reason.  A Settlement Class Member claiming Basic In-Kind Relief shall not be required to provide any form of payment, such as credit card, to obtain Basic In-Kind Relief, and shall not be required to contact Trans Union in order to discontinue the services provided as Basic In-Kind Relief.  Basic In-Kind Relief services shall be automatically discontinued after six months unless the Settlement Class Member affirmatively requests that the Basic In-Kind Relief,

or any portion thereof, continue at the Settlement Class Member's own expense. This service shall be offered to all Settlement Class members in consideration for the release of their procedural rights to bring Post-Settlement Claims as class, joined, or aggregated actions and for their agreement to entry of an injunction enjoining the pursuit of Post-Settlement Claims as class, joined, or aggregated actions (as provided in Paragraph 4, above). All Settlement Class members, whether or not they actually request the service offered in this Section 6(a), shall release such procedural rights.

Simultaneously with offering the in-kind relief described in Section 6(a), Trans Union shall offer an alternative enhanced set of services that Settlement Class members can select in exchange for a full release of their claims. This enhanced set of services shall consist of nine months of Trans Union credit monitoring, a suite of insurance scores, and Trans Union's mortgage simulator service; the aggregate retail value of these services totals $115.50.

**D.** **Statute of Limitations.** For all class members whose claims were not time-barred as of January 1, 1987, Trans Union agrees not to raise a limitations defense to any Post-Settlement Claims commenced within two years of the date of Final Approval that involve causes of action pending in MDL No. 1350 as of the date of the Settlement.

**E.** **Releases.** No damages claims are released except the damages claims of the named plaintiffs and such settlement class members who either (a) claim the additional enhanced in-kind relief as described below or (b) receive cash amounts remaining in the Fund as described below; all other damages claims are dismissed without prejudice. Procedural rights to bring Post-Settlement Claims in the form of a class, joined, or aggregated action are released and will be enjoined. Claims for injunctive and declaratory relief are released.

**F.     Incentive Awards and Attorneys' Fees and Expenses.**  Attorneys' fees and litigation expenses shall be paid out of the Settlement Fund.  Trans Union shall agree not to oppose any fee award up to 25% of the Fund.  The amount of attorneys' fees ultimately awarded shall be in the sole discretion of the Court, and shall not affect the validity or finality of the Settlement.  Incentive awards to the Class Representatives shall be paid from the Fund, as approved by the Court and in recognition of the services to the Class provided by them, in an amount not to exceed $3,750.

**G.     Class Certification.**  The parties shall seek certification of the Settlement Class defined above pursuant to Rule 23(b)(1)(A), with enhanced notice and a full opportunity to object but without the right to opt out from release of their procedural rights only.  All class members' damages claims shall be dismissed without prejudice, except for the damages claims of the following categories of class members (which will be dismissed with prejudice): (1) the Class Representatives, (2) those class members who opt for any additional in-kind relief offered by Trans Union pursuant to Section 6(b), and (3) those class members who receive cash distributions from amounts remaining in the Fund following the expiration of the limitations period.  Claims for injunctive relief shall be dismissed with prejudice, and an injunction shall be entered enjoining all class members from bringing any Post-Settlement Claims in the form of a class, joined, or aggregated action.

**H.     Disgorgement of Profits.**     Trans Union represents—and Plaintiffs acknowledge—that the amount set forth in this Stipulation as the Settlement Fund represents full disgorgement of Trans Union's relevant profits and is intended for restitution to affected Settlement Class Members and for payment or reimbursement of legal and administrative expenses incurred by them.

9

I.      **Additional Provisions.**  All counsel of record in all constituent actions of MDL No. 1350, and all counsel of record in *Andrews* and *Frey*, represent that they have no other individual clients who have engaged them to pursue the target marketing or prescreening claims brought in this action against Trans Union, and agree that they will take no step to solicit, either on their own behalf or on behalf of any other attorney, additional clients to pursue such claims.

## IV.     PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.      A Class Action Settlement is Favored and Should be Preliminarily Approved if it Falls Within the Range of Reasonableness

Federal law recognizes an overriding public policy in favor of settlement of class actions. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982); *see also* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Federal Rule of Civil Procedure 23 requires court review of the resolution of a class action such as this one.  In particular, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  FED. R. CIV. P. 23(e).  Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during settlement negotiations.  *See Dalton v. Alston & Bird*, 741 F. Supp. 157, 160 (S.D. Ill. 1990) ("A court's role in approving a class action settlement is to insure that the settlement is fair to the absent class members.").

The approval of a class action settlement is committed to the Court's discretion.  *Isby*, 75 F.3d at 1196.  The first step of the approval process is a preliminary approval hearing to determine whether the proposed settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  The purpose of the preliminary

approval hearing is to ascertain whether any reason exists to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Id.* (citing Manual for Complex Litigation s 1.46, at 53-55 (West 1981)). If the Court finds that a proposed settlement is "within the range of possible approval," the next step is the fairness hearing, at which the Court will "adduce all information necessary for the judge to rule intelligently on whether the proposed settlement is 'fair, reasonable, and adequate.'" *Id.*

In order to evaluate the fairness of a settlement, a district court must consider:

[1]    the strength of plaintiffs' case compared to the amount of defendants' settlement offer,

[2]    an assessment of the likely complexity, length and expense of the litigation,

[3]    an evaluation of the amount of opposition to settlement among affected parties,

[4]    the opinion of competent counsel, and

[5]    the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006), *citing Isby*, 75 F.3d at 1199. Other factors that have been recognized include "the defendants' ability to pay," and "the presence of collusion". *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.* 212 F.R.D. 400, 409 (E.D. Wis. 2002) *citing EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

In conducting this analysis, the Court should begin by quantifying "the net expected value of continued litigation to the class." *Synfuel* at 653, *citing Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir.2002). This requires that the Court "estimate the range of possible outcomes and ascribe a probability to each point on the range." *Synfuel* at 653, *citing*

*Reynolds* at 285.  The Seventh Circuit recognizes that this analysis cannot be conducted with a high degree of precision, but rather involves the court reviewing evidence that enables it to estimate possible outcomes and arrive at a "ballpark valuation." *Id.*

When a settlement is a result of arm's length negotiations, and plaintiffs' counsel is experienced and has engaged in adequate discovery necessary to represent the class effectively, a strong initial presumption of fairness attaches to the proposed settlement.  *Hispanics United of DuPage County v. Village of Addison*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997).

### B. The Court Should Grant Preliminary Approval Because the Settlement is Within the Range of Possible Approval

The consideration provided under the Settlement is substantial.  Plaintiffs negotiated for meaningful in-kind relief, a Fund of $75 million, and a settlement structure whereby the class members release procedural rights only (the right to aggregate claims or participate in a class action) and release their substantive claims only if they affirmatively opt-in and expressly agree to release them.  Furthermore, Defendants' liability for their conduct at issue in this litigation is not limited or capped in any way by this settlement.

The $75 million amount of the Fund, which is the *minimum* Defendants will pay, was arrived at after two earlier proposed settlements were challenged and denied preliminary approval, and after additional extensive negotiations between Defendants and Louisiana, Texas and MDL Plaintiffs' counsel.  Furthermore, it represents full disgorgement of Trans Union's relevant profits.

Additionally, the in-kind relief is valuable to the Settlement Class and costly to Trans Union.  Even if the cost to Trans Union of providing this in-kind relief is only a small percentage of the retail value ($59.75 per person for the basic credit monitoring service, and $115.50 for the enhanced service), the cost to Trans Union would still be substantial.  Because Trans Union gets

no credit against the Fund for the cost of providing in-kind relief, this represents a significant cost to Trans Union above and beyond the $75 million that Trans Union is paying into the Fund.

As further described below, the $75 million Fund, and the other consideration, were agreed to after considering all key factors, including the Defendants' net worth, the Defendants' ability to pay any judgment that might be entered against them, the range of judgment amounts that would likely be obtained by Plaintiffs, the risk that a multi-billion dollar judgment would be remitted by the District Court or the Court of Appeals, and the time that would be required to litigate this case through trial and appeal.

1.     **Factor One: the Settlement is eminently fair when comparing the strength of Plaintiffs' case to the amount of Defendants' settlement offer**

Here, the $75 million Fund (and other significant relief included in the Settlement) is reasonable in light of the strengths and weaknesses of Plaintiffs' case. Plaintiffs allege that Trans Union committed FCRA violations when it disclosed Settlement Class Members' credit information in its target marketing lists. While Plaintiffs have performed extensive discovery and gathered evidence substantiating their claims, Defendants have denied (and would continue to deny) any wrongdoing. Moreover, to obtain statutory damages, Plaintiffs must prove the commission of "willful" FCRA violations. Defendants will vigorously contest "willfulness" by arguing, *inter alia*, that the FTC and D.C. Circuit Court of Appeals did not finally rule on the propriety of its conduct until, respectively, 2000 and 2001—which was after Trans Union discontinued most if not all of the challenged conduct; and, that therefore its conduct could not be considered "reckless" under *Safeco Insurance v. Burr*, ___ U.S. ___, 127 S.Ct. 2201 (2007). While Plaintiffs believe they could ultimately demonstrate willfulness, they are certainly cognizant of the risks involved in proving such a claim.

To prevail in this litigation, Plaintiffs must ultimately certify a class over Defendants' objection. Given the Court's denial of two prior motions to certify a nationwide class of target marketing claims, Plaintiffs would have to convince the Court to reconsider these prior orders denying class certification. Due to recent developments in Seventh Circuit case law, Plaintiffs believe they may be able to certify a nationwide class. Nevertheless, the risk still exists that the Court would not certify a nationwide class.

As noted above, when analyzing the strengths of the Plaintiffs' case, the Court should consider the net expected value of continued litigation and the probability of the range of possible outcomes. Here (setting aside actual damages, punitive damages, and attorneys' fees), the statutory damage range of $100 to $1000, when multiplied by the estimated 190 million class members, yields damages of $19 billion to $190 billion. These figures, however, have little relevance to the "net expected value of continued litigation" or the "range of possible outcomes" for two principal reasons: (1) a multi-billion dollar verdict could be remitted by the Court or by the Seventh Circuit to an amount more closely correlated to the damages suffered by the Plaintiffs or to the benefit derived by the Defendants as a result of the conduct at issue; and (2) even if such a verdict was not remitted, Defendants are without the financial wherewithal to pay a multi-billion dollar verdict.

Moreover, it is critical to note that Plaintiffs' substantive claims are not being released by the Settlement. All class members who do not affirmatively choose to release their claims in exchange for the enhanced in-kind relief automatically maintain their substantive right to sue Trans Union (in a non-aggregated, non-class action lawsuit) for the same conduct at issue in this litigation, and there is no limit on Trans Union's liability. When scrutinizing the Settlement, it is important to realize that not all of the substantive claims are being released, and thus the

consideration provided in the Settlement need not be as great as if the Settlement involved the release of all claims.

Without question, the first factor, the strength of Plaintiffs' case compared to the consideration provided under the Settlement, weighs in favor of preliminary approval.

**2. Factor Two: Trial will likely be complex, lengthy, and costly.**

Given the high stakes nature of this case, continued litigation (up to and including trial and any appeals) will be complex, lengthy and costly. Defendants deny that their conduct violated FCRA, deny that any violations were willful, deny that this case should be certified (for litigation purposes), as well as assert other defenses to Plaintiffs' claims. Furthermore, this case involves novel issues of law due to the size of the class, the annihilative statutory damages, constitutional issues regarding relation of damages to harm suffered, and issues regarding collection of a judgment, and possible bankruptcy of the Defendants. Accordingly, the second factor, an assessment of the likely complexity, length, and expense of the litigation, also weighs in favor of preliminary approval.

**3. Factor Three: lack of opposition to Settlement among affected parties.**

At the fairness hearing, the Court will consider any objections. At this preliminary approval stage, however, it is noteworthy that although there was opposition to the two prior settlements that were proposed, the current settlement is unopposed and is supported by the numerous parties who have had their cases transferred to this MDL proceeding.

**4. Factor Four: numerous competent counsel support approval of the settlement**

This Settlement is the product of more than two years of arm's-length negotiations among counsel experienced in class action litigation. The hard-fought negotiations, assisted by

Magistrate Judge Mason, resulting in the instant settlement, follows two previously rejected settlement agreements and eight years of litigation. Plaintiffs' counsel have obtained and analyzed ample evidence and dedicated significant time and resources to analyzing the strengths and weaknesses of the case, and have determined that the proposed Settlement is in the best interests of all Settlement Class members given: (1) the high value of the consideration provided by the settlement, (2) the limited nature of the release, and (3) the uncertainty and further substantial expense of pursuing the Actions through trial and appeal.

### 5. Factor Five: the Settlement was proposed late in litigation and discovery was virtually complete

The parties have engaged in extensive discovery in the nearly ten years since this litigation commenced. From 1999 through 2002, Plaintiffs' counsel reviewed approximately one-quarter to one-half million pages of Trans Union documents, from which they culled 40,000 pages for further analysis and coding. Micheletti Decl. ¶¶5-13, Exhs. 1-10. In connection with these productions, Plaintiffs' counsel engaged in extensive negotiations (including dozens of written communications and telephone conversations) over a period of many months in an effort to ensure Trans Union's compliance with the discovery requests and forthright production of documents. *Id.*. Louisiana Plaintiffs also conducted extensive discovery in connection with certification of the Louisiana class, obtaining and analyzing more than 40,000 documents, before class certification of the Louisiana class was granted and affirmed.

In addition to document and written discovery, Plaintiffs deposed Trans Union personnel regarding the information in Trans Union's target marketing database, target marketing list production, and the disclosure of Plaintiffs' identifying information in target marketing lists. In addition to conducting these and other depositions, Plaintiffs' counsel has reviewed multiple

depositions and analyzed thousands of pages of hearing transcripts generated in connection with related proceedings before the FTC. *Id.* ¶¶8, 9.

Document and other discovery taken in the *Frey* California case, was also coordinated, accessed and utilized in these proceedings. *Id.* ¶17. Plaintiffs also successfully pursued contested third party discovery against Trans Union's parent company, The Marmon Group, pursued and obtained thousands of pages of documents from defendant Acxiom, and engaged in extensive class certification-related discovery in connection with its litigated class motion decided in 2005. *Id.* ¶¶15, 21.

The above summary, in conjunction with the extensive motion practice outlined above in section II B, make it clear that the fifth factor, the stage of the proceedings and the amount of discovery completed at the time of settlement, strongly favors approval.

## V. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23

Federal Rule of Civil Procedure Rule 23 does not require the Court to provide individual notice to the class in 23(b)(1) or (b)(2) class actions. FED. R. CIV. P. 23(c)(2)(A); *see also In re Allstate Ins. Co.*, 400 F.3d 505, 506-07 (7th Cir. 2005) (noting that 23(b)(2) class action does not require giving class members notice of the suit and a chance to opt out of it and bring their own, individual suits). Nonetheless, the Court may direct notice to the class when appropriate. FED. R. CIV. P. 23(c)(2)(A).

Given the size of the Settlement Class, the extensive notice here is designed to inform the greatest practicable number of Class Members, thereby maximizing the opportunity for Settlement Class members to review and understand the Settlement, and to respond appropriately if they so choose. *See* Affidavit of Gina M. Intrepido, Vice-President and Media Director of Hilsoft Notifications (the "Hilsoft Affidavit"). To effectuate this goal, Hilsoft designed a multi-

pronged notification effort that includes individual mailings, published notices in multiple magazines and newspapers, internet banner notices, press releases, radio public service announcements, and broadcast advertising on national television. *Id.* at ¶¶5-9, 22-43. In addition, a neutral information website will be established where class members can obtain additional information about the case. *Id.* at ¶33.

Hilsoft estimates that the publication and television effort will reach approximately 86.5% of adults on average 4.3 times each. *Id.* At ¶6, 36, Ex. 1, p. 8, 12-14. *In* addition to the reach of the published and televised notices, the notice program will reach an additional percentage of the class members (which has not been quantified) through: (1) publications targeting those class members living in U.S. territories and possessions, as well as those serving in the military; (2) the internet banner notices (which will be displayed on popular websites); (3) the press releases (which will be published by various print and internet media); (4) the radio public service announcements (which will be broadcast by various radio stations); (5) the informational website (which will be located via various search engines by class members who search for topics related to the settlement), and (6) an estimated more than one million summary notices sent out by Trans Union in its credit file disclosures made during the notice period.

The costs of notice will be paid out of the Settlement Fund. Plaintiffs have endeavored to secure the most efficient notice program possible, taking into consideration the desire to reach a broad cross-section of class members while not spending an inappropriate amount of the Fund on notice. The estimated cost of the published notice is approximately $5.2 million.

## VI.     CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

The parties have stipulated to the certification of a Settlement Class in connection with the proposed settlement. There are four prerequisites to a class action under Federal Rule of

Civil Procedure 23(a): numerosity, commonality, typicality, and fair and adequate representation. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Once these four prerequisites are satisfied, the potential class must also satisfy at least one provision of Rule 23(b). *Id.*

The proposed Settlement Class satisfies all of Rule 23(a)'s requirements. The Settlement Class, which includes virtually every adult in the United States, easily meets the numerosity requirement. Commonality is also satisfied since all class members pursue the common issue of whether Trans Union violated FCRA when it improperly disclosed information about Settlement Class members. *See Keele v. Wexler*, 149 F.3d 589, 594-95 (7th Cir. 1998) (holding that the commonality required is satisfied when the class claims stem from a common nucleus of operative facts). Typicality, closely related to commonality, is satisfied because Plaintiffs' claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members [Plaintiffs'] claims are based on the same legal theory"– here, Trans Union's improper disclosure of information under FCRA. *See id.* (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). Finally, Plaintiffs constitute adequate class representatives as they have no claims antagonistic to other Settlement Class members. Likewise, class counsel is competent, experienced, and has more than adequately protected Class Member's interests.

The Plaintiff Settlement Class is also appropriate for certification under 23(b)(1)(A) because the class members claims are homogenous and the Settlement does not involve money damages. Here, without exception, the Settlement Class members have "homogeneous, cohesive interests" because (1) the conduct toward every Class Member was identical and (2) no substantive right is to be released in the Settlement—all individual damages claims are preserved. That is, quite unique to this Settlement, "no individual issues exist," which is the very

circumstance federal courts require for the application of Rule 23(b)(1)(A). *See Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992) (denying class certification because "numerous factual issues unique to each plaintiff would have to be addressed"); *Horowitz v. Pownall*, 105 F.R.D. 615, 618 (D. Md. 1985*); McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D. Kan. 1983). In other cases pled under FCRA, and in class settlements that certify and release damages claims, while plaintiffs are frequently the victims of similar circumstances, such circumstances cannot be characterized as "homogeneous."

Trans Union's conduct was identical with respect to each Settlement Class member: disclosure of Settlement Class members' private credit information for impermissible target marketing purposes. Further, as noted above, the proposed settlement identically provides to each Settlement Class member the right to preserve and pursue his or her damages claims, while still receiving a benefit for release of solely procedural rights—it is this which gives homogeneity and cohesiveness to the class.

In addition, the second defining element of Rule 23(b)(1)(A)—no pursuit of individual damages claims—is easily met. This settlement is unique in that it requires a dismissal, *without prejudice*, of all individual-damages claims. Given that these individual damages claims are wholly preserved from a limitations perspective, it is as if they had never been pursued. As such, the requirement that the Class Members "are not [any longer] pursuing individual damages claims," is satisfied.

## VII. CONCLUSION

Based on foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval of Proposed Settlement, provisionally certify the Class as defined herein, approve the parties' proposed Notice to the Class and direct that Notice be

disseminated to the Class as proposed, and schedule a hearing for final approval of Plaintiffs'

Counsel's fee application and Plaintiffs' proposed incentive payments.

DATED: May 20, 2008.

Respectfully submitted,

By:     /s/ Jon W. Borderud
Jon W. Borderud
The Borderud Law Group
11620 Wilshire Blvd., Suite 400
Los Angeles CA 90025
Telephone: (310) 207-2848
Fax: (310) 207-2748

By:     /s/ Joy Ann Bull
Joy Ann Bull
Coughlin Stoia Geller
Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Fax: (619) 231-7423

By:     /s/ Matthew Righetti
Matthew Righetti
Righetti Law Firm
456 Montgomery Street
Suite 1400
San Francisco CA 94104
Telephone: (415) 983-0900

Settlement Class Counsel and
Co-Lead Counsel for the MDL
Plaintiffs

By:     /s/ Thomas A. Doyle
Terry Rose Saunders
Thomas A. Doyle
Saunders & Doyle
20 South Clark Street, Suite 1720
Chicago IL 60603
Telephone: (312) 551-0051
Fax: (312) 551-4467

Liaison Counsel for the MDL
Plaintiffs

By:     /s/ Dawn Adams Wheelahan
Dawn Adams Wheelahan
5528 Loyola Ave.
New Orleans LA 70115
Telephone: (512) 689-1153
Fax: (512) 628-9149

Settlement Class Counsel and
Counsel for Yvonne and Robert
Morse, Mark Andrews and the
Certified Louisiana Class

By:     /s/ Michael A. Caddell
Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
Caddell & Chapman
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Settlement Class Counsel and
Counsel for Plaintiff, Donald
Jowers

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a copy of the foregoing has been filed on the Court's ECF system and thereby served on all counsel of record, this 20th day of May, 2008.


    _/s/  Cory S. Fein_____

Cory S. Fein

# EXHIBIT B

```
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    IN RE:  NATIONAL COLLEGIATE        )  Docket No. 13 C 9116
      ATHLETIC ASSOCIATION STUDENT-      )
 4    ATHLETE CONCUSSION INJURY          )  Chicago, Illinois
      LITIGATION,                        )  July 29, 2014
 5                                       )  2:00 o'clock p.m.

 6              TRANSCRIPT OF PROCEEDINGS - STATUS, MOTION
                    BEFORE THE HONORABLE JOHN Z. LEE
 7
      APPEARANCES:
 8
      ALSO PRESENT:              HONORABLE GERALDINE SOAT BROWN
 9
      For the Plaintiffs:        HAGENS BERMAN SOBOL SHAPIRO, by
10                               MR. STEVE W. BERMAN
                                 1918 8th Avenue
11                               Suite 3300
                                 Seattle, Washington 98101
12
                                 SIPRUT PC, by
13                               MR. JOSEPH J. SIPRUT
                                 17 North State Street
14                               Suite 1600
                                 Chicago, Illinois 60602
15
                                 ZIMMERMAN REED, by
16                               MR. CHARLES S. ZIMMERMAN
                                 MR. BRIAN C. GUDMUNDSON
17                                  (appearing telephonically)
                                 1100 IDS Center
18                               80 South 8th Street
                                 Minneapolis, Minnesota 55402
19

20

21
                          ALEXANDRA ROTH, CSR, RPR
22                          Official Court Reporter
                          219 South Dearborn Street
23                                 Room 1224
                            Chicago, Illinois 60604
24                              (312) 408-5038

25
```

1    APPEARANCES:   (Continued)

2                                HAUSFELD LLP, by
                                 MR. RICHARD S. LEWIS
3                                MS. MINDY B. PAVA
                                    (appearing telephonically)
4                                1700 K Street NW
                                 Suite 650
5                                Washington, DC 20006

6                                LIEFF CABRASER HEIMANN &
                                 BERNSTEIN, by
7                                MR. JEREMY J. TROXEL
                                    (appearing telephonically)
8                                250 Hudson Street
                                 8th Floor
9                                New York, New York 10013

10                               JAMES C. SELMER & ASSOCIATES, by
                                 MR. JAMES C. SELMER
11                                  (appearing telephonically)
                                 500 Washington Avenue
12                               Suite 2010
                                 Minneapolis, Minnesota 55415
13
                                 DUGAN LAW FIRM, by
14                               MR. JAMES R. DUGAN, II
                                    (appearing telephonically)
15                               MR. DAVID B. FRANCO
                                    (appearing telephonically)
16                               One Canal Place
                                 365 Canal Street
17                               Suite 1000
                                 New Orleans, Louisiana 70130
18
                                 BLUESTEIN NICHOLS THOMPSON
19                               AND DELGADO, by
                                 MR. JOHN CLARKE NEWTON
20                                  (appearing telephonically)
                                 P. O. Box 7965
21                               Columbia, South Carolina 29202

22                               THE LANIER LAW FIRM, by
                                 MR. RYAN D. ELLIS
23                                  (appearing telephonically)
                                 6810 FM 1960 West
24                               Houston, Texas 77069

25

```
 1   APPEARANCES:   (Continued)

 2                              McCALLUM METHVIN & TERRELL, by
                               MR. RODNEY MILLER
 3                                 (appearing telephonically)
                               2201 Arlington Ave S
 4                             Birmingham Alabama 35205

 5                             COHEN & MALAD, by
                               MS. LYNN A. TOOPS
 6                                 (appearing telephonically)
                               One Indiana Square
 7                             Suite 1400
                               Indianapolis, Indiana 46037
 8
     For plaintiff Nichols and   EDELSON PC, by
 9   Proposed Personal Injury    MR. JAY EDELSON
     Class:                      MR. ARI JONATHAN SCHARG
10                               350 North LaSalle Street
                               Suite 1300
11                             Chicago, Illinois 60654

12   For Defendant NCAA:         LATHAM & WATKINS, by
                               MR. MARK STEVEN MESTER
13                             MS. JOHANNA MARGARET SPELLMAN
                               233 South Wacker Drive
14                             Suite 5800
                               Chicago, Illinois 60606

15

16

17

18

19

20

21

22

23

24

25
```

1    Mr. Berman's PowerPoint and some of the things Mr. Edelson

2    said, and as probably expected, we do disagree with some of the

3    characterizations of the discovery.  We disagree with some of

4    the characterization what the NCAA -- NCAA did or did not do.

5    But the point of the settlement is to get past those

6    disagreements and to get this litigation resolved.

7           We certainly don't oppose preliminary approval, and we

8    firmly believe that this settlement agreement and the relief

9    that's provided to the class is a very positive step forward

10   for the class and for -- as a whole and for the NCAA.

11          THE COURT:  Okay.  You may be seated.

12          Mr. Berman, Mr. Mester, one of the issues that I

13   raised at a prior hearing was whether or not a class that is

14   certified under 23(b)(2) can waive a right in a bundle of

15   rights that a class may have under 23(b)(3).  Put it that way,

16   it does present a bit of a metaphysical question.  But in fact

17   it's a real one here in that in order for a settlement to be

18   approved at the final stage, the Court needs to find a class

19   certification is appropriate under one of the provisions under

20   Rule 23.

21          Here the parties are asking the Court to certify a

22   settlement class under 23(b)(2).  As part of that settlement

23   the parties are asking the Court to define the settlement so

24   that the class would, unless they opt out, waive the rights to

25   proceed to seek their damages for personal injury under

1    23(b)(3) on a classwide basis.

2            To be frank, one of the first things I did when I got

3    this memo was to go through to see if I can find some cases

4    that would help me in that analysis.  And I recognize that you

5    got a lot to put into this memorandum.  And under the local

6    rules you had 15 pages to do it.  You asked for 25 pages.  That

7    motion is granted.  But still I recognize that 25 pages is not

8    all that much space to address all the issues that you wanted

9    to address.

10           But I am particularly interested in this issue because

11   I do think that it's something that I am going to have to

12   address in my deliberations as I consider whether or not I am

13   going to approve this settlement.

14           Yes, you wanted to say something?

15           MR. MESTER:  Your Honor, I think there are a couple

16   decisions.  One that comes to mind, which modestly post-dates

17   the 1991 amendments of Title VII, was a Seventh Circuit

18   decision Lemon.  And I -- I attempted to refer to it earlier at

19   the earlier hearing when I think I referred to this issue as

20   being somewhat thorny.

21           But as I understand it, your Honor, there is good

22   press, Lemon being one, and I think there are other subsequent

23   decisions, that allow for a hybrid settlement that has elements

24   of (b)(2) and elements of (b)(3).  I think it was certainly

25   always our intention -- I don't want to speak for Mr. Berman,

1  but I believe it was his as well -- that this would be in that

2  sense a hybrid settlement.  It would have elements of (b)(2)

3  but also elements of (b)(3), including but not limited to

4  enhanced notice rights, which would otherwise not be provided

5  under (b)(2).  And equally, if not more important, opt-out

6  rights, which would not be provided under (b)(2) but available

7  under (b)(3).

8         So I think my belief and my understanding is that this

9  settlement combines elements of both.

10        THE COURT:  Okay.

11        MR. BERMAN:  That's correct, your Honor.  We are

12 moving under (b)(2) and (d)(1), which we believe allows you

13 discretion to make this a hybrid settlement, and to send notice

14 and opt-out rights.  And because of the waiver issues and the

15 opt-out issues, it's exactly why we want you to do that.

16        THE COURT:  No, I understand.  And again, I didn't

17 have much time to digest all of the memorandum.  And so I

18 didn't have a chance to go back and look at all the cases that

19 were cited.  But I did look at a couple of those cases.  And it

20 seems that in some of those cases, you had a 23(b)(2) class.

21 And for a variety of reasons the Court decided that additional

22 protections would be appropriate.

23        But in those cases, at least in my cursory review of

24 them, I did not see the class giving up any additional rights

25 other than what they would give up under 23(b)(2); that is,

1    they weren't giving up anything that would implicate 23(b)(3).

2    And so that's really the issue that I want the parties to

3    address.   And I feel that I am going to give you a chance to do

4    that.

5            So I'd like the parties -- I would like the parties

6    who are proposing the preliminary approval of this settlement

7    to file a supplemental memorandum addressing the issue; that

8    is, addressing basically whether under 23(b)(2) class with or

9    without -- with or without additional protections, whether such

10   a class can waive the right to proceed under 23(b)(3).

11           I will give you up to the 15 pages to do so, if you

12   need them all.   How much time would you like to submit that

13   memorandum?

14           MR. BERMAN:   Would seven days be okay?

15           THE COURT:   That would be more than adequate.   So why

16   don't I give you until August 8, that is next Friday, to file

17   the memorandum.   Again, it will be limited to 15 pages,

18   addressing that issue.

19           Now, Mr. Edelson you had requested some time to file a

20   formal written response and/or objections to the settlement

21   that's proposed in the motion.   How much time would you like to

22   file that?

23           MR. EDELSON:   Can we have 28 days?

24           THE COURT:   That will be fine, because I also want you

25   to respond to, if you wish to do so and think appropriate, to