# **Exhibit C**

1

1               IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3  IN RE:  NATIONAL COLLEGIATE    )  Docket No. 13 C 9116
    ATHLETIC ASSOCIATION STUDENT-   )
4  ATHLETE CONCUSSION INJURY       )  Chicago, Illinois
    LITIGATION,                 )  October 23, 2014
5                         )  10:00 o'clock a.m.

6           TRANSCRIPT OF PROCEEDINGS - MOTION
           BEFORE THE HONORABLE JOHN Z. LEE
7

  APPEARANCES:
8

  For Plaintiffs:               HAGENS BERMAN SOBOL SHAPIRO, by
9                        MR. STEVE W. BERMAN
                        1918 8th Avenue
10                     Suite 3300
                        Seattle, Washington 98101
11

                        HAGENS BERMAN SOBOL SHAPIRO, by
12                     MS. ELIZABETH A. FEGAN
                        1144 West Lake Street
13                     Suite 400
                        Oak Park, Illinois 60301
14

                        SIPRUT PC, by
15                     MR. GREGG MICHAEL BARBAKOFF
                        MR. JOSEPH J. SIPRUT
16                       (appearing telephonically)
                        MR. GREG JONES
17                     (appearing telephonically)
                        17 North State Street
18                     Suite 1600
                        Chicago, Illinois 60602
19

                        HAUSFELD LLP, by
20                     MR. RICHARD S. LEWIS
                        1700 K Street NW
21                     Suite 650
                        Washington, DC 20006
22

23            ALEXANDRA ROTH, CSR, RPR
             Official Court Reporter
           219 South Dearborn Street
24                Room 1224
            Chicago, Illinois 60604
25             (312) 408-5038

8

1    sanctioned sport in some instances, perhaps you don't

2    necessarily have a lot of risks of concussions.  But perhaps

3    you do.  Certainly one can envision a scenario where someone

4    playing baseball, water polo, skiing, gymnastics, might have

5    concussion concerns.

6            Now, I am not saying that they will or not.  But what

7    I am saying is that the Court is cognizant of the fact that

8    those non-contact sports are not represented by any class

9    representative in any of the classes.  In fact, all the named

10   representatives have played a contact sport.

11           And so whether or not those are legitimate concerns at

12   this point I am not sure whether or not the Court, or frankly

13   anyone else here, knows, given the fact that we do not have a

14   class representative in any of the class actions that has

15   played a non-contact sport, as that term is defined in the

16   settlement agreement.

17           The differences also manifest themselves in some of

18   the assumptions that is used by Analysis Group and Bruce Deal,

19   when he concludes that the amount of the settlement is adequate

20   for the medical monitoring program.  For example, one of the

21   assumptions that he uses -- or not assumptions -- figures that

22   he uses to calculate the anticipated number of people that

23   would participate in the medical monitoring program is based

24   upon the number of concussions reported per every thousand

25   student athletes who played a contact sport.

1          There is no discussion of the rate of concussions in
2     any other sport.  If there are such data, and I don't know
3     whether or not there is and that's one of the questions I have,
4     presumably that number would increase the participation rate
5     that forms the basis of Analysis Group's conclusion that the
6     funds that are currently allocated for the medical monitoring
7     project are sufficient.
8          So those are some ways in which the distinction
9     between contact sports and non-contact sports again manifests
10    itself throughout the settlement agreement and the procedure
11    that the parties contemplate.  And I also note that according
12    to Bruce Deal's estimates, approximately 2.4 million of the
13    4.2 million putative class members were athletes who played
14    non-contact sports.
15         So you have more than 50 percent the class, of the
16    putative class, who, No. 1, did not play contact sports; No. 2,
17    are not represented by any named class member in any of the
18    class actions that are currently before the Court.
19         Given that, my question to counsel -- and we will
20    start with Mr. Berman, and then I will hear from the NCAA and
21    anyone else, any other counsel, that would like to speak up --
22    can the current class representatives adequately represent the
23    interests of those who played non-contact sports when it comes
24    to the terms that are set forth in this settlement?
25         Mr. Berman?

1    contemplated.  But my concern is that the interests of people

2    who play non-contact sports be formally represented in this

3    case, so that those representatives can themselves make the

4    decision of whether or not they think that that is a critical,

5    material part of the settlement or not.

6          So, for example, I could see a rifleman or golfer, if

7    there is a class representative who played golf or those

8    actions, saying, look, I am happy with the attempts that were

9    made.  I am happy with the compromises that were made to get to

10   this settlement.  And, you know, because I don't think that the

11   risks for concussions in golf really are that pressing an issue

12   or that material, I am willing to give up that right so that we

13   can have all those other rights.  And I understand that.  And

14   practically speaking I also understand the practical

15   implications of that as well.

16         My concern with regard to adequacy is that there isn't

17   anyone representing non-contact sports that are part of the

18   actions that were consolidated into this action.  That was my

19   No. 1 concern.

20         The other concern I have is, I understand the intent,

21   and I believe it's well meaning, that the parties want to

22   provide medical monitoring to as inclusive a population as

23   possible.  But on the flip side, one of the rights of a class

24   representative, putative class representatives, is the right

25   not to bring the lawsuit.

1    behind the inclusion of those individuals in -- in the

2    settlement class.

3            We were certainly mindful of the need to provide

4    everyone with the opportunity to opt out.  So if someone

5    doesn't like the settlement, they can opt out, and they will

6    receive notice, which means they can also object.  I don't have

7    any idea how many people are going to do either.  But they're

8    going to have -- if it's approved as proposed, they're going to

9    have both rights.

10           But from the perspective of the NCAA and though I

11   don't represent them the NCAA's insurers, it was critically and

12   it is critically important that the class definition be as

13   broad as it is because we want to capture all the people who

14   can potentially have this issue and provide that benefit.

15           We are also mindful, of course, that if we don't have

16   that broad scope, that whatever we leave left, whatever we

17   don't include within the settlement class, will inevitably be

18   the -- the basis for some claim and it likely will be a class

19   claim.  I don't think it will be a particularly meritorious

20   class claim, but that doesn't mean it wouldn't be brought.  And

21   there is no question at all, another driving force is to avoid

22   the relatively high transaction costs of -- of class claims

23   seriatim being filed, virtually ad nauseam.

24           So that was the driving force as well.  But first and

25   foremost, we want to provide this medical monitoring to every

25

1  student athlete who needs it.  And the fact that there may only

2  be three participants in rifling who need it doesn't mean they

3  shouldn't get it.  I think they should get it.  But it should

4  be provided to everybody.

5        The same logic applies in terms of the temporal issue.

6  We don't think for a moment that the -- the claims of someone

7  who participated in college football in the '60s are as strong

8  as they would be of somebody who participated -- participates

9  now or participated last year.  But that doesn't mean we want

10 to deprive those individuals of the benefit of the settlement,

11 which is the medical monitoring.

12       And so it was again critically important that we

13 provide it to all student athletes without distinction, without

14 discrimination, without making any -- any types of

15 differentiation, which was also designed, we thought, in part

16 to address the adequacy question, the adequacy of

17 representation, as long as we're not distinguishing between

18 people, we are not saying that non-contact sport participants

19 have to meet a higher standard before they get medical

20 monitoring, which I've seen in some settlements.

21       But we are not doing that here.  Everybody has an

22 equal, fair shot.  They fill out the questionnaire.  The

23 criteria is the same.  And that determines whether they do or

24 they do not get medical monitoring.  But again, we thought it

25 was critically important that we provide to all student