# **EXHIBIT B**

Case: 1:13-cv-09116 Document #: 105-2 Filed: 12/15/14 Page 2 of 7 PageID #:2125
Case: 1:13-cv-09116 Document #: 96-3 Filed: 11/07/14 Page 2 of 7 PageID #:1919

1

```
        IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
                  EASTERN DIVISION

IN RE:   NATIONAL COLLEGIATE      )   Docket No. 13 C 9116
ATHLETIC ASSOCIATION STUDENT-     )
ATHLETE CONCUSSION INJURY         )   Chicago, Illinois
LITIGATION,                       )   October 23, 2014
                                  )   10:00 o'clock a.m.

         TRANSCRIPT OF PROCEEDINGS - MOTION
         BEFORE THE HONORABLE JOHN Z. LEE

APPEARANCES:

For Plaintiffs:              HAGENS BERMAN SOBOL SHAPIRO, by
                             MR. STEVE W. BERMAN
                             1918 8th Avenue
                             Suite 3300
                             Seattle, Washington 98101

                             HAGENS BERMAN SOBOL SHAPIRO, by
                             MS. ELIZABETH A. FEGAN
                             1144 West Lake Street
                             Suite 400
                             Oak Park, Illinois 60301

                             SIPRUT PC, by
                             MR. GREGG MICHAEL BARBAKOFF
                             MR. JOSEPH J. SIPRUT
                                (appearing telephonically)
                             MR. GREG JONES
                                (appearing telephonically)
                             17 North State Street
                             Suite 1600
                             Chicago, Illinois 60602

                             HAUSFELD LLP, by
                             MR. RICHARD S. LEWIS
                             1700 K Street NW
                             Suite 650
                             Washington, DC 20006

              ALEXANDRA ROTH, CSR, RPR
                Official Court Reporter
              219 South Dearborn Street
                     Room 1224
               Chicago, Illinois 60604
                  (312) 408-5038
```

Case: 1:13-cv-09116 Document #: 105-2 Filed: 12/15/14 Page 3 of 7 PageID #:2126
Case: 1:13-cv-09116 Document #: 96-3 Filed: 11/07/14 Page 3 of 7 PageID #:1920

8

1 sanctioned sport in some instances, perhaps you don't
2 necessarily have a lot of risks of concussions. But perhaps
3 you do. Certainly one can envision a scenario where someone
4 playing baseball, water polo, skiing, gymnastics, might have
5 concussion concerns.
6 Now, I am not saying that they will or not. But what
7 I am saying is that the Court is cognizant of the fact that
8 those non-contact sports are not represented by any class
9 representative in any of the classes. In fact, all the named
10 representatives have played a contact sport.
11 And so whether or not those are legitimate concerns at
12 this point I am not sure whether or not the Court, or frankly
13 anyone else here, knows, given the fact that we do not have a
14 class representative in any of the class actions that has
15 played a non-contact sport, as that term is defined in the
16 settlement agreement.
17 The differences also manifest themselves in some of
18 the assumptions that is used by Analysis Group and Bruce Deal,
19 when he concludes that the amount of the settlement is adequate
20 for the medical monitoring program. For example, one of the
21 assumptions that he uses -- or not assumptions -- figures that
22 he uses to calculate the anticipated number of people that
23 would participate in the medical monitoring program is based
24 upon the number of concussions reported per every thousand
25 student athletes who played a contact sport.

Case: 1:13-cv-09116 Document #: 105-2 Filed: 12/15/14 Page 4 of 7 PageID #:2127
Case: 1:13-cv-09116 Document #: 96-3 Filed: 11/07/14 Page 4 of 7 PageID #:1921

9

1  There is no discussion of the rate of concussions in
2  any other sport.  If there are such data, and I don't know
3  whether or not there is and that's one of the questions I have,
4  presumably that number would increase the participation rate
5  that forms the basis of Analysis Group's conclusion that the
6  funds that are currently allocated for the medical monitoring
7  project are sufficient.
8  So those are some ways in which the distinction
9  between contact sports and non-contact sports again manifests
10 itself throughout the settlement agreement and the procedure
11 that the parties contemplate.  And I also note that according
12 to Bruce Deal's estimates, approximately 2.4 million of the
13 4.2 million putative class members were athletes who played
14 non-contact sports.
15 So you have more than 50 percent the class, of the
16 putative class, who, No. 1, did not play contact sports; No. 2,
17 are not represented by any named class member in any of the
18 class actions that are currently before the Court.
19 Given that, my question to counsel -- and we will
20 start with Mr. Berman, and then I will hear from the NCAA and
21 anyone else, any other counsel, that would like to speak up --
22 can the current class representatives adequately represent the
23 interests of those who played non-contact sports when it comes
24 to the terms that are set forth in this settlement?
25 Mr. Berman?

1 contemplated. But my concern is that the interests of people
2 who play non-contact sports be formally represented in this
3 case, so that those representatives can themselves make the
4 decision of whether or not they think that that is a critical,
5 material part of the settlement or not.
6 So, for example, I could see a rifleman or golfer, if
7 there is a class representative who played golf or those
8 actions, saying, look, I am happy with the attempts that were
9 made. I am happy with the compromises that were made to get to
10 this settlement. And, you know, because I don't think that the
11 risks for concussions in golf really are that pressing an issue
12 or that material, I am willing to give up that right so that we
13 can have all those other rights. And I understand that. And
14 practically speaking I also understand the practical
15 implications of that as well.
16 My concern with regard to adequacy is that there isn't
17 anyone representing non-contact sports that are part of the
18 actions that were consolidated into this action. That was my
19 No. 1 concern.
20 The other concern I have is, I understand the intent,
21 and I believe it's well meaning, that the parties want to
22 provide medical monitoring to as inclusive a population as
23 possible. But on the flip side, one of the rights of a class
24 representative, putative class representatives, is the right
25 not to bring the lawsuit.

Case: 1:13-cv-09116 Document #: 105-2 Filed: 12/15/14 Page 6 of 7 PageID #:2129
Case: 1:13-cv-09116 Document #: 96-3 Filed: 11/07/14 Page 6 of 7 PageID #:1923

24

1  behind the inclusion of those individuals in -- in the
2  settlement class.
3            We were certainly mindful of the need to provide
4  everyone with the opportunity to opt out.  So if someone
5  doesn't like the settlement, they can opt out, and they will
6  receive notice, which means they can also object.  I don't have
7  any idea how many people are going to do either.  But they're
8  going to have -- if it's approved as proposed, they're going to
9  have both rights.
10           But from the perspective of the NCAA and though I
11 don't represent them the NCAA's insurers, it was critically and
12 it is critically important that the class definition be as
13 broad as it is because we want to capture all the people who
14 can potentially have this issue and provide that benefit.
15           We are also mindful, of course, that if we don't have
16 that broad scope, that whatever we leave left, whatever we
17 don't include within the settlement class, will inevitably be
18 the -- the basis for some claim and it likely will be a class
19 claim.  I don't think it will be a particularly meritorious
20 class claim, but that doesn't mean it wouldn't be brought.  And
21 there is no question at all, another driving force is to avoid
22 the relatively high transaction costs of -- of class claims
23 seriatim being filed, virtually ad nauseam.
24           So that was the driving force as well.  But first and
25 foremost, we want to provide this medical monitoring to every

Case: 1:13-cv-09116 Document #: 105-2 Filed: 12/15/14 Page 7 of 7 PageID #:2120
Case: 1:13-cv-09116 Document #: 96-3 Filed: 11/07/14 Page 7 of 7 PageID #:1924

25

1  student athlete who needs it.  And the fact that there may only
2  be three participants in rifling who need it doesn't mean they
3  shouldn't get it.  I think they should get it.  But it should
4  be provided to everybody.
5          The same logic applies in terms of the temporal issue.
6  We don't think for a moment that the -- the claims of someone
7  who participated in college football in the '60s are as strong
8  as they would be of somebody who participated -- participates
9  now or participated last year.  But that doesn't mean we want
10 to deprive those individuals of the benefit of the settlement,
11 which is the medical monitoring.
12         And so it was again critically important that we
13 provide it to all student athletes without distinction, without
14 discrimination, without making any -- any types of
15 differentiation, which was also designed, we thought, in part
16 to address the adequacy question, the adequacy of
17 representation, as long as we're not distinguishing between
18 people, we are not saying that non-contact sport participants
19 have to meet a higher standard before they get medical
20 monitoring, which I've seen in some settlements.
21         But we are not doing that here.  Everybody has an
22 equal, fair shot.  They fill out the questionnaire.  The
23 criteria is the same.  And that determines whether they do or
24 they do not get medical monitoring.  But again, we thought it
25 was critically important that we provide to all student