# **EXHIBIT C**

```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE      )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-    )
 4   ATHLETE CONCUSSION INJURY        )  Chicago, Illinois
     LITIGATION,                      )  November 18, 2014
 5                                    )  9:00 o'clock a.m.

 6               TRANSCRIPT OF PROCEEDINGS - MOTION
                BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:         HAGENS BERMAN SOBOL SHAPIRO, by
 9                               MS. ELIZABETH A. FEGAN
                                 1918 Eighth Avenue
10                               Suite 3300
                                 Seattle, Washington 98101
11
                                 SIPRUT PC, by
12                               MR. JOSEPH J. SIPRUT
                                 17 North State Street
13                               Suite 1600
                                 Chicago, Illinois 60602
14
     For the Nichols class       EDELSON PC, by
15   member:                     MR. JAY EDELSON
                                 350 North LaSalle Street
16                               Suite 1300
                                 Chicago, Illinois 60654
17
     For Defendant NCAA:         LATHAM & WATKINS, by
18                               MS. JOHANNA MARGARET SPELLMAN
                                 233 South Wacker Drive
19                               Suite 5800
                                 Chicago, Illinois 60606
20

21

22

23

24

25
```

```
 1        (Proceedings had in open court:)
 2            THE CLERK:  13 C 9116, NCAA Student Athlete Concussion
 3   Litigation, for motion hearing.
 4            MR. SIPRUT:  Good morning, your Honor.  Joe Siprut on
 5   behalf of the plaintiffs.
 6            MS. FEGAN:  Good morning, your Honor.  Elizabeth Fegan
 7   on behalf of the plaintiffs.
 8            MS. SPELLMAN:  Good morning, your Honor.  Johanna
 9   Spellman on behalf of defendant NCAA.
10            MR. EDELSON:  Good morning, your Honor.  Jay Edelson
11   on behalf of class member Nichols.
12            THE COURT:  Do we have everyone here who needs to be
13   here?
14            MS. SPELLMAN:  Yes.
15            THE COURT:  I understand that some people are running
16   late.
17            MS. FEGAN:  Yes.
18            THE COURT:  Okay.  All right.  We are here on the
19   plaintiffs' motion to add additional plaintiffs and class
20   representatives, basically two people who are currently
21   athletes of non-contact sports, as I understand it.  Is that
22   correct?
23            MS. FEGAN:  That's correct, your Honor.
24            THE COURT:  All right.  There is also pending, noticed
25   up for I believe the 20th, the defendant has filed a motion
```

1  asking for leave to file a reply to address further the issue
2  of adequacy as the case -- as the class is currently
3  constituted.  I have some questions about that.
4          But, Mr. Edelson, I wanted to hear from you as to what
5  thoughts you had, if any, with regard to the requests that are
6  submitted.
7          MR. EDELSON:  Starting with the second one first,
8  NCAA's, if they want to file a brief and your Honor's wants to
9  read them, we have no opposition.
10         With regard to the request to add new class
11 representatives, we think that -- speaking nicely, that they're
12 missing the point.  The idea is that a class representative is
13 supposed to be involved in the negotiation, not bless a
14 settlement after the fact.
15         I just cite to your Honor In Re Pharmaceutical
16 Industry Average Wholesale Price Litigation, 277 FRD 52,
17 District Court from Massachusetts in 2011.  And what the Court
18 explains, there -- there aren't a lot of cases on point.  This
19 is so rare to do this where you try to add a class
20 representative on the eve of a fairness hearing.  They say that
21 the concern is that it just demonstrates that the negotiations
22 were purely lawyer driven.
23         They talk about one other case which the -- which this
24 Court was able to find, where the Court originally ordered an
25 evidentiary hearing to see if the class representatives had any

1  real participation other than just seeing this as a done deal
2  and just signing their name.  I think it's even more pronounced
3  here because if I read the NCAA's position clearly, in their --
4  in their brief, I read it correctly, they're saying that
5  they're willing to go to mediation to address those concerns,
6  while at the same time we've got two new class representatives
7  saying, oh, sure, looks fine to us.
8        So we think that it should be real adversarial
9  negotiations with someone who's fighting for the rights of the
10 non-contact.
11       THE COURT:  Let me ask the NCAA this:  I take it that
12 based upon the statements in your pleading, that to the extent
13 that any additional class members or class representatives are
14 added to the -- to this case, and they do have particular
15 issues that they want to -- through the lawyers obviously, that
16 with the NCAA and perhaps even with Judge Andersen's
17 participation, that the NCAA doesn't have any objection to
18 that?
19       MS. SPELLMAN:  No objection, your Honor.  As you may
20 recall, the October 23 hearing my colleague Mr. Mester and Mr.
21 Berman both indicated they would be fully willing to meet with,
22 go through another mediation with Judge Andersen, inviting
23 participants in non-contact sports to participate.  Those --
24 those class members could raise with Judge Andersen any
25 concerns they may have about the settlement.

1  We continue to support that and believe that Judge
2  Andersen would be willing to provide a supplemental report to
3  the Court if we were to proceed in that manner.
4  THE COURT: Mr. Edelson, particularly if Judge
5  Andersen, who was the mediator in the case, became involved, to
6  the extent there were any concerns raised, wouldn't that
7  mitigate some of the concerns that you raised? I understand
8  your concern about kind of post hoc just agreement one way or
9  the other. But if the new class representatives, whoever they
10 may be and we'll talk about that a little bit, you know, are
11 allowed to participate, basically reopen the discussions with
12 Judge Andersen, at least meet with Judge Andersen, and to make
13 sure Judge Andersen with all the parties can be clear that and
14 can make sure that the new representatives understand the scope
15 of the settlement so that he is satisfied with that, wouldn't
16 that mitigate a lot of the concerns that you raised?
17 MR. EDELSON: Absolutely.
18 MS. FEGAN: Your Honor, if I can just mention a couple
19 of things. I mean, I think in the first instance, Mr. Edelson
20 is raising the chicken before the egg problem. We certainly
21 can't start bringing people in demanding mediation unless
22 they've been kind of blessed by the Court to come in and make
23 their views known and participate in that kind of process.
24 But the second piece of this is, the Supreme Court has
25 said that if there is a piece of a class action that is going

1 to die basically or rights are going to be prejudiced because
2 they don't have class representatives, that the Court can add
3 those class reps even after final judgment, even for the
4 purpose for example of taking an appeal, even after summary
5 judgment for example.
6 So, you know, certainly AWP, which we were a part of,
7 which he cited, is a totally different situation.  But United
8 Airlines, which is a United States Supreme Court case, has said
9 that the Court should not deny the right of absent class
10 members to come forward and act as class reps if there is a
11 chance that their rights will otherwise basically die on the
12 vine.
13 So we think it's appropriate to add them.  I'm
14 certainly -- can answer particular questions about both Ms.
15 Williams and Mr. Sheeder.  But they are willing to take part in
16 the process, which I think is the -- the key parameter here,
17 which this Court voiced some concerns about at the last
18 hearing.
19 THE COURT:  Now, with regard to those two individuals,
20 from the last hearing I understand that based upon whatever
21 statistics is compiled with regard to this issue, that there is
22 a kind of continuum of sports, right, from football on the one
23 end and whatever it may be on the other end with regard to kind
24 of incidences of concussion.
25 My first question is, how was the thought process

1    selecting these two particular sports; that is, I believe it's
2    track and field, right, and golf, versus anything else on that
3    continuum?
4         MS. FEGAN:  Your Honor, first and foremost, I don't
5    think it's necessary, for example, to have every -- a student
6    athlete from every sport represented.  We have certainly gone
7    through the process with both the data in the case as well as
8    with our experts and identified those sports that are obviously
9    most likely to have kind of a daily subconcussive hit issue.
10        Outside of that, there is a spectrum of concussion
11   incidences.  But they're not so bright line as to say, we have
12   additional buckets, at least from our experts' point of view.
13   From our experts' point of view, things like baseline testing,
14   things like being able to report the concussions to the NCAA,
15   make sure they're resolved, are important for the entire bucket
16   of non-contact sports, and they wouldn't differentiate between
17   the relief giving.
18        We can certainly find more if the Court would like
19   additional sports covered.  But the idea was to make sure that
20   we have people that were in the middle of their NCAA career
21   that were in non-contact sports and from different schools, so
22   that we got, you know, kind of -- they weren't friends talking
23   to each other, for example.  And put it in front of them and
24   say, look, this is the process we've gone through.  These are
25   the buckets of relief.  And we want your honest opinion.

1                And frankly, both of them, as we put in the motion and
2      as they say in their declarations, both of them recognized.
3      They picked up on and raised to us the difference between
4      having physicians present, for example, at a football game but
5      no physician present at a track meet. And they brought that
6      up. We discussed it, and they understood it from their point
7      of view after reading things.
8                So that being said, we're happy to go through the
9      process with Judge Andersen and make -- to make sure frankly
10     that they are fully informed, that it's not -- it's certainly
11     not lawyer driven. It is a response to what this Court said.
12     But to Judge -- have Judge Andersen be in a situation where he
13     can talk to them and understand that this is their reaction.
14     It's not something that's being filtered or lawyer driven.
15               THE COURT: It's certainly not my belief at this time
16     that you need a representative from every sport. The concern
17     that I was really addressing was, to the extent there is a
18     continuum, I want to make sure what whoever the additional
19     class representatives are adequately represent that continuum.
20               And there isn't much discussion, if any, in the motion
21     with regard to the thought process of why golf and why track
22     and field. It could be that those are sports kind of separate
23     within the continuum. Golf perhaps representing the sports
24     kind of on the far end and track and field more kind of in the
25     middle of the non-contact sports. But I just have no basis to

1  make that determination.

2  So, no, I don't believe that you need a class rep from
3  every sport. However, I do think you need sufficient amount of
4  representation along that continuum.

5  MS. FEGAN: Okay.

6  THE COURT: And given the fact that the parties have
7  all the data and have a better understanding as to what that
8  continuum is and how that might be adequately represented,
9  that's something that the motion is lacking and an explanation
10 that I think I would certainly like to see.

11 The other question I had was with regard to you have
12 the issue of contact, non-contact sport. We talked about that.
13 The other issue is current athletes versus former athletes.
14 And people have spoken about that too.

15 And I was wondering whether there was any thought
16 about going and obtaining former athletes in non-contact sports
17 to get their input and views with regard to the settlement
18 agreement. Because again, as I read the settlement agreement,
19 they are the two main -- those are the two kind of areas where
20 it distinguishes one from the other.

21 MS. FEGAN: I can -- I can directly speak to that,
22 your Honor. The reason that we did not go get former
23 non-contact sports student athletes is because the medical
24 monitoring program, which applies to all former student
25 athletes is exactly the same between contact and non-contact

1 sports.  So there is no differentiation between the two.  If
2 they have symptoms, they can fill out the questionnaire.
3 Anybody can fill out the questionnaire.  But if they have
4 symptoms, they'll qualify for medical evaluation, regardless of
5 sport, regardless of when they played.
6       The reason that we felt it was important to get the
7 current student athletes is because there is a differentiation
8 in the prospective injunctive relief.  And so that is where we
9 thought to the extent that anyone raised a conflict, that that
10 would be where the adequacy question lied.
11       So but --
12       THE COURT:  I understand that.  But the issue in my
13 mind is a bit broader than that, is these class representatives
14 and this class are being asked to give up certain rights in
15 exchange for certain benefits, right?  And I think that in that
16 regard, perspective of some -- of a representative number of
17 class representatives who are former athletes in non-contact
18 sports would be useful to make that overall assessment of is
19 this a settlement that we can endorse, as opposed to is there a
20 difference between this particular term as it affects current
21 athletes versus former athletes.
22       So what I am looking at class representation, I am
23 looking at -- to get the thoughts of various class
24 representatives along the spectrum of both sports and time
25 period to some extent, and whether or not they would approve of

1    the overall settlement, which includes, as we all know, a
2    waiver to proceed on a class-wide basis with regard to
3    individual injuries.
4            And so that sort of balancing is what needs to be kind
5    of assessed, I think, by each of these representatives.
6            MS. FEGAN:  Your Honor, so would you prefer that the
7    right way for us to proceed -- I mean, we certainly have had
8    many, many current and former student athletes contact us.  I
9    think that these concerns are things we can address, and we can
10   provide you with the data.
11           I guess my suggestion would be that we enter and
12   continue the motion, that we supplement it as you requested.
13   Or we can withdraw it and file a new one.
14           THE COURT:  Yes --
15           MS. FEGAN:  I just feel we need some time parameter to
16   make sure that we address these concerns.
17           THE COURT:  The other question I had with regard to
18   that is, with regard to the Bruce Deal report, the statistics
19   with regard to participation rate were based upon, as I recall,
20   only contact sports statistics.  And is there any thought,
21   given the availability of data with regard to non-contact
22   sports, to have Mr. Deal and his team take another look at
23   their work to make sure that they have the most relevant data
24   to adequately calculate participation rate?
25           MS. FEGAN:  Absolutely, your Honor.  That's something

Case: 1:13-cv-09116 Document #: 105-3 Filed: 12/15/14 Page 13 of 16 PageID #:2143
12

1  that we can do.  I think that it was something originally they
2  did do.  But it was such a de minimis thing they ended up
3  focusing.  But there were so many pieces to put together.  But
4  that would not be an issue.
5           THE COURT:  And if the conclusion is that it's de
6  minimis, then that's certainly something that's possible,
7  right?  But I think that that sort of analysis would be helpful
8  for me in trying to determine fairness.
9           So the other thing is, there is a lot of moving
10 pieces, right?  I think that the hearing that we had before
11 raised in my mind some of these concerns, but also additional
12 concerns that my intent is to alert the parties shortly about.
13          With regard to I envision also talking about the class
14 representative issue.  But given the fact that that's still
15 kind of in play, what I propose that we do is kind of go along
16 two tracks.  Okay?  So with regard to issues not related to
17 adequacy representation, again, my intention is to alert the
18 parties with regard to those issues as soon as I can.
19          While I do that, I would like the parties to go back
20 and think about my comments today with regard to adequacy
21 because in some respects I think that issue is one of the
22 overarching issues and concerns that I have with regard to the
23 settlement proposed by the parties.
24          And so as far as time frame goes, how much time do the
25 plaintiffs believe they need to go back and think about those

13

1  issues and try to address those issues or propose some sort of
2  a way of addressing those issue?
3      MS. FEGAN:  Your Honor, I think we would need -- I
4  guess let me ask this question:  Do you want us to sit down
5  with Judge Andersen during the time frame?  Or is it more to be
6  able to address the statistical issues and coverage?
7      THE COURT:  I want to make sure that whoever the
8  additional class members are, that they have a meaningful
9  opportunity to sit down with Judge Andersen and the parties and
10 ask whatever questions they have.
11     MS. FEGAN:  I would suggest 30 days, your Honor.
12     THE COURT:  They don't have to do it before I allow
13 them into the case, obviously.  But as part of the condition of
14 them being added to the case as class representatives, they
15 certainly must be given the opportunity to do that.  Okay?
16     So you think 30 days would be sufficient?
17     MS. FEGAN:  I do, your Honor.
18     THE COURT:  Okay.  So with regard to the current
19 motion, I am going to do this:  I am going to deny the current
20 motion without prejudice.  I am going to give the plaintiffs
21 leave until December 18, to file a renewed motion, to address
22 the concerns that I have raised.
23     Mr. Edelson, at that point in time after that you can
24 take a look at it.  And if there are any further concerns that
25 you may have, we can address that at the hearing.  Hold on for

1 a second.

2 Actually, you know what? I'd like to get back, talk
3 about this case before the end of the year. So why don't you
4 go ahead and file that motion by December 15.

5 MR. SIPRUT: Okay.

6 MS. FEGAN: Okay.

7 THE COURT: And you can notice it up for the 19th at
8 10:00 o'clock. And that will give Mr. Edelson and frankly
9 anyone else who has access to the docket, which is everyone, to
10 take a look at it. And they can -- we can address any concerns
11 or questions that they have at that point in time.

12 MS. FEGAN: Thank you, your Honor.

13 THE COURT: With regard to the NCAA's motion, I take
14 it you don't have any objection to the motion?

15 MS. FEGAN: No.

16 THE COURT: So the motion with regard to the reply
17 brief is granted.

18 MS. SPELLMAN: Thank you, your Honor.

19 THE COURT: Anything else we need to address today?

20 MS. FEGAN: No.

21 MR. EDELSON: Thank you, your Honor.

22 MR. SIPRUT: Thank you, your Honor.

23 (Which were all the proceedings had at the hearing of the
24 within cause on the day and date hereof.)

25

```
 1                         CERTIFICATE

 2          I HEREBY CERTIFY that the foregoing is a true, correct

 3   and complete transcript of the proceedings had at the hearing

 4   of the aforementioned cause on the day and date hereof.

 5


 6    /s/Alexandra Roth                              11/19/2014
     _____            _____
 7    Official Court Reporter                          Date
      U.S. District Court
 8    Northern District of Illinois
      Eastern Division
 9
```