UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION | MDL NO. 2492<br><br>Master Docket No. 13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

**CLASS REPRESENTATIVES' MEMORANDUM IN OPPOSITION
TO PLAINTIFF WHITTIER'S RULE 23 MOTION
<u>FOR APPOINTMENT OF ADDITIONAL CLASS COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ...................................................................................................................2

III. ARGUMENT.........................................................................................................................4

    A. The Appointment of Additional Class Counsel is Unnecessary..............................4

        1. Whittier Does Not Address – and Does Not Satisfy – The Factors to Demonstrate that Additional Class Counsel is Necessary ...........................4

        2. The Appointment of Additional Class Counsel is Unnecessary Because Co-Lead Counsel Adequately Represent the Putative Class, Including Members With Personal Injury Claims.......................................................7

    B. Counsel for Whittier Does Not Satisfy the FED. R. CIV. P. 23(g) Factors ...............9

IV. CONCLUSION.....................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Walker v. Discover Fin. Servs.*,
  2011 WL 2160889 (N.D. Ill. May 26, 2011) (Darrah, J.) ........................................................ 10

*Carrier v. Am. Bankers Life Assurance Co. of Fla.*,
  2006 U.S. Dist. LEXIS 76346 (D.N.H. Oct. 19, 2006) ..................................................... 1, 4, 6

*Crowder v. Lash*,
  687 F.2d 996 (7th Cir. 1982) ................................................................................................... 8

*Donaldson v. Pharmacia Pension Plan*,
  2006 U.S. Dist. LEXIS 28607 (S.D. Ill. May 10, 2006) ....................................................... 1, 4

*Hill v. The Tribune Co.*,
  2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) ............................................................................ 9

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*,
  234 F.R.D. 67 (S.D.N.Y. 2006) ........................................................................................... 5, 6

### Other Authorities

7B WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1802.3 (3d ed. 2014) ..................................... 5

FED. R. CIV. P. 23(g)(1)(A) ............................................................................................................ 9

FED. R. CIV. P. 23 (g)(3) ................................................................................................................. 4

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.11 (2004) ...................................................... 5

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.273 (2004) .................................................... 7

Plaintiffs Adrian Arrington, Derek Owens, Kyle Solomon, Angela Palacios, Abram Robert Wolf, Sean Sweeney, Jim O'Conner, Dan Ahern, Paul Morgan, Jeffrey Caldwell, John DuRocher, Sharron Washington, Shelby Williams, Brice Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, and Jessica Miller (collectively, "Class Representatives"), by and through Lead Counsel,[1] oppose Plaintiff Whittier's ("Whittier") Rule 23 Motion For Appointment of Additional Class Counsel. In support thereof, Class Representatives state as follows:

## I. INTRODUCTION

The Court has already considered the Rule 23 appointment of Lead Counsel on two separate occasions since the filing of the *Arrington* case over 3 years ago – both times appointing Hagens Berman Sobol Shapiro LLP and Siprut PC as Interim Co-Lead Counsel. The appointment of interim counsel, however, is limited to when it is necessary to protect the interests of the class.[2] The motion by Whittier to appoint additional class counsel should thus be denied for two separate reasons: (1) Whittier does not address the factors to demonstrate why additional class counsel is necessary;[3] and (2) the factors set forth in FED. R. CIV. P. 23(g) do not support appointment of additional counsel.

---

[1] Lead Counsel means Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Joseph Siprut of Siprut PC. *See* Case Management Order No. 3 (July 30, 2014) (Dkt. No. 76), attached as Ex. 1.

[2] *See, e.g.*, *Donaldson v. Pharmacia Pension Plan*, 2006 U.S. Dist. LEXIS 28607, at *1 (S.D. Ill. May 10, 2006).

[3] *Carrier v. Am. Bankers Life Assurance Co. of Fla.*, 2006 U.S. Dist. LEXIS 76346, at *2 (D.N.H. Oct. 19, 2006) ("The need to protect the interests of the putative class arises when it is necessary to have one attorney to prepare for the class certification decision, to prepare or respond to other motions before class certification, to discuss settlement before certification, or to resolve rivalry or uncertainty among competing counsel or law firms.").

The motion should also be denied because the primary basis for the motion, that additional lead counsel is needed due to a waiver of personal injury claims, has been considered and rejected by this Court in the presence of Whittier's counsel.

While Co-Lead Counsel has been in the trenches since 2011 conducting full merits discovery, working with the top experts in the field of concussions in sport, engaging in motion practice, and negotiating a global settlement on behalf of all current and former student-athletes, counsel for Whittier has occupied a seat on the bench. It is only now, over 3 years after the litigation was initiated by Co-Lead Counsel and following multiple considerations of appointment of class counsel by the Court, that Whittier requests that his counsel, Dwight E. Jefferson, be appointed as additional class counsel. The Court should deny this request.

## II.     BACKGROUND

On October 19, 2011, the Hon. Sharon Coleman appointed Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Joseph Siprut of Siprut PC as Interim Co-Lead Counsel on behalf of the putative class.[4] For two years, between October 2011 and June 2013, Interim Co-Lead Counsel walked alone in their pursuit of medical monitoring relief for all current and former student-athletes, as well as changes to the NCAA's return-to-play guidelines for students who had suffered concussions or concussion symptoms.[5] As a result of the work of Interim Co-

---

[4] Order (*Arrington* Dkt. No. 22).

[5] Interim Co-Lead Counsel conducted a thorough investigation into the facts and law and conducted extensive merits discovery, including the NCAA's production of 29,502 documents (176,849 pages), the production of 8,124 documents by 43 third-parties (28,485 pages), and the *Arrington* Plaintiffs' production of 3,842 documents (10,144 pages). Interim Co-Lead Counsel spent more than 3,300 hours reviewing and analyzing documents produced in this matter. Interim Co-Lead Counsel took 10 depositions of the NCAA's fact witnesses, and the NCAA deposed the four *Arrington* Plaintiffs and one absent class member. The *Arrington* Plaintiffs also filed their Motion for Class Certification and Memorandum in Support, together with a detailed Proffer of Facts In Support of Class Certification ("Fact Proffer") and an expert analysis of the

- 3 -

Lead Counsel, the Court stayed the *Arrington* litigation pending settlement discussions, and multiple other actions have since been filed nationwide.[6]

Following consolidation of the Related Actions in the current MDL, the Court reappointed Hagens Berman and Siprut P.C. as Co-Lead Counsel determining that "the Hagens Berman and Siprut firms are best situated to represent the interests of the class as a whole…."[7] The Court further stated:[8]

> In doing so, the Court notes that Hagens Berman and Siprut have served as Co-Lead Counsel for the *Arrington* Plaintiffs since the inception of this case in 2011, have expended numerous hours in service of their clients, and have moved the case along at a commendable pace. Moreover, these firms have substantial class action experience and in serving as Lead Counsel in other class actions of comparable scope … As co-Lead Counsel, Hagens Berman and Siprut P.C. owe a duty to all of the Plaintiffs and putative class members who are part of this MDL with respect to all of their interests as set forth in the respective complaints until further order of this Court.

---

NCAA's concussion policies from one of the nation's leading sport concussion experts, Dr. Robert Cantu.

[6] *Walker, et al. v. NCAA*, No. 1:13-cv-00293 (E.D. Tenn., filed Sept. 3, 2013); *DuRocher, et al. v. NCAA*, No. 1:13-cv-01570 (S.D. Ind., filed Oct. 1, 2012); *Doughty v. NCAA*, No. 3:13-cv-02894 (D.S.C., filed Oct. 22, 2013); *Caldwell, et al. v. NCAA*, No. 1:13-cv-03820 (N.D. Ga., filed Oct. 18, 2013); *Powell, et al. v. NCAA*, No. 4:13-cv-01106 (W.D. Mo., filed Nov. 11, 2013); *Morgan, et al. v. NCAA*, No. 0:13-cv-03174 (D. Minn., filed Nov. 19, 2013); *Walton, et al. v. NCAA*, No. 2:13-cv-02904 (W.D. Tenn., filed Nov. 20, 2013); *Washington, et al. v. NCAA*, No. 4:13-cv-02434 (E.D. Mo., filed Dec. 3, 2013); *Hudson v. NCAA*, No. 5:13-cv-00398 (N.D. Fla., filed Dec. 3, 2013); *Nichols v. NCAA*, No. 1:14-cv-00962 (N.D. Ill., filed Feb. 11, 2014); *Wolf v. NCAA*, No. 1:13-cv-09116 (N.D. Ill., filed Feb. 20, 2014); *Jackson v. NCAA*, No. 1:14-cv-02103 (E.D.N.Y., filed April 2, 2014); *Mildred Whittier v. NCAA*, No. 14-cv-00978 (W.D. Tex., filed Oct. 27, 2014).

[7] Ex. 1 at 5.

[8] Ex. 1 at 4-5.

In its Order reappointing Co-Lead Counsel, the Court also denied *a nearly identical motion* as the one filed here by counsel in the *Nichols* case requesting to be appointed Lead Counsel for a "personal injury" class.[9]

### III.     ARGUMENT

A.     **The Appointment of Additional Class Counsel is Unnecessary**

    1.     **Whittier Does Not Address – and Does Not Satisfy – The Factors to Demonstrate that Additional Class Counsel is Necessary**

Counsel for Whittier, as previously requested (and denied) by counsel for Nichols,[10] seeks to be appointed class counsel but has not demonstrated that his appointment is necessary.[11]

Whittier purports to bring his motion "pursuant to Rule 23(4)(9),[12] which requires that the Court appoint class counsel."[13] However, a class has not yet been certified, and interim counsel have already been appointed. Rather, Rule 23(g)(3) is a permissive rule stating that "a court ***may*** designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."[14] The Advisory Committee's Notes suggest that appointment of interim counsel is limited to when it is necessary to protect the interests of the class.[15] Courts consider the following factors when deciding whether appointment is necessary: (i) when it is

---

[9] Ex. 1 at 5.

[10] *See* Plaintiff Nichols' Motion to Appoint Jay Edelson as Lead Counsel of the Class Personal Injury Claims (Dkt. No. 50).

[11] Counsel for Whittier, of course, bears the burden of demonstrating that the appointment of interim class counsel is necessary. *See Carrier v. Am. Bankers Life Assurance Co. of Fla.*, 2006 U.S. Dist. LEXIS 76346, at *3 (finding plaintiffs failed to "provide[] any concrete examples of circumstances … under which … interim counsel would be advantageous for the putative class").

[12] Presumably, counsel for Whittier means Rule 23(g)(1).

[13] *See* Plaintiff Whittier's Rule 23 Motion for Appointment of Additional Class Counsel (Dkt. No. 121) at 1.

[14] FED. R. CIV. P. 23(g)(3) (emphasis added).

[15] *See, e.g., Donaldson v. Pharmacia Pension Plan*, 2006 U.S. Dist. LEXIS 28607, at *1.

necessary to have one attorney to prepare for the class certification decision, (ii) to prepare or respond to other motions before class certification, (iii) to discuss settlement before certification, or (iv) to resolve rivalry or uncertainty among competing counsel or law firms.[16]

Counsel for Whittier has failed to address any of these factors necessary to carry his burden. Regardless, a review of the factors reveals that his appointment is unnecessary especially because Co-Lead Counsel are adequate and in light of the Court's Order that Co-Lead Counsel "owe a duty to all of the Plaintiffs and putative class members who are part of this MDL…."[17]

First, the purpose of an interim lead counsel appointment is to clarify the responsibilities of various attorneys during *precertification* activities, "such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."[18] Class Counsel has already undertaken these activities throughout this litigation. Class Representatives have conducted full merits discovery as to the issue of the NCAA's negligence and have filed their Motion for Class Certification and Memorandum in Support, together with a detailed Proffer of Facts In Support of Class Certification ("Fact Proffer") in *Arrington* and an expert analysis of the NCAA's concussion policies from one of the nation's leading sport concussion experts, Dr. Robert Cantu. Whittier has not "provided any concrete

---

[16] *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 234 F.R.D. 67, 69-70 (S.D.N.Y. 2006) (denying the appointment of interim counsel where only one attorney filed the class action and faced no competition; finding no prejudice to putative class in denying the appointment because an attorney who acts on behalf of the putative class – even without formal designation as interim counsel – must act in the best interest of the class as a whole).

[17] Ex. 1 at 5.

[18] MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.11 (2004). *See also* 7B WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 1802.3 (3d ed. 2014) (citing Committee Note to the 2003 amendments to Rule 23) ("[Rule 23(g)] recognizes the fact that there is a need for an attorney to take some actions in preparation for the class-certification decision, including possibly discovery and even settlement negotiations. Although in many instances these may appropriately be handled by the attorney who originally filed the suit, in some cases 'there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate.'").

examples of circumstances in this case under which" additional class counsel "would be advantageous for the putative class."[19] Counsel for Whittier has not identified any motions, discovery, communications with class members or settlement negotiations for which his assistance is needed and which has not already, or cannot, be accomplished by current Class Counsel. Therefore, his appointment is unnecessary and the application should be denied.

Second, there is no rivalry or uncertainty among competing counsel or law firms seeking to represent persons with personal injuries. This MDL consists of 81 Plaintiffs. Of those Plaintiffs, 11 have claims for personal injuries.[20] Moreover, nationwide, there are nine personal injury cases against the NCAA related to concussions outside of the MDL.[21] None of those cases was brought by counsel for Whittier, nor have those plaintiffs sought to participate in this MDL. Thus, of the pending concussion-related personal injury claims against the NCAA nationwide, almost all have chosen to independently pursue their claims and do not want or need Mr. Jefferson's assistance. Accordingly, "there is no rivalry among competing law firms to represent" persons with personal injuries.[22] Absent any such competition, the appointment of interim counsel is not necessary.[23]

---

[19] *See Carrier v. Am. Bankers Life Assurance Co. of Fla.*, 2006 U.S. Dist. LEXIS 76346, at *3.

[20] *Arrington* (4), *Doughty* (1), *Durocher* (3), *Hudson* (1), *Nichols* (1), *Whittier* (1).

[21] *Sheely v. NCAA*, Case No. 380569V (Montgomery Cnty., MD); *Wells v. NCAA*, Case No. 02-cv-2013-902657.00 (Mobile Cnty., AL); *Anderson v. NCAA*, Case No. 631093 (East Baton Rouge, LA); *Flasher v. NCAA*, Case No. CACE14009698 (Broward Cnty., FL); *Cunningham v. NCAA*, Case No. 3:14-cv-02256 (N.D. Tex.); *Schmitz v. NCAA*, Case No. 1:14-cv-01399 (N.D. Ohio); *Onyshko v. NCAA*, Case No. C-63-CV-201403620 (Wash. Cnty., PA); *Bradley v. NCAA*, Case No. 2014 CA 004932 B (D.C. Sup. Ct.); *Walen v. NCAA et al.,* No. 14cv12218 (Multnomah Cnty., Or.).

[22] *In re Issuer*, 234 F.R.D. at 69-70.

[23] *See* 2003 Advisory Committee Notes; *In re Issuer*, 234 F.R.D. at 69-70.

### 2. The Appointment of Additional Class Counsel is Unnecessary Because Co-Lead Counsel Adequately Represent the Putative Class, Including Members With Personal Injury Claims

Borrowing from the nearly identical motion filed by *Nichols*, Counsel for Whittier suggests that his appointment is necessary because "the preliminary settlement agreement … expressly repudiates the class claims for personal injury claims and monetary damages for class members" and "affirmatively waives the personal injury claims."[24]

Class Counsel, however, have not "repudiated" class members' right to obtain personal injury damages but rather have vigorously sought to protect and advance that very right throughout the litigation. The Court has previously considered and rejected this exact argument in denying an identical motion by counsel in *Nichols*. The Court expressly held that "Hagens Berman has not 'repudiated' the personal injury claims alleged by the putative class members. Nor have they disclaimed or affirmatively waived the personal injury claims during these proceedings."[25]

Class Counsel have protected the right of class members to obtain personal injury damages by: ensuring that the facts they discovered were made public; extensively conferring with the NCAA to ensure that hot documents marked Confidential by the NCAA under the Protective Order were de-designated during discovery; publicly filing Dr. Cantu's expert analysis and an extensive Proffer of Facts detailing the NCAA's negligence; specifically requesting in their Motion for Class Certification that personal injury claims will not be precluded in

---

[24] Plaintiff *Whittier*'s Rule 23 Motion for Appointment of Additional Class Counsel (Dkt. No. 121) at 3.

[25] Ex. 1 at 3-4.

individual and subsequent proceedings;[26] and negotiating a proposed settlement which expressly preserves personal injury claims.[27]

Again, of the pending concussion-related personal injury claims against the NCAA nationwide, virtually all have quite predictably chosen to separately pursue their claims independently in individual lawsuits. Accordingly, none of these individuals want or need Mr. Jefferson's assistance. For example, the *Arrington* Plaintiffs and other plaintiffs outside of the MDL have been prosecuting their own personal injury claims. Thus, the personal injury claims are more akin to a mass tort, where each individual plaintiff's case is worked up separately. As one commentator explained:

> A mass tort involves multiple people injured by the same product, but damages for each plaintiff can be vastly different. Like most personal injury cases, every person's medical history is relevant in mass torts and that history is relevant to the extent of the damages caused by the defective product. So unlike a class action, a firm represents each person individually in a mass tort, and each case is worked up like a traditional personal injury case.[28]

Thus, while "multiple plaintiffs' firms will share in common benefit expenses such as corporate depositions and document production,"[29] they do not share their individual personal injury cases or clients themselves, as implicitly suggested by Whittier. The *Whittier* motion seeking

---

[26] *See* Plaintiffs' Memorandum in Support of Motion for Class Certification (*Arrington* Dkt. No. 175) at 24-27 (requesting that the Court immunize Plaintiffs and absent class members from assertions of claim preclusion for damages claims in subsequent individual litigation); *see also Crowder v. Lash*, 687 F.2d 996, 1009 (7th Cir. 1982) (holding that an earlier class action in which only declaratory and injunctive relief were sought does not preclude absent class members from seeking damages for the same alleged misconduct).

[27] *See, e.g.*, Amended Settlement Agreement, § II.NN (Dkt. No. 92) (excluding claims for personal injury and bodily injury from the definition of "Released Claims").

[28] Gibson, "Managing drug and medical device mass-tort litigation," available at http://www.theindianalawyer.com/gibson-managing-drug-and-medical-device-mass-tort-litigation/PARAMS/article/32854 (last accessed May 14, 2014).

[29] *Id.*

appointment as class counsel for individuals pursuing personal injury claims seeks to cast a broader net than permitted in the mass tort context.

Finally, the expenses of purported common benefit work should not be borne by any individual plaintiffs outside the *Whittier* case, because the work has already been completed in *Arrington* and borne by Class Counsel on a wholly-contingent basis. Moreover, the NCAA's productions and depositions have already been analyzed and filed with the Court publicly so that all personal injury plaintiffs have access to the bulk of the discovery record in *Arrington*.

### B. Counsel for Whittier Does Not Satisfy the FED. R. CIV. P. 23(g) Factors

Even assuming, *arguendo*, that counsel for Whittier has met his burden to demonstrate that appointment of additional class counsel is necessary, he fails to meet the Rule 23(g) factors.

Courts evaluating interim counsel appointments do so utilizing the Rule 23(g)(1)(A) factors.[30] The considerations set out in Rule 23(g)(1)(A), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification.[31] Rule 23(g)(1)(A) states that a court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.[32]

First, counsel for Whittier has not identified any new facts or claims that are not already being pursued by Plaintiffs in the MDL. Counsel for Whittier's "investigation" merely consisted of identifying "football related repetitive traumatic head impact as a proximate cause for early

---

[30] *See* FED. R. CIV. P. 23(g)(1)(A).

[31] *Hill v. The Tribune Co.,* 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005).

[32] *Id.*

- 9 -

onset Alzheimer's among former football players."[33] The first Class Action Complaint filed in the *Arrington* case on September 12, 2011, however, specifically alleged that "in the early 2000s, the NCAA specifically became aware of the correlation between concussions and depression, dementia, and early on-set Alzheimer's disease."[34] Accordingly, the sole fact obtained during counsel for Whittier's investigation has been public knowledge for over a decade and was included in the original and publicly available *Arrington* Complaint filed over 3 years ago. The remaining investigation cited by counsel is his identification of the pending MDL and preliminary settlement class – both of which have been the subject of broad media coverage.[35] This is plainly insufficient to satisfy this factor.[36] This is especially true in light of the considerable amount of work and investigation conducted by current Class Counsel, who as a result, are in a better position to represent the class fairly and adequately than counsel for Whittier – who filed a case 3 and a half years after Co-Lead Counsel initiated the litigation.[37]

---

[33] Plaintiff *Whittier*'s Rule 23 Motion for Appointment of Additional Class Counsel (Dkt. No. 121) at 4.

[34] Class Action Complaint (*Arrington* Dkt. No. 1), ¶ 15.

[35] *See, e.g.*, *NCAA Has Settlement Agreement in Concussion Lawsuit* (USA Today), available at: http://www.usatoday.com/story/sports/college/2014/07/29/ncaa-concussion-lawsuit-settlement-75-million/13309191/ (last accessed January 7, 2015); *NCAA Settles Head-Injury Lawsuit* (ESPN), available at: http://espn.go.com/college-sports/story/_/id/11279710/ncaa-settles-head-injury-lawsuit-create-70-million-fund (last accessed January 7, 2015).

[36] *C.f.*, *Walker v. Discover Fin. Servs.*, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) (Darrah, J.) (appointing interim lead counsel who had spent a considerable amount of time and effort investigating and prosecuting the action including: filing a consolidation complaint, drafting a second amended complaint, drafting discovery requests, committing resources in anticipation of responding to a motion to compel arbitration, conducting meet and confer conferences regarding discovery, retaining an expert that specializes in claims against credit card companies, and engaging in settlement negotiations).

[37] *See id.*, at *3 (following MDL consolidation, appointing the law firms that "have been involved in this litigation for the longest time period and have performed most the work in identifying and investigation potential claims," recognizing they were "in a better position to represent the class fairly and adequately" than firms who did not undertake those tasks).

Second, while counsel for Whittier has litigation experience, he does not identify a single MDL of this magnitude in which he has served as lead counsel for a putative class. Comparatively, this Court has recognized that the current Co-Lead Counsel "have substantial class action experience *and in serving as Lead Counsel in other class actions of comparable scope.*"[38]

Third, while counsel for Whittier has experience mediating individual tort cases involving environmental contamination and asbestos exposure, he has zero experience in the field of concussions or the legal issues at the heart of this case.[39] On the other hand, Class Counsel have been conducting full factual and legal discovery, know the strengths and weaknesses of the case, and have been working with the top experts in the field of concussions in sport since the inception of the litigation.

Finally, counsel for Whittier's law firm, Cotes Rose, does not have a class action practice.[40] On the other hand, Co-Lead Counsel specializes almost exclusively in class action litigation and have devoted thousands of hours and invested thousands in out-of-pocket costs on a wholly-contingent basis. Therefore, Class Counsel have already demonstrated their willingness

---

[38] Ex. 1 at 4 (emphasis added).

[39] Searches of Westlaw, LexisNexis, and dockets.justia.com (nationwide federal docket search) confirm that, prior to and since filing the *Whittier* complaint more than three years after *Arrington* was filed, Mr. Jefferson has never filed or had a decision published in any case involving concussions in any context.

Further, counsel for Whittier's experience as a "former college football player, captain of the University of Texas football team … and recipient of the Outstanding Lineman Award in the 1979 Sun Bowl…" does not qualify him as an expert in concussion in sport or concussion related litigation, nor is it clear how this experience will provide insight that the nation's top experts in concussion cannot provide.

[40] *See e.g.*, Industries & Practices available at: http://www.coatsrose.com/industries-practices/ (last accessed January 7, 2015).

- 12 -

to commit significant resources to the class. Any additional resources offered by counsel for Whittier are unnecessary.

## IV. CONCLUSION

WHEREFORE, the Class Representatives respectfully request that the Court deny Plaintiff Whittier's Rule 23 Motion for Appointment of Additional Class Counsel.

Date: January 14, 2015                               Respectfully submitted,

By:   */s/ Steve W. Berman*
      Steve W. Berman
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
206.623.7292
Fax: 206.623.0594

Elizabeth A. Fegan
*beth@hbsslaw.com*
Thomas E. Ahlering
*toma@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 W. Lake Street, Suite 400
Oak Park, IL 60301
708.628.4949
Fax: 708.628.4950

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL 60602
312.236.0000
Fax: 312.878.1342

*Co-Lead Counsel*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on January 14, 2015, a true and correct copy of the foregoing document was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

                                            */s/ Steve W. Berman*
                                              Steve W. Berman

010270-12 741411 V1