# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | MDL No. 2492<br><br>Master Docket No. 1:13-cv-09116<br><br>[Hon. John Z. Lee]<br><br>[Magistrate Judge Geraldine Soat Brown] |

**DECLARATION OF RAMOGI HUMA IN SUPPORT OF
PLAINTIFF NICHOLS'** *RENEWED* **MOTION TO APPOINT JAY EDELSON
AS LEAD COUNSEL OF THE CLASS PERSONAL INJURY CLAIMS**

Pursuant to 28 U.S.C. § 1746, I, Ramogi Huma, hereby declare and state as follows:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated. If called upon to testify as to the matters stated herein, I could and would competently do so. I submit this declaration to support the appointment of Jay Edelson ("Edelson") as interim lead counsel of the putative class's personal injury claims.

2. I am the Founder and Executive Director of the National College Players Association ("NCPA"), the leading organization in the country dedicated to advocating for the rights and interests of college athletes. The NCPA's mission is to provide a means for current and former college athletes to voice their concerns and reform the rules and regulations promulgated by the National Collegiate Athletic Association ("NCAA"). The NCPA's membership includes over 17,000 former and current Division I college athletes.

3. The NCPA has gained widespread recognition for its advocacy efforts on behalf of college athletes and has been instrumental in reforming a number of NCAA rules and regulations regarding fundamental benefits provided to college athletes. These reforms include

1

the elimination of limits on health care for college athletes, giving athletic programs the option to offer players multi-year scholarships, reforming safety guidelines, and the elimination of a cap on the amount of income college athletes can earn from a part-time job. The NCPA has also successfully lobbied for legislation to further protect college athletes and continues to push for further reforms to the NCAA system.

4. I am also the co-Founder and President of the College Athletes Players Association ("CAPA"), a labor organization established to assert college athletes' status as employees with the right to collectively bargain for basic protections and comprehensive reform, with the goal of minimizing the risk of sports-related traumatic brain injury, providing guaranteed coverage for sports-related medical expenses for current and former players, improving graduation rates for college athletes, and securing due process rights for players, among others.

5. I am a former Division I NCAA athlete and played football at the University of California at Los Angeles ("UCLA") on a full athletic scholarship until I suffered a career-ending injury my junior year. I graduated from UCLA with a degree in sociology in 1999 and a master's degree in public health in 2001.

6. As part of my advocacy efforts on behalf of college players, I have consulted with a number of attorneys about legal action against the NCAA, and have served as an advisor to the plaintiffs in several class actions, including *O'Bannon, et al. v. National Collegiate Athletic Association*, No. C 09-3329 CW (N.D. Cal.) *and White, et al. v. National Collegiate Athletic Association,* No. CV 06-999-RGK (C.D. Cal.).

7. Likewise, the NCPA and CAPA strive to stay apprised of any legal action that may impact the rights and interests of current and former college athletes. As such, both

organizations have followed the litigation and developments in this proceeding closely. Although the class's personal injury claims were represented at the outset of this litigation, that's no longer true. Instead, as the case has progressed, the focus of the litigation has been solely on the class's "medical monitoring" claims, leaving former NCAA athletes without representation in this case when it comes to their core injuries.

8. The NCPA and CAPA has likewise reviewed in detail the now rejected Class Action Settlement Agreement ("Rejected Settlement") that interim co-lead counsel Steve Berman and Joseph Siprut filed with the Court on July 29, 2014 (dkt. 64). Given the seriousness and prevalence of concussion-related injuries in high-contact college sports, both organizations had significant concerns with the Rejected Settlement, including that:

- it provided no value whatsoever to those that need it most—i.e., class members who have *already* been diagnosed with concussion-related head injuries and incurred substantial medical expenses. For these athletes, the medical monitoring processes and concussion-safety injunctions were too late and provided no benefit;

- the medical monitoring procedures were unclear, burdensome, and, according to Berman's and Siprut's own experts, would benefit very few class members;

- it released the class personal injury claims with no corresponding relief given in exchange;

- it cut off the tolling of the statute of limitations prematurely (i.e. at preliminary approval, as opposed to after the completion of the medical exams) in addition to exposing class members with personal injury claims to statute of limitations, statute of repose, and claim-splitting defenses;

- the injunctive relief was put in purely for optics, merely requiring the NCAA to make certain recommendations to its sub-organizations that were already made years ago;

- the "settlement fund" established by the Rejected Settlement is fully reversionary; and

- it did not require direct notice to be given to class members.

3

9. The NCPA and CAPA were relieved when the Court did not approve the Rejected Settlement. However, they have been equally concerned by the actions taken by Berman and Siprut since the Rejected Settlement was denied preliminary approval.

10. Specifically, in the aftermath of that denial, Berman and Siprut have, in their most recent amended complaint, abandoned all personal injury claims for the putative classes, instead only including class medical monitoring claims and personal injury claims solely on behalf of their named clients.

11. In cases of this significance, there needs to be a strong voice representing and advocating for the class personal injury claims. Critically, that voice needs to actually believe in those claims. Edelson has been the lead voice on behalf of the class personal injury claims.

12. Over the last several months, I have seen firsthand Edelson's commitment to protecting the college players' rights in this important litigation. His work has already produced significant results, including helping to achieve the denial of the Rejected Settlement, pushing for the inclusion of certain forms of relief in the negotiations (which either were included in the Rejected Settlement or will be included for the first time in a future settlement), and successfully organizing and leading the numerous personal-injury stakeholders in this litigation.

13. The NCPA and CAPA both urge the Court to appoint Edelson as interim lead counsel of the class's personal injury claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated January 26, 2015   /s/ Ramogi Huma
                        Ramogi Huma