IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | MDL No. 2492<br><br>Master Docket No. 1:13-cv-09116<br><br>This Document Relates to All Cases<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

**PLAINTIFF NICHOLS' REPLY IN SUPPORT OF HIS *RENEWED* MOTION TO APPOINT JAY EDELSON AS LEAD COUNSEL OF THE PERSONAL INJURY CLASS**

Steve Berman ("Berman") and Joseph Siprut ("Siprut") were appointed to represent the entire putative class in this litigation, *including class members with personal injury claims for damages*. Despite their obligations to that class of injured persons, Berman and Siprut have now made clear—expressly and repeatedly—that they are not (and have no interest in) pursuing personal injury claims on a class-wide basis. Plaintiff Anthony Nichols seeks to fill that void, and consequently filed his renewed motion to appoint his counsel, Jay Edelson ("Edelson"), as interim lead counsel of a putative class of personal injury claimants. (Dkt. 128) (the "Renewed Motion").

In light of Berman and Siprut's explicit intention *not* to pursue personal injury claims on a class-wide basis, they cannot (and do not) present any legitimate objection to having the putative class of personal injury claimants represented by separate counsel. Instead, they expose the conflict of interest that exists by attacking the merits and certifiability of the personal injury claims of their own clients, as well as the qualifications of Edelson. However, as explained more fully below, while the personal injury claims are meritorious and amenable to class treatment, those issues cannot even be addressed and resolved until the putative class of personal injury

1

claimants has adequate representation. Berman and Siprut have expressly declined to provide such representation, while Edelson is eager, willing, and eminently qualified to do so. As such, the Renewed Motion should be granted and Edelson should be appointed as interim lead counsel to pursue the putative class's personal injury claims for damages.

**I.      Berman and Siprut Are Not Pursuing Class-wide Personal Injury Claims.**

As explained in the Renewed Motion, this Court appointed Berman and Siprut to represent the putative class of current and former NCAA student-athletes in light of their statements in open court that they would act in the best interests of *all* putative class members, *including those seeking damages for personal injury claims*. (Dkt. 128 at 2-4.); *see also* Fed. R. Civ. P. 23(g) advisory committee's note ("Whether or not formally designated interim counsel, an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole.") Since that time, however, Berman and Siprut have expressly and repeatedly indicated, through both their statements and their actions, that they are *not* pursuing class-wide personal injury claims for damages. The Third Amended Complaint filed by Berman and Siprut in the *Arrington* action omitted any personal injury claims of the class. (Dkt. 128 at 4.) Further, Berman and Siprut expressly represented to this Court at the February 3, 2015 hearing that they were seeking *only* class-wide relief for medial monitoring, and *not* pursuing class-wide damages for personal injury claims. Specifically, in response to this Court's inquiry as to "what plaintiffs' position is with regard to the scope of the class that they seek to represent as part of their third amended complaint," Elizabeth Fegan, a partner of Berman's, responded "quite simply, we don't intend to seek a class for personal injury . . . [W]e don't intend to seek a class of personal injury claimants." (The February 3, 2015 Transcript is attached hereto as Exhibit 1, 4:16-24.)

Berman and Siprut do not dispute that they are not pursuing class-wide personal injury

2

claims for damages. Instead, they assert in response to the Renewed Motion that they "have not 'repudiated' class members' rights to obtain personal injury damages." (Dkt. 136 at 11.) But not *repudiating* class members' rights to obtain personal injury damages is not the same thing as *pursuing* those claims. It is undisputed that Berman and Siprut are not pursing or protecting class-wide personal injury claims, and because they have now created a conflict of interest with class members who possess such claims, someone needs to be appointed to do so. *In re Stec Inc. Sec. Litig.*, 2012 WL 6965372, at *6 (C.D. Cal. Mar. 7, 2012) ("Proposed class representatives have a conflict of interest with the absent putative class members if they do not have standing to or refuse to assert certain claims that may be available and advantageous to the absent putative class members").

**II.      While the Personal Injury Claims Are Certifiable and Meritorious, Those Questions Cannot Even Be Addressed Until Someone Else is Appointed to Represent the Putative Class of Personal Injury Claimants.**

Berman and Siprut fail to explain why, given that they have no interest in and are not pursuing personal injury claims on behalf of the putative class, they object to having someone else pursue those claims. Instead, they attack the merits and certifiability of the personal injury claims. (Dkt. 136 at 5-11.) However, in addition to the impropriety of Berman and Siprut's even making these arguments that are adverse to the putative class (*i.e.*, their clients), the personal injury claims *are* meritorious and *are* amenable to class treatment. Regardless, and in any event, questions regarding certification of class-wide personal injury claims and the merits of such claims cannot even be addressed until separate counsel is appointed to represent the personal injury class.

**A.      The Personal Injury Claims Have Merit and Are Amenable to Class Treatment.**

Attacking the merits of their own clients' personal injury claims, Berman and Siprut

3

suggest, relying on their expert witness Dr. Robert Cantu, that that those who suffer from concussions either "spontaneously resolve" or suffer from severe injuries that are not suited for class treatment. (Dkt. 136 at 10-11.) This claim, however, is absurd, and ignores NCAA student-athletes (such as Plaintiff Nichols) who sustain a concussion, suffer from immediate pain and suffering, incur costs of medical treatment, and suffer the possible loss of scholarship if they are unable to return to play, regardless of whether those athletes go on to develop more serious injuries later in life. Some of these immediate injuries are described in detail by none other than Dr. Cantu, who states in his declaration that athletes who are concussed immediately suffer "headaches, labyrinthine dysfunction, visual, motor or sensory change or mental difficulty, especially though and memory process." (*See* dkt. 69 at ¶ 32.)

Berman and Siprut further suggest that Plaintiff Nichols is "atypical" and suffered no injuries. (Dkt. 136 at 13.) This claim is offensive, not true, and underscores why separate counsel is needed to adequately and vigorously pursue the putative class's personal injury claims. Mr. Nichols suffered multiple concussions playing college football, has developed calcifications in his brain, and has incurred extensive out-of-pocket medical costs. (*See* Nichols Complaint, No. 1:14-cv-0962 (N.D. Ill.), dkt. 1 at ¶¶ 35-39.) Yet according to Berman and Siprut, Nichols doesn't have a "real" claim, and he and others like him have no need for class representation.[1] (Dkt. 136 at 1.) Of course, the opposite is true—Mr. Nichols in not alone and these individuals would derive the most benefit from class adjudication, as their injuries, while perhaps not as

---

[1] Berman and Siprut repeatedly assert that Edelson, along with the coalition of attorneys that support his appointment, only represent a single client and that no class of athletes with personal injury claims exist. This assertion is simply false and fails to understand the representative nature of class action litigation: Edelson and those supporting his appointment collectively represent hundreds of personal injury clients and have been the only voice advocating for their claims. Moreover, the College Athletes Players Association (CAPA) and the National College Players Association (NCPA) support Edelson's appointment and speak for tens of thousands of student-athletes.

severe as individuals suffering from CTE and Post-Concussion Syndrome, are still damages caused by the NCAA's negligence that can be compensated. *See Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (noting that the class action mechanism is necessary to redress "tortious harms of enormous aggregate magnitude but so widely distributed as not to be remedial in individual suits.").[2]

Finally, while attempting to argue that individual personal injury damages are always in excess of $1 million and that no personal injury class could ever be certified, Berman and Siprut at the same time reference the settlement reached in the NFL concussion litigation. (*See* dkt. 136 at 7.) The argument that a personal injury class cannot be certified here both fails to recognize that the damages in the NFL settlement are larger because they account for the lost wages of professional athletes,[3] and that the NFL settlement *does* provide for personal injury damages for class members through a conditionally certified Rule 23(b)(3) damages class. In addition, Berman and Siprut attempted to certify a "core issues" personal injury class as to liability issues for personal injuries *in this very case* before later abandoning (and attempting to release) those class claims in their settlement agreement with the NCAA. (*See Arrington v. NCAA*, 1:11-cv-06356, dkt. 175 at 30-35.) In short, Berman and Siprut's assertions that their own clients' personal injury claims are without merit and not certifiable are *themselves* without merit.

---

[2] Of course, individuals who are pursuing individual claims for more severe personal injury damages always have the option of opting-out of any personal injury class that may ultimately be certified. *See* Fed. R. Civ. P. 23(c)(2)(B)(v).

[3] Though it's almost besides the point, Berman and Siprut seem not to understand the NFL settlement either—the chart presented on page 7 of their brief only provides the "base damages" figure, which is then reduced to account for various "offsets" and "downward deductions." As just one example, the base award for individuals that only played in the NFL for one season is automatically reduced by 80%. *See In re National Football League Players' Concussion Litig.*, No. 2:12-md-02323, MDL No. 2323, dkt. 6073-2 at ¶ 6.7(b)(i)(8). Thus, the idea that former NFL players can claim millions of dollars in damages through that settlement just isn't true.

**B.    The Merits and Certification of Class Personal Injury Claims Cannot Be Addressed Until Separate Counsel is Appointed to Pursue Those Claims.**

Nevertheless, regardless of the ultimate merits or certification of class-wide personal injury claims, those issues cannot even be addressed until separate counsel has been appointed to pursue them. As noted above, this Court appointed Berman and Siprut to represent the putative class *with respect to all claims*. Thus, unless and until separate counsel is appointed, only Berman and Siprut may seek to certify the putative class and defend the merits of their personal injury claims. As also explained above, however, Berman and Siprut have expressly declined to pursue those claims, and indeed, make arguments directly adverse to the ultimate success of those claims. While Berman and Siprut referenced a "chicken and egg" issue at the February 3rd hearing and stated that "there is nothing precluding Mr. Edelson from filing a motion for class certification of a personal injury class if he believes it's viable" (Ex. 1 at 8:4-7), that simply is not true given that, at this point, Berman and Siprut are the sole counsel for the putative class.

The fact is that the putative class has meritorious and certifiable personal injury claims, Berman and Siprut are refusing to pursue those claims, and no one else can adequately represent the class with respect to those claims unless and until this Court so appoints separate counsel to do so. The Court stated that its "main concern" is whether the class is being adequately represented (Ex. 1 at 9:20), but the putative class cannot be adequately represented unless *all* of its potential claims are being vigorously pursued. The Court should therefore appoint separate counsel to pursue class-wide personal injury claims for damages in light of Berman and Siprut's express refusal to do so.

**III.    Edelson Will Fairly and Adequately Represent the Putative Class in Pursuing the Personal Injury Claims.**

Finally, Berman and Siprut assert that Edelson fails to satisfy the requirements of Fed. R.

6

Civ. P. 23(g), which are meant to ensure that appointed counsel will fairly and adequately represent the class. (Dkt. 136 at 13.) To the contrary however, Edelson is more than qualified to represent the putative class, and will vigorously pursue the personal injury claims on their behalf. Both the Renewed Motion and Nichols' original motion for Edelson's appointment describe in detail the work Edelson has done to pursue and advance the class-wide personal injury claims in this case, including but not limited to: (1) organizing a coalition of attorneys who have clients with personal injury claims and taking the lead on how the coalition can best serve class members with personal injuries, (2) negotiating directly with the NCAA regarding key issues surrounding personal injury claims, and (3) opposing Arrington's now-denied motion for preliminary approval, which would have released class personal injury claims for no corresponding benefit in return. This opposition also resulted in Arrington and the NCAA making changes to their settlement agreement all benefiting members of the putative class.[4] Edelson's leadership in this regard has been recognized by both the College Athletes Players Association (CAPA) and the National College Players Association (NCPA), who support appointment of Edelson as lead counsel for the class personal injury claims, as he has been the "lead voice" on behalf of the class personal injury claims in this case. (*See* Declaration of Ramogi Huma, dkt. 128-2 at ¶ 11.)

Berman and Siprut also claim that Edelson has no experience in litigation pursuing personal injury claims. (Dkt. 136 at 14.) This is simply not true. Edelson has significant mass tort and class personal injury experience, including:

---

[4] For example, Arrington and the NCAA amended their settlement agreement to toll the statute of limitations for personal injury claims through final approval (as opposed to preliminary approval) in response to Nichols pointing out in his opposition to preliminary approval that the tolling provision, as drafted, would open up class members to statute of limitations defenses. (*See* dkt. 83 at pgs. 23-24 & dkt. 91 at pg. 2.)

- *Januszewski v. Empress Casino Hammond Corp.*, No. 2:00-CV-352JM (N.D. Ind.) (represented riverboat casino workers exposed to second hand smoke and case settled on a mass basis)

- *Aaron v. Chicago Housing Authority*, 99 L 11738 (Cook Cty., Illinois) (part of team representing a class of public housing tenants in suit for exposure to environmental contamination, which settled on a class-wide basis for $10.5 million)

- *Sturman v. Rush-Presbyterian-St.Luke's Medical Center,* No. 00 L 011069 (Cook Cty., Illinois) (counsel for putative class of blood transfusion recipients exposed to Hepatitis C virus)

In addition, Edelson has extensive experience in handling class actions (including those involving tort claims for damages), and has the resources necessary to fully and vigorously pursue the personal injury claims at issue here. (Dkt. 50-1 at 16.). Consequently—and contrary to Berman and Siprut's assertions—he easily satisfies the requirements of Rule 23(g).

## CONCLUSION

Because the putative class has meritorious personal injury claims that Berman and Siprut refuse to pursue, Nichols respectfully requests that this Court (1) appoint Jay Edelson interim lead counsel of the putative class of personal injury claimants, and (2) grant such further relief that this Court deems reasonable and just.

    Respectfully submitted,

    **ANTHONY NICHOLS**, Individually and on behalf of all others similarly situated,

    By: /s/ Jay Edelson
    One of his Attorneys

    Jay Edelson
    jedelson@edelson.com
    Rafey S. Balabanian
    rbalabanian@edelson.com
    Ari J. Scharg

ascharg@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Robert A. Clifford
rclifford@cliffordlaw.com
Shannon M. McNulty
smm@cliffordlaw.com
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
Tel: 312.899.9090
Fax: 312.251.1160

Brian W. Coffman
bcoffmanlaw@gmail.com
COFFMAN LAW OFFICES
2615 North Sheffield Avenue
Chicago, Illinois 60614
Tel: 773.348.1295
Fax: 773.248.6013

Richard R. Gordon
richard.gordon@gordonlawchicago.com
GORDON LAW OFFICES, Ltd.
211 West Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel: 312.332.5200
Fax: 312.236.7727

Steven K. Mamat
STEVEN MAMAT, PLLC
302 S. Main St., Suite 202
Royal Oak, Michigan 48067
Tel: 248.548.1009
Fax: 248.548.1012


Samuel M. Lasser
LAW OFFICE OF SAMUEL LASSER
1934 Divisadero St.
San Francisco, California 94115
Tel: 415.994.9930

Fax: 415.776.8047

Jeffrey L. Raizner
DOYLE RAIZNER LLP
2402 Dunlavy St.
Houston, Texas 77006
Tel: 832.463.2882

John J. Driscoll
THE DRISCOLL FIRM, P.C.
211 N. Broadway
St. Louis, Missouri 63102
Tel: 314.932.3232

**CERTIFICATE OF SERVICE**

      I, Ari J. Scharg, an attorney, hereby certify that on February 17, 2015, I served the above and foregoing ***Plaintiff Nichols' Reply in Support of Renewed Motion to Appoint Jay Edelson as Lead Counsel of the Personal Injury Class*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the CM/ECF filing system.

                                                /s/ Ari J. Scharg