# EXHIBIT 1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE      )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-    )
 4   ATHLETE CONCUSSION INJURY        )  Chicago, Illinois
     LITIGATION,                      )  February 3, 2015
 5                                    )  9:00 o'clock a.m.

 6                  TRANSCRIPT OF PROCEEDINGS - MOTION
                   BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:          HAGENS BERMAN SOBOL SHAPIRO, by
 9                                MS. ELIZABETH A. FEGAN
                                  1144 West Lake Street
10                                Suite 400
                                  Oak Park, Illinois 60301
11
                                  SIPRUT PC, by
12                                MR. GREGG MICHAEL BARBAKOFF
                                  17 North State Street
13                                Suite 1600
                                  Chicago, Illinois 60602
14
     For the Nichols class        EDELSON PC, by
15   member:                      MR. JAY EDELSON
                                  MR. ARI JONATHAN SCHARG
16                                350 North LaSalle Street
                                  Suite 1300
17                                Chicago, Illinois 60654

18   For Defendant NCAA:          LATHAM & WATKINS, by
                                  MR. MARK STEVEN MESTER
19                                MS. JOHANNA MARGARET SPELLMAN
                                  233 South Wacker Drive
20                                Suite 5800
                                  Chicago, Illinois 60606
21
22                      ALEXANDRA ROTH, CSR, RPR
                          Official Court Reporter
23                      219 South Dearborn Street
                                Room 1224
24                        Chicago, Illinois 60604
                              (312) 408-5038
25
```

```
1            (Proceedings had in open court:)
2            THE CLERK:  13 C 9116, NCAA Student Athlete Concussion
3    Injury Litigation, for motion hearing.
4            MS. FEGAN:  Good morning, your Honor.  Elizabeth Fegan
5    for plaintiffs.
6            MR. MESTER:  Good morning, your Honor.  Mark Mester
7    and Johanna Spellman for the NCAA.
8            MR. BARBAKOFF:  Good morning, your Honor.  Gregg
9    Barbakoff on behalf of plaintiffs.
10           MR. EDELSON:  Good morning, your Honor.  Jay Edelson
11   for plaintiff Nichols.
12           MR. SCHARG:  Good morning, your Honor.  Ari Scharg
13   also on behalf of the plaintiff Nichols.
14           MS. SPELLMAN:  Johanna Spellman on behalf of defendant
15   NCAA.
16           THE COURT:  All right.  Good morning.
17           So let's take care of a number of housekeeping matters
18   first.  Previously Mr. Jefferson filed a motion asking to be
19   appointed as lead counsel in this case.  That's docket No. 127.
20   In docket No. 132 he filed a motion to withdraw that prior
21   motion.  So docket No. 132, the motion to withdraw the
22   previously filed motion, is granted.  And docket No. 127 will
23   be stricken.
24           This then brings us to the only remaining motion that
25   is at issue today, which is plaintiff Nichols' renewed motion
```

1 to appoint Jay Edelson as lead counsel of the personal injury
2 class. Why don't I hear from the plaintiffs with regard to the
3 motion.
4     MS. FEGAN: Your Honor, quite simply, we'd just ask
5 for a briefing schedule. I contacted Mr. Edelson and his
6 group, and we just suggest that we file a written response in
7 seven days, that they reply in seven days, and set a hearing
8 for February 24 so that these issues can be fully heard and we
9 can have a record before the Court. That would be our
10 suggestion.
11     But quite simply, your Honor, we just think at this
12 point they have the discovery materials. They certainly have
13 things that they can be working on. In the meantime, we are
14 working on the settlement issues. We intend to follow the
15 Court's schedule to get a new motion for preliminary approval
16 before you. And they will also have an opportunity to object
17 to that settlement if they so choose.
18     THE COURT: Let me ask you the question. I reviewed
19 the renewed motion. And basically, the plaintiff Nichols and
20 Mr. Edelson, the main argument that they make is that the new
21 amended complaint, the third amended complaint, that was filed
22 in January 7, 2015, no longer is stating a claim or seeking any
23 sort of class-wide damages under Rule 23(b)(3). And the -- I
24 looked at the third amended complaint. And I did notice that
25 the complaint does request that a class be certified under

1   23(b)(3).  And yet, the relief section, it seeks certain
2   damages only on an individual basis.
3           I was wondering at this point in time what plaintiffs'
4   position is with regard to the scope of the class that they
5   seek to represent as part of their third amended complaint.
6           MS. FEGAN:  Your Honor, I think it's no surprise,
7   right, that we have -- or intend to seek class-wide relief for
8   medical monitoring and that we intend to seek and are seeking
9   individual damages for individual plaintiffs both here before
10  this Court and across the country.  And I believe that if we
11  set a briefing schedule there are a number of other lawyers who
12  have an intent to file additional personal injury claims that
13  will say that they don't need lead counsel to represent their
14  individual clients but would prefer to continue to seek those
15  claims alone.
16          So quite simply, we don't intend to seek a class for
17  personal injury, which is why also our -- we think that the
18  best relief that student athletes, current and former, can get
19  from the NCAA is a medical monitoring program that goes for 50
20  years, that goes back in time and makes sure that we capture
21  those folks who do think that they may have CTE or other
22  claims.
23          But that being said, your Honor, we don't intend to
24  seek a class of personal injury claimants.
25          THE COURT:  And the concern I have with regard to the

1  definition of the class and the scope and nature of the class
2  that the named plaintiffs are seeking to represent is precisely
3  that, which is, if they are not part of the class, right, they
4  can't necessarily represent the interests of the class to which
5  they are not a party. And so --
6      MS. FEGAN: I like --
7      THE COURT: Hold on for a second.
8      So I'm trying to figure out. So among the various
9  things that I am trying to figure out as part of this case is
10 what obligations under the third amended complaint, what sort
11 of obligations, if any, do the current lead counsel have to
12 those other individual with regard to those types of claims.
13 So that's my main concern.
14     MS. FEGAN: And, your Honor, this is something that we
15 actually addressed in our original contested motion for class
16 certification because even in that motion, we sought a 50-state
17 core issues class that went for everything except the ultimate
18 pot of damages. And then we sought the medical monitoring
19 class.
20     And there is a body of Seventh Circuit case law, and
21 we can address this in responding, that really talks about what
22 our job is is to make sure that we're not precluding those
23 plaintiffs in a claim-splitting situation. So there are
24 specific findings that this Court can make because it is -- it
25 is the same class. And I think that there is a difference

1 between saying that it's not the same class versus the claims
2 that the class members have, and what they're seeking. And
3 it's our job as lead counsel to ensure that there is not a
4 claim-splitting finding that's somehow down the road before
5 another court and say, oh, you could have adjudicated that
6 before Judge Lee.
7 And so you will find that that actually was part of
8 our full --
9 THE COURT: I guess, I understand when you say that
10 they are the same class to mean practically speaking when you
11 look at who are the members of either 23(b)(2) class or
12 23(b)(3) class, they're going to be kind of perhaps the same
13 number of individuals. The class definition is the same.
14 But for my purposes, right, what I'm still looking at,
15 it makes a difference as to whether or not it's going to be a
16 23(b)(2) class or 23(b)(3) class, particularly if you're going
17 to try to pursue a 23(b)(2) class and seek a -- seek a release
18 of certain rights. One would characterize that as a right that
19 they might have to pursue litigation at 23(b)(3).
20 Now, of course, one possible way to deal with this,
21 and I think this is something that practically speaking I don't
22 think really anyone may want, is for me to decide whether a
23 23(b)(3) class actually exists, right, for the parties to bring
24 that motion and to have it be at issue. And then we can decide
25 once and for all. Because if in fact the 23(b)(3) class is not

1 viable, as some of the parties have suggested, well, then we
2 can put that issue to rest. And we can then deal with it on
3 strictly 23(b)(2) basis.
4     But this -- but I understand that there is costs
5 involved with that, and there is -- you know, all of these
6 risks have been kind of considered and taken into consideration
7 by the parties in their mediation. And I certainly have no
8 desire to disrupt that, or I have -- I don't want to kind of --
9 cause any minimal disruption. But it is something that I have
10 identified as something that's been bothering me since the
11 beginning of the case. And as the case goes on, there are
12 times when I think that I have more clarity on it. And then
13 something like this comes along. And then I wonder, well,
14 perhaps not.
15     MS. FEGAN: And to your point, your Honor, I think
16 part of what the Court is struggling with is whether by filing
17 the lead motion now we are accelerating an issue that shouldn't
18 be taken up when we file our motion for preliminary approval.
19 I think quite simply they will have the opportunity to respond
20 whether we are seeking a (b)(3) class, whether there is a class
21 waiver, at that point in time.
22     But what -- I think part of what we're all struggling
23 with is by accelerating the lead motion when they don't have a
24 motion for class certification on file with respect to PI
25 claim, that we're trying to accelerate the chicken and the egg

1  question.

2       So perhaps the right thing to do is to do this on the
3  same schedule that we're seeking preliminary approval on.  And
4  that might be a way to handle it.  But certainly there is
5  nothing precluding Mr. Edelson from filing a motion for class
6  certification of a personal injury class if he believes it's
7  viable.  He has the discovery, and has had it for some time
8  now.

9       But we are kind of -- we are kind of accelerating an
10 issue in the context of a lead counsel motion, and I think that
11 that's just an inappropriate way to do it, unless they have
12 different motives.

13      MR. EDELSON:  Your Honor, if I can respond?

14      THE COURT:  Briefly, Mr. Edelson.

15      MR. EDELSON:  Yeah, we -- we cannot file a motion for
16 class certification because you appointed Hagens Berman and Joe
17 Siprut lead of this case, which included the personal injury
18 claims.  If -- if everybody agrees that we are allowed to move
19 forward on the personal injury claims, then we are happy to do
20 that.

21      THE COURT:  Well, let's do this.  Let's take it one
22 step at a time.  Okay?  So with regard to the proposed briefing
23 schedule, those dates are fine.  So the plaintiffs' response
24 will be due in seven days, any replies seven days thereafter.
25 And we can go ahead and set this for status.

1           Carmen, what does February 24 look like, later in the
2  morning?
3           THE CLERK:  11:00 o'clock?
4           THE COURT:  That's fine.  So we will set it for 11:00.
5           I feel like in some ways I might be beating a dead
6  horse.  You know, I think the parties know kind of my concerns
7  with regard to -- right?  One of my paramount duties as a Judge
8  in overseeing a class settlement is to make sure that all the
9  putative class members, that their interests are represented
10 adequately in this case.  And it is from that concern that all
11 these discussions about Rule 23(b)(2) or 23(b)(3) come up.
12 Frankly also where the concerns with regard to notice come up,
13 right?  Because arguably the notice, scope of notices, required
14 under 23(b)(3) and 23(b)(2) are different.
15          So it does raise a number of issues.  I think that
16 23(b)(2), 23(b)(3) debate is basically a manifestation of
17 the -- or the arena in which the parties can discuss whether or
18 not the class that the plaintiff is seeking to certify would be
19 adequately represented in this case.  And so, you know, I think
20 that it's no surprise that that's kind of my main concern,
21 obviously adequate representation and then fairness with regard
22 to the substance of the settlement.
23          So hopefully the parties can address that in their
24 briefs.  And if I have any further questions, I will ask the
25 parties those questions on February 24.

1  MS. FEGAN: Thank you, your Honor.

2  MR. MESTER: Thank you.

3  MR. BARBAKOFF: Thank you.

4  (Which were all the proceedings had at the hearing of the

5  within cause on the day and date hereof.)

6  CERTIFICATE

7  I HEREBY CERTIFY that the foregoing is a true, correct

8  and complete transcript of the proceedings had at the hearing

9  of the aforementioned cause on the day and date hereof.

10

11  /s/Alexandra Roth                                    2/4/2015
    _____      _____
12  Official Court Reporter                              Date
    U.S. District Court
13  Northern District of Illinois
    Eastern Division

14

15

16

17

18

19

20

21

22

23

24

25