**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION** | ) ) ) ) ) ) ) ) ) | **MDL No. 2492** <br><br> **Master Docket No. 1:13-cv-09116** <br><br> **This Document Relates to All Cases** <br><br> **Judge John Z. Lee** <br><br> **Magistrate Judge Geraldine Soat Brown** |

**JOINT SUBMISSION REGARDING THE
FEASIBILITY AND COST OF DIRECT NOTICE**

As called for by the Court's December 17, 2014 Memorandum Opinion and Order, Plaintiffs Adrian Arrington, et al. ("Plaintiffs") and the National Collegiate Athletic Association ("NCAA," and together with Plaintiffs, the "Parties") jointly make this submission regarding the feasibility and anticipated cost of direct notice:[1]

## I.    INTRODUCTION

Following the issuance of the Court's December 17, 2014 Memorandum Opinion and Order, the Parties and their counsel have been addressing the issues raised by the Court, including the feasibility and cost of direct notice. Although the sampling program directed by the Court has not yet been completed for the reasons discussed in more detail below, the Parties believe they now have the information necessary to advise the Court as to the feasibility and anticipated cost of direct notice. Accordingly and in lieu of seeking a lengthier extension to complete the contemplated sampling program, the Parties are making this submission now in order to apprise the Court of the current status of their efforts concerning notice, with the

---

[1]   Capitalized terms in this submission have the meaning ascribed to them in the Settlement Agreement, which itself is Exhibit A to Plaintiffs' amended motion for preliminary approval. See Am. Settlement Agmt. (Dkt. #92).

expectation that the information already gathered may in fact be sufficient and with the further

expectation that if the Court determines that additional information in fact is still required, the

Parties and the Court will be in a better position to tailor any additional efforts, given what is

now known regarding the information maintained by NCAA member institutions.

## II.    STATUS REPORT REGARDING THE FEASIBILITY <u>AND COST OF DIRECT NOTICE</u>

The steps taken by the Parties and their counsel to address the feasibility and cost of

direct notice since issuance of the Court's December 17, 2014 Memorandum Opinion and Order

are detailed below.  <u>See</u> disc. <u>infra</u> at 2-8.

### A.    Nine NCAA Member Institutions Are Contacted

Following the issuance of the December 17, 2014 Memorandum Opinion and Order and

the December 19, 2014 hearing, the Parties and their counsel commenced efforts to address the

issues raised by the Court.  <u>See</u> Spellman Decl., Ex. A hereto, at ¶ 3.  With respect to the issue of

notice, however, and as anticipated by the NCAA at the December 19, 2014 hearing, efforts to

collect information from NCAA member institutions in the remaining portion of the month of

December were somewhat complicated by the then-impending holiday and the fact that the Fall

2014 semester had already ended at most member institutions, with the staff of many institutions

being on vacation or otherwise not available until the New Year and the commencement of the

Spring 2015 semester.  <u>See</u> <u>id.</u>

As soon as was feasible, however, the NCAA and its in-house legal staff began

contacting numerous institutions in all three divisions in an effort to determine the scope, nature

and extent of records maintained by those institutions regarding the names and last-known

addresses of individuals who participated in NCAA-sanctioned sports while enrolled at each

institution.  <u>See</u> Spellman Decl., Ex. A hereto, at ¶ 4.  All told, representatives from nine

different institutions were contacted, and an effort was made to ensure that not only institutions in each of the three divisions were contacted but that the institutions themselves were otherwise broadly representative vis-a-vis other metrics (e.g., private versus public, geographic location, respective size of the athletic department, etc.).[2]  See id. at ¶¶ 5-6.

As would be expected, the contact information maintained varies by institution and in several different respects.  See Spellman Decl., Ex. A hereto, at ¶ 7.  Some institutions maintain dedicated lists of student-athletes by sport or otherwise, while other institutions maintain rosters of various sports that can then be matched up against broader lists of current and former students. See id.  In many instances, these lists are maintained by the institutions themselves, whereas in other instances, the best, most complete and up-to-date lists are maintained by separate alumni organizations, which themselves are typically separate, tax-exempt entities.  See id. at ¶¶ 7-8.

The temporal scope of available contact information also varies by institution and for some institutions by sport.  See Spellman Decl., Ex. A hereto, at ¶ 7.  On balance, however, and as discussed in more detail below, the information provided to the NCAA confirms that direct notice will in fact be feasible for a substantial majority of the members of the Settlement Class. See id. at ¶ 10.

**B.    Direct Notice Should Be Feasible For Sixty
Percent Or More Of The Settlement Class**

Based upon the information obtained from the member institutions contacted by the NCAA and its counsel and after review and analysis of that information by the proposed Notice Administrator, it should be feasible to send direct, mailed notice to sixty percent (60%) to sixty-

---

[2]   The NCAA and its counsel plan to contact at least three additional member institutions this week but were unable to schedule calls with those additional institutions before filing this submission.

three percent (63%) of the Settlement Class. <u>See</u> Spellman Decl., Ex. A hereto, at ¶ 13; <u>see also</u> Vasquez Decl., Ex. B hereto, at ¶ 12. To be sure and as anticipated by the Court in its December 17, 2014 Memorandum Opinion and Order, the last-known addresses provided by many member institutions may not be current for some members of the Settlement Class. <u>See</u> Spellman Decl., Ex. A hereto, at ¶¶ 10-12. Through utilization of the National Change of Address database ("NCOA"), however, and other information sources, the Parties and the proposed Notice Administrator believe that current mailing addresses should be available for a substantial majority of the Settlement Class.[3] <u>See</u> Vasquez Decl., Ex. B hereto, at ¶¶ 8-12.

**C.  The Parties Agree To Modify The Proposed Notice Plan To Address Concerns Raised By The Court**

In light of the concerns raised in the Court's December 17, 2014 Memorandum Opinion and Order, the Parties have also agreed, subject, of course, to further input from the Court, to amend the Notice Plan in order to better clarify the role of direct notice and the fact that direct, mailed notice will be provided to <u>all</u> members of the Settlement Class for whom the Parties are able to obtain a name and last-known address from NCAA member institutions or other sources. <u>See</u> Spellman Decl., Ex. A hereto, at ¶ 16. As will be specified in the contemplated amendment to the Notice Plan, the Notice Administrator will use the NCOA to obtain last-known addresses for all Settlement Class members for whom the Parties have been able to obtain an address from an NCAA member institution or otherwise. <u>See</u> Vasquez Decl., Ex. B hereto, at ¶ 8. In addition, the Notice Administrator will utilize the NCOA and other available sources of information in order to obtain current addresses (as is practicable) for all members of the Settlement Class

---

[3]  NCOA is a database maintained by the United States Postal Service that enables "mailers to update mailing lists with new addresses from individuals, families and businesses that have moved." <u>See</u> NCOA FAQs, http://www.nationalchangeofaddress.com/FAQs.html; <u>see also</u> Vasquez Decl., Ex. B hereto, at ¶ 8.

4

identified by member institutions.  See id. at ¶¶ 8-12.  Direct notice will then be sent to all such

persons.[4]  See id. at ¶ 13.  Moreover, and in addition to direct notice, the various forms of

indirect notice will also be utilized that were discussed in the notice materials previously

submitted to the Court, in order to ensure the broadest possible reach.  See id. at ¶ 14; see also

Vasquez Decl. (Dkt. #84-1) at ¶¶ 26-43.

### D. Estimated Cost Of Direct Notice

Based on the information obtained by the NCAA from member institutions and after

providing that information to the proposed Notice Administrator, the Parties estimate that direct

notice will cost between $1,115,514 and $1,175,506.  See Spellman Decl., Ex. A hereto, at ¶ 14;

Vasquez Decl., Ex. B hereto, at ¶ 13.  This range is based upon the actual cost of mailing as well

as all related costs and would bring the total cost of implementation of the Notice Plan (as

amended) to between $1,444,009 and $1,496,944.  See Vasquez Decl., Ex. B hereto, at ¶ 14.

That amount, however, still represents less than 2.2 percent (2.2%) of the Medical Monitoring

Fund and as such is well within the reported range of notice programs for comparable

settlements.[5]  See, e.g., In re Capital One Tel. Consumer Prot. Act Litig., 2015 U.S. Dist. LEXIS

---

[4]    The Parties understand that the issue of whether the Settlement Class should be certified
under Fed. R. Civ. P. 23(b)(2) or (b)(3) remains open.  See Dec. 17, 2014 Mem. Op. and Order
(Dkt. #115) at 13 n.9.  For purposes of notice, however, the Parties have agreed that they will
provide the full measure of notice that would be required for a class certified under Fed. R. Civ.
P. 23(b)(3).  See Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(3), the court
must direct to class members the best notice that is practicable under the circumstances,
including individual notice to all members who can be identified through reasonable effort.");
see also Am. Settlement Agmt. (Dkt. #92) ¶ X(A)(1); disc. supra at 3-5.

[5]    To be as conservative as possible, the Parties have asked their respective economic experts to
assume for purposes of assessing the sufficiency of the Medical Monitoring Fund that direct
notice will be sent to one hundred percent (100%) of the members of the Settlement Class.  The
estimated cost of providing direct, mailed notice to one hundred percent (100%) of the members
of the Settlement Class, as well as providing supplemental indirect notice, is $1,697,955 or
roughly 2.5 percent (2.5%) of the Medical Monitoring Fund.  See Notice Costs Summary, Ex. 2

(continued...)

17120, at *12 (N.D. Ill. 2015) (granting final approval of settlement and deducting "notice and administration costs" of $5,093,000, including direct notice pass-through expenses of approximately $3.7 million, from "settlement fund of $75,455,099"); In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig., 733 F. Supp. 2d 997, 1004 (E.D. Wis. 2010) (granting final approval of settlement and deducting over $7,000,000 for notice from common fund of $65,000,000); Ko v. Natura Pet Prods., 2012 U.S. Dist. LEXIS 128615, at *13-14 (N.D. Cal. 2012) (granting final approval of settlement and deducting $400,000 for "costs for notice and claims administration" from common fund of $2,150,000); see also Larson v. AT&T Mobility LLC, 687 F.3d 109, 116 n.9 (3d Cir. 2012) (noting that the district court rejected the objection that "class notice was deficient because the costs of notice and administrative expenses were to be paid from the Common Fund").

Moreover, the estimated "reach" of the direct and indirect methods of notice called for by the Notice Plan (as amended) substantially exceeds the minimum requirements established by the relevant requirements and authorities. See, e.g., Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010) ("The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70-95%. A study of recent published decisions showed that the median reach calculation on

---

(...continued)

to Vasquez Decl. (Ex. B hereto). For the reasons noted, it is unlikely that direct notice to one hundred percent (100%) of the members of the Settlement Class will be feasible, and providing direct notice to all members of any class is typically not feasible. See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 203 (D. Me. 2003). Given the issues addressed in the Court's December 17, 2014 Memorandum Opinion and Order, however, the Parties concluded that it would be better to err on the high side in terms of the cost of notice for purposes of addressing the sufficiency of the Medical Monitoring Fund. See Dec. 17, 2014 Mem. Op. and Order (Dkt. #115) at 14.

approved notice plans was 87%."); see also, e.g., In re Heartland Payment Sys., 851 F. Supp. 2d

1040, 1061 (S.D. Tex. 2012) (holding that "[t]he notice that has been given clearly complies with

Rule 23(e)(1)'s reasonableness requirement" where "the court ordered the 'Summary Notice'

form to reach a minimum of 80 percent of the proposed class"); In re M3 Power Razor Sys.

Mktg. & Sales Practices Litig., 270 F.R.D. 45, 55 (D. Mass. 2010) (preliminarily approving

settlement that "provides for notice with 80 percent reach to inform consumers of their rights as

class members").

### E.    Issues Raised With Respect To FERPA

A number of the member institutions contacted by the NCAA raised privacy concerns

with regard to the requested sampling addressed in the Court's December 17, 2014

Memorandum Opinion and Order, and those concerns are a principal reason why the sampling

has not been completed.  See Spellman Decl., Ex. A hereto, at ¶ 9.  While all institutions

contacted have pledged cooperation in the settlement approval process in providing the

information required for the providing of direct notice to members of the Settlement Class, a

number of institutions have raised the Family Educational Rights and Privacy Act ("FERPA")

and related concerns and expressed the view that the issuance of subpoenas would be necessary

in order to comply with the dictates of FERPA before the names and last-known addresses of

student-athletes could be released to the Parties or their counsel.[6]  See id.

In the interest of avoiding delay, the Parties have deferred issuing subpoenas for purposes

of sampling, pending further direction from the Court.  The Parties will, however, specify in the

---

[6]    Under FERPA, educational institutions generally must receive written permission from either
an eligible student or that student's parent in order to release information from the student's
education record.  See 20 U.S.C. § 1232g(b).  FERPA and its related regulations make clear,
however, that such information may otherwise be disclosed pursuant to a lawfully-issued
subpoena.  See 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(ii).

Notice Plan (as amended) the need for the issuance of subpoenas and propose appropriate allowances in terms of timing and deadlines.  See Spellman Decl., Ex. A hereto, at ¶ 16.

### III.  RELEVANT LEGAL REQUIREMENTS

The efforts of the Parties in addressing the feasibility and cost of direct notice and in amending the Notice Plan have been guided by the Court's December 17, 2014 Memorandum Opinion and Order as well as by the cases and authorities addressed below.  See disc. infra at 8-13.

### A.  The Best Notice Practicable Under The Circumstances

The applicable notice requirements for the Settlement Class are spelled out in Fed. R. Civ. P. 23(c)(2)(B), which requires the best notice practicable under the circumstances:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

Fed. R. Civ. P. 23(c)(2)(B); see also, e.g., Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc., 271 F.R.D. 139, 144 (N.D. Ill. 2010).  These requirements are, in turn, rooted in due process considerations and were articulated by the Supreme Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318 (1950), and Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-76 (1974).

With the advancement of email, social media and other forms of communication, some courts have taken a more flexible approach to the standards set forth in Mullane and Eisen.  See, e.g., In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139, 144 (E.D.N.Y. 2000) (granting approval of "multi-faceted notice plan, involving, in addition to direct mail utilizing existing lists covering segments of the settlement classes, worldwide publication, public relations (i.e., 'earned media'), Internet and grass roots community outreach").  As a result, direct or individual mailed notice is not always required or used.  See, e.g., Boundas v. Abercrombie & Fitch Stores, Inc.,

280 F.R.D. 408, 418 (N.D. Ill. 2012) ("[T]he Seventh Circuit has expressly held that the feasibility of notice by mail is not a prerequisite to class certification: When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute."). A recent decision from the Third Circuit, however, makes a compelling argument for a more traditional approach to notice, requiring mailed notice to <u>all</u> members of a class "whose identity can be ascertained with reasonable effort," and that is the standard the Parties propose to follow here.[7] <u>See</u>, <u>e.g.</u>, <u>Larson</u>, 687 F.3d at 126 (quoting <u>Greenfield v. Villager Indus., Inc.</u>, 483 F.2d 824, 832 (3d Cir. 1973)).

To be sure, the operative authorities do not require that every single member of a class receive or be sent mailed notice. <u>See</u>, <u>e.g.</u>, <u>Boundas</u>, 280 F.R.D. at 418. "Direct notice is indeed ideal, but the requirement of personal notice does not mean that each individual who is potentially a member of the class must receive actual notice of the class action. This [best notice practicable] standard can be satisfied even though a particular class member never receives actual notice." <u>Shurland</u>, 271 F.R.D. at 144; <u>see also</u> <u>Mirfasihi v. Fleet Mortg. Corp.</u>, 356 F.3d 781, 786 (7th Cir. 2004) ("When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute[.]").

Indeed, mailed notice to <u>every</u> class member would almost always be infeasible for a large class, and a notice program that combines direct and indirect notice methods to reach a "high percentage of the class" more than satisfies due process as well as other applicable

---

[7] The court in <u>Larson</u> read the Supreme Court's earlier decision in <u>Eisen</u> to reject "the argument that costs are the primary driver in the judgment on notice . . . ." <u>See</u> <u>Larson</u>, 687 F.3d at 128. Other courts, however, have read <u>Eisen</u> to have a somewhat different meaning. <u>See</u>, <u>e.g.</u>, <u>In re Nissan Motor Corp. Antitrust Litig.</u>, 552 F.2d 1088, 1099 (5th Cir. 1977) (suggesting that the cost of identifying class members and providing direct notice should play a role in determining what is reasonable under the circumstances).

requirements.  See, e.g., Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010) ("The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.").

As Judge Pallmeyer explained in Shurland, however, the notice that is practicable necessarily varies depending on the circumstances in any particular case:

> Where, as in this case, individual notice is not possible, other methods of contacting the class members may be utilized.  As the Supreme Court has explained:  This Court has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning.  Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.  Mullane stands for the proposition that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question.  Though these cases predate the current version of Rule 23, the drafters of the Rule intended to incorporate the due process standards Mullane and Schroeder discussed.  In instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law.

Shurland, 271 F.R.D. at 144;[8] see also, e.g., DeHoyos v. Allstate Corp., 240 F.R.D. 269, 296 (W.D. Tex. 2007) (holding that "[i]ndividual notice is not required when there is no reasonable way to sufficiently identify the class members" and that "[r]eceipt of actual notice by all class members is required neither by Rule 23 nor the constitution"); Pigford v. Veneman, 355 F. Supp. 2d 148, 162-63 (D.D.C. 2005) ("If all (or most) class members can be individually identified and located, courts will require that individual notice be sent via mail or other direct means.  When all class members cannot be identified, however, practical issues of effectuating notice arise and

---

[8]   Unless stated otherwise, all emphasis is supplied, and all internal citations and quotations are omitted from all quoted material herein.

other methods, such as publication in newspapers or periodicals, are deemed sufficient."); In re

Zurn Pex Plumbing Prods. Liab. Litig., 2013 U.S. Dist. LEXIS 26557, at *25 (D. Minn. 2013)

("The 'best notice practicable' does not mean actual notice, nor does it require individual mailed

notice where there are no readily available records of class members' individual addresses or

where it is otherwise impracticable.  In situations such as this action, where class members

cannot be identified for purposes of sending individual notice, notice by publication is

sufficient."); Fresco v. Auto Data Direct, Inc., 2007 U.S. Dist. LEXIS 37863, at *5, 22 (S.D. Fla.

2007) (approving indirect notice plan because "[t]he settlement class is estimated to include

more than 200 million individuals, and the cost to identify individual class members and to

provide them with individual notice is not reasonable in these circumstances"); In re Agent

Orange Prods. Liab. Litig., 818 F.2d 145, 168-69 (2d Cir. 1987) (expressly denying argument

that Mullane requires "actual notice to each and every class member . . ."); Mullane, 339 U.S. at

317 ("[I]t has been recognized that, in the case of persons missing or unknown, employment of

an indirect and even a probably futile means of notification is all that the situation permits and

creates no constitutional bar to a final decree foreclosing their rights[.]").[9]

---

[9]   The extent to which information in the possession of third parties must be obtained and
utilized is also subject to some debate.  Compare Perez v. First Am. Title Ins. Co., 2010 U.S.
Dist. LEXIS 128567, at *3-9 (D. Ariz. 2010) (partially decertifying class because plaintiff had
not provided direct notice to class members whose names and addresses could have been
ascertained through review of records obtainable from defendant's agents by subpoena), and
Oscar Gruss & Son v. Geon Indus., Inc., 89 F.R.D. 32 (S.D.N.Y. 1980) ("[T]he court interpreted
the Rule 23 requirements of 'best notice practicable' and identification 'through reasonable
effort' to mean that the class representative must send individual notice to all beneficial owners
of stock whose names and addresses the representatives can ascertain by searching brokerage
firm records," which needed to be obtained by subpoena.), with In re Nissan, 552 F.2d at 1098
("[T]he type of notice to which a member of a class is entitled depends upon the information
available to the parties about that person.  Consistent with this general principle, subdivision
(c)(2)'s reasonable effort standard requires that, once a 23(b)(3) action has been certified, the
name and last known address of each class member known to the parties or capable of being
identified from business or public records available to them must be produced[.]").  In the

(continued...)

### B.    The Other Forms Of Notice Agreed To By
The Parties Are Also Useful And Relevant

While indirect notice may or may not be a proxy for direct notice, there is no question

that various forms of indirect notice, such as those proposed by the Notice Administrator here,

can meaningfully augment and strengthen a given notice program.  See, e.g., Manual for

Complex Litig. § 21.311, at 288 (4th ed. 2004) ("Posting notices on dedicated Internet sites,

likely to be visited by class members and linked to more detailed certification information, is a

useful supplement to individual notice, might be provided at relatively low cost, and will become

increasingly useful as the percentage of the population that regularly relies on the Internet for

information increases. . . .  Publication in magazines, newspapers, or trade journals may be

necessary if individual class members are not identifiable after reasonable effort or as a

supplement to other notice efforts."); see also, e.g., In re Northfield Labs., Inc. Sec. Litig., 2012

U.S. Dist. LEXIS 12741, at *21 (N.D. Ill. 2012) (approving notice plan that "provides individual

notice to class members that can be identified through reasonable effort" and "also provides a

practicable method of notifying those who cannot be identified through reasonable efforts:  it

provides notice by publication and notice to brokerage firms"); In re Ky. Grilled Chicken

Coupon Mktg. & Sales Practices Litig., 2011 U.S. Dist. LEXIS 157910, at *6-7 (N.D. Ill. 2011)

(granting final approval of settlement where notice was provided solely through publication,

internet advertising and a settlement website); In re Lupron Mktg. & Sales Practices Litig., 228

F.R.D. 75, 84-85 (D. Mass. 2005) (approving publication notice program implemented to reach

---

<sub>(...continued)</sub>

Amended Settlement Agreement, however, the NCAA agreed to "work with its member
institutions to obtain all reasonably-available names and addresses of NCAA student-athletes,"
and there is little doubt this commitment meets or exceeds the operative requirements with
respect to information possessed by third parties.  See Am. Settlement Agmt. (Dkt. #92)
¶ X(A)(1).

settlement class for which direct notice was not possible); <u>Fresco</u>, 2007 U.S. Dist. LEXIS 37863, at *5 (approving "comprehensive notice plan" crafted by notice experts in light of difficulty of obtaining class member addresses for direct notice).

To that end, the Parties propose using the following forms of indirect notice in addition to direct, mailed notice:

> 1. Print publication in national publications, namely <u>ESPN The Magazine</u>, <u>Sports Illustrated</u> and <u>USA Today</u>;

> 2. Establishment of a case-dedicated settlement website;

> 3. Implementation of a substantial online advertising campaign;

> 4. Wide dissemination of a press release; and

> 5. Evaluation of earned media.[10]

Motion for Approval of Notice Plan (Dkt. #84) at 5-8; <u>see</u> <u>also</u>, <u>e.g.</u>, Manual for Complex Litig. § 21.311, at 288 (4th ed. 2004) ("If individual names or addresses cannot be obtained through reasonable efforts, the court must, with counsel's assistance, determine how to provide the best notice practicable under the circumstances. Alternative techniques for providing notice include publication notice; Internet notice; and posting notice in public places likely to be frequented by class members.").

Dated: February 23, 2015                    Respectfully submitted,

/s/ Mark S. Mester                          /s/ Steve W. Berman
Lead Counsel for Defendant                  Co-Lead Counsel for Plaintiffs
National Collegiate Athletic Association

---

[10] As more fully described in the September 5, 2014 declaration of Alan Vasquez, "earned media" is unpaid publicity such as news coverage. <u>See</u> Vasquez Decl. (Dkt. #84-1) at ¶¶ 9, 10, 15, 34-38; <u>see</u> <u>also</u> Motion for Approval of Notice Plan (Dkt. #84) at 2-4, 7-8.

Mark S. Mester
  mark.mester@lw.com
Johanna M. Spellman
  johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767


J. Christian Word
  christian.word@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

Steve W. Berman
  steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594


Joseph J. Siprut
  jsiprut@siprut.com
SIPRUT PC
122 South Michigan Avenue, Suite 1850
Chicago, Illinois  60603
Telephone:  (312) 588-1440
Facsimile:  (312) 878-1342

## CERTIFICATE OF SERVICE

I, Mark S. Mester, certify that on February 23, 2015, a true and correct copy of the

foregoing Joint Submission Regarding The Feasibility And Cost Of Direct Notice was filed

through the ECF system and served upon the following parties by prepaid first class mail.

Timothy J. McIlwain
TIMOTHY J. MCILWAIN
ATTORNEY AT LAW, LLC
89 River Street #1538
Hoboken, New Jersey 07030
Telephone:  (877) 375-9599
Facsimile:  (609) 450-7017

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Edgar D. Gankendorff
PROVOSTY & GANKENDORFF, L.L.C.
650 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone:  (504) 410-2795
Facsimile:  (504) 410-2796

/s/ Mark S. Mester
Mark S. Mester
  mark.mester@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767