# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | ) MDL No. 2492 <br> ) <br> ) Master Docket No. 1:13-cv-09116 <br> ) <br> ) This Document Relates To: <br> ) All Cases <br> ) <br> ) Judge John Z. Lee <br> ) <br> ) Magistrate Judge Geraldine Soat Brown |

## DECLARATION OF JOHANNA SPELLMAN

I, Johanna Spellman, declare as follows:

1. I am an attorney with Latham & Watkins LLP, counsel of record for the National Collegiate Athletic Association ("NCAA"). On July 30, 2014, I was appointed by the Court as Liaison Counsel for the NCAA. I make this declaration based upon my personal knowledge, and I am competent to testify as to its contents.

2. On December 17, 2014, this Court issued its Memorandum Opinion and Order, directing the Parties to select nine (9) NCAA member institutions (i.e., three from each division) and request that those institutions provide the address and contact information they maintain for members of the proposed Settlement Class, as that term is defined in the Amended Settlement Agreement. (Dkt. #115 at 15.)

3. After the issuance of the Court's December 17, 2014 Memorandum Opinion and Order and following the December 19, 2014 hearing, counsel for the NCAA began contacting NCAA member institutions to discuss their respective institutions' ability to provide name and contact information for student-athletes. The efforts of the NCAA and its counsel were, however, somewhat limited in this regard until after the holidays, inasmuch as a number of

NCAA member institutions were already on winter break by the time of the December 19, 2014 hearing.

4. Efforts to obtain the information called for by the Court's December 17, 2014 Memorandum Opinion and Order resumed after the holidays. Specifically, the NCAA's counsel asked member institutions to describe the scope, nature and extent of records maintained by those institutions regarding the names and last-known addresses of individuals who have participated in NCAA-sanctioned sports while enrolled at each institution.

5. An effort was made to ensure not only that member institutions from each NCAA division were contacted, but that the member institutions were otherwise broadly representative (e.g., private versus public, geographic location, respective size of the athletic department, etc.).

6. In-house counsel for the NCAA spoke with nine (9) NCAA member institutions (six (6) in Division I, two (2) in Division II and one (1) in Division III). I, in turn, have thus far consulted with four (4) of these member institutions and conferred with NCAA in-house counsel with respect to their communications with the others.[1]

7. From these discussions, we learned that as would likely be expected, there is variety among the NCAA member institutions in terms of how their student-athlete contact information is maintained. Some member institutions maintain that information in a way that identifies student-athletes. Others maintain alumni contact information that does not distinguish between athletes and non-athletes. Some institutions also maintain rosters of various sports that can then be matched up against broader lists of current and former students. Some institutions were able to confirm that for each name identified, the data they maintain includes at least one

---

[1] In addition, we plan to contact at least three (3) additional NCAA member institutions in the near term but were unable to schedule calls with those additional institutions before the deadline for filing with the Court the submission regarding the feasibility and cost of direct notice.

point of contact (e.g., an email, phone number or mailing address) that is current. Moreover, many institutions also maintain the Social Security Account Numbers of their students and student-athletes, and although that information poses additional privacy and security issues (see disc. infra at ¶ 9), it could also be useful in obtaining current addresses of members of the Settlement Class whose last-known addresses could not be used to determine current addresses through other means.

8. Several institutions that were contacted explained that the institution's athletic department maintains separate contact data for current and former student-athletes. Others stated that outside, Section 501(c)(3) tax-exempt organizations (e.g., alumni associations and development groups) maintain the most comprehensive sets of student-athlete contact information available.

9. During the discussions with various member institutions, the issues of privacy and compliance with applicable state and federal law were repeatedly raised. As a general matter, the institutions that were contacted expressed the view that their respective institutions and/or the alumni associations and development groups that maintain contact information would require a subpoena before providing that information in order to ensure compliance with, inter alia, the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g. Additional concerns were raised regarding any release of Social Security Account Numbers.

10. On balance, the institutions contacted estimated that they and their affiliated organizations maintain contact data identifying student-athletes going back approximately twenty-five (25) to thirty (30) years, although some institutions indicated that their data is less circumscribed than that. Based upon the information obtained from the institutions contacted, however, we believe it would be reasonable to assume that on average, member institutions will

in most instances have names and last-known addresses for student-athletes who participated in NCAA-sanctioned sports over the course of the last twenty-five (25) to thirty (30) years.

11. For purposes of analyzing the cost and feasibility of direct notice, based on the information we learned from the member institutions that were contacted, we have assumed that NCAA member institutions would be able to provide contact information for current student-athletes and for former student-athletes who played up to thirty (30) years ago. This would mean that approximately 2.9 million direct, mailed notices would be sent to members of the Settlement Class, based upon calculations performed for the NCAA by The Claro Group, the economic consultants retained by the NCAA.

12. I asked the proposed Notice Administrator, Gilardi & Co. LLC ("Gilardi"), to estimate the cost of providing direct notice to these 2.9 million class members and to estimate the percentage of the Settlement Class to whom it is feasible to send direct, mailed notice. I also asked Gilardi to consider the fact that some of the contact information may not be current and to consider the costs of running contact information against the United States Postal Service change of address database, otherwise known as NCOA. I asked Gilardi to make reasonable estimates of the percentage of mail that will be returned as undeliverable, based on Gilardi's experience administering notice programs for nationwide class action settlements. I also asked Gilardi to make reasonable estimates as to how successful they will be at using public records databases to find contact information for class members whose initial direct notice is returned as undeliverable. Gilardi's estimates are set forth more fully in the accompanying Declaration of Alan Vasquez Regarding Direct Notice.

13. Gilardi estimates that based on the assumption it will receive contact information for student-athletes who participated in an NCAA-sanctioned sport in the last thirty (30) years,

4

direct notice will be sent to between sixty percent (60%) and sixty-three percent (63%) of the Settlement Class. See Vasquez Decl. at ¶ 12.

14. Gilardi estimates that the cost of providing direct notice will be between approximately $1,115,514 and $1,175,506. See Vasquez Decl. at ¶ 13. Gilardi further estimates that the total cost of implementation of the proposed Notice Plan (as amended) will be between approximately $1,444,009 and $1,496,944, which amount includes all expenses associated with direct, mailed notice as well as all expenses associated with the various forms of indirect notice that are called for by the Notice Plan. See Vasquez Decl. at ¶ 14.

15. I also asked Gilardi to research databases and other publicly-available information that might provide rosters for NCAA teams. I asked Gilardi to consider how such information could be used to identify student-athletes in the event some member institutions provide alumni contact information that does not differentiate between athletes and non-athletes. Based on Gilardi's research, we believe that it may be possible to obtain additional student-athlete contact information using databases that contain NCAA rosters, though the cost of doing so would certainly be greater on a per-person basis than the cost of providing direct notice to members of the Settlement Class whose names and contact information are provided by member institutions. See Vasquez Decl. at ¶ 15.

16. The Parties have agreed to amend the Notice Plan to make clear that direct, mailed notice will be provided to all members of the Settlement Class for whom the Parties are able to obtain a name and last-known address from NCAA member institutions or other sources. The Parties will further specify in the amended Notice Plan the need for the issuance of subpoenas and propose appropriate allowances in terms of timing and deadlines.

I declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct.

EXECUTED on this 22 day of February, 2015, at Chicago, Illinois.

Johanna M. Spellman
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Liaison Counsel for Defendant NCAA