# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION | MDL NO. 2492<br>Case No. 13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge Brown |

### DECLARATION OF MEDIATOR WAYNE ANDERSEN
### IN SUPPORT OF PRELIMINARY APPROVAL OF AMENDED SETTLEMENT

I, WAYNE ANDERSEN, declare as follows:

1. I am the one of the mediators in this action and a former United States District Court Judge. I submit this declaration in support of preliminary approval of the proposed amended class action settlement between the proposed Plaintiff Class and the NCAA.

2. At the request of the parties, I conducted an extensive mediation over the course of several months that, when combined with the prior efforts of Judge Layn R. Phillips (Ret.), produced the initial settlement. Subsequently, I conducted additional negotiations between the parties, as well as facilitated the consensus reached by the Medical Science Committee, to produce the Amended Settlement Agreement. The talks were vigorous, at arm's length, and in good faith. Based on my extensive experience as a mediator and former judge, my frequent and detailed discussions with the parties, and the information made available to me during the mediations, I believe that the proposed amended settlement represents a fair and reasonable settlement given the substantial risks involved for both sides. Without waiver of the mediation privilege, I describe below the reasons for my view.

**Qualifications and Experience**

3. I am a mediator with JAMS based in the Chicago office. I am a former United States District Court Judge for the Northern District of Illinois.

4. I have successfully mediated complex commercial cases, including dozens of class actions. Before that, as a federal judge, I presided over hundreds of settlement conferences in complex business disputes and class actions, including many class actions. It is my understanding that I was nominated by the parties to mediate this important matter in part because of my experience resolving complex, high-visibility disputes of this kind.

**The Mediation Process**

5. The parties engaged in arm's-length, hard-fought negotiations. As is my practice, I conducted multiple face-to-face mediation sessions with both sides present, as well as many separate caucus sessions where I met only with one side or the other. I also engaged in follow-up work with all of the parties involved. I also oversaw meetings of the Medical Science Committee regarding implementation of the Medical Monitoring Program. In addition, counsel for the parties conducted extensive negotiations outside my presence pursuant to requests and directions that I gave to them.

6. Plaintiffs and the NCAA each were represented by highly experienced and effective counsel. I was satisfied throughout the negotiations that the parties' positions were thoroughly explored and advanced. These counsel presented an impressive array of legal experience, talent, and expertise.

7. In addition to highly experienced counsel, both Plaintiffs and the NCAA retained medical and economic experts to assist them in the settlement negotiations. The medical experts advised the parties on the multiplicity of medical issues related to concussion management and

medical monitoring. The parties each retained economic experts who modeled the sufficiency of the medical monitoring fund under a variety of assumptions. I met personally with the Medical Science Committee, as well as certain of the parties' experts during the mediations, to satisfy myself that the parties were being expertly advised and were considering the relevant issues. The Medical Science Committee also answered many of the questions I had about how the proposed settlement would operate, as well as any underlying considerations they had made and their analysis and conclusions. It was clear to me that the Medical Science Committee and the parties' experts were extremely well-versed in the medical literature and issues relevant to arriving at a fair settlement that would function efficiently over the course of the settlement period.

8. The proposed terms of the settlement changed substantially over the course of time. I worked constructively with counsel to offer possible compromises and solutions.

9. At all times, Plaintiffs' counsel zealously represented the proposed class and subclasses. They regularly and passionately expressed the need to protect the interests of the current and former NCAA athletes and fought hard for the greatest possible benefits in the context of a settlement that the NCAA could accept. It was evident throughout the mediation process that Plaintiffs' counsel were prepared to litigate and try this case, and face the risk of losing with no chance to recover for their labor or their expenses, if they were not able to achieve a fair and reasonable settlement result for the proposed class.

10. At the same time, Plaintiffs' counsel recognized the significant legal and factual hurdles Plaintiffs faced if they proceeded with the litigation. Most importantly, a litigation of this size and complexity can take many years to litigate. By resolving the litigation at this time, Plaintiffs' counsel, in part, sought to have return to play and concussion management rules

- 3 -

implemented as soon as possible to help prevent concussion-related injuries. Both parties strongly want medical monitoring to be available for athletes as soon as possible.

11. In addition, Plaintiffs faced several other hurdles on their medical monitoring claim. The first is that in many states there was a strong chance the Court would rule there is no claim available. Thus a settlement that provides medical monitoring in these states is a significant achievement. Second, many former athletes that were concussed many decades ago at a time when concussion science was far different will be entitled to relief.

12. Plaintiffs faced other legal hurdles as well, including, but not limited to, various statute of limitations arguments and the assertion of the "assumption of risk" defense based on the argument that the athletes knew at the time they played that their sport could be a dangerous activity and that the players assumed that risk when they chose to play.

13. Like Plaintiffs, the NCAA also faced great risks if it chose to litigate these cases. There was a significant risk that the Court would not accept the NCAA's other legal defenses of statute of limitations and assumption of risk. The NCAA also faced great risk and expenses including years of very expensive discovery and potentially hundreds of trials in state and federal courts around the country. Each potential lawsuit carried with it the risk of a significant damage verdict and a negative precedent that could affect all cases that followed.

14. In short, both sides faced substantial risks if they chose to litigate these matters and tremendous benefits if they could fairly resolve their differences.

**The Fairness and Adequacy of the Proposed Amended Settlement**

15. The negotiated amended settlement produced by the mediation process, as reflected in the parties' proposed amended settlement agreement, represents a thoughtful, deliberative, extraordinary and comprehensive settlement that will benefit thousands of NCAA

- 4 -

current and former athletes. If the settlement is approved, NCAA athletes immediately will be entitled to an innovative monitoring program and, depending on their diagnosis, certain supplemental additional tests. The benefits will be made available promptly after the Effective Date of the settlement and will remain available for 50 years. In addition the settlement will result in improvements at the NCAA school level in concussion management practices that should help reduce future injuries and mitigate their consequences.

16. It is my opinion that Plaintiffs would be unlikely to have obtained more money and benefits without going through years of discovery and trial because they would face substantial risks of loss due to the difficulty to prove negligence on the part of the NCAA. In addition, even after judgment, the parties likely would have been engaged in years of appellate proceedings before any judgment would be finalized and any monitoring program begun.

**The Adequacy of the Additional Proposed Class Representatives**

17. At the request of the Court and the parties, I also conducted interviews with the proposed class representatives who have been added to this lawsuit in order to evaluate the Settlement including Shauvaughne Desecki, Ryan Parks, Spencer Trautmann, Jessica Miller, Ursula Kunhardt, Brice Sheeder, Shelby Williams, Rachel Harada, Adam Walker, Anna Bartz, Natalie Harada, DaChe Williams, and Peter Dykstra ("Proposed Class Representatives"). Each of the Proposed Class Representatives is a current or former NCAA student-athlete who played baseball, softball, volleyball, golf, track and field, basketball, and/or soccer. Prior to our discussions, the Proposed Class Representatives were provided a copy of the Amended Settlement Agreement ("Settlement") to review and analyze from the perspective of current and former student-athletes. Plaintiffs' counsel also answered any and all questions the Proposed Class Representatives had about the Settlement.

18. The interviews were detailed, at arm's length, and in good faith.

19. During each individual phone call, I explored whether the Proposed Class Representative had reviewed and understood the Settlement. During each interview, the Proposed Class Representative was given the opportunity to ask, and did ask, questions about the Settlement. In addition, I explored whether they understood the scope (and limitations) of the benefits provided for in the Amended Settlement, as well as the Release.

20. I then solicited their opinions of the Amended Settlement and its provisions. During each discussion, we discussed their opinion of the Release (including the waiver to proceed on a class-wide basis with regard to personal injuries) and the prospective injunctive relief.

21. Based on my discussions with the Proposed Class Representatives, the Proposed Class Representatives have reviewed, understand, and enthusiastically support the proposed Amended Settlement. The Proposed Class Representatives unanimously concluded that it was not only fair but important for all student-athletes, regardless of which sport they participate in, to have access to the Medical Monitoring Program in the Amended Settlement.

22. Accordingly, it is my opinion that the Proposed Class Representatives thoughtfully reviewed and analyzed the Amended Settlement and understand the scope of the Amended Settlement, including the Release, as well as the differences in prospective injunctive relief for NCAA student athletes who play Contact Sports and non-Contact Sports. As reflected in my discussions with them, the Proposed Class Representatives fully support the Amended Settlement and the important benefits provided by the Amended Settlement that would not exist in the absence of this litigation. Moreover, each of the Proposed Class Representatives

understands the role of a class representative and expressed their desire to participate as a class representative.

    I declare that the foregoing is true and correct.

Executed this 10th day of April, 2015.

                                                        _____
                                                        WAYNE ANDERSEN