UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION | MDL NO. 2492<br><br>Master Docket No. 13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASS**

Plaintiffs Adrian Arrington, Derek Owens, Kyle Solomon, Angela Palacios, Abram Robert Wolf, Sean Sweeney, Jim O'Conner, Dan Ahern, Paul Morgan, Jeffrey Caldwell, John DuRocher, Sharron Washington, Shelby Williams, Brice Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, and Jessica Miller (collectively, the "Class Representatives"), on behalf of themselves and as representatives of the Settlement Class, through Class Counsel,[1] and the National Collegiate Athletic Association ("NCAA"), through its counsel, respectfully move for preliminary approval of the Settlement Agreement pursuant to Rules 23(b)(2) and 23(d)(1) or, alternatively, Rule 23(b)(3).[2] The Parties move for certification

---

[1] Capitalized terms have the same meaning as defined in the Amended Class Action Settlement Agreement and Release ("Am. SA"), attached as Exhibit 1 to the Motion for Preliminary Approval. "Class Counsel" means Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Joseph Siprut of Siprut PC as Lead Class Counsel ("Lead Counsel"), Richard Lewis of Hausfeld LLP as Special Class Counsel for Medical Monitoring Relief ("Special Class Counsel"), and Charles Zimmerman of Zimmerman Reed, James Dugan of the Dugan Law Firm, and Mark Zamora of The Orlando Law Firm as the Executive Committee. Am. SA, ¶ II(E).

[2] The Class Representatives and the NCAA are jointly referred to herein as the "Parties." Owing to their differing positions in the underlying litigation, Plaintiffs and the NCAA will be filing separate memoranda in support of this motion.

- 1 -

of the following Settlement Class pursuant to Rules 23(b)(2) and 23(d)(1), or alternatively Rule 23(b)(3):[3]

> All persons who played an NCAA-sanctioned sport at an NCAA member institution through the date of preliminary approval.[4]

As reflected in more detail in Plaintiffs' Memorandum in Support of Joint Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Plaintiffs' Mem."),[5] as well as the separate memorandum in support to be filed by the NCAA, each of the issues raised by the Court in its Memorandum Opinion and Order dated December 17, 2014 ("Order") has been addressed by the Parties in the presentation of this Amended Class Action Settlement Agreement and Release ("Amended Settlement"), including:

- A review of and support for the Amended Settlement by current and former student-athletes in both Contact Sports, including football, soccer, hockey, wrestling, and non-Contact Sports, including golf, track and field, cross country, softball, baseball, and volleyball;[6]

- An updated report from Plaintiffs' expert Bruce Deal, who calculated the anticipated participation rate in the Medical Monitoring Program based on the reported concussion data for both Contact and non-Contact Sports, as well as took into account updated cost analyses when analyzing the sufficiency of the Fund;[7]

- A Notice Plan for providing direct notice to the Settlement Class Members for which contact information is available, as well as publication notice;[8]

---

[3] As specified in the Amended Settlement, the NCAA does not object to certification of the Settlement Class solely for the purposes of settlement but expressly reserves the right to contest the suitability of class treatment of these or any other claims for contested litigation and/or trial.

[4] Am. SA, ¶ II(D).

[5] Preliminary approval of the Settlement is also supported by the Expert Report of Bruce Deal, the Expert Report of Dr. Cantu (Dkt. No. 69), the Report from the Garretson Resolution Group, the Report of the Proposed Medical Science Committee, and the Declarations of Steve W. Berman, Hon. Wayne Andersen, and Alan Vasquez.

[6] *See* Order at 11-12. *See also* Plaintiffs' Mem., Section II.A, *infra.*

[7] *See* Order at 11-12. *See also* Expert Report of Bruce Deal.

[8] *See* Order at 13-15. *See also* Plaintiffs' Mem., Section II.E, *infra*; Declaration of Alan Vasquez ("Vasquez Decl.").

- A requirement that, within six (6) months after the NCAA adopts legislation to implement the concussion-management and return-to-play guidelines, each NCAA member institution must certify in writing that it has adopted the requirements; any NCAA member institution that fails to submit written certification will not be considered a Released Person under the Settlement.[9]

- A Report from the Medical Science Committee, setting out the Screening Questionnaire, the cut scores to qualify for Medical Evaluations, a three-phased approach for analyzing the cut scores during the course of the Program, and the scope of the Medical Evaluations;[10]

- A specific procedure for Settlement Class Members to seek more than two Medical Evaluations, and a specific timeframe within which the Medical Science Committee must respond;[11]

- A report from the Garretson Resolution Group, the proposed Program Administrator, regarding the identification of the proposed thirty-three Program Locations, as well as additional information regarding the administration of the Program;[12]

- A provision that, at the discretion of the Medical Science Committee, any remainder of the original $70 million at the expiration of the 50-year Medical Monitoring Period, together with any accrued interest, shall be either used to extend the Program or donated to an institution(s) selected by the Medical Science Committee to be used for concussion-related research or treatment;[13]

- A provision that permits Settlement Class Members to pursue class or individual medical monitoring claims in the event that the Fund is depleted <u>before</u> the end of the Medical Monitoring Period;[14]

---

[9] *See* Order at 15-16. *See also* Am. SA, IX.C, D.

[10] *See* Order at 16-17. *See also* Plaintiffs' Mem., Section II.B.2, *infra*; Expert Report of Medical Science Committee.

[11] *See* Order at 17-18. *See also* Am. SA, IV.B.4.h.

[12] *See* Order at 18-19. *See also* Plaintiffs' Mem., Section II.B.2, *infra*; Report of Garretson Resolution Group; Am. SA, IV.B.5.a ("If a Qualifying Class Member lives more than one hundred (100) miles from the nearest Program Location, the Qualifying Class Member may: (i) receive reimbursement from the Medical Monitoring Fund for the cost of driving to the nearest Program Location based on the then-prevailing rate for mileage reimbursement…; or (ii) obtain a Medical Evaluation from the provider of his or her choice and be reimbursed from the Medical Monitoring Fund for the lesser of (1) the average cost of a Medical Evaluation within the Medical Monitoring Program… or (2) the Qualifying Class Member's actual out-of-pocket costs for the Medical Evaluation….").

[13] *See* Order at 19. *See also* Am. SA, IV.A.4.

[14] *See* Order at 20. *See also* Am. SA, IV.A.5.

- A recognition that this Court has the discretion to award fees to an attorney hired by a Settlement Class Member;[15] and

- The option for the Court to appoint a Special Master to oversee the implementation of the Settlement Agreement.[16]

The proposed Class and Class Representatives satisfy all of Rule 23(a)'s requirements: (i) the size of the proposed Class makes joinder impracticable; (ii) the proposed Class's members share common questions of law and fact; (iii) Plaintiffs' requests for medical monitoring relief and changes to the NCAA's concussion-management policies are typical of the relief needed by the proposed Class; and (iv) Plaintiffs and their counsel will vigorously protect the proposed Class's interests.

The Settlement Class also satisfies Rule 23(b)(2), which provides for class treatment where defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[17] Here, Plaintiffs' claims for medical monitoring relief and changes to the way the NCAA handles concussion management are based on NCAA conduct that is "generally applicable to the class."

The Settlement Agreement provides final relief to the entire Class and does not "require[] thousands of individual determinations of class membership, liability, and appropriate remedies."[18] Rather, the relief is purely for injunctive, non-monetary medical monitoring relief which expressly reserves the right of Class Members to pursue any and all claims other than

---

[15] *See* Order at 20-21. *See also* Am. SA, XII.C.1.q.

[16] *See* Order at 21. *See also* Am. SA, IV.A.3, VIII.

[17] FED. R. CIV. P. 23(b)(2); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011).

[18] *Cf.*, *Jamie S.*, 668 F.3d at 499.

010270-12 773886 V1

medical monitoring and accordingly should be certified under Rule 23(b)(2),[19] with Notice to the Class and the right for Settlement Class Members to exclude themselves pursuant to Rule 23(d)(1).

Thus, the Parties seek an order, pursuant to this Court's powers under Rule 23(d) "to protect class members and fairly conduct the action," to provide notice to the Class and the right to exclude themselves. By requesting a Rule 23(d) order, the Parties seek to provide Settlement Class Members the "safeguards … [which are] the functional equivalent of those offered by Rule 23(b)(3)."[20]

Alternatively, the Settlement Class also satisfies the requirements of Rule 23(b)(3), making certification appropriate. Core issues, and the underlying proof, are common for all Class Members. Addressing these core issues now by implementing a Medical Monitoring Program and changing the way the NCAA handles concussion management is far superior to individualized lawsuits. Accordingly, this Court could certify the Settlement Class under Rule 23(b)(3).

Next, this Court should find that the Settlement is within the range of possible approval, direct that Notice be provided to the Settlement Class,[21] and schedule a Fairness Hearing to determine whether the Settlement is fair, adequate, and reasonable. The Settlement is within the range of possible approval because: (1) the comprehensive Medical Monitoring Program for all

---

[19] MANUAL FOR COMPLEX LITIGATION § 22.74, at 427 (4th ed. 2004) (footnote omitted) (advising that "Rule 23(b)(2) generally applies" to a mass tort class for medical monitoring "when the relief sought is a court-supervised program for periodic medical examination and research to detect diseases attributable to the product in question.") ("MANUAL").

[20] *Williams v. Burlington N., Inc.*, 832 F.2d 100, 103-04 (7th Cir. 1987) (finding that the district court did not abuse its discretion in certifying a class for purposes of a settlement, which provided both monetary and equitable relief in an employment discrimination case, under Rule 23(b)(2), where the class members were provided notice and an opportunity to object to the settlement), *cited with approval in Lemon*, 216 F.3d at 582.

[21] *See* Vasquez Decl.

- 5 -

010270-12 773886 V1

living NCAA athletes under 50 states' laws and significant changes to the NCAA's concussion-management and return-to-play guidelines exceeds the relief that Plaintiffs could achieve after a win on the merits; (2) the likely complexity, length, and expense of continued litigation outweighs any benefits to the Settlement Class; (3) the Settlement Class Representatives support the Settlement; and (4) Lead Counsel has conducted full merits discovery and with the benefit of making a fully-informed assessment of the risks and benefits of continued litigation versus Settlement believes that the Settlement is in the best interests of the Settlement Class.

Accordingly, as more fully described in the memoranda filed by the Parties and supporting documents, the Parties respectfully request that the Court grant the Motion and enter an order: (i) conditionally certifying the Settlement Class; (ii) granting Preliminary Approval of the Amended Settlement; and (iii) directing that Notice be provided to the Class.

Date: April 14, 2015

Respectfully submitted,

By:   /s/ Steve W. Berman
      Steve W. Berman
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
206.623.7292
Fax: 206.623.0594

Elizabeth A. Fegan
*beth@hbsslaw.com*
Thomas E. Ahlering
*toma@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 W. Lake Street, Suite 400
Oak Park, IL 60301
708.628.4949
Fax: 708.628.4950

*Lead and Settlement Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on April 14, 2015, a true and correct copy of the foregoing was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

By: _/s/ Steve W. Berman_
      Steve W. Berman