# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | MDL No. 2492<br><br>Case No. 1:13-cv-09116<br><br>This Document Relates To:<br>All Cases<br><br>Judge John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

**If you played a National Collegiate Athletic Association ("NCAA")-sanctioned sport at an NCAA member school, you may be entitled to free medical screening and may receive free medical testing, known as "medical monitoring," up to two times over the next 50 years.**

**In addition, the NCAA and its schools have committed to follow certain concussion management and return-to-play guidelines.**

*The United States District Court for the Northern District of Illinois authorized this Notice. This is not a solicitation from a lawyer.*

On _____, 2015, the Court issued an Order preliminarily approving a Settlement that provides benefits for all persons who played a sport for an NCAA-sanctioned team.[1] The Settlement establishes a Medical Monitoring Program and Fund that provides eligible members of the Settlement Class with medical monitoring to screen, assess and diagnose effects from concussions or the cumulative effects of subconcussive hits. You may be entitled to receive the medical screening even **if you were not diagnosed with a concussion**.

The Settlement also requires the NCAA and its member institutions to implement concussion management and return-to-play guidelines, having trained medical personnel in attendance or available for contact sport play, and step-wise return to play guidelines for injured athletes and further requires the NCAA to contribute or cause to be contributed $5,000,000 to research the prevention, treatment, and/or effects of concussions.

If this Settlement receives final approval from the Court, all Settlement Class Members will have the opportunity to participate in, object to, or exclude themselves from the Settlement. All Settlement Class Members who decide to participate in the Settlement or who do nothing

---

[1] Definitions for capitalized terms in this Notice can be found in the Amended Settlement Agreement available at www.XXXXXX.com. To the extent any statement in this notice conflicts with the terms of the Amended Settlement Agreement, the terms of the Amended Settlement Agreement control.

will release the NCAA for all medical monitoring claims. All Settlement Class Members who decide to participate in the Settlement or who do nothing will preserve and have the right to bring any personal injury claims on an individual, non-class basis.

The Court still has to decide whether to grant final approval of the Settlement. The Medical Monitoring Program will only be provided if the Court finally approves the Settlement and any appeals are resolved.

Your legal rights are affected whether or not you act. These rights and options, **and the deadlines to exercise them**, are explained in this Class Notice. Please read it carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS MEDICAL MONITORING SETTLEMENT | |
|---|---|
| **PROVIDE YOUR CONTACT INFORMATION TO THE PROGRAM ADMINISTRATOR TO RECEIVE INFORMATION REGARDING THE FREE MEDICAL MONITORING PROGRAM** | If you think you might want to participate in the Medical Monitoring Program, you should send the Program Administrator your contact information to be sure you receive further notice. If you do not do so, however, you will still have the right to participate later. The commencement of the Medical Monitoring Period will be announced on the Settlement Website and inquiries regarding the Medical Monitoring Program can be directed to the Program Administrator at XXX-XXX-XXXX. |
| **COMMENT ON THE PROPOSED SETTLEMENT** | Write to the Court about why you do, or do not, like the Settlement. Your comments or objections must be in writing and postmarked no later than XXXXX, 2015. |
| **ATTEND THE FAIRNESS HEARING** | Ask to speak in Court about the fairness of the Settlement. You may not speak unless have asked to do so in writing before XXXXX, 2015. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | If you are a member of the Settlement Class but do not want to be bound by the proposed settlement, you must exclude yourself ("opt-out") from the Settlement Class. If you exclude yourself, you will get no benefits. To ask to be excluded, you mail a written request stating that you want to be excluded. (*See* Paragraph 24 of this Notice for further information about your right to exclude yourself from the Settlement Class.) |
| **DO NOTHING** | Participation in the Medical Monitoring Program is completely voluntary. Final approval by the Court of the Settlement simply means that those eligible Settlement Class Members who wish to participate will have the opportunity to do so. If you do nothing now, you will have the right to participate in the Medical Monitoring Program in the future. |

**Questions? Call the Program Administrator at [1-800-__-____]**

| BASIC INFORMATION |
|---|

**1.     What is this Notice and why should I read it?**

This Notice is to inform you of the settlement of a class action lawsuit titled *In re National Collegiate Athletic Association Student-Athlete Concussion Litigation*, Case No. 1:13-cv-09116, brought on behalf of current and former NCAA student-athletes and pending before Judge John Z. Lee of the United States District Court for the Northern District of Illinois.  You need not live in Illinois to get a benefit under the Settlement.  The Court has granted preliminary approval of the Settlement and has set a final hearing to take place on _____ at _____ in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois to determine if the Settlement is fair, reasonable and adequate, and to consider the request by Class Counsel for Attorneys' Fees and Expenses and Service Awards for the Class Representatives.  This Notice describes the Settlement.

Your rights and options – and the deadlines to exercise them – are explained in this Notice.  This Notice and the Amended Settlement Agreement in its entirety are posted on the Settlement Website, www.XXXX.com, and are also available from the Program Administrator.  Other documents available on the Settlement Website include the complaints filed in the Litigation and the papers that are or will be filed with the Court requesting preliminary and final approval of the Settlement described in this Notice.  If you are a Settlement Class Member, your legal rights are affected regardless of whether you act.

**2.     What is the Litigation about?**

Former student-athletes who played football and soccer at NCAA member schools filed class action lawsuits on behalf of themselves and current and former student-athletes against the NCAA.  They claimed that the NCAA was negligent and had breached its duty to protect all current and former student-athletes by failing to adopt appropriate rules regarding concussions and/or manage the risks from concussions.  The named plaintiffs sought medical monitoring for all current and former student-athletes, as well as changes to the NCAA's return-to-play guidelines for student-athletes who had suffered concussions or concussion symptoms.

The NCAA denied and continues to deny all allegations of liability and wrongdoing.  Nonetheless, the Parties to the Litigation have reached a preliminary Settlement.

The Settlement has already been preliminarily approved by the Court.  Because the settlement of a class action determines the rights of all members of the proposed class, the Court must give final approval to the Settlement <u>before</u> the Settlement can take effect.

The Court has conditionally certified the Settlement Class for settlement purposes only, so that members of the Settlement Class can be given this notice and the opportunity to exclude themselves from the Settlement Class, voice their support or opposition to final approval of the Settlement, and explain how those who do not exclude themselves from the Settlement Class may obtain the relief offered by the Settlement.  If the Settlement is not granted final approval by the Court or the Parties terminate it, the Settlement will be void and the Litigation will continue as if there had been no Settlement and no certification of the Settlement Class.

**3.     Does this Notice pertain to me? What if I was never diagnosed with a concussion?**

This Notice pertains to you if you are or were an NCAA student athlete:

**Questions?  Call the Program Administrator at [1-800-__-____]**

- You are a member of the Settlement Class if you played an NCAA-sanctioned sport at an NCAA school at any time prior to [insert date of preliminary approval].

- You do **not** need to have been diagnosed with a concussion to be a member of the Medical Monitoring Class.

If you have any questions about whether you are a member of the Medical Monitoring Class, please contact the Program Administrator at XXXX@XXXX.com or XXX-XXX-XXXX.

**4.     What is a class action?**

In a class action, one or more people called "Class Representatives" sue on behalf of a group of people with similar claims.  All of these people together are called the "Class" or "Settlement Class Members." When a class action is settled, one court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the settlement. Excluding yourself means that you will not receive any benefits from the Settlement.  The process for excluding yourself is described in Paragraph 24 of this Notice.

**5.     Why is there a settlement?**

Although the Court has not yet resolved the merits of the lawsuit, or determined whether the Class Representatives' or the NCAA's contentions are true, the Parties have agreed to settle the Litigation.  The NCAA denies all allegations of wrongdoing and liability and believes that its conduct was lawful.  The NCAA, however, is settling to avoid the substantial cost, inconvenience and disruption of litigation.  The Class Representatives and their attorneys believe that the Settlement is in the best interests of the Settlement Class because it provides an appropriate remedy for Settlement Class Members now, while avoiding the substantial risk, expense and delay of pursuing the case through trial and any appeals.

### BACKGROUND ON CONCUSSIONS AND SUBCONCUSSIVE HITS

**6.     What is a concussion?**

Concussion or mild traumatic brain injury (mTBI) has been defined as "a complex pathophysiological process affecting the brain, induced by traumatic biomechanical forces." Although concussions most commonly occur after a direct blow to the head, they can occur after a blow elsewhere in the body that transmits forces to the head. Sometimes, athletes refer to hits that result in concussions as getting "dinged" or having their "bell rung."

According to the experts retained by Class Counsel and the Class Representatives, when a concussion occurs, there is a traumatically induced alteration of brain function that may include a rapid onset of cognitive impairment (e.g., impairment to the mental processes of perception, learning, memory, judgment, and reasoning).  Most times, the short-term effects of the concussion spontaneously resolve.

Other concussion symptoms include: amnesia, confusion, nausea, loss of consciousness, balance problems or dizziness, double or fuzzy vision, sensitivity to light or noise, headache, feeling sluggish, foggy or groggy, feeling unusually irritable, concentration or memory problems, or slowed reaction time.

**Questions?  Call the Program Administrator at [1-800-__-____]**

4

You may have suffered a concussion if you experienced any of these symptoms while playing an NCAA sport, even if you were not formally diagnosed with a concussion. You do **not** need to have lost consciousness to have suffered a concussion.

**7.     What is a subconcussive hit?**

Subconcussive hits, or impacts, do not produce any clinical concussion symptoms, but may adversely affect brain function in the same way symptomatic concussions do. Some published data reflecting high school and college football players who did not exhibit clinical signs of concussion and did not report symptoms of concussion but nonetheless had physiological and structural changes to the brain suggest the possibility that subconcussive hits can lead to changes in the brain that are similar to those observed in concussed players.

**8.     Do concussions only occur in football?**

Many people associate concussion with football. However, concussions can occur in any sport, including most often in a range of contact sports, including but not limited to men's and women's soccer, ice hockey, basketball, field hockey, lacrosse and wrestling.

**9.     What is post-concussion syndrome?**

Although the symptoms of most concussions go away after a relatively short period of time, especially if the individual receives adequate rest (both physical and cognitive), some concussions in some people result in symptoms that may last for months or even longer. This long-term persistence of concussion symptoms is referred to as Post-Concussion Syndrome or PCS. PCS symptoms can include headaches, fatigue, memory problems, feeling in a fog, depression, impulsivity, and other physical, cognitive, mood, and behavioral problems. There may be treatments that can alleviate some or all of these symptoms and in almost all cases they resolve eventually.

**10.    What is Chronic Traumatic Encephalopathy (CTE)?**

Repetitive impacts to the head from participation in sports can lead to a later-life, progressive neurodegenerative disease called Chronic Traumatic Encephalopathy (CTE), which may manifest in cognitive, mood, behavioral, and motor disorders. The Parties in this Litigation and their experts disagree regarding the nature, extent and causes of CTE. The Class Representatives and their experts, however, believe that concussive and sub-concussive hits play a significant role in most if not all cases of CTE. In light of a limited understanding of CTE, CTE is thought to be a unique disease, similar to Alzheimer's disease, which has been referred to as "punch drunk" or dementia pugilistica when it is seen in boxers. It appears that the process may begin earlier in life and, once enough brain tissue is affected by the disease, symptoms become apparent. It is thought that in some cases there may be a delay of years or even decades between the end of the repetitive head impacts (i.e., the end of playing the contact sport) and the beginning of the symptoms.

CTE can present with recent memory loss and other cognitive impairments similar to those experienced by people with Alzheimer's disease. People with CTE can also have changes in behavior (e.g., impulsivity, rage, aggression, having a short fuse) and mood (e.g., depression, hopelessness, feeling suicidal). Less commonly there can be movement disorders such as parkinsonism (e.g., tremor, difficulty walking or speaking, stiffness). Some people with CTE may first have behavior or mood problems. Others may first have cognitive difficulties, with the

**Questions?   Call the Program Administrator at [1-800-__-____]**

changes in mood and behavior later. In some people, the symptoms of the disease progress to the point where there is difficulty in daily functioning, requiring assistance or being unable to live alone. In these cases, CTE may be clinically mistaken for Alzheimer's disease or dementia. In other cases, CTE may be mistakenly diagnosed as Amyotrophic Lateral Sclerosis (ALS) or "Lou Gehrig's Disease."

**11.** **What symptoms may signal that I should participate in the Medical Monitoring Program?**

Any current athlete should speak to their team physician, private physician, and/or athletic trainer immediately if they experience any of the following symptoms after receiving a blow to head (or the body that may have jolted the head suddenly). If you continue to experience any of the following symptoms, you may also decide to complete a Screening Questionnaire to determine whether you qualify for a Medical Evaluation in the Medical Monitoring Program.

These symptoms include but may not be limited to: balance issues, confusion, difficulty concentrating, difficulty remembering, dizziness, don't feel right, drowsiness/fatigue/low energy, feeling in a fog, feeling more emotional, feeling slowed down, headache/head pressure, irritability, loss of consciousness, nausea/vomiting, neck pain, nervous/anxious, numbness/tingling, ringing in the ears, sadness, sensitivity to light, sensitivity to noise, sleeping less than usual, sleeping more than usual, trouble falling asleep, visual problems/blurred vision. These symptoms may not occur immediately following the trauma, but may begin to be noticeable the following day or two. If you are a current student-athlete, the decision regarding when you may return to play will be determined by the team physician and medical team. It is important to remember that the symptoms listed above could also be due to causes other than concussion. It is important to inform your medical staff if the symptoms exist and they can help determine whether or not they may be related to concussion.

A former athlete should speak to their personal physician or other appropriate health care provider if they experience a new onset of any of the following symptoms: poor memory for recent events; difficulty learning new information; problems with organization, planning, judgment, or multi-tasking; difficulties with speech, gait, or strength; language or spatial difficulties; problems with attention, concentration, or orientation; mood changes, including depression, hopelessness, or thoughts of suicide; or changes in behavior, including having a "short fuse," irritability, rage, aggression, or problems with impulse control.

If you have any of these symptoms, you may also decide to complete an online or paper-and-pencil Screening Questionnaire to determine whether you qualify for an in-person Medical Evaluation as part of the Medical Monitoring Program.

**THE MEDICAL MONITORING PROGRAM**

**12.** **What Is The Medical Monitoring Program?**

The Medical Monitoring Program will screen Settlement Class Members and provide Qualifying Class Members with a Medical Evaluation designed to assess symptoms related to persistent post-concussion syndrome, as well as cognitive, mood, behavioral, and motor problems that may be associated with mid- to late-life onset diseases resulting from concussions

**Questions? Call the Program Administrator at [1-800-__-____]**

6

and/or subconcussive hits, such as Chronic Traumatic Encephalopathy and related disorders. The Medical Monitoring Program will last 50 years from the Settlement's Effective Date.

Settlement Class Members who wish to participate in the Medical Monitoring Program must complete a Screening Questionnaire prepared by a Court-appointed Medical Science Committee to determine whether they qualify for an in-person Medical Evaluation.

Settlement Class Members may complete a Screening Questionnaire online or download a Screening Questionnaire by going to www.XXXXX.com and following the instructions provided on the website. Settlement Class Members can also obtain a Settlement Questionnaire by writing to the Program Administrator at _____.

A Settlement Class Member may complete a Screening Questionnaire not more than once every five (5) years until the age of 50 and then not more than once every two (2) years after the age of 50, unless otherwise permitted on a case-by-case basis by the Medical Science Committee.

If you are a member of the Settlement Class and the Settlement becomes Final, you should complete a Screening Questionnaire if you wish to qualify for a Medical Evaluation or are concerned that you may be at risk for long-term effects from any concussions or the accumulation of subconcussive hits you experienced while playing in NCAA-sanctioned sports at member institutions.

The Program Administrator will notify Settlement Class Members whether they qualify for a Medical Evaluation based on the responses to the Screening Questionnaire, and explain how to arrange for a Medical Evaluation if they qualify. Eligibility for a Medical Evaluation will be determined through a scoring algorithm and "cut scores" established by the Medical Science Committee. More information regarding the scoring of Screening Questionnaires is available in the Medical Science Committee's Report posted on the Settlement Website.

A Settlement Class Member may qualify for up to two (2) Medical Evaluations during the Medical Monitoring Period, and a third Medical Evaluation may be permitted on a case-by-case basis by the Medical Science Committee. The Medical Evaluations will be administered at numerous regional locations across the United States. If you qualify for a Medical Evaluation but live more than one hundred (100) miles from the nearest location, you have the option to be reimbursed based on the then-prevailing rate for reimbursement of mileage to travel to a designated regional institution or the average cost of the examination in the Medical Monitoring Program if done locally.

The NCAA and its insurers will pay $70 million into the Medical Monitoring Fund to pay the costs of the Medical Monitoring Program, as well other costs including payments to the Medical Science Committee, Notice costs, administrative costs, Attorneys' Fees and Expenses, and Class Representative Service Awards.

13. **What are the responsibilities of the Medical Science Committee?**

The Parties have agreed to create a Medical Science Committee to determine the scope of the Medical Evaluations provided under the Medical Monitoring Program. The Medical Science Committee has also created the Screening Questionnaire and Screening Criteria used to determine if a Settlement Class Member qualifies for a Medical Evaluation. The Medical Science Committee's initial recommendations regarding the scope of Medical Evaluations, the

**Questions? Call the Program Administrator at [1-800-__-____]**

7

Screening Questionnaire, and Screening Criteria are contained within the Expert Report of the Medical Science Committee, Exhibit __ to the Renewed Motion for Preliminary Approval, and is available on the Settlement Website.  The Medical Science Committee is composed of four (4) medical experts with expertise in the diagnosis, care and management of concussions in sport and mid- to late-life neurodegenerative disease, and a neutral Chair of the Medical Science Committee.  The current members of the Medical Science Committee are Dr. Brian Hainline, Dr. Robert Cantu, Dr. Ruben Echemendia and Dr. Robert Stern, as well as the Honorable Wayne R. Andersen (Ret.) as Chair.

**14.     What is the scope of the Medical Evaluation if I qualify after completing the Screening Questionnaire?**

The scope of the Medical Evaluation for Qualifying Class Members will be determined by the Medical Science Committee.  The Medical Science Committee's initial recommendations are contained within the Report of the Medical Science Committee, Exhibit __ to the Renewed Motion for Preliminary Approval, and are available on the Settlement Website.  The Medical Science Committee will update the scope of the Medical Evaluations annually to ensure that the examinations meet the current standard of care for assessment of and diagnoses related to persistent post-concusssion syndrome, Chronic Traumatic Encephalopathy and related disorders.  The results of the Medical Evaluation will be evaluated by a physician skilled in the diagnosis, treatment and management of concussions, persistent post-concussion syndrome, and mid- to late- life cognitive, mood, behavior, or motor disorders associated with concussive and subconcussive head impacts. The physician will send the results and/or diagnosis to the Qualifying Class Member or the Qualifying Class Member's physician at the direction of the Qualifying Class Member.

**The results of the Medical Evaluations will not be shared with the NCAA or anyone else without your express, written consent.**

**15.     When will the Medical Monitoring Program begin?**

Settlement Class Members may complete Screening Questionnaires after the Settlement is approved by the Court and after the time for any appeals has expired or any appeals have been dismissed.  Medical Evaluations may take place at any time during the Medical Monitoring Period after Settlement Class Members have been notified that they qualify.

**16.     If I qualify, do I need to pay for a Medical Evaluation?**

Settlement Class Members who qualify for the Medical Evaluation will not have to pay out-of-pocket for any of the costs of a Medical Evaluation.  The Program Administrator may seek subrogation or reimbursement from your health insurance for the Medical Evaluation, as long as it does not prejudice your ability to qualify for at least one more wellness examination under your health insurance plan in the two (2) year period following your Medical Evaluation.  In no event, however, will you be responsible for making a claim on your insurance policy to receive or qualify for the benefits of the Settlement, nor will you be responsible for any co-pays or deductibles associated with any Medical Evaluation received pursuant to the Settlement.

**Questions?   Call the Program Administrator at [1-800-__-____]**

8

## CONCUSSION MANAGEMENT PROTOCOLS

The Parties have agreed that the NCAA and/or its member institutions will implement certain concussion education and concussion management protocols.

**17. What changes to its concussion management policies has the NCAA agreed to make?**

Subject to the NCAA rulemaking process, the NCAA and/or its member institutions will implement the following policies:

- Baseline Testing: Every student-athlete will undergo pre-season baseline testing for each sport in which they participate prior to participating in practice or competition.

- No Same Day Return to Play: A student-athlete who has been diagnosed with a concussion will be prohibited from returning to play or participating in any practice or game on that same day and must be cleared by a physician before being permitted to return to play in practice or competition.

- Medical Personnel at Contact Sports[2] Games and Available for Practices: NCAA member schools will be required to have medical personnel with training in the diagnosis, treatment and management of concussions present at Contact Sports games and available during Contact Sports practices.

- Reporting Process: The NCAA will create a reporting process through which member schools will report diagnosed concussions in student-athletes and their resolution, as well as a reporting mechanism through which anyone can report concerns about concussion management issues to the NCAA.

- Education: The NCAA will also provide member institutions with educational materials for faculty regarding academic accommodations for student-athletes with concussions, and will require that member schools provide NCAA-approved concussion education and training to student-athletes, coaches and athletic trainers before each season.

## CONCUSSION RESEARCH

**18. What type of research is supported by the Settlement?**

The NCAA has agreed to contribute or cause to be contributed $5,000,000, over a period not to exceed 10 years, to research the prevention, treatment, and/or effects of concussions.

---

[2] "Contact Sports" are football, lacrosse, wrestling, ice hockey, field hockey, soccer, and basketball.

**Questions? Call the Program Administrator at [1-800-__-____]**

9

| RELEASED CLAIMS |
|---|

**19.     What claims will be released against the NCAA?**

Unless you exclude yourself from the Settlement, you cannot sue the NCAA (or its member institutions that certify their implementation of the agreed Concussion Management Protocols) for medical monitoring related to concussions or subconcussive hits.  In addition, unless you exclude yourself from the Settlement, you cannot file a class action lawsuit against the NCAA or its member institutions relating to concussions or subconcussive hits or their effects.

If you do not exclude yourself from the Settlement, you will still have the right to file a personal injury lawsuit against the NCAA, but you will be required to do so on an individual, non-class basis.

Section XV of the Amended Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves from the Settlement, so please read it carefully.  The Amended Settlement Agreement is available at www.XXXXX.com.

| CLASS REPRESENTATIVES AND CLASS COUNSEL |
|---|

**20.     Who represents the Settlement Class?**

For purposes of the Settlement, the Court has appointed Adrian Arrington, Derek Owens, Kyle Solomon, Angelica Palacios, Abram Robert Wolf, Sean Sweeney, Jim O'Connor, Dan Ahern, Paul Morgan, Jeffrey Caldwell, John Durocher, Sharon Washington, Shelby Williams, Brice Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, Jessica Miller, Anna Bartz, Peter Dykstra, DaChe Williams, Rachel Harada, Natalie Harada and Adam Walker to serve as the Class Representatives.

For purposes of the Settlement, the Court has appointed Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Joseph Siprut of Siprut P.C. as Lead Counsel to represent the Settlement Class Members. Lead Counsel can be contacted at the following addresses:

> Steve W. Berman, Esq.  
> HAGENS BERMAN SOBOL SHAPIRO LLP  
> 1918 Eighth Avenue, Suite 3300  
> Seattle, Washington  98101
>
> Joseph J. Siprut, Esq.  
> SIPRUT PC  
> 17 North State Street Suite 1600  
> Chicago, Illinois  60602

If you want to be represented by your own lawyer, you may hire one at your own expense.

**21.     How will Class Counsel and the Class Representatives be paid?**

To date, Class Counsel has not been paid any attorneys' fees.  Class Counsel will ask the Court for an award of attorneys' fees and reimbursement of actual out-of-pocket expenses.  The NCAA has agreed not to oppose or object to the request for attorneys' fees and expenses if the request does not exceed $15,000,000 in attorneys' fees and $750,000 in out-of-pocket expenses.

**Questions?  Call the Program Administrator at [1-800-__-____]**

Class Counsel will also ask the Court to approve Service Awards of $5,000 for each Class Representative deposed in the Litigation, and $2,500 for each Class Representative who was not deposed in the Litigation. The payment for the Attorneys' Fees and Expenses and the Service Awards will come from the Medical Monitoring Fund. Any Attorneys' Fees and Expenses and Service Awards will be awarded only as approved by the Court in amounts to be determined to be fair and reasonable.

Class Counsel's petition for fees and costs and the justifications supporting the request will be available at www.XXXXX.com after they are filed with the Court.

### YOUR OPTIONS DURING THE SETTLEMENT APPROVAL PROCESS

**22. How do I support the Settlement?**

If the Court finally approves the Settlement, you will automatically become eligible to receive the benefits described above. If you wish to comment in favor of the proposed Settlement, you may mail your comment to the Program Administrator at _____, who will forward your comments to Class Counsel, the NCAA and the Court. Alternatively, you may send your comments directly to Class Counsel.

**23. How do I object to the Settlement?**

If you do not exclude yourself from the Settlement Class, you may object to the Settlement or the award of Attorneys' Fees and Costs. The Court will consider your views. To object, you or your attorney must submit your written objection to the Court. The objection must include the following:

- The name of the case and multi-district litigation, *In re National Collegiate Athletic Association Student-Athlete Concussion Litigation*, Case No. 1:13-cv-09116;

- Your name, address, telephone number, and, if you are represented by counsel, the name, address and telephone number of your counsel;

- The name of the NCAA member school(s) at which you participated in NCAA-sponsored sport(s), the NCAA-sponsored sport(s) in which you participated and the years during which you participated;

- A written statement of your objections, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection;

- A statement of whether you intend to appear at the Fairness Hearing; and

- If you intend to appear at the Fairness Hearing through counsel, the identity of the attorney(s) representing you who will appear at the Fairness Hearing.

You must send via U.S. Mail copies of the objection to each of the following addresses, postmarked no later than XXXXXX:

Clerk of Court          Steve W. Berman, Esq.          Mark S. Mester, Esq.

**Questions?  Call the Program Administrator at [1-800-__-____]**

| | | |
|---|---|---|
| United States District Court for the Northern District of Illinois 219 South Dearborn Street Chicago, IL 60604 | HAGENS BERMAN SOBOL SHAPIRO LLP 1918 Eighth Avenue Suite 3300 Seattle, Washington 98101 | LATHAM & WATKINS LLP 330 North Wabash Avenue Suite 2800 Chicago, Illinois 60611 |
| | *Settlement Class Counsel* | *Counsel for the NCAA* |

The requirements to object to the Settlement are described in detail in the Amended Settlement Agreement in Section XIII(C).

**24.  How do I ask the Court to exclude me from the Settlement?**

To exclude yourself from the Settlement (or "opt out" of the Settlement), you must mail a letter or other written document to the Notice Administrator. Your request for exclusion must include:

- Your name, address, and telephone number;

- The name of the NCAA member school(s) at which you participated in NCAA-sponsored sport(s), the NCAA-sponsored sport(s) in which you participated and the years during which you participated;

- A statement that "I wish to exclude myself from the Settlement Class in *In re National Collegiate Athletic Association Student-Athlete Concussion Litigation*, Case No. 1:13-cv-09116" (or substantially similar clear and unambiguous language); and,

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if you are represented by an attorney).

You must mail your exclusion request, postmarked no later than _____, to:

**[Notice Administrator Address]**

Further, if you are a current NCAA student-athlete on or after twelve (12) months after the Effective Date and your school fails to put in place a concussion management plan within six months of legislation by the NCAA requiring schools to adopt such a plan, you will have a second opportunity to opt-out so long as you do so within 18 months of the Effective Date. You must mail your exclusion request, postmarked no later than _____, 2016, in the form and manner described above. Please see www._____.com for more information.

Exclusions, or opt-outs, shall be allowed on an individual basis only, and "mass" or "class" opt-outs are not allowed. If you do not timely submit an exclusion request including all of the above information, you will be bound by the Settlement and all of your claims for any of the Released Claims will be released. If you validly and timely request exclusion from the Settlement Class, you will not be bound by the Final Order and Judgment entered in this Litigation. Excluding yourself means you cannot receive any of the Settlement benefits or comment upon the Settlement, but you will be able to file a lawsuit on your own behalf.

**Questions?  Call the Program Administrator at [1-800-__-____]**

If you opt out of the Settlement but you later complete a Screening Questionnaire and confirm in writing that you intend to rescind your request for exclusion, you will be treated as a member of the Settlement Class on a going-forward basis.

If you have any questions concerning these procedures, please contact the Program Administrator or Class Counsel.

**25. What happens if I do nothing at all?**

If you are a member of the Settlement Class and you do nothing, you will be bound by the terms of the Settlement. You may voluntarily participate in the Medical Monitoring Program at any time during the Medical Monitoring Period. You may complete Screening Questionnaires and may qualify for up to two (2) Medical Evaluations, subject to the limits and exceptions discussed in Paragraph 12 above. You will release your right to sue the NCAA for medical monitoring in the future, but the Settlement reserves your right to pursue any individual personal injury claims you may have on a non-class basis.

You may contact your college or university to obtain copies of your medical and training records.

**FAIRNESS HEARING**

The Court will hold a hearing to decide whether to finally approve the Settlement. You may attend and you may ask to speak, but you do not have to. The Court will determine if you are allowed to speak if you request to do so.

**26. When is the Fairness Hearing?**

A hearing will be held before Judge John Z. Lee on _____, 2015 at _____ (a.m./p.m.) at the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois. At the hearing, the Court will hear evidence about whether the proposed Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. If the Court approves the Settlement, it will decide whether to approve the Attorneys' Fees and Expenses and Service Awards. The time, date and location of the Fairness Hearing may be changed by the Court without further notice to you. If you plan to attend the hearing, you should confirm its time, date and location. Any updates or changes on the time, date or location of this hearing will be posted on the Settlement Website, www.XXXXXXX.com.

**27. Do I have to attend the Fairness Hearing?**

You do not have to attend the Fairness Hearing to remain a Settlement Class Member or to file an objection to or comment on the Settlement. Class Counsel will respond to any questions the Court may have. You or your own counsel, however, may attend the Fairness Hearing at your own expense. If you timely submit a written objection, you do not have to attend the Fairness Hearing to discuss it. As long as you mailed your written objection on time, following the instructions in Paragraph 23 of this Notice, the Court will consider it.

**Questions? Call the Program Administrator at [1-800-\_\_-\_\_\_\_]**

You may ask the Court for permission to speak at the Fairness Hearing only if you have submitted your objection as provided in Paragraph 23 of this Notice and have stated in your objection letter that you wish to be heard at the Fairness Hearing.

**28. How can I get more information?**

This Notice summarizes the proposed Settlement. More details are in the Amended Settlement Agreement. You may obtain a copy of the Amended Settlement Agreement by visiting www.XXXXX.com, or writing:

[PROGRAM ADMINISTRATOR]

The Amended Settlement Agreement is also on file with the Clerk of the Court for the Northern District of Illinois (*see* Paragraph 26 for the address).

**Please do not contact the Clerk of the Court or the Judge regarding this Notice. Instead, please direct any inquiries to any of the Class Counsel listed above.**

**Questions? Call the Program Administrator at [1-800-__-____]**

14