UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION STUDENT – ATHLETE
CONCUSSION INJURY LITIGATION, ET AL

*Plaintiffs,*

V.

Case No.: 1:13-cv-09116
Honorable John Z. Lee

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION

*Defendant.*

**PLAINTIFF JULIUS WHITTIER'S RESPONSE TO THE JOINT MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASS**

COMES NOW, Plaintiff, Julius Whittier, and files this his Response to the Joint Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class and in support thereof, would show the Court as follows:

The Class Plaintiffs and the Defendant (hereinafter referred to as ("Parties") in the Joint Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class move for preliminary approval of the Settlement Agreement pursuant to FRCP 23(b)(2) and 23(d)(1) or alternatively, Rule 23(b)(3). As the Court is aware by Plaintiff Whittier's Objection to Preliminary Approval of Settlement Agreement and Plaintiff Whittier's Memorandum in Support of Plaintiff Nichol's Renewed Motion to Appoint Jay Edelson As Lead Class Counsel for the Personal Injury Class (Doc. No. 146), Whittier has challenged the Parties Joint Motion for Preliminary Approval under FRCP 23(a) and for the reason that the interim class

1

counsel failed to adequately represent the putative personal injury class members in the Settlement Agreement.

### RULE 23(C)(5) DUE PROCESS

Plaintiff Whittier would submit that in order to protect the due process rights of the personal injury class members, the Court should consider FRCP 23(c)(5) in its evaluation of the Joint Motion for Preliminary Approval of the Settlement Agreement and Settlement Class. Rule 23(c)(5) states that: "When appropriate, a class may be divided into sub-classes that are each treated as a class under this Rule."

As the Court knows, the Plaintiff's class action suit is a single-action litigation of multiple claims in a representative class.[1] The class action serves four purposes, supports judicial economy, provides forum for redress of small claims too expensive to pursue individually, and cuts costs for both Plaintiffs and Defendants. Rule 23(a) is entitled, "Prerequisites To A Class Action, and the Parties' reliance on Rule 23(b), presumes that the requisites of Rule 23(a): commonality, typicality and numerosity have been met by the class.

However, the fact that the Rule 23(a) prerequisites are satisfied does not mean that the class should be certified as a class action.[2] Rule 23 only sets the baseline qualifications and it imposes additional conditions for the class to be

---

[1] College of William and Mary Law School, William and Mary Law School Scholarship Repository, Dotson/Scott, "sub-classes (2006), Faculty Publication, p. 724.
[2] Id. at p. 2357, Advisory Committee Note to 1966 Amendments (stating that Rule 23(a)'s prerequisites are "necessary but not sufficient conditions for a class action."

2

"maintained" as a class action to insure that the class action is the best method for resolving the disputes.[3]

## CLASS ACTION SUPERIOR TO SEPARATE LITIGATION OF PERSONAL INJURY CASES

Class action is a necessary joinder device to prevent the injustices that would result from separate litigation. In the Joint Motion for Preliminary Approval of the Settlement Agreement, the Parties have moved for preliminary approval of the Settlement Agreement in the alternative under Rule 23(b)(3). Rule 23(b)(3) is a catchall, discretionary aggregation device for cases that do not inherently lend themselves to class treatment, but nevertheless may be adjudicated on a class basis if efficiency is furthered and adequate representation is secured.[4] Rule 23(b)(3) allows for certification when "the Court finds that the questions of law or fact common to members of the class predominate over any questions effecting only individual members, and that a class action is "superior" to other available methods for the fair and efficient adjudication of the controversy.[5] That common questions predominate, however, is not itself sufficient to justify a class action under Rule 23(b)(3), since another method of handling the litigious situation may be available which has greater practical advantages.[6]

One common application of this "superiority analysis" is in negative value claims which are too low value for most claimants to litigate separately given the

---

[3] Id. at 2357, See Rule 23(b).
[4] Id. at 2358, See Rule 23(b)(3) Advisory Committee's Notes to 1966 Amendment ("stating that Rule 23(b)(3) encompasses those cases in which a class action would achieve economies of time effort and expense and promote uniformity of decision as to persons similarly situated with sacrificing procedural fairness or brining about other undesirable results").
[5] Id. at 2358.
[6] Id. at 2359.

3

costs of the litigation but which are viable in the class mechanism, which spreads and economizes the costs.[7] The claims of Plaintiff Whittier and other former NCAA athletes who are in the age range from 45 to 65, who are suffering from advanced symptoms of PCS such as early onset Alzheimer's or negative value claims which would benefit from a Court applying the "superiority analysis."[8] The benefit for Plaintiffs of a large class means less pro rata costs to each individual, a higher award upon a successful judgment, and increased pressure on the Defendant to settle. It has been held that Rule 23(c) provides a mean for the Court to save otherwise uncertifiable class actions.[9] Under subsection (c)(5), it has been argued that one role of sub-classing is that sub classing could help the global class meet the certification requirements.[10] For example, the global class that by itself would fail the adequacy of representation requirement of Rule 23(a) because of divergent interests among class members, may be able to meet that requirement through subclasses. Plaintiffs Whittier and Nichols have complained to the Court about the inadequacy of interim class counsel arising from the same consideration, divergent interests among class members, as expressed by class counsel's agreement to waive the class claims of class members suffering from personal injuries. It is then logical that, "by isolating divergent interests and separate subclasses with separate

---

[7] Id. at 2359.
[8] Id. at 2359.
[9] Id. at 2362; Central CNT Westland Coll. V. W.R. Grace & Co., 6F 3d, 177, 190 (4th Cir. 1993).
[10] Id. at 2362.

4

representatives, the subclasses resolve the global classes adequacy problems, including adequacy of counsel, and both can be certified under Rule 23."[11]

## THE SUPREME COURT ENDORSES USE OF SUBCLASSES

The use of subclasses was addressed by the Supreme Court in the case of *Amchem Products, Inc. v. Windsor*.[12] The Court noted that settlement is relevant to a class certification and the Court continued, "class requirements designed to ensure adequacy of representation 'demand undiluted, even heightened,' attention in the settlement context."[13] In discussing the adequacy of representation deficiency, the Court in *Amchem*, alluded to the lack of sub-classes.

The case of *Ortiz v. Fibre Board Corp.*[14] is another case in which the Supreme Court addressed the issue of subclasses in the context of certifying a mandatory settlement class on a limited fund under Rule 23(b)(1)(B). The Court held that Plaintiffs must show that the fund is limited by factors other than settlement and that allocation of settlement funds has addressed "any internal class conflicts."[15] The Court noted that the class in that case failed to include several types of claimants, and that to be maintained as a limited fund under Rule 23 (b)(1)(B), <u>the District Court should have provided a structural protection of Rule 23(c)(4)</u>[16]

---

[11] Id. at 2363, 2365.
[12] 521 U.S. 591 (1997)
[13] Id. at 626, 627 "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that commits a Court to approve a settlement without creating subclasses on the basis of consent by members of a unitary class, some of whom happen to be members of the distinct subgroups." (quoting in Re Joint E. & S. Dist. Asbestos Lit., 982 Fed. 2d, 721, 742-43 (Sec. Cir. 1992).
[14] 527 U.S. 815 (1999).
[15] Id. at 821 ("We hold that applicants for contested certification on this rationale that the fund is limited by more than the agreement of the parties and has been allocated to claimants belonging within the class by a process addressing any conflicting interest of class members."
[16] Amended 2007 to Rule 23(c)(4) and Rule 23(c)(5).

5

4818-6974-7235.v1

structural protections of Rule 23(c)(4) (now 23(c)(5) subclasses to maintain equity to all Plaintiffs.[17]

*Ortiz* contains several allusions to subclasses and their role, and it stands for the principal that subclasses may be necessary to certify a global class.[18] The Rules of Civil Procedure do not give any explicit guidance as to when it is appropriate for the Court to subclass.[19] Therefore, the Court has some discretion to use Rule 23(c)(5) to further the goals of Rule 23.[20] Rule 23(c) deals with housekeeping issues and <u>due process protections, not class certification requirements</u>.[21] Although some have argued that Rule 23 (c) is designed to deal with class "management issues" Rule 23(c) itself speaks to certification issues and it cannot be restricted to non-certification "management issues." Rule 23(c)(5) states that each subclass divided from the class, "shall be treated as a class under this rule." Moreover, Rule 23(c)(1) also speaks to certification issues because it speaks to when certification should be determined.[22] The manageability provisions of Rule 23(c) must be designed to work in tandem with the requirement of superiority of Rule 23(b)(3), it would be odd for a Court confronted with a Rule 23(b)(3) class to determine whether or not the class is manageable without looking to Rule 23(c) provisions specifically addressing manageability issues.[23]

---

[17] Sub classing at 2368, See also Amchem at 855 ("Finally, as discussed below, even ostensible parity between settling non-class plaintiffs and class members would be insufficient to overcome the failure to provide the structural protection of independent representation as for subclasses with conflicting interests").
[18] Sub classing at 2369.
[19] Id. at 2372.
[20] Id. at 2372.
[21] Id. at 2379.
[22] Sub classing at 2380.
[23] Id. at 2380.

## CONCLUSION

The Supreme Court opinions both in *Amchem* and *Ortiz* are instructive to the Court in the instant case as it considers the Parties' Joint Motion for Preliminary of Settlement Agreement and Certification of Settlement Class. The Court in both instances highlight the role of Rule 23(c)(5) in protecting due process rights, such as adequacy of representation and adequacy of class counsel. Moreover, there are equity considerations founded in Rule 23(c)(5)'s protections of the primary reasons for the joinder device of class certification: to prevent the injustice that would result from separate litigation. Therefore, if the Court is considering granting the Parties' Joint Motion for Preliminary Approval of Settlement Agreement and Certification of Settlement Class, that as part of such approval, the Court follow the instructions of the Supreme Court in *Amchem* and *Ortiz* and create a subclass of personal injury claimants pursuant to Rule 23(c)(5) represented by separate counsel from interim class counsel.

Plaintiff Whittier incorporates by reference as if fully set forth herein Doc. No. 146, Plaintiff Julius Whittier's Memorandum in Support of Plaintiff Nichol's Renewed Motion to Appoint Jay Edelson as Lead Counsel for the Personal Injury Class, and its analysis of the Settlement Structure in its Opposition to the Joint Motion of the Parties.

WHEREFORE PREMISES CONSIDERED, Plaintiff Julius Whittier, prays that the Court apply Rule 23(c)(5) to the proposed Settlement Agreement establishing a sub-class composed of personal injury claimants with separate class

4818-6974-7235.v1

counsel and that until such subclass is created, all Motions of Preliminary Approval of Settlement Agreement and Class Certification are denied.

Date: May 8, 2015.

Respectfully submitted,

By: */s/ Dwight E. Jefferson*
_____
Dwight E. Jefferson
State Bar No. 10605600
djefferson@coatsrose.com

**ATTORNEY FOR CLASS-PLAINTIFF MILDRED WHITTIER, A/N/F, JULIUS WHITTIER**

OF COUNSEL:

COATS ROSE YALE RYMAN & LEE
9 Greenway Plaza, Suite 1100
Houston, Texas 77046-0307
Telephone: (713) 651-0111
Facsimile: (713) 651-0220

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record on this 8th day of May, 2015.

By: */s/ Dwight E. Jefferson*
_____

8