**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| | **MDL No. 2492** |
| **IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION** | **Master Docket No. 1:13-cv-09116** |
| | **This Documents Relates To:**<br>**All Cases** |
| | **Judge John Z. Lee** |
| | **Magistrate Judge Geraldine Soat Brown** |

**NICHOLS' COMBINED REPLY IN SUPPORT OF HIS SECOND OBJECTIONS TO
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

**Respectfully submitted by**:

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Benjamin S. Thomassen
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654

| | | |
|---|---|---|
| Brian W. Coffman | Richard R. Gordon | Steven K. Mamat |
| COFFMAN LAW OFFICES | GORDON LAW OFFICES, Ltd. | STEVEN MAMAT, PLLC |
| 2615 North Sheffield Avenue | 211 West Wacker Drive, Suite | 302 S. Main St., Suite 202 |
| Chicago, Illinois 60614 | Chicago, Illinois 60606 | Royal Oak, Michigan 48067 |
| | | |
| Jeffrey L. Raizner | Samuel M. Lasser | John J. Driscoll |
| RAIZNER SLANIA LLP | LAW OFFICE OF SAMUEL LASSER | THE DRISCOLL FIRM, P.C. |
| 2402 Dunlavy Street | 1934 Divisadero St. | 211 N. Broadway |
| Houston, Texas 77006 | San Francisco, California 94115 | St. Louis, Missouri 63102 |

## TABLE OF CONTENTS

I.      **INTRODUCTION** .................................................................................1

II.     **ARGUMENT** ......................................................................................3

     A.     **Neither Interim Class Counsel Nor the NCAA Refute that a Rule 23(b)(3) Class Is Potentially Viable and Thus, of Great Value to Presently Injured Settlement Class Members.** ...........................3

          1.     **Neither Interim Class Counsel nor the NCAA dispute that *In re NFL* supports Rule 23(b)(3) certification of a personal injury class.** .............5

          2.     **By seeking certification under Rule 23(b)(3) and relying on the same "core issues" driving Nichols' Second Objection, *both* Interim Class Counsel and the NCAA concede predominance and superiority.** .........6

          3.     **The NCAA ignores the Seventh Circuit's approach to addressing and overcoming manageability challenges.** ......................9

          4.     **The challenges to Nichols' proposed class definition only demonstrates the NCAA's misunderstanding of Rule 23.** ...................12

               a.     *The NCAA uses the wrong ascertainability standard.* .......12

               b.     *The NCAA's concerns about class notice are self-defeating* ..............................................14

               c.     *Criticisms about the comparative size of Nichols' proposed class only demonstrate unreconciled conflicts of interest.* 15

               d.     *Nichols is a member of the proposed Settlement Class and, thus, has standing to object.* ..............17

     B.     **Nichols' Proposed Rule 23(c)(4) Core Issues Class Is Viable and—as Interim Class Counsel Has Stressed—of Critical Importance to Settlement Class Members with Personal Injury Claims.** .........18

          1.     **The NCAA incorrectly frames the issue by (wrongly) asserting that the whole cause of action—not just the proposed Core Issues—must satisfy Rule 23(b)(3).** ...................19

          2.     **Common issues predominate Nichols' proposed Core Issues Class.** ....21

               a.     *The NCAA's attempt to elevate an inapposite Erie problem from* Rhone-Poulenc *as a predominance problem is unavailing.* ...................21

b.    *The NCAA fails to raise a single state-level liability exception that might be relevant here.* ..............................24

3.    **Once again, the NCAA's attacks against the superiority of a Core Issues Class betray its misunderstanding of Rule 23** ...........................25

4.    **Nichols' proposed Core Issues Class presents no Seventh Amendment concerns** ................................................................................27

5.    **This is exactly the kind of case Rule 23(c)(4) was intended to aid** .......28

III.    **CONCLUSION** ............................................................................................29

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................3, 4, 5, 16, 23

*National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) .........................................11

**United States Circuit Court of Appeals Cases**

*Allen v. International Truck & Engine Corporation*, 358 F.3d 469 (7th Cir. 2004) ....................11

*Arreola v. Godine*, 546 F.3d 788 (7th Cir. 2008) .........................................................................20

*Bevolo v. Carter*, 447 F.3d 979 (7th Cir. 2006).........................................................................24

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ...................................7, 18, 27, 29

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004)................................................10

*Castano v. Am. Tobacco Co.,* 84 F.3d 734 (5th Cir. 1996)................................................19, 20, 21

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).....................................................................3

*Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579 (5th Cir. 2007)................................................17

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ...............................................20

*In Re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014) ..............................................................21

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .......................................19

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ................................................................20

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    672 F.3d 482 (7th Cir. 2012) ..............................................................................20, 26, 29

*Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003) ...............................20, 21, 26, 29

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ...................................9

*Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620 (5th Cir. 1999) ...........................22, 26, 28

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)...................................12, 13, 14, 15

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ..............................................20, 26, 28, 29

*Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32 (1st Cir. 2003)........................................................20

*Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir.1995) ........................................................15

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988) ..............................................20

*The Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) .................22, 23, 27, 28

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .............................................9, 20

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, No. 12-3776, 2013 WL 3389469 (10th Cir. July 9, 2013) ......................................................................................20

**United States District Court Cases**

*Boundas v. Abercrombie*, 280 F.R.D. 408 (N.D. Ill. 2012) ........................................................12

*Buford v. H & R Block, Inc.*, 168 F.R.D. 340 (S.D. Ga. 1996)..................................................10

*City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012)........................................................................22

*Goldwater v. Alston & Bird*, 116 F.R.D. 342 (S.D. Ill. 1987) ......................................................22

*Guillory v. Am. Tobacco Co.*, No. 97 C 8641, 2001 WL 290603 (N.D. Ill. Mar. 20, 2001) .................................................................................................14

*Hamilton v. O'Connor Chevrolet, Inc.*, No. 02–cv–1897, 2006 WL 1697171 (N.D. Ill. June 12, 2006) .................................................................................................21

*Healey v. Int'l Brotherhood of Electrical Workers*, 296 F.R.D. 587 (N.D. Ill. 2013).............................................................................................................20, 29

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011).................................................................................................................17

*In re Consol. Indus. Corp.*, No. 403-CV-0004, 2008 WL 2225819 (N.D. Ind. May 28, 2008) ...............................................................................................22

*In re Factor VIII or IX Concentrate Blood Products Litig.*, No. 93 C 7452, 2005 WL 497782 (N.D. Ill. Mar. 1, 2005)...............................................................21, 29

*In re Fedex Ground Package System, Inc., Employment Practices Litigation*, 2010 WL 1652863 (N.D. Ind. 2010)..............................................................................20

*In re Motor Vehicle Air Pollution Control Equip.*, 52 F.R.D. 398 (C.D. Cal. 1970) ...................10

*In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351 (E.D. Penn. Apr. 22, 2015) ........................................................................... *passim*

*In re Steel Antitrust Litig.*, No. 08 C 5214, 2015 WL 5304629
(N.D. Ill. Sept. 9, 2015) ............................................................................................9

*Jacks v. DirectSat USA, LLC*, No. 10-CV-1707, 2015 WL 1087897
(N.D. Ill. Mar. 10, 2015).........................................................................19, 20, 29

*Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438 (N.D. Ill. 2009).....................17

*Mirfasihi v. Fleet Mortgage Corp.*, No. 01 C 722, 2007 WL 2608778
(N.D. Ill. Sept. 6, 2007) ..........................................................................................17

*Murray v. GMAC Mortgage Corp.*, 532 F. Supp. 2d 938 (N.D. Ill. 2007)....................................15

*N.B. v. Hamos*, 26 F. Supp. 3d 756 (N.D. Ill. 2014) .......................................................13

## State Court Cases

*Allen v. Dover Co-Recreational Softball League*, 807 A.2d 1274 (N.H. 2002) ...........................24

*Crawn v. Campo*, 630 A.2d 368 (N.J. 1993) ..................................................................25

## Rules and Statutes

Fed. R. Civ. P. 23 ................................................................................... *passim*

## Miscellaneous Authority

Newberg on Class Actions (5th ed.) ..................................................................16, 26, 28

Patricia Bronte et al., *Carving at the Joint: The Precise Function of Rule 23(c)(4)*, 62 DePaul L.
Rev. 745 (2013) ...................................................................................................21

*Subjective*, Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary/subjective
(last accessed Oct. 2, 2015)......................................................................................14

## I.      INTRODUCTION

Interim Class Counsel's and the NCAA's latest briefs admit the core problem with the proposed settlement. Although they collectively throw 50 pages of arguments at the wall, hoping that something will stick, they are left with little to help them. On the 23(b)(3) front, they abandon their earlier boasts that *no* class could ever be certified, retreating instead to the position that the *specific* class put forward by Nichols isn't certifiable. Setting aside that they are wrong, their position is beside the point. Whether the class definition might need to be tweaked or sub-classes created, underlying their briefs is the central recognition that Nichols has been pointing to since the start of this case: there is value to the (b)(3) claims and they cannot be traded away to secure a deal that benefits those in vastly different positions.

The Parties fare even worse when it comes to 23(c)(4) certification. Interim Class Counsel do not even try to dispute that a (c)(4) issues class, which focuses on "core issues" common to every class member, is both certifiable *and* incredibly valuable to those class members with personal injury claims. (*See Arrington* Dkt. 175 at 35 (explaining that "Class Members, in individual litigation unaided by Rule 23(c)(4), *would be at a substantial disadvantage* trying to prosecute separate and enormously expensive actions against the well-resourced NCAA") (emphasis added).) And while the NCAA raises some nominal arguments in opposition, in the pending *joint* motion for preliminary approval, *both* Interim Class Counsel and the NCAA rely on these same "core issues" in seeking Rule 23(b)(3) certification of their proposed Settlement Class. (Dkt. 154 at 5; Dkt. 156 at 21-22.)

Demonstrating that we have truly come full circle, both Parties admit that this issue comes down to the same question: should the medical monitoring settlement (which will only benefit an estimated **4,735** class members to the tune of **$189,400**, (*see* Dkt. 183 at 9 ("First

1

Objection")),[1] be scuttled just because "1,000" members have a meaningful chance to get valuable class relief? (*See* Dkt. 218 ("Nichols would apparently throw out the extensive medical monitoring relief for four million Class Members . . . in exchange for a trial on just 50% of the negligence equation that has the potential to benefit less than a thousand people.")); (Dkt. 222 ("Nichols and his counsel are asking the Court to scuttle the Settlement Agreement . . . so that [they] can gamble that they might somehow be able to pursue personal injury claims on a class basis on behalf of 1,000 or so individuals.").)

Putting aside the fact that there are likely many more than 1,000 class members in Nichols' proposed class (to say nothing of the other injured individuals, like Mr. Nichols, who might benefit from other class relief),[2] along with the fact that these individuals' claims are worth far more than the $40 claimants to the proposed settlement stand to receive, (*see* Dkt. 183 at 9), the fact that Interim Class Counsel even poses the question in the first place—*i.e.*, "Whose rights matter more?"—concedes the larger point: this settlement is steeped in a classic conflict of interest. And despite what both Interim Class Counsel and the NCAA appear to recommend (*i.e.*, decide which rights matter more by counting heads), this is *not* a question the Court can decide.

Rather, it can only be answered one way: by adequate representation of *all* class members throughout the entirety of the litigation and the settlement process. That was the driving point of Judge Brody's analysis in approving the *In re NFL* settlement. *See In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Penn. 2015) ("*In re NFL*") ("The

---

[1] Unsurprisingly, Interim Class Counsel still says that the medical monitoring relief will benefit all "four million Class Members" (because all class members are entitled to fill out questionnaires, even though its own expert agrees that less than 5,000 members will be able to "make a claim on the fund" by getting exams). (Dkt. 218 at 1; Dkt. 85-1 at 9.) And now the NCAA relies on the same nonsensical conclusion—

[2] This point—one that the NCAA in particular pretends to ignore—is discussed throughout this brief. Nichols' Second Objection never suggested that his proposed class (*see supra*, n.1) is the *only* personal injury class that can be certified here. Rather, it is *one* such class and, thus, more than demonstrates that the class personal injury claims—whether certified under Rule 23(b)(3) or (c)(4)—have *value* to at least some class members. (*See* Dkt. 201 at 1 n.1, n.2.)

Class includes two Subclasses that prevent conflicts of interest between Class Members. Amchem held that an undifferentiated class containing those with present injuries and those who have not yet manifested injury is beset by a conflict of interest."). And that is the reason why separate class counsel must be appointed here. Until such time, the Court simply cannot approve any global settlement in line with Rule 23. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).

## II.    ARGUMENT[3]

### A.    Neither Interim Class Counsel Nor the NCAA Refute that a Rule 23(b)(3) Class Is Potentially Viable and Thus, of Great Value to Presently Injured Settlement Class Members.

On May 14, 2015—and consistent with the May 13, 2015 in-chambers discussions held between the Court, Interim Class Counsel, and counsel for NCAA—the Court requested that Nichols submit briefing discussing "the viability of a personal injury damages class under Rule 23(b)(3)." (Dkt. 182.) Nichols has followed the Court's direction to the letter. He did not *move* the Court to certify a specific personal injury class (contrary to what NCAA now argues against). Nor did he argue that the proposed "Settlement Class as a whole"—which, of course, includes current and former student athletes that participated in sports like bowling or competitive rifle shooting—has viable personal injury claims (as the NCAA now apparently believes Nichols was supposed to do). (*See* Dkt. 222 at 1.)

Instead, Nichols provided the Court with a sufficient factual record[4] to demonstrate that

---

[3] Without seeking leave to do so, the NCAA tries to re-open issues already addressed and briefed by the parties. (*See, e.g.*, Dkt. 222 at ARGUMENT §§VI-VII.) In this reply, Nichols' addresses only the briefing requested by the Court (*i.e.*, concerning the viability and value of Rule 23 personal injury classes). The NCAA's off-topic (and opportunistic) briefing should be ignored.

[4] Although Nichols honestly can't understand why, both Interim Class Counsel and the NCAA are seemingly critical of Nichols' reliance on the factual record from the *Arrington* matter. (*See* Dkt. 218 at 1 (Nichols has "cop[ied] the work" from *Arrington*); 222 at 3, n.2 ("The factual background [presented by Nichols] is apparently based almost <u>entirely</u> on the discovery record [from the *Arrington* matter].")

here, a Rule 23(b)(3) personal injury class—and potentially *other* similar classes—deserve a shot at certification. Thus, by asking the *entire* proposed Settlement Class to waive *all* class claims (including those under Rules 23(b)(3) and 23(c)(4)), Interim Class Counsel made a "strategic decision" to trade some class members' claims for others to "achieve[] a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." Accordingly, that decision stands in contrast to Rule 23(a)(4). *See Amchem*, 521 U.S. at 627; (Dkt. 156 at 27).

And while the Court now has a small library of briefing on this exercise, the good news is that the central question—whether a personal injury class is potentially suited for class treatment under Rule 23(b)(3)—can be resolved by looking to three sources:

- **Judge Brody's *In re NFL* Order.** No party disputes that Judge Brody's *In re NFL* order settles that a personal injury class can meet Rule 23(b)(3)'s predominance and superiority requirements.

- **Interim Lead Counsel's and the NCAA's Joint Motion for Preliminary Approval.** *Both* Interim Lead Counsel and the NCAA affirmatively argue that the proposed Settlement Class "satisfies the requirements of rule 23(b)(3) . . . [because] [c]ore issues, and the underlying proof"—the same issues and proof underlying Nichols' Second Objection—"are common for all [proposed Settlement] Class members." (Dkt. 154 at 5.)

- **The Seventh Circuit's instruction that district courts should not deny class certification on manageability grounds, until all options—including the use of "creative solutions"—have been exhausted.** And while the NCAA says that manageability will be challenging (a point acknowledged by Nichols), it cannot demonstrate, in the context of Nichols' *objections* to the proposed Settlement, that such challenges are insurmountable.

After also dealing with the NCAA's additional misunderstandings about the operation of Rule 23, these sources readily demonstrate that—unsurprisingly—there's a clear reason why the proposed

---

(emphasis in original).) Indeed, the Court instructed the parties to do exactly that. (Dkt. 182 ("[C]lass and merits discovery already has been taken in the Arrington case, and the parties should incorporate this discovery in their memoranda to the extent necessary.").)

Settlement includes the so-called "valueless" class waiver. Through it, the NCAA stands to effectively sidestep any real accountability for its conduct.

> ### 1. Neither Interim Class Counsel nor the NCAA dispute that *In re NFL* supports Rule 23(b)(3) certification of a personal injury class.

Given the substantial overlap between this case and the *In re NFL* matter, Judge Brody's recent certification order lends strong support to Nichols' argument that, here, a Rule 23(b)(3) class is potentially certifiable. (*See* Second Objection at 14.) This is so even though Judge Brody analyzed only *settlement* classes, given *Amchem*'s instruction that "[c]lass certification "demand[s] undiluted, even heightened, attention in the settlement context." *See In re NFL,* 307 F.R.D. at 370 (quoting *Amchem*, 521 U.S. at 620). Thus, here, a Rule 23(b)(3) class could also meet Rule 23(b)(3)'s requirements of predominance and superiority. (Second Objection §§ II.A.2.a (predominance); II.A.2.b (superiority).)

*Neither* Interim Class Counsel nor the NCAA present any real criticism of Judge Brody's Rule 23(b)(3) analysis from *In re NFL*, or explains why this Court should not follow it in considering Rule 23(b)(3) certification here. For their part, Interim Class Counsel don't cite to or otherwise discuss Judge Brody's order—at all. Instead, they spend 13 pages explaining that (i) some student-athletes were affected by different aspects of the NCAA's duty to them, (*see* Dkt. 218 §§ II.A.1-4), and (ii) the specific injuries suffered by student-athletes differ from individual to individual, (*see id.* §§ II.A.5.a-b). But as Nichols already pointed out, these *exact* concerns were present and addressed directly by Judge Brody in the *In re NFL* matter. (Second Objection at 22-23 ("[W]ith respect to each PI Class member's injury, because each was equally exposed to and affected by the NCAA's failure to implement sufficient concussion management rules, such conduct injured each PI Class member 'in the same way . . . even though [each individual's experience would have] resulted in different symptoms with different damages.'") (quoting *In re*

*NFL*, 307 F.R.D. at 380)); *id.* at 23 ("[H]ere—and just as Judge Brody held when certifying the In re NFL personal injury subclass—every Class member's claim 'raises common and dispositive scientific questions [because] [e]ach . . . would have to confront the same causation issues in proving that repeated concussive blows give rise to long-term neurological damage.'") (quoting *In re NFL*, 307 F.R.D. at 380)).[5] Thus, Interim Class Counsel's recitation of *Arrington's* factual record hardly demonstrates that "common questions of fact (on causation and damages) [do not] predominate." (Dkt. 218 at 1.) Rather, those facts reinforce the significance and applicability of Judge Brody's Rule 23(b)(3) analysis to the issues before the Court.

As for the NCAA, they do devote, at least superficially, a section of their brief to the *In re NFL* order, but don't explain why Judge Brody's analysis—or Nichols' application of that analysis, especially under the predominance and superiority prongs of Rule 23(b)(3)—"says little about the viability of actually adjudicating personal injury claims on a contested basis in this litigation[.]" (Dkt. 222 at 16.) Instead, it skips those issues entirely and repeatedly points out that because Judge Brody was evaluating a proposed *settlement* class, she did not have to consider issues relating to manageability. (*See* Dkt. 222 §§ II.A-C.) In so doing, the NCAA *does not challenge* that Judge Brody's predominance and superiority analysis—Nichols' actual and express points of reliance—should control here.

> 2. **By seeking certification under Rule 23(b)(3) and relying on the same "core issues" driving Nichols' Second Objection, *both* Interim Class Counsel and the NCAA concede predominance and superiority.**

While both Interim Class Counsel and the NCAA identify individual issues inherent to this case (*e.g.,* those specific to class members' injuries), neither explains why those issues would *predominate* over the common ones. (*See supra*, § II.A); *see also Butler v. Sears, Roebuck*

---

[5] Of course, just as this-or-that retired NFL player was affected by this-or-that rule (or the NFL's failure to enact a specific rule), here, all PI Class members were likewise affected by one or more the NCAA's rules, regulations, or failures to act in accordance with the applicable standard of care.

& Co., 727 F.3d 796, 801 (7th Cir. 2013) ("Predominance is [not] simply determined by counting noses."). Nor, as explained above, can either party explain why common issues predominated in the *In re NFL* matter—with respect to, *inter alia*, issues of duty/breach, common injuries, and causation, (*see* Second Objection at 21 (citing *In re NFL*, 307 F.R.D. at 380))—but would *not* predominate here, given the significant overlap between the cases.[6] In all likelihood, the reason for their hedging is that *both* Interim Class Counsel and the NCAA have affirmatively moved—in the context of their "*Joint* Motion for Preliminary Approval"—for Rule 23(b)(3) certification of their proposed Settlement Class. (Dkt. 154 at 5.) And through their joint motion, *both* Interim Class Counsel and the NCAA rely on the same "core issues" and superiority analysis underlying Nichols' Rule 23(b)(3) analysis.

The significance of the parties' "joint" request for Rule 23(b)(3) certification cannot be ignored. On July 29, 2014, Interim Class Counsel (alone) moved the Court for preliminary approval of a class settlement and sought certification of their settlement class under Rule 23(b)(2). (Dkt. 64.) At the hearing immediately following that submission, the Court discussed with all counsel for all parties—Plaintiffs, the NCAA, and Nichols—its concerns about the proposed settlement's broad waiver of all settlement class members' "rights to proceed under 23(b)(3) or at least try to proceed under 23(b)(3) with regard to personal injury claims." (July 29, 2014 Hr'g Tr. at 29:21-24; *see also id.* at 19, 31.) In response, *both* Interim Class Counsel and the NCAA shifted course and submitted supplemental briefing explaining that "core issues" also

---

[6] The NCAA makes a weak attempt to do so, but offers only unexplained conclusions as argument. For example, they note that the *In re NFL* matter only dealt with one sport (professional football) whereas this case deals with several that have different "playing conditions." (Dkt. 222 at 20.) But the NCAA doesn't explain why that difference would matter. Nor could it, given that the relevant practices driving this case are *not* the idiosyncrasies of this-or-that sport, but rather the NCAA's *common* regulation of *all* its sports and uniform failure to adhere to the at-issue standard of care. (*See* Second Objection §§ I.A-E.) And in any event, if sport-to-sport differences were relevant to certification, they could be addressed using subclasses.

supported certification under Rule 23(b)(3), but stopped short of admitting the viability of a personal injury class. (Dkt. 77 at 8-9; Dkt. 78 at Ex. A, p. 12 n.10.) Then, after briefing was submitted on Nichols' written objections to that initial settlement (which focused closely on the class waiver issue), *both* Interim Class Counsel and the NCAA *affirmatively and jointly moved* for Rule 23(b)(3) certification of their proposed class. Specifically, Interim Class Counsel and the NCAA now argue that:

> [T]he Settlement Class . . . satisfies the requirements of Rule 23(b)(3), making certification appropriate. Core issues, and the underlying proof, are common for all Class Members. . . . Accordingly, this Court should certify the Settlement Class under Rule 23(b)(3).

(*Id.*) In turn, the memorandum submitted by Interim Class Counsel explains and identifies the "core issues" underlying their—and the NCAA's—joint request for Rule 23(b)(3) certification:

> As reflected in the *Arrington* Motion For Class Certification and accompanying Fact Proffer and Expert Report, Plaintiffs demonstrated that they intended to prove at trial, on a classwide basis and using documents and testimony from the NCAA, that:
>
> - the NCAA owed a duty to safeguard student-athletes during their participation in NCAA-sanctioned sports activities;
>
> - this duty required the NCAA to promulgate and enforce best-practices concussion-management standards; and
>
> - the NCAA failed to promulgate or enforce consensus best-practices concussion management standards.[7]
>
> All of these *core issues*, and the underlying proof, are common for all Class Members. Resolution of these *core issues* will be the same for each Class Member who faced heightened risk of post-concussion syndrome and other disorders related to Chronic Traumatic Encephalopathy as a result of the NCAA's failure to promulgate and enforce appropriate best practices concussion-management standards. These are exactly the type of issues that are "central to the validity of

---

[7] Curiously, despite presenting these "core issues" to the Court in support of the request for Rule 23(b)(3) certification, (Dkt. 154 at 5.) Interim Class Counsel offer no explanation for why the instant settlement *specifically* waives Rule 23(c)(4) classes (even while acknowledging they sought (c)(4) certification in *Arrington*). Nor do they justify their decision to—in their own words—put Settlement Class members with real personal injuries at a "substantial disadvantage" by including the (c)(4) class waiver. (*Arrington* Dkt. 175 at 35.) Interim Class Counsel's refusal to answer these questions only highlights the unaddressed conflicts of interest inherent to the proposed Settlement.

each one of the claims in a class action," and since they "can be resolved in one stroke, can justify class treatment" under Rule 23(b)(3).

(Dkt. 156 at 21-22.)[8]

In this respect, Interim Class Counsel, the NCAA, and Nichols are in accord. No party (not even Nichols) suggests that Rule 23(b)(3)'s predominance test is satisfied because *every* issue is a common one. Rather, Nichols explained that Rule 23's *qualitative* test for predominance "looks to whether there are *enough* common questions such that class action treatment would be more efficient than individual trials." (Second Objection at 20 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996))); *see also In re Steel Antitrust Litig.*, No. 08 C 5214, 2015 WL 5304629, at *5 (N.D. Ill. Sept. 9, 2015) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)) ("[E]very issue in the case need not be common; the question, rather, is whether substantial common issues predominate."). And here, the point is that the *common* aspects of this case—including (i) the "core issues" identified by Interim Class Counsel's and the NCAA's request for Rule 23(b)(3) certification and (ii) those relating to causation and injury identified by Judge Brody in *In re NFL*, (*see* Second Objection 22-23)—predominate over the individual ones, which, here, further demonstrates that class treatment is a viable and superior method of adjudicating Settlement Class members' personal injury claims. (*See id.* 20-24.)

### 3. The NCAA ignores the Seventh's Circuit's approach to addressing and overcoming manageability challenges.

While much of its briefing discusses the supposed "manageability problems" relating to class adjudication of personal injury claims, (*see* Dkt. 222 at ARGUMENT §§ II.A-C (challenging Judge Brody's Order on manageability grounds), IV (challenging predominance on

---

[8] Through its own memorandum, the NCAA addressed certain issues in addition to those raised by Interim Class Counsel, but did not provide any alternative explanation for what the NCAA meant by the "core issues" they say support Rule 23(b)(3) certification. (*See generally* Dkt. 166.)

manageability grounds)), the NCAA never addresses, or even really acknowledges, the Seventh

Circuit's "problem-solving" approach to managing complex classes, (*See* Second Objection at

26-27). Rather, the NCAA treats Nichols as a party *moving* for certification and, in that context,

faults him not providing anything "even remotely resembling a coherent trial plan." (Dkt. 222 at

24.) But given the posture of the case—*i.e.*, wherein Nichols is *objecting* to the proposed

Settlement—the NCAA's approach makes no sense at all. Should the time come, Nichols will be

glad to work with the Court to address the manageability challenges posed by class adjudication

here.[9] At this juncture, however, the NCAA's argument that manageability concerns should

*preclude* certification flies in the face of Seventh Circuit (and other) law. *See Carnegie v.*

*Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise

imaginative solutions to problems created by the presence in a class action litigation of

individual damages issues."); *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 363 (S.D. Ga. 1996)

(citations omitted) (cited in Carnegie, 376 F.3d at 663) ("There exists a strong presumption

against denying class certification for management reasons."), aff'd sub nom., *Jones v. H & R*

*Block Tax Servs.*, 117 F.3d 1433 (11th Cir. 1997); *In re Motor Vehicle Air Pollution Control*

*Equip.*, 52 F.R.D. 398, 404 (C.D. Cal. 1970) ("Manageability of the classes…may certainly tax

the imagination and ingenuity of the litigants, counsel and the court. But until management is

recognized as impossible or near impossible, the Court will depend upon the ingenuity and aid of

---

[9] To be clear, Nichols' counsel expressly offered to convert his Second Objection into a full motion for class certification before Interim Class Counsel and the NCAA submitted their responsive briefs. (*See* August 4, 2015 email from Jay Edelson to Mark Mester, attached to the Declaration of Ari J. Scharg ("Scharg Decl.") as Exhibit A.) Doing so could have cleared up most of the issues raised by the NCAA's brief (including, for example, those relating to the adequacy of an *actual* class representative, or those concerning the management of one or more proposed personal injury classes—whether under Rule 23(b)(3) or (c)(4).) Interim Class Counsel, however, never responded to Nichols' offer. And the NCAA rejected it outright. (*See* August 5, 2015 email from Mark Mester to Jay Edelson, attached to the Scharg Decl. as Exhibit B.) As such, for the NCAA to now fault Nichols for not presenting a "trial plan" is wholly disingenuous.

counsel to solve the complex problems this litigation may bring.").

Indeed, the *problem-solving* (rather than problem-avoiding) approach is preferred in this Circuit. For example, in *Allen v. International Truck & Engine Corporation*, the Seventh Circuit took up a district court's decision to not certify a class of about 350 employees in a hostile work environment case. 358 F.3d 469 (7th Cir. 2004). As the Court explained, the district court's decision *not* to certify stemmed from the perceived difficulties posed by class management:

> [The] judge thought that [neither Rule 23(b)(2) or (b)(3) certification] would be prudent because the employees' injuries are dissimilar. Some may have been exposed to pervasive harassment and suffered great distress; others may have seen or heard little of the offensive material . . . [and thus] "issues common to the class as a whole are subordinate to the specific circumstances surrounding each individual Plaintiffs' [sic] claim for compensatory and punitive damages."

*Id.* at 471. On review, the Seventh Circuit remanded the case with instructions "to certify a class under Rule 23(b)(2) . . . and to reconsider the extent to which damages matters also could benefit from class treatment." *Id.* at 472. On the latter point, the Seventh Circuit explained:

> Whether full class treatment of damages issues would be manageable is too fact-sensitive, and too much of a judgment call, to warrant interlocutory review in this court. But because this litigation will proceed as a class action for equitable relief, it would be prudent for the district court to reconsider *whether at least some of the issues bearing on damages*—such as the existence of plant-wide racial animosity, which collectively "constitute[s] one unlawful employment practice", *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002)—could be treated on a class basis (with opt-out rights under Rule 23(b)(3) or a hybrid Rule 23(b)(2) certification) even if some other issues, such as assessment of damages for each worker, must be handled individually.

*Id.* (emphasis added). In subsequent cases, the Seventh Circuit has consistently endorsed this practical and creative approach to addressing difficult manageability problems. (*See* Second Objection at 26-28.)

Nichols has (i) cited to this approach, (ii) recognized that the Court can—with the assistance of class counsel committed to representing the interests of the *entire* proposed Settlement Class—find ways to address the manageability challenges presented by an *actual*

11

motion for class certification, and (iii) proposed at least one concrete way forward (*i.e.*, by leveraging the same "core issues" underlying Interim Class Counsel's and the NCAA's joint request for Rule 23(b)(3) certification). Accordingly, at this stage, the NCAA's manageability concerns cannot *foreclose* certification.

### 4. The challenges to Nichols' proposed class definition only demonstrate the NCAA's misunderstanding of Rule 23.

Finally, the NCAA raises several issues with respect to the "new class definition being proposed by Nichols." (*See* Dkt. 222 ARGUMENT § I.) None raise a serious challenge to Nichols' Second Objection.

#### a. The NCAA uses the wrong ascertainability standard.

First, the NCAA suggests that to meet Rule 23's ascertainability requirement—*i.e.*, that a class definition be "precise, objective, and presently ascertainable," *Boundas v. Abercrombie*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)—there must be a compiled or compilable "database" or "list" of class members. (Dkt. 222 at 10-11.) The NCAA is wrong and cites no support for its radical position. And while some courts have "raised the bar for class actions . . . by impos[ing] a new requirement that plaintiffs prove at the certification stage that there is a 'reliable and administratively feasible' way to identify all who fall within the class definition," that is not the law in the Seventh Circuit. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657-58 (7th Cir. 2015) (expressly rejecting the Third Circuit's "heightened 'ascertainability' requirement").

Rule 23's ascertainability requirement turns on objectivity—not a defendant's records. As the Seventh Circuit recently explained:

> We and other courts have long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind. . . . Class definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits (so-called "fail-safe" classes). This version of ascertainability is well-settled in our

circuit[.]

*Mullins*, 795 F.3d at 657.

Here, Nichols' proposed class definition—which, as Nichols' notes, could be adjusted to more precisely reflect the "documentation" required for class membership in an *actual* motion for class certification (Second Objection at 1 n.3)—is "defined clearly and based on objective criteria." *See Mullins*, 795 F.3d at 659. Specifically, it:

- "identif[ies] a particular group," (current and former NCAA athletes with documented diagnoses and proof of having suffered the at-issue injuries);

- "harmed during a particular time frame," (those who suffered a concussion after 2002 and later developed one or more concussion-related injuries);

- "in a particular location," (those who suffered a concussion while participating in a NCAA athletic event);

- "in a particular way" (those who both suffered a concussion during an NCAA athletic event, and later developed a persisting concussion-related injury).

*See Mullins*, 796 F.3d at 660; (Second Objection at 1). And while the NCAA faults Nichols for using "diagnos[es] [as] a criteria for class membership," (Dkt. 222 at 11 (suggesting that such criteria would violate "state and federal privacy laws" or somehow, "create the potential for an opt-in class")), courts have relied on the same or similar criteria without issue. *See, e.g., N.B. v. Hamos*, 26 F. Supp. 3d 756, 764, 769 (N.D. Ill. 2014) (holding that "the class definition proposed in [the] case [appropriately] presupposes . . . a diagnosis as a condition of class membership" before certifying class of children "who have been diagnosed with a mental health or behavioral disorder").

Here, the proposed definition is neither based on subjective criteria (*e.g.*, those who are "believe" they suffered a concussion[10]) nor defined in terms of success on the merits. *See*

---

[10] In a footnote, the NCAA seems to struggle with the difference between objective and subjective criteria, suggesting that, for example, the presence of a "medical condition" is not objective. (*See* Dkt. 222 at 13

*Mullins*, 796 F.3d at 660. As such, it is ascertainable.

>    b.    *The NCAA's concerns about class notice are self-defeating.*

Second, the NCAA says that there would be "serious issues" in providing Nichols'

proposed class with notice. (Dkt. 222 at 11.) But the NCAA doesn't explain why providing

notice to *its* proposed Settlement Class is feasible, (*see* Dkt. 154 at 4-5 (Interim Class Counsel

and NCAA jointly seeking approval of Rule 23(b)(3) notice plan); *see also* Dkt. 156 at 29-30

(description of notice plan)), but also providing notice to members of Nichols' proposed class—

*all of whom are members of the proposed Settlement Class*—is not. If the former is viable (as the

NCAA contends), so is the latter. *See*, *e.g.*, *In re NFL*, 307 F.R.D. at 386 (finding that "Class

Counsel's notice program ensured that [class notice] reached those with an interest in the

litigation," including both those subclass members with and without present concussion-related

injuries).

The NCAA offers one argument in response, but fails to appreciate its impact. Namely, it

suggests that the Seventh Circuit gives parties a pass on "the feasibility of notice" in "low-value"

cases, (Dkt. 222 at 12 (citing *Mullins*, 2015 WL 4546159, at *10)), but not in ones where

"individual claims are substantial [and] the consequences of not opting out are far greater," (*id.*

at 12).[11] But even if members stand to receive very little (if anything) of value from the proposed

---

n.12.) The difference is not hard to grasp: class definitions based on objective *facts* (like the presence of
medical conditions) are okay; ones based on class members "feelings or desires" are not. *See Subjective,*
Merriam Webster Dictionary*, http://www.merriam-webster.com/dictionary/subjective (last accessed Oct.
2, 2015) (defining subjective as "relating to the way a person experiences things in his or her mind; based
on feelings or opinions rather than facts.")*; see, e.g., Guillory v. Am. Tobacco Co.*, No. 97 C 8641, 2001
WL 290603, at *2 (N.D. Ill. Mar. 20, 2001) (finding that a class definition that included individuals who
"desire to participate" in a quit-smoking program was "depend[ent] on a subjective criteria and
improperly rel[ied] upon the subjective desires of individual class members").

[11] Rather than issuing dictates on when district courts should be more-or-less concerned with "the
feasibility of notice," in *Mullins*, the Seventh Circuit only reiterated that Rule 23(b)(3) classes require
"the best notice that is practicable under the circumstances" rather than "insist[ing] on actual notice to all
class members in all cases." 795 F.3d at 665. The other authorities cited by the NCAA say the same thing.
*See*, *e.g.*, *Murray v. GMAC Mortgage Corp.*, 532 F. Supp. 2d 938, 946 (N.D. Ill. 2007) (citing *Smith v.*

Settlement, the NCAA doesn't account for what the Settlement asks some Class members to *give up*—namely, any realistic ability to recover for their concussion-related personal injuries. (*See*, *e.g.*, First Objection § II.B.1.) Even Interim Class Counsel concedes this point, given their admission that, by waiving Rule 23(c)(4) classes, the Settlement will put participating members at a "substantial disadvantage [when] trying to prosecute separate and enormously expensive [individual personal injury] actions against the well-resourced NCAA." (*Arrington* Dkt. 175 at 35.) As such, and assuming *arguendo* that the Court preliminarily approves some version of the proposed Settlement, it is critical that *all* Settlement Class members—*especially* those falling under Nichols' proposed class (and others with actual concussion-related injuries)—receive notice.

In any event, unless the NCAA is now suggesting that the per-member benefit of its own proposed Settlement amounts to nothing more than the price of a fraudulently marketed dietary supplement, *see Mullins*, 795 F.3d at 657, and, thus, Settlement Class members aren't entitled to "feasible" notice (a point that would raise a host of new—and fatal—issues for the proposed Settlement), there's no reason why the proposed notice to Settlement Class members would satisfy Rule 23(b)(3), but simultaneously providing notice to members of Nichols' proposed class would not.

        c.    *Criticisms about the comparative size of Nichols' proposed class only demonstrate unreconciled conflicts of interest.*

Third, and mirroring Interim Class Counsel's "strategic decision" to trade some class members' claims for others, (Dkt. 156 at 27), the NCAA suggests that because Nichols' class is only a "small fraction" of the larger Settlement Class, those class members' rights matter less

---

*Shawnee Library Sys.*, 60 F.3d 317 (7th Cir.1995)) ("[C]lass members must receive reasonable notice and the opportunity to opt out as an 'absolute requirement for a court to exercise jurisdiction over the class members[.]'"), *aff'd*, 274 F. App'x 489 (7th Cir. 2008).

and thus, shouldn't stand in the way of the proposed global Settlement.[12] (Dkt. 222 at 13-15.)

The NCAA's math is seriously flawed. Putting aside that there are likely far more than 1,000 persons that would fall under Nichols' proposed class definition, members of that class—whatever its size—will indisputably be significantly larger stakeholders. Thus, even assuming that there are only 1,000 members in Nichols' proposed class (as the NCAA suggests) and each has a $10,000 claim, the aggregate value of their claims is still $10 million at a minimum (and several billion dollars at maximum according to Interim Lead Counsel's own math). The proposed Settlement, in contrast, only stands to distribute $189,400. (*See* First Objection at 9.) Thus, even if the two groups are pitted against each other—which, in itself, is a completely inappropriate exercise, *see Amchem*, 521 U.S. at 626—it's difficult to understand why Interim Class Counsel and the NCAA believe their proposed class matters more.

As such, the NCAA's argument only underscores and supports the ultimate point of Nichols' First and Second Objections, not to mention the one stressed by Judge Brody in *In re NFL* and the Supreme Court in *Amchem*:

> A fundamental conflict exists where . . . by maximizing their own interests, the putative representatives would necessarily undercut the interests of another portion of the class . . . Benefits awarded to some class members, but not others, without adequate justification may indicate that other class members were inadequately represented.

*In re NFL*, 307 F.R.D. at 376 (quoting Newberg on Class Actions § 3:58 (5th ed.)). Here, the on-going (and joint) effort to silence the collective voice of current and former NCAA athletes with *actual*, concussion-related injuries demonstrates the inadequacy of Interim Class Counsel's representation of this massive Settlement Class.

---

[12] Interim Class Counsel make this same argument. (Dkt. 218 ("Nichols would apparently throw out the extensive medical monitoring relief for four million Class Members and changes to NCAA practices that will benefit all current student-athletes under the Settlement in exchange for [relief] that has the potential to benefit less than a thousand people.").)

    d.  *Nichols is a member of the proposed Settlement Class and, thus, has standing to object.*

  Finally, the NCAA says that if Nichols isn't a member of *his* proposed class, then his *attorneys* don't have "standing or [a] basis . . . to be making the arguments and objections they have been making on his behalf for some time."[13] (Dkt. 222 at 16.) Other than suggesting that it's a "fair [question] to ask," the NCAA doesn't provide any support for its novel (and erroneous) proposition. (*Id.*)

  Rather, the cases the NCAA *does* cite simply explain that because "only class members have an interest in the settlement funds, . . . only class members have standing to object to a settlement." *Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579, 580 (5th Cir. 2007). There's no additional requirement that objectors show a connection between their specific objection and their own economic interest. Indeed, one of the most common class settlement objections concerns the adequacy of class notice, even though all such objectors clearly received notice themselves. *See*, *e.g.*, *Mirfasihi v. Fleet Mortgage Corp.*, No. 01 C 722, 2007 WL 2608778, at *7 (N.D. Ill. Sept. 6, 2007) (awarding fees to settlement objectors based on, *inter alia*, objection that notice was inadequate), *aff'd,* 551 F.3d 682 (7th Cir. 2008); *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 445 (N.D. Ill. 2009) (sustaining objection based on notice); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 947 (N.D. Ill. 2011) (evaluating and overruling objection based on notice).

  In any event, because Nichols is a member of the proposed Settlement Class, he may

---

[13] The NCAA also says that if Nichols isn't a member of his proposed class, then he wouldn't be an adequate class representative. (Dkt. 222 at 15-16.) True enough. But as discussed herein, Nichols isn't moving for class certification (despite offering to do so, *see supra* n.9) and never suggested that *he'd* represent his proposed class.

object to the Settlement.[14] Nothing further is required.

**B.      Nichols' Proposed Rule 23(c)(4) Core Issues Class is Viable and—as Interim Class Counsel Has Stressed—of Critical Importance to Settlement Class Members with Personal Injury Claims.**

Interim Class Counsel does not challenge the viability of Nichols' proposed Core Issues class. Nor could they, given their prior (and continued) arguments that a Rule 23(c)(4) class is certifiable. (*See Arrington* Dkt. 175 at 32; Dkt. 218 at 1.) Thus, and despite moving the Court for Rule 23(b)(3) certification on the same "core issues" underlying Nichols' "Core Issues" class, (*see* Dkt. 154 at 5), the NCAA—alone—raises a few narrow challenges to the proposed class.[15]

All parties to this case recognize that class treatment of the three issues addressed by Nichols' proposed Core Issues class, (*see* Second Objection at 30), has value. In fact, certification of even *one* central, common issue would greatly advance the interests of class members with concussion-related claims. *See Butler*, 727 F.3d at 801. Interim Class Counsel admit this outright, but think the claims of other (uninjured) class members matter more. (Dkt. 218 at 1.) And recognition of the value of class treatment is certainly why the NCAA, in the revised Settlement, insisted on a provision *specifically* releasing all "requests for class treatment of issues under Fed. R. Civ. P. 23(c)(4)." (Dkt. 154-1 at 13.)[16] And that's the central point of this entire exercise: by asking presently-injured class members to waive *valuable* class relief in

---

[14] Besides, even if Nichols is not a member of his proposed class, that doesn't mean he lacks viable personal injury class claims. As explained *supra*, Nichols' Second Objection focuses only on whether the proposed Settlement asks Class members to waive viable and valuable class claims. Per the Court's specific instructions, it does not, in contrast, attempt to identify *all possible* classes.

[15] The NCAA cryptically suggests that the "feasibility" of a Core Issues class was addressed during "an earlier mediation"—but doesn't offer any support beyond a wink and a nod. Nor do the cited paragraphs from Judge Phillips' and Judge Andersen's declarations say *anything*—at all—about the viability of a proposed Rule 23(c)(4) class here, or reference discussions about such a class during earlier mediations. (*See* Dkt. 67 at ¶¶ 11-13, 15; Dkt. 68 at ¶ 9.)

[16] The NCAA has previously suggested to the Court that the value of the entire class waiver is only the "cost of defense." Dkt. 82 at 31. Surely were that true, the Settling Parties would have by now dropped the class waiver in exchange for a modest decrease in the value to the class of the proposed Settlement.

exchange for nothing, Interim Class Counsel's and the NCAA's joint request for certification and approval of the proposed Settlement is completely improper.

The important question at this stage of the litigation is whether the proposed Settlement, in releasing *all* rights to pursue Rule 23(c)(4) certification, takes anything of value from the Core Issues class. Nevertheless, the NCAA launches a salvo of challenges towards the narrow question whether Mr. Nichols' proposed Core Issues class is certifiable. None are persuasive and, more importantly, none justify the proposed Settlement's sweeping class waiver.

**1.     The NCAA incorrectly frames the issue by (wrongly) asserting that the whole cause of action—not just the proposed Core Issues—must satisfy Rule 23(b)(3).**

Relying on a stray footnote from a widely rejected Fifth Circuit case, the NCAA contends that a cause of action "as a whole" must satisfy the predominance and superiority requirements of Rule 23(b)(3) for a Rule 23(c)(4) issues class to be certified. (Dkt. 222 at 29-30) (citing *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 n.21 (5th Cir. 1996)). Not so. The vast weight of authority makes clear that Rule 23(c)(4) may be used to certify a class "as to *particular issues* concerning liability *even if the claim as a whole* does not meet the predominance requirement of Rule 23(b)(3)." *Jacks v. DirectSat USA, LLC*, No. 10-CV-1707, 2015 WL 1087897, at *6 (N.D. Ill. Mar. 10, 2015) (emphasis added).

The NCAA concedes that there is "some uncertainty" over whether *Castano* was correctly held. (Dkt. 222 at 29.) Quite the understatement: *Castano* has been almost uniformly rejected in courts across the country. Both the Second and Ninth Circuits—the only Courts of Appeal to weigh in on the issue—have rejected *Castano* expressly.[17] And the First, Fourth, Sixth,

---

[17] *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 226–27 (2d Cir. 2006) (noting that "a court may employ Rule 23(c)(4)(A) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so

Seventh, Tenth, and Eleventh Circuits have all implicitly (if not expressly) endorsed a broad reading of Rule 23(c)(4)'s utility where certification under Rule 23(b)(3) would be difficult.[18] Not a single circuit court, in contrast, has embraced the holding in *Castano*.

While never formally rejecting *Castano*, the Seventh Circuit has routinely upheld certifications of issues-only classes under Rule 23(c)(4) where case-specific issues could pose challenges to Rule 23(b)(3) certification of claims.[19] It has done so even where a *single* issued was certified. *See Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) (upholding Rule 23(c)(4) certification solely on the issue "whether the windows suffer from a single, inherent design defect"). Unsurprisingly, then, the resounding majority of district courts in this circuit have followed suit. *See, e.g.*, *Jacks*, 2015 WL 1087897, at *5 ("[A] class may be certified as to particular issues concerning liability even if the claim as a whole does not meet the predominance requirement of Rule 23(b)(3)."); *accord Healey v. Int'l Brotherhood of Electrical Workers*, 296 F.R.D. 587, 596 (N.D. Ill. 2013); *In re Fedex Ground Package System, Inc., Employment Practices Litigation*, 2010 WL 1652863 (N.D. Ind. 2010); *In re Factor VIII or IX*

---

that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4) and proceed with class treatment of these particular issues.").

[18] *See, e.g.*, *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 41 (1st Cir. 2003); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1196-97 (6th Cir. 1988); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, No. 12-3776, 2013 WL 3389469, at *5 (10th Cir. July 9, 2013); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1274 (11th Cir. 2004), abrogated on other grounds by *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.* (11th Cir. 2009).

[19] *See, e.g.*, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490–91 (7th Cir. 2012) (endorsing use of Rule 23(c)(4) to determine "on a classwide basis" a "pair of issues" concerning the lawfulness of an employer's practices, even where partial certification would necessitate "hundreds of separate trials ... to determine which class members were actually adversely affected by one or both of the practices and if so what loss [was] sustained"); *Arreola v. Godine*, 546 F.3d 788, 800–01 (7th Cir. 2008) (noting that Rule 23(c)(1)(B) "specifically recognizes the possibility of certifying not just 'class claims,' but also class 'issues' "); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 910 (7th Cir. 2003) (affirming certification of an issues class which addressed only "whether or not and to what extent [Defendant] caused contamination of the area in question" and affirming the district court's decision to reserve questions of damages and causation for individual trials).

*Concentrate*, 2005 WL 497782, at *10; *but see Hamilton v. O'Connor Chevrolet, Inc.*, No. 02–cv–1897, 2006 WL 1697171 (N.D. Ill. June 12, 2006) (following *Castano*).

Even the Fifth Circuit has retreated from *Castano*. For example, in *In Re Deepwater Horizon*, the Fifth Circuit affirmed as "in accordance with this court's previous case law and Rule 23(c)(4)" the district court's decision to certify a class on the issue of liability—despite acknowledging that causation and damages issues could not be adjudicated on a class basis. 739 F.3d 790, 806-08 (5th Cir. 2014). In brief: to the extent that there ever was a circuit split on the issue, that split "has all but vanished." Patricia Bronte et al., *Carving at the Joint: The Precise Function of Rule 23(c)(4)*, 62 DePaul L. Rev. 745, 745-46 (2013).

There is good reason for the nationwide consensus rejecting *Castano*: it misreads the plain text of Rule 23(c)(4). *See, e.g.*, *In re Factor VIII or IX Concentrate Blood Products Litig.*, No. 93 C 7452, 2005 WL 497782, at *2 (N.D. Ill. Mar. 1, 2005) ("*Castano* is not an interpretation of Rule 23(c)(4)(A) but a simple rejection of its language."). From its origins, the rule has always made clear that a class action might be split into distinct issues-only classes, and that only then would the predominance and superiority requirements of Rule 23(b) apply.[20] The NCAA's attempt to argue otherwise evidences little more than "a general distaste for the class-action devices." *See Mejdrech*, 319 F.3d at 910.

        2.       **Common issues predominate Nichols' proposed Core Issues Class.**

        *a.*       *The NCAA's attempt to elevate an inapposite Erie problem from* Rhone-Poulenc *as a predominance problem is unavailing.*

The NCAA suggests that *The Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th

---

[20] The original Rule 23(c)(4) read, "[w]hen appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." Fed. R. Civ. P. 23(c)(4) (1966) (amended 2007). Though that original rule has since been split into sub-parts 23(c)(4) and 23(c)(5), the Advisory Committee notes characterize that change as "stylistic only." Adv. Committee Notes to Fed. R. Civ. P. 23 (2007).

Cir. 1995), poses an absolute bar to certification of *any* Rule 23(c)(4) issues in cases alleging negligence. But the weight of precedent in this jurisdiction (and beyond) demonstrates otherwise. So, too, does an attentive reading of *Rhone-Poulenc*.

To start, courts routinely certify multistate and national classes alleging negligence claims because state laws do not materially depart from long-settled common law notions of duty and breach—*Rhone-Poulenc* notwithstanding.[21] *See, e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999) (affirming district court's certification of defendant's negligence; likewise affirming district court's reservation of proximate cause and comparative negligence for subsequent individual trials). And Judge Brody, in *In re NFL*, certified a national class alleging negligence, noting that "questions regarding the [Defendants'] knowledge and conduct," including whether the Defendants "knew of the dangers of concussive hits, yet failed to modify the rules of [the sport] to mitigate them" and/or failed to warn players that they were "risking serious cognitive injury by continuing to play" predominated the plaintiffs' negligence claims. *In re NFL*, 307 F.R.D. at 380. Courts in this district have followed suit. *See, e.g.*, *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) (certifying a six-state class of plaintiffs alleging that Defendant negligently cause a toxic pesticide to enter plaintiffs' water supplies); *In re Consol. Indus. Corp.*, No. 403-CV-0004, 2008 WL 2225819, at *19 (N.D. Ind. May 28, 2008) (certifying nationwide class alleging negligence claims); *Goldwater v. Alston & Bird*, 116 F.R.D. 342, 355 (S.D. Ill. 1987) (same). These exact questions—classic issues of duty and breach—likewise predominate here.[22]

---

[21] Both the NCAA and Interim Class Counsel recognized as much when they stated—in their *joint* motion for approval of the proposed Settlement—that the proposed settlement class "satisfies the requirements of Rule 23(b)(3), making certification appropriate" because "*core issues*, and the underlying proof, are common for all Class Members." (Dkt. 154 at 5.)

[22] As discussed *supra*, the NCAA contends that the NFL litigation "provides little or no guidance" because, there, certification was granted on a settlement basis. (Dkt. 222 at 16.) But the NCAA forgets

Even apart from this precedent, *Rhone-Poulenc*, in particular, doesn't bar certification of Nichols' proposed Core Issues class. First, the plaintiffs in *Rhone-Poulenc* sought certification of the *entire* question of Defendant's negligence. *Rhone-Poulenc,* 51 F.3d at 1300-04. Nichols, in contrast, proposes certification of only the narrower issues of duty and breach (i.e., reserving proximate cause and damages for individual trials).[23] Second, the concern in *Rhone-Poulenc* with "different state views on the role of industry practice or custom" specifically related to a specialized "professional standard [of care]" that some states affix to "physicians, hospitals, or other providers or medical services." *Rhone-Poulenc,* 51 F.3d at 1301. Such concerns would have no relevance here, where Nichols' argues there has been international consensus on the applicable standard of care for the entire class period.[24] (*See* Second Objection at 7-10.) Finally, the *Rhone-Poulenc* court went out of its way to note that its concern over potential variations in state negligence laws was not "necessarily sufficient in itself" to bar certification. 51 F.3d at 1299. Instead, only because that concern was paired with Seventh Amendment and scope-of-liability concerns did the court find a "cumulatively compelling" case against class certification. *Id.* That confluence of factors is absent here, where there are no Seventh Amendment concerns, *see infra* § II.B.4, and where the NCAA insists that class treatment presents no possibility of liability other than "the cost of defense," (Dkt. 82 at 31).

Finally, even if there were *manageability* concerns about state-level variations in standards of duty and breach, creative solutions (such as the use of state-level subclasses), could

---

that district courts must apply Rule 23's with "undiluted, even heightened" force in the settlement context. *Amchem*, 521 U.S. at 620.

[23] To be sure, the *Rhone-Poulenc* court noted in dicta that "the law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause" may vary among the states in nuanced ways that "can be important." *Id.* at 1300. But any concerns surrounding state level variance in duty of care and foreseeability can be addressed, as needed, by the use of subclasses at trial. And in any event, none of the foremost concerns noted in *Rhone-Poulenc* (much less this stray piece of dicta) were independently sufficient to bar certification. *See id.* at nn.16-18 and accompanying text.

[24] Right or wrong, Nichols' contention would present a classic question for classwide adjudication.

easily assuage those concerns. (*See infra* II.B.3.) In fact, Interim Class Counsel already proposed a trial plan accounting for those differences. (*See Arrington* Dkt. 181 at 12 (noting that "applicable state laws can be grouped into several subclasses sharing largely identical legal standards" and that "the differences that do exist among state laws can readily be taken into account through the use of a discrete subclass, thus ensuring careful adherence to legal requirements").)

> b. *The NCAA fails to raise a single state-level liability exception that might be relevant here.*

Next, the NCAA suggests that state-specific tort liability exceptions undermine predominance for Mr. Nichols' proposed Rule 23(c)(4) certification. (Dkt. 222 at 31.) To support that claim, it raises two doctrines: the contact sports exception and the sports association exception. Neither is remotely relevant.

First, the contact sports exception is a doctrine that defines the potential scope of liability between *co-participants* in a contact sport. *See Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006) (Under the contact sports exception, "voluntary participants in contact sports may be held liable for injuries to co-participants caused by willful and wanton or intentional misconduct, but they are not liable for injuries caused by ordinary negligence."). Unless the NCAA learns how to strap on a football helmet, the doctrine has nothing to say about whether the NCAA owed a duty of care to members of the Core Issues class.

Second, the purported "sports association" exception is really not a doctrine at all, but rather an application of traditional tort principles to sports associations, like the NCAA. Regardless, the exception states that a sports association "who creates only risks that are normal or ordinary to the sport acts as a reasonable person of ordinary prudence under the circumstances." *Allen v. Dover Co-Recreational Softball League*, 807 A.2d 1274, 1284-85 (N.H.

2002) (quoting *Crawn v. Campo*, 630 A.2d 368, 373 (N.J. 1993)). That unremarkable proposition is irrelevant here, where the central theory of harm—which Nichols and Interim Class Counsel more-or-less agree on—is that the NCAA failed to mandate the Consensus Standard and, thus, created additional, non-ordinary risks for all class members. (Second Objection at 14.)

The NCAA's inability to identify a single relevant state-specific tort liability exception (much less so many as to militate against certification) reveals the reality: there are none. And even if there were, there's no reason why they couldn't be handled through subclasses. Either way, they don't preclude Rule 23(c)(4) certification.

### 3. Once again, the NCAA's attacks against the superiority of a Core Issues Class betray its misunderstanding of Rule 23.

Next, the NCAA raises a confused superiority attack against Nichols' proposed Core Issues class but, once again, only demonstrates its own confusion. At the outset, however, and as discussed *supra*, Section II.A.2, it's notable that the NCAA is presently moving the Court for Rule 23(b)(3) certification of the Settlement Class. In so doing, it relies on the *same* "core issues" underlying Nichols' Rule 23(c)(4) arguments and contends that "[a]ddressing these core issues now . . . [would be] far superior to individualized lawsuits." (Dkt. 154 at 5.) Why the NCAA believes these same "core issues" support its bid for certification but work against Nichols' is anyone's guess. The NCAA sure doesn't provide the answer.

In any event, the NCAA advances two arguments: it says that certification of Nichols' Core Issues class wouldn't reduce the *number* or the *complexity* of subsequent individual trials. Neither is compelling.

First, the NCAA's argument that even with Rule 23(c)(4) certification, "class members who sought to recover damages from the NCAA would still have to bring their own separate lawsuits" misses the point entirely. Rule 23(c)(4) aims to achieve judicial economy by reducing

unnecessary re-litigation of the same *issues*—not reducing the number of individual trials a class action might produce. *See Newberg on Class Actions* § 4:89 (5th ed.) ("The ability to certify issue classes accords the courts discretion to realize the advantages and efficiencies of classwide adjudication of common issues when there also exist individual issues that must be tried separately."). This is why the Seventh Circuit has—and others have—consistently approved of Rule 23(c)(4) certification even while recognizing that subsequent trials will be necessary. *See, e.g.*, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490-91 (7th Cir. 2012) (noting that "obviously a single proceeding . . . could not resolve class members' claims" and that "hundreds of separate trials may be necessary" but nevertheless certifying the class because "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful"); *accord Pella*, 606 F.3d at 396; *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d at 912. And, of course, the NCAA ignores the obvious judicial economy that would be achieved if a certified Core Issues class *loses* at trial on key elements of the NCAA's liability.

Second, the NCAA doesn't explain how resolving—once, for the entire Core Issues class—key issues with respect to its liability still wouldn't "reduce the . . . complexity of subsequent suits against the NCAA. . . ." (Dkt 222 at 33.) Indeed, that's exactly what would happen and the entire point of a Rule 23(c)(4) class. Here, in follow up lawsuits, no member of the proposed Core Issues class would need to try complex issues regarding the NCAA's duty (including proving there even is a duty) or the NCAA's breach of it.[25] *See Mullen*, 186 F.3d at 626 (approving district court's class certification and phased trial plan, where "liability issues common to all class members [including the defendant's negligence] will be tried together in an

---

[25] And, through this class adjudication, class members could leverage the more than "11,000 hours" and "$500,000 in out-of-pocket costs" that Interim Class Counsel have already invested into discovery of the Core Issues in this case. (Dkt. 156 at 23.)

initial trial phase . . . [and if] the class prevails on the common liability issues in phase one, the issues affecting only individual class members [including causation, damages, and comparative negligence] will be tried in a second phase in waves of approximately five class members at a time.") Given that Rule 23(c)(4) certification is proper where there is even a "single, central, common" issue, *Butler*, 727 F.3d at 801, here, where the Core Issues class would adjudicate several issues common to the class, there can be no doubt that certification would reduce the complexity of subsequent individual trials.

### 4. Nichols' proposed Core Issues Class presents no Seventh Amendment concerns.

Next, the NCAA says certification of Nichols' proposed Core Issues Class "would also pose serious constitutional problems" under the Seventh Amendment. (*See* Dkt. 222 at 34.) Its ostensible concern is that juries at subsequent individual trials would decide issues such as comparative negligence and proximate causation—issues that impermissibly would overlap with the NCAA's "alleged negligence" (*i.e.*, the issue that the NCAA says is to be tried at Nichols' proposed Core Issues trial). (*Id.*) The premise of the NCAA's argument is that the subsequent trials would violate the NCAA's Seventh Amendment right to have issues decided by one jury and "not reexamined by another finder of fact." (*Id.*) (quoting *Rhone-Poulenc*, 51 F.3d at 1303).

The NCAA's Seventh Amendment challenge misses the mark. Nichols' proposed Rule 23(c)(4) class does not seek a determination of the NCAA's liability in negligence. Rather, it asks the *narrower* questions of (i) whether the NCAA owed a duty to the core issues class (and if so, what the standard of care was) and (ii) whether the NCAA breached that duty. Both—or *either*—are proper issues for certification under Rule 23(c)(4). Because neither fun afoul of the concerns noted in *Rhone*-Poulenc (i.e., because neither would be re-determined by subsequent juries), Nichols has thus properly "carve[d] at the joint." *See Rhone-Poulenc*, 51 F.3d at 1302.

Indeed, Nichols' proposed Core Issues class reserves the more difficult negligence sub-issues addressed in *Rhone-Poulenc*—proximate cause and the comparative negligence of the plaintiff(s)—for subsequent individual trials.[26] And this distinction is crucial. That is so because it was precisely and *exclusively* those two sub-issues that animated the court's Seventh Amendment concerns in *Rhone-Poulenc*. 51 F.3d at 1303. By contrast, where a 23(c)(4) certification reserves such issues for subsequent individual trials, the court's task in certifying the class is markedly simpler. *See Pella*, 606 F.3d at 394 (certifying Rule 23(c)(4) class and approving of plaintiffs' decision to reserve proximate cause for subsequent individual trials); *see also Mullen*, 186 F.3d at 626 (approving district court's reasoning that "the issues to be tried commonly [including negligence] were significant in relation to the individual issues of causation, damages, and contributory negligence").

It is true that courts should be mindful of Seventh Amendment concerns when certifying Rule 23(c)(4) classes. But where class definitions have thoughtfully carved at the joints, Seventh Amendment concerns are easily ameliorated. *See, e.g.*, Newberg on Class Actions § 4:92 (5th ed.) ("In sum, the Seventh Amendment does not seem to pose a significant obstacle to the use of issue classes, even in the mass tort context, so long as courts are careful to certify only those issues for class treatment that are sufficiently separable from individual issues so that trial of them alone may be had without injustice.").

### 5. This is exactly the kind of case Rule 23(c)(4) was intended to aid.

Finally, in a parting shot, the NCAA contends that this is "not the type of case" where a Core Issues class would be appropriate. (Dkt. 222 at 34.) The NCAA's attempt to cabin the

---

[26] *Cf. Mullen,* 186 F.3d at 629 (noting that "in considering comparative negligence, the phase-two jury would not be reconsidering the first jury's findings of whether [defendant's] conduct was negligent or the Casino unseaworthy, but only the degree to which those conditions were the sole or contributing cause of the class member's injury").

rule—*i.e.*, to cases which "typically involve some combination of a claim of a single product defect or a single statutory violation and/or damages that are subject to easy computation," (Dkt. 222 at 35)—is puzzling and, in any event, misses the mark. The Rule was designed to promote judicial economy through consolidation of separate claims, regardless of the nature of those claims. *See Mejdrech*, 319 F.3d at 911 (affirming certification in mass tort litigation; noting the district court properly carved "at the joints of the dispute"). That is why the Seventh Circuit has consistently approved of Rule 23(c)(4) certifications to address a wide variety of issues (including, for example, liability issues in a mass tort case). *See, e.g., Mejdrech v. Met-Coil Sys. Corp.,* 319 F.3d at 912 (mass tort); *Pella*, 606 F.3d at 396 (consumer fraud); *McReynolds*, 672 F.3d at 492 (disparate impact racial discrimination); *Butler v. Sears, Roebuck & Co.*, 727 F.3d at 802 (breach of warranty). District courts have heeded that precedent. *See, e.g., In re Factor VIII or IX Concentrate*, 2005 WL 497782, at *10 (mass tort); *Jacks v. DirectSat USA,* 2015 WL 1087897, at *8 (state and federal statutory wage and hour violations); *Healey v. Int'l Bhd. of Elec. Workers, Local Union No. 134*, 296 F.R.D. at 597 (breach of contract and breach of fiduciary duty). This Court should too.

## III.    CONCLUSION

In the end, the only *actual* justification that either Interim Class Counsel or the NCAA offer in support of the proposed Settlement's class waiver (the central issue for almost all of Nichols' instant objections) is a mathematical one—i.e., that the Court should value the rights of the many over the rights of the few. But that "strategy" cannot rescue the proposed Settlement now, and it shouldn't have been used as a bargaining chip by Interim Class Counsel throughout the litigation and settlement processes. Either way, the proposed Settlement cannot be approved.

Date:   October 12, 2015                    Respectfully submitted,

                                            **ANTHONY NICHOLS**

                                            By: /s/ Jay Edelson
                                            _____
                                                    One of his Attorneys

                                            Jay Edelson
                                            jedelson@edelson.com
                                            Rafey S. Balabanian
                                            rbalabanian@edelson.com
                                            Ari J. Scharg
                                            ascharg@edelson.com
                                            Benjamin S. Thomassen
                                            bthomassen@edelson.com
                                            EDELSON PC
                                            350 N. LaSalle, Suite 1300
                                            Chicago, Illinois 60654
                                            Tel: 312.589.6370
                                            Fax: 312.589.6378

                                            Richard R. Gordon
                                            richard.gordon@gordonlawchicago.com
                                            GORDON LAW OFFICES, Ltd.
                                            211 West Wacker Drive, Suite 500
                                            Chicago, Illinois 60606
                                            Tel: 312.332.5200
                                            Fax: 312.236.7727

                                            Brian W. Coffman
                                            bcoffmanlaw@gmail.com
                                            COFFMAN LAW OFFICES
                                            2615 North Sheffield Avenue
                                            Chicago, Illinois 60614
                                            Tel: 773.348.1295
                                            Fax: 773.248.6013

                                            Steven K. Mamat
                                            STEVEN MAMAT, PLLC
                                            302 S. Main St., Suite 202
                                            Royal Oak, Michigan 48067
                                            Tel: 248.548.1009
                                            Fax: 248.548.1012

Samuel M. Lasser
LAW OFFICE OF SAMUEL LASSER
1934 Divisadero St.
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

John J. Driscoll
THE DRISCOLL FIRM, P.C.
211 N. Broadway
St. Louis, Missouri 63102
Tel: 314.932.3232

Jeffery L. Raizner
RAIZNER SLANIA LLP
2402 Dunlavy Street
Houston, Texas 77006
Tel: 713.554.9077

## CERTIFICATE OF SERVICE

I, Ari Scharg, an attorney, hereby certify that on October 12, 2015, I served the above and foregoing ***Nichols' Combined Reply in Support of His Second Objections to Motion for Preliminary Approval of Class Settlement***, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Ari J. Scharg