# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | MDL No. 2492<br><br>Master Docket No. 1:13-cv-09116<br><br>This Documents Relates To:<br>All Cases<br><br>Judge John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

## PLAINTIFF AND PUTATIVE CLASS REPRESENTATIVE ADRIAN ARRINGTON'S OBJECTION TO THE PRESENTLY PROPOSED SETTLEMENT

I, ADRIAN ARRINGTON, pursuant to Doc. # 208, being first duly sworn, depose and state:

1. I am a former NCAA student-athlete who played football at Eastern Illinois University for the years 2006 through 2009. Eastern Illinois University is a Division 1 school and a member of the National Collegiate Athletic Association.

2. At all times while at Eastern Illinois University, I understood the rules of play to be governed by the National Collegiate Athletic Association.

3. As a consequence of injuries sustained while playing football according to rules and guidelines promulgated by the Defendant, National Collegiate Athletic Association, I developed a seizure disorder with an enlarged and abnormal frontal lobe attributed to multiple concussions.

4. In 2011, I initiated litigation on behalf of myself and other similarly situated players[1], namely, those who had sustained concussion-type injuries [Doc. #1]. I sought relief for the systemic negligence of Defendant, NCAA, in connection with concussions and concussion-related maladies caused by the practices of the NCAA.

5. Of particular concern to me was that, despite having caused the concussions and related conditions with which many NCAA suffer, the NCAA gave no medical or financial support to post-collegiate student-athletes who sustained concussions while playing an NCAA sport and who then cope with the costs and care needed resulting from their injuries. [Doc. #1].

6. My complaint alleged that the NCAA failed to implement legislation addressing the treatment and eligibility of student-athletes who have sustained multiple concussions in the course of play; and the NCAA has failed to implement a support system for student-athletes who, after sustaining concussions, are left unable to either play football or even lead a normal life. [Doc. #1].

7. After having sustained multiple concussions at the behest of the NCAA, I am unable to play football or lead a normal life. Equally significant, I am unable to pay for the costs of care and treatment needed as a result of the injuries suffered while playing football as an NCAA student-athlete.

8. As a result of my injuries, and in connection with my allegations against the NCAA, I sought medical monitoring and financial recovery for the long-term and chronic injuries, financial losses, expenses and intangible losses suffered by me and members of the Classes as a result of the NCAA's carelessness, negligence, and concealment of information. [Doc. #1].

9. More specifically, my complaint alleged that I, along with the Class, was entitled to compensatory damages in an amount to be determined at trial, as well as injunctive relief requiring

---

[1] All former NCAA football players who sustained a concussion(s) or suffered concussion-like symptoms while playing football at an NCAA school, and who have, since ending their NCAA careers, developed chronic headaches, chronic dizziness or dementia or Alzheimer's disease and/or other physical and mental problems as a result of the concussion(s) suffered while a player (the "Class"). See Plaintiff's Complaint at Law [Doc. #1].

the NCAA, among other things, to adopt corrective measures regarding: the coaching of tackling methodologies that cause head injuries; the implementation of system-wide "return to play" guidelines for student-athletes who have sustained concussions; the implementation of system-wide guidelines for the screening and detection of head injuries; and the implementation of legislation addressing the treatment and eligibility of student-athletes who have sustained multiple concussions in the course of play. [Doc. #1].

10. At no time did I knowingly abandon any claims pled on behalf of myself and others similarly situated.

11. Importantly, I am no longer able to play any football. As a result of the injuries I unnecessarily suffered as an NCAA football player, I have a neurological diagnosis for which I receive regular medical care and treatment. I am unable to work, or drive. Relief in the form of compensatory damages has significant value for me, and injured players like me because, as alleged early-on in this case, the NCAA does not pay for the expensive medical treatment needed by young men and women who were permanently injured as NCAA student-athletes.

12. In February 2014, I learned of the possibility of a settlement of my claims. In July 2014, I learned through media reports the details of a settlement that had been proposed in connection with this litigation. The proposed settlement offered several policy changes by the NCAA and also medical monitoring. The proposed settlement did not create a settlement fund for injured and/or diagnosed players. Nor did the proposed settlement offer any compensatory relief to injured players.

13. I acknowledge consenting to any settlement that would (a) change the return to play rules, (b) allow for medical monitoring for young players, and (c) allow all injured players to pursue claims for their injuries and medical bills, irrespective of when those injuries occurred. Such consent by me contemplated a settlement that allowed all players to pursue their injury

3

claims, irrespective of the date of injuries. In my case, and likely others, that apparently required a tolling or waiving agreement as to the statute of limitations for players, like me, whose personal injury claims occurred more than two years ago. Injured players, like me, on whose behalf I pled, may not be able to pursue claims for their injuries and medical bills under the currently proposed settlement, because the proposed settlement does not toll or waive the statute of limitations which may bar those claims. Thus, the proposed settlement offers no relief for injured players with medical bills.

14. I was not asked to, nor did I, submit an affidavit approving of the currently proposed settlement such as those affidavits submitted by the players of non-contact sports. I do not approve of a settlement which effectively offers me no relief for my injuries.

15. In April 2015, a second settlement proposal was submitted to the Court. [Doc. # 156; 156-1]. Similar to the first settlement, the second settlement offered no genuine relief to me or those similarly situated. (see class definition in complaint at law [Doc. #1]; second amended complaint at law [Doc. #135]). Despite being lead plaintiff, I did not approve the currently proposed settlement.

16. As other objectors have noted: the injunctive relief only codifies what the NCAA has been doing for several years; the medical monitoring discourages participation, with a lengthy, intrusive process that results in a co-payment savings of approximately $40.00; and, the settlement fund in 50 years will effectively go to NCAA member institutions to fund concussion research, if any such fund remains.

17. I no longer play football, already have a diagnosis for which I receive treatment, and will likely be deceased by the time the fund is used for any research.

18. Medical Monitoring may be valuable to many players who suspect injury or have yet to realize a symptom suggestive of injury. I do not dispute the value of medical monitoring for many NCAA student-athletes. Medical monitoring was always part of the relief sought.

4

19. Similarly, the other relief contemplated by the proposed settlement (i.e, implementation and enforcement of certain rules; the possibility of research in fifty years) may also well serve future student-athletes at NCAA schools. That said, future student-athletes are not part of the class, yet they stand to gain a greater benefit from the proposed settlement, if approved, than NCAA athletes, like me, who initiated the litigation and sought compensatory relief for bonafide injuries that have caused out of pocket expenses for players.

20. The presently proposed settlement does not supply any relief for me, or those similarly situated.

21. I understand that proponents of the settlement may contend that the proposed settlement's absence of relief for me, and those similarly situated, is not a problem for me or players like me who have suffered actual injury, because the settlement does not release personal injury claims. Regrettably, this settlement has the effect of releasing my personal injury claims, and the similar claims of countless, voiceless others. That is because I understand that the personal injury claim I (and undoubtedly thousands of other players) could have pursued has, in fact, expired.

22. Only recently known to me is that if I had any claim against my school, Eastern Illinois University, such a claim needed to be filed in the State of Illinois Court of Claims several years ago. That cause of action has since expired without any apparent action taken to preserve such a claim against the school.

23. In the absence of relief to me and players like me, I respectfully request that this Court promptly deny approval of the amended settlement which is both inadequate and unjust.

24. Further, as lead plaintiff, I seek entry of an Order appointing new lead counsel. The proposed settlement demonstrates a conflict between current lead counsel and me, the Lead Plaintiff, who represents the interests of injured players who have suffered personal and pecuniary losses. Only

by appointing new lead counsel can the class' interests be fully protected. I do not oppose the current lead counsel continuing to serve as counsel for the medical monitoring class.

25. Upon appointment of new lead counsel, I request leave of court to file an amended consolidated complaint that restores claims originally pursued on behalf of the injured players.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully,

*Adrian Arrington*
Adrian Arrington