# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MDL No. 2492**<br><br>**Master Docket No. 1:13-cv-09116**<br><br>**This Document Relates to All Cases**<br><br>**Judge John Z. Lee**<br><br>**Magistrate Judge Geraldine Soat Brown** |

## RESPONSE OF THE NCAA TO ADRIAN ARRINGTON'S
## OBJECTION TO THE PROPOSED SETTLEMENT

[REDACTED VERSION, PUBLICLY FILED]

November 16, 2015

Mark S. Mester
  mark.mester@lw.com
Johanna M. Spellman
  johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

J. Christian Word
  christian.word@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

Defendant National Collegiate Athletic Association ("NCAA") respectfully submits the following response to the November 5, 2015 Objection of Adrian Arrington ("Mr. Arrington"):[1]

## **<u>INTRODUCTION</u>**

It would appear that Mr. Arrington's principal objection to the Settlement is based upon a serious misunderstanding as to the meaning and terms of the Settlement Agreement itself. Indeed, Mr. Arrington's assertion that the Settlement would somehow prevent him and other members of the Settlement Class from pursuing bodily injury claims is simply incorrect. As reflected in his November 5, 2015 submission and accompanying declaration, Mr. Arrington appears to believe that the Settlement Agreement would cause his individual bodily injury claims to be time-barred if the Settlement were approved by the Court. The Settlement Agreement, however, <u>expressly</u> tolls the limitations period for <u>all</u> claims that were initially asserted on behalf of absent class members in <u>Arrington</u>. Moreover, Mr. Arrington's individual bodily injury claims were asserted in his initial pleading in <u>Arrington</u> and remain pending, as do the individual bodily injury claims of other Named Plaintiffs. Thus, Mr. Arrington's belief that the Settlement Agreement would preclude him or anyone else from pursuing an otherwise viable bodily injury claim is fundamentally misplaced.

Mr. Arrington's other principal objection seems to be that the Settlement does not waive all applicable statutes of limitations for bodily injury claims so as to allow members of the Settlement Class to file those claims, regardless of when they were allegedly injured or whether such claims were already time-barred when <u>Arrington</u> was first filed. The fact, however, that the Settlement Agreement does not resurrect claims that were already time-barred at the time this litigation was commenced is scarcely a valid reason for denying preliminary or final approval of the Settlement.

---

[1]  Capitalized terms have the meaning ascribed to them in the Amended Settlement Agreement, which is Exhibit 1 to the joint motion for preliminary approval filed with the Court on April 14, 2015. <u>See</u> Settlement Agt. (Dkt. #154-1).

Otherwise, Mr. Arrington largely rehashes arguments and claims made by Mr. Nichols and his counsel in the objections filed on Mr. Nichols' behalf. The objections of Mr. Nichols have, of course, already been the subject of extensive briefing, but the suggestion by Mr. Arrington that his opposition to the Settlement somehow creates the need for the appointment of separate class counsel is easily dispensed with for the reasons set forth below.

Somewhat ironically, however, the objection filed by Mr. Arrington on November 5, 2015 only further confirms why the Settlement Agreement should be given preliminary and ultimately final approval. Not only will the Settlement Agreement ensure that the statute of limitations for any claims for bodily injury that Mr. Arrington or any other member of the Settlement Class had at the time <u>Arrington</u> was first filed remains tolled until a decision on final approval is made, but the Settlement Agreement itself makes it equally clear that Mr. Arrington and all other members of the Settlement Class are fully entitled to pursue any bodily injury claims against the NCAA on an individual basis, which now appears to be Mr. Arrington's overriding concern.

## <u>ARGUMENT</u>

Each of the claims made in Mr. Arrington's November 5, 2015 submission are addressed below. <u>See</u> disc. <u>infra</u> at 2-10.

### A. The Settlement Agreement Will In No Way Prejudice Class Members With Bodily Injury Claims

In his November 5, 2015 submission, Mr. Arrington admits to approving "a settlement model that allowed for players to pursue their claims for relief in the form of compensatory damages." Arrington Obj. (Dkt. #236) at ¶ 3. The proposed Settlement is, in turn, <u>fully</u> consistent with that "model." <u>See</u> Settlement Agt. (Dkt. #154-1) at § II(NN) (excluding bodily injury claims from scope of Released Claims).

As the NCAA has previously noted, the Settlement Agreement <u>expressly</u> preserves bodily injury claims. <u>See</u> Settlement Agt. (Dkt. #154-1) at § II(NN); <u>see also</u> NCAA Sept. 14, 2015

Resp. (Dkt. #222) at 27; NCAA June 22, 2015 Resp. (Dkt. #191) at 6-7.  Indeed, the Settlement

Agreement is <u>very</u> clear that no member of the Settlement Class is releasing <u>any</u> claim for bodily

injury.  <u>See</u> Settlement Agt. (Dkt. #154-1) at § II(NN).[2]  Thus, Mr. Arrington and any member of

the Settlement Class with a claim for bodily injury (now or in the future) will be <u>fully</u> entitled to

pursue that claim on an individual basis without restriction.  <u>See id.</u>; NCAA June 22, 2015 Resp.

(Dkt. #191) at 6-7.

### B.  The Settlement Agreement Directly Addresses The Issue Now Of Primary Concern To Mr. Arrington

Mr. Arrington further asserts that under the proposed Settlement, he and other individuals

may be unable to pursue bodily injury claims, because their claims will somehow become time-

barred if the Settlement is approved by the Court, supposedly because the Settlement Agreement

does not provide for tolling.  <u>See</u> Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 21.  With due respect,

however, Mr. Arrington does not understand the terms of the Settlement Agreement or they have

not been properly explained to him by his new counsel.  <u>See id.</u>  The Settlement Agreement

expressly provides that the statute of limitations for <u>all</u> claims initially asserted in <u>Arrington</u>

remains tolled until a decision on final approval, including claims for which the statute of

limitations would otherwise <u>not</u> have remained tolled but for the Settlement.  <u>See</u> Settlement Agt.

(Dkt. #154-1) at § XXI(S).

Under <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974), the statute of

limitations for absent class members was suspended when <u>Arrington</u> was first filed.  <u>See</u>

<u>American Pipe</u>, 414 U.S. at 554.  The tolling for bodily injury claims, however, would have

otherwise ceased when Class Counsel made clear they no longer planned to pursue those claims

on a class basis.  <u>See</u>, <u>e.g.</u>, <u>Sawyer v. Atlas Heating & Sheet Metal Works, Inc.</u>, 642 F.3d 560,

563 (7th Cir. 2011) ("Tolling lasts from the day a class claim is asserted until the day the suit is

---

[2]  The <u>only</u> individual claims being released are claims for medical monitoring, for which the
Settlement obviously provides substantial relief.  <u>See</u> Settlement Agt. (Dkt. #154-1) at § II(NN).

conclusively not a class action -- which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad.").  But as specified in the Settlement Agreement, the NCAA nonetheless agreed to extend tolling of all applicable statutes of limitations up to the date of a decision on final approval, providing Settlement Class Members whose claims otherwise would have expired in the interim with a valuable benefit.  See Settlement Agt. (Dkt. #154-1) at § XXI(S); see also, e.g., NCAA June 22, 2015 Resp. (Dkt. #191) at 15.  Thus, assuming that Mr. Arrington's bodily injury claim against the NCAA was not time-barred when Arrington was first filed, Mr. Arrington can pursue that claim, because the statute of limitations on that claim has been tolled throughout the pendency of this action.  See Settlement Agt. (Dkt. #154-1) at § XXI(S).  Similarly, other members of the Settlement Class with bodily injury claims that were not time-barred when this litigation commenced can pursue their claims on an individual basis.[3]  See id. at §§ II(NN), XXI(S).

### C. That The Settlement Agreement Does Not Resurrect Claims Which Were Already Time-Barred When This Litigation Commenced Is Scarcely A Valid Objection To This Settlement

Mr. Arrington further objects on the grounds that the Settlement does not waive all applicable statutes of limitations so as to "allow all injured players to pursue claims for their injuries and medical bills, irrespective of when those injuries occurred."  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 13 (emphasis added).  In that regard, Mr. Arrington is apparently suggesting that the statute of limitations on certain of his claims may have already expired by the time Arrington was first filed, and he appears to be arguing that the Settlement Agreement should resuscitate those other otherwise time-barred claims.  See id. at ¶¶ 13, 21-22.

---

[3]   Notably, absent class members, who like Mr. Arrington believe they have a valid bodily injury claim but who unlike Mr. Arrington were not named parties when this litigation commenced, could be prejudiced were it not for the Settlement Agreement, since the tolling of the statute of limitations on their bodily injury claims ceased at least no later than July 19, 2013 (i.e., the date on which the motion for class certification was filed in Arrington).  See Mot. for Class Cert. (Arrington Dkt. #174).

The fact the Settlement does not resurrect claims that were already time-barred when this litigation began, however, does not prejudice any member of the Settlement Class nor does it justify rejecting a Settlement that provides meaningful relief to more than four million individuals.  See Mishkin Rpt. (Dkt. #168-1) at 4.  To the contrary, claims that were time-barred upon the filing of Arrington simply remain time-barred, and neither the filing of Arrington nor the Settlement itself places persons with time-barred claims in a worse position than they otherwise would be.  See Settlement Agt. (Dkt. #154-1) at § XXI(S).

Mr. Arrington nevertheless objects to the proposed Settlement on the grounds that any claim he has against Eastern Illinois University ("EIU") may have expired, because he may not have filed a claim with the State of Illinois Court of Claims in a timely manner.  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 22.  As the Court recognized during the August 18, 2015 hearing, however, this objection has nothing to do with the terms of the proposed Settlement.  See Aug. 18, 2015 Hr'g Tr. (Dkt. #208), Ex. A hereto, at 7 (assuming Mr. Arrington's claim against EIU expired, that "wouldn't really have anything to do with the terms of the proposed settlement vis-à-vis the putative class to the extent that the terms as currently proposed are eventually proved by the Court if they are approved by the Court").  The Settlement places no restriction on Mr. Arrington's ability to pursue individual bodily injury claims against the NCAA or any other person or entity, and the fact the Settlement does not resurrect or resuscitate claims that were already time-barred at the time this litigation began is not a valid objection.[4]  See Settlement Agt. (Dkt. #154-1) at § II(NN).

### D.  Mr. Arrington's Remaining Objections Simply Rehash Mr. Nichols' Baseless Arguments

Mr. Arrington's remaining objections to the proposed Settlement are largely a rehash of arguments already made by Mr. Nichols, all of which have already been the subject of extensive

---

[4]  EIU, of course, is not a party to this action, and the NCAA takes no position with respect to the status of any claims Mr. Arrington may or may not have against EIU.  See NCAA Answer to Fourth Am. Compl. (Dkt. #177) at Aff. Defense No. 22 (failure to join necessary parties).

briefing.  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 16; Nichols' First Obj. (Dkt. #183) at 8-13; Pls.' [Corrected] Resp. (Dkt. #187) at 11-12; NCAA June 22, 2015 Resp. (Dkt. #191) at 7-13.  First, Mr. Arrington claims that the proposed injunctive relief in the Settlement is illusory, because it supposedly is only a reaffirmation of policies and procedures the NCAA has already implemented.  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 16.  As a matter of fact, however, the Settlement Agreement includes new and meaningful injunctive relief, including:  (i) a requirement that all NCAA member institutions implement annual baseline testing for all student-athletes; (ii) a requirement that NCAA member institutions provide increased access to medical personnel at athletic practices and games; and (iii) the creation of a new reporting process through which member institutions will report to the NCAA information about the incidence and resolution of diagnosed concussions.  See Settlement Agt. (Dkt. #154-1) at §§ IX(A)(1), (4)-(5); see also NCAA June 22, 2015 Resp. (Dkt. #191) at 12-13.[5]

Second, Mr. Arrington asserts that the Medical Monitoring Program is designed to discourage participation by members of the Settlement Class and that it otherwise delivers minimal benefits.  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 16.  As the NCAA has already made clear, however, the Medical Science Committee ("MSC"), which is composed of four of the nation's leading experts in neurology and neuropsychology, designed the Medical Monitoring Program over the course of four months of extensive efforts.  See MSC Rpt. (Dkt. #159) at ¶ 3; MSC Bios (Dkt. #191-2).  Those efforts included designing a Screening Questionnaire, which includes important questions about a Class Member's personal history that

---

[5]  While Mr. Arrington alleges that future student-athletes would benefit disproportionately from the injunctive relief provided by the Settlement (Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 19), Mr. Arrington himself sought injunctive relief in the initial pleading he filed with this Court, seeking to require the NCAA to adopt concussion guidelines.  See Compl. (Arrington Dkt. #1) at ¶ 56, Req. for Relief.  Notably, Mr. Arrington sought that injunctive relief even though he was no longer participating in any NCAA sport at the time he filed his case.  See id. at ¶¶ 25, 31.  Accordingly, his objection with respect to current versus former student-athletes is difficult to square with his earlier decision to seek injunctive relief that would benefit current and future student-athletes.  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 19; Compl. (Arrington Dkt. #1) at ¶ 56, Req. for Relief.

will help determine risk factors for later-life clinical symptoms and will make the Medical Evaluations more effective and efficient.  See MSC Rpt. (Dkt. #159) at §§ II-III; NCAA June 22, 2015 Resp. (Dkt. #191) at 9.  Such questions are, in turn, fully consistent with the standard of care and with the compilation of a complete medical history.  See NCAA June 22, 2015 Resp. (Dkt. #191) at 9.  For his part, Mr. Arrington does not cite any expert to support his cursory critique of the Medical Monitoring Program.  See Arrington Obj., Ex. A (Dkt. #236-1) at passim. His suggestion, however, that the MSC members (who have devoted their professional careers to the diagnosis and treatment of head trauma) intentionally designed a Medical Monitoring Program to discourage members of the Settlement Class from seeking medical monitoring is baseless.  The Medical Monitoring Program was designed to help (not hinder) members of the Settlement Class, and there is little doubt Mr. Arrington himself could benefit from screening and a thorough evaluation of his medical condition by treatment providers uniquely qualified to provide such care and treatment.  See NCAA June 22, 2015 Resp. (Dkt. #191) at 7-8, 10-11; MSC Rpt. (Dkt. #159) at passim; see also Arrington Dep. Tr., Ex. B hereto, at 75:2-76:1, 78:6-80:15, 103:22-104:20, 209:4-12 (Mr. Arrington testifying about his complaints and concerns vis-à-vis the medical treatment and diagnosis he has received).  Such an evaluation, however, can only occur if a full and complete medical history is obtained.  See NCAA June 22, 2015 Resp. (Dkt. #191) at 8-9; MSC Rpt. (Dkt. #159) at ¶¶ 5, 25.

Third, Mr. Arrington's dismissal of the value of the Medical Evaluations available to Qualifying Class Members is likewise unavailing.  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 16.  As an initial matter, Mr. Arrington takes contradictory positions, first downplaying the benefit of the Medical Monitoring Program as "a co-payment savings of approximately $40.00" but then conceding that the Program is valuable for many members of the Settlement Class.  See id. at ¶¶ 16, 18.  As to Mr. Arrington's estimate of a Medical Evaluation's monetary value, however, there is no assurance that the health insurance of a Settlement Class Member would

cover the extensive neurological and neuropsychological examinations and mood and behavioral evaluations that are part of the Medical Evaluations.  See NCAA June 22, 2015 Resp. (Dkt. #191) at 10.  Further, the personal physician of a member of the Settlement Class may lack the expertise and experience required to administer these evaluations and make the proper diagnosis, as Mr. Arrington believes was the case vis-à-vis his personal situation.  See id. at 10-11; Arrington Dep. Tr., Ex. B hereto, at 101:21-23 ███████████████████████

██████████████████████████████████████████████████████

███████████████ .  If the Settlement is approved, however, 33 Program Locations across the country will be selected to administer the evaluations.  See id. at 10; Settlement Agt. (Dkt. #154-1) at § IV(B)(1).  Each location will be vetted to assure that it has providers with the requisite experience and skill to perform the evaluations properly.  See id.; Mem. in Supp. of Mot. for Prelim. Approval (Dkt. #156) at 8.  The MSC will also prepare a comprehensive, written protocol for how Medical Evaluations are to be conducted, ensuring the highest quality of care.  See MSC Rpt. (Dkt. #159) at ¶¶ 21-26.  Accordingly, the Medical Evaluations called for by the Settlement provide a real benefit to Class Members that is not readily obtainable (if at all) outside of this Settlement.  See MSC Rpt. (Dkt. #159) at passim; Andersen Decl. (Dkt. #158) at ¶¶ 7, 15-16.[6]

Fourth, Mr. Arrington wrongly asserts that monies remaining in the Medical Monitoring Fund after fifty years "will effectively go to NCAA member institutions to fund concussion

---

[6]    To be sure, Mr. Arrington would be fully eligible to participate in the Medical Monitoring Program and the Medical Evaluations provided by the Settlement Agreement.  See Settlement Agt. (Dkt. #154-1) at §§ II(D), IV(B)(3).  While Mr. Arrington suggests in his November 5, 2015 submission that he has already been diagnosed, he also complains of his inability to afford competent medical care as well as the capabilities of the providers who have treated him.  See Arrington Obj., Ex. A (Dkt. #236-1) at ¶¶ 5, 8, 11, 13; Arrington Dep. Tr., Ex. B hereto, at 104:2-4, 104:19-20 ████████ ████████████████████████████████ ████████  Participation in the Medical Monitoring Program, however, would be free for members of the Settlement Class, and there is little doubt that Mr. Arrington would benefit from a thorough and comprehensive evaluation of his condition performed by leading physicians and other medical practitioners.  See MSC Rpt. (Dkt. #159) at ¶¶ 21-26; see also Mem. in Supp. of Mot. for Prelim. Approval (Dkt. #156) at 8-9; Garretson Rpt. (Dkt. #161) at ¶¶ 35-36.

research." Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 16. At the Court's suggestion, the parties amended the Settlement to provide that at the discretion of the MSC, monies remaining in the Medical Monitoring Fund at the end of the fifty-year Medical Monitoring Period may be used to extend the Medical Monitoring Program. See Settlement Agt. (Dkt. #154-1) at § IV(A)(4). Thus, the Settlement would continue to provide what Mr. Arrington concedes is valuable medical monitoring to Class Members. See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 18. In the alternative, at the discretion of the MSC, monies remaining in the Fund after fifty years may be donated to an institution or institutions selected by the MSC to be used for concussion-related research. See id. Such a use, however, is entirely permissible and would likewise be beneficial to members of the Settlement Class. See, e.g., Hughes v. Kore of Ind. Enterprise, Inc., 731 F.3d 672, 675-76 (7th Cir. 2013) ("award[ing] to a charity the money that would otherwise go to the members of the class as damages, if distribution to the class members is infeasible" is permissible).

### E. Mr. Arrington Fails To Identify An Intra-Class Conflict

Although Mr. Arrington's objection to the Settlement Agreement is largely based upon a misunderstanding of its key terms, his personal disapproval most certainly does not constitute an intra-class conflict that requires appointment of separate lead counsel for members of the Settlement class who allege bodily injuries. See Arrington Obj., Ex. A (Dkt. #236-1) at ¶ 24. As addressed in detail in earlier briefing, the Medical Monitoring Program benefits all Settlement Class Members. See NCAA June 22, 2015 Resp. (Dkt. #191) at 7-11; Pls.' [Corrected] Resp. (Dkt. #187) at 9-11. Any Class Member who believes that he or she may be suffering from the effects of a head trauma sustained while participating in an NCAA-sanctioned sport can complete the Screening Questionnaire and receive insight into his or her current cognitive functionality. See NCAA June 22, 2015 Resp. (Dkt. #191) at 8. The proposed Settlement was thus designed to avoid conflicts of interest and does not differentiate among Class Members, instead providing the same medical monitoring benefits to all Class Members. See id. at 6-7; cf.

9

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 627 (1997) (finding intra-class conflict where "settlement's terms . . . reflect essential allocation decisions designed to confine compensation and to limit defendants' liability"). Therefore, there is no conflict, and Mr. Arrington's request for appointment of new lead counsel should be denied. See Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986) (intra-class conflict exists where class members "have antagonistic or conflicting interests"); cf. Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 187 (3d Cir. 2012) (finding intra-class conflict where settlement divided putative class of car owners into two groups that would receive different benefits).[7]

## CONCLUSION

WHEREFORE, the NCAA respectfully requests that the Court overrule Mr. Arrington's objections, deny Mr. Arrington's request for appointment of new lead counsel and grant the pending motion for preliminary approval. The NCAA further requests any other relief the Court deems appropriate.

Dated: November 16, 2015

Respectfully submitted,

/s/ Mark S. Mester
Lead Counsel for Defendant
National Collegiate Athletic Association

Mark S. Mester
  mark.mester@lw.com
Johanna M. Spellman
  johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

---

[7]  We further note that Mr. Arrington admits in his declaration that the terms of the Settlement were explained to him in 2014, but he offers no explanation as to why he waited over a year to make an objection to the Settlement. See Arrington Obj., Ex. A (Dkt. #236-1) at ¶¶ 12-13. This inordinate delay, however, only casts further light on the questionable circumstances surrounding Mr. Arrington's abrupt decision in June of 2015 to change counsel. See Ill. R. Prof. Conduct 4.2 (addressing ex parte communications with represented parties).

J. Christian Word
   christian.word@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

## CERTIFICATE OF SERVICE

I, Mark S. Mester, certify that on November 16, 2015, a true and correct copy of the

RESPONSE OF THE NCAA TO ADRIAN ARRINGTON'S OBJECTION TO THE

PROPOSED SETTLEMENT was filed through the ECF system and served upon the following

parties by prepaid first class mail.

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Edgar D. Gankendorff
PROVOSTY & GANKENDORFF, L.L.C.
650 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone:  (504) 410-2795
Facsimile:  (504) 410-2796

/s/ Mark S. Mester
Mark S. Mester
  mark.mester@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION** | ) ) ) ) ) ) ) ) ) | **MDL No. 2492**<br><br>**Master Docket No. 1:13-cv-09116**<br><br>**This Document Relates to All Cases**<br><br>**Judge John Z. Lee**<br><br>**Magistrate Judge Geraldine Soat Brown** |

**EXHIBITS TO RESPONSE OF THE NCAA TO ADRIAN ARRINGTON'S
OBJECTION TO THE PROPOSED SETTLEMENT**

[REDACTED VERSION, PUBLICLY FILED]

A.    Transcript of Proceedings Before The Honorable John Z. Lee (Aug. 18, 2015)

B.    Excerpts from Deposition Transcript of Adrian Arrington (Mar. 14, 2013)

# Exhibit A

```
 1                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE      )   Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-    )
 4   ATHLETE CONCUSSION INJURY        )   Chicago, Illinois
     LITIGATION,                      )   August 18, 2015
 5                                    )   9:00 o'clock a.m.

 6                    TRANSCRIPT OF PROCEEDINGS - MOTION
                    BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For Plaintiff Arrington:     CLIFFORD LAW OFFICES, by
 9                                MS. SHANNON MARIE McNULTY
                                  120 North LaSalle Street
10                                Suite 3100
                                  Chicago, Illinois 60602
11
     For the Plaintiffs:         HAGENS BERMAN SOBOL SHAPIRO, by
12                                MS. ELIZABETH A. FEGAN
                                  455 North Cityfront Plaza Drive
13                                NBC Tower - Suite 2410
                                  Chicago, Illinois 60611
14
                                  SIPRUT PC, by
15                                MR. RICHARD L. MILLER II
                                  MR. GREGG M. BARBAKOFF
16                                17 North State Street
                                  Suite 1600
17                                Chicago, Illinois 60602

18   For the Objectors:          EDELSON PC, by
                                  MR. RAFEY S. BALBANIAN
19                                MR. ARI JONATHAN SCHARG
                                  350 North LaSalle Street
20                                Suite 1300
                                  Chicago, Illinois 60654
21

22

23                    ALEXANDRA ROTH, CSR, RPR
                          Official Court Reporter
24                      219 South Dearborn Street
                             Room 1224
25                      Chicago, Illinois 60604
                           (312) 408-5038
```

1   APPEARANCES:   (Continued)

2   For Defendant NCAA:          LATHAM & WATKINS, by
                                 MS. JOHANNA MARGARET SPELLMAN
3                                233 South Wacker Drive
                                 Suite 5800
4                                Chicago, Illinois 60606

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings had in open court:)

2            THE CLERK:  13 C 9116, NCAA Student-Athlete Concussion

3    Injury Litigation, for motion hearing.

4            MS. McNULTY:  Good morning, your Honor.  Shannon

5    McNulty on behalf of Arrington.

6            MS. SPELLMAN:  Good morning, your Honor.  Johanna

7    Spellman on behalf of defendant NCAA.

8            MS. FEGAN:  Good morning, your Honor.  Elizabeth Fegan

9    on behalf of plaintiffs.

10           MR. MILLER:  Good morning, your Honor.  Richard

11   Miller, Siprut PC, on behalf of plaintiffs.

12           MR. BARBAKOFF:  Good morning, your Honor.  Gregg

13   Barbakoff, Siprut PC, on behalf of plaintiffs.

14           MR. BALBANIAN:  Good morning, your Honor.  Rafey

15   Balbanian and Ari Scharg on behalf of the objectors.

16           THE COURT:  All right.  So this is Mr. Arrington's

17   motion for leave to file an opposition to the proposed

18   settlement.  Robert Clifford as well as -- well, Robert

19   Clifford has entered an appearance on behalf of Mr. Arrington,

20   as members of his firms.

21           I guess my question to you is, my understanding is

22   that Mr. Clifford also is counsel for the Nichols plaintiffs,

23   isn't that correct?

24           MS. McNULTY:  That's true, your Honor.

25           THE COURT:  And so my question is, what new objections

1   would be raised by Mr. Arrington in his particular opposition

2   or objections that wouldn't previously be addressed or would

3   not come within the scope of the briefing that I have already

4   provided?

5        MS. McNULTY:  There are a few, your Honor.  This in

6   fact is the document I seek to file with the Court.  But

7   namely, it is a -- a clarification of both the history of Mr.

8   Arrington's involvement in the case and as well a clarification

9   on the effect the proposed settlement would ever have on any

10  individual personal injury claims; namely, the fact that the

11  proposed settlement does indeed have the effect of releasing

12  those claims because none of those claims were preserved.

13       Of course, everyone knows that any claim against a

14  state university in the State of Illinois must be filed with

15  the Court of Claims within one year.  And that has not been

16  done.  Mr. Arrington's personal injury claims are now gone

17  against the school.

18       THE COURT:  So he is objecting to -- I guess I am

19  still not quite clear what exactly he --

20       MS. McNULTY:  He is objecting to -- he is reinforcing

21  the objections that have already been placed before the Court.

22  However, he is making a point of further distinction in that

23  despite the defendants -- or excuse me -- despite the

24  plaintiffs for the medical monitoring class arguing that the

25  settlement does not release personal injury claims, the release

1    for the proposed settlement has that effect.  Even if that

2    language is not in such release, that is precisely what the

3    proposed settlement does because it does not allow Arrington

4    and those similarly situated to proceed with this litigation.

5         THE COURT:  I guess I'm still a little confused

6    because whatever release is approved by the Court as part of

7    the settlement would be obviously limited to the specific

8    causes of action that are set forth in the settlement

9    agreement.  And so whatever rights Mr. Arrington may or may not

10   have with regard to personal injury rights on behalf of himself

11   with regard to whatever institutions, those are unaffected

12   either by the filing of this lawsuit or the settlement itself.

13   Isn't that correct?

14        MS. McNULTY:  I don't necessarily agree with that,

15   your Honor.  I think that there is still work to be done in

16   this case specific to a common issue that should be certified

17   and not abandoned as contemplated by the current proposed

18   settlement.

19        The medical monitoring has value for a portion of the

20   class.  However, the proposed settlement would have the effect

21   of causing an abandonment of the remaining litigation that

22   stands to be done in this case.

23        THE COURT:  But my question is, how would the terms of

24   the proposed settlement have that effect?

25        MS. McNULTY:  The terms of the proposed settlement

1    would have that effect because Arrington and those who are in

2    nearly identical situations, would not be able to pursue any

3    further litigation.

4         THE COURT:  On a class-wide basis, right?  Is that

5    what you are saying?

6         MS. McNULTY:  Or an individual basis.

7         THE COURT:  But the individual claims, personal

8    damages claims, at least under the proposed settlement, are

9    expressly reserved.  And so they are not even reserved.  They

10   are just basically -- they are segregated out.  And the

11   settlement isn't going to touch that or -- or deal with any of

12   those issues.

13        So I guess I am still not understanding how, if we

14   focus for this purpose, what I want to do, on Mr. Arrington

15   himself, why would his rights to pursue an individual personal

16   damages claim against whomever be adversely affected by the

17   terms of the proposed settlement?

18        MS. McNULTY:  Because lead counsel did not preserve

19   those claims.  Those claims are no longer viable.  The statute

20   of limitations in the Court of Claims of the State of Illinois,

21   which is the only place that he could pursue relief as it is

22   suggested by lead counsel under the current proposed

23   settlement, those are now gone.  They cannot be -- they cannot

24   be pursued because they were not preserved or protected by lead

25   counsel.

1    THE COURT:  Well, then if that's the case, at this

2    point I am not -- I don't think I can know one way or the

3    other.  But even assuming that's the case for purposes of

4    argument, then he would have a malpractice claim against his

5    counsel.  It wouldn't really have anything to do with the terms

6    of the proposed settlement vis-a-vis the putative class to the

7    extent that the terms as currently proposed are eventually

8    proved by the Court if they are approved by the Court.

9    And so I guess I'm still not understanding how Mr.

10   Arrington's objections, proposed objections, are any different

11   in kind than those that the lead objectors or the Court has

12   determined to be lead objectors -- and by the way who are also

13   represented by Mr. Clifford and his firm -- how they are

14   different in kind than those that are already raised in this

15   action?

16   MR. BALBANIAN:  Your Honor, may I be heard?

17   THE COURT:  Hold on.  Let her finish.

18   MS. McNULTY:  Your Honor, I have no doubt that the

19   Court has been fully apprised of all possible objections or

20   permutations that the settlement would have.  However, we do

21   have this pleading, which is I think ten or 12 paragraphs, that

22   simply states for clarity on the record Mr. Arrington's

23   specific objections, many of which the Court has, of course,

24   heard on behalf of those similarly situated.  However, he was

25   the and remains the lead plaintiff.  And he does have actual

1    injury.  And he has not been consulted in connection with the

2    settlement or it's presentation to the Court.  And he has not

3    had any opportunity prior to this motion to articulate those

4    objection.

5         And so that is really, you know, part and parcel to

6    the purpose of the -- the minimal pleading that is going to be

7    filed, if I have leave of Court.

8         MS. FEGAN:  Your Honor, I guess I would start that --

9    with the fact that Mr. Clifford has been in this case since

10   October 2013.  The subject of the release has been part of

11   ongoing objection over the last two years, the scope of it,

12   whether or not we preserve claims against the NCAA with respect

13   to personal injury as well as our specific request that this

14   Court take steps to ensure that individual personal injury

15   claims are not prejudiced as a result of this settlement.  And

16   this Court has been very well aware, rolled up its sleeves and

17   has dove into those issues.

18        We are still at preliminary approval.  And Rule 23

19   does provide a mechanism by which Mr. Arrington and any other

20   class member will be able to come forward upon notice to have

21   all these views heard.  And to start over again with, you know,

22   a very individual issue, which is apparently Mr. Arrington's

23   concern about his claim against his school -- he will have an

24   opportunity to present that to the Court or in another forum.

25        But the point is that this case has always been about

1   the NCAA and NCAA's duties and its rules.  And it's our beliefs

2   that the rules were deficient.  And the settlement is providing

3   a mechanism by which to correct those rules and to provide

4   medical monitoring for 4.2 million current and former student

5   athletes.

6           So at this point, given the length of time, given the

7   fact that we are already in a fact-based briefing before this

8   Court on Rule 23, we think it makes sense to see that through,

9   to provide notice to all class members.  And Mr. Arrington will

10  have his time and his day in court to present the objection.

11  But it just seems like it's -- this isn't that point.

12          MR. BALBANIAN:  Thank you, your Honor.

13          There is a couple things that I think Arrington is

14  saying.  I think he has a substantive objection to the

15  settlement, as we do.  But he also has a separate objection, I

16  think, from what I read in his papers, which is, I didn't know

17  about the settlement.  I didn't authorize the settlement.

18          That's a significant point.  That goes to the adequacy

19  of counsel.  And as Ms. Fegan remarked, we're at the Rule 23

20  stage.  And the Court has to make a finding on certification.

21  If we have a situation where Mr. Arrington wasn't consulted

22  when it came to signing and agreeing to the settlement

23  agreement, then we have a real problem as far as adequacy of

24  counsel.  And the Court has to make a determination on that

25  point, I think.

1    So if Arrington wants to file a substantive objection,

2    our position is, sure, whatever, of course.  But I think on the

3    issue of whether Arrington had notice and an opportunity to

4    agree to this settlement, because it wasn't signed by him, I --

5    I think it's important to understand class counsel's position,

6    to a lesser extent defense counsel's position.  But I think

7    certainly that is something it will supplement the record and

8    something that is not before this Court right now.

9    MS. SPELLMAN:  Your Honor, if I may?  And Mr. Mester

10   asked me to convey his regret that he couldn't be here today.

11   He had a prior work commitment in California.

12   We were likewise somewhat surprised to see the motion

13   filed last week.  As the Court is aware, Mr. Nichols has been

14   designated the lead objector.  And as Ms. Fegan alluded to, Mr.

15   Clifford has been involved in this case for some time, even

16   appeared on some of Mr. Nichols' filing.  So we were a little

17   bit confused as to why his objections couldn't be consolidated

18   with the objections that Mr. Nichols has made.

19   In -- in hearing Mr. Arrington's counsel's explanation

20   for his motion today, it sounds as -- to me, your Honor,

21   that -- and, your Honor, as you noted, he may have a

22   malpractice claim.  The reasons that his counsel have given

23   seems to have to do with his potential claim against his -- his

24   school, which is not a party to this case.  I didn't hear

25   anything about how the settlement would prejudice his claim

1    against the NCAA.

2            And we don't necessarily oppose this motion.  But we

3    are sensitive to the fact that the Court has received quite a

4    lot of briefing on this issue and -- and wouldn't want to

5    unduly burden the Court with unnecessary briefing.

6            THE COURT:  All right.  Thanks for all the arguments.

7    I appreciate that.

8            I am going to go ahead and allow Mr. Arrington to file

9    his pleading.  And the reason I am doing so is as follows, is

10   that Mr. Arrington has a rather unique position in the case as

11   one of the named plaintiffs in one of the various MDL -- or the

12   various class actions consolidated by the MDL Court before me.

13   In light of that particular position as named counsel -- and he

14   was not only named counsel.  One of the actions who's the named

15   counsel -- or named plaintiff rather in the action that was

16   originally filed before me in this court.

17           I am going to allow him to file his objections.  If I

18   need a response from any of the parties, I will let you know.

19   Otherwise I will take a look at it and consider it with all of

20   the other things that I am looking at as part of the

21   preliminary approval process.  Okay?

22           All right.  Thank you very much.

23           MS. FEGAN:  Thank you, your Honor.

24       (Which were all the proceedings had at the hearing of the

25        within cause on the day and date hereof.)

1                             CERTIFICATE

2        I HEREBY CERTIFY that the foregoing is a true, correct

3  and complete transcript of the proceedings had at the hearing

4  of the aforementioned cause on the day and date hereof.

5

6  /s/Alexandra Roth                   8/19/2015
   _____     _____

7  Official Court Reporter                Date
  U.S. District Court

8  Northern District of Illinois
  Eastern Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit B

**FILED UNDER SEAL**