```
 1                 IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE         )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-       )
 4   ATHLETE CONCUSSION INJURY           )  Chicago, Illinois
     LITIGATION,                         )  March 3, 2016
 5                                       )  2:00 o'clock p.m.

 6           TRANSCRIPT OF PROCEEDINGS - STATUS, MOTION
                 BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:           HAGENS BERMAN SOBOL SHAPIRO, by
 9                                 MS. ELIZABETH A. FEGAN
                                   455 North Cityfront Plaza Drive
10                                 Suite 2410
                                   Chicago, Illinois 60611
11
                                   HAGENS BERMAN SOBOL SHAPIRO, by
12                                 MR. STEVE W. BERMAN
                                   1918 8th Avenue
13                                 Suite 3300
                                   Seattle, Washington 98101
14
                                   SIPRUT PC, by
15                                 MR. TODD McLAWHORN
                                   17 North State Street
16                                 Suite 1600
                                   Chicago, Illinois 60602
17
     For the Lead Objectors:       EDELSON PC, by
18                                 MR. JAY EDELSON
                                   350 North LaSalle Street
19                                 Suite 1300
                                   Chicago, Illinois 60654
20

21
                         ALEXANDRA ROTH, CSR, RPR
22                         Official Court Reporter
                        219 South Dearborn Street
23                              Room 1224
                          Chicago, Illinois 60604
24                           (312) 408-5038

25
```

```
 1   APPEARANCES:  (Continued)

 2   For the Whittier Plaintiff:    COATS ROSE YALE RYMAN & LEE, by
                                    MR. DWIGHT E. JEFFERSON
 3                                  Nine Greenway Plaza
                                    Suite 1100
 4                                  Houston, Texas 77046

 5   For the Morgan Plaintiffs:     JAMES C. SELMER & ASSOCIATES, by
                                    MR. MARC M. BERG
 6                                  500 Washington Avenue
                                    Suite 2010
 7                                  Minneapolis, Minnesota 55415
                                    (appearing telephonically)
 8
     For Defendant NCAA:            LATHAM & WATKINS, by
 9                                  MR. MARK STEVEN MESTER
                                    MS. JOHANNA MARGARET SPELLMAN
10                                  233 South Wacker Drive
                                    Suite 5800
11                                  Chicago, Illinois 60606

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Proceedings had in open court:)
2             THE CLERK:  13 C 9116, NCAA Student-Athlete Concussion
3    Injury Litigation, for status and motion hearing.
4             MR. BERMAN:  Good afternoon, your Honor.  Steve Berman
5    on behalf of the proposed class.  With me is my partner,
6    Elizabeth Fegan.
7             MR. MESTER:  Good afternoon, your Honor.  Mark Mester
8    and Johanna Spellman on behalf of the NCAA.
9             MR. McLAWHORN:  Todd McLawhorn also here from Siprut
10   PC on behalf of the plaintiff class.
11            MR. EDELSON:  Good afternoon, your Honor.  Jay Edelson
12   on behalf of the lead objector.
13            THE COURT:  Who do we have on the phone?
14            MR. BERG:  Excuse me?
15            THE COURT:  If you are on the phone, can you identify
16   yourself please?
17            MR. BERG:  Yes.  Marc Berg, Marc B-e-r-g, in
18   Minneapolis on behalf of Paul Morgan, Cliff Deese and Joey
19   Balthazor.
20            MR. JEFFERSON:  Judge, also Dwight Jefferson on behalf
21   of the objector.
22            THE COURT:  All right.  Good afternoon, everyone.
23            Is anyone else on the phone that I missed?
24            All right.  We are here for status in this case.
25   There have also been a couple of motions that have been filed.

1  Let me deal with them first.
2  First of all, with regard to the motion of plaintiff
3  Whittier to supplement the record previously presented to the
4  Court, not sure what relief they are seeking, but certainly
5  their objections that they filed are of record.  The Court,
6  frankly, I reviewed the objections before issuing my January
7  26, 2016 opinion.  And because the issues that they raise are
8  basically similar, if not identical, to the objections and
9  issues that were raised by Nichols' counsel, that's why I
10 didn't refer to Whittier directly.  But certainly, the -- I did
11 review it before issuing the January 26, 2016 order and took
12 those arguments into consideration.  They are part of the
13 record.
14 So the other motion, housekeeping matter, is motion
15 for leave to withdraw as counsel.  That motion is granted.
16 And then finally, there is a motion by the NCAA for
17 leave to supplement the record previously presented to the
18 Court.  Mr. Mester, it's your motion.  Go ahead if you want to
19 speak on it.
20 MR. MESTER:  Thank you, your Honor.
21 As we set forth in the papers, we are requesting leave
22 to provide the Court with additional record material that was
23 not provided to the Court previously, with the focus in this
24 instance on the proposed single-school, single-sport classes
25 that were addressed in your Honor's January 26 opinion.

Case: 1:13-cv-09116 Document #: 258 Filed: 03/21/16 Page 5 of 18 PageID #:6969

5

1           The issues we would like to address would be on the
2    one hand ascertainability as informed by the relevant medical
3    literature, and on the other hand the other relevant Rule 23
4    factors, namely ascertainability, typicality, predominance,
5    manageability and superiority, again as informed by the prior
6    record amassed in the Arrington case.
7           THE COURT: Okay. So I take it that the supplemental
8    information would be addressed towards -- I guess in my January
9    26 order I stated, quote: "The factual record before the
10   Court, however, does not provide sufficient facts from which
11   the Court can conclude that a class that is much more narrowly
12   defined in terms of size, type of sport and/or time period
13   could never be certified against a particular school. Nor can
14   the Court conclude from the present record that a very narrowly
15   defined, single-school personal injury class could never be
16   certified against the NCAA."
17          And the purpose of the supplemental filings and the
18   supplemental factual information that the NCAA provide would be
19   to address that particular issue, is that correct?
20          MR. MESTER: That's correct, your Honor. The prior
21   briefing we attempted to, and I believe we did, address the two
22   proposed classes that the lead objector, Mr. Nichols, was
23   proposing, the nationwide (b)(3) class on the one hand and the
24   (c)(4) class on the other. You certainly did address those and
25   had I think an adequate -- more than adequate record before

1 your Honor.

2 But we'd now like to -- an opportunity to address the
3 narrower classes that you -- that you alluded to in your
4 January 26 order.

5 MR. JEFFERSON: Your Honor, would that relate to the
6 classes -- the class that I referenced in my filings of
7 football players between the years 1960 and 2014?

8 THE COURT: I think what -- it would be a much more
9 narrow class, right? I would take it from Mr. Mester that the
10 NCAA wants to basically make the argument that, based upon the
11 factual record that's been developed in the cases that have
12 been previously before the Court, that the Court has a
13 reasonable basis to determine or conclude that the likelihood
14 of a 23(b)(3) damages class, even if it's limited to a single
15 school, that the value of such a class or the value of that
16 procedure right would be minimal.

17 MR. MESTER: That's correct, your Honor.

18 MR. JEFFERSON: I am not understanding that, Judge.
19 Value in the sense of the damages that can be recovered?

20 THE COURT: No, value in terms of how likely is it for
21 a Rule 23(b)(3) class to be granted in a single-school context.

22 MR. JEFFERSON: Thank you.

23 THE COURT: Okay. And obviously, Mr. Mester, that
24 raises a lot of different permutations, right? So you could
25 imagine a class, single school, single sport, single year. But

1  you can also imagine the scenario where you may have multiple
2  teams of a sport over several years that may have had the same
3  coach and the same overall procedures or lack of procedures.
4  One can also imagine, I suppose, a scenario where you might
5  have athletes of various sports.
6       Say, take a hypothetical example, and this is purely
7  hypothetical because I don't have any other record before me.
8  But say, one can imagine that if there were a school to exist
9  where you had medical personnel that adequately addressed
10 concussion-related or head injuries in football, but perhaps
11 not in baseball, soccer and hockey, that those athletes may
12 file suit over one year or a number of years, depending on the
13 permutation.
14      So I guess there is a number of factors to consider in
15 trying to assess the likelihood of a 23(b)(3) class taking
16 place in a single-school context.
17      MR. MESTER:  Yes, your Honor.  And what we have in
18 mind is bringing to your Honor's attention, that -- that -- the
19 received literature on the incidence rate of concussions and
20 also then the rate of long-term effects from those concussions,
21 which would inform the viability of the claims, but also the
22 numerosity of any proposed class along those various
23 permutations, and then in addition to that address, based upon
24 the record that's been amassed in Arrington, what the
25 individual claims look like, and -- and why in our view they

1    would not be amenable to class treatment even for a narrower
2    class.
3           MR. JEFFERSON: Judge, what I am getting from -- from
4    your question and as you laid out the hypothetical is that what
5    counsel is asking to do would -- does appear to be quite
6    premature from the standpoint before any -- any of these cases
7    have been filed, for asking the Court to make a determination
8    as you pointed out.
9           There are a lot of factors that may be involved with
10   that, like a coach that had been on the school for 20 years, as
11   opposed to a school that had ten coaches for 20 years, or as
12   you pointed out, the standards related to basketball as opposed
13   to football or soccer.
14          And so thinking that that may in fact be premature to
15   ask the Court at this time to make a determination on cases
16   that have yet to be filed and are before the Court.
17          THE COURT: Well, I guess, the difference would be
18   that I'm not making a binding determination, right? I'm making
19   a determination with regard to -- well, in the context of my
20   settlement fairness analysis. And so in my opinion of January
21   26, 2016, I noted on page 3 that to the extent the settling
22   plaintiffs and the NCAA are agreeable to these modifications,
23   that is referring to the modification that I suggested, or
24   otherwise able to address the Court's concerns, preliminary
25   approval of the amended class settlement is granted.

1            What I'm hearing from the NCAA is that they believe
2 that they can address the concerns I've raised with regard to
3 whether or not I can assess or determine the likelihood of
4 certification of a 23(b)(3) class in a single-school context,
5 as I have described in my written opinion.
6            MR. MESTER: That's correct, your Honor.
7            THE COURT: So I guess, Mr. Jefferson, what I'm saying
8 is that it's not so much -- I don't construe it as them wanting
9 an advisory opinion of me with regard to, say, a University of
10 Illinois or Washington or take your pick. But it's really to
11 address the concerns that I raised in my January 26, 2016
12 opinion with regard to whether or not the record is sufficient
13 for me to make any sort of assessment as to the probability or
14 likelihood of class certification in those -- in that limited
15 context.
16            All right.
17            MR. JEFFERSON: Judge, can I add then that -- I mean,
18 from what I've read, it appears that one of the primary issues
19 related to, you know, addressing the class certification is
20 superiority from the standpoint whether individual cases --
21 whether the cases can go forward individually, or whether under
22 the doctrine of superiority they should be included in the
23 class, even if that is in the form of a -- of a subclass as a
24 limited subclass, with the argument being that cases that are
25 of low value, that those cases will then benefit from class

1  certification.

2  And from the standpoint of what is -- which -- what is
3  attempted to be accomplished by class certification, that is a
4  fairness in disposition of the cases, that superiority really
5  should control.  And that should be a very serious
6  consideration, very serious consideration of the Court.

7  THE COURT:  You mean in assessing a 23(b)(3) class,
8  the viability of a 23(b)(3) class?

9  MR. JEFFERSON:  Taking 23(b) with 23(c)(5) and the
10 considerations of 23(c)(5) as relates to any questions of where
11 the interest of -- of a class counsel may be divergent, as the
12 Court pointed out in Amchem and Ortiz, that in those instances,
13 superiority really does argue for a subclass.  And both of
14 those cases spoke to that.

15 THE COURT:  In the context of 23(b)(3) and 23(c)(4).
16 I believe that certainly superiority is one of the factors that
17 the Court needs to consider in determining whether a 23(b)(3)
18 class or 23(c)(4) class should proceed.  But obviously the
19 question is, can all of the different factors of Rule 23 be met
20 when it comes to 23(b)(3) certification.

21 MR. JEFFERSON:  I'm sorry, Judge.

22 THE COURT:  Do you have anything to add?

23 MR. JEFFERSON:  Well, I was going to add that from my
24 reading, I though that the whole issue related to numerosity,
25 commonality, that those issues from what I -- from the reading

1    that I've made, what's been filed, I thought those issues had
2    been resolved and that there was no dispute over those.
3                THE COURT:  I think that is exactly what I understand
4    that the NCAA is attempting to dispute.
5                MR. MESTER:  That's right, your Honor.
6                MR. JEFFERSON:  At this time, post the -- post the
7    Court's memorandum and order?  Not before.
8                THE COURT:  We are post my memorandum and order, yes.
9    So I think what they are trying to do is, they are saying,
10   look.  They are saying, look, Judge, you know, we were trying
11   to address the class -- the way I perceive their arguments is
12   that the NCAA was trying to address the class definitions that
13   were set forth in the complaints as well as the various
14   objections that were raised.  And it was in that context that
15   they presented me with the factual record.
16               Because of the issues that I have raised in my
17   memorandum opinion and order, they believe that they can
18   otherwise address the concerns that I raised with regard to the
19   certifiability of a damages class in a single-school context,
20   based upon the record that's currently before the Court or has
21   been developed in the Arrington case.  So that's how I conceive
22   it.
23               As a matter of procedure, given the fact that, Mr.
24   Mester, the Court has ruled on the joint motion for preliminary
25   approval of the amended class settlement and certification of

1  settlement class, rather than providing supplemental briefing,
2  it seems to me that just as a housekeeping matter, procedural
3  matter, that what you may want to do is provide that material
4  in the form of a renewed motion for approval, preliminary
5  approval, of some type.
6      MR. MESTER: With all due respect, we actually
7  understood your order a little differently. We understood it
8  to be a conditional grant of preliminary approval subject to
9  either agreement by the parties to the proposed modification
10 that the Court has suggested in its opinion or some other
11 alternative means to address the Court's concerns.
12     What we'd like to do with the supplemental briefing is
13 try to address the Court's concern. Our understanding was, we
14 didn't have and don't have preliminary approval until we've
15 done one or the other, and we've done neither.
16     THE COURT: I see. So what you want to do is, you
17 want to -- rather than making -- renewing the motion, you just
18 want to file a supplemental information so that you can
19 basically complete one of the conditions of my prior ruling.
20     MR. MESTER: Yes, your Honor.
21     THE COURT: Okay. So how much time do you need for
22 that submission?
23     MR. MESTER: Forty-five days, your Honor, is what we
24 are requesting.
25     THE COURT: Mr. Berman, any thoughts?

1    MR. BERMAN: I have no objection to the motion. We
2 too did not focus on the single-school issue. We focused on
3 the nationwide classes and the proposed nationwide (b)(3) class
4 Mr. Nichols focused on. So we didn't really present you
5 information that's in this record that we think would help you
6 value a single-school claim.
7    So we too would like to supplement the record.
8    THE COURT: And can you do so in the 45 days as well?
9    MR. BERMAN: Yes, sir. I can actually do it in 30, if
10 that would help the Court. I don't have to wait for the Claro
11 group.
12    THE COURT: Thirty days is fine. Thank you.
13    Mr. Edelson?
14    MR. EDELSON: Your Honor, we haven't seen their
15 briefs. The -- we expressed a great bit of skepticism that
16 they are going to be able to do anything, given that the
17 discovery that was taken doesn't address this point.
18    I'm hoping, expecting, that you will give us a chance
19 to respond. And we may -- we may well argue that the record
20 just isn't -- isn't there for you to make the determination,
21 and/or we should get to do some other discovery.
22    I do believe that the issue of numerosity is in a
23 slightly different category. I think that that might be
24 something that they could do a little bit more easily, rather
25 than get into what did the University of Hawaii do from 1994

1 through 1996 with this coach.

2 But perhaps it was discovery into that, and I just
3 missed it when I looked -- when I looked into the discovery.

4 THE COURT: Well, let's do this. I would certainly
5 entertain a request for a response if I think one is necessary.
6 So let's see what is filed first. And then we will reconvene
7 after that, after we have all had a chance to take a look at
8 it.

9 Mr. Jefferson, anything to add at this point?

10 MR. JEFFERSON: No, Judge. I guess, since, as the
11 Court has pointed out, this is being allowed in response to a
12 question raised by the Court in its memorandum order that,
13 although otherwise it may be considered to be an advisory
14 opinion, if in fact they are asking the Court to make a ruling
15 on it, as opposed to providing, as the Court has said, as the
16 Court raised -- raised the issues, question, in its memorandum,
17 just be responding to an inquiry of the Court as opposed to
18 asking the Court to make an advisory opinion regarding cases
19 that have yet to be filed.

20 MR. MESTER: Just to clarify, your Honor, we certainly
21 do not intend to ask you to make an advisory opinion. But as
22 you said, instead we want to provide you with the additional
23 record, materials, that would allow you to complete your
24 fairness analysis with respect to the single-school and single-
25 school, single-sport classes that were referred to in your

1 January 26 order.

2 MR. JEFFERSON: But, Judge, my understanding is, the
3 issue before the Court that was addressed was the issue of the
4 nationwide class, which the Court, from what I read, ruled on
5 it, said there can be none. And that was the issue before --
6 my understanding, the issue before the Court raised in that
7 briefing.

8 THE COURT: Well, the issue that I was addressing was
9 the fairness of the settlement and the scope of the release of
10 being able to proceed on a class-wide basis for personal injury
11 claims.

12 So that was the context in which that was raised.

13 MR. JEFFERSON: Judge, because as was raised by the
14 counsels in response briefing, and as the Court addressed in --
15 in your memorandum order, the District Court in New York has
16 found in relation to the NFL litigation a basis for moving
17 forward with personal injury class actions in that case.

18 THE COURT: Mr. Jefferson, I am well aware of what
19 Judge Brody did with regard to the NFL concussion litigation.
20 And I have addressed that in my opinion.

21 MR. JEFFERSON: Yes, sir.

22 THE COURT: As I noted, on a nationwide basis or even
23 on a multiple-school basis, that this case is very different
24 from the NFL concussion case. And so I do think it's
25 appropriate, if there is information on the record that would

1 help me determine the plausibility of a 23(b)(3) personal
2 damages class on a school-by-school basis, I do think it's
3 appropriate for me to consider it. Now, whether or not I will
4 be persuaded is another thing. But certainly, I think it's
5 worth considering.
6 So let's do this. To the extent that the NCAA and the
7 settling plaintiffs wish to file supplemental authority and
8 materials, why don't I set a deadline, a single deadline, for
9 both. And so I want both to be filed by April 15.
10 MR. JEFFERSON: Judge, is there going to be a page
11 limit on that?
12 THE COURT: That's a very good question, Mr.
13 Jefferson.
14 How many pages can I expect? I do have a lot of pages
15 already on all of these issues.
16 MR. MESTER: Your Honor, obviously it hasn't been
17 written yet. I would say 35 or less, certainly no more than
18 35. If we can do it in 25, we'll do it in 25.
19 MR. BERMAN: Same here, your Honor.
20 THE COURT: All right. I will give you each 35 pages.
21 And then let's set this for status on April 21. My late
22 morning and afternoon are open. I know some counsel are flying
23 from out of town. What is more convenient for your flight
24 schedule, early or late?
25 MR. JEFFERSON: I generally come in the night before,

1 | Judge.  So whichever the Court prefers, morning or afternoon.
2 |     MR. BERMAN:  It's up to you, your Honor.  I am sure my
3 | Chicago office would prefer I leave town earlier.  So maybe
4 | morning is better.
5 |     THE COURT:  All right.  Let's set it for 2:00 o'clock
6 | on Thursday, April 21.
7 |     And at that point, Mr. Edelson, you can raise whatever
8 | issues you want with regard to the supplemental materials, the
9 | response, et cetera, et cetera.  Hopefully it's 75 pages and
10 | more, I am sure, worth of materials.  So we will try our best.
11 | I will try my best to get through it, and I am sure you will
12 | too.
13 |     MR. EDELSON:  We'll read quickly, your Honor.
14 |     MR. JEFFERSON:  Are you placing an additional
15 | limitation on the defendants to the extent that any
16 | supplementation must be matters that are in the record today,
17 | such that they can't go outside of the record and bring
18 | something into the -- into the case now that is not part of the
19 | -- part of the record?
20 |     THE COURT:  Mr. Jefferson, let's see what they file.
21 | Okay?  And then rather than, as you say, prejudging anything,
22 | let's see what they file.  We'll take a look at the information
23 | they provide.  And then we will go from there.  Okay?
24 |     All right.  Very good.  We'll see then.
25 |     MR. MESTER:  Thank you, your Honor.

1      MR. JEFFERSON:  Thank you, your Honor.

2      MR. BERMAN:  Thank you, your Honor.

3   (Which were all the proceedings had at the hearing of the

4   within cause on the day and date hereof.)

5                          CERTIFICATE

6      I HEREBY CERTIFY that the foregoing is a true, correct

7  and complete transcript of the proceedings had at the hearing

8  of the aforementioned cause on the day and date hereof.

9

10   /s/Alexandra Roth                                3/4/2016
   _____     _____
11   Official Court Reporter                            Date
     U.S. District Court
12   Northern District of Illinois
     Eastern Division