# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | **MDL No. 2492** |
| **IN RE NATIONAL COLLEGIATE** | ) | |
| **ATHLETIC ASSOCIATION STUDENT-** | ) | **Master Docket No. 1:13-cv-09116** |
| **ATHLETE CONCUSSION INJURY** | ) | |
| **LITIGATION** | ) | **The Document Relates To:** |
| | ) | **All Cases** |
| | ) | |
| | ) | |
| | ) | **Judge John Z. Lee** |
| | ) | |
| | ) | **Magistrate Judge Geraldine Soat** |
| | | **Brown** |

**SECOND AMENDED CLASS ACTION**
**SETTLEMENT AGREEMENT AND RELEASE**

**TABLE OF CONTENTS**

**Page**

I.      RECITALS................................................................................................1

II.     DEFINITIONS............................................................................................8

III.    PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS...................~~15~~16

IV.     BENEFITS TO SETTLEMENT CLASS MEMBERS...................................~~16~~17

V.      MEDICAL SCIENCE COMMITTEE.............................................................29

VI.     PROGRAM ADMINISTRATOR....................................................................32

VII.    NOTICE ADMINISTRATOR....................................................................~~33~~34

VIII.   SPECIAL MASTER...................................................................................34

IX.     RETURN TO PLAY GUIDELINES, ACADEMIC ACCOMMODATIONS, AND
        CONCUSSION EDUCATION...................................................................~~34~~35

X.      RESEARCH FUNDS...................................................................................37

XI.     NOTICE................................................................................................~~38~~37

XII.    JUDICIAL APPROVAL PROCESS.................................................................39

XIII.   OBJECTIONS TO AND COMMENTS IN SUPPORT OF THE SETTLEMENT...........46

XIV.    EFFECTIVE DATE OF CLASS SETTLEMENT; CONDITIONS TO FINALITY
        OF SETTLEMENT.....................................................................................50

XV.     FINAL ORDER AND JUDGMENT AND RELEASES.........................................51

XVI.    NO ADMISSION OF LIABILITY AND PRESERVATION OF ALL DEFENSES...~~54~~55

XVII.   COMPENSATION OF SETTLEMENT CLASS REPRESENTATIVES AND
        CLASS COUNSEL................................................................................~~55~~56

XVIII.  NOTICES................................................................................................57

XIX.    DISPUTE RESOLUTION........................................................................~~57~~58

XX.     TERMINATION OF SETTLEMENT...............................................................58

XXI.    MISCELLANEOUS PROVISIONS.............................................................~~60~~61

- i -

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Publication Notice |
| B | Long-Form Notice |
| C | [Proposed] Preliminary Approval Order |
| D | Protective Order Pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) |

Subject to Court approval, this Class Settlement Agreement And Release is entered into between and among the following parties (the "Parties"), by and through their respective counsel: (a) ~~Adrian Arrington,~~ Derek Owens, Kyle Solomon, Angelica Palacios, Abram Robert Wolf, Sean Sweeney, Jim O'Connor, Dan Ahern, Paul Morgan, Jeffrey Caldwell, John DuRocher, Sharon Washington, Shelby Williams, Brice Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, Jessica Miller, Anna Bartz, Peter Dykstra, DaChe Williams, Rachel Harada, Natalie Harada, and Adam Walker as Class Representatives on behalf of themselves and as representatives of the Settlement Class (as such Settlement Class is hereinafter defined) (collectively the "Class Representatives"); and (b) the National Collegiate Athletic Association ("NCAA") in order to effect a full and final settlement and dismissal with prejudice of all medical monitoring claims against the NCAA as alleged in the cases consolidated in <u>In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation</u>, MDL No. 2492, Master Docket No. 1:13-cv-09116 (N.D. Ill.), on the terms set forth below and to the full extent reflected herein. Capitalized terms shall have the meaning ascribed to them above and below in Section II of this Agreement.

## I.    RECITALS

WHEREAS, in 2011, two (2) actions were filed in the United States District Court for the Northern District of Illinois: (i) <u>Arrington, et al. v. NCAA</u>, No. 1:11-cv-06356 (N.D. Ill., filed Sept. 12, 2011); and (ii) <u>Owens, et al. v. NCAA</u>, No. 1:11-cv-06816 (N.D. Ill., filed Sept. 28, 2011);

WHEREAS, <u>Arrington</u> and <u>Owens</u> were consolidated by the Court on October 5, 2011 pursuant to N.D. Ill. LR 40.4 (<u>Arrington</u> and <u>Owens</u> are collectively referred to herein as "<u>Arrington</u>");

WHEREAS, on October 19, 2011, the Honorable Sharon J. Coleman appointed Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Joseph Siprut of Siprut PC as Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g);

WHEREAS, on November 21, 2011, the plaintiffs in Arrington filed a Consolidated Complaint, generally alleging on behalf of themselves and all persons similarly situated that the NCAA had breached a duty to student-athletes at NCAA member institutions by failing to adopt appropriate rules regarding concussions. On February 13, 2013, the Arrington plaintiffs amended their pleading and filed the Second Amended Class Action Complaint;

WHEREAS, on March 21, 2013, the NCAA filed its Answer and Affirmative Defenses to the Second Amended Class Action Complaint, denying all material allegations therein and asserting a variety of affirmative defenses;

WHEREAS, from October 2011 through July 2013, and continuing after the Court's questions regarding the settlement, Interim Class Counsel conducted a thorough investigation into the facts and law relating to the matters addressed in the Second Amended Class Action Complaint, which included, among other things: (i) the review of approximately 29,502 documents (176,849 pages) produced by the NCAA; (ii) the review of approximately 8,124 documents (28,485 pages) produced by 42 non-parties; (iii) the review of approximately 3,842 documents (10,144 pages) produced by the Arrington plaintiffs; (iv) the preparation for, taking of and/or defending ten (10) depositions of fact witnesses for the NCAA, four (4) depositions of the Arrington plaintiffs, three (3) third-party depositions, and one (1) deposition of an absent class member; (v) extensive consultation with leading experts on sports-related concussions, including Dr. Robert Cantu, M.A., M.D., F.A.C.S., F.A.C.S.M., (v) research for and preparation of Plaintiffs' Motion for Class Certification, which was supported by a

detailed 83-page Proffer of Facts In Support of Plaintiffs' Motion for Class Certification, and the Expert Report of Dr. Robert Cantu, M.A., M.D., F.A.C.S., F.A.C.S.M.; (vi) consultation with the Medical Science Committee as defined below; (vii) consultation with the 25 proposed class representatives; and (viii) consultation with Judge Wayne R. Anderson in his capacity as head of the Medical Science Committee.

WHEREAS, Interim Class Counsel filed a Motion for Class Certification in <u>Arrington</u> on July 19, 2013;

WHEREAS, on August 15, 2013, the Court entered an order staying <u>Arrington</u> pending mediation between the Parties;

WHEREAS, the <u>Arrington</u> plaintiffs and the NCAA thereafter engaged in extensive mediation and settlement discussions over the course of approximately six (6) months, including three (3) separate mediations overseen by the Honorable Layn R. Phillips (Ret.) and one (1) mediation session overseen by the Honorable Wayne R. Andersen (Ret.);

WHEREAS, after the Court stayed the <u>Arrington</u> litigation pending the Parties' settlement discussions, multiple other actions were filed nationwide, including the following actions: (i) <u>Walker, et al. v. NCAA</u>, No. 1:13-cv-00293 (E.D. Tenn., filed Sept. 3, 2013); (ii) <u>DuRocher, et al. v. NCAA</u>, No. 1:13-cv-01570 (S.D. Ind., filed Oct. 1, 2013); (iii) <u>Caldwell, et al. v. NCAA</u>, No. 1:13-cv-03820 (N.D. Ga., filed Oct. 18, 2013); (iv) <u>Doughty v. NCAA</u>, No. 3:13-cv-02894 (D.S.C., filed Oct. 22, 2013); (v) <u>Powell, et al. v. NCAA</u>, No. 4:13-cv-01106 (W.D. Mo., filed Nov. 11, 2013); (vi) <u>Morgan, et al. v. NCAA</u>, No. 0:13-cv-03174 (D. Minn., filed Nov. 19, 2013); (vii) <u>Walton, et al. v. NCAA</u>, No. 2:13-cv-02904 (W.D. Tenn., filed Nov. 20, 2013); (viii) <u>Washington, et al. v. NCAA</u>, No. 4:13-cv-02434 (E.D. Mo., filed Dec. 3, 2013); (ix) <u>Hudson v. NCAA</u>, No. 5:13-cv-00398 (N.D. Fla.,

filed Dec. 3, 2013); (x) Nichols v. NCAA, No. 1:14-cv-00962 (N.D. Ill., filed Feb. 11, 2014);

and (xi) Wolf v. NCAA, No. 1:13-cv-09116 (N.D. Ill., filed Feb. 20, 2014) (collectively, the

"Related Actions");

WHEREAS, all of the Related Actions seek medical monitoring relief on behalf of

student-athletes who played football at NCAA member institutions;

WHEREAS, at the request of Interim Class Counsel, the Judicial Panel on Multidistrict

Litigation transferred Arrington and all of the Related Actions for coordinated and

consolidated pre-trial proceedings to the United States District Court for the Northern District

of Illinois (the "Court" or "MDL Court") before the Honorable John Z. Lee.  The resulting

multidistrict litigation was captioned In re National Collegiate Athletic Association Student-

Athlete Concussion Injury Litigation, MDL No. 2492, Master Docket No. 1:13-cv-09116 (N.D.

Ill.) (the "MDL Action");

WHEREAS, two (2) additional actions, viz. Jackson v. NCAA, No. 1:14-cv-02103

(E.D.N.Y., filed April 2, 2014) and Whittier v. NCAA, No. 1:14-cv-978 (W.D. Tex., filed

Oct. 27, 2014), have since been transferred to the United States District Court for the Northern

District of Illinois and consolidated in the MDL Action before Judge Lee;

WHEREAS, Interim Class Counsel and counsel for the plaintiffs in the Related

Actions engaged in multiple written and oral communications to reach consensus regarding the

leadership of the MDL Action, and agreed, by way of joint motion to the Court, to (i) the

reappointment of  Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Joseph Siprut

of Siprut PC as Lead Class Counsel ("Lead Counsel"), (ii) the appointment of Richard Lewis

of Hausfeld LLP as Special Class Counsel for Medical Monitoring Relief, and (iii) the

appointment of Charles Zimmerman of Zimmerman Reed, James Dugan of the Dugan Law

Firm, and Mark Zamora of The Orlando Law Firm to the Executive Committee (collectively, "Class Counsel");

WHEREAS, Class Counsel conferred extensively together and with medical experts regarding the scope of an appropriate medical monitoring program for the Settlement Class;

WHEREAS, counsel in <u>Walker</u> provided input into the medical monitoring protocol to address the risk of mid- to late-life neurodegenerative disease that may be associated with subconcussive and concussive head impacts;

WHEREAS, Lead Counsel, the NCAA, Special Class Counsel for Medical Monitoring Relief and one (1) member of the Executive Committee participated on May 12, 2014 in a fourth mediation before the Honorable Wayne R. Andersen (Ret.) regarding the consensus reached by Class Counsel regarding the medical monitoring claims and requests for equitable relief;

WHEREAS, on July 29, 2014, Class Counsel filed a Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class;

WHEREAS, on December 17, 2014, the Court issued an order denying Class Counsel's Motion for Preliminary Approval and directing Class Counsel and the NCAA to address certain concerns regarding the Settlement Agreement;

WHEREAS, on January 7, 2015, the <u>Arrington</u> Plaintiffs filed their Third Amended Class Action Complaint;

WHEREAS, on January 29, 2015, the NCAA filed its Answer and Affirmative Defenses to the Third Amended Class Action Complaint, denying all material allegations therein and asserting a variety of affirmative defenses. The NCAA continues to deny all of

the allegations in the Third Amended Class Action Complaint and specifically denies that it has engaged in any wrongdoing whatsoever;

WHEREAS, ~~since~~between December 17, 2014 and April 2015, Class Counsel and the NCAA, in consultation with the Medical Science Committee as well as the Parties' respective economics experts, ~~have~~ worked ~~diligently~~ to address the Court's concerns and ~~have~~ revised the Settlement Agreement accordingly;

**WHEREAS, on April 14, 2015, Plaintiffs and the NCAA filed a Joint Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class ("Joint Motion");**

**WHEREAS, on April 20, 2015, Plaintiffs filed their Fourth Amended Class Action Complaint;**

**WHEREAS, on January 26, 2016, the Court granted the Joint Motion, subject to a number of proposed modifications;**

WHEREAS, **since January 26, 2016,** Class Counsel and the NCAA engaged in multiple written and oral communications to consummate the Settlement~~, and~~ **and address the Court's concerns, as expressed in the Court's January 26, 2016 Memorandum Opinion and Order, and participated on April 29, 2016 in a fifth mediation before the Honorable Wayne R. Andersen (Ret.) with counsel for Lead Objector Anthony Nichols;** all of the negotiations between Class Counsel ~~and~~, the NCAA **and counsel for the Lead Objector** were conducted at arm's length;

WHEREAS, the Parties agree that neither this Agreement nor the Settlement it represents shall be deemed or construed as an admission of any sort or as evidence of any violation of any statute or law, or of any liability or wrongdoing whatsoever by the NCAA

and/or its member institutions or of the truth of any of the claims or allegations alleged in the MDL Action or as a waiver of any defenses thereto;

WHEREAS, the Parties agree that neither this Agreement nor the Settlement it represents shall be construed or admissible as an admission by the NCAA and/or its member institutions that the Class Representatives' claims or any other similar claims are or would be suitable for class treatment;

WHEREAS, the Parties have conducted a thorough examination and investigation of the facts and law relating to the asserted and potential claims and defenses in the MDL Action;

WHEREAS, Class Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the MDL Action, including the claims asserted in the ~~Third~~**Fourth** Amended Class Action Complaint in Arrington~~, and the claims asserted in the proposed Fourth Amended Complaint~~, and the possible legal and factual defenses thereto, as well as the claims asserted in the Related Actions, that it would be in the best interests of the Class Representatives and the Settlement Class to enter into this Agreement to avoid the uncertainties, burdens, and risks of litigation, and to assure that the substantial benefits reflected herein are obtained for the Class Representatives and the Settlement Class, and further, that the Agreement is fair, reasonable, adequate and in the best interests of all putative members of the Settlement Class;

WHEREAS, the NCAA denies and continues to deny each and every allegation of liability, wrongdoing and damages and further denies that the MDL Action may be maintained as a class action except for settlement purposes. Nonetheless, without admitting or conceding any liability or damages whatsoever and without admitting any wrongdoing, and without

conceding the appropriateness of class treatment for claims asserted in any future pleading or proceeding, the NCAA has agreed to settle the MDL Action on the terms and conditions set forth in this Agreement solely to avoid the substantial expense, burden, inconvenience, and disruption of continued litigation;

WHEREAS, the Parties desire to compromise and settle all issues relating to medical monitoring and medical monitoring claims that have been brought or could have been brought against the NCAA and the other Persons and entities identified in Section II(~~OO~~**SS**) as Released Persons;

WHEREAS, through their counsel, the Class Representatives and the NCAA, after months of vigorous, arm's length negotiations, have conditionally agreed to a comprehensive Medical Monitoring Program to benefit all persons who played an NCAA-sanctioned sport at an NCAA member institution through the date of preliminary approval, as well as changes to the NCAA's return-to-play and concussion management policies and guidelines;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, the undersigned counsel on behalf of the NCAA and Class Representatives agree that the medical monitoring claims and other class claims asserted in the MDL Action shall be settled, compromised and dismissed with prejudice on the terms and conditions set forth in this Agreement, and without costs to the NCAA (except as provided for herein), subject to Court approval of this Agreement as a good faith, fair, reasonable and adequate Settlement under Fed. R. Civ. P. 23(e), and that the remaining individual claims in the MDL Action shall not be dismissed but shall be stayed pending Final Approval.

## II. DEFINITIONS

For purposes of this Settlement Agreement, the following definitions shall apply:

- 8 -

A.      "Agreement" or "Settlement Agreement" means this Class Action Settlement

Agreement And Release, including all exhibits hereto.

B.      "Attorneys' Fees and Expenses" means the total award of attorneys' fees, costs

and expenses sought by Class Counsel and/or allowed by the Court.

C.      "CAFA Notice" means the notice of this Settlement to be served upon State

and Federal authorities as required by the Class Action Fairness Act of 2005, 28 U.S.C.

§ 1715.

D.      "Class" or "Settlement Class" shall be defined as "All ~~current or former~~

~~student athletes~~**Persons** who played an NCAA-sanctioned sport at an NCAA member

institution on or prior to the Preliminary Approval Date," subject to the exclusions set forth in

Section III(A) below.

E.      "Class Counsel" means Steve W. Berman of Hagens Berman Sobol Shapiro

LLP and Joseph Siprut of Siprut PC as Lead Class Counsel ("Lead Counsel"), Richard Lewis

of Hausfeld LLP as Special Class Counsel for Medical Monitoring Relief, and Charles

Zimmerman of Zimmerman Reed, James Dugan of the Dugan Law Firm, and Mark Zamora of

The Orlando Law Firm as the Executive Committee.

F.      "Class Representatives" means ~~Adrian Arrington,~~ Derek Owens, Kyle

Solomon, Angelica Palacios, Abram Robert Wolf, Sean Sweeney, Jim O'Connor, Dan Ahern,

Paul Morgan, Jeffrey Caldwell, John DuRocher, Sharon Washington, Shelby Williams, Brice

Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, Jessica

Miller, Anna Bartz, Peter Dykstra, DaChe Williams, Rachel Harada, Natalie Harada, and

Adam Walker.

**G.** **"Class Representatives for the Contact Sports Subclass" means Derek Owens, Angelica Palacios, Kyle Solomon, Rachel Harada, Natalie Harada, and Dache Williams.**

**H.** **"Class Representatives for the Non-Contact Sports Subclass" means Shelby Williams, Brice Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, Jessica Miller, Adam Walke, Anna Bartz, and Peter Dykstra.**

**I.** ~~G.~~ "Contact Sports" means football, lacrosse, wrestling, ice hockey, field hockey, soccer, and basketball, whether a men's or women's team.

**J.** **"Contact Sports Subclass" shall mean "All current or former student-athletes who played an NCAA-sanctioned Contact Sport at an NCAA member institution on or prior to the Preliminary Approval Date," subject to the exclusions set forth in Section III(A) below.**

**K.** ~~H.~~ "Counsel for the NCAA" or "the NCAA's Counsel" refers to Latham & Watkins LLP.

**L.** ~~I.~~ "Court" means the United States District Court for the Northern District of Illinois.

**M.** ~~J.~~ "Day" or "Days" has the meaning ascribed to it in Fed. R. Civ. P. 6, and all time periods specified in this Settlement Agreement shall be computed in a manner consistent with Fed. R. Civ. P. 6.

**N.** ~~K.~~ "Effective Date" means the date defined in Section XIV.

**O.** ~~L.~~ "Fairness Hearing" means the hearing to be conducted by the Court under Fed. R. Civ. P. 23(e) to consider the fairness, reasonableness and adequacy of this Agreement.

**P.** ~~M.~~ "Final Order and Judgment" means the Order entered by the Court granting the Motion for Final Approval of the Settlement and entering final judgment.

**Q.** ~~N.~~ "HIPAA Protective Order" means the Protective Order Pursuant to the Health Insurance Portability and Accountability Act of 1996 attached as Exhibit D.

**R.** ~~O.~~ "Lead Class Counsel," "Lead Counsel," or "Settlement Class Counsel" means Hagens Berman Sobol Shapiro LLP and Siprut PC.

**S.** ~~P.~~ "Litigation" or "MDL Action" means In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation, MDL No. 2492, Master Docket No. 1:13-cv-09116 (N.D. Ill.).

**T.** ~~Q.~~ "Medical Evaluation" means the examination described in Section IV(B)(5) to be provided to Qualifying Class Members.

**U.** ~~R.~~ "Medical Evaluation Reports" means the reports described in Section IV(B)(5)(d) sent by the designated evaluating physicians to Qualifying Class Members after a Medical Evaluation.

**V.** ~~S.~~ "Medical Monitoring" means the Screening Questionnaire and Medical Evaluations, described in Sections IV(B)(4)-(5), to assess, detect and/or diagnose any conditions, symptoms, or injuries from concussions or the accumulation of subconcussive hits. Medical Monitoring does not mean rendering medical care.

**W.** ~~T.~~ "Medical Monitoring Fund" or "Fund" means the fund to be established by the NCAA and/or its insurers to pay the costs of the Medical Monitoring Program, Notice and Administrative Costs, the costs of the Medical Science Committee, Class Counsel's Attorneys' Fees and Expenses, and the Class Representatives' Service Awards.

**X.** ~~U.~~ "Medical Monitoring Period" means the period that begins on the Effective Date and concludes fifty (50) years from the Effective Date.

**Y.** ~~V.~~ "Medical Monitoring Program" means the program described in Section IV(B).

**Z.** ~~W.~~ "Medical Science Committee" or "Committee" means the committee defined in Section V.

**AA.** **"Non-Contact Sports Subclass" shall mean "All current or former student-athletes who played an NCAA-sanctioned non-Contact Sport at an NCAA member institution on or prior to the Preliminary Approval Date," subject to the exclusions set forth in Section III(A) below.**

**BB.** ~~X.~~ "Notice" means the publication notice to be approved by the Court in the form attached hereto as Exhibit A, the long-form notice to be approved by the Court in the form attached hereto as Exhibit B, **the Reminder Notice,** and the other forms of notice to be addressed in the Notice Plan.

**CC.** ~~Y.~~ "Notice Administrator" means the company or other entity appointed by the Court to fulfill the duties defined in Section VII.

**DD.** ~~Z.~~ "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of providing notice in accordance with the Preliminary Approval Order and any other orders of the Court, including the cost of providing the Notice, CAFA Notice, Reminder Notice, and all reasonable and authorized costs and expenses incurred in administering the Settlement.

**EE.** ~~AA.~~ "Notice Date" means the first Day on which the Notice Administrator or its designee publishes or otherwise disseminates the Notice.

- 12 -

**FF.** ~~BB.~~ "Notice Plan" means the plan for notifying Settlement Class Members of the Settlement.

**GG.** ~~CC.~~ "Opt-Out" means a member of the Settlement Class who properly and timely submits a request for exclusion from the Settlement as set forth in Section XIII(D).

**HH.** ~~DD.~~ "Opt-Out List" means the list compiled by the Notice Administrator pursuant to Section XIII(E), identifying those Settlement Class Members who properly opt out.

**II.** ~~EE.~~ "Opt-Out and Objection Date" means, respectively, the dates, to be set by the Court, by which a request for exclusion must be filed with the Notice Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and the date by which Settlement Class Members must file objections, if any, to the Settlement.

**JJ.** ~~FF.~~ "Parties" means the Class Representatives and Settlement Class Members together with the NCAA. The Class Representatives and Settlement Class Members shall be referred to as one (1) "Party" with the NCAA being the other "Party."

**KK.** ~~GG.~~ "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, member, joint stock company, estate, legal representative, trust, unincorporated association, any business or legal entity and such individual's or entity's spouse, heirs, predecessors, successors, representatives and assignees.

**LL.** ~~HH.~~ "Preliminary Approval Date" means the date the Preliminary Approval Order is entered by the Court.

**MM.** ~~II.~~ "Preliminary Approval Order" means the order defined in Section XII(C)(1) and attached hereto without material alteration as Exhibit C.

**NN.** ~~JJ.~~ "Program Administrator" means the company or other entity appointed by the Court to fulfill the duties defined in Section VI.

**OO.** ~~KK.~~ "Program Locations" means the regional institutions, of which there will be at least thirty-three (33), where Medical Evaluations will be conducted for Qualifying Class Members;

**PP.** ~~LL.~~ "Qualifying Class Members" means all members of the Settlement Class who meet the Screening Criteria to qualify for a Medical Evaluation;

**QQ.** ~~MM.~~ "Release" means the release and discharge, as of the Effective Date, by the Class Representatives and all Settlement Class Members (and their respective successors, assigns and insurers) of the Released Persons of and from all Released Claims and shall include the agreement and commitment by the Class Representatives and all Settlement Class Members (and their respective successors, assigns and insurers) to not now or hereafter initiate, maintain or assert against the Released Persons or any of them any and all causes of action, claims, rights, demands, actions, claims for damages, equitable, legal or administrative relief, interest, demands or rights for medical monitoring relief of any kind related to concussions or subconcussive hits or contact, including any and all claims for damages for medical monitoring, including those in excess of actual damages, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law or any other sources that have been, could have been, may be or could be alleged or asserted now or in the future by the Class Representatives or any Settlement Class Members (and their respective successors, assigns and insurers) against the Released Persons or any of them in this Litigation or in any other court action or before any administrative body (including any regulatory entity or organization), tribunal, arbitration panel or other adjudicating body arising out of or related to the Released Claims.

**RR.** ~~NN.~~ "Released Claims" means (i) any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets or liabilities seeking damages for medical monitoring, or other legal or equitable relief for medical monitoring, related to concussions or sub-concussive hits or contact, whether known or unknown, alleged or not alleged in this Litigation, suspected or unsuspected, contingent or matured, under federal, state or local law, which the Class Representatives or any Settlement Class Member had, now have or may in the future have with respect to any conduct, acts, omissions, facts, matters, transactions or oral or written statements or occurrences on or prior to the Preliminary Approval Date arising from or relating to concussions or sub-concussive hits or contact sustained during participation in NCAA-sanctioned sports as an NCAA student-athlete; and (ii) any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets or liabilities brought or pursued on a class-wide basis **(other than claims pursued on behalf of a class of persons who allege personal injuries or bodily injuries resulting from their participation in a single NCAA-sanctioned sport at a single-NCAA member school,** and relating to concussions or sub-concussive hits or contact**)**, including but not limited to tort claims, claims for breach of contract, breach of statutory duties, actual or constructive fraud, negligence, conspiracy, misrepresentation, fraudulent inducement, fraudulent concealment, breach of fiduciary duty, compensatory and punitive damages, injunctive or declaratory relief, requests for class treatment of issues under Fed. R. Civ. P. 23(c)(4) or state law counterparts thereto, requests for attorneys' fees, interests, costs, penalties and any other claims, whether known or unknown, alleged or not alleged in this Litigation, suspected or unsuspected, contingent or matured, under federal, state or local law, which the Class Representatives or any Settlement Class Member had, now have or may in the future

have with respect to any conduct, acts, omissions, facts, matters, transactions or oral or written statements or occurrences arising from or relating to concussions or sub-concussive hits or contact sustained during participation in collegiate sports as an NCAA student-athlete. "Released Claims" does not include (i) individual personal or bodily injury claims; ~~or~~ (ii) **personal or bodily injury class claims brought on behalf of a class of persons who allege injury resulting from their participation in a single NCAA-sanctioned sport at a single-NCAA member school; or (iii)** class claims that do not relate in any way to medical monitoring or medical treatment or concussions or sub-concussive hits or contact.

**SS.** ~~OO.~~ "Released Persons" means the NCAA, its member institutions (past and present), its current and former officers, directors, employees, insurers, attorneys and agents, except as otherwise set forth in Section IX.~~C~~**B**.

**TT.** ~~PP.~~ "Releasing Persons" means the Class Representatives on behalf of themselves and all Settlement Class Members, each Settlement Class Member, and the respective heirs, administrators, representatives, attorneys, agents, partners, successors, insurers and assigns of each Class Representative and Settlement Class Member.

**UU.** ~~QQ.~~ "Reminder Notice" means the Notice to Settlement Class Members in the manner and form approved by the Court to be sent ten (10) years after the Effective Date and at such other dates and times as required by the Court**, and campaigns to publicize the Settlement to be performed ten (10) years, twenty (20) years, thirty (30) years, and forty (40) years after the Effective Date and at such other dates and times as required by the Court**.

**VV.** ~~RR.~~ "Screening Criteria" means the criteria to be used to evaluate the Settlement Class Members' responses to the Screening Questionnaire to determine whether the

Settlement Class Members qualify for a Medical Evaluation, as described in Section IV(B)(4)(c) and as initially reflected in the Expert Report of the Medical Science Committee to be submitted with Plaintiffs' Renewed Motion for Preliminary Approval;

**WW.** ~~SS.~~ "Screening Questionnaire" means the questionnaire to be completed by Settlement Class Members to qualify for a Medical Evaluation;

**XX.** ~~TT.~~ "Service Awards" means compensation for the Class Representatives for their time and effort undertaken in this Litigation as defined in Section XVII(A), which shall be subject to Court approval.

**YY.** ~~UU.~~ "Settlement" means the agreement for the settlement of this matter reflected by and in this Settlement Agreement.

**ZZ.** ~~VV.~~ "Settlement Class Member" means those persons that fall within the definition of the Class**, Contact Sports Subclass, and/or Non-Contact Sports Subclass**.

**AAA.** ~~WW.~~ "Settlement Website" means a website that will be created and maintained by the Notice Administrator and that will contain relevant documents and information about the Settlement, including this Agreement, the Notice and the Screening Questionnaire.

**BBB.** ~~XX.~~ "Special Master" shall refer to the Honorable Wayne R. Andersen (Ret.), or a successor appointed by the Court. The Special Master shall also be known as the "Chair of the Medical Science Committee."

## III.  PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS

A.  The Parties stipulate to certification, pursuant to Fed. R. Civ. P. 23(b)(2) and for settlement purposes only, of the following Settlement Class:

> All Persons who played an NCAA-sanctioned sport at an NCAA member institution on or prior to the Preliminary Approval Date.

- 17 -

~~Specifically excluded from the Settlement Class are the following persons:~~

The Parties also stipulate to certification, pursuant to Fed. R. Civ. P. 23(b)(2) and for settlement purposes only, of the following Contact Sport Settlement Subclass:

> All Persons who played an NCAA-sanctioned Contact Sport at an NCAA member institution on or prior to the Preliminary Approval Date.

The Parties further stipulate to certification, pursuant to Fed. R. Civ. P. 23(b)(2) and for settlement purposes only, of the following Non-Contact Sport Settlement Subclass:

> All Persons who played an NCAA-sanctioned non-Contact Sport at an NCAA member institution on or prior to the Preliminary Approval Date.

The Contact Sport Settlement Subclass and Non-Contact Sport Settlement Subclass may be jointly referred to as the "Settlement Subclasses." Specifically excluded from the Settlement Class and the Settlement Subclasses are the following persons. Specifically excluded from the Settlement Class and the Settlement Subclasses are the following persons:

> (i) The NCAA and the NCAA's officers and directors;
>
> (ii) Class Counsel; ~~and~~
>
> (iii) The Special Master;
>
> (iv) ~~(iii)~~ The judges who have presided over this Litigation.

B. Solely for the purpose of implementing this Agreement and effectuating the Settlement, the NCAA stipulates to the Court entering an order preliminarily certifying the Settlement Class, and Settlement Subclasses; appointing the Class Representatives as representatives of the Settlement Class, the Contact Sport Class Representatives as representatives of the Contact Sport Settlement Subclass, and the Non-Contact Sport

**Class Representatives as representatives of the Non-Contact Sport Settlement Subclass;**

and appointing the following as Settlement Class Counsel:

| | |
|---|---|
| Steve W. Berman, Esq. | Joseph J. Siprut, Esq. |
| HAGENS BERMAN SOBOL SHAPIRO LLP | SIPRUT PC |
| 1918 Eighth Avenue, Suite 3300 | 17 North State Street, Suite 1600 |
| Seattle, Washington 98101 | Chicago, Illinois 60602 |
| Telephone: (206) 623-7292 | Telephone: (312) 236-0000 |
| Facsimile: (206) 623-0594 | Facsimile: (312) 878-1342 |
| E-mail: steve@hbsslaw.com | E-mail: jsiprut@siprut.com |

C.     Solely for purposes of this Settlement, the NCAA does not object to the certification of the Settlement Class **and Settlement Subclasses**.  The NCAA's failure to so object shall not constitute, in this or any other proceeding, an admission by the NCAA of any kind or any determination that certification of a nationwide class for trial purposes is appropriate.  If the Settlement is not granted final approval or this Agreement is otherwise terminated or rendered null and void, the certification of the above-described nationwide Class **and Subclasses** shall be automatically vacated and shall not constitute evidence or any sort of binding determination that the requirements for certification of a nationwide class for trial purposes in this or any other action are satisfied; in such circumstances, the NCAA reserves all rights to challenge certification of any class or subclass for trial purposes in the MDL Action or in any other action on all available grounds as if no nationwide class had been certified in this Litigation for purposes of Settlement.

## IV.     BENEFITS TO SETTLEMENT CLASS MEMBERS

Pursuant to the terms and conditions set forth below, the NCAA agrees to provide the following benefits to the Settlement Class:

    A.      Medical Monitoring Fund.

        1.      Establishment of a Medical Monitoring Fund.

            a.      Pursuant to the terms and conditions set forth below, the NCAA agrees to pay or cause to be paid on the schedule specified in Sections IV(A)(1)(d)-(e) the sum of seventy million U.S. dollars ($70,000,000.00) (the "Settlement Amount"). Certain of the NCAA's insurers have agreed to pay a portion of the Settlement Amount. If those insurers fail to pay that agreed-upon portion prior to the Effective Date or otherwise rescind their agreement and commitment to pay that agreed-upon portion prior to the Effective Date, the NCAA shall have the option to terminate this Agreement pursuant to the procedures set forth in Section XX(A), and this Agreement shall become null and void and shall have no further force and effect with respect to any Party in this Litigation.

            b.      The NCAA's payment of the Settlement Amount shall be "ALL-IN" and in full satisfaction of all Settlement costs, including costs to fund the Medical Monitoring Program, Notice and Administrative Costs, the costs of the Medical Science Committee, Attorneys' Fees and Expenses, and Service Awards. In no event shall the NCAA be obligated to contribute in excess of $70 million in costs towards this Settlement Agreement, except as set forth in Section IV(A)(7).

            c.      Within ten (10) Days after the Preliminary Approval Date, the Program Administrator shall establish a Medical Monitoring Fund in an interest-bearing account in a bank selected by Settlement Class Counsel (the "Settlement Account") and agreed to by the NCAA.

            d.      Within fourteen (14) Days after the Preliminary Approval Date, the NCAA shall deposit or cause to be deposited five million U.S. dollars ($5,000,000.00) into

the Medical Monitoring Fund. Such funds may be used to pay the costs of the Notice, CAFA Notice, administrative costs incurred by the Program Administrator for the responsibilities set forth in Section VI and/or the costs incurred by the Medical Science Committee for the responsibilities set forth in Section V(C). Any amounts disbursed by the Notice Administrator pursuant to this Agreement for Notice prior to the Fairness Hearing shall not be recoverable by the NCAA or its insurers in the event of termination pursuant to Section XX. Any amounts remaining in the Medical Monitoring Fund after the Effective Date will be used to make payments set forth in Section IV(A)(2).

     e.  Within thirty (30) Days after the Effective Date, the NCAA shall deposit or cause to be deposited twenty-five million U.S. dollars ($25,000,000.00) into the Settlement Account. On the first day of the eleventh year after the Effective Date, the NCAA shall deposit or cause to be deposited into the Settlement Account twenty million U.S. dollars ($20,000,000.00) ("Third Payment"). On the first day of the twenty-first year after the Effective Date, the NCAA shall deposit or cause to be deposited into the Settlement Account twenty million U.S. dollars ($20,000,000.00) ("Fourth Payment"). In the event that the balance in the Settlement Account subsequently falls below two million U.S. dollars ($2,000,000.00) more than six (6) months before the Third Payment or the Fourth Payment is due, the NCAA shall deposit or cause to be deposited into the Settlement Account such amount as necessary to bring the balance to two million U.S. dollars ($2,000,000.00) within thirty (30) Days' notice from the Program Administrator to the NCAA and its counsel that such payment is necessary ("Early Payment"). Any Early Payments made by the NCAA or its insurers before the Third Payment is due shall be deducted from the amount due for the Third Payment. Any Early Payments made by the NCAA or its insurers before the Fourth Payment

- 21 -

is due shall be deducted from the amount due for the Fourth Payment. The obligation of the

NCAA to make these payments is subject to the monetary limits specified in

Section IV(A)(1)(b).

        f.       Monies held in the Fund shall be invested in short-term and

long-term United States Agency or Treasury Securities (or a mutual fund invested solely in

such instruments) or other similar short-term and long-term United States government

obligations, and any interest earned thereon shall become part of the Fund.

        2.       The Fund will be administered by the Program Administrator. The

Program Administrator shall make the following payments from the Fund, subject to any

authorizations required below:

        a.       All payments for Medical Evaluations within forty-five (45) Days

after receipt of invoice and other required program documentation;

        b.       All payments to members of the Medical Science Committee for

their time actually expended for the tasks set forth in Section V(C) at a reasonable hourly rate,

in amounts to be approved by the Chair of the Medical Science Committee;

        c.       All payments for costs of administration of the Medical

Monitoring Program, in amounts to be approved by the Court;

        d.       All payments for the costs of Notice **and Reminder Notice**, in

amounts to be approved by the Court;

        e.       All payments for Attorneys' Fees and Expenses, in amounts to be

determined and approved by the Court;

        f.       All payments for Service Awards to the Class Representatives, in

amounts to be determined and approved by the Court.

3.      All payments dispersed from the Fund shall be reported by the Program Administrator to the Parties and their counsel on a quarterly basis and to the Court, or a Special Master designated by the Court, on an annual basis~~.~~**, or as requested by the Court at any time**

4.      ~~Except~~**The Program Administrator, after consulting with the Medical Science Committee, shall report to the Court on the state of the Medical Monitoring Fund one year prior to the expiration of the Medical Monitoring Period.  If the Medical Monitoring Fund contains funds sufficient to extend to the Medical Monitoring Program six months or more beyond the expiration of the Medical Monitoring Period, the Medical Monitoring Period shall be so extended.  If the Medical Monitoring Fund does not contain funds sufficient to extend the Medical Monitoring Period beyond six months, except** as otherwise provided in Section IV(A)(7), at the discretion of the Medical Science Committee **and subject to Court approval**, any monies remaining in the Medical Monitoring Fund at the expiration of the fifty (50) year Medical Monitoring Period, together with any accrued interest (if any), shall be ~~either used to extend the Medical Monitoring Program or~~ donated to an institution or institutions selected by the Medical Science Committee **and approved by the Court** to be used for concussion-related research or treatment.

5.      If the Medical Monitoring Fund is depleted before the expiration of the fifty (50) year Medical Monitoring Period, Settlement Class Members may pursue claims seeking medical monitoring, including both individual and class claims.  The statute of limitations for claims for medical monitoring will be tolled during the Medical Monitoring Period.

6.      If it appears that the Fund is going to be depleted before the expiration of the Medical Monitoring Period, the Program Administrator shall notify the Parties and cease to make payments from the Medical Monitoring Fund. The Program Administrator shall do so at a time when sufficient money remains in the Fund to pay all existing liabilities plus sufficient funds to notify the Settlement Class of the early expiration of the Medical Monitoring Period.

7.      Within ten (10) days of written notice from the Program Administrator, if it appears that the Fund is going to be depleted before the expiration of the Medical Monitoring Period, Class Counsel may serve written notice on the NCAA, requiring that the NCAA meet and confer within thirty (30) Days regarding additional funding of the Medical Monitoring Fund.  In such event, the NCAA and/or its insurers may elect to deposit or cause to be deposited additional funds into the Settlement Account for the Medical Monitoring Fund but shall not be required to do so.  Any such additional funds deposited into the Settlement Account for the Medical Monitoring Fund pursuant to this Section IV(A)(7) which remain in the Settlement Account at the expiration of the fifty (50) year Medical Monitoring Period, together with any interest accrued thereon, shall be refunded to the NCAA by the Medical Monitoring Program Administrator.

8.      Within thirty (30) days of meeting and conferring with Class Counsel pursuant to the immediately preceding paragraph, if the NCAA or its insurers decline to deposit or cause to be deposited additional funds into the Settlement Account for the Medical Monitoring Fund, the Parties shall confer and request Court approval to notify the Settlement Class in a manner to be approved by the Court of the early expiration of the Medical Monitoring Period and the date on which the tolled statutes of limitations shall begin to run.

B.     Medical Monitoring Program.  The Medical Monitoring Program will operate as follows:

1.     Program Locations.

a.     Within forty-five (45) Days of the Preliminary Approval Date, the Medical Science Committee, or the Program Administrator as its designee, will issue a request for proposals ("RFP") to medical institutions or providers in at least thirty-three (33) regionally geographic locations, requesting bids to be retained to provide the Medical Evaluations to Qualifying Class Members and to conduct any administrative functions related thereto, including but not limited to sending the physicians' reports on the Medical Evaluations to the Qualifying Class Members and implementing reasonable operating rules and guidelines to ensure compliance with 42 U.S.C. § 1395y(b).

b.     All responses to the RFP will be due within thirty (30) Days after the RFP is issued.  The Medical Science Committee, or the Program Administrator as its designee, will evaluate the responses to the RFP and recommend their selections to the Parties. The Parties will strive to arrive at a consensus with the Medical Science Committee regarding the Program Locations.  If the Parties cannot agree on the Program Locations, they shall submit any dispute regarding the Program Locations to the Special Master for resolution.

2.     The Medical Monitoring Program for Settlement Class Members will begin ninety (90) Days from the Effective Date.

3.     Participation in the Medical Monitoring Program is completely voluntary.  Settlement Class Members will remain eligible to participate in the Medical Monitoring Program for the entire Medical Monitoring Period, subject to the provisions of Sections IV(B)(4)(g)-(h).

4.      Settlement Class Members who wish to participate in the Medical Monitoring Program must complete a Screening Questionnaire to determine whether they qualify for a Medical Evaluation.  The questionnaire-based screening program will be, and is designed to assess, inter alia, self-reported symptoms and cognitive, mood, behavioral, and motor problems that may be associated with persistent post-concussion syndrome and/or mid- to late-life onset problems, such as Chronic Traumatic Encephalopathy ("CTE") and related disorders.

a.      The Screening Questionnaire may be completed in hard copy or online.  The Screening Questionnaire will be available on the Settlement Website, through a link maintained on the NCAA's website to the Settlement Website, or upon request from a Settlement Class Member to the Program Administrator through regular mail.  If a Settlement Class Member is not able to complete the Screening Questionnaire unassisted, a family member or other authorized designee may complete the Screening Questionnaire, noting his or her identity on the Screening Questionnaire.

b.      The Medical Science Committee has agreed on the substance of the Screening Questionnaire.  The initial Screening Questionnaire is being submitted to the Court as part of the Expert Report of the Medical Science Committee with the Renewed Motion For Preliminary Approval.  The Medical Science Committee can suggest changes to the Screening Questionnaire that are consistent with changes to the standard of care for the diagnosis and treatment of concussions and problems or disorders related to concussions or the accumulation of subconcussive hits.  The Medical Science Committee will promptly report any changes to the Screening Questionnaire to Class Counsel, the NCAA and Counsel for the NCAA and will report any such changes to the Court on an annual basis.

c.     The Medical Science Committee has agreed on the initial algorithms for scoring responses to the Screening Questionnaire and the scoring thresholds, or cut scores, for qualifying for a Medical Evaluation.  Those initial cut scores are set forth in the Expert Report of the Medical Science Committee being submitted with the Renewed Motion For Preliminary Approval.  Further, the Medical Science Committee will evaluate the appropriateness of the cut scores on an annual basis and make adjustments as necessary to fit the purposes of the Medical Monitoring Program.

d.     All Screening Questionnaires will be scored electronically. Decisions regarding the need for Medical Evaluations under the Medical Monitoring Program will be determined electronically, based on the algorithm and score threshold developed by the Medical Science Committee.

e.     Those Settlement Class Members whose responses meet the agreed-upon criteria will be eligible for a Medical Evaluation.

f.     Intervention of Suicidality. Although the primary purpose of the Screening Questionnaire is to determine who will qualify for a Medical Evaluation, evidence of potential suicidality may warrant immediate evaluation and possible intervention prior to the Medical Evaluation visit.  If a Settlement Class Member provides responses to mood-related questions on the Screening Questionnaire that reach a specific threshold for suicide potential (as determined a priori by the Medical Science Committee), the identity of the Settlement Class Member will be provided to a trained clinician (e.g., clinical social worker) at the nearest Program Location.  The Settlement Class Member will then be contacted by telephone or similar immediate method within five (5) Days by the clinician, who will conduct a brief interview to evaluate the degree of severity of the individual's suicidality.  If the

clinician determines that the Settlement Class Member is at risk of imminent self-harm, the Settlement Class Member will be referred to a local mental health provider or hospital.

        g.      Settlement Class Members may complete the Screening Questionnaire not more than once every five (5) years until the age of fifty (50) and then not more than once every two (2) years after the age of fifty (50) until the end of the fifty (50) year Medical Monitoring Period, unless otherwise permitted on an case-by-case basis by the Medical Science Committee.  After a Settlement Class Member has submitted three (3) Screening Questionnaires without qualifying for an examination, any further Screening Questionnaires completed by that Class Settlement Member will be sent to the Medical Science Committee for review.  The Special Master shall confer with the members of the Medical Science Committee regarding the appropriateness of further Medical Evaluation for any such persons, and shall respond to the Settlement Class Member within sixty (60) Days of the Settlement Class Member's completion of the Screening Questionnaire.

        h.      A Settlement Class Member may qualify up to two (2) times for a Medical Evaluation during the Medical Monitoring Period. However, if a Class Member seeks a third Medical Evaluation and can demonstrate a showing of significant symptoms or loss of function in the areas of cognition, behavior, mood, or movement, the Special Master shall confer with the members of the Medical Science Committee and shall determine if further Medical Evaluation is appropriate.  The Special Master shall notify the Settlement Class Member of the Special Master's decision within sixty (60) Days of receiving the Settlement Class Member's request for a third Medical Evaluation.  If the Special Master determines a third Medical Evaluation is appropriate, the Special Master will notify the

Program Administrator, which will notify the Settlement Class Member he or she is a Qualifying Class Member eligible for a Medical Evaluation as described below.

        i.      A Settlement Class Member whose responses to the Screening Questionnaire render him or her eligible for a Medical Evaluation using the algorithm described in Section IV(B)(4)(c) will be deemed a Qualifying Class Member. Within thirty (30) Days of receiving a Screening Questionnaire, the Program Administrator will notify the Settlement Class Member whether or not he or she is a Qualifying Class Member. The Program Administrator will provide Qualifying Class Members with instructions regarding how and where to schedule a Medical Evaluation.

        5.      Qualifying Class Members will be eligible for a Medical Evaluation as follows:

        a.      Medical Evaluations will be conducted at Program Locations, of which there will be at least thirty-three (33) and which will be agreed upon by the Parties. If a Qualifying Class Member lives more than one hundred (100) miles from the nearest Program Location, the Qualifying Class Member may: (i) receive reimbursement from the Medical Monitoring Fund for the cost of driving to the nearest Program Location based on the then-prevailing rate for mileage reimbursement, if proof of such costs are submitted to the Program Administrator within sixty (60) Days of the Medical Evaluation; or (ii) if travel to the nearest Program Location would be unduly burdensome (as determined by the Program Administrator pursuant to standards approved by the Special Master), such Qualifying Class Member may propose to the Program Administrator an alternate medical institution or providers within 100 miles of such Qualifying Class Member's residence as a candidate to provide a Medical Evaluation to such Qualifying Class Member and the Program

Administrator shall undertake reasonable efforts to qualify and, subject to the approval of the Special Master, contract such candidate in accordance with the standards applied in the RFP process described in Section IV(B)(1)(a) to provide such Medical Evaluation.

b.      In no event shall the Program Administrator or a Program Location submit an invoice to Medicare for payment related to any Settlement Class Member's Medical Evaluation.  The Program Administrator shall work with the Program Locations to implement reasonable operating rules and guidelines to ensure compliance with 42 U.S.C. § 1395y(b).

c.      The Medical Science Committee will agree on the scope of the Medical Evaluations.  The Medical Evaluation will be designed to assess symptoms related to persistent post-concussion syndrome, as well as cognitive, mood, behavioral, and motor problems which may be associated with mid- to late-life onset diseases, such as CTE and related disorders.  The Medical Science Committee will evaluate annually whether the testing provided in the Medical Evaluations is consistent with the standard of care and will update the testing protocols for the Program Locations accordingly, taking into account the relative costs and benefits of any changes in said protocols.  The Medical Science Committee will also consider whether separately-defined evaluations are appropriate based on whether a Qualifying Class Member has persistent symptoms from a concussion, or whether the Qualifying Class Member is experiencing mid- to late-life symptoms after a period of being asymptomatic.

d.      Within sixty (60) Days of a Medical Evaluation performed at a Program Location, the evaluating physician will send the results and/or diagnosis and report to the Qualifying Class Member or the Qualifying Class Member's physician at the direction of the Qualifying Class Member. Subject to the Qualifying Class Member's written consent, the

evaluating physician will also send designated information to the Program Administrator. The Program Administrator will maintain the confidentiality of any personally-identifiable information but will aggregate the results from all evaluations to share with the Medical Science Committee for the purpose of assessing and adjusting the cut scores used to qualify Settlement Class Members for Medical Evaluations, as set forth in the accompanying Expert Report of the Medical Science Committee.

       e.      Intervention of Suicidality. Although the goals of the Medical Evaluation are for diagnostic purposes for the Qualifying Class Members, evidence of suicidality may warrant immediate intervention. If a Qualifying Class Member's responses to questions asked during the Medical Evaluation suggest that the Qualifying Class Member may be suicidal, or otherwise provides cause for the Program Location staff to believe that the Qualifying Class Member is at risk of imminent self-harm, the Qualifying Class Member will be referred promptly or brought to the Program Location's Emergency Department or Psychiatry Admissions Program for additional evaluation and admission. Costs associated with an emergency psychiatric evaluation, if any, are to be borne by the Qualifying Class Member or his/her insurer.

       f.      The information generated through the Medical Monitoring Program, including but not limited to the evaluation of completed Screening Questionnaires, the results of Medical Evaluations, and written reports documenting the evaluation of Medical Evaluations, does not and shall not constitute an admission by the NCAA or any other Released Person. Moreover, the circumstances regarding the initiation of testing, the medical monitoring and its funding will be governed by Fed. R. Evid. 408 and/or its state law corollaries.

g.     ~~Except as set forth below, the Program Administrator may pursue subrogation or reimbursement from Qualifying Class Members' private health insurance for the cost of Medical Evaluations, as long as doing so does not preclude the Qualifying Class Member from qualifying for at least one (1) examination under his or her health insurance plan in the two (2) year period following his or her Medical Evaluation.~~  Neither the Program Administrator nor the Program Locations shall pursue subrogation or reimbursement from **the Qualifying Class Member or his or her private health insurance,** Medicare, Medicaid, or any other payor or administrator ~~if the pursuit of subrogation or reimbursement from that payor would violate the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b).  A Qualifying Class Member shall provide information regarding any available health insurance policy to the Program Administrator, but in~~**.**  **In** no event shall a Qualifying Class Member be responsible for making a claim on his or her insurance policy to receive or qualify for the benefits of the Settlement.  ~~Any deductible or co pay required to be paid by a Qualifying Class Member in order to obtain reimbursement by the Program Administrator for a Medical Evaluation at a Program Location under the Medical Monitoring Program shall be paid from the Medical Monitoring Fund.~~

## V.     MEDICAL SCIENCE COMMITTEE

A.     A Medical Science Committee will be formed as follows:

1.     The Parties have agreed on the appointment of four (4) medical experts with expertise in the diagnosis, care and management of concussions in sport and mid- to late-life neurodegenerative disease to the Medical Science Committee:  (i) Dr. Brian Hainline; (ii) Dr. Robert Cantu; (iii) Dr. Ruben Echemendia; and (iv) Dr. Robert Stern.  The Parties

have also agreed to the appointment of the Honorable Wayne R. Andersen (Ret.) as the Chair of the Medical Science Committee.

2.     Dr. Hainline and Dr. Cantu will be appointed for an initial five (5) year term with the potential to be reappointed by the Parties for a second five (5) year term.  Dr. Ruben Echemendia and Dr. Stern will be appointed for an initial three (3) year term with the potential to be reappointed by the Parties for a second, five (5) year term.  All subsequent appointments for all members will be for five (5) year terms.  The Chair of the Medical Science Committee will serve an initial term of five (5) years.

3.     The membership of the Medical Science Committee will include four (4) experts with representation from among the following specialties:  Behavioral Neurology; Neuropsychiatry; Neuropsychology; Neurosurgery; and Athletic Training.  The membership of the Medical Science Committee will also include a person who will serve as Chair of the Medical Science Committee and who will provide the tie-breaking vote in the event that the medical experts are unable to reach consensus after a reasonable period of time and opportunity for conferral.  The Chair of the Medical Science Committee at the time of its inception will be the Honorable Wayne R. Andersen (Ret.).  Criteria for selection to the Medical Science Committee will be based on experience and training as it directly relates to the Medical Monitoring Program.  Under usual circumstances, the Chair of the Medical Science Committee is not expected to be present for meetings of the Medical Science Committee, but the Chair of the Medical Science Committee will make himself or herself available to address disputes that arise between members of the Medical Science Committee, as further described in Section V(D).

4.      In the event that a member of the Medical Science Committee or the Chair resigns or is unable to carry out his or her responsibilities, the Parties will agree on the appointment of a successor and request the Court's approval of the appointment.

B.      The Chair of the Medical Science Committee shall ensure that the Medical Science Committee meets at least one (1) time per calendar year to carry out its responsibilities, or more if necessary to fulfill its responsibilities under this Agreement. The meetings may take place in person or by conference call. The Chair shall also ensure that the annual report of the Medical Science Committee is filed with the Court, through the Parties, by December 31 of each year.

C.      The Medical Science Committee's responsibilities shall include the following:

1.      The Committee shall meet in person or by conference call at least once per calendar year and more if necessary to fulfill its responsibilities under this Section;

2.      The Committee shall prepare, annually review and amend, if necessary, the Screening Questionnaire to ensure it meets the then-current standard of care and fits the purposes of the Medical Monitoring Program;

3.      The Committee shall prepare, annually review and amend, if necessary, the Screening Criteria to ensure they meet the then-current standard of care and fit the purposes of the Medical Monitoring Program;

4.      The Committee shall prepare, annually review, and, if necessary, amend the scope of the Medical Evaluations to ensure they meet the then-current standard of care and fit the purposes of the Medical Monitoring Program;

5.      The Committee shall oversee the performance of the Program Locations to ensure that the Program Locations are providing Medical Evaluations to Qualifying Class

Members in accordance with the terms of this Agreement and any additional agreements entered into in furtherance of this Agreement;

6. The Committee shall provide a written report to the Parties on an annual basis, by December 1 of each year, regarding their fulfillment of their responsibilities under this Agreement for submission to the Court. Within thirty (30) Days of receiving the Medical Science Committee's annual report, the Parties shall file the annual report with the Court.

D. The Medical Science Committee shall strive to carry out its responsibilities and reach decisions by consensus. In the event that a dispute arises among the Medical Science Committee members that cannot be resolved by consensus, the Medical Science Committee shall submit the issue to the Chair of the Medical Science Committee. Within fourteen (14) Days of receipt of an issue from the Medical Science Committee, the Chair will determine the appropriate next steps to take to facilitate agreement among the Medical Science Committee members. In the event the Medical Science Committee cannot reach agreement on the issue within sixty (60) Days after submitting the issue to the Chair, or such other time as agreed to in writing by them, the Chair will cast his or her vote to resolve the issue submitted by the medical experts and will report such vote and result to the Parties and their counsel.

E. The Parties and their counsel reserve the right to raise with the Court any disputes or issues with regard to decisions made by the Medical Science Committee after the dispute resolution process outlined in Section V(D) has been completed and the Parties and their counsel have met and conferred within thirty (30) Days after the completion of the dispute resolution process outlined in Section V(D).

F. The members of the Medical Science Committee will be compensated at a reasonable hourly rate from the Medical Monitoring Fund by the Program Administrator.

## VI.    PROGRAM ADMINISTRATOR

A.    The Program Administrator shall be an independent professional service company to be selected by the Parties and their counsel, subject to approval of the Court, and charged with the following tasks:

1.    Receiving, processing, and paying expenses as provided in this Agreement and any applicable orders of the Court;

2.    Implementing and overseeing the administration of the Screening Questionnaires designed and approved by the Medical Science Committee;

3.    Notifying Qualifying Class Members of their right to a Medical Evaluation, providing information regarding where and how the Medical Evaluation can be scheduled, and assisting, if necessary, in scheduling an appointment for the Medical Evaluation;

4.    For those Qualifying Class Members who live more than one hundred (100) miles from the nearest Program Location, **(i)** reimbursing Qualifying Class Members for ~~either: (i)~~ the then-prevailing rate for mileage reimbursement to travel to the Program Location; or (ii) if they choose to have a Medical Evaluation from a local ~~physician~~**medical institution or provider pursuant to the steps described in Section IV(B)(5)(a) above,** and submit proof of the Medical Evaluation ~~and actual out-of-pocket costs~~ to the Program Administrator, ~~the lesser of (1) the average cost of the Medical Evaluation within the Medical Monitoring Program or (2) the Qualifying Class Member's actual out of pocket costs for the Medical Evaluation by the local physician;~~**paying fees owed pursuant to the contract negotiated with the local medical institution or provider;**

- 36 -

5.     Processing and aggregating the results of the Medical Evaluations in collaboration with the Medical Science Committee for the purpose of allowing the Medical Science Committee to assess and adjust the cut scores to qualify Class Members for Medical Evaluations.

6.     If so ordered by the Court, distributing the Settlement proceeds pursuant to the terms of this Agreement and any agreements with the Program Locations to carry out the duties described herein for the Medical Evaluations.

B.     By December 1 of each year, the Administrator shall provide the Parties with a report that includes: (i) the total number of Screening Questionnaires that have been submitted; (ii) the total number of Qualifying Class Members; (iii) the total number of Medical Evaluations at each Program Location; and (iv) the total costs paid from the Medical Monitoring Fund to date.

C.     The procedures the Program Administrator uses in performing its duties under this Agreement shall be subject to Court approval, and the Program Administrator shall operate under the continuing supervision and jurisdiction of the Special Master.

D.     The Program Administrator shall retain all records relating to payment of any claims or expenses from the Medical Monitoring Fund for a period of five (5) years from the end of the Medical Monitoring Period.  The confidentiality of any personal health information in those records shall be maintained in accordance with the HIPAA Protective Order to be entered in the MDL Action.

## VII.    NOTICE ADMINISTRATOR

The Parties and their counsel have selected Gilardi & Co. LLC, an independent professional service company, to serve as Notice Administrator, subject to approval of the Court, and charged with the following tasks:

A.    Disseminating information to Settlement Class Members concerning the Settlement Agreement by, among other ways, establishing a toll-free "hotline" and the Settlement Website;

B.    Assisting the Court in processing and tabulating opt-out requests, by receiving all opt-out requests and documentation, and providing the Opt-Out List to the Parties within ten (10) Days of the Opt-Out and Objection Date; and

C.    Arranging for Court-ordered dissemination of required notices.

## VIII.    SPECIAL MASTER

The Special Master shall be an independent individual to be selected by the Parties and their counsel, subject to approval of the Court, and charged with the following tasks:

1.    Serving as Chair of the Medical Science Committee;

2.    Supervising the Program Administrator's performance of its duties under this Agreement;

3.    Evaluating Settlement Class Members' requests for additional Screening Questionnaires or Medical Evaluations pursuant to Section IV(B)(4)(g)-(h); and,

4.    Resolving disputes between the Parties regarding the implementation of the Medical Monitoring Program.

5.    The Initial Special Master is Wayne R. Anderson.

IX.     RETURN TO PLAY GUIDELINES, ACADEMIC ACCOMMODATIONS, AND
        CONCUSSION EDUCATION

A.      The Parties agree, ~~subject to the proper NCAA rulemaking process defined in Section IX(B),~~ that the NCAA and/or its member institutions will implement the following return-to-play guidelines:

1.      Every student-athlete at every NCAA member institution will undergo pre-season baseline testing for each sport in which they participate prior to participating in practice or competition.

2.      An NCAA student-athlete who has been diagnosed with a concussion will be prohibited from returning to play or participating in any practice or game on the same Day on which he or she sustained such concussion.

3.      Any NCAA student-athlete diagnosed with a concussion by medical personnel must be cleared by a physician before being permitted to return to play in practice or competition.

4.      NCAA member institutions shall ensure that medical personnel with training in the diagnosis, treatment and management of concussion are present at all Contact Sports games for Divisions I, II and III.

5.      NCAA member institutions shall ensure that medical personnel with training in the diagnosis, treatment and management of concussion are available at all Contact Sports practices for Divisions I, II and III.

~~B. Pursuant to the process outlined in the NCAA Constitution and Bylaws, the NCAA Executive Committee will recommend that the governing bodies of Divisions I, II, and III pass legislation requiring member schools to certify that they have a concussion management plan in place that meets the following requirements: (i) it requires pre-~~

- 39 -

~~season baseline testing; (ii) it prohibits NCAA student athletes diagnosed with a concussion from returning to play until cleared by a physician; (iii) it prohibits an NCAA student athlete diagnosed with a concussion from returning to play or participating in any practice or game on the same Day on which he or she sustained that concussion; (iv) medical personnel with training in the diagnosis, treatment and management of concussions will be present at all Division I, II, and III Contact Sports games; and (v) medical personnel with training in the diagnosis, treatment and management of concussions will be available at all Division I, II, and III Contact Sports practices.~~

~~C. In the event the governing body of a Division fails to enact legislation described in Section IX(B) within six (6) months of the Effective Date, the member institutions who are part of that Division shall not be Released Parties.~~

**B.** ~~D.~~ Within six (6) months after the ~~legislation described in Section IX(B) is enacted~~**Effective Date**, each NCAA member institution shall certify in writing that the member institution has put in place a concussion management plan that meets the requirements set forth in Section IX(~~B~~**A**).  Such written certifications shall be provided to the Special Master, Class Counsel, and the Notice Administrator and will be posted on the Settlement Website.  The Release shall not apply to any NCAA member institution that fails to submit such written certification.  Any NCAA member institution that fails to submit such written certification shall not be a Released ~~Party~~**Person**.

**C.** ~~E.~~ The NCAA will create a reporting process through which member institutions will report to the NCAA instances of diagnosed concussions in NCAA student-athletes and their resolution.

- 40 -

**D.** ~~F.~~ The NCAA will create a reporting mechanism through which third parties, such as NCAA student-athletes and/or their parents, can report concerns about concussion management issues to the NCAA.

**E.** ~~G.~~ At the beginning of each academic year, the NCAA will provide member institutions with educational materials for faculty regarding academic accommodations that may be advisable to accommodate NCAA student-athletes who have sustained concussions. Such educational materials shall be provided annually throughout the Medical Monitoring Period.

**F.** ~~H.~~ The NCAA will require that member institutions provide concussion education and training approved by the NCAA to student-athletes, coaches and athletic trainers before every season for the duration of the Medical Monitoring Period. The NCAA will remind member institutions periodically of this obligation.

## X. RESEARCH FUNDS

A.     The NCAA will contribute ~~or cause to be contributed~~ five million U.S. dollars ($5,000,000.00), over a period not to exceed ten (10) years, to research the prevention, treatment, and/or effects of concussions. ~~For purposes of this provision, research undertaken by NCAA member institutions with respect to the prevention, treatment and/or effects of concussions will be credited (as appropriate) toward the foregoing monetary requirement.~~ These funds are in addition to any funds the NCAA has already spent on concussion research as of the Effective Date **and must be used to fund research that would not have occurred absent this Settlement Agreement**.

- 41 -

B.     The Medical Science Committee can make annual recommendations for the NCAA's consideration regarding the expenditure of research funds.  The NCAA ~~and its member institutions~~ may elect to accept these recommendations at ~~their~~its discretion.

C.     The NCAA will provide an annual report to the Parties, by no later than December 31 of each year, which will include:  (i) the amount of money spent since the Effective Date by the NCAA ~~and/or NCAA member institutions~~ on research regarding the prevention, treatment, and/or effects of concussions and mid- to late-life neurodegenerative disease; (ii) the recipients of the research funds; (iii) the purposes of the research being conducted by the recipients; and (iv) the results of any research, including the identity of any publications related thereto.

## XI.    NOTICE

A.     Notices to Settlement Class Members.

1.     The NCAA will work with its member institutions to obtain all reasonably-available names and addresses of NCAA student-athletes.  If necessary, the Parties will issue subpoenas to obtain such names and addresses.  The Notice Administrator will set up and maintain a database, to be shared with the Program Administrator, to store the names and addresses of Settlement Class Members so that Notice and Medical Evaluation Reports can be mailed directly to Settlement Class Members.

2.     Notice will be provided in the manner described in the Notice Plan and prescribed by the Court**, including, but not limited to, through the use of the NCAA's website, Facebook pages, and Twitter accounts**.

3.     Unless they have excluded themselves from the Settlement, Settlement Class Members will receive a Reminder Notice regarding the Medical Monitoring Program ten

(10) years after the Effective Date.  The manner of notice will depend upon then available technology and other factors such as the accuracy of mailed notice.  **Publicity campaigns publicizing the Settlement will be performed each of the following intervals: ten (10) years, twenty (20) years, thirty (30) years, and forty (40) years after the Effective Date.**

4.      If necessary to encourage participation in the Medical Monitoring Program, the Court may direct additional Notice to Settlement Class Members to be paid from the Medical Monitoring Fund.

5.      In addition to notice of the procedures to participate in and benefits of the Settlement, the Notices will:

a.      provide educational information concerning concussions, their symptoms and long-term effects, as well as why medical monitoring may be appropriate; and

b.      suggest that Settlement Class Members may contact their schools for copies of all medical and training records maintained by their institutions.

6.      Within ten (10) Days of the filing of the Renewed Motion for Preliminary Approval, the Program Administrator shall serve CAFA Notices upon the proper parties and comply with the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715.

7.      All Notice and Administrative Costs shall be paid from the Medical Monitoring Fund.

B.      The NCAA will notify all of its member institutions of the Settlement and of the relevance of medical and training records of NCAA student-athletes to the Medical Monitoring Program.

- 43 -

## XII.    JUDICIAL APPROVAL PROCESS

A.    Necessity of Court Approval.  The Parties will seek the Court's approval of this Class Settlement and will seek certification of the Settlement Class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, with the opportunity for Settlement Class Members to opt out or exclude themselves from the Settlement.  See Fed. R. Civ. P. 23(b)(2); see also Fed. R. Civ. P. 23(d)(1).

B.    No class opt-outs will be permitted.

C.    The Parties contemplate that the following procedure will be followed to effectuate the Settlement:

1.    Renewed **Joint** Motion for Preliminary Approval of Class Settlement and Notice.  On or before ~~April   ~~**May 20**, ~~2015~~**2016**, or such other date as may be set by the Court, Class Counsel will prepare and file with the Court a Renewed **Joint** Motion for Preliminary Approval.  With the Renewed **Joint** Motion for Preliminary Approval, Class Counsel shall seek the Court's (i) appointment of the Notice Administrator and Program Administrator; and (ii) approval of the Notice Plan.  Collectively through these motions, Class Counsel will seek one or more orders, subject to agreement with the NCAA, which shall:

a.    Conditionally certify the Settlement Class defined as:  "All Persons who played an NCAA-sanctioned sport at an NCAA member institution on or prior to the Preliminary Approval Date;"

b.    Appoint Hagens Berman Sobol Shapiro LLP and Siprut PC as Lead Class Counsel; Hausfeld LLP as Special Class Counsel for Medical Monitoring Relief; Zimmerman Reed, The Dugan Law Firm, and the Orlando Law Firm as the Executive Committee; and the Class Representatives as Class Representatives for the Settlement Class;

- 44 -

    c.  Preliminarily approve this Agreement;

    d.  Appoint the Program Administrator in accordance with the provisions of Section VI;

    e.  Appoint the Notice Administrator in accordance with the provisions of Section VII;

    f.  Appoint the Special Master in accordance with the provisions of Section VIII;

    g.  Direct the time and manner of the Notice to be served upon the Settlement Class;

    h.  Find that the proposed form of Notice:

     i.  is reasonable and constitutes due, adequate and sufficient notice to all Persons entitled to receive notice;

     ii.  fairly and adequately describes the terms and effects of this Agreement;

     iii.  fairly and adequately describes the date by which Settlement Class Counsel must file the Motion for Final Approval and Motion for Award of Attorneys' Fees and Expenses, which shall be no earlier than one hundred and eighty (180) Days after the Preliminary Approval Date;

     iv.  fairly and adequately describes the method and date by which any member of the Settlement Class may object to or comment upon the Settlement or exclude themselves from the Settlement Class;

     v.  sets a date by which Settlement Class Counsel may respond to any objections to the Settlement;

vi.     provides notice to the Settlement Class of the date, time and place of the Fairness Hearing, such Fairness Hearing to be no earlier than two-hundred and twenty-nine (229) Days after the Preliminary Approval Date, subject to Court approval; and

vii.     meets all applicable requirements of applicable law.

i.     Approve the creation of the Settlement Website as defined in Section II(~~WW~~**AAA**);

j.     Require the Notice Administrator to file proof of publication of the Notice and proof of maintenance of the Settlement Website at or before the Fairness Hearing;

k.     Require any Settlement Class Member who wishes to exclude himself or herself from the Settlement Class to submit an appropriate, timely request for exclusion, postmarked no later than two hundred and eight (208) Days after the Preliminary Approval Date, or as the Court may otherwise direct, to the Program Administrator at the address on the Notice;

l.     Preliminarily enjoin all Settlement Class Members unless they timely exclude themselves from the Settlement Class from (i) filing, commencing, prosecuting, intervening in or participating as a plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on the Released Claims; (ii) filing, commencing or prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class action**, other than a personal injury or bodily injury class action on behalf of persons who allege injury resulting from their participation in a single NCAA-sanctioned sport at a single-NCAA member school,** on

- 46 -

behalf of any Settlement Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on the Released Claims; and (iii) attempting to effect Opt-Outs of individuals or a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on the Released Claims.  This Agreement is not intended to prevent Settlement Class Members from participating in any action or investigation initiated by a state or federal agency, or in any lawsuit unrelated to the Released Claims.

        m.     Order that any Settlement Class Member who does not become an Opt-Out will be bound by all proceedings, orders and judgments in this Litigation, even if such Settlement Class Member has previously initiated or subsequently initiates litigation or other proceedings encompassed by the Release;

        n.     Require that each Settlement Class Member who is not an Opt-Out and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed Settlement or to the Attorneys' Fees and Expenses to file with the Court and serve on Settlement Class Counsel no later than two hundred and eight (208) Days after the Preliminary Approval Date, or as the Court may otherwise direct, a statement of the objection signed by the Settlement Class Member containing the information set forth in Section XIII(C)(1);

        o.     Require that any response to an objection shall be filed with the Court no later than two hundred and ~~twenty nine~~**twenty-nine** (229) Days from the date the Court grants Preliminary Approval;

        p.     Specify that any Settlement Class Member who does not file a timely written objection to the Settlement or who fails to otherwise comply with the

- 47 -

requirements of Section XIII(C) shall be foreclosed from seeking any adjudication or review of this Settlement by appeal or otherwise;

        q.      Allow the Court, at its discretion, to award fees to any attorney hired by a Settlement Class Member for the purpose of objecting to this Agreement or to the proposed Settlement or to the Attorneys' Fees and Expenses.  Any such award shall be paid from the Medical Monitoring Fund;

        r.      Require that any attorney hired by a Settlement Class Member for the purpose of objecting to the proposed Settlement or to the Attorneys' Fees and Expenses and who intends to make an appearance at the Fairness Hearing to provide to Settlement Class Counsel and Counsel for the NCAA and to file with the Clerk of the Court a notice of intention to appear no later than two hundred and eight (208) Days after the Preliminary Approval Date or as the Court may otherwise direct;

        s.      Require any Settlement Class Member who files and serves a written objection and who intends to make an appearance at the Fairness Hearing to provide to Settlement Class Counsel and Counsel for the NCAA and to file with the Clerk of the Court a notice of intention to appear no later than two hundred and eight (208) Days after the Preliminary Approval Date or as the Court otherwise may direct;

        t.      Direct the Program Administrator to establish a post office box in its name to be used for receiving requests for exclusion and any other communications and providing that only the Program Administrator, Settlement Class Counsel, Counsel for the NCAA, the Court, the Clerk of the Court and their designated agents shall have access to this post office box, except as otherwise provided in this Agreement;

u.     Direct the Program Administrator to promptly furnish Settlement Class Counsel with copies of any and all written requests for exclusion that come into its possession, except as expressly provided in this Agreement;

v.     Direct that Class Counsel, under the oversight of Settlement Class Counsel, shall file their applications for the Attorneys' Fees and Expenses in accordance with the terms set forth in Section XVII;

w.     Order the Program Administrator to provide the Opt-Out List to Settlement Class Counsel no later than seven (7) Days after the Opt-Out and Objection Date, and then file with the Court the Opt-Out List with an affidavit attesting to the completeness and accuracy thereof no later than seven (7) Days thereafter or on such other date as the Parties may determine; and

x.     Contain any additional provisions agreeable to the Parties that might be necessary or advisable in order to implement the terms of this Agreement and the proposed Settlement.

D.     At preliminary approval, the Parties will also seek entry of the HIPAA Protective Order attached as Exhibit D.

E.     Issuance of Notice.  Within thirty (30) Days of the Court's approval of the Notice Plan or Preliminary Approval Date, whichever is later, the Notice Administrator will commence Notice.  Notice will be completed within one hundred **and** eighty (180) Days of the Preliminary Approval Date.

F.     The Fairness Hearing.  On or after two hundred and twenty-nine (229) Days after the Preliminary Approval Date, or such other date as may be set by the Court, the Court

will consider any objections to or comments in support of the Settlement by Settlement Class Members and determine whether to enter an order which shall:

        a.      Approve this Agreement;

        b.      Dismiss, with prejudice, each class claim asserted in the MDL Action; and

        c.      Permanently enjoin the Settlement Class Members from bringing or participating as absent class members in the pursuit of any Released Claims against the NCAA and/or its member institutions, either derivatively or on behalf of themselves, in any forum, action or proceeding of any kind.

        G.      At the Fairness Hearing, Class Counsel will request that the Court enter the Final Order and Judgment. At that time, Class Counsel will also request that the Court enter orders approving the Medical Monitoring Program and Fund and awarding Attorneys' Fees and Expenses to Class Counsel, and Service Awards to the Class Representatives. The Parties agree to support entry of the Court's Final Order and Judgment as contemplated herein. The NCAA will request that the Court enter the Final Order and Judgment and will not oppose Class Counsel's request for Attorneys' Fees and Expenses if the request does not exceed the amount described in Section XVII.

        H.      Reservation of Rights. If the Court does not enter the Preliminary Approval Order, the Final Order and Judgment, or the Settlement does not become Final for any reason, the MDL Action will, for all purposes, revert to its status as of the date immediately prior to the filing of the Motion for Preliminary Approval, and the Parties will be in the position they were before the submission to this Court of this Settlement Agreement. Moreover, the Parties and their counsel agree that in the event the Settlement does not become Final for any reason,

nothing contained in this Settlement Agreement or the negotiations that led to this Settlement

Agreement can be or will be presented to the Court as any form of admission or

acknowledgement with respect to the viability of any of the claims or defenses asserted or to

be asserted in this Litigation or as to the viability of class treatment for any such claims.

## XIII.   OBJECTIONS TO AND COMMENTS IN SUPPORT OF THE SETTLEMENT

A.      All objections to and comments in support of the Settlement must be sent in

writing to the Clerk of the Court, United States District Court for the Northern District of

Illinois, 219 South Dearborn Street, Chicago, Illinois 60604, with a copy to Settlement Class

Counsel and Counsel for the NCAA at:

| Lead Class Counsel: | NCAA's Counsel: |
|---|---|
| Steve W. Berman, Esq. | Mark S. Mester, Esq. |
| HAGENS BERMAN SOBOL SHAPIRO LLP | LATHAM & WATKINS LLP |
| 1918 Eighth Avenue, Suite 3300 | 330 North Wabash Avenue, Suite 2800 |
| Seattle, Washington  98101 | Chicago, Illinois  60611 |
| Telephone: (206) 623-7292 | Telephone: (312) 876-7700 |
| Facsimile: (206) 623-0594 | Facsimile: (312) 993-9767 |
| E-mail: steve@hbsslaw.com | E-mail: mark.mester@lw.com |

B.      The Opt-Out and Objection Date shall be two hundred and eight (208) Days

after the Preliminary Approval Date.

C.      Any Settlement Class Member who intends to object to the Settlement must do

so on or before the Opt-Out and Objection Date.

1.      In order to object, the Settlement Class Member must include in the

objection submitted to the Court and served on Settlement Class Counsel and Counsel for the

NCAA the following information:

a.      The name, address and telephone number of the Person objecting

and, if represented by counsel, of his or her counsel;

b.      The case number of the MDL Action, which is Master Docket No. 1:13-cv-09116;

c.      The name of the NCAA member institution(s) at which he or she participated in NCAA-sanctioned sport(s), the NCAA-sanctioned  sport(s) in which he or she participated, and the years during which he or she participated in NCAA-sanctioned sport(s);

d.      A written statement of all grounds for the objection accompanied by any legal support for such objection;

e.      Copies of any papers, briefs or other documents upon which the objection is based;

f.      A statement of whether the objector intends to appear at the Fairness Hearing; and

g.      If the objector intends to appear at the Fairness Hearing through counsel, the objection must also identify the attorney(s) representing the objector who will appear at the Fairness Hearing.

2.      Any Settlement Class Member who fails to timely file and serve a written objection shall not be permitted to object to the approval of the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.  Unless otherwise ordered by the Court, Settlement Class Members who do not timely make their objections in this manner will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement.

3.      Any objector electing to be represented by counsel shall be solely responsible for any fees and costs incurred or charged by such counsel, and in no event shall

the Parties be responsible for such fees or costs. The Court may, however, in its discretion

award fees and/or costs from the Medical Monitoring Fund to any such person.

        D.      Except as otherwise provided in Section XIII(D)(2), a member of the Settlement

Class who wishes to opt out of the Settlement Class must do so on or before the Opt-Out and

Objection Date.

        1.      In order to opt out, a member of the Settlement Class must complete

and send to the Notice Administrator a request for exclusion that is post-marked no later than

the Opt-Out and Objection Date. The request for exclusion must include:

        a.      The name, address, telephone number of the Person opting out;

        b.      The name of the NCAA member institution(s) at which he or she

participated in NCAA-sanctioned sport(s), the NCAA-sanctioned sport(s) in which he or she

participated, and the years during which he or she participated in NCAA-sanctioned sport(s);

and

        c.      A statement indicating his or her wish to be excluded from the

Settlement Class that is personally signed by the Settlement Class Member requesting

exclusion.

        2.      Any Settlement Class Member who, on or after the deadline in Section

IX(~~D~~**B**), is a current student-athlete at a NCAA member institution that fails to satisfy the

requirements of Section IX(~~D~~**B**) shall be entitled to opt out by completing and sending to the

Notice Administrator a request for exclusion that is post-marked no later than ~~eighteen~~**twelve**

(~~18~~**12**) months after the Effective Date. The request for exclusion must include:

        a.      The name, address, telephone number of the Person opting out;

        b.      The name of the NCAA member institution at which he or she participates in an NCAA-sanctioned sport(s), and the NCAA-sanctioned sport(s) in which he or she participates; and

        c.      A statement indicating his or her wish to be excluded from the Settlement Class that is personally signed by the Settlement Class Member requesting exclusion.

        3.      Opt-Outs, including Opt-Outs under Section XIII(D)(2), may be effectuated on an individual basis only; so-called "mass" or "class" opt-outs shall not be allowed and shall be of no force or effect.

        4.      Except for those who timely and properly file a request for exclusion, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Effective Date, will be bound in all respects by its terms, regardless of whether they complete a Screening Questionnaire or receive relief.

        5.      Any Person who properly opts out of the Settlement Class shall not:

        a.      Be bound by any orders or judgments entered in this Litigation after the date of exclusion;

        b.      Be entitled to any relief under, or be affected by, the Agreement;

        c.      Gain any rights by virtue of the Agreement; or

        d.      Be entitled to object to any aspect of the Settlement.

        6.      Any Person who opts out of the Settlement Class but later completes a Screening Questionnaire or seeks any other relief under this Settlement Agreement, and affirms in writing to the Program Administrator his or her intention to rescind, shall be

deemed to have rescinded his or her request for exclusion and shall be treated as a member of the Settlement Class for all intents and purposes on a going-forward basis.

E.      The Notice Administrator shall provide Settlement Class Counsel and Counsel for the NCAA with the Opt-Out List within seven (7) Days after the Opt-Out and Objection Date.   Requests for exclusion under Section XIII(D)(2) shall not be included on the Opt-Out List.

## XIV.   EFFECTIVE DATE OF CLASS SETTLEMENT; CONDITIONS TO FINALITY OF SETTLEMENT

A.      The Settlement provided for in this Agreement shall be final and unconditional fourteen (14) Days after all of the following conditions have been satisfied or waived (i.e., the Effective Date):

1.      This Agreement has been fully executed by all Parties and their counsel;

2.      The Court enters the Preliminary Approval Order;

3.      The Notice Administrator causes the Notice to be served in accordance with the Preliminary Approval Order;

4.      The Court issues the Final Order and Judgment;

5.      The Released Claims in the MDL Action are dismissed with prejudice pursuant to the Court's Final Order and Judgment; and

6.      Expiration of Appeal Periods and/or Resolution of All Appeals.

a.      If no appeal is taken from a court order or judgment, the date after the time to appeal therefrom has expired; or

b.      If any appeal is taken from a court order or judgment, the date after all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally

disposed of, such that the time to appeal therefrom has expired, in a manner resulting in an affirmance without material modification of the relevant order or judgment.

B.       Disputes Concerning the Effective Date.  Any disputes as to whether the Effective Date has occurred shall be resolved by the Court upon the request of any Party.

## XV.    FINAL ORDER AND JUDGMENT AND RELEASES

A.       If this Agreement (including any modification thereto made with the consent of the Parties as provided for herein) is approved by the Court following the Fairness Hearing scheduled by the Court in its Preliminary Approval Order, the Parties shall request the Court to enter a Final Order and Judgment pursuant to the Federal Rules of Civil Procedure and all applicable laws, that, among other things:

1.       Finds that the Court has personal jurisdiction over the Class Representatives and all Settlement Class Members and that the Court has subject matter jurisdiction to approve this Settlement and Agreement and all Exhibits thereto;

2.       Certifies a Settlement Class solely for purposes of this Settlement;

3.       Grants final approval to this Agreement as being fair, reasonable and adequate as to all Parties, consistent and in compliance with all requirements of due process and applicable law and in the best interests of all Parties and directs the Parties and their counsel to implement and consummate this Agreement in accordance with its terms and provisions;

4.       Declares this Agreement and the Final Order and Judgment to be binding on and to have res judicata and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release maintained by or on behalf of the Class

Representatives and any other Settlement Class Members, as well as their agents, heirs, executors or administrators, successors, insurers and assigns;

5.      Finds that notice as provided for in Section XI of this Agreement: (i) constituted the best practicable reasonable notice; (ii) constituted notice that was reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of this Litigation, of their right to object to or exclude themselves from the proposed Settlement as applicable, of their right to appear at the Fairness Hearing and of their right to seek relief; (iii) constituted reasonable, due, adequate and sufficient notice to all Persons entitled to receive notice; and (iv) met all applicable requirements of due process and any other applicable law;

6.      Finds that Settlement Class Counsel and the Class Representatives adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement;

7.      Dismisses all Released Claims in the MDL Action on the merits and with prejudice and without fees or costs except as provided herein, in accordance with the terms of the Final Order and Judgment as set forth herein and dismisses all other class-wide claims without prejudice, except for the individual personal injury claims of any of the Class Representatives or Plaintiffs in the Litigation (which shall not be dismissed) and subject to the limitation on Settlement Class Members to pursue any remaining claims on an individual, non-class basis, **other than personal injury or bodily injury class claims brought on behalf of persons who allege injury resulting from their participation in a single NCAA-sanctioned sport at a single-NCAA member school,** as specified in this Settlement Agreement;

8.      Adjudges that the Class Representatives and the Settlement Class Members have conclusively compromised, settled, dismissed and released any and all Released Claims against the NCAA and the Released Persons;

9.      Approves payment of the Attorneys' Fees and Expenses to Settlement Class Counsel in a manner consistent with Section XVII;

10.      Provides that upon the Effective Date, the Class Representatives and all Settlement Class Members shall be barred from asserting any Released Claims against the NCAA or any Released Persons, and any such Settlement Class Members shall have released any and all Released Claims as against the NCAA and all Released Persons;

11.      Determines that the Agreement and the Settlement provided for herein and any proceedings taken pursuant thereto are not and should not in any event be offered or received as evidence of, a presumption, concession, acknowledgment or an admission of liability or of any misrepresentation or omission in any statement or written document approved or made by the NCAA or any Released Persons or of the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the Agreement;

12.      Bars and permanently enjoins all Settlement Class Members from (i) filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction seeking damages or other legal or equitable relief for the Released Claims**, other than as a member of a class of persons who allege personal injuries or bodily injuries resulting from their participation in a single NCAA-sanctioned sport at a single-**

- 58 -

**NCAA member school**; and (ii) filing, commencing, prosecuting, intervening in or participating in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction seeking relief on a class-wide basis for personal or bodily injury related to concussions or subconcussive hits sustained during the Settlement Class Members' participation in an NCAA-sanctioned sport or the Released Claims, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency **or in a class action pursued on behalf of a class of persons who allege personal injuries or bodily injuries resulting from their participation in a single NCAA-sanctioned sport at a single-NCAA member school**;

13.     Approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Persons who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment except for Opt-Outs who subsequently elect to complete a Screening Questionnaire during the Medical Monitoring Period;

14.     Authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and all Exhibits hereto as (i) shall be consistent in all material respects with the Final Order and Judgment, and (ii) do not limit the rights of the Parties or Settlement Class Members.

B.     As of the Effective Date, the Releasing Persons are deemed to have fully, irrevocably, absolutely, and unconditionally released and forever discharged the Released Persons from all Released Claims by operation of entry of the Final Order and Judgment.

1.     Subject to Court approval, all Releasing Persons shall be bound by this Agreement and the Release, and all of their Released Claims shall be dismissed with prejudice

and released, irrespective of whether they received actual notice of this Litigation or this Settlement.

2. Without in any way limiting the scope of the Release, this Release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Settlement Class Counsel or any other counsel representing Releasing Persons, or any of them, in connection with or related in any manner to this Litigation, the Settlement, the administration of such Settlement or the Released Claims.

C. Nothing in the Releases shall preclude any action to enforce the terms of this Agreement, including participation in any of the processes detailed herein.

## XVI. NO ADMISSION OF LIABILITY AND PRESERVATION OF ALL DEFENSES

A. This Agreement does not constitute an admission as to the merits, validity, or accuracy, or lack thereof, of any of the allegations or claims asserted in any MDL Action.

B. The Parties understand and agree that this Agreement embodies a compromise of disputed claims, and nothing in this Agreement, including the furnishing of consideration hereunder, shall be deemed to constitute an admission, finding, or wrongdoing by the NCAA and/or its member institutions, or to give rise to any inference of wrongdoing or admission of wrongdoing or liability, whether factual or legal, in this or any other proceeding.

C. The NCAA specifically denies any liability or wrongdoing as well as the validity and accuracy of the allegations or the claims asserted in the MDL Action.

D. Neither the fact nor the terms of this Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Agreement or arising out of or relating to any Court order enforcing this Agreement.

E.     The results from the testing conducted under the Medical Monitoring Program shall not constitute an admission by the NCAA, its member institutions, its current and former officers, directors, employees, attorneys, insurers or agents.

F.     While a Settlement Class Member may use the results from the Medical Monitoring Program for any purpose not otherwise excluded herein, the fact that the results were obtained through the Medical Monitoring Program as a result of the MDL Action and Agreement will be governed by Rule 408 of the Federal Rules of Evidence. Also, the funding for the individual tests conducted under the Medical Monitoring Program will be governed by Rule 408 of the Federal Rules of Evidence.

G.     By its agreement hereto, the NCAA does not waive any defenses or affirmative defenses that it may be entitled to assert in any future litigation.

## XVII. COMPENSATION OF SETTLEMENT CLASS REPRESENTATIVES AND CLASS COUNSEL

A.     Settlement Class Representatives. Plaintiffs will apply to the Court for reasonable Service Awards for the time and service spent by the Class Representatives in this matter to be paid from the Medical Monitoring Fund. The NCAA has agreed not to object to Service Awards in the amount of $5,000 for each **Settlement** Class Representative deposed in Arrington, namely ~~Adrian Arrington,~~ Derek Owens, Angelica Palacios and Kyle Solomon. The NCAA has agreed not to object to Service Awards in the amount of $2,500 for each Class Representative who was not deposed, namely Abram Robert Wolf, Sean Sweeney, Jim O'Connor, Dan Ahern, Paul Morgan, Jeffrey Caldwell, John DuRocher, Sharon Washington, Shelby Williams, Brice Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, Jessica Miller, Anna Bartz, Peter Dykstra, DaChe Williams, Rachel Harada, Natalie Harada, and Adam Walker.

B.       Attorneys' Fees and Expenses.  Settlement Class Counsel will apply to the Court for an award of Attorneys' Fees and Expenses from the Medical Monitoring Fund.  The NCAA agrees not to oppose an application for the award of Attorneys' Fees and Expenses not to exceed a total of fifteen million U.S. dollars ($15,000,000.00) in attorneys' fees and up to seven hundred fifty thousand U.S. dollars ($750,000.00) in out-of-pocket expenses.

C.       Class Counsel will have a continuing obligation to implement the terms of the Settlement over its lifetime.  Lead Counsel and one (1) member of the Executive Committee designated by Lead Counsel may be compensated at a rate not to exceed $400 per hour, plus costs, from the Fund for work performed after the first year from the Effective Date, and the NCAA has agreed not to object to applications by Lead Counsel and their designee that seek in the aggregate up to five hundred thousand U.S. dollars ($500,000.00) in additional fees and costs over the duration of the Medical Monitoring Period.  However, this provision does not preclude Lead Counsel and their designee from seeking Court approval for attorneys' fees and costs that exceed five hundred thousand U.S. dollars ($500,000.00) to be paid from the Medical Monitoring Fund.  The Chair of the Medical Science Committee shall approve any such fee and cost requests in the first two (2) years.  Lead Counsel shall remain in that position unless and until they seek to be relieved of that responsibility due to changes in the law firm (i.e., they no longer exist).

## XVIII. NOTICES

A.       All Notices to Settlement Class Counsel and Counsel for the NCAA required by the Agreement shall be made in writing and communicated by facsimile and United States mail to the following addresses:

All Notices to Settlement Class Counsel or the Class Representatives shall be sent to:

Steve W. Berman, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com

Joseph J. Siprut, Esq.
SIPRUT PC
17 North State Street, Suite 1600
Chicago, Illinois  60602
Telephone: (312) 236-0000
Facsimile: (312) 878-1342
E-mail: jsiprut@siprut.com

All Notices to Counsel for the NCAA or the NCAA provided herein shall be sent to:

Mark S. Mester, Esq.
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: mark.mester@lw.com

Scott A. Bearby, Esq.
THE NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION
700 West Washington Street
Indianapolis, Indiana 46204
Facsimile:  (317) 966-6518

B.      The notice recipients and addresses designated in this Section may be changed by written request.

C.      Upon the request of any Party, the Parties agree to promptly provide each other with copies of comments, objections, requests for exclusion or other documents or filings received as a result of the Notice.

## XIX.  DISPUTE RESOLUTION

A.      The Court shall retain jurisdiction over the MDL Action and the Parties for purposes of enforcement of the Settlement.

B.      The Parties and their counsel will attempt in good faith to resolve any dispute or controversy arising from the Settlement, including without limitation, those relating to rights or obligations of the Parties or the terms and conditions of this Agreement.

## XX.   TERMINATION OF SETTLEMENT

A.    Within fifteen (15) Days after the occurrence of any of the following events and upon written notice to counsel for all Parties, a Party shall have the right to withdraw from the Settlement and terminate this Agreement:

1.    If the NCAA's insurers fail to fund the Settlement or otherwise breach their commitments to the NCAA as specified in Section IV(A)(1)(a);

2.    If the Court fails to approve the Agreement as written or if on appeal the Court's approval is reversed or modified;

3.    If the Court materially alters any of the terms of the Agreement other than the Attorneys' Fees and Expenses; or

4.    If the Preliminary Approval Order, as described in Section XII(C)(1), or the Final Order and Judgment, as described in Section XV(A), is not entered by the Court or is reversed or modified in any respect on appeal, or otherwise fails for any reason.  In the event of a withdrawal pursuant to this Section, any certification of a Settlement Class will be vacated, without prejudice to any Party's position on the issue of class certification and the amenability of the claims asserted in this Litigation to class treatment, and the Parties shall be restored to their litigation position existing immediately before the execution of this Agreement.

B.    If Settlement Class Members properly and timely submit requests for exclusion as set forth in Section XIII(D)(1), thereby becoming Opt-Outs and are in a number more than the confidential number submitted to the Court by the Parties at the time of filing the Renewed Motion for Preliminary Approval, then the NCAA may withdraw from the Settlement and terminate this Agreement.  In that event, all of the obligations under this

- 64 -

Agreement shall cease to be of any force and effect; the certification of the Settlement Class shall be vacated without prejudice to the Parties' position on the issue of class certification; and the Parties shall be restored to their litigation position existing immediately before the execution of this Agreement. In order to elect to withdraw from the Settlement and terminate this Agreement on the basis set forth in this Section XX(B), the NCAA must notify Settlement Class Counsel in writing of its election to do so within fourteen (14) Days of the Medical Monitoring Program Administrator serving the Opt-Out List on the Parties. In the event that the NCAA exercises such right, Settlement Class Counsel shall have sixty (60) Days or such longer period as agreed to by the Parties to address the concerns of the Opt-Outs. If through such efforts the total number of members of the Opt-Out List subsequently becomes and remains fewer than the number of Settlement Class Members submitted to the Court at the time of filing the Renewed Motion for Preliminary Approval, the NCAA shall withdraw its election to withdraw from the Settlement and terminate the Agreement. In no event, however, shall the NCAA have any further obligation under this Agreement to any Opt-Out unless he or she withdraws his/her request for exclusion. For purposes of this Section, Opt-Outs shall not include: (i) Persons who are specifically excluded from the Settlement Class under Section III(A) of this Agreement; (ii) Settlement Class Members who elect to withdraw their request for exclusion; (iii) Opt-Outs who agree to sign an undertaking that they will not pursue an individual claim, class claim or any other claim that would otherwise be a Released Claim as defined in this Agreement; and (iv) Persons who opt-out under Section XIII(D)(2).

      C.     In the event of withdrawal or termination under Section XX:

          1.     This Agreement shall be null and void, shall have no further force and effect with respect to any Party in this Litigation and shall not be offered in evidence or used

in any litigation for any purpose, including the existence, certification or maintenance of any proposed or existing class or the amenability of these or similar claims to class treatment;

2.     This Agreement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the NCAA, the Class Representatives and the Settlement Class Members and shall not be deemed or construed to be an admission or confession in any way by any Party of any fact, matter or proposition of law and shall not be used in any manner for any purpose, and the Parties to this Litigation shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court;

3.     The Parties shall request the Court to vacate any order certifying the Settlement Class; and

4.     Any monies in the Medical Monitoring Fund, together with any accrued interest, shall be promptly refunded to the NCAA by the Medical Monitoring Program Administrator.

5.     Without limiting any other rights under this Settlement Agreement, the NCAA will have the unconditional right, in its sole good faith discretion, to unilaterally terminate and render null and void this Settlement Agreement for any reason whatsoever following notice of Opt-Outs and prior to the Fairness Hearing.  The NCAA must provide written election to terminate this Settlement Agreement to Class Counsel and the Court prior to the Fairness Hearing.

## XXI.  MISCELLANEOUS PROVISIONS

A.     This document was drafted jointly and is not to be construed against any party.

B. The provisions of this Agreement are not severable. The invalidation or non-approval of a material provision may invalidate the entire Agreement at a Party's request within seven (7) Days of entry of an order invalidating or declining to approve the provision.

C. The Recitals and Exhibits to this Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Agreement.

D. This Agreement is for Settlement purposes only. Neither the fact of nor any provision contained in this Agreement or action taken hereunder shall constitute or be construed as an admission of the validity of any claim or any fact alleged in this Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of the NCAA or any admission by the NCAA of any claim or allegation made in any action or proceeding against the NCAA or any concession as to the merit of any of the claims asserted by the Class Representatives in this Litigation. This Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by the NCAA that the Class Representatives' claims or any similar claims are suitable for class treatment.

E. In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Agreement in

order to give this Agreement full force and effect.  The executing of documents must take place prior to the date scheduled for the Preliminary Approval Hearing.

F.      No Person shall have any claim against the Class Representatives**,.  Further, no person shall have any claim against** the NCAA, the NCAA's Counsel, **the** Program Administrator, **the** Notice Administrator, **the Special Master, the Medical Science Committee** or the Released Persons or their agents based on administration of the Settlement substantially in accordance with the terms of the Agreement or any order of the Court or any appellate court.

G.      The NCAA and Settlement Class Counsel hereby agree not to disclose information to the media or the press, on the internet, or in any public forum (other than a court), orally or in writing, that relate to this Settlement or this Litigation other than information disclosed by or consistent with the Notice and/or Reminder Notice, or as otherwise permitted by the Court. The NCAA and Settlement Class Counsel also hereby agree that all other counsel of record for the Class Representatives will not disclose information to the media or the press, on the internet, or in any public forum (other than a court), orally or in writing, that relate to this Settlement or this Litigation other than information disclosed by or consistent with the Notice and/or Reminder Notice, or as otherwise permitted by the Court.

H.      This Agreement constitutes the entire agreement between and among the Parties with respect to the Settlement of this Litigation.  This Agreement supersedes all prior negotiations and agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part of the subject matter of this Agreement has been made or

relied on except as expressly set forth in this Agreement. This Agreement shall not be amended, modified, or supplemented, nor shall any of its provisions be deemed to be waived, unless by written agreement signed by Settlement Class Counsel and Counsel for the NCAA.

I.     There shall be no waiver of any term or condition absent an express writing to that effect by the waiving Party. No waiver of any term or condition in this Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Agreement.

J.     This Agreement shall not be construed more strictly against one (1) Party than another merely because of the fact that it may have been prepared by counsel for one (1) of the Parties, it being recognized that because of the arm's length negotiations resulting in the Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Agreement. All terms, conditions and Exhibits are material and necessary to this Agreement and have been relied upon by the Parties in entering into this Agreement.

K.     This Agreement shall be construed under and governed by the laws of the State of Illinois without regard to its choice of law provisions.

L.     The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement for the purpose of the administration and enforcement of this Agreement. **The Court may request and require a report from the Medical Science Committee, the Program Administrator, the Notice Administrator, and/or the Special Master regarding the status of the Medical Monitoring Program at any during the Medical Monitoring Period.**

M.     All agreements made and orders entered during the course of this Litigation relating to the confidentiality of information shall survive this Agreement.

N.     This Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties.

O.     The Class Representatives represent and warrant that no portion of any claim, right, demand, action, or cause of action against the Released Persons that the Class Representatives have or may have arising out of any allegations made in any of the actions comprising this Litigation or pertaining to any of the Released Claims, and no portion of any recovery or settlement to which the Class Representatives may be entitled, has been assigned, transferred, or conveyed by or for the Class Representatives in any manner; and no Persons other than the Class Representatives have any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement as those of the Class Representatives.

P.     The headings used in this Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.  In construing this Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

Q.     The Parties stipulate to stay all proceedings in this Litigation until the approval of this Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits and other matters necessary to obtain and preserve final judicial approval of this Agreement.

R.     Settlement Class Counsel warrant and represent to Counsel for the NCAA that they have the authority to sign this Agreement on behalf of the Class Representatives and their execution hereof shall be binding upon the Class Representatives as well as their agents, heirs, executors or administrators, successors and assigns.

S.      The NCAA agrees that all statutes of limitations on claims asserted in Arrington have been tolled since those claims were first asserted and will remain tolled until the Court has ruled on the Motion for Final Approval filed by Class Counsel of this Settlement, at which point the tolling period on such claims will end except as otherwise specified in this Settlement Agreement.

T.      All representations, warranties, and covenants set forth in this Agreement shall be deemed continuing and shall survive the termination or expiration of this Agreement.

U.      Cooperation.

1.      The Parties shall reasonably cooperate, without further consideration, with each other to effect this Settlement and all terms thereof, including, without limitation, Court approval, Notice, the Fairness Hearing, Final Approval, and the Medical Monitoring Program.

2.      This duty of cooperation includes, but is not limited to, the execution and delivery of any and all such other documents and the taking of any and all such other actions as may be reasonably necessary to effectuate this Agreement.

V.      Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.  Photocopies of fully executed copies of this Agreement may be treated as originals.

Executed this ——20th day of ~~April~~May, ~~2015~~2016

For ~~Adrian Arrington,~~ Derek Owens, Angelica Palacios, Kyle Solomon, Abram Robert Wolf, Sean Sweeney, Jim O'Connor, Dan Ahern, Paul Morgan, Jeffrey Caldwell, John DuRocher, Sharon Washington, Shelby Williams, Brice Sheeder, Shavaughne Desecki, Spencer Trautmann, Ryan Parks, Ursula Kunhardt, Jessica Miller, Anna Bartz, Peter Dykstra, DaChe Williams, Rachel Harada, Natalie Harada, and Adam Walker, individually and on behalf of all others similarly situated

By: _____

    Steve W. Berman, Esq.
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
    Seattle, Washington 98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
    E-mail: steve@hbsslaw.com

**By:** _____

    **Joseph J. Siprut**
    **Gregg M. Barbakoff**

    **SIPRUT PC**
    **17 North State Street, Suite 1600**
    **Chicago, IL 60602**
    **Telephone: (312) 236-0000**
    **Facsimile: (312) 878-1342**
    **E-mail: jsiprut@siprut.com**
        **gbarbakoff@siprut.com**

Lead Class Counsel

Executed this ——20th day of ~~April~~May, ~~2015~~2016

For the National Collegiate Athletic Association:

By: _____

    Mark S. Mester, Esq.
    LATHAM & WATKINS LLP
    330 North Wabash Avenue, Suite 2800
    Chicago, Illinois 60611
    Telephone: (312) 876-7700
    Facsimile: (312) 993-9767
    E-mail: mark.mester@lw.com

| Summary report: Litéra® Change-Pro TDC 7.5.0.145 Document comparison done on 5/20/2016 2:04:08 PM | |
|---|---|
| **Style name:** L&W without Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:**iw://US-DOCS/CH/2307916/1 | |
| **Modified DMS:** iw://US-DOCS/CH/2307237/9 | |
| **Changes:** | |
| Add | 157 |
| Delete | 117 |
| *Move From* | 0 |
| *Move To* | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 274 |