**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION** | **MDL No. 2492**<br><br>Master Docket No. 1:13-cv-09116<br><br>This Documents Relates To:<br>All Cases<br><br>Judge John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

**NICHOLS' RESPONSE TO JOINT MOTION FOR PRELIMINARY APPROVAL OF SECOND AMENDED CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND SETTLEMENT SUBCLASSES**

Lead Objector Anthony Nichols ("Nichols"), by and through his counsel, hereby respectfully submits the following response to the Joint Motion for Preliminary Approval of Second Amended Class Action Settlement and Certification of Settlement Class and Settlement Subclasses, (dkt. 226 (the "Motion")):

1.      On April 29, 2016, the Settling Parties and counsel for Nichols participated in a mediation before the Hon. Wayne R. Anderson (Ret.) that resulted in a compromise amenable to each. Nichols therefore does not oppose preliminary approval of the Second Amended Settlement Agreement because, as a result of that compromise, it does not waive "claims pursued on behalf of a class of persons who allege personal injuries or bodily injuries resulting from their participation in a single NCAA-sanctioned sport at a single-NCAA member school." (Motion, at 4). Settling Plaintiffs and the NCAA have now filed supplemental briefing in support of the compromise (Dkts. 267, 268), and Nichols both hoped and expected that he would have nothing more to say about preliminary approval.

1

*The NCAA Attempts To Undermine Single-Sport, Single-School Personal Injury Class Claims.*

2. Unfortunately, the papers filed by the NCAA (and Settling Plaintiffs) seek not simply to provide further support for the Second Amended Settlement Agreement, but also to apparently undermine the class personal injury cases that Nichols spent years fighting to untether from this litigation. Thus, in an effort to ensure that the Court does not accept the Settling Parties' request to unnecessarily undermine class personal injury cases not before the Court by making theoretical rulings affecting them, Nichols files this Response.

3. The NCAA's memorandum appears to seek, in this non-adversarial setting, an order for the NCAA to use in *other* cases to defend against "single-school / single-sport" class claims. (*See* Dkt. 268 at 22-27.) Specifically, the NCAA asks the Court to hold, on the basis of purported numerosity challenges, that *no* single-school personal injury class—even one composed of athletes from multiple sports—could ever be certified. (*Id.*, at 25.)[1]

4. While Nichols believes the science underlying the NCAA's contention is wrong (and antiquated), that belief is besides the real point: that in evaluating the Second Amended Class Action Settlement, the Court need not—and, moreover, should not—reach the certifiability of personal injury class claims (whether for reasons of numerosity or for any other reason).

5. The NCAA's apparent request for the Court to reach the hypothetical certifiability of personal injury class claims is improper and must be denied. As the Seventh Circuit has made clear, the district court should avoid deciding hypothetical issues during the class action approval process because—by that stage—the Court no longer enjoys the benefit of adversarial litigants and arguments. *See, e.g., Muro v. Target Corp.*, 580 F.3d 485, 491 (7th Cir. 2009) (noting that

---

[1] Such an order would provide a boon to the NCAA in defending single-sport, single-school personal injury class actions. If the Court were to grant the NCAA's request, and hold that *all* single-school, multi-sport classes are insufficiently numerous for certification, then the NCAA would be able to point at that order to argue that *no* single-school, single-sport classes could ever be sufficiently numerous.

"[o]nly if issues personal to the prospective class representative remain alive in the litigation can a court be assured that there remains sufficient concrete adverseness to ensure that the class certification issue is presented in a truly adversarial manner").

6. There is absolutely no reason for the Court to make such hypothetical findings in evaluating this settlement. Nichols—the strongest voice against the release of class personal injury claims throughout this litigation—is now satisfied with the compromise reached by all Parties. No other party appears to take issue with the compromise reached. Nichols therefore believes the Court can find this settlement to be within the range of reasonableness such that notice should go to the Class *without* opining on issues which (1) are not before this court, but (2) will certainly come up in other cases and before other courts.

***Class Counsel Goes Even Further In Attacking Its Own Clients' Personal Injury Claims.***

7. Class Counsel's statements regarding the viability of class personal injury claims are even more troubling, but for different reasons. Rather than limiting its arguments to supporting the Second Amended Settlement Agreement, Class Counsel goes out of its way to attack the certifiability of class personal injury claims – claims which will be brought (and, indeed, have already begun to be brought) by Class Counsel's *own clients*:

> On May 17, 2016, Edelson PC and other law firms filed six personal-injury class actions for football players who allegedly suffered concussions and related injuries over a period of several decades. Those class actions would be permissible under the release provisions of the Second Amended Settlement, ***but they present a multitude of problems for class certification*** that would be compounded many times over if an individual athlete were allowed to seek class certification for athletes in multiple sports, even at a single school. The plaintiffs in those cases contend that each and every football player who played at a school for decades suffered concussion-related damages. For example, in Herman v. Southeastern Conference, et al, Case No. 2:16-at-00572 (E.D. Cal.), the plaintiff sued on behalf of a class defined as "[a]ll individuals who participated in University of Georgia's varsity football

3

program between 1952 and 2010." Complaint, ¶ 85. The complaint alleges that the class of former players "now suffer from neurological and cognitive damage, including symptoms of traumatic encephalopathy." Id., ¶ 8. ***That case (and the five other putative class actions, which make similar claims for different schools) presents daunting obstacles to class certification***, *given the decades-long scope of the class and the fact that the named plaintiff only played for a few years at most during the class period, such as: (1) when did the duty of care arise for each defendant; (2) what duty of care was owed throughout the class period; (3) what actions were taken by each defendant during that time period; (4) what actions were taken by the multitude of different coaches, medical personnel, and trainers over the decades; and (5) how the plaintiff can prove that each and every football player for decades suffered concussion-related injuries.* Given those insurmountable problems for class actions limited to a single sport, the Second Amended Settlement properly releases all class actions for multiple sports, even at a single school.

(Dkt. 267, at 12, n. 31) (emphasis added).

8. To be clear, the certifiability of single-school / single-sport class actions is wholly irrelevant to this settlement (as those claims are specifically carved out by the Second Amended Settlement Agreement). So why, then, does Class Counsel go out of its way to try to undermine those cases – cases that will benefit its own clients? Has Class Counsel, as part of the bargain in this instant case, explicitly or implicitly agreed to take steps to block Nichols' personal injury class actions? Or is Class Counsel motivated by perceived reputational damage if—after strenuously arguing that class personal injury claims have no value—the cases prove successful? Nichols has no answers to these questions (but notes how truly bizarre it is for Class Counsel to be making such arguments).

9. Whatever the answers may be, Class Counsel's actions underscore Nichols' concerns from the start of this litigation: Class Counsel's interests continue to run counter to the interests of their clients, and, when that happens, it is the class that loses out.

4

***The Court Should Not Gratuitously Make Findings That Impact Cases Before Other Courts.***

10. As stated above, Lead Objector Nichols is satisfied with the compromise reached by all Parties, and his counsel have already begun filing the class personal injury claims they have long sought to litigate. Provided that the Court's preliminary approval order does not prejudice the rights of class members to bring their single-sport, single-school personal injury class actions, Lead Objector Nichols will not oppose a finding by this Court that the settlement is within the range of reasonableness such that notice should go to the Class.

11. If the Court's order on preliminary approval does ultimately impact the certifiability of single-sport, single-school personal injury class actions, Lead Objector Nichols would likely be forced to (1) withdraw his non-opposition to the settlement, (2) seek discovery, and (3) request full briefing on the propriety of the NCAA's (and Settling Plaintiffs') analysis. That is so because the core basis of Nichols' non-opposition—that the rights of putative class members to bring single-sport, single-school personal injury class claims remain unaffected—would be undercut, and the benefit of the bargain that Nichols has achieved through 30 months of hard-fought litigation eviscerated.

12. Lead Objector Nichols believes strongly that the Court can and should assess preliminary approval of the Second Amended Settlement Agreement without making findings that could impact the certifiability of single-sport, single-school personal injury class actions cases not before this Court.

\*            \*            \*

Date: May 24, 2016                                    Respectfully submitted,

**ANTHONY NICHOLS**

By: /s/ Jay Edelson
         One of his Attorneys
Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**CERTIFICATE OF SERVICE**

       I, Jay Edelson, an attorney, hereby certify that on May 24, 2016, I served the above and Foregoing ***Nichols' Response To Joint Motion For Preliminary Approval Of Second Amended Class Settlement And Certification Of Settlement Class And Settlement Subclasses***, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                                                         /s/ Jay Edelson