```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE     )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-   )
 4   ATHLETE CONCUSSION INJURY       )  Chicago, Illinois
     LITIGATION,                     )  November 30, 2016
 5                                   )  10:35 o'clock a.m.

 6            TRANSCRIPT OF PROCEEDINGS - STATUS/MOTION
                 BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:         HAGENS BERMAN SOBOL SHAPIRO, by
 9                               MS. ELIZABETH A. FEGAN
                                 1144 West Lake Street
10                               Suite 400
                                 Oak Park, Illinois 60301
11
                                 COATS ROSE YALE RYMAN & LEE, by
12                               MR. DWIGHT E. JEFFERSON
                                 Nine Greenway Plaza
13                               Suite 1100
                                 Houston, Texas 77046
14
                                 EDELSON PC, by
15                               MR. JAY EDELSON
                                 MR. BENJAMIN SCOTT THOMASSEN
16                               350 North LaSalle Street
                                 Suite 1300
17                               Chicago, Illinois 60654

18   For Defendant NCAA:         LATHAM & WATKINS, by
                                 MS. JOHANNA MARGARET SPELLMAN
19                               MR. MARK STEVEN MESTER
                                 330 North Wabash Avenue
20                               Suite 2800
                                 Chicago, Illinois 60611
21

22
                       ALEXANDRA ROTH, CSR, RPR
23                       Official Court Reporter
                  219 South Dearborn Street, Room 1224
24                       Chicago, Illinois 60604
                             (312) 408-5038
25
```

1       (Proceedings had in open court:)
2              THE CLERK: 13 C 9116, NCAA Student-Athlete Concussion
3   Injury Litigation.
4              MR. MESTER: Good morning, your Honor. Mark Mester
5   and Johanna Spellman on behalf of the NCAA.
6              MS. FEGAN: Good morning, your Honor. Elizabeth Fegan
7   on behalf of the settlement class as well as on behalf of
8   plaintiffs that have specific injuries and that -- including
9   Derek Owens and Kyle Solomon.
10             MR. JEFFERSON: Judge, Dwight Jefferson on behalf of
11  plaintiff Julius Whittier.
12             MR. EDELSON: Good morning, your Honor. Jay Edelson
13  and Ben Thomissen on behalf of Anthony Nichols.
14             THE COURT: Good morning.
15             So I wanted to hear from the parties today with regard
16  to what I'm calling colloquially for our purposes the
17  nationwide class cases to decide and to talk to the parties
18  about how best to deal logistically with the individuals who
19  also have to date alleged personal injury claims in their
20  respective complaints that were consolidated or transferred to
21  me under the original MDL. The MDL is now kind of morphed to
22  some extent. And I anticipate that it will probably morph even
23  further as the months goes on.
24             But as I was sitting here trying to figure out how
25  to -- and we had the discussion before, how to keep those two

1    kind of categories of cases separate.  We decided to go ahead
2    and file or create another master docket for what I call the
3    single sport/single school cases, which is the 16 C 8727 case,
4    which at the moment at least consists only of cases filed with
5    regard to football teams.
6           And so as I look through the complaints in the
7    nationwide class, I noticed that there were a number of
8    plaintiffs that alleged personal injury claims.  And I wanted
9    to get counsel's thought on how to best proceed with regard to
10   those claims so that we are not confusing the two cases, and
11   yet we are addressing the claims that otherwise remain.
12          And those individuals are Mr. Arrington, Mr. Owens,
13   Ms. Palacios and Mr. Solomon in 11 C 6356; Mr. Hudson in 14 C
14   1914; and Mr. Powell in 14 C 198; as well as Mr. Nichols in 14
15   C 962.
16          So who wants to try to go first?
17          MR. MESTER:  I will be happy to, your Honor.  We did
18   have some conversations with Ms. Fegan and Mr. Berman.  And our
19   suggestion would be, subject to approval by the Court, to give
20   us an opportunity to try to mediate as many of these as we can.
21   I don't know that we'll get them all resolved.  I obviously
22   don't know if we get any resolved.  But we thought, and I think
23   Ms. Fegan agrees, that it would make some sense to do that
24   first.
25          We have taken a fairly substantial amount of discovery

1  on these individual claims. I don't think it would be all you
2  would need to try the claims. But it's I think enough to
3  mediate them.
4      So what we propose to your Honor is that we defer
5  scheduling for, say, 90 days to allow us to do those
6  mediations, report back. And then address at that time the
7  scheduling of the remaining cases along with the remand issue,
8  which I think at least implicates two of them.
9      THE COURT: All right. And that's with regard to the
10 individuals in what was originally the Arrington-Owens case?
11 Or does that involve the others as well?
12     MR. MESTER: Your Honor, I apologize. We didn't -- we
13 did not speak to counsel for Mr. -- Ms. Whittier or to Mr.
14 Edelson. But we'd certainly be open to having it inclusive of
15 all of them.
16     THE COURT: What are other counsel's thoughts? Mr.
17 Edelson?
18     MR. EDELSON: Your Honor, the first we've heard of
19 this. So we haven't talked to our clients about it. Our
20 original thought was that we were planning on just amending the
21 complaint and to take out the medical monitoring claims and to
22 refile it or however you think logistically we should do it in
23 the new section of the MDL, with the new MDL.
24     But perhaps if it's all right with your Honor, we can
25 probably speak to our client and figure out our position.

1 THE COURT: And I have gone through -- thought of all
2 sorts of permutations to this to allow the parties to amend
3 their complaints in the original cases and then somehow make
4 them related to both cases. But I think that would just lead
5 to more confusion rather than clarify issues. Also given the
6 fact that the nationwide settlement if it's finally approved
7 will address most of the claims that are set forth in those
8 original complaints anyway.
9 The other avenue would be to have any of the
10 individuals that want to file their own separate complaints
11 alleging personal injury claims, either on a -- well, on a
12 single sport/single school basis, either on a class basis or
13 individual basis, to do so.
14 With regard to some of the individuals that already
15 filed here in the Northern District, that shouldn't be a
16 problem. But with regard to individuals that were transferred
17 over here, we do have this procedural issue with regard to
18 venue and other objections that the defendants may have.
19 And so with regard to those individuals, say, Mr.
20 Jefferson, your client, Mr. Whittier, for example, I know you
21 asked to amend the complaint here to add certain additional
22 claims, including I think a 23(b)(3), basically personal injury
23 damages class.
24 You know, whether those complaints, if I wanted people
25 to file new complaints, more than likely they would have to be

1 filed in the transferor court, and then transferred over here
2 through the MDL process. I don't see this much of a hurdle
3 given the fact that the MDL seems like it's basically if it has
4 NCAA and concussion in it, it's sending it to me.
5 But be that as it may, we have kind of Lexicon issues
6 and other issues with regard to cases that were transferred
7 over to me as part of the MDL process, which raises further
8 complications. So it seems to me preliminarily that for these
9 individuals that the most logical thing to do would be, it
10 seems to me, for them to go ahead and file new complaints in
11 their home districts, and then have them ask the MDL panel
12 basically to transfer them over to here. And then they would
13 be made part of the 16 C 8727 class.
14 That would avoid any confusion. That will then create
15 a pretty clear barrier between to some extent demarcation
16 between the nationwide class cases that deal with 23(b)(2)
17 classes, with 23(b)(3) issues and personal injury issues in the
18 other master case. I think that will also address whatever due
19 process concerns. I think it also allows defendants to raise
20 whatever due process, other concerns, they may have in the
21 appropriate context.
22 So that was kind of my current thinking. But by no
23 means are they kind of final. And so I wanted to broach that
24 with the parties as well.
25 MR. MESTER: Your Honor, I'd have to go back and look.

1 And it's admittedly been a while.  But my vague recollection
2 is, the question of individual cases came before the panel at
3 the hearing in Las Vegas, the initial hearing.  And I think I
4 recall Judge Heyburn making some comment.  As I recall,
5 decision was made.  That doesn't mean it couldn't be revisited,
6 of course.  But the initial decision was made to not make
7 individual cases part of the MDL.
8         So I just wanted to put that out there for what it's
9 worth.
10         THE COURT:  I think that's to some extent welcome news
11 for my staff.  I am not sure whether that's, No. 1, set forth
12 clearly in the order, or if that's finally what the MDL panel
13 decided.
14         Mr. Jefferson?
15         MR. JEFFERSON:  Judge, what I did, and I was kind of
16 going through the same permutations that you were.  And what I
17 came down under the amending was from the standpoint of
18 efficiency, because I was kind of debating should -- from the
19 standpoint of amending, bringing in a new plaintiff, whether I
20 needed to file it in the Western District, have it transferred
21 up.
22         But as I looked, I really couldn't see the mechanism.
23 And I was really relying on the Court to tell me whether or not
24 the best way to do this would be to amend here.  And then the
25 Court on its own could then transfer into the single sport.

1                So that's why I brought it to the Court.

2                THE COURT: Right. Mr. Edelson, what are your

3     thoughts?

4                MR. EDELSON: I think that your suggestion makes the

5     most sense. And then if there are issues about whether these

6     individual cases should be part of an MDL, before your Honor or

7     elsewhere, that would be sorted out in the normal course.

8                THE COURT: Okay. All right. So why don't we go

9     ahead and do that. So to the extent that the individuals that

10    I just named would like to proceed with regard to their

11    individual -- let's put it this way: Whether it's individual,

12    whether it's on a class basis, if they want to proceed with

13    their personal injury damages claims, individually or on a

14    classwide basis, my suggestion would be for those parties to go

15    ahead and file new complaints in their home districts, and then

16    seek transfer through the MDL to the master case, 16 C 8727.

17               Now, what that means is -- and I don't know. Again,

18    the MDL order itself doesn't delineate between whether or not

19    they are class allegations or individual cases. And so for

20    instance, for example, Mr. Whittier, what you want to do is,

21    add -- you want to assert a personal injury damages claim on an

22    individual and class basis, as I understand your amended

23    complaint. Is that's correct --

24               MR. JEFFERSON: Yes.

25               THE COURT: -- Mr. Jefferson?

1    So I think that would certainly qualify to be
2 transferred over to here through the MDL process. But I think
3 that's probably the best way to go.
4    Now, with regard to deadlines, to the extent that the
5 parties want some time to explore individual settlements,
6 that's fine with me. I am not going to put -- well, so I can
7 put a deadline. But we will set it for sometime out there for
8 this process to take place.
9    MS. FEGAN: Your Honor, with respect to Mr. Owens and
10 Mr. Solomon, they joined Mr. Arrington's suit here in Chicago.
11 They never had a complaint in their original district. And
12 that's, you know, been fully kind of worked up in discovery up
13 to the expert point. I'm a little bit concerned --
14    THE COURT: I think with regard to the individuals
15 that originally filed their suit here, they can just file it
16 here.
17    MS. FEGAN: Okay. Thank you.
18    THE COURT: And just note them as being related to the
19 16 C 8727 case. And I am sure the docket department will make
20 sure that it gets to where it needs to go.
21    MS. FEGAN: Thank you, your Honor.
22    THE COURT: All right. So I am going to put an
23 outside deadline of -- if we look at 90 days, we are looking at
24 the end of February. So March 3 for that to give the parties
25 some timeframe.

1       Obviously, Mr. Edelson, if there is no interest in the
2  settlement discussions, you can go ahead and do that process
3  before then as well.  But just to give the parties some
4  timeframe.
5       MR. EDELSON:  Thank you, your Honor.
6       THE COURT:  Just to give me some timeframe so I don't
7  have all these additional tagalong cases later on as the
8  process goes forward.
9       All right.  I have also reviewed the status of the
10 class notice.  So at this point, Mr. Mester, have there been
11 responses from the individual institutions?  And how is that
12 going?
13      MR. MESTER:  It's going well, your Honor.  We have --
14 we're on the verge of hitting the estimate that was set forth
15 in the joint submission we made, which was 2.9 million records.
16 We have 2.8 and some.  So I am extremely confident that by the
17 January 13 deadline we will far exceed the estimate.
18      There is, however, the one complication, which we did
19 want to raise with your Honor today.  We appreciate the
20 opportunity to do so.  For a small subset of the member
21 institutions, less than 20 percent, we have not received data
22 and they have not requested subpoena.  There was a subset that
23 requested subpoena for privacy reason.  Those have been --
24 those subpoenas have been issued.
25      But there is a subset of member institutions that have

1 not requested subpoena, have not provided data.

2 THE COURT: Do they fall in any particular category?
3 Or they just kind of --

4 MR. MESTER: I would say, your Honor, all over the
5 map, but full candor predominantly Division 3 schools, so
6 smaller Division 3 schools.

7 There have been two separate communications by the
8 NCAA to all member institutions, as we indicated in our stash
9 report. We feel we said at that point 200 and -- inquiries
10 from over 200 institutions. It's now far greater than that.
11 But there is this small group that we haven't received anything
12 from.

13 And so what we would -- we certainly wanted to get
14 your guidance before we did any of these things. But what we
15 would recommend to the Court would be that we submit or we send
16 out a third and final communication from the NCAA, which we
17 have already drafted and are prepared to send out this week,
18 essentially advising those remaining institutions that they
19 either need to get their data to the notice administrator, or
20 we're going to have to issue a subpoena. And then put a very
21 short fuse on that with the issuance of those subpoenas in
22 early December to the remaining institutions for which we don't
23 have data.

24 And part of the reason we want to do that is because
25 it's still going to be a large number of subpoenas, and we

1  didn't want to just do that without checking with your Honor.
2           THE COURT: And how many?
3           MR. MESTER: Somewhere in the range of around two to
4  300.
5           THE COURT: Okay.
6           MR. MESTER: But out of 13, whatever. That's -- as a
7  percentage it's not a lot. As a raw number it's a lot.
8           THE COURT: Okay. All right. That approach seems
9  fine to me.
10          So previously I set a date in December for you to
11 provide status. When do you think it makes sense for the NCAA
12 to provide me with the next update where things stand with
13 regard to those subpoenas and notice?
14          MR. MESTER: I would say sometime probably next month.
15 Maybe a later, December -- I don't have my calendar with me.
16 Either Ms. Spellman or I can certainly be here, I'm sure.
17          THE COURT: Given the -- hold on for a second.
18          MR. MESTER: Could -- your Honor, to interrupt. I
19 apologize. We can make a written submission in advance. And
20 then your Honor can advise us if you need us. We'll certainly
21 be in if you need us.
22          THE COURT: All right. Why don't you provide a
23 written submission by -- to give you some time to kind of work
24 through this stuff, by January 6.
25          MR. MESTER: Thank you, your Honor.

1  THE COURT: And I see January 13 is when I will
2  receive notice administrator's proof of publication and all the
3  other things. So then I can review both of those and see if I
4  need some more information with regard to the progress of
5  notice.
6  MR. MESTER: Thank you, your Honor.
7  THE COURT: Okay. At this point is there anything
8  else that we need to address?
9  MS. FEGAN: No, your Honor.
10  MR. MESTER: I don't think so, your Honor. Thank you.
11  (Brief pause.)
12  MS. FEGAN: Your Honor, may we step back up for one
13  second? We did forget something.
14  We had filed a motion for leave to pay settlement
15  expenses from the settlement fund. I am not sure if you want
16  us to come back and present that later?
17  THE COURT: I think I did issue an order saying that I
18  wanted some more information.
19  MR. MESTER: I didn't see that.
20  MS. FEGAN: I apologize.
21  MR. MESTER: I didn't check my phone since I got here.
22  THE COURT: No, it was actually entered a couple days
23  ago. Let me make sure.
24  THE CLERK: On the 29th.
25  MS. FEGAN: I apologize. I missed it. And we will

1 make sure that we find it and address it.

2 THE COURT: Hold on. Let me just make sure that it's

3 -- right. So I can just read it for you now.

4 It said: I take the motion for leave to pay

5 settlement expenses under advisement. No appearance is

6 necessary. With regard to the motion and all other future

7 motions to pay settlement expenses from settlement fund, I want

8 settlement class counsel to provide the following: One,

9 certification that the settlement expenses are necessary for

10 the purpose of a just and efficient settlement of the case.

11 Two, file any invoices that would set forth the expenses as

12 exhibits to the motion. Three, provide a budget that was

13 previously submitted to the Court, and state whether the

14 expenses are on track, over, under what was estimated. And

15 finally provide an estimate as to whether the parties are on

16 target for meeting the previously submitted budget.

17 MS. FEGAN: No problem.

18 THE COURT: That will provide me with some more

19 information.

20 MS. FEGAN: Thank you, very much.

21 (Which were all the proceedings heard in this case.)

1 CERTIFICATE

2 I HEREBY CERTIFY that the foregoing is a true, correct

3 and complete transcript of the proceedings had at the hearing

4 of the aforementioned cause on the day and date hereof.

5

6 /s/Alexandra Roth					12/7/2016
  _____	_____
7 Official Court Reporter					Date
  U.S. District Court
8 Northern District of Illinois
  Eastern Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25