# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | MDL No. 2492<br><br>Master Docket No. 1:13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge M. David Weisman |

**DECLARATION OF JOHANNA SPELLMAN**

I, Johanna Spellman, declare as follows:

1. I am an attorney with Latham & Watkins LLP, counsel of record for the National Collegiate Athletic Association ("NCAA"). On July 30, 2014, I was appointed by the Court as Liaison Counsel for the NCAA. I make this declaration based upon my personal knowledge, and I am competent to testify as to its contents.

2. The Settlement Agreement, which describes in detail the financial contributions the NCAA is required to make toward the Settlement, was the result of extensive negotiations between the parties and their counsel, including five (5) mediation sessions involving two (2) different mediators.

3. On July 29, 2016, the NCAA sent a letter to each of its member institutions, requesting that those institutions provide the Notice Administrator with last-known contact information for Settlement Class Members. The NCAA asked member institutions to provide the requested information by September 15, 2016.

4. On October 20, 2016, the NCAA sent a second letter to member institutions, reminding them to provide the requested information as soon as possible.

5. In November and December 2016, counsel for the NCAA sent subpoenas to 62 institutions that had requested subpoenas due to concerns about compliance with the Family

Educational Rights and Privacy Act. Those subpoenas were <u>not</u> served using a process server, as we believed the risk of a motion to quash from an institution that requested a subpoena was relatively low. Nonetheless, counsel for one of those institutions objected to the lack of personal service and demanded that personal service be made. The subpoena was then re-issued and served via process server. Counsel for another of those institutions objected that the subpoena was not properly issued pursuant to Fed. R. Civ. P. 45. The subpoena was then re-issued and served via process server.

6. The majority of member institutions voluntarily provided last-known names and addresses to the Notice Administrator. A portion of colleges and universities, however, did not do so, and those institutions became the focus of the NCAA and its counsel last fall.

7. On December 15, 2016, the NCAA sent a third letter to member institutions that had not yet provided the Notice Administrator with last-known contact information for Settlement Class Members. In its letter, the NCAA again requested that those institutions provide the information as soon as possible and informed the institutions that if they did not comply with the request, subpoenas would be issued for the requested information.

8. Each of the NCAA's letters to member institutions explained the Settlement, the importance of providing notice and requested cooperation.

9. In December 2016 and January 2017, counsel for the NCAA prepared 385 subpoenas for service on NCAA member institutions that had not provided Settlement Class Member contact information. Preparing those subpoenas was a substantial undertaking requiring a significant amount of attorney and paralegal time and effort.

10. Those subpoenas were served by a private process server in 48 different states, the District of Columbia and Puerto Rico. The vast majority of subpoenas, however, were served

outside the jurisdiction of the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Seventh Circuit.

11. Separate from the 62 subpoenas referenced in paragraph five (5), five (5) institutions that requested a subpoena were served by process server. Four (4) of those institutions were served via process server because they requested a subpoena after the November 30, 2016 status hearing at which the Court approved of the NCAA sending a final request for student-athlete contact information to member institutions, with subpoenas to be issued shortly thereafter. By the time those four (4) institutions requested a subpoena, the NCAA also had already received objections from the institution noted in paragraph five (5) above, which objected to the subpoena on the grounds that it was served in a manner other than that contemplated by Fed. R. Civ. P. 45. Given the interest of the parties and the Court in obtaining contact information and serving subpoenas as quickly as possible, so as to attempt to avoid delaying the case schedule, the NCAA served those four (4) subpoenas in the same manner as it served the subpoenas on institutions that had not requested a subpoena (i.e., via process server). One (1) of the five (5) institutions had previously been served by means other than process server and was served again in error via process server, at a cost of $357.50.

12. Plaintiffs and their counsel did not assist in the preparation of subpoenas nor did they provide at the time any input or guidance as to how they believed the subpoenas should be served.

13. Class Counsel knew that counsel for the NCAA were preparing subpoenas as approved by the Court at the November 30, 2016 status hearing. By the agreement of the parties, the subpoenas identified Class Counsel as the issuing attorneys. At no time, however, did Class Counsel inquire as to how the subpoenas would be served, nor did Class Counsel suggest that anything other than personal service should be utilized.

14. In response to the NCAA's July, October and December 2016 letters and in response to the subpoenas issued by Class Counsel, the NCAA's counsel have responded to numerous inquiries from NCAA member institutions, addressing a variety of different issues (including whether the request sought information regarding athletes in particular sports, privacy issues, the time period for which the information was requested and questions about the settlement itself). From July 2016 through April 3, 2017, approximately 448 inquiries have been received from approximately 337 different institutions. In addition, one institution served objections on several grounds including that service by mail is not sufficient, despite the fact that that institution was served via process server. In its objections, the institution cited Parker v. Four Seasons Hotels, 291 F.R.D. 181, 188 (N.D. Ill. 2013).

15. The staff of the NCAA likewise spent a great deal of time following up with member institutions and answering the many questions that were raised.

16. As of April 3, 2017, 1,074 NCAA member institutions have uploaded student-athlete contact information to the Notice Administrator, with a total of approximately 4,110,734 records uploaded. The number of records uploaded as of April 3, 2017 is based on information that NCAA member institutions provided when they uploaded files to the Notice Administrator. The Notice Administrator is working to verify the completeness of those records and accuracy of that number.

17. To date, direct notice has been sent to approximately 2,177,545 physical addresses. See Second Decl. of Rachel Christman Regarding Notice Program Expenses (Dkt. #365-1) at 2. This figure represents upwards of 52% of the Settlement Class. To date, direct notice also has been sent to approximately 997,906 email addresses. See id. Those notices are, in turn, being sent to the names and last-known addresses that the Notice Administrator obtained from the NCAA's member institutions.

18. When the Notice Administrator sends the second round of direct notice, notice will be sent by U.S. Mail to approximately 1,501,459 addresses and by email to approximately 688,075 email addresses. See Second Decl. of Rachel Christman Regarding Notice Program Expenses (Dkt. #365-1) at 2-3. In total, therefore, an estimated total of 3,679,004 direct notices and 1,685,981 email notices will be sent to individuals who participated in one of 24 or more different NCAA-sanctioned sports at many different member institutions. That represents direct notice being sent by U.S. Mail to a total of approximately 88% of the Settlement Class.

I declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct.

EXECUTED on this 10th day of April, 2017, at Chicago, Illinois.

_____
Johanna M. Spellman
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

*Liaison Counsel for Defendant NCAA*