```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE       )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-     )
 4   ATHLETE CONCUSSION INJURY         )  Chicago, Illinois
     LITIGATION,                       )  January 19, 2017
 5                                     )  9:00 o'clock a.m.

 6                 TRANSCRIPT OF PROCEEDINGS - MOTION
                 BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:          HAGENS BERMAN SOBOL SHAPIRO, by
 9                                MS. ELIZABETH A. FEGAN
                                  455 North Cityfront Plaza Drive
10                                NBC Tower - Suite 2410
                                  Chicago, Illinois 60611
11
     For Defendant NCAA:          LATHAM & WATKINS, by
12                                MS. JOHANNA MARGARET SPELLMAN
                                  330 North Wabash Avenue
13                                Suite 2800
                                  Chicago, Illinois 60611
14
     For Objector Nichols:        EDELSON PC, by
15                                MR. ARI JONATHAN SCHARG
                                  350 North LaSalle Street
16                                Suite 1300
                                  Chicago, Illinois 60654
17

18

19

20

21

22

23              ALEXANDRA ROTH, CSR, RPR
                   Official Court Reporter
24         219 South Dearborn Street, Room 1224
                   Chicago, Illinois 60604
25                    (312) 408-5038
```

```
 1            (Proceedings had in open court:)
 2            THE CLERK:  13 C 9116, NCAA Student-Athlete Concussion
 3   Injury Litigation.
 4            MS. FEGAN:  Good morning, your Honor.  Elizabeth Fegan
 5   for plaintiffs.
 6            MS. SPELLMAN:  Good morning, your Honor.  Johanna
 7   Spellman for defendant NCAA.
 8            MR. SCHARG:  Good morning.  My name is Ari Scharg, on
 9   behalf of objector Nichols.
10            THE COURT:  Can you say your last name again, please?
11            MR. SCHARG:  Scharg, S-c-h-a-r-g.
12            THE COURT:  All right.  There are a number of things
13   that I want to talk to the parties about today.  So first of
14   all, dealing with the notice of filing of administrative
15   declaration regarding dissemination of notice to class members.
16            So the declaration by Mr. Vasquez states that the --
17   that the NCAA has collected was it approximately 3 million data
18   points with regard to signatures for 3.6 million records of
19   potential class members for the direct mailing process, and
20   that those efforts are ongoing.
21            As you know, we received some communications here and
22   there with regard to those subpoenas and the requests.  How are
23   things going with regard to obtaining the addresses of class
24   members?
25            MS. SPELLMAN:  Yes, your Honor.  Things seem to be
```

1  going well.  We did note the -- there was I think one, maybe
2  two, motions objecting to quash the subpoenas.  And your Honor
3  entered an order directing those subpoena recipients to contact
4  class counsel and us.  We did not hear from them.
5  　　　　　We have been fielding numerous calls and e-mails,
6  class counsel as well as myself, from subpoena recipients.  But
7  I think for the -- in the vast majority of cases, we're able to
8  sort of explain what's being sought, the scope of what's being
9  sought.  Class counsel has been working with them on reasonable
10 extensions to the subpoena deadlines.
11 　　　　　I think between -- in the last month I want to say the
12 notice administrator has gotten an additional about 700,000
13 pieces of contact information since the time we filed an update
14 in December and the most recent update.  So things are going
15 well.
16 　　　　　There are a number of schools that requested
17 extensions to respond to the subpoena until the end of January.
18 And a smaller number of schools indicated they may have trouble
19 meeting that deadline but are working to gather the information
20 as quickly as they can.
21 　　　　　THE COURT:  And I take it from Mr. Vasquez's
22 declaration that the direct mailing process started already
23 with regard to the records that you do have, is that correct?
24 　　　　　MS. SPELLMAN:  It has, your Honor.  I received a
25 postcard mailing and an e-mail myself last week.

1  MS. FEGAN: As did Judge Andersen.

2  MS. SPELLMAN: And his daughter. So the record seems
3  to be good. It's going -- has gone out and continues to be
4  rolled out.

5  THE COURT: Okay. So at this point everything seems
6  to be on track with regard to the direct notice portion of the
7  notice process?

8  MS. SPELLMAN: I think so, your Honor. You know, as I
9  said, there -- Gilardi will continue to get information through
10  the end of the month and possibly into February as well.

11  THE COURT: And so Mr. Vasquez's declaration states
12  that based upon all of the various media outreach efforts as
13  well as the direct notice, that he estimates that at a minimum
14  85 percent of the 4.2 million class members would receive
15  notice with regard -- or based upon the notice plan. And
16  that's the understanding of the parties, is that correct?

17  MS. SPELLMAN: I believe, your Honor, that the -- that
18  Mr. Vasquez said approximately -- that they collected
19  approximately contact information for approximately 85 percent
20  of the class. That doesn't account, of course, for undelivered
21  mail. But he did conclude that when you factor in publication
22  notice and direct notice, accounting for undelivered mail, he
23  estimated conservatively that approximately 80 percent of the
24  class would be reached. And once, you know, the subpoena
25  responses are all in, he thinks it will likely be closer to 85

1 percent.

2 THE COURT: Okay. Mr. Scharg, do you have any
3 concerns about the notice process as it's implemented today?

4 MR. SCHARG: Just stating the obvious, to make sure
5 the people get notice before the objection deadline, or the
6 opt-out deadline more importantly perhaps, so they have an
7 opportunity to opt out of the settlement. I think the
8 objection opt-out deadline is currently set for March 10.

9 If some schools aren't responding to the end of
10 January or maybe even likely in February, maybe that should be
11 bumped out a little bit.

12 THE COURT: I think that's probably prudent. But why
13 don't we see where we are at that point in time. And if the
14 parties believe that the opt-out date needs to be delayed a
15 little bit given where we are with regard to collecting the
16 contact information of the schools, why don't you come in on a
17 motion and let me know. Okay?

18 MS. SPELLMAN: Yes, your Honor. And just to clarify,
19 you like us to assess sort of at the end of the month, once the
20 subpoena responses --

21 THE COURT: Yes.

22 MS. SPELLMAN: Thank you.

23 THE COURT: All right. But it seems like things are
24 going well. And based upon that, Mr. Vasquez says that
25 Gilardi -- is that how you pronounce it?

1        MS. SPELLMAN: Yes, your Honor.

2        THE COURT: -- believes that no additional media
3   efforts are needed at this time. And based upon his
4   declaration, which I have no reason to question, I agree with
5   that. And so basically all we have left is direct notice
6   aspect of the notice program.

7        So then that leaves us -- I don't know where it leaves
8   us. But that takes us to the motion for leave to pay
9   settlement expenses from the settlement fund and the
10  declaration of Rachel Christman.

11       So my concern is that I just want to make sure that we
12  are on budget going forward. Now, it -- in his declaration,
13  Mr. Deal noted other costs. And in table 7 he has a table
14  setting forth various cost categories, right? And so you have
15  the notice cost, which he, based upon the declaration that was
16  submitted by Mr. Vasquez as part of the preliminary approval
17  process, estimates that notice cost to be basically
18  $1.77 million. And then there is separate category for
19  administrative costs. And that's per Garretson Resolution
20  Group, that estimates between 7.86 and $8.5 million.

21       Ms. Christman states in her declaration that the
22  declaration by Mr. Vasquez basically encapsulated only the
23  third-party -- for lack of a better word, third-party vendor
24  costs for notice, and then submits this expected professional
25  service third-party expenses for Gilardi of basically $2

1 million.

2 And I am wondering, I guess my question is, is it $2
3 million? Because it's characterized as administrative costs.
4 Does that fall within the administrative cost bucket that
5 Mr. Deal referred to? Or is this $2 million of additional
6 costs that was not -- at least that I -- that is new to this
7 process, that wasn't raised in the motion for preliminary
8 approval?

9 MS. FEGAN: It is $2 million of additional cost, your
10 Honor. We were not aware that Gilardi, when submitting the
11 information to us, was only submitting an estimate of the
12 outside vendor costs, the pure cost of publication and not the
13 other work that Gilardi would be doing as part of the notice
14 program. The Garretson number that you see in there is
15 separately for administration of the medical monitoring program
16 itself.

17 MS. SPELLMAN: I'm sorry. I have not gone back and
18 read the Deal report. And -- but I would just want to make
19 sure. I am not absolutely certain that's correct. In her
20 declaration, Ms. Christman does note any expected notice of
21 administrative expenses in paragraph 14 that there are
22 approximately $464,000 in expenses that were not previously
23 accounted for in Mr. Vasquez's declaration.

24 I would need to go back and take a hard look at that.
25 But I don't think it's the case that it's $2 million in

1 additional expenses.

2     MS. FEGAN: And I apologize. I wasn't actually
3 talking about the number. But there was a portion for Gilardi
4 of administrative tasks that was not included in the original
5 Vasquez declaration. But I agree with Johanna. We can
6 certainly go back and track those numbers for your Honor if you
7 would like us to.

8     THE COURT: Because if it's $2 million in additional
9 costs, that certainly raises some concerns, from my point of
10 view. And at this point there is only -- there is only so many
11 sources of funds for the $2 million, right? And I will tell
12 you where it will not come out of is, it will not come out of
13 the money that is set aside for the monitoring program. Okay?
14 And that's why I wanted to get my arms around it.

15     And so the Christman declaration really in my mind, it
16 was very helpful, but it raised some additional questions.
17 Okay? And it really comes down to this: Mr. Deal set forth
18 certain estimates of costs. And I recognize they are
19 estimates. And so I know that there has to be a certain
20 accommodation given for the fact that estimates could be maybe
21 a little low, maybe a little high. There are additional costs
22 that weren't foreseeable.

23     And so when I saw that the notice cost, right, for the
24 notice program was going to be $1.9 million versus $1.769
25 million, I was like, well, you know, that's probably within

1   kind of -- can be accounted for by the estimations and the
2   various factors that Ms. Christman set forth in her affidavit
3   with regard to rise in costs, et cetera, et cetera.  I
4   understand that.
5          $2 million, though, is a whole different matter.  And
6   so I just want to make sure that I have a clear understanding
7   as to what that entails.  And I want to get some thoughts from
8   the parties as to where those funds would come from and how the
9   parties recommend that I deal with this $2 million of expense
10  that was not kind of factored in when the parties requested
11  preliminary approval of the amended settlement.
12         So that's my concern.  Okay?  And my concern is, I
13  want to make sure that the costs of implementing the settlement
14  is within a reasonable range of the costs that the parties gave
15  me when I approved the amended settlement agreement.
16         So I know that's a lot to think about.  I know you
17  need to go back and speak to a lot of people about it and kind
18  of dig into it.  But I would certainly benefit from further
19  explanation as to those costs and how it fits into the overall
20  costs for the implementation and administration of the
21  settlement.
22         MS. SPELLMAN:  Certainly, your Honor.  And we will
23  clarify the amount.  But again, I don't believe that's the
24  entire -- the 2 million, I'm looking at paragraph 11.  I think
25  it's closer to seven or 800,000.  But understanding the point

1   and we will confer.
2       THE COURT: Okay. And so when do you think you can --
3   I want something filed. When do you think you can file it? I
4   don't think there is any particular rush. But I would like
5   it -- well, let me just throw out dates.
6       Do you think you can have a supplemental memorandum
7   filed in 21 days?
8       MS. FEGAN: Yes.
9       MS. SPELLMAN: I think so, your Honor.
10      THE COURT: So that would be February 9. And you
11  can -- what you can do is, you can just call it a supplemental
12  status report with regard to settlement expenses.
13      All right. I actually had a question for Mr.
14  Jefferson, but I see that he is not here with us today. Mr.
15  Jefferson filed a motion that he said was agreed motion for
16  attorneys' fees and costs. And I was going to ask him in what
17  manner was it agreed.
18      I take it that none of you have agreed to his motion?
19      MS. FEGAN: No, your Honor.
20      MS. SPELLMAN: No.
21      MR. SCHARG: No.
22      THE COURT: Okay. With regard to the various petition
23  for fees and expenses, do the parties intend to file any
24  responses or objections or further thoughts, whatever you want
25  to call it, with regard to the petitions that were submitted?

1           MR. SCHARG: Yes.

2           MS. FEGAN: Yes, your Honor.

3           MS. SPELLMAN: We are considering it. We are not
4    certain, but we are considering it.

5           MS. FEGAN: And plaintiffs intend to, settlement class
6    counsel intends to.

7           MR. SCHARG: I would note, our plan is to file our
8    objections to the fee petition in the form of an objection, and
9    not as necessarily a response. It will be a response. It's
10   whatever your Honor would like.

11          THE COURT: I don't care what it's called. If you
12   want to call it an objection, that's fine. If you want to call
13   it response, that's fine too. I guess if it were my choice,
14   and I guess to some extent it is, I'd like it to be called a
15   response because when we search the docket, when we are looking
16   for objections, we are looking for particular things.

17          MR. SCHARG: Sure.

18          THE COURT: Okay? And when do you think you will be
19   able to file that?

20          MR. SCHARG: Before the objections are done.

21          MS. FEGAN: Your Honor, my sense as settlement class
22   counsel, we were intending to file our response on March 10.
23   We can certainly do that earlier.

24          The reason we were going to file ours on March 10, the
25   same time the class members were, is so that we don't get a lot

1 of copycat objections. If people have objections, everyone
2 will be filing them on that date. If we file early or if lead
3 objector files early, what we are going to find is a lot of
4 additional attorneys that have never been here today filing
5 me-toos.
6 They may independently do that, and that's their
7 prerogative. But I think it would make sense to have
8 everything come in at the same time.
9 THE COURT: Okay. That makes a lot of sense. So I
10 take it -- well, then, you know, I go back on what I said. You
11 should call them objections. And then we will deal with them
12 that way. And so those will be due at the time that other
13 objections are due by the class members.
14 And I also think that -- well, there are a lot of
15 pieces here, right? And so we have the various petitions. We
16 are getting more. I anticipate -- I don't know whether we are
17 going to get any more. But they were due a particular date.
18 So to the extent they don't meet that deadline, unless there is
19 good cause, I am not going to consider them. But we have the
20 issue of the additional costs for the settlement. That also
21 has to be factored in as well.
22 All right. We're also going to go ahead and take a
23 preliminary look through the petitions, only insofar as if I
24 want additional information or additional backup, so that those
25 can be submitted within a reasonable time before the objection

1  deadline as well.
2  MS. FEGAN: Your Honor, we have collected detailed
3  timing records from those folks that were on our petition. We
4  can certainly get those over to you if your Honor would like
5  them. We just didn't want to overwhelm the Court with reams of
6  paper if you didn't want them.
7  MR. SCHARG: And we obviously can very easily as well.
8  THE COURT: All right.
9  MR. SCHARG: I would just note, if you do want them
10 from us, just given that there are some entries that deal with
11 our strategy with respect to the other cases, just need a
12 little bit of time to go through and redact, but can certainly
13 do that in short order.
14 THE COURT: I take it, though, that in the petitions,
15 and I haven't looked at the petitions, the petitions set forth,
16 at least summarize, the various hours that people spent to give
17 me a lodestar assessment as well?
18 MS. FEGAN: Correct. And we've done it by timekeeper
19 with the rate and their role.
20 MR. SCHARG: As have we.
21 THE COURT: Okay. All right. Very good. And Ms.
22 Spellman, you are in the enviable position of perhaps not
23 having to respond to either of those.
24 MS. SPELLMAN: We'll see.
25 MR. SCHARG: One administrative matter. We filed a

1  motion for leave to file an enlarged brief for our fee
2  petition.  That has not yet been granted.  I just want to
3  clarify that for the record.
4           THE COURT:  How many pages is it?
5           MR. SCHARG:  Five pages.
6           THE COURT:  That's fine.
7           MR. SCHARG:  Thank you.
8           THE COURT:  Let's go ahead and set another status in
9  this case.  Carmen, let's set it for March 7.
10          THE CLERK:  In addition to the one on January 26?
11          THE COURT:  I don't think we need the one on January
12 26.  I think that was really designed for me to get a sense of
13 where the notice is at this point.  So I am going to go ahead
14 and strike that date, unless anyone thinks that you need to
15 appear on that date?
16          MS. SPELLMAN:  No, your Honor.
17          THE COURT:  Okay.
18          THE CLERK:  The week of March 7 in the afternoon okay?
19          MS. FEGAN:  Your Honor, would it make sense to do it
20 early the following week, since the objection deadline is that
21 Friday?
22          THE COURT:  You know, I am really trying to set a
23 deadline for me to look over the cost, supplemental cost
24 information, that is provided.
25          THE CLERK:  March 7 at 1:00 o'clock.

1     MS. FEGAN: That's fine, your Honor.
2     THE COURT: Let's go ahead and set that date. We will
3  go ahead and strike the January 26 date in light of the various
4  updates that were provided by Mr. Vasquez. If I need to see
5  the parties earlier, I will let you know. Okay?
6     MS. FEGAN: Your Honor, also he is not here, but part
7  of Mr. Edelson's group, Mr. McIlwain, had filed a motion that
8  is scheduled to be presented on the 26th at the status date.
9     MR. SCHARG: He is not part of our group.
10    MS. FEGAN: I apologize, apologize.
11    It appears another objector has filed a motion for
12 leave to file a late petition for fees. That is scheduled to
13 be noticed on the 26th. We are happy to come in anyway on
14 that, just so your Honor is aware.
15    THE COURT: Okay. Thank you. I'll take a look at it.
16    MS. SPELLMAN: Thank you.
17    THE COURT: Thank you.
18    (Which were all the proceedings heard in this case.)
19                        CERTIFICATE
20    I HEREBY CERTIFY that the foregoing is a true, correct
   and complete transcript of the proceedings had at the hearing
21 of the aforementioned cause on the day and date hereof.
22
    /s/Alexandra Roth                          5/16/2017
23 _____     _____
    Official Court Reporter                      Date
24  U.S. District Court
    Northern District of Illinois
25  Eastern Division