

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

AUG 22 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | MDL No. 2492 |
| | Master Docket No. 13-DV-9116 |
| | Judge John Z. Lee |
| This document relates to all cases. | Magistrate Judge Geraldine Soat Brown |

## OBJECTION TO SETTLEMENT

NOW COMES Paul J. Schafer, a member of the Settlement class, and for his objection to the nature of the settlement, states as follows:

1.  My name is Paul J. Schafer. My address is 111 W. Main St., PO Box 700, Marion, IL 62959. My phone number is 618 997 5611.

2.  I have received the legal notice of proposed settlement herein.

3.  I played basketball for Southern Illinois University at Carbondale from 1986 to 1991.

4.  During said period and within the course and scope of practice and games, I received multiple concussions.

5.  I was knocked unconscious on more than one occasion. I woke up at Wichita State lying in a pool of blood. I woke up on the bus after a game (I had obviously walked to the bus) and once lost my car for a week without knowing either that it was lost or that it was strange to lose your car. I consider myself lucky to have had the experience and opportunity but I don't know what the future holds.

6.    Those of us who have had concussions, and the problems associated with them don't just need "monitored."

7.    The real expense isn't associated with monitoring.

8.    With hundreds of member schools and thousands of member athletes, the real expense and difficulty to the victims will be associated with the "care" and long term effects.

9.    My daughter is a Division I volleyball player. In the last few years I am aware of a dozen concussions that took place during her games/practices. Extrapolate that over a dozen sports, over 50 years, and over all the players on those teams and it is a huge number.

10.   The last that I was aware, there were about 670 NCAA football teams in the USA. You could call that somewhere in excess of 50,000 players a year. According to the NCAA there are over 460,000 NCAA athletes this year alone. If as studies show, the incidence of concussion averages anywhere near 5%, that's over 20,000 this year alone and if you run those numbers out over the 50 year period at hand the number is staggering.

11.   Therefore the remaining balance of the $70,000,000.00, after fees, is a disproportionate amount for "monitoring." I suspect the NCAA is counting on few people applying, and thus the actual cost remaining low. The attorneys fees will probably be the most costly portion of the settlement.

12.   While you can't say exactly as no fee petition has been filed, and it seems unfair to require informed objections to be due before then, it seems that any funds left over after fees and costs would be much more wisely spent (if spending is actually the intent) on

covering costs (including co-pays and deductibles) for those persons who suffered the injury and need the care and treatment associated with the injuries they suffered.

13. While few people will want/get "monitored," many will ultimately need care.

14. The proposed approach sounds just like the LifeLock TV commercial. (A monitor is there to monitor for bank robberies, not actually do anything about them.) We are monitoring, but not addressing the problem for the class members. "Yep, you have it, thanks for coming and good luck."

15. Class members are generally uninformed on the nature of the economic facts. I do not object to the amount of the settlement, the fees, or the costs, but rather the nature of the benefit to be provided to the members is inadequate and is inadequately defined.

16. When is the fund created? Is it funded in a lump or over time? How long does the fund remain funded? Who gets any remainder?

17. The benefit is inadequate. If you are going to spend this much money on concussions, why not spend some of the money on care and treatment? Other than of course the obvious answer, which is that the Defendant is not actually going to actually spend it.

18. The main reason for Court Approval is the danger that the defendants and class counsel will neglect the interests of potentially passive unnamed class members in the bargaining process (Redman v. RadioShack Corp., 768 F.3d 622, 629 (7th Cir. 2014)).

19. In Eubanks v. Pella Corp., a class action against a manufacturer of defective windows, the district judge approved a settlement which also established the attorneys fees. (753 F.3d 718 (7th Cir. 2014)). On appeal, the Seventh Circuit reversed, finding a number of

3

settlement terms unacceptable. In particular the court noted that "the settlement did not specify the amount of money to be received by the class members as distinct from class counsel. Rather it specified a procedure by which class members could claim damages," a procedure that was stacked against the class (753 F.3d at 723).

20. Isn't that what we have here?  The burden is on the class to avail itself, but even then, there is no benefit other than learning what we already know.  We need screened, we are at risk, and they are going to tell us how bad off we might be.

21. In *Redman,* the parties negotiated, and the district judge approved, a settlement that included  attorneys' fees to class counsel and an award of a store coupon to each of the class members. The Seventh Circuit also rejected this settlement, in part, based upon very similar issues to those I object to herein.  The calculation of the benefit to the class (on which the amount of attorneys' fees was based) improperly included the nominal value of the coupons and assumed that each class member who submitted a claim for a coupon would actually redeem it.  (768 F.3d 622.)

22. The value of the exams is unknown, as is the number of athletes that will avail themselves given the limited number of examiners.

23. Wouldn't it be much more beneficial to pay the treater?

24. Finally, it appears this settlement includes a cy pres award without any showing that distribution to the class is not feasible.

25. In Pearson v. NBTY, Inc., the Seventh Circuit rejected a previously approved settlement (Nos. 14-1198, 14-1227, 12-1245, 14-1389, (7th Cir. Nov. 19, 2014)). The settlement

4

would have required the defendant to pay $1.1 million to the Orthopedic Research and Education Association. In rejecting the settlement, the Seventh Circuit found a number of terms unacceptable, including the funding of a cy pres when payment to the class had not been shown to not be feasible.

26. This actually looks more like a Southwest Airline drink voucher case where nobody really knows what the defendant will spend, except for the attorneys fees.

27. I would be happy to appear at the hearing. The notice does not state that failure to appear waives any objections. I do not suppose that I will need counsel, as I am licensed in the State of Illinois, ARDC #6226013, however, oral argument is not requested.

WINTERS, BREWSTER, CROSBY and SCHAFER LLC

BY: _____

Paul J. Schafer
ARDC No. 6226013

## Certificate of Service

I hereby certify that on _16th Aug 2017,_ I mailed the foregoing Objection to Settlement with the Clerk of Court to the following parties via U.S. Mail:

Clerk of the Court

United State District Court for the Northern District of Illinois

219 South Dearborn Street

Chicago, IL 60604


Steve W. Berman, Esq.

HAGENS BERMAN SOBOL SHAPIRO LLP

1918 Eighth Avenue, Suite 3300

Seattle, Washington 98101


Mark S. Mester, Esq.

LATHAM & WATKINS LLP

330 North Wabash Avenue, Suite 2800

Chicago, Illinois 60611


WINTERS, BREWSTER, CROSBY and SCHAFER LLC

Attorneys at Law

111 West Main, P.O. Box 700

Marion, IL 62959

Phone: (618)997-5611

Fax: (618)997-6522

<u>Certificate of Service</u>

I hereby certify that on _____, I mailed the foregoing Objection to Settlement with the Clerk of Court to the following parties via U.S. Mail:

Clerk of the Court

United States District Court for the Northern District of Illinois

219 South Dearborn Street

Chicago, IL 60604

Steve W. Berman, Esq.

HAGENS BERMAN SOBOL SHAPIRO LLP

1918 Eighth Avenue, Suite 3300

Seattle, Washington 98101

Mark S. Mester, Esq.

LATHAM & WATKINS LLP

330 North Wabash Avenue, Suite 2800

Chicago, Illinois 60611

_____

WINTERS, BREWSTER, CROSBY and SCHAFER LLC

Attorneys at Law

111 West Main, P.O. Box 700

Marion, IL 62959

Phone: (618)997-5611

Fax: (618)997-6522

# WINTERS, BREWSTER, CROSBY AND SCHAFER LLC

*ATTORNEYS AT LAW*
*111 West Main, P.O. Box 700*
*MARION, IL 62959*

JOHN S. BREWSTER
THOMAS F. CROSBY
PAUL J. SCHAFER
-----------
LINDA J. CANTRELL*
ELISHA S. DEEN*

CHARLES D. WINTERS (1917-1992)
-----------
TELEPHONE: (618) 997-5611

FAX: (618) 997-6522

\* Also licensed in Missouri

August 16, 2017

E-MAIL: jschafer@winterslaw.com

Clerk of the Court
United States District Court for the Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

RE:   In Re:   National Collegiate Athletic Association Student-Athlete
               Concussion Injury Litigation
      Case #:   13-DV-9116
      WBCS #:   17-103-PJS

Dear Clerk:

    Enclosed please find an original and one copy of an Objection to Settlement.  Please file the original and return a file-stamped duplicate to me in the pre-posted, self-addressed envelope. Thank you for your time and attention in this regard.

Very Truly Yours,

Jay Schafer
For the Firm

PJS:ag

Enc.

cc:   Mr. Steve W. Berman, Esq.
      Mr. Mark S. Mester, Esq.

WINTERS BREWSTER CROSBY AND SCHAFER LLC
ATTORNEYS AT LAW
111 West Main, P.O. Box 700
MARION, IL 62959





UNITED STATES POSTAGE
PITNEY BOWES

02 1P          $ 001.40⁰
0000843294     AUG 16 2017
MAILED FROM ZIP CODE 62959

**RECEIVED**

AUG 22 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Clerk of the Court
United States District Court for the Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604