UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION | MDL No. 2492<br><br>Master Docket No. 13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge Geraldine Soat Brown |

## AFFIDAVIT OF SAMANTHA GREIBER

I, SAMANTHA GREIBER, hereby affirm under penalty of perjury that the following is true and correct:

1. I was born on December 27, 1991 and am a resident of Anne Arundel County, Maryland. In 2010, I accepted an athletic scholarship to play lacrosse at Hofstra University. I attended and played lacrosse for Hofstra University from 2010-2014.

2. Because I played an NCAA-sanctioned sport at an NCAA school, I followed all NCAA rules and regulations governing my conduct on and off of the field. I relied on the NCAA's extensive experience and expertise in the area of player safety and health because the NCAA governed player conduct and safety in all major college athletics, including women's lacrosse. Consequently, I knew that the NCAA had the responsibility to implement rules and guidelines regarding lacrosse games and practice to protect my health and safety, particularly concerning the potential for serious head injury. The NCAA represented to me that those safety rules and the required equipment would be continuously reviewed and updated to keep pace with the experimental, scientific and medical research available to the NCAA. The NCAA, however,

as the exclusive governing and rule-making authority for collegiate athletics, was responsible for requiring safe conditions, protocols, rules, safe facilities, protective equipment, and appropriate medical care for my health and welfare. Moreover, I relied upon the NCAA's unique experience and knowledge of the risks of concussions in women's lacrosse and their long-term health effects. Finally, I relied on the NCAA to disclose relevant risk information to me and my family in order to protect my health and safety and to require, for example, that helmets be worn by female players to prevent head injury.

3. The NCAA did not effectively research, monitor, assess or review the available data, nor did it implement or enforce any rules, guidelines, protocols, or requirements that would have prevented my severe concussive injuries. The NCAA failed to disclose relevant information to me and my family regarding the risks of concussions and their long-term health effects in order to protect my health and safety and failed to require that helmets be worn by female players to prevent head injury.

4. During my time playing lacrosse at Hofstra, I suffered two major concussions, the second of which has led to significant medical issues stemming from postconcussive syndrome including headaches, dizziness, loss of memory, depression, anxiety, short temperament, and irritability. The postconcussive symptoms have also made my employment significantly more difficult and have hampered my relationships with friends and my academic performance. I have undergone extensive medical care and treatment as a result of the second debilitating concussion I suffered and am still undergoing treatment. I am permanently injured and will not be able to have the life and career I envisioned when I accepted the lacrosse scholarship from Hofstra.

5. The NCAA treated me differently because of my gender. Although the NCAA knew from the available medical research that females were more likely to suffer concussions

than male players, the NCAA required helmets for men while making them illegal for women, thereby intentionally putting players like me at high risk for the disabling injury I sustained. If the rules allowed, I would have worn a helmet for my safety. As a result of the NCAA's failure to protect my health and safety, I have sustained significant injuries that continue to leave me with severe medical problems.

_____
Samantha Greiber

August 22, 2017