**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION** | **MDL No. 2492**<br><br>**Master Docket No. 1:13-cv-09116**<br><br>**This Documents Relates To:**<br>**All Cases**<br><br>**Judge John Z. Lee**<br><br>**Magistrate Judge Geraldine Soat Brown** |

**OBJECTION OF ANTHONY NICHOLS TO CLASS COUNSEL'S PETITION FOR
ATTORNEY'S FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

STANDING TO OBJECT.................................................................................................3

OBJECTIONS.....................................................................................................................3

    I.    Class Counsel Seek An Unreasonable Percentage
Of The Medical Monitoring Fund ...........................................................3

        A.    Class Counsel Should Be Awarded A Percentage
Of Common Fund Created By Their Original,
Not Second Revised, Settlement..................................................4

        B.    Class Counsel's Fee Request Improperly Includes
Notice Costs As A Benefit To The Class Technology.............................6

        C.    Class Counsel's Fee Should Be Reduced Because Of
Their Inability To Craft An Approvable Deal .........................................7

    II.    Class Counsel's Lodestar Is Inflated ....................................................8

        A.    The Various Lawyers Representing The Class Engaged
In Duplicative Or Unnecessary Work, Warranting A
Lodestar Reduction .....................................................................8

        B.    Hours Billed By Attorneys At Siprut PC Should
Be Disregarded .........................................................................10

    III.    Class Counsel Have Waived Their Right To Collect
Additional Fees.............................................................................12

    IV.    Class Counsel's Fee Should Be Reduced For Two Acts Of
Litigation Misconduct...................................................................13

CONCLUSION ................................................................................................................15

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Gisbrecht v. Barnhart,*
    535 U.S. 789 (2002)............................................................................................5

**United States Circuit Court of Appeals Cases**

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ........................................................................8

*Halperin v. Halperin,*
    750 F.3d 668 (7th Cir. 2014) ........................................................................12

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566, 572 (7th Cir. 1992) ..................................................................4

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ..........................................................................3

*In re Trans Union Corp. Privacy Litig.,*
    629 F.3d 741 (7th Cir. 2011) ..........................................................................4

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) .......................................................................5, 6

*Radcliffe v. Experian Info. Sols. Inc.,*
    715 F.3d 1157 (9th Cir. 2013) ......................................................................14

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014) .................................................................1, 6, 13

*Rodriguez v. Disner,*
    688 F.3d 645 (9th Cir. 2012) ........................................................................14

*Taubenfeld v. AON Corp.,*
    415 F.3d 597 (7th Cir. 2005) ..........................................................................3

**United States District Court Cases**

*Douglas v. The Western Union Co.,*
    No. 14-cv-1741 (N.D. Ill.) ......................................................................10, 11

*Gibson v. City of Chicago,*
    873 F. Supp. 2d 975 (N.D. Ill. 2012) .............................................................9

*In re Dairy Farmers of Am., Inc.*,
　　80 F. Supp. 3d 838 (N.D. Ill. 2015) ...................................................................8

*In re TD Ameritrade Acct. Holder Litig.*,
　　No. C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)................................7

*Valdez v. Neil Jones Food Co.*,
　　No. 1:13-cv-00519-AWI-SAB, 2014 WL 3940558 (E.D. Cal. Aug. 12, 2014) ................7

*Valdez v. Neil Jones Food Co.*,
　　No. 13-cv-00519-SAB, 2016 WL 4247911 (E.D. Cal. Aug. 10, 2016) ............................7

*Zink v. First Niagara Bank*,
　　155 F. Supp. 3d 297 (W.D.N.Y. 2016) .............................................................................7

*Zink v. First Niagara Bank*,
　　No. 13-cv-01076-JJM, 2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016) ...........................7

## Statutory Provisions

28 U.S.C. § 1715 ........................................................................................................ 13, 14

Fed. Rules Civ. Proc. Rule 23(h) ................................................................................... 12

## Other Authorities

Jesse Mez, *et al.*, *Clinicopathological Evaluation of Chronic Traumatic Encephalopathy in*
　　*Players of American Football*,
　　318 J. of Am. Med. Ass'n 360-70 (2017) ......................................................................... 5

## INTRODUCTION

It took Class Counsel, aided significantly by Nichols's prior objections, three tries to craft a Settlement worthy of preliminary approval. Despite Class Counsel's repeated failures at crafting a deal the Court could approve, they nonetheless seek the original $15 million fee that the NCAA agreed to pay without objection, taking full credit for the value created for class members that resulted from the revisions forced upon them as a result of their previous failed agreements. Alternatively, Class Counsel seek to justify their fees based on *all* of the time they supposedly have invested in the case to date, including, again, time incurred after preliminary approval was twice denied and the deal revised. Class Counsel's fee request is excessive under both proposed methods of calculation and should be reduced.

Class Counsel's percentage-of-the-fund calculations are deficient in two respects. First, Class Counsel improperly seek to be paid based on the value of the ultimate settlement rather than the initial failed settlements Class Counsel offered up that had to be fixed. Class Counsel should be limited to a percentage of the minimal value created by the initial settlement they agreed to. Second, Class Counsel's fee request is improperly based on the gross settlement fund. The Seventh Circuit has made clear that, in determining an appropriate percentage of fees, the focus should be on "the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). The $70 million figure that Class Counsel claims requires either including the *cy pres* award as "value" for the class and dramatically underestimating the costs of notice and administration or omitting the costs of notice and settlement administration from the final analysis entirely. Neither is acceptable under governing Seventh Circuit precedent and requires reductions to the amounts requested.

Class Counsel's attempt to justify its fee request based on their lodestar is equally flawed, if not more so. Like their percentage request, Class Counsel seeks equal compensation for work done both before and after this Court denied preliminary approval. Class Counsel are not entitled to recover for hours spent making improvements to the settlement that had been suggested by objectors or the Court (and certainly they are not entitled to any risk multiplier on that time). Moreover, the declarations Class Counsel submitted in support of their fee request indicate that significant hours were unreasonably expended because they were spent on duplicative work. In addition, the hours of Co-Class Counsel Siprut PC have no proper evidentiary support. As Attorney Siprut recently admitted to Judge Feinerman, attorneys at his law firm (including himself) do not keep time records—this is surely the reason he failed to produce records here despite the Court's order to do so. What's more, the documentation that Attorney Siprut was required to submit to Judge Feinerman about the hours he has sought compensation for in the last five years demonstrate that the hours he claims to have worked in this case are not remotely credible.

Further demonstrating Class Counsel's over-reaching, tucked away in the Settlement is a provision that guarantees Class Counsel fees in the future, but insulates those fees from oversight by the class or Court. Because Class Counsel has omitted discussing those fees in their petition or in the notice to the class, any entitlement to those fees has been waived.

Finally, Class Counsel's fee should be further reduced because they took actions that, while perhaps not enough to justify revoking their status as class counsel or denying approval of the settlement, jeopardized the settlement process and could have deprived all Settlement Class Members of any benefit. First, Class Counsel attempted to contract around the attorney general notice provisions in the Class Action Fairness Act, a point omitted from all briefing submitted by

Class Counsel. That misstep may have been enough by itself to scuttle the deal given that it would void the release obtained by the NCAA. Second, Co-Class Counsel Siprut breached his duties to Adrian Arrington. Worse, once Arrington decided to object to the Settlement, Class Counsel attempted to freeze him out of receiving an incentive award, a step the Ninth Circuit has held can preclude Class Counsel from recovering fees at all.

In the end, a fee award of no more than $8 million is an appropriate award here and even less is likely deserved. Nichols therefore objects to Class Counsel's request for fees of $15 million, and respectfully requests that the Court award less than this amount.

**STANDING TO OBJECT**

Objector Anthony Nichols resides at 15415 Saint Lucy Lane, El Cajon, California 92021. He is represented by the law firm Edelson PC. He played football at San Diego State University from 1989 to 1992. A statement of all objections and the grounds on which they are based is set forth below. Objector intends to appear at the Final Fairness Hearing through counsel. Jay Edelson and Ari Scharg will appear at the hearing on his behalf.

**OBJECTIONS**

**I.      Class Counsel Seek An Unreasonable Percentage Of The Medical Monitoring Fund**

Class Counsel's $15 million fee request, which they incorrectly claim is 21% of the applicable settlement fund, is unreasonable and unsupported by Seventh Circuit precedent. The Seventh Circuit has made clear that attorneys' fee awards in class actions should, to the extent feasible, replicate the market for fees in litigation of the same type. *See In re Synthroid Marketing Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). Data from other class-action settlements is evidence of the market for attorney services. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). As Nichols previously has discussed in his own request for fees for forcing value

for Class Members into the settlement, the market for fees in medical-monitoring litigation resembles the market for fees in traditional tort litigation. (Dkt. 300, at 13-15.) And fees in ordinary tort litigation are determined consistently, if not exclusively, as a percentage of recovery. (*Id.*) *See also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (observing that the best approach is to figure "out what the market in fact pays not for the individual hours but for the ensemble of services rendered"). The Seventh Circuit's market-mimicking approach counsels in favor of a percentage recovery here.

But when establishing the appropriate percentage recovery, the first step is to determine the value received by the class. As the Seventh Circuit has said, "the ratio that is relevant to assessing the reasonableness of the attorneys' fee ... is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630. Class Counsel's fee analysis proceeds on the assumption that the denominator here is $70 million. But that assumption is misplaced.

A.     **Class Counsel Should Be Awarded A Percentage Of Common Fund Created By Their Original, Not Second Revised, Settlement**

Class Counsel's fee request is unreasonable because it fails to correctly account for the benefit created for the Class *by Class Counsel*. When considering the total recovery from which Class Counsel may claim a fee, the Court should examine only the value created by Counsel's initial settlement, and should not approve any fee award higher than what would have been justified under the original deal. *See In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 747 (7th Cir. 2011) (noting fee awards should reflect relative value created by Class Counsel plus any objectors). Based on the text of the clear-sailing provision and Class Counsel's self-serving assertion that the "fundamentals" of the deal have remained in place over time, Class Counsel would have sought an award of $15 million if the initial settlement had received Court approval.

But the idea that the original deal was worth $70 million to class members is a "fiction." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014). Indeed, Class Counsel's own expert projected that a reversion to the NCAA of more than $30 million from the Medical Monitoring Fund (meaning that $30 million would go unused) was likely (dkt. 70, p. 26), a figure he revised upward to $50 million based upon more accurate cost assessments. (Dkt. 160, p. 38). And as Nichols previously explained, these figures likely are even lower because in many cases the screening test offered to Class Members by the Settlement will be covered by a given Class Member's private insurance, and assuming a $40 co-pay (which is about average), the actual costs saved by the Settlement may add up to as little as $140,000. (Dkt. 83, p. 6).[1]

That means that Class Counsel's own expert believes the initial settlement would only cost the NCAA a maximum of around $30 million total, *including* attorney's fees and administrative costs. Based simply on the evidence submitted by Class Counsel, and assuming around $5 million in administrative costs (an assumption which, as explained below, likely doesn't hold anymore), a $15 million fee award likely would have represented a majority—if not nearly all—of the common fund, as measured by the cost to the NCAA. Such a percentage is plainly unreasonable. *See, e.g.*, *Gisbrecht v. Barnhart*, 535 U.S. 789, 804 (2002) ("Arrangements yielding exorbitant fees, the Senate Report observed, reserved for the lawyer one-third to one-

---

[1]       In addition, as researchers have learned more about CTE, it has become clearer that the value of the Settlement is not nearly what Class Counsel might have hoped. For instance, a recent study of the brains of 202 deceased former football players found that 87% across all levels of play had contracted CTE. Jesse Mez, *et al.*, *Clinicopathological Evaluation of Chronic Traumatic Encephalopathy in Players of American Football*, 318 J. of Am. Med. Ass'n 360-70 (2017). In other words, nearly everyone. That suggests that what former players truly need is treatment for their brain injuries. But Class Counsel abandoned those claims in favor of a settlement that makes former players jump through hoops just to be screened for CTE. Yet a screening procedure implies that the incidence of CTE is uncommon. Studies like the above belie that assumption.

half of the accrued benefits."); *Pearson*, 772 F.3d at 782 (noting that fees should exceed one-third of the total recovery only in exceptional cases).

**B.     Class Counsel's Fee Request Improperly Includes Notice Costs As A Benefit To The Class.**

Further, by calculating their fee request as a percentage of the gross common fund, Class Counsel fails to account for binding authority providing that notice and administration costs don't count as a benefit to the class for the purpose of awarding fees. *Redman*, 768 F.3d at 630; *Pearson*, 772 F.3d at 781. The Settlement reserves $5 million of the $70 million fund to be spent on notice and administration costs, (dkt. 266-1, ¶ IV(A)(1)(d)), and the Court has approved the current estimated notice costs of $2,135,380.21. (Dkt. 405.) But the Settlement also contemplates so-called "Reminder Notice." (Dkt. 226-1, ¶ XI(A)(3).) Class Counsel's papers do not even attempt to estimate the cost of providing this Reminder Notice, which when inflation is taken into account, is likely to exceed the $5 million budget for notice costs. So even if the Court agrees that Class Counsel should be awarded fees based on total value provided in the third iteration of the settlement, the denominator can be no greater than $65 million. Class Counsel's fee request is for at least 25% of the new Fund, not the 21% they falsely claim in their motion.[2]

---

[2]     The Settlement also calls for a $5 million contribution to concussion research (Dkt. 266-1, ¶ X(A)), in the nature of a *cy pres* distribution. But that can't count as a benefit to the class for the purpose of awarding fees because there is no indication that it would be impossible to spend that same cash directly to the benefit of Class Members. *See Pearson,* 772 F.3d at 784 (rejecting *cy pres* award for medication research because "[a] *cy pres* award is supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members."). It is unclear from the text of the Settlement if the parties actually contemplate that this $5 million contribution will be made in addition to the NCAA's obligation to fund the Medical Monitoring Fund. Given that the parties repeatedly have represented that this is an additional obligation (*see* dkt. 246, at 6), Nichols assumes that it indeed is. If not, however, a proper fee calculation would require a further $5 million reduction.

**C.** **Class Counsel's Fee Should Be Reduced Because Of Their Inability To Craft An Approvable Deal.**

In addition to seeking a percentage based on value to the class, Class Counsel's repeated failures to draft an approvable settlement alone should result in a reduction in the $15 million agreed to in the original deal. Frequently, when class-action settlements have been rejected by a district court as unfair, class counsel typically seek reduced fee awards showing that the market penalizes counsel for inadequate or sloppy settlements. For instance, in *In re TD Ameritrade Account Holder Litigation* the district court denied final approval of a settlement. No. C 07-2852 SBA, 2011 WL 4079226, at *16 (N.D. Cal. Sept. 13, 2011). When the parties returned with an acceptable settlement, class counsel's requested fees had been reduced from $1.87 million to $500,000. *See Id.* Though other reductions aren't quite so steep, class counsel often wisely requests reduced fees after the embarrassment of having a settlement rejected as unfair or unreasonable. For example, in *Zink v. First Niagara Bank*, the court denied preliminary approval to a settlement in which a clear-sailing clause contemplated that class counsel would receive 33% of the common fund. *See* 155 F. Supp. 3d 297, 313 (W.D.N.Y. 2016). The settlement later received approval and class counsel sought only 25% of the common fund. No. 13-cv-01076-JJM, 2016 WL 7473278, at *9 (W.D.N.Y. Dec. 29, 2016). The court thought that too much, and reduced the award by another 5%. *Id.* at *10. Counsel in *Valdez v. Neil Jones Food Company* met a similar fate. *Compare* No. 1:13-cv-00519-AWI-SAB, 2014 WL 3940558, at *11 (E.D. Cal. Aug. 12, 2014) (denying preliminary approval; class counsel sought 33% of common fund in reversionary settlement), *with* No. 13-cv-00519-SAB, 2016 WL 4247911 (E.D. Cal. Aug. 10, 2016) (finally approving settlement after denying preliminary approval on four occasions, awarding counsel 25% of the common fund).

Class Counsel here, however, proposes to take no voluntary reduction to account for their repeated failures. The clear sailing provision of each version of the settlement has allowed for Class Counsel to seek $15 million in fees without objection by the NCAA. But that figure would have been unjustifiable under the initial settlement proposal. Counsel's $15 million request is therefore well above market, and should be rejected.

## II. Class Counsel's Lodestar Is Inflated.

Class Counsel also, briefly, seeks to justify their fee request on the basis of their lodestar figure, enhanced with a modest multiplier. As discussed, the market would not compensate attorneys in this type of litigation on an hourly basis regardless of success, so the only reason to discuss lodestar is as a cross-check on the reasonableness of the percentage award. But a cross-check is not required. *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 849 (N.D. Ill. 2015) ("A district court is under no obligation to cross-check the requested fees against the lodestar."). And even assuming that a lodestar analysis is appropriate here, Class Counsel's analysis is deeply flawed.

### A. The Various Lawyers Representing The Class Engaged In Duplicative Or Unnecessary Work, Warranting A Lodestar Reduction.

Class Counsel's lodestar merits special scrutiny. In their initial fee petition (dkt. 327), Class Counsel reported that their combined base lodestar figure is a preposterous $9.8 million, the result of an equally unbelievable 18,481 hours of claimed work. The bulk of this work was done by Hagens Berman and Siprut PC. (Siprut PC's hours raise a series of issues discussed below.) Hagens Berman billed 11,030 hours in the matter, totaling, according to Mr. Berman, a lodestar of $5,518,447.35. (Dkt. 327, Ex. A.) Although Mr. Berman's initial declaration was

vague on the matter, his later submission of more detailed records shows that approximately 2,307 hours were billed after the initial, unreasonable settlement was submitted to the Court. (See Dkt. 350, Ex. A.) Given the blended rate for hours billed by Hagens Berman, this requires a lodestar reduction of $1,154,221.

Most of the other pre-Settlement hours were logged by Co-Class Counsel, Siprut PC. But Siprut is the only firm not to submit detailed billing records despite being ordered to do so, and the work he describes in his declaration and supplement wholly duplicates the work performed by attorneys at Hagens Berman, (Siprut Decl. ¶ 4), and should be disregarded. There is no explanation why attorneys from both firms (often likely multiple attorneys from both firms) needed to duplicate their efforts, requiring a lodestar reduction. *See Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012) (courts should remove hours spend on duplicative efforts from a lodestar calculation unless the attorney demonstrates that the hours were nonetheless "reasonably expended").

A similar duplication of effort or outright exaggeration appears to have occurred during settlement negotiations as well. Although Mr. Berman avers that settlement negotiations lasted 10 months, the declarations submitted in support of the fee petition suggest that at least 5,000 hours of attorney time was required to negotiate the settlement, or the rough equivalent of 3 lawyers devoting all of their billed time during that 10-month period to settlement negotiations in this case. And other submissions suggest that the 5,000-hour negotiation-time figure is inflated. For instance, a number of declarations from firms other than Hagens Berman or Siprut PC declare that the lawyers at those firms devoted time to ensuring that relief related to "late-life cognitive impairment" was included in the settlement. (Dkt. 327, Exs. D, E, G, H, I, J.) There should have been no need for *six* different firms (other than Class Counsel) to advocate for this

relief since after Class Counsel abandoned the personal injury claims this case was all about "late life cognitive impairment."

Accordingly, the Court should at least reduce the reported lodestar by $1.1 million. Even then, based on the submissions of Class Counsel and the other firms joining them, much of the work appears duplicative, and should not be factored in to any fee award.

### B. Hours Billed By Attorneys At Siprut PC Should Be Disregarded.

The Siprut Declaration submitted in support of the fee request also raises a series of issues in its own right. Siprut declares that his firm contributed 4,714.5 hours to the plaintiffs' cause. (Dkt. 327, Ex. B.) Even though he was appointed Co-Lead Class Counsel, he provides relatively little detail about the work his firm did, instead he attempts to distract the Court and any objectors by providing an unusually detailed recitation of the litigation fees his firm incurred. (*See* Dkt. 327, Ex. B.) Based on Siprut's filings in another case in this district this lack of detail is not an oversight, but the result of not having reasonable billing practices. Indeed, in a lengthy footnote to his supplemental filing, Siprut admits as much, informing the Court that his firm's hours are "reconstructed." (Dkt. 350, Ex. B, p. 2 n.1.) As explained below, this "reconstruction" results in a lodestar calculation that lacks any credibility, and the Court should disregard these hours in their entirety.

In *Douglas v. The Western Union Company*, No. 14-cv-1741 (N.D. Ill.), Siprut PC represented a class of individuals in a case under the Telephone Consumer Protection Act. The firm settled the case and sought 35% of the common fund as a fee award, purportedly justified by a lodestar crosscheck that Mr. Siprut represented required only a risk multiplier of 2.53. No. 14-cv-1741, dkt. 61 (Feb. 8, 2016). That request drew an immediate objection from a class member who noted that the fee request was excessive and counsel's purported lodestar was unbelievable.

10

*Id.* dkt. 69 (Feb. 15, 2016). The objector later pointed out that Siprut's firm appeared to be padding their bills by including work performed in another case. *Id.* dkt. 101, at 13-15 (Apr. 20, 2016). In response, Judge Feinerman asked for more detailed billing records to substantiate the work done by Siprut PC. *Id.* dkt. 102 (Apr. 25, 2016). Siprut replied to Judge Feinerman that such records could not be provided because, on many cases, "individual attorneys may not keep contemporaneous time records, and instead may derive or 'reconstruct' their time at some later point when it becomes necessary or appropriate to do so." *Id.* Dkt. 111, at 9 (May 23, 2016). *Douglas*, Siprut continued, was such a case. *Id.* at 9-10.

In response, Judge Feinerman asked Siprut to produce fee petitions spanning years in order to gauge whether he might be inflating hours. *Id.* dkt. 112 (May 25, 2016). Siprut responded to Judge Feinerman that in litigating 33 successful cases over the course of five years, he requested reimbursement for 1,250.7 hours per year. *Id.* dkt. 115, at 2 (June 3, 2016). The fee petition submitted by Siprut in this case covers the same years (2011 to 2016), and here Siprut personally adds 2,584 hours to his count—516.8 hours per year. That means that Siprut, according to his own fee petitions, has billed 1,767.5 hours per year from 2011 to 2016 on just 34 cases. And that number excludes unsuccessfully pursued cases, cases settled on an individual basis, and possibly other cases resulting in successful settlements. Indeed, a search of Westlaw docket reports reveals that Mr. Siprut appeared on a staggering 402 dockets initiated between 2011 and 2016. If the number of cases Siprut is involved in is anything close to 402, his statements about his time are not credible. Absent some strong indication to believe that the hours submitted by Siprut PC are reliable, they should be discounted entirely. And Siprut's Co-Lead Counsel, who vouches for Siprut's hours, was on notice of all of this. As a fiduciary of the class and an officer of the Court, Attorney Berman had an obligation to disclose these facts to the

Court and class. *See Halperin v. Halperin*, 750 F.3d 668, 671-73 (7th Cir. 2014) (discussing a fiduciary's duty to disclose under Illinois law). He failed to do so.[3]

In performing their "cross-check" analysis Class Counsel do not even attempt to justify a risk multiplier higher than 1.5. (Indeed they barely attempt to justify that multiplier.) Once that multiplier is applied to a lodestar figure that removes hours invested in duplicative work or hours that appear fabricated, it is clear that Class Counsel's $15 million request is not reasonable. Given the lodestar reductions warranted just from the hours billed by lead Class Counsel, a more appropriate lodestar would compensate Class Counsel for only 11,459 hours, which, at the blended rate inherent in the fee petition, results in a lodestar figure of around $6 million. Given the 1.5 multiplier justified by Class Counsel, an award of $9 million therefore more appropriately compensates the class's lawyers. And the lack of a credible lodestar amount completely prevents the Court or absent class members from properly evaluating the reasonableness of the requested fee. Thus, the Court should reduce Class Counsel's requested fees.

**III.    Class Counsel Have Waived Their Right To Collect Additional Fees.**

Beyond the unreasonable request made in their fee petition, Class Counsel buried in the Settlement a provision that purports to allow them collect addition fees for administering the settlement without approval from this Court or notice to the class. (Dkt. 266, Ex. 1, pp. 57-58 (¶ XVII(C).) Unfortunately for Class Counsel, their failure to petition for those fees from this Court and failure to inform the class of the existence of the hidden fee provision in the notice means they've waived their right to collect them.

Fed. R. Civ. P. 23(h) provides that a court "*may*" award reasonable attorney's fees that are authorized by a settlement agreement, and further establishes that "a claim for an award *must*

---

[3]    In fact, none of the supplemental documentation ordered to be produced by this Court has been put on the settlement website for easy access by class members.

be made by motion ... at a time the court sets." (emphasis added) *Redman* clarifies that any request for fees be made before the objection deadline, and that all relevant information be provided to class members at that time. *See Redman*, 768 F.3d at 637-38.

Here, to the extent Class Counsel will try to get future fees, they have violated Rule 23(h). Neither the class notice nor Class Counsel's fee petition discuss these forward-looking fees, depriving class members of the ability to assess that request and comment on or object to them. What's more, the relevant provision of the Settlement doesn't require Class Counsel to ask the Court for these fees, which prevents the Court from acting as a fiduciary to the Class. Even worse, the Settlement provides that the relevant decisionmaker—"the Chair of the Medical Science Committee"—"*shall* approve" Class Counsel's request for fees for the first two years. (¶ XVII(C) (emphasis added).) In other words, Class Counsel has negotiated a fee award that they seek to hide from both class member and Court scrutiny. Since both the notice and Class Counsel's fee petition omit any mention of the maintenance fees Class Counsel has negotiated for themselves, Class Counsel are not entitled to those fees. The Court should make clear that Class Counsel cannot recover those fees.

## IV. Class Counsel's Fee Should Be Reduced For Two Acts Of Litigation Misconduct.

Finally, even if $15 million constitutes a reasonable fee as a general matter (it doesn't), it is not reasonable here because Class Counsel took two steps that threatened to scuttle the Settlement even if Counsel had been able to negotiate an approvable settlement on their own.

First, the parties initially contracted around the notice provisions imposed by CAFA. 28 U.S.C. § 1715(b) requires attorneys to notify the relevant state attorneys general of a proposed class-action settlement within ten days of the settlement being filed with the court. But Paragraph X(A)(6) of the initial settlement agreement withholds notice to state officials until after

preliminary approval is *granted*. (Dkt. 64, Ex. 1, p. 36.) It is not altogether surprising that Class Counsel would want to withhold notice of their original, disapproved, deal, but it was nonetheless unlawful. Had the first deal been approved, the release obtained by the NCAA would have been invalid. *See* 28 U.S.C. § 1715(e)(1). And that arguably would have triggered the NCAA's option under paragraph XIX(B) of the Settlement to withdraw and terminate the agreement. The error was harmless here (because the Settlement was unfair and unreasonable in many other respects and the notice provision was later corrected), but the Court should reduce Class Counsel's fee to ensure that similar gamesmanship does not thwart future settlements.

Second, the conduct of Co-Lead Counsel Siprut with respect to Adrian Arrington threatened to derail certification of the Settlement Class. Even though Arrington devoted significant time representing the class, including sitting for a deposition, the provision of the Settlement giving him a service award was removed after he refused to sign on to the settlement. *Compare* Dkt. 64, Ex. 1, p. 52 (¶ XVI(A)), *with* Dkt. 266, Ex. 1, p. 57 (¶ XVII(A)). The Ninth Circuit has held that conditioning a service award on a representative plaintiff's consent to a settlement causes an unacceptable divergence between the interests of the named plaintiffs and the interests of the absent class. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). One possible sanction for this conduct is to deny fees altogether, as happened in *Rodriguez v. Disner*, 688 F.3d 645, 657-58 (9th Cir. 2012). The sanction in *Rodriguez* was based upon California ethics rules and the court's conclusion that, in that case, class counsel was conflicted from the beginning of the case. *Id.* at 657. A similarly drastic sanction is unwarranted here, but some fee reduction is nonetheless justified to prevent similar misconduct in the future.

14

**CONCLUSION**

The Court should decline to award fees and costs to Class Counsel in the amount of $15 million. An award of approximately $8 million more appropriately compensates Class Counsel for their work in this matter.

Date:   September 14, 2017                    Respectfully submitted,

                                              **ANTHONY NICHOLS**


                                              By: /s/ Jay Edelson
                                                    One of his Attorneys

                                              Jay Edelson
                                              jedelson@edelson.com
                                              Rafey S. Balabanian
                                              rbalabanian@edelson.com
                                              Ari J. Scharg
                                              ascharg@edelson.com
                                              Benjamin S. Thomassen
                                              bthomassen@edelson.com
                                              Edelson PC
                                              350 N. LaSalle, Suite 1300
                                              Chicago, Illinois 60654
                                              Tel: 312.589.6370
                                              Fax: 312.589.6378

## <u>CERTIFICATE OF SERVICE</u>

I, Jay Edelson, an attorney, hereby certify that on September 14, 2017, I served the above and Foregoing ***Objection to Class Counsel's Petition for Attorney's Fees and Costs****,* by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

<u>/s/ Jay Edelson</u>