# Exhibit 6

# National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation

NCAA Student-Athlete Concussion Injury Litigation
c/o Gilardi & Co. LLC
PO Box 43414
Providence, RI 02940-3414

March 08, 2017

**NOTICE ADMINISTRATOR,**

In the name of the case and multi-district litigation: In re National Collegiate Athletic Association Student-Athlete Concussion Litigation

<u>**Case No. 1:13-cv-09116;**</u>

**REUBEN DAVID PATINO**
1247 JEFFWOOD DRIVE
WATERFORD, MI 48327
(248)325-8710

Unrepresented, At this time has NOT retained legal counsel.

**The name of the NCAA member school(s) at which you participated in NCAA-sponsored sport(s):**

**DePauw University**
313 South Locust Street
Greencastle, IN 46135

**The NCAA-sponsored sport(s)** in which you participated and the years during which you participated;

**VARSITY FOOTBALL (2007, 2008, 2011)**
**WOMEN'S VARSITY BASKETBALL - MALE PRACTICE-PLAYER (2011-2012)**

**A written statement of your objections, including any facts or law you wish to bring to the Court's attention;**
Before making any personal statement(s) of objections, including any facts or law brought to the attention of the Court, I, Reuben David Patino, request additional time to retain counsel. At this time, I contest the validity of the proposed class action settlement/lawsuit.

**Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection;**

A comprehensive thorough investigation into facts, evidence, and lawful scholarly discovery of materials, papers, medical records, academic medical studies, public policy briefs should be considered through an independent

research committee prior to acceptance of all/any parts of recommended settlement. Financial-health, cost to society, and lost productivity, rehabilitative services need should be further considered with priority to protecting the long-term wellbeing of NCAA scholar-athletes.

**A statement of whether you intend to appear at the Fairness Hearing;**

As a class member to this settlement, my intention was to appear at the Fairness Hearing in person or through counsel. Unable to identify a qualified attorney(s) to represent my specific claim and a series of post-concussion, post-traumatic brain/head injuries, cognitive behavioral dysfunction, separate, but related, non-medical social-economic factors have impeded upon by ability to appear and adequately participate in the Fairness Hearing. During the time with which notice to class members was issued in July 2016-March 2017, I have been overwhelmed by the burden of health/medical issues that have been exasperated by an uncommon amount of confusion/chaos surrounding health care, ADA regulations, and Civil Rights issues within the lower courts, academic institutional setting, and have had many issues with compliance. Seeking vocational rehabilitative services to live and independent healthy life, I have experienced resistance/turbulence in the marketplace related The Patient Protection and Affordable Care Act. The cost of care on a short-to-long term basis needs review by qualified professions.

**Required to send via U.S. Mail copies of the objection to each of the following addresses, postmarked no later than March 10, 2017:**

As a fiduciary and former NCAA Football Player, It is my responsibility to PROFESSIONALLY OBJECT and COMMENT. Additionally, I must EXCLUDE myself PERSONALLY on the Settlement. IN ACCORDANCE, Written objections must be filed and served no later than March 10, 2017.

What is at stake is that You give up your right to sue and are bound by Court orders even if your objection is rejected. Lack of information, asymmetric information, unfamiliarity with the legal process, financial-health barriers, and social-psychological dynamics have made filing an objection, making an appearance at the Fairness Hearing to explain your objection an anxious, stressful, and logistical nightmare for those identifying while concerns similar to my case. Although, not required to attend, contacts/non-contact sports has impacted scholar-athletes in diverse ways depending on the level of competition (DI-DIII), dynamics of individual families structure, communities/cultures from which are derived, and the unique journey including variables of time/space, access to resources, and support networks/systems.

The true cost of NCAA Sanctioned-Sports have can stunt growth, cause heartbreaks, impact mental stability, complicate your emotional state, limit professional/occupational aspirations, diminish earning potential and bankrupt your family unit.

**Pursuant to Rule 23,** the Court finds, for purposes of preliminary approval and for settlement purposes only, that: (a) Members of the Settlement Class and Subclasses are so numerous as to make joinder of all Settlement Class Members impracticable; (b) there are questions of law and fact common to Members of the Settlement Class and Subclasses; (c) the claims of the Settlement Class

Representatives are typical of the claims of the Settlement Class Members, the claims of the Contact Sport Settlement Class Representatives are typical of the Contact Sport Settlement Subclass members, and the claims of the Non-Contact Sport Settlement Class Representatives are typical of the Non-Contact Sport Settlement Subclass members; and (d) the Settlement Class Representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Class Members; the Contact Sport Settlement Class Representatives and Class Counsel will fairly and adequately protect the interests of the Contact Sport Settlement Subclass members; and the Non-Contact Sport Settlement Class Representatives and Class Counsel will fairly and adequately protect the interests of the Non-Contact Sport Settlement Subclass members.

**Specifically, Pursuant to Rule 23(c)&(d),** A community-needs assessment should be recommended and required to be conducted on this specific population group to uncover the truth about the reals costs of concussions in NCAA Sanctioned-Sports similar to, and in conjunction with any studies/research conducted with the US Armed Forces regarding concussions, post-concussion syndrome, traumatic brain injuries, post-traumatic stress syndrome, musculoskeletal disorders, cognitive behavioral dysfunctions, and post-traumatic encephalopathy. Partnerships for independent investigative studies are required across disciplinaries, institutional bodies, and government agencies.

Providing for "unknown" care to NCAA Athletes affected can learn much from our Nation's experience with the Veteran's Affairs (VA) system. The costs to restoring a quality of life for our Armed Forces is the public's responsibility. The NCAA is not a state-based institution and is not entitled to burden the public system or exempted from providing all the same services as the public is required via collective bargaining and regulatory compliance as a private entity. Additionally, the NCAA is a for-profit non-governmental (state-based) institution but should be required to provide the same standards. Benefits, compensation, and workplace/ labor health and safety should be that resembling that offered to all athletics personnel, staff, and coaches.

The NCAA has experience with conducting "Pilot Programs." the quality of these programs are questionable as a group of NCAA Sanctioned-Sports scholar-athletes have had experience with the administration through participation in the "Drug Testing Pilot-Program." This is a Settlement, subject to court approval, has been reached in a class action lawsuit called In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation, Case No. 1:13-cv-09116 (N.D. Ill.) and is pending in the United States District Court for the Northern District of Illinois.
Unless you exclude yourself from the Settlement, you cannot sue the NCAA (or its member institutions that certify their implementation of the agreed Concussion Management Protocols) for medical monitoring related to concussions or subconcussive hits. This settlement does not include potential plaintiffs who are victims of physical, emotional, and sexual violence by NCAA Sanctioned-Sports Scholar-Athletes that suffered from concussions, post-concussion, or any other related conditions, not limited too, but including post-traumatic encephalopathy.

**In addition, my intentions, except as set forth below, unless you exclude yourself from the Settlement, you cannot file a class action lawsuit against the NCAA or its member institutions relating to concussions or subconcussive hits or their effects. As a settlement Class Members may, I seek to pursue class claims on behalf of a class of persons who allege personal injuries or bodily injuries resulting from their participation in a single NCAA-sanctioned sport at a single**

3/6

**NCAA-member school not represented in the current class-action lawsuit settlement.**

**It is my understanding that if a Class Member does not exclude oneself from the Settlement, we will still have the right to file a personal injury lawsuit against the NCAA, but you will be required to do so either on an individual, non-class basis or solely on behalf of a class of persons who allege personal injuries or bodily injuries resulting from their participation in a single NCAA-sanctioned sport at a single NCAA member school.**

My position rest upon the need to conduct or review preliminary studies before settlement. A simple logical approach to a scientific question for anyone graduating with a degree from an accredited college or university in the United States or elsewhere in world. More than a study like one would before exam as this basic. More preparation is need for a successful outcome than that deemed adequate for a big game. Practical application, the process of applied learning, for a battle bigger than our athletic competition days. PREPARATION for a more complex match of chess, not checkers, and former players need solidarity, support, and services necessary to assert their destiny. Further arbitration, mediation, and collective bargaining is required to Negotiate Better Terms on <u>What claims will be released against the NCAA</u>. The actions of the NCAA should be considered a statement indicative of its position within a chess game and this settlement demonstrates their regards towards former athletes level of ability compete after Collegiate sport alterando be successful.

Players who once made statements on the field and the court, especially during the previous five year are likely familiar with a phrase coined by comedian Kevin Hart, "Say it with your chest." In post play days, our approach as must take an alternative approach, which opposes what many of our ex-athletes were trained to do. I, myself, refuse to accept I am alone, as others are likely to be experiencing the symptoms of being "gassed." The fight for equal protection under the law, our financial-health, and social well-being has render a class of former NCAA Sanctioned-Sports scholar-athletes with little-to-nothing in our chest, no air to breath and probably low-funds in the bank. We to grow and develop our skills to respond to this and future conflicts resolution making statements with our chess, not chest, and the fight for our long-term quality of life is not a game of checkers.

Section XV of the Second Amended Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves from the Settlement, **so please read it carefully**. The Second Amended Settlement Agreement is available by clicking on a link to a webpage. In my opinion, this is insulting and egregious to the fact many former players are not attorneys, require disability accommodations, have intellectual/learning impairments, and do not have the reading-comprehension or attention spans to understand the implications of this settlement. In blunt way, the NCAA is saying it does not owe its players any attention or care beside a doctor's visit, maybe a lollypop after the exam, and a pat on the back thanking us for our participation.

Not only is this a public relations issues, or a brand concern, we are dealing with a public health & safety epidemic where private entities are avoiding accountability and placing undue burden onto the public sector. What I have seen

is the settlement but not a detailed action plan based on academic/scientific research program plan besides monitoring the situation. What is the value of monitoring a problem if you have no intentions on fixing the issues. What is the significance of screening players after play when player should be screen prior to participation for predisposition to health-medical condition. How do we use our best biotechnology and social scientific resources to manage risk and adverse selection?

Is not the NCAA mandated by the same law regulating institutional research, conduct protecting participants in human research? How will the study findings be used if the responsibility for long-term health care has the potential to be pushed off onto the public as Medicare or Medicaid payments. Considering the NCAA has been deemed a non-state actor, are they not require to uphold their own constitutional principles? What is especially concerning that the timing of this settlement coincides with congressional hearing requesting comments on the validity, future, and current state of the The Patient Protection and Affordable Care Act. **If we are unsure of the future or our National Healthcare Reform, how can we make an informed decision on a settlement, In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation, Case No. 1:13-cv-09116 (N.D. Ill.).**

As an Economist, licensed insurance and financial services agent/broker, and graduate International Relations & Conflict Resolution student, I am reluctant to settle a matter where we have little clarity or factual evidence. We have yet to receive a report from the Centers for Medicare/Medicaid Services (CMS), the Centers for Disease control, and had the impression word disability would invoke special protections set forth by The American's with Disability Act and to be enforced by The US Dept. Education | The Office of Civil Rights (OCR).

It is my understanding that if the NCAA had more knowledge than releasing, releasing claims based on misrepresentation or a failure to adequately represent factual evidence in a federal court hearing would be be perjury and covered under the Federal False Claims Act. Furthermore, I have contacted my Senator Gary Peters for Help With a Federal Agency, as this specific, and other related cases my career has focused on are in need of thorough investigation by the Department of Justice, EBSA-DOL, Department of Labor, and Office of Civil Rights.

Sincerely,

CLASS MEMBER NAME

Reuben David Patiño, BA Economics & Management
EXECUTIVE DIRECTOR, INTELLIGENCE, MGMT & STRATEGY
THE STATESMAN AGENCY [SM]
LICENSED: NPN #17749307
Life | Health | Medicare | Long-Term Care

INSTITUTIONAL REVIEW BOARD (IRB) CERTIFIED | INTERNATIONAL ETHICS COMMITTEE (IEC) | OFFICE FOR HUMAN RESEARCH PROTECTIONS (OHRP) | DEPARTMENT OF HUMAN & HEALTH SERVICES (DHHS) | DEPARTMENT OF DEFENSE (DOD) | Federalwide Assurance (FWA) - GLOBAL COMPLIANCE WORLDWIDE CERTIFIED

**Office Locations:**
Indianapolis IN 46268 | East Lansing MI 48823 | Chicago IL 60653

SIGNATURE OF CLASS MEMBER

03/10/2017

**Clerk of Court:**
Clerk of the Court
United States District Court for the Northern District of Illinois
219 South Dearborn Street
Chicago, IL 60604

**Settlement Class Counsel:**
Steve W. Berman, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101

**Counsel for the NCAA:**
Mark S. Mester, Esq.
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611



Theresa Ann McCleese-Bourdeau
NOTARY PUBLIC
State of Michigan
My Commission Expires
September 14, 2019

MICHIGAN STATE
UNIVERSITY
COLLEGE OF LAW

Law College Building
648 N. Shaw Lane, Room 368
East Lansing, MI 48824-1300

BENEU:
R PATINO
1247 JEFFWOOD DR
WATERFORD, MI 48327

METROPLEX MI 480

17 MAR 2017 PM 9 L

COUNSEL FOR THE NCAA
MARK S. MESTER, ESQ.
LATHAM + WATKINS LLP
330 NORTH WABASH AVE, SUITE 2800
CHICAGO, ILLINOIS 60611

60611-369500