# Exhibit 12

To whom it may concern,

My name is Marc Steven Elliott I am a former NCAA student-athlete and I support the settlement linked with the *National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation, Case No. 1:13-cv-09116* (United States District Court for the Northern District of Illinois).

I Marc Steven Elliott feel I am a victim of the negligence and breached duty of the NCAA to protect all current and former student athletes by failing to adopt appropriate rules and procedures regarding concussions.

This is my story...

In March 2012 I was recruited by Coach Tony Smith to play Men's Lacrosse at Coker College in Hartsville, SC. 3 months prior to my attendance at Coker College I was diagnosed with mild depression by my psychiatrist, where I was also prescribed Anti-Depressant Medication. About 45 days into Fall practice (September-October) I had collided with one of my teammates during one of Offensive/Defensive drills (3v2 Drill). An athletic trainer, coach or teammate had never acknowledge the collision, I continued to line back up to continue the drill and remember mumbling to my teammates that I felt sick and felt like I needed to vomit. I would normally tell a trainer or coach but I didn't want to feel discriminated for being "weak", or "not tough" scared I would jeopardize my reputation in being able to play or start. For example one day before practice I had to treat my Lateral Collateral Ligament (LCL) because we had doing a lot of running at the period of time and it had caused me a lot of pain, pain that felt like a knife stabbing the side of my knee. The athletic trainer had suggested I play anyway until I absolutely can't tolerate the pain. The first 15 minutes of practice I started limping and pushed on through the overwhelming pain, then I had to stop so I walked over to the bench area and started grabbing my knee as I removed my helmet and some of my gear in 98 degree weather. Coach Smith had started yelling at me for one taking my gear off, and two asked me why I was doing so, I explained that the trainer suggested I stop practicing if it's too painful because of my LCL. The athletic trainer had not defended me with the choice I made and Coach Smith yelled "Why are you here?!, You're going to take your gear off?, Then why are you here?! Go back to your dorm because you're useless here, just go home!?" I insisted on staying and he yelled "I said leave Marc! GO!" At that time I felt very embarrassed and felt low self-esteem. So when I hit my head collided with my teammate I didn't want to feel that way again. I felt like I wanted to vomit, had headaches early after. Through out the season I was having behavioral problems, drinking heavily, felt depressed, rage, all these caused a lot of problems with my relationships with my teammates, girlfriend (now ex-girlfriend) and low grades. As the season went on my behavioral problems, and anger lead to my suicide attempt and hospitalized for 2 days. My girlfriend had visited me the 2 days I was there and she had told me my coach knows and that he and my teammates were coming to visit me. My coaches and teammates never stopped by to see how I was doing; I only spoke to my girlfriend, the dean of students, and 2

friends from the men's volleyball team. I am not sure what lead to my suicide attempt but I feel it had something to do with that hit to the head in practice. I was allowed to continue my participation with the team and continue attendance in class. The athletic administration revoked my athletic scholarship as soon as the season was over; I was not able to afford tuition at a private institution causing me to make the decision to withdraw from the college. I feel ▓▓▓▓ if the concussion policy and procedures were practiced properly I would▓ have been diagnosed for concussion that lead to my mental and behavioral problems leading to my suicide attempt, losing my scholarship, I am now in debt to college institution I couldn't graduate from because I could not afford private schools tuition.

Sincerely,

Marc S. Elliott

*[signature]* 01/16/17

NCAA Student-Athlete Concussion Injury Litigation
c/o Gilardi & Co. LLC
P.O. Box 43414
Providence, RI 02940-3414

Presorted
First-Class Mail
US Postage
**PAID**
Permit #177
New Brunswick, NJ

**LEGAL NOTICE**

*In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation,* **Case No. 1:13-cv-09116 (United States District Court for the Northern District of Illinois)**

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AND FAIRNESS HEARING FOR MEDICAL MONITORING AND RELEASE OF CLAIMS**

**If You Are a Current or Former Student-Athlete Who Played An NCAA-Sanctioned Sport at an NCAA School At Any Time Through July 15, 2016,**

**Your Rights May Be Affected by a Class Action Lawsuit**



F-03-0053704



Postal Service: Please Do Not Mark Barcode

SACL1-21799501-2

719758 1218 40 **********AUTO**5-DIGIT 22193
Marc Steven Elliott
4509 Kelso Ct
Woodbridge VA 22193-4702

**SACL1**



A Settlement, subject to court approval, has been reached in a class action lawsuit called *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, Case No. 1:13-cv-09116 (N.D. Ill.). It is pending in the United States District Court for the Northern District of Illinois.

### WHAT IS THE LAWSUIT ABOUT?
The lawsuit claims that the NCAA was negligent and breached its duty to protect all current and former student-athletes by failing to adopt appropriate rules regarding concussions. The lawsuit seeks medical monitoring relief to diagnose possible long-term effects of concussions or the accumulation of sub-concussive hits for all current and former student-athletes. The lawsuit also seeks changes to the NCAA's concussion management and return-to-play guidelines.

The NCAA denies these allegations and denies it did anything wrong. If the Court does not approve the Settlement, the NCAA will argue, among other things, that the case should not be a class action. The Court has not decided whether or not Defendant did anything wrong.

### WHO IS INCLUDED?
You are a Class Member and included in the Settlement if you played an NCAA-sanctioned sport at an NCAA school at any time up to July 15, 2016.

### WHAT DOES THE SETTLEMENT PROVIDE?
The NCAA has agreed to a Medical Monitoring Fund of $70,000,000, which, after deducting administrative costs, and attorneys' fees and expenses, will fund the screening of Class Members as well as medical evaluations for those Class Members who qualify as a result of the screening during the 50-year Medical Monitoring Program. The medical evaluations will be designed to assess symptoms related to persistent post-concussion syndrome, as well as cognitive, mood, behavioral, and motor problems that may be associated with mid- to late-life onset diseases that may be linked to concussions and/or subconcussive hits, such as Chronic Traumatic Encephalopathy and related disorders. In addition, the NCAA has committed $5,000,000 to fund research regarding the prevention, diagnosis, care, and management of concussions and mid- to late-life neurodegenerative disease. The NCAA has also agreed to change its policies and procedures for concussion management and return to play. You can download the Second Amended Settlement Agreement from www.collegeathleteconcussionsettlement.com or call the toll-free number listed below and request one.

### WHO REPRESENTS YOU?
The Court appointed the law firms Hagens Berman Sobol Shapiro LLP and Siprut PC to represent you. You do not have to pay these attorneys or anyone else to participate. They will ask the Court for attorneys' fees and costs, which would be paid from the Medical Monitoring Fund. You may hire your own lawyer to appear in Court for you; if you do, you have to pay that lawyer.

### WHAT ARE YOUR OPTIONS?
- **Do Nothing and Remain in the Settlement.** If you do nothing, you are considered a participant in the Settlement. You will be bound by all Court orders. If the Settlement is approved, certain potential legal claims you may have against the NCAA will be resolved and forever released. Also, if the Settlement is approved, you will have the opportunity to complete a screening questionnaire to determine whether you qualify for up to two medical evaluations during the 50-year medical monitoring period.
- **Opt Out ("Exclude Yourself") from the Settlement.** You must submit a written request to Opt Out of the Class and the Settlement to the Notice Administrator. The complete, signed Opt-Out request must be mailed to the Notice Administrator **postmarked no later than March 10, 2017.** However, if you are a current NCAA student-athlete on or after 6 months after the Effective Date and your school fails to put in place a concussion management plan within six months of the Effective Date, you will have a second opportunity to opt-out so long as you do so within 12 months of the Effective Date.
- **Object or Comment on the Settlement.** Written objections must be filed and served **no later than March 10, 2017.** You give up your right to sue and are bound by Court orders even if your objection is rejected. If you file an objection, you may appear at the Fairness Hearing to explain your objection, but you are not required to attend.

The Court will determine whether to approve the Settlement and attorneys' fees and expenses at a Fairness Hearing to be held on **May 5, 2017, at 10 a.m.,** at the Everett M. Dirksen United States Courthouse for the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois. You may attend this hearing if you wish, but you do not have to attend in order to participate in the proposed Settlement.

### HOW CAN I GET MORE INFORMATION?
If you have questions or want to complete a Screening Questionnaire:
*Visit:* www.collegeathleteconcussionsettlement.com; *Call:* 1-877-209-9898;
*Write:* In re: NCAA Student-Athlete Concussion Injury Litigation, c/o Gilardi & Co. LLC, PO Box 43414, Providence, RI 02940-3414

Marc S. Elliott
4509 Kelso Ct.
Woodbridge, VA 22193

NCAA Student-Athlete Concussion
Injury Litigation c/o Gilardi & Co. LLC
P.O. Box 43414
Providence, RI 02940-3414

JAN 20 2017