**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION | MDL No. 2492<br><br>Master Docket No. 1:13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge M. David Weisman |

**RESPONSE OF THE NCAA TO OBJECTIONS TO
FINAL APPROVAL OF PROPOSED SETTLEMENT**

Defendant National Collegiate Athletic Association ("NCAA"), through its counsel, submits the following memorandum in response to the objections to final approval filed by Samantha Greiber, Lacey Donlon and Marissa Spinazzola:

## I.  INTRODUCTION

The NCAA understands that Class Counsel are responding in detail to the objections lodged to the Settlement Agreement.[1] As such, the NCAA does not wish to burden the Court with duplicative briefing. There are certain matters, however, that the NCAA believes warrant a separate response, and the NCAA responds below to those portions of Ms. Greiber's objection, which, in turn, Ms. Donlon and Ms. Spinazzola expressly adopt and incorporate by reference.

As detailed below, the objections made by Ms. Greiber are largely based on a misunderstanding of the Settlement Agreement and very little analysis beyond conclusory statements. When the actual facts of this case are considered, however, it is clear that the Settlement Agreement is fair, reasonable and adequate and in the best interest of the Settlement Class, and the exceedingly low rate of objections and opt-outs only further confirms this point.

---

[1] Unless otherwise defined, capitalized terms have the meaning ascribed to them in the Second Amended Settlement Agreement, which is Exhibit 1 to the joint motion for preliminary approval filed with the Court on May 20, 2016. See Second Am. Settlement Agt. (Dkt. #266-1).

Further, while the Settlement Agreement does not provide for a new rule requiring women's lacrosse players to wear helmets, as Ms. Greiber now demands, individuals remain free to commence a new action and assert such a claim on either an individual or class basis.[2]

## II. DISCUSSION

For the reasons discussed herein, the NCAA respectfully requests that Ms. Greiber's objections to Final Approval of the Settlement Agreement be overruled and that the Court enter an order granting final approval of the Settlement Agreement. See disc. infra at 2-9.

### A. Ms. Greiber's Objection Offers Virtually No Discussion Of The Relevant Standard

In evaluating whether a settlement is fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e), the most important factor is the strength of plaintiff's case compared to the terms of the proposed settlement. See, e.g., In re Northfield Labs., 2012 WL 2458445, at *2 (N.D. Ill. 2012) ("[A] court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to the settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery

---

[2] We note, however, that it does not appear that Ms. Greiber or Ms. Donlon, as former NCAA student-athletes, could show that they would suffer "irreparable harm without an injunction," which is the required showing to obtain the equitable relief being demanded by Ms. Greiber (i.e., a prospective change to the rules for women's lacrosse). See, e.g., Michigan v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 769 (7th Cir. 2011). Accordingly, they do not appear to have standing to obtain the relief that they desire (which, of course, also implicates their standing to object) and would not be adequate class representatives for a new subclass of lacrosse players seeking prospective rule changes. See DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1197 (10th Cir. 2010) ("[N]amed plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future."). Neither Ms. Greiber nor Ms. Donlon address this deficiency in their submissions. Because Ms. Spinazzola, however, appears to have standing by virtue of the fact that she is apparently a current NCAA Division II women's lacrosse player, this submission will proceed to address the merits of Ms. Greiber's claims and by implication Ms. Spinazzola's.

completed at the time of settlement.") (internal quotations omitted).  Although the submission by Ms. Greiber articulates the relevant standard, it offers virtually no discussion of the merits of Plaintiffs' claims, the complexity and expense of the litigation or the stage of the litigation and amount of discovery completed.  See Greiber Objections (Dkt. #450) at passim.  Instead, the submission focuses on the Release and argues in conclusory fashion that the Settlement is not fair, reasonable or adequate, because female lacrosse players are required to release their claims without requiring the NCAA to amend without more the women's lacrosse rules in order to mandate that players wear helmets.  See id. at 37.  As discussed below, however, this conclusion is incorrect, and the Settlement Agreement permits individuals to bring the claim that Ms. Greiber is now describing.  See disc. infra at 3-4.

### B. Members Of The Settlement Class Do Not Waive Their Right To Bring Claims For Equitable Relief Against The NCAA To Require Female Lacrosse Players To Wear Helmets

While the relief provided under the Settlement Agreement is significant, the Parties understood that no agreement could resolve every potential claim.  Accordingly, the Release preserves all potential claims, except (i) medical monitoring claims related to concussions or sub-concussive hits or contact and (ii) claims pursued on a class-wide basis, except for claims pursued on behalf of a class of persons who allege personal injuries or bodily injuries resulting from their participation in a single NCAA-sanctioned sport at a single-NCAA member institution and relating to concussions or sub-concussive-hits or contact.  See Second Am. Settlement Agt. (Dkt. #266-1) at ¶ II (RR).

To the extent that Ms. Greiber or someone else wants to assert a claim against the NCAA with a request for equitable relief requiring the NCAA to mandate that female lacrosse players wear helmets to protect against head injuries, the Release leaves open two (2) ways for such a

3

claim to be pursued.[3] First, the Release allows Ms. Greiber to bring an individual negligence action with a request for this relief. See Second Am. Settlement Agt. (Dkt. #266-1) at ¶ II(RR).[4] Second, the Release allows Ms. Greiber to bring a class action on behalf of student-athletes who played lacrosse at a single school as part of a claim for bodily injury or personal injury and to then seek this form of injunctive relief in that suit. See id. Ms. Greiber, however, would only be able to serve as a class representative if she otherwise satisfied the requirements of Fed. R. Civ. P. 23(a)(4). See Fed. R. Civ. P. (23)(a)(4) (requiring class representative to "fairly and adequately protect the interests of the class").[5]

### C. Ms. Greiber's Focus On Certifying A Nationwide Class Of Women Lacrosse Players Is Misguided

As a technical matter, Ms. Greiber is correct that the Release precludes her from asserting claims on behalf of a nationwide class of female lacrosse players that seek a rule change to require female lacrosse student-athletes to wear helmets in order to ostensibly reduce the risk of concussions. See Second Am. Settlement Agt. (Dkt. #266-1) at ¶ II(RR). But Ms. Greiber's singular focus on having the Court certify a nationwide class is misguided for at least two (2) critical reasons.

First, there are multiple ways besides seeking certification of a nationwide class for Ms. Greiber or someone else to obtain the relief Ms. Greiber apparently desires. See disc. supra at 3-

---

[3] We reiterate that Ms. Greiber does not appear to have standing to assert such a claim or to serve as a class representative for a class action seeking this relief. See disc. supra at 2 n.2.

[4] Notably, Ms. Greiber filed in January of 2017 an individual negligence action against the NCAA and other defendants, but she did not actually seek the injunctive relief on which she now bases her objection. See Compl., Greiber v. NCAA, et al., Case No. 600400/17 (N.Y. Sup. Ct., filed Jan. 16, 2017).

[5] Alternatively, Ms. Greiber could avoid litigation and provide relevant research and data to support her position to the Women's Lacrosse Rules Committee and other committees that make up the NCAA's governance structure. See NCAA Sports & Playing Rules Committee Rosters, http://www.ncaa.org/governance/committees/ncaa-sports-playing-rules-committee-rosters.

4. As a practical matter, if Ms. Greiber were successful in litigation and obtained the specified injunctive relief for a single school, the result would likely be a rule change that affects all female lacrosse players, since the NCAA promulgates one set of Women's Lacrosse Rules for all student-athletes. See NCAA 2016 and 2017 NCAA Women's Lacrosse Rules and Interpretations (2015), http://www.ncaapublications.com/p-4408-2016-and-2017-ncaa-womens-lacrosse-rules.aspx.

Second, in arguing that the Release forces her to give up her right to seek certification of a nationwide class of women's lacrosse players, Ms. Greiber completely overlooks the fact that it would be difficult (if not impossible) to certify a nationwide class of women's lacrosse players. Indeed, in preliminarily certifying the Settlement Class, the Court made the following observation:

> [T]he factual record presented by the parties is sufficient for the Court to conclude that certification under Rule 23(b)(3) of Plaintiffs' personal injury class—as they are defined in the various Related Actions, as well as in Nichols' objections—is highly unlikely against the NCAA. For the reasons stated above, based upon this record, the Court also can confidently conclude that a putative class consisting of student-athletes from more than one NCAA-affiliated school is unlikely to satisfy the requirements of Rule 23(b)(3).

Mem. Op. and Order. (Dkt. #246) at 29. While the extensive briefing in this matter (which Ms. Greiber ignores) focused on whether a personal injury class could be certified, the factors that the Parties discussed and the Court considered apply with equal force to the type of class that Ms. Greiber proposes. See id. at 20-32; NCAA Resp. to Nichols July 15, 2015 Submission (Dkt. #222) at passim.

Indeed, there are over 500 women's lacrosse teams, ranging from Division I schools to Division III schools, with different coaching and training staffs and concussion policies that almost certainly vary by school, team and coach. See LAX Power -- Women's College Lacrosse, http://www.laxpower.com/common/college_women.php. In addition, many additional

parties would need to be joined in order for a full adjudication to occur, and the amount of discovery and pretrial activity necessary to adjudicate the claims of a nationwide class would be anything but manageable. Cf. NCAA Resp. to Nichols July 15, 2015 Submission (Dkt. #222) at 25-28; see also, e.g., Miller v. Janssen Pharma., 2007 WL 1295824, at *7 (S.D. Ill. 2007) (noting the "[e]xtensive discovery" necessary rendered the class "unmanageable"). These factors, however, among others, would create insurmountable hurdles to certifying a nationwide class under Rule 23. Cf. NCAA Resp. to Nichols July 15, 2015 Submission (Dkt. #222) at passim.

### D. The Settlement Class Satisfies The Requirements Of Rule 23, Including The Adequacy Requirement

Throughout the course of settlement negotiations, the Parties and their counsel went to considerable lengths to avoid any differentiation or discrimination between the members of the Settlement Class. See Second Am. Settlement Agt. (Dkt. #266-1) at passim. To that end, all student-athletes are equally eligible for the core relief being provided under the Settlement Agreement, namely access to screening and medical monitoring by physicians specializing in Post-Concussion Syndrome ("PCS") and Chronic Traumatic Encephalopathy ("CTE"). See id. at ¶ IV(B). Ms. Greiber and the class of women's lacrosse players that she purports to want to represent are thus eligible for medical monitoring on precisely the same terms as student-athletes who played different sports, at different NCAA member institutions, during different years. See id.

The Settlement Agreement requires further that the NCAA and/or its member institutions implement certain return-to-play guidelines. See Second Am. Settlement Agt. (Dkt. #266-1) at ¶ IX(A). This relief will no doubt benefit Ms. Greiber and other female lacrosse players. In fact, Ms. Greiber alleges in her individual Complaint against the NCAA that the NCAA acted negligently precisely because it lacked such guidelines. Compare Compl., Greiber v. NCAA, et

6

al., Case No. 600400/17 (N.Y. Sup. Ct.), at 16 (alleging that the NCAA failed to implement "system-wide guidelines for the screening and detection of head injuries" and "system-wide 'return to play' guidelines"), with Second Am. Settlement Agt. (Dkt. #266-1) at ¶ IX(A)(1)-(5) (requiring the NCAA and/or its member institutions to implement "return-to-play guidelines" that require, for example, "[e]very student-athlete at every NCAA member institution [to] undergo pre-season baseline testing for each sport in which they participate prior to participating in practice or competition" and "NCAA student-athlete[s] diagnosed with a concussion by medical personnel must be cleared by a physician before being permitted to return to play in practice or competition.").

While in one instance the Settlement Agreement differentiates between Contact Sports and Non-Contact Sports, that provision actually benefits Ms. Greiber, since lacrosse is defined as a Contact Sport. See Second Am. Settlement Agt. (Dkt. #266-1) at ¶ IX(A)(4)-(5) (requiring "medical personnel with training in the diagnosis, treatment or management of concussions" to be present at games and available at practices for Contact Sports). There is, however, no other instance anywhere in the Settlement Agreement where the distinction between sports results in any difference at all in terms of the relief being provided to members of the Settlement Class, the Release that Settlement Class Members will provide or in the injunctive relief being proposed. See id. at passim.

Since Ms. Greiber and others remain free to pursue the relief that she desires, the argument in her submission is not an argument about the Release but rather an argument about how female lacrosse players are somehow entitled to additional and supplemental relief that extends beyond the relief provided to student-athletes who played the forty-two (42) other NCAA-sanctioned sports. See Greiber Objections (Dkt. #450) at passim. The standard for

determining whether a settlement is fair, reasonable and adequate, however, is not whether every single form of relief is granted.  See disc. supra at 2-3; see also Lane v. Facebook, 696 F.3d 811, 819 (9th Cir. 2012) ("[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court.").  Here, the Settlement Agreement affords significant relief to current and former NCAA student-athletes who played all NCAA-sanctioned sports and contains a limited Release that still allows Class members to assert in separate actions other claims not provided for in the Settlement, such as the claims raised in Ms. Greiber's submission.  See Second Am. Settlement Agt. (Dkt. #266-1); Greiber Objections (Dkt. #450).

Although Ms. Greiber is correct that none of the Class Representatives played women's lacrosse, there is, of course, no such requirement under Rule 23.  See Fed. R. Civ. P. 23(a); In re Gen. Elec. Capital Corp. Bankr. Debtor Reaffirmation Agreements Litig., 2000 WL 45534, at *7 (N.D. Ill. 2000) ("The Stastny Plaintiffs make much of the fact that none of the representatives were Exxon card holders, but the injury alleged in the Texas action, just as the injury of the MDL 1192 class representatives, came not from holding an Exxon credit card, but from entering into a reaffirmation agreement. . . .  Thus, the Stastny Plaintiff's injury is indistinguishable from that of the named plaintiffs.  The named plaintiffs' interests are aligned with those of the Stastny Plaintiffs, as well: obtaining maximum financial benefit for all class members.").

Instead, to satisfy the adequacy requirement under Rule 23, "[Class] Representatives must be part of the class and possess the same interest and suffer the same injury as the class members."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 594-95 (1997).  There can be little doubt, however, that in this case, the claims brought by the diverse group of Class Representatives are typical of those brought by other members of the Class and the remedies that

Class Representatives and their counsel secured are designed to benefit all members of the Class, including those who played women's lacrosse. See disc supra at 6-7.

In addition and as the Court will recall, Judge Wayne Andersen interviewed the proposed Class Representatives during the mediation and did not raise any adequacy concerns. See Decl. of Judge Wayne R Andersen (ret.) (Dkt. #158). Instead, he praised the adequacy of the proposed Class Representatives, noting, "Proposed Class Representatives thoughtfully reviewed and analyzed the Amended Settlement and understand the scope of the Amended Settlement, including the Release, as well as the differences in prospective injunctive relief for NCAA student athletes who play Contact Sports and non-Contact Sports." Id. at ¶¶ 21-22. Judge Andersen noted further that the proposed Class Representatives sought to ensure that all student-athletes (regardless of sport) received the same core relief. See id. at ¶ 21. ("The Proposed Class Representatives unanimously concluded that it was not only fair but important for all student-athletes, regardless of which sport they participate in to have access to the Medical Monitoring Program in the Amended Settlement."). While Ms. Greiber is critical of the Settlement Agreement for not including additional and supplemental relief for female lacrosse players, she offers no explanation for how the relief obtained for members of the Settlement Class is otherwise unfair or inadequate for the class of lacrosse players that she purports to represent.

### III. CONCLUSION

The NCAA respectfully requests that the Court overrule the objections of Ms. Greiber, Ms. Donlon and Ms. Spinazzola and that the Court grant final approval of the Settlement. The NCAA further requests such other relief as the Court deems appropriate.

Dated: September 29, 2017    Respectfully submitted,

*s/ Mark S. Mester*
Lead Counsel for Defendant
National Collegiate Athletic Association

9

Mark S. Mester
  mark.mester@lw.com
Kathleen P. Lally
  kathleen.lally@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

## CERTIFICATE OF SERVICE

I, Mark S. Mester, certify that on September 29, 2017, a true and correct copy of the forgoing Response Of The NCAA To Objections To Final Approval Of Proposed Settlement was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

>  */s/ Mark S. Mester*
> Mark S. Mester
>   mark.mester@lw.com
> LATHAM & WATKINS LLP
> 330 North Wabash Avenue, Suite 2800
> Chicago, Illinois, 60611
> Telephone:  (312) 876-7700
> Facsimile:  (312) 993-9767