```
 1                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   IN RE:  NATIONAL COLLEGIATE      )  Docket No. 13 C 9116
     ATHLETIC ASSOCIATION STUDENT-    )
 4   ATHLETE CONCUSSION INJURY        )  Chicago, Illinois
     LITIGATION,                      )  July 11, 2018
 5                                    )  9:00 o'clock p.m.

 6                 TRANSCRIPT OF PROCEEDINGS - MOTION
                  BEFORE THE HONORABLE JOHN Z. LEE
 7
     APPEARANCES:
 8
     For the Plaintiffs:         HAGENS BERMAN SOBOL SHAPIRO, by
 9                               MR. STEVE W. BERMAN
                                 1918 8th Avenue
10                               Suite 3300
                                 Seattle, Washington 98101
11
                                 HAGENS BERMAN SOBOL SHAPIRO, by
12                               MS. ELIZABETH A. FEGAN
                                 455 North Cityfront Plaza Drive
13                               NBC Tower - Suite 2410
                                 Chicago, Illinois 60611
14
                                 SIPRUT PC, by
15                               MR. TODD LAWRENCE McLAWHORN
                                 17 North State Street
16                               Suite 1600
                                 Chicago, Illinois 60602
17
     For Defendant NCAA:         LATHAM & WATKINS, by
18                               MS. JOHANNA MARGARET SPELLMAN
                                 330 North Wabash Avenue
19                               Suite 2800
                                 Chicago, Illinois 60611
20
     Also present:               MS. RACHEL CHRISTMAN
21                               MS. SARAH BRYAN

22
                         ALEXANDRA ROTH, CSR, RPR
23                         Official Court Reporter
                         219 South Dearborn Street
24                              Room 1224
                         Chicago, Illinois 60604
25                           (312) 408-5038
```

1     (Proceedings had in open court:)
2         THE CLERK:  Case 13 CV 9116, NCAA Student-Athlete
3  Concussion Injury Litigation.
4         MS. SPELLMAN:  Good morning, your Honor.  Johanna
5  Spellman for the NCAA.
6         MR. BERMAN:  Good morning, your Honor. Steve Berman
7  and Elizabeth Fegan for the class.
8         MR. McLAWHORN:  Todd McLawhorn also for the class.
9         MS. FEGAN:  Your Honor, we also have representatives
10 of Gilardi here.  Introduce themselves.
11        MS. CHRISTMAN:  Rachel Christman, senior project
12 manager on the case.
13        MS. BRYAN:  Sarah Bryan, corporate counsel.
14        THE COURT:  All right.  Good morning.
15        So this is a motion filed by the parties in this case
16 asking me to reset the final approval hearing and requesting an
17 order of an independent audit of the direct notice portion of
18 the notice program.
19        I understand from reviewing the motion that there has
20 been an -- there was an audit done recently, is that correct?
21        MS. CHRISTMAN:  Yes, your Honor.
22        THE COURT:  And have you provided the results of that
23 audit to counsel yet?
24        MS. CHRISTMAN:  Yes, your Honor.
25        THE COURT:  And so what's the result of the audit?

1           MS. CHRISTMAN: We determined that there are 10,400
2  approximately records that were conclusively affected by
3  mismatching and, therefore, were not properly searched and
4  remailed. There are an additional 6,800 with approximate
5  matches but not complete matches. So out of an abundance of
6  caution, we also recommend those are searched and remailed.
7           THE COURT: So by matches, what do you mean? When you
8  say, approximate matches.
9           MS. CHRISTMAN: The names on the original mailing list
10 matched the names that were searched, though the addresses on
11 the original mailing list do not match the addresses that were
12 searched. Could be as a result of an address update, but we
13 haven't conclusively determined that yet.
14          THE COURT: Okay. And so, Mr. Berman, what does this
15 all mean?
16          MR. BERMAN: It means a delay that we are not happy
17 with because if there is an audit, let's say we selected an
18 auditor next week. Let's say they got that done in 30 to 60
19 days, and then we did a mailing. So we are looking at
20 something that might push the fairness hearing out another four
21 months.
22          THE COURT: So at this point, based upon the
23 settlement administrator's -- the audit that they did
24 internally, despite basically the months and months that we
25 have been engaged in this notice process, we still have by

1 their measure about 17,000 class members whose records have to
2 be updated and notice sent out so that we can be assured that
3 they received some sort of direct notice.
4       Is that pretty much accurate?
5       MS. CHRISTMAN: Yes, sir.
6       THE COURT: And so, Mr. Berman, now that the
7 settlement administrators have done the audit, do you still
8 think it's necessary, you and the NCAA, to have an independent
9 audit?
10       MR. BERMAN: That's a tough question because they keep
11 telling us that they've audited. And each time we come back.
12 A day before the hearing we get new information. On the other
13 hand, you know, we have sent out -- this is kind of an
14 unprecedented undertaking. We had a thousand schools. All the
15 information came in in different formats. And it was kind of
16 difficult to get it right.
17       So at this point, we are 98 percent, 99 percent right.
18 And sometimes perfection is the enemy of all, right? So I am
19 in a quandary whether we need the audit because of the delay.
20       I also had a thought this morning that I haven't
21 shared with the NCAA. So I might catch them a little offguard.
22 But we haven't had new objections since the last few updated
23 mailings. And I was wondering whether we should actually move
24 ahead with the fairness hearing, like in August, and then have
25 a second fairness hearing, if necessary -- or it would be

1  necessary, so that you -- we can advance the ball.
2          So if you are going to write an opinion, it might take
3  you a while.  I don't mean that in a discourteous way in any
4  way.  Can we at least get some of that done because, you know,
5  you have a pretty good record you have to go through on the
6  objections that are already in.
7          Just a thought to try to hasten the objective here,
8  because we want to get the rules in force before the next
9  season starts.
10         MS. SPELLMAN:  And if I may, your Honor.  As Mr.
11 Berman said, this -- we haven't had a chance to talk with him
12 and Ms. Fegan about this proposal, nor consult with our client.
13 So we definitely want the opportunity to do that.
14         As to your question whether there is still a need for
15 an independent audit, we too share Mr. Berman's frustration
16 with the prospect of another delay.  The NCAA is extremely
17 frustrated with these repeated delays.
18         But given that, we keep hearing, you know, the day
19 that the new declaration from the notice administrator is due
20 that it turns out there is a group of several thousand class
21 members who didn't get notice.  And then upon, you know, we
22 probe a little bit.  And upon further digging, the problem
23 turns out to be more widespread than initially thought.
24         You know, our -- reluctantly we think it is advisable
25 to have a third party come in and just take a look at the

1 notice program and make sure that it was conducted properly.

2 THE COURT: Do you have any sense of what that
3 independent audit would entail?

4 MS. SPELLMAN: I think it would be focused on the
5 direct notice portion and would -- I mean, we -- we would
6 preferably select an entity that has some experience in notice
7 administration and, you know, the class action arena as well as
8 specializing in audits. And really looking at the processes
9 and procedures that were put in place to handle student-athlete
10 contact information as it came in, and putting it into the
11 databases that were used to generate the mailings, sort of each
12 step along the way looking at the most processes and procedures
13 and doing, you know, QC to ensure that they were properly
14 followed.

15 MS. FEGAN: Your Honor, I think from our point of view
16 we're looking -- we would be looking for something far simpler.
17 Really what we need to do is get the original source
18 information and match it up with what's been mailed. I don't
19 think that spending a lot of time on the processes will further
20 the ball. The ball that we want to further is making sure that
21 those class members for whom we have information have received
22 notice.

23 And so I think our goal would be to get that original
24 source information, the mailing lists, and literally match it
25 up, determine who hasn't gotten notice so that we can get

1 notice to those folks.

2 THE COURT: All right. First of all, I understand
3 that plaintiffs' counsel is frustrated. I understand the
4 NCAA's counsel is frustrated. But I can assure you, there is
5 no one more frustrated with this process than me. It has been
6 taking an inordinate amount of time.

7 I understand the scope is vast. It's 4 million plus,
8 right? And we're -- I don't know whether a direct mailing
9 notice of this magnitude with this exactness has been attempted
10 before. So I understand the difficulties inherent in the task.

11 But this has been going on now for the better part of
12 a year and a half, two years. And in the meantime, the
13 putative class members are just waiting, right? And at some
14 point, I think, my concern is that the direct notice program
15 was a supplement to the other media, social media, notice. And
16 I understand that that's still out there. But at some point,
17 the more we -- the longer we wait to get this done, to some
18 extent I am worried about the staleness of that other aspect of
19 the notice program, right? That it's not on top of mind
20 anymore.

21 As far as kind of the roll-out goes, Mr. Berman, I
22 know everything is more or less triggered on the final approval
23 date. But as far as kind of mobilizing, and particularly these
24 evaluation centers, has there been any movement or process or
25 progress with regard to that aspect? Or is everyone just

1  waiting for the final approval?

2  MR. BERMAN: We're waiting for final approval.

3  MS. SPELLMAN: That's -- the Medical Science Committee
4  has been working with Garretson to reach out to potential
5  program locations. And they are continuing to move that ball
6  forward. But we are waiting to really fully implement it.

7  THE COURT: Okay. I have stated all along how
8  important I think the direct notice portion of the notice
9  program is. And I remain steadfast in that assessment. I
10 think it's important for me and the putative class to have
11 confidence that the direct mail notice program was carried out
12 as efficiently and as effectively as humanly possible.

13 I too am frustrated with the -- at every turn or every
14 status hearing I seem to get more information about more people
15 that have been left out. And I think that an independent audit
16 would at least give me some assurance that we have kind of
17 reached a point where we have done all that we can.

18 So I am inclined to order that an independent audit be
19 done. With regard to costs, however, my inclination is
20 initially to have the plaintiff and the defendant bear the
21 costs of the independent audit 50/50, largely because it was
22 you all that selected the administrator and you all that came
23 to me and had provided me with assurances that they would be
24 able to -- capable of doing the job. And it is based upon that
25 representation and my review of the document that the parties

1 submitted that I approved the settlement notice administrator.

2 And so to some extent, I think that the parties --
3 it's a situation and problem that I don't think the parties
4 necessarily created, but certainly we are here with the current
5 notice administrator at the parties' request.

6 I also think that requiring at least initially for the
7 parties to bear the costs of an independent audit program would
8 provide some structural incentive to make sure that the
9 independent audit is as efficient as possible, and that it
10 proceeds as quickly as possible.

11 After the audit is done, if the audit -- depending on
12 what the audit finds, I may at that time reassess and consider
13 reapportioning the costs so that the notice administrator has
14 to bear some of it. But initially, my thinking is that the
15 costs of the independent audit should be borne by the settling
16 plaintiffs and by the NCAA on a 50 percent, 50 percent equal
17 basis.

18 And obviously the cost of the independent audit would
19 not impact at all the terms of the settlement agreement or the
20 amounts provided by the NCAA as part of the settlement. And I
21 say I am inclined to do that. And I want to -- before I go
22 ahead and assess those costs and to enter that order, I wanted
23 to provide the parties with an opportunity to raise any
24 concerns with regard to that approach.

25 Mr. Berman?

1    MR. BERMAN: We have no concerns. We -- you know, we
2 both vetted and had a bunch of bids, and we thought we selected
3 the most qualified. And it turned out perhaps not to be the
4 case. And we are responsible for that. So I accept the 50
5 percent.
6    MS. SPELLMAN: Yes, your Honor.
7    THE COURT: Okay. And is there any concern from the
8 notice administrator with regard to kind of the procedures for
9 independent audit? I am assuming that the parties will work
10 with you to make sure, and I take it that you are going to
11 provide -- you have no objection providing whatever records the
12 independent auditor will require. Is that correct?
13    MS. BRYAN: Correct. We are prepared to provide the
14 data that we received and the mailing data. I would say we are
15 less inclined to have someone come in, because of information
16 security concerns, and be in our systems and evaluating our
17 processes. So I am not sure what the ultimate scope of the
18 audit will be.
19    I think what plaintiffs' counsel proposed as far as
20 analyzing the data against what we received versus what was
21 mailed will be the most efficient and best way to handle it.
22    THE COURT: I am going to -- I mean, you are going to
23 have to talk to the auditor to figure out what the auditor
24 needs to do.
25    And again, I tend to agree with Ms. Fegan in that what

1  we are trying to figure out is to have some added confidence
2  that all the people, all the former NCAA athletes and current
3  NCAA athletes for which we obtained address information, that
4  those have been properly reviewed. And to the extent that
5  notice has been sent out, that they have been sent out to all
6  those people. That's in the end the confidence that we're
7  looking for.
8  　　　　　I don't know what the auditor is going to require.
9  But given the timeframe, I think that's work that needs to be
10 done efficiently but also very quickly. Okay?
11 　　　　　As far as whether or not the auditors need access to
12 the notice administrator's systems and people, to the extent
13 reasonably -- that the request is reasonably related to this
14 project, I am inclined to give them that access so that the
15 audit can be done quickly. All right?
16 　　　　　So the joint motion to require the independent audit
17 of the direct notice portion of the notice program is granted.
18 The costs will be borne out 50 percent by the settling
19 plaintiffs and 50 percent by the NCAA, without any change in
20 the settlement funds amount.
21 　　　　　Once the audit is -- I think at this point we have to
22 wait for the audit to be done to really set a final approval
23 hearing date that we can all be confident with. Mr. Berman, do
24 you agree with that?
25 　　　　　MR. BERMAN: Well, I assume that you're rejecting my

1 idea for a --

2 THE COURT: I think that doesn't make a whole lot of
3 sense because I think it's just going to be -- the other thing
4 I am trying to do is try to eliminate possible points of
5 confusion for the class.

6 MR. BERMAN: Okay, that makes sense. So I agree with
7 you that we have to wait. I would suggest to the Court that
8 perhaps you give the auditor a deadline because they would then
9 accept the assignment knowing they have to get to it quickly.

10 THE COURT: All right. Let's do this. Let's go ahead
11 and set a status date in about 60 days. And I also don't know
12 how long the auditor is going to need for the review. Let's
13 see. Hold on for a second.

14 (Brief pause.)

15 THE COURT: So we are going to keep the August 16 date
16 as a status date. It will no longer be the final approval
17 hearing date. And if at all possible, I would like the
18 independent auditor to at least have some conclusion -- I don't
19 really care about the final report, but provide conclusions to
20 counsel so that counsel can provide me with an update of the
21 audit at the August 16 status hearing.

22 If counsel has enough information to provide a status
23 report -- or why don't you go ahead and provide me a status
24 report anyway by August 10. Okay?

25 I take it that the settlement website will be updated

1  with the new order?  And then I will make sure that the MDL
2  website, web page, on the court's website is also updated.
3         If there are any issues during this process, call Ms.
4  Acevedo, and we can deal with it by telephone conference.  All
5  right?
6         So let's go ahead and get this done.  And my
7  expectation at the moment is that the auditor will be able to
8  complete the independent audit within that timeframe.
9         Thank you.
10         MR. BERMAN:  Thank you, your Honor.
11         MS. FEGAN:  Thank you, your Honor.
12      (Which were all the proceedings heard in this case.)
13                           CERTIFICATE
14         I HEREBY CERTIFY that the foregoing is a true, correct
15  and complete transcript of the proceedings had at the hearing
16  of the aforementioned cause on the day and date hereof.
17
18   /s/Alexandra Roth                              7/12/2018
    _____        _____
19   Official Court Reporter                        Date
     U.S. District Court
20   Northern District of Illinois
     Eastern Division
21
22
23
24
25