IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION | MDL No. 2492<br><br>Master Docket No. 1:13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge M. David Weisman |

### JOINT STATUS REPORT ON INDEPENDENT AUDIT OF DIRECT NOTICE PORTION OF THE NOTICE PROGRAM

Settlement Class Representatives Derek Owens, et al. ("Plaintiffs") and Defendant National Collegiate Athletic Association (the "NCAA," and together with Plaintiffs, the "Parties"), through their counsel, jointly submit the following status report on the independent audit of the direct notice portion of the Notice Program:[1]

1. On July 11, 2018, the Court held a status hearing and subsequently entered an Order in which it reset the date of the final approval hearing and ordered an independent audit of the direct notice portion of the Notice Program. See Minute Entry (Dkt. #514). The Court also ordered the Parties to file a status report regarding the audit by August 10, 2018. Id.

2. On August 10, 2018, the Parties filed a joint status report and informed the Court that they had engaged Monument Economics Group ("MEG") to conduct the audit of the direct notice portion of the Notice Program. See Joint Status Report on Independent Audit of Direct Notice Portion of the Notice Program (Dkt. #518). MEG is a consulting firm with extensive experience analyzing large-scale databases in class action litigation and routinely assists with

---

[1] Unless otherwise defined, capitalized terms have the meaning ascribed to them in the Second Amended Settlement Agreement, which is Exhibit 1 to the joint motion for preliminary approval filed with the Court on May 20, 2016. See Second Am. Settlement Agt. (Dkt. #266-1).

claims administration and the notice process. Id. at 2. Cynthia Jones of MEG oversaw the audit.[2] Id.

3. On August 16, 2018, the Court held a status hearing. The Parties provided an update to the Court on the status of the audit, and the Court subsequently entered an Order requiring the audit to be completed by August 27, 2018. See Minute Entry (Dkt. #519).

4. Consistent with the Court's August 16, 2018 Minute Entry, MEG completed its audit of the direct notice portion of the Notice Program by August 27, 2018. The Parties have attached as Exhibit 1 hereto the Independent Audit of Direct Notice Portion of the Notice Program Summary Report prepared by MEG ("Audit Report").

5. MEG determined that 90 percent of the student-athletes for whom the Notice Administrator received contact information, or 3,951,552 student-athletes out of a total of 4,379,275 original records provided by NCAA member institutions, were sent direct mail or email notice.[3] See Audit Report at 1. In addition, 89 percent of the student-athletes for whom the Notice Administrator received contact information, or 3,879,936 records, were sent direct mail notice, and 44 percent of the student-athletes for whom the Notice Administrator received contact information, or 1,948,003 records, were sent email notice. See id. at 3.

6. As discussed below in paragraph 8, although 883 student-athletes for whom usable contact information was provided were not sent direct notice, the Notice Administrator is

---

[2] The Parties previously provided a copy of Ms. Jones' curriculum vitae to the Court as Exhibit 1 to their August 10, 2018 joint status report. See Curriculum Vitae of Cynthia L. Jones of Monument Economics Group (Dkt. #518-1).

[3] The remaining ten percent were not sent direct mail or email notice for a number of reasons, including: (i) their records were exact duplicates of another record; (ii) they were included in multiple submissions by their NCAA member institution because they played multiple sports; (iii) they were included in multiple submissions by different NCAA member institutions because they played at more than one member institution; and/or (iv) they had incomplete name and address information. See Audit Report at 7.

prepared to mail direct notice to those individuals and to 5,692 additional individuals (6,575 total individuals) discovered through its own internal audit prior to the engagement of MEG and its completion of the two follow-up steps suggested in MEG's audit report, described in paragraphs 9-11 below. Upon that mailing, 100 percent of the student-athletes for whom the Notice Administrator had usable contact information will have been sent direct notice.

7. MEG concluded that this result was reasonable. Id. To reach its conclusion, MEG reviewed the procedures utilized by the Notice Administrator to process the student-athlete contact data and the results achieved by the Notice Administrator. See Audit Report at 1. As part of this review, MEG confirmed the following:

   a. MEG confirmed that 1,291 NCAA member institutions submitted 1,473 files to the Notice Administrator containing student-athlete contact information of potential Class Members.

   b. Of the 1,473 files, the Notice Administrator dropped 75 files that contained either no data or data that was wholly duplicative of that contained in another file. MEG examined a sample of the dropped files and determined that no files were dropped in error.

   c. MEG verified the integrity of the process the Notice Administrator used to process 571 files that were not uploaded in a standard format and thus required additional processing before they could be used to send direct notice. Of the 571 files that required additional processing, MEG reviewed a sample of 20 percent, or 114 files. See Audit Report at 4-6.

8. Of the 114 files that MEG reviewed that required additional processing before they could be used to send direct notice, MEG identified a single file that had been incorrectly processed by the Notice Administrator. See Audit Report at 6. That file contained 883 student-athlete records that were dropped in error. Id. For each of these 883 records, the NCAA member institution that uploaded the relevant file had left the "sport" field blank. Id.

9. In light of the foregoing error, MEG conducted a review of files that required additional processing and determined that there were at most 99 files in which records could

3

have been mistakenly dropped due to issues such as omitted "sport" information. See Audit Report at 6-7. MEG recommended that the Notice Administrator reexamine these 99 files. Id. The Notice Administrator agreed to review these 99 files at its own expense, and completed this review on Friday, September 7, 2018.

10. MEG also reviewed the process the Notice Administrator used to handle returned undeliverable mail ("RUM"). MEG confirmed that of the 3,879,936 postcards sent by the Notice Administrator, just 320,401 were returned as undeliverable. See Audit Report at 8-10. MEG confirmed that the U.S. Postal Service was able to directly forward 28,346 of the RUM and that the remaining 292,055 returned postcards were reviewed by the Notice Administrator to determine if they should be sent to an independent vendor to search for updated addresses using public records databases.[4] Id. MEG ultimately sent 263,888 records to the vendor and obtained updated addresses for 175,165 records. Id. at 9. The Notice Administrator then sent direct mail notice to these student-athletes at their updated addresses. Id.

11. During its review of RUM records, MEG could not determine why a public records search for updated address information was not performed for a small subset of 4,032 RUM records. See Audit Report at 9. MEG recommended that the Notice Administrator review these 4,032 records to determine if there is sufficient information to perform a public records search for an updated address. Id. The Notice Administrator agreed to review these records at its own expense and will send any records with sufficient data to an independent vendor to

---

[4] The following types of RUM records were not sent for search, because they did not contain the information required by the vendor: (i) records with a foreign address and no social security number and (ii) addresses with incomplete name and/or address information, as the vendor required both pieces of information to conduct the search. In addition, records associated with student-athletes who had previously contacted the Notice Administrator to notify of a change of address were not sent for search, because the Notice Administrator automatically sent those student-athletes a new postcard upon notification.

4

search for addresses. The Notice Administrator completed this review on Friday, September 7, 2018.

12. The audit results highlight the strength of the Notice Program. While not all direct notice will reach the intended member of the Settlement Class, the fact that 89 percent of student-athletes for whom the Notice Administrator received contact information were sent direct mail notice tends to support the Notice Administrator's estimate that when direct notice is combined with the other forms of notice provided under the Notice Plan, the actual "reach" realized under the Settlement would easily be 85 percent or more. See Vasquez Decl. (Dkt. #329-1) at 9-10. These results are, in turn, well within the range that courts have held to be adequate. See, e.g., Kaufman v. Am. Express Travel, 2016 WL 806546, at *8-9 (N.D. Ill. 2016) (approving class action settlement agreement that "reached" 70 percent of the settlement class); Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 596 (N.D. Ill. 2011) (approving class action settlement agreement that "reached" 89.7 percent of the settlement class).[5]

13. The Parties expect to present a new schedule for final approval to the Court at the next status hearing on September 12, 2018.

Dated: September 7, 2018                                          Respectfully submitted,

---

[5] The fact that individual notice to each Class Member may not be possible does not, of course, preclude final approval of the Settlement Agreement. See, e.g., Mullane v. Central Hanover Bank, 339 U.S. 306, 317 (1950) ("[I]n the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights."); In re AT&T, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) ("Due process does not require that every class member receive notice."). The Notice Plan included numerous forms of indirect notice, including print publication, a press release, internet-based banners, social media and a settlement website. See Vasquez Decl. (Dkt. #329-1) at 4-9.

| | |
|---|---|
| By: */s/ Steve W. Berman (w/ consent)*<br>　　Settlement Class Counsel | By: */s/ Mark S. Mester*<br>　　Lead Counsel for Defendant<br>　　National Collegiate Athletic<br>　　Association |

Steve W. Berman
　steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
　beth@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950

Mark S. Mester
　mark.mester@lw.com
Johanna M. Spellman
　johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

**CERTIFICATE OF SERVICE**

    I, Mark S. Mester, certify that on September 7, 2018, a true and correct copy of the forgoing JOINT STATUS REPORT ON INDEPENDENT AUDIT OF DIRECT NOTICE PORTION OF THE NOTICE PROGRAM was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

                                                   */s/ Mark S. Mester*
                                                   Mark S. Mester
                                                        mark.mester@lw.com
                                                   LATHAM & WATKINS LLP
                                                   330 North Wabash Avenue, Suite 2800
                                                   Chicago, Illinois, 60611
                                                   Telephone: (312) 876-7700
                                                   Facsimile: (312) 993-9767