**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION** | MDL NO. 2492<br>Case No. 13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge Weisman |

**MEMORANDUM OF LAW IN SUPPORT OF**
**SETTLEMENT CLASS PLAINTIFFS' MOTION FOR IMPOSITION OF APPEAL**
**BOND AGAINST APPELLANT McILWAIN, LLC/TIMOTHY J. McILWAIN**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

    A.  The parties settle and this Court provides a six-month deadline for the submission of fee requests. ............................................................... 2

    B.  Sixteen firms timely submit their fee applications, McIlwain did not. ................................................................................................................ 3

    C.  A delay has real consequences. .......................................................... 5

III.  ARGUMENT ...................................................................................................... 6

    A.  This Court has the discretion under Fed. R. App. P. 7 to require McIlwain to post an appeal bond. .................................................... 6

    B.  The balance of factors courts weigh in deciding whether to require an appeal bond justify imposing one here. ............................... 6

        1.  The appeal is meritless. ............................................................ 6

        2.  McIlwain presumptively has the financial ability to post a bond. ........................................................................................ 7

        3.  There is a risk that McIlwain will not pay the costs of an unsuccessful appeal. ................................................................ 8

        4.  It would not be unreasonable to infer that McIlwain is abusing the judicial process given the lack of merit of the appeal. ...................................................................................... 9

    C.  The appeal bond should be set at $432,956. ...................................... 9

        1.  The Court should include $10,000 in taxable costs under Fed. R. App. P. 39 ...................................................................... 9

        2.  The Court should include $422,956 in administrative and medical monitoring program costs caused by delay of settlement implementation as well. .......................................... 10

IV.  CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. J.P. Morgan Chase Bank, NA*,
 No. 15-3425, 2015 U.S. App. LEXIS 23165 (7th Cir. Dec. 4, 2015) ...................................... 10

*Arrington v. NCAA*,
 No. 1:11-cv-06356 (N.D. Ill. 2011) ..................................................................................... 2

*Azizian v. Federated Dep't Stores, Inc.*,
 499 F.3d 950 (9th Cir. 2007) ............................................................................................. 11

*Berwick Grain Co. v. Ill. Dep't of Agric.*,
 217 F.3d 502 (7th Cir. 2000) ............................................................................................... 7

*Grove Fresh Distribs., Inc. v. John Labatt, LTD*,
 299 F.3d 635 (7th Cir. 2002) ............................................................................................... 7

*Heekin v. Anthem, Inc.*,
 No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700 (S.D. Ind. Feb.
 27, 2013) ..................................................................................................................... *passim*

*In re Checking Account Overdraft Litig.*,
 No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 18384 (S.D. Fla. Feb. 14,
 2012) ................................................................................................................................... 11

*In re Currency Conversion Fee Antitrust Litig.*,
 No. M 21-95, 2010 U.S. Dist. LEXIS 50436 (S.D.N.Y. May 21, 2010) ............................. 10

*In re Initial Pub. Offering Sec. Litig.*,
 728 F. Supp. 2d 289 (S.D.N.Y. 2010) ........................................................................ 7, 8, 10

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
 MDL No. 08-1999, 2010 U.S. Dist. LEXIS 123761 (E.D. Wis. Nov. 2, 2010) ..................... 8

*In re MagSafe Apple Power Adapter Litig.*,
 No. C 09-01911 JW, 2012 U.S. Dist. LEXIS 88549 (N.D. Cal. May 29, 2012) ................... 7

*In re NCAA Student-Athlete Concussion Injury Litig.*,
 314 F.R.D. 580 (N.D. Ill. 2016) .......................................................................................... 2

*In re NCAA Student-Athlete Concussion Injury Litig.,*.
 MDL No. 2492, 2019 U.S. Dist. LEXIS 135682 (N.D. Ill. Aug. 12, 2019) ..................... 2, 3

- ii -

*In re N.J. Tax Sales Certificates Antitrust*,
  No. 12-1893 (MAS) (TJB), 2017 U.S. Dist. LEXIS 102608 (D.N.J. June 30,
  2017) ...................................................................................................................11

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  520 F. Supp. 2d 274 (D. Mass. 2007) ...................................................................11

*In re Polyurethane Foam Antitrust Litig.*,
  178 F. Supp. 3d 635 (N.D. Ohio 2016)..................................................................11

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
  No. 2:11-md-2233, 2014 U.S. Dist. LEXIS 88693 (S.D. Ohio June 30, 2014).........................8

*Mather v. Mundelein*,
  869 F.2d 356 (7th Cir. 1989) ..................................................................................1

*Miletak v. Allstate Ins. Co.*,
  No. C 06-03778 JW, 2012 U.S. Dist. LEXIS 125426 (N.D. Cal. Aug. 27,
  2012) .............................................................................................................10, 11

*Spiegel v. Cont'l Ill. Nat'l Bank*,
  790 F.2d 638 (7th Cir. 1986) ..................................................................................7

*Tenille v. W. Union Co.*,
  968 F. Supp. 2d 1107 (D. Colo. 2013) .............................................................10, 11

## OTHER AUTHORITIES

Fed. R. App. P. 7............................................................................................1, 6

Fed. R. App. P. 38.............................................................................................10

Fed. R. App. P. 39.............................................................................................9, 11

Fed. R. App. P. 39(e) ........................................................................................10

Fed. R. Civ. P. 6(b) ..........................................................................................3, 7

Fed. R. Civ. P. 23(b)(2).....................................................................................2

## I.    INTRODUCTION

After eight years of litigation, Settlement Class Plaintiffs secured and this Court approved a substantial class settlement of $75,000,000. The settlement is poised to implement important relief for millions of student-athletes, creating a 50-year medical monitoring program, funding important concussion research, and implementing protective changes to the National Collegiate Athletic Association ("NCAA") policies. Even though over four million class members received direct and/or indirect notice, only twenty-two individuals objected.  Critically, no merits-based appeals were filed following this Court's final approval. Instead, only one firm/attorney appeals, McIlwain, LLC and Timothy J. McIlwain (collectively "McIlwain"), complaining that this Court erred when it denied his requests for fees *three times* after McIlwain missed the deadline to submit its request for fees and costs.

The potential delay caused by McIlwain's meritless appeal has real consequences. McIlwain's appeal may delay Settlement Class Members from receiving hard-fought settlement relief and create real costs as well.  To protect the Settlement Class Members in the event of an extensive delay, including in the event that the Court disagrees with Settlement Class Plaintiff's position as to the Effective Date,[1] Settlement Class Plaintiffs respectfully request that this Court enter an order requiring McIlwain to post a bond under Fed. R. App. P. 7. Requiring a bond will be necessary and appropriate given that the relevant factors support a bond here, underscored by the fact that McIlwain is unlikely to prevail on appeal.[2] Given the facts here and as further detailed below, a bond of $432,956 is appropriate.

---

[1] On September 24, 2019, Settlement Class Plaintiffs separately filed Settlement Class Plaintiffs' Motion for Resolution of a Dispute Concerning the Effective Date.

[2] On September 20, 2019, Settlement Class Plaintiffs filed a motion for summary disposition before the Seventh Circuit. *See, e.g., Mather v. Mundelein,* 869 F.2d 356 (7th Cir. 1989).

## II.     BACKGROUND

**A.     The parties settle and this Court provides a six-month deadline for the submission of fee requests.**

Plaintiffs in the underlying multi-district litigation are current and former collegiate athletes who sued the National Collegiate Athletic Association ("NCAA") on a class-wide basis, asserting various contractual and common law claims arising from the manner in which the NCAA handled student-athlete concussions and concussion-related risks. *In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 583 (N.D. Ill. 2016). "After extensive discovery, the parties in the first-filed case, *Arrington v. NCAA*, No. 1:11-cv-06356 (N.D. Ill. 2011), commenced settlement negotiations with the assistance of two prominent retired federal judges." *Id.* "At around this time, a number of similar actions were filed on behalf of NCAA student-athletes nationwide, and those actions were consolidated by the Judicial Panel of Multidistrict Litigation before [this Court]." *Id.* Included among the consolidated claims were claims by Chris Walker, Ben Martin, and Dan Ahern, who were represented by, among others, McIlwain. *See generally* Declaration of Timothy J. McIlwain in Support of Motion for Fees and Expenses ¶¶ 1, 3 (Dkt. 335-1).

Following extensive negotiations, the litigants settled the matter and this Court "preliminarily certified the settlement class under Fed. R. Civ. P. 23(b)(2) and found that the amended settlement was within the range of possible approval," subject to specific modifications requested by this Court. *In re NCAA Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2019 U.S. Dist. LEXIS 135682, at *8 (N.D. Ill. Aug. 12, 2019) (citing *In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. at 608). After the parties completed the requested modifications, on July 15, 2016, this Court granted preliminary approval. *See generally* Preliminary Approval Order (Dkt. 278). Among the many deadlines set that day, this Court

- 2 -

ordered counsel to submit their applications for fees and expenses on or before January 13, 2017. (Dkt. 278).[3] Thus, all counsel received six months to submit their fee applications. *Id.*

**B.      Sixteen firms timely submit their fee applications, McIlwain did not.**

On January 13, 2017, sixteen firms timely submitted their applications for attorney fees and expenses. *See generally* Dkt. 327–334. McIlwain did not. (Dkt. 335).[4]

Instead, five days later on January 17, 2017, McIlwain filed a perfunctory notice of motion "*for leave of court to file as if in time*" in which the firm requested $58,595 in fees and $306.45 in expenses. (Dkt. 335–336). But even though Fed. R. Civ. P. 6(b) provides courts with the ability to permit an extension after a deadline has passed, McIlwain did not carry his burden to request such an extension. Instead, McIlwain's January 17th untimely filings did not identify any grounds or cause for the untimely filings. *See generally* Dkt. 335 and Dkt. 327–334. Calling out this deficiency, on January 20, 2017, this Court entered its first order rejecting McIlwain's fee requests:

> Plaintiff Walker's motion for leave to file motion for attorney fees as if on time [335, 336] is denied. The motion fails to establish good cause as to why the petition was not file[d] by the deadline that was set by the Court months ago.

(Dkt. 338).

After waiting another month, McIlwain tried a second time. On February 21, 2017, McIlwain filed another request for "Leave to File Out of Time or to be Annexed to Settlement Class Counsel's Petition." But as with the first attempt, McIlwain filed no motion, filing instead

---

[3] This Court subsequently granted final approval on August 12, 2019 (Dkt. 552) and entered a final order and judgment on August 13, 2019 (Dkt. 553, as amended at Dkt. 558).

[4] One additional firm did not timely file a fee application, which this Court also denied. *See generally* Dkt. 342 (motion for fees and expenses filed January 25, 2017); and Dkt. 344 (order denying petition as untimely and failing to provide good cause for failure to timely file). Unlike McIlwain, that firm did not appeal the denial.

a Notice of Motion, a Proposed Order, and two declarations (Dkt. 358), this time submitting a

lower request for $43,539.25 in fees and $306.45 in expenses. He then refiled the documents two

days later on February 23, 2017. (Dkt. 361–362). However, on February 27, 2017, this Court

struck this second bid for failure to follow the Local Rules:

> Walker Plaintiffs' motion 358 is stricken for failure to file a motion
> pursuant to L.R. 5.4. No appearance is required at 9:00 a.m. on
> 3/3/17.

(Dkt. 363).

After another month's delay, McIlwain launched his third bid for fees. On March 18,

2017, McIlwain filed its Motion for Leave to File Out of Time for Attorney Fees and Expenses.

McIlwain's motion outlined the reason(s) for its untimely filing:

- "On January 13, 2017, my paralegal . . . was instructed to file our application [for attorney fees and expenses], but *had a problem logging into the electronic filing system (ECF)* on this matter and attempted to reach me to assist her" but when the paralegal "attempted to reach me *I was unreachable because I was on a winery in Montalcino, Italy*." McIlwain Decl. ¶¶ 3—4 (Dkt. 383-2) (emphases added).

- "When I found out about the log in issue it was too late to get the help from the ECF help desk to file my application for an award of attorney fees and expenses in connection with services rendered in this matter." *Id.* .

- "I am a New Jersey attorney that was filing for the first time in this District Court and contacted the ECF help desk the next business day, which resulted in our filing our [sic] application for fees and expenses on January 17, 2017." *Id.* .

After reviewing McIlwain's papers, this Court rejected McIlwain's third attempt:

> The Court construes Plaintiff Chris Walker's motion for leave to
> file out of time or to be annexed as an exhibit to the settlement
> class counsel's petition [383] as a motion to reconsider the Court's
> previous ruling [338] denying Walker's petition for attorney's fees
> and costs [335, 336]. Because the Court provided notice on July
> 15, 2016, that all petitions for attorney's fees and costs were
> required to be filed by January 13, 2017, the Court finds that
> Walker had more than sufficient time to file the petition and the
> problems that counsel experienced in filing the petition on the final

- 4 -

> day were completely avoidable. The fact that Walker's attorney
> was out of the country on what appears to be a pre-planned trip to a
> winery in Italy and the fact that neither the attorney nor the
> paralegal was familiar with CM-ECF filing system does not
> establish good cause. Rather, because the attorney was aware of
> the mandatory filing deadline, he should have attempted to file the
> petition to accommodate his trip and any unfamiliarity with the
> filing system.

(Dkt. 533). Despite this backdrop reflecting McIlwain's self-inflicted error, McIlwain appeals.

**C.    A delay has real consequences.**

Importantly, any delay has real consequences as it will create additional expenses related to the settlement if McIlwain's appeal lingers and the case is stayed pending appeal. For example, the parties face increased ongoing costs associated with (1) maintaining the settlement website and toll-free number; (2) maintaining the settlement fund escrow account; (3) handling inquiries and calls from class members; and (4) keeping class members informed about the status of the appeals during the appeals period. *See, e.g.,* Ex. 1 to Kurowski Decl. (attaching Administration Services Estimate dated September 5, 2019). In addition, Settlement Class Plaintiffs anticipate additional fixed costs such as (1) updating the toll-free line, and (2) filing an additional tax return. *Id.* These administration costs will range from $11,288 to $52,956 depending on the length of the resolution of McIlwain's appeal. *Id.* Moreover, the costs associated with delay to the medical monitoring program are greater. Garretson estimates that a six-month delay would result in approximately $200,000 in additional costs; a twelve-month delay would result in approximately $370,000 in additional costs. Ex. 2 to Kurowski Decl., (attaching Mulvey Declaration dated September 24, 2019).

## III.    ARGUMENT

**A.    This Court has the discretion under Fed. R. App. P. 7 to require McIlwain to post an appeal bond.**

First, this Court has the authority to require McIlwain to post an appeal bond. *Id.* Appellate Rule 7 provides district courts with the power to enter an order that "require[s] an appellant to file a bond or provide other necessary security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "The award and amount of an appeal bond is within the discretion of the district court." *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700, at *4 (S.D. Ind. Feb. 27, 2013). *See also* Fed. R. App. P. 7, Adv. Comm. Notes (noting the rule leaves "the question of the need for a bond for costs and its amount in the discretion of the [district] court").

**B.    The balance of factors courts weigh in deciding whether to require an appeal bond justify imposing one here.**

Next, the balance of factors that courts consider in determining whether to impose an appeal bond clearly support the Court's exercise of discretion in favor of a bond order. "While the Seventh Circuit has not enumerated a test for when an appeal bond is appropriate, courts generally consider the following factors in determining whether an appeal bond is appropriate: (1) the appellant's financial ability to post a bond, (2) the risk of nonpayment of appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) bad faith or vexatious conduct on the part of the appellants." *Heekin*, 2013 U.S. Dist. LEXIS 26700, at *6 (citing *In re Uponor*, 2012 U.S. Dist. LEXIS 130140, at *2 (D. Minn., Sep. 11, 2012). Each factor supports requiring a bond here.

### 1.    The appeal is meritless.

First, the appeal is meritless. McIlwain received six months of time to file its fee application. On the day of filing, McIlwain waited to see if the ECF log-in would work. *See*

- 6 -

Crawford Decl., ¶¶ 2, 5 (Dkt. 383-4). Then, when McIlwain missed the deadline, it did not follow the procedure under Fed. R. Civ. P. 6(b), Fed. R. Civ. P. 6(b)providing no explanation or basis for the untimely filing. (Dkt. 335–336, 338). Once McIlwain finally presented its basis for the missing the deadline, this Court disagreed that such grounds constituted good cause because problems logging into an ECF account combined with a pre-planned trip to a winery were avoidable problems and did not constitute good cause justifying the delay. (Dkt. 533).

"An appeal is frivolous 'when the result is obvious or when the appellant's argument is wholly without merit.'" *Grove Fresh Distribs., Inc. v. John Labatt, LTD*, 299 F.3d 635, 642 (7th Cir. 2002) (quoting *Spiegel v. Cont'l Ill. Nat'l Bank*, 790 F.2d 638, 650 (7th Cir. 1986)). McIlwain's failure to follow court deadlines and the Federal Rules of Civil Procedure, combined with the discretionary standard applicable to district judges managing their dockets, means that no real path to appellate success exists for McIlwain. Indeed, the Seventh Circuit has found appeals that "rehash[] positions that the district court properly rejected," or that "present[] arguments that are lacking in substance and 'foreordained' to lose" to be frivolous. *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (citations and internal quotation omitted). This Court properly rejected McIlwain's fee request three times and McIlwain's untimely justifications will not carry the day in the Seventh Circuit. As a result, this first factor heavily supports entry of an appeal bond.

2.     **McIlwain presumptively has the financial ability to post a bond.**

Second, unless an appellant demonstrates otherwise, courts presume an appellant's financial ability to post an appeals bond. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010). *See also In re MagSafe Apple Power Adapter Litig.*, No. C 09-01911 JW, 2012 U.S. Dist. LEXIS 88549, at *1 (N.D. Cal. May 29, 2012) (requiring objectors to make themselves available for a deposition on ability to pay, if contested). Furthermore,

- 7 -

McIlwain has billed at hourly rates between $550 and $625 per hour, further supporting a financial ability to pay. *See* McIlwain Decl., ¶ 22 (Dkt. 383-2). This factor supports entry of an appeal bond.

**3.      There is a risk that McIlwain will not pay the costs of an unsuccessful appeal.**

Third, there is a risk that McIlwain will not pay costs after his unsuccessful appeal. McIlwain does not reside in the Seventh Circuit and has not guaranteed to pay costs that might be assessed against it. In such circumstances, a risk of non-payment exists. *See In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, No. 2:11-md-2233, 2014 U.S. Dist. LEXIS 88693, at *16 (S.D. Ohio June 30, 2014) ("The fact that [the appellant] resides in Idaho—outside the jurisdiction of the Sixth Circuit and this Court—is further support for the conclusion that [she] may not pay the appeal costs if her appeal is unsuccessful."); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (finding risk of non-payment factor satisfied given the geographic disbursement of appellant objectors: "Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them. In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs. As a result, there is a significant risk of non-payment."). Furthermore, "the merits of an appeal may be relevant to the risk of nonpayment, 'in that if the appellant is pursuing a clearly frivolous appeal one might infer that the appellant is abusing the judicial process and thus has no intention of paying any costs taxed on appeal.'" *Heekin*, 2013 U.S. Dist. LEXIS 26700, at *6–7 (quoting *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, MDL No. 08-1999, 2010 U.S. Dist. LEXIS 123761, at *19 (E.D. Wis. Nov. 2, 2010)). This factor supports entry of an appeal bond.

4.      **It would not be unreasonable to infer that McIlwain is abusing the judicial process given the lack of merit of the appeal.**

Finally, regarding the factor examining "bad faith or vexatious conduct on the part of the appellants," *Heekin*, 2013 U.S. Dist. LEXIS 26700, at *6, McIlwain's limited involvement in this case does not directly reflect bad faith or vexatious conduct. McIlwain supported the settlement in this case. *See* Declaration of Timothy J. McIlwain in Support of Motion for Leave to File for Fees and Expenses, ¶ 9 (Dkt. 383-2). Its only filings in the Court do not attack the merits of the settlement, instead relating solely to its untimely effort to seek $43,539.25 in fees and $305.45 in costs. *See* Dkt. 335–336, Dkt. 358, Dkt. 361–362, Dkt. 383. But given the meritless and frivolous nature of the appeal, it would not be unreasonable to infer that McIlwain is abusing the judicial process. *See Heekin*, 2013 U.S. Dist. LEXIS 26700, at *6–7 (noting "the merits of an appeal may be relevant to the risk of nonpayment") (citation omitted). Thus, this final factor is neutral, at best.

## C.      **The appeal bond should be set at $432,956.**

Once the Court determines that an appeal bond is appropriate, the Court must determine the appropriate bond amount. As detailed below, Settlement Class Plaintiffs seek a bond that incorporates taxable costs under Fed. R. App. P. 39 as well as the administrative costs caused by delay of settlement implementation.

### 1.      **The Court should include $10,000 in taxable costs under Fed. R. App. P. 39**

First, the bond amount should include an amount of taxable costs under Fed. R. App. P. 39, which Settlement Class Plaintiffs request the Court conservatively set at $10,000. The Federal Rules of Appellate Procedure provide that a district court may tax costs resulting from "(1) the preparation and transmission of the record; (2) the reporters transcript, if needed to determine the appeal; (3) the premiums paid for a supersedeas bond or other bond to preserve

- 9 -

rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e).

Courts routinely approve taxable cost estimates starting at $10,000. *See, e.g., In re Initial Pub.*

*Offering Sec. Litig.,* 728 F. Supp. 2d at 295 ($25,000 in Rule 39(e) costs); *Tenille v. W. Union*

*Co.*, 968 F. Supp. 2d 1107, 1108 (D. Colo. 2013) (including "$25,000 to cover the costs of

printing and copying and preparation of a supplemental record on the appeals"); *In re Currency*

*Conversion Fee Antitrust Litig.*, No. M 21-95, 2010 U.S. Dist. LEXIS 50436, at *5 (S.D.N.Y.

May 21, 2010) (noting $50,000 appeal bond was warranted for Rule 39(e) costs); *Heekin*, 2013

U.S. Dist. LEXIS 26700, at *12 ($15,000.00 in Rule 39(e) costs); *Miletak v. Allstate Ins. Co.*,

No. C 06-03778 JW, 2012 U.S. Dist. LEXIS 125426, at *5 (N.D. Cal. Aug. 27, 2012) ($10,000

in Rule 39(e) costs).

### 2. The Court should include $422,956 in administrative and medical monitoring program costs caused by delay of settlement implementation as well.

Second, the Court should also include $422,956 in the final bond amount to account for

the costs caused by a delay of settlement implementation.

While "[t]he Seventh Circuit has not squarely addressed the issue of whether only Rule

39(e) costs can be secured by an appeal bond under Rule 7," *Heekin*, 2013 U.S. Dist. LEXIS

26700, at *4, other courts have routinely included such costs in planning an appeal bond

amount.[5] In doing so, the courts recognize that "the costs identified in Rule 39(e) are among, but

---

[5] In an unpublished order the Seventh Circuit granted an objector's emergency motion to stay an appeal bond of $121,886 and modified the bond downward to $5,000. *Allen v. J.P. Morgan Chase Bank, NA*, No. 15-3425, 2015 U.S. App. LEXIS 23165, at *2 (7th Cir. Dec. 4, 2015). In doing so, the panel wrote that "[s]pecial problems related to abuse by class action objectors must be handled in other ways, primarily through a motion under Federal Rule of Appellate Procedure 38 for sanctions." *Id.* at *2. However, the order in *Allen* is non-binding as it is unpublished. USCS Ct App 7th Cir, Circuit R 32.1 ("Orders, which are unsigned, are released in photocopied form, are not published in the Federal Reporter, and are not treated as precedents."). Moreover, the special concern about class action objectors is not applicable here

not necessarily the only, costs available on appeal." *Azizian v. Federated Dep't Stores, Inc.*, 499

F.3d 950, 958 (9th Cir. 2007). *See also In re Checking Account Overdraft Litig.*, No. 1:09-MD-

02036-JLK, 2012 U.S. Dist. LEXIS 18384, at *41 (S.D. Fla. Feb. 14, 2012) ("The costs that can

be included in a Rule 7 bond are not, however, limited to costs defined by Rule 39.") (citing

*Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1323 (11th Cir. 2002)). Thus, "[i]n class action

cases . . . bonds are used to cover excess administrative costs that otherwise would not have been

incurred." *Heekin*, 2013 U.S. Dist. LEXIS 26700, at *5 (granting appeal bond with $235,000 for

the additional administrative expense of the delay caused by the appeal). *See also In re N.J. Tax

Sales Certificates Antitrust*, No. 12-1893 (MAS) (TJB), 2017 U.S. Dist. LEXIS 102608, at *15,

*15 (D.N.J. June 30, 2017) (including amount for administrative costs in appeal bond set); *In re

Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 645 (N.D. Ohio 2016) (including

$15,000 to the bond for increased administrative costs); *Tenille*, 968 F. Supp. 2d at 1108

(including $334,620 in bond "to cover increased settlement administration costs of $37,180 per

month for nine months"); *Miletak*, 2012 U.S. Dist. LEXIS 125426, at *6 (including $50,000 in

"administrative costs" incurred in order "to continue to service and respond to class members'

needs pending the appeal."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp.

2d 274, 279 (D. Mass. 2007) (including $61,000 in "administrative costs attributable to delay in

[settlement] distribution").

  While Settlement Class Plaintiffs are working on multiple fronts to minimize and avoid

any delay caused by McIlwain's appeal, the fact remains that the median time from filing of a

notice of appeal to disposition in the Seventh Circuit is currently 8.5 months as of June 30, 2019.

---

as McIlwain supported the settlement, but nevertheless seeks to delay the action through a
meritless appeal.

*See* U.S. Court of Appeals – Federal Court Management Statistics–Profiles for the Period Ending June 30, 2019 *available at* https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_appprofile0630.2019.pdf (last visited Sept. 19, 2019). As a result, Settlement Class Plaintiffs request that the Court include $432,956 in the final bond amount to account for the costs caused by the delay of settlement implementation.

## IV.    CONCLUSION

Settlement Class Plaintiffs request that the Court impose a $432,956 appeal bond (or any other such amount that the Court finds appropriate) and grant Settlement Class Plaintiffs all such other relief as the Court deems necessary and appropriate.

010270-12/1184488 V1

Dated: September 24, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
    Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel.: 206.623.7292
Fax: 206.623.0594
Email: steve@hbsslaw.com

Daniel J. Kurowski
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Tel.: 708.628.4949
Fax: 708.628.4950
Email: dank@hbsslaw.com

Joseph J. Siprut
SIPRUT PC
17 N. State Street, Suite 1600
Chicago, IL 60602
Email: jsiprut@siprut.com

*Settlement Class Counsel*

- 13 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on September 24, 2019, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF electronic filing system, which caused notice to be sent to all counsel of record.

By:     */s/ Steve W. Berman*    
         Steve W. Berman

- 14 -