# EXHIBIT 1



**Administration Services Estimate**
*NCAA Concussion Injury Litigation*
*Supplemental Estimate*
**September 5, 2019**
Daniel Burke; Daniel.Burke@gilardi.com; 415.458.3069

| APPEALS ESTIMATE- MONTHLY TASKS | RESPONSE RATE | QUANTITY | | RATE PER UNIT | | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|---|---|
| **Website Set-up & Maintenance** | | | | | | | |
| -   Updates to Case Website | | 2 | hrs | $100.00 | | $200 | |
| -   Server Space rental | | 1 | mos | $50.00 | | $50 | |
| Sub-total of Website Set-up & Maintenance | | | | | | | $250 |
| **Telephone Support** | | | | | | | |
| -   Script Updates | | 2 | hrs | $100.00 | | $200 | |
| -   Monthly Maintenance Fees | | 1 | mos | $50.00 | | $50 | |
| -   Estimated # of Calls | | 150 | calls | | | | |
|       -   Average Call Duration (minutes) | | 8 | mins | | | | |
|       -   IVR Line Charges | | 1,200 | mins | $0.18 | /min | $216 | |
| -   Projected # of Punchthroughs to Live Operator (% of Calls) | 33% | 50 | calls | | | | |
|       -   Average Call Duration (minutes) | | 8 | mins | | | | |
|       -   IVR Transfer Line Charges | | 400 | mins | $0.18 | /min | $72 | |
|       -   Live Operator Line Charges | | 400 | mins | $1.25 | /min | $500 | |
| Sub-total of Telephone Support | | | | | | | $1,038 |
| **Project Management** | | | | | | | |
| Sub-total of Project Management | | | | | | | $2,500 |
| **One-Time Charges** | | | | | | | |
| -   Update Toll-Free Phone Line (x2 once at start and once when settlement approved) | | | | | | $7,500 | |
| Sub-total of One-Time Charges | | | | | | | $7,500 |
| **Total Estimated Cost if Appeal Lasts 1 Month** | | | | | | | **$11,288** |
| **Total Estimated Cost if Appeal Lasts 6 Months** | | | | | | | **$30,228** |
| **Total Estimated Cost if Appeal Lasts 12 Months** | | | | | | | **$52,956** |

| OTHER SERVICES AND OUT-OF-POCKET EXPENSES | RESPONSE RATE | QUANTITY | RATE PER UNIT | ESTIMATED COST | TOTAL |
|---|---|---|---|---|---|
| Other Services and Ad Hoc Reporting, as needed or requested | | | | (standard hourly rates) | |
| Other Charges and Out-of-Pocket Costs*** | | | | (actual) | |

\*   Estimated Postage and Handling for Mailings Stated Above. Actuals will be based on the quantities mailed.
\*\*  Does not include applicable taxes.
\*\*\* Includes, but is not limited to long distance calls, overnight shipping, photocopies, storage, PO Box rentals, broker fees, etc.

This Class Action Administration Services Estimate and the attached Cost Summary & Scope of Services (together, the "Proposal") are valid for ninety days from 9/5/2019. After such period, KCC reserves the right to amend the Proposal (including, without limitation, by increasing fees and costs) or to withdraw the Proposal in its sole discretion.

All services to be provided to the undersigned (the "Client") and all fees and costs set forth in the Proposal are subject to the terms, specifications, assumptions and conditions set forth in the Proposal and the attached Terms and Conditions (the "Terms of Service").

KCC Class Actions Services, LLC

BY: _____   DATE: _____

TITLE: _____


Hagens Berman Sobol Shapiro LLP

BY: _____   DATE: _____

TITLE: _____



# TERMS AND CONDITIONS

All services to be provided by KCC Class Action Services, LLC (together with its affiliates, "KCC"), including services provided to Client as set forth in the attached Proposal, are subject to the following Terms and Conditions:

**1. SERVICES**. KCC agrees to provide the services set forth in the Proposal attached hereto (the "Services"). Capitalized terms not otherwise defined herein have the meanings given to such terms in the Proposal. KCC will often take direction from Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to the Services. The parties agree that KCC may rely upon, and Client agrees to be bound by, any direction, advice or information provided by the Client Parties to the same extent as if provided by Client. Client agrees and understands that KCC shall not provide Client or any other party with any legal advice.

**2. PRICES, CHARGES AND PAYMENT**. KCC agrees to charge and Client agrees to pay, subject to the terms herein, KCC for its fees and charges as set forth in the Proposal. Client acknowledges that any estimate in the Proposal is based on information provided by Client to KCC and actual fees and charges may vary depending on the circumstances and length of the case. Notwithstanding the foregoing, where total charges are expected to exceed $10,000 in any single month, KCC may require advance payment from Client due and payable upon demand and prior to the performance of services. KCC's prices are inclusive of commission and other charges and are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any such increase exceeds 10%, KCC will give thirty (30) days written notice to Client. Client agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with Services, including, but not limited to, transportation, lodging, and meals.

KCC agrees to submit its invoices to Client and Client agrees that the amount invoiced is due and payable upon receipt. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Client further agrees to pay a late charge (the "Finance Charge"), calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, Client shall give written notice to KCC within twenty (20) days of receipt of the invoice by Client. Client agrees the Finance Charge is applicable to instances where KCC agreed to provide certain pre-settlement work while deferring the billing of said work until the settlement phase.

**3. FURTHER ASSURANCES**. Client agrees that it will use its best efforts to include provisions reasonably acceptable to KCC in any relevant court order, settlement agreement or similar document that provide for the payment of KCC's fees and expenses hereunder. No agreement to which KCC is not a party shall reduce or limit the full and prompt payment of KCC's fees and expenses as set forth herein and in the Proposal.

**4. RIGHTS OF OWNERSHIP**. The parties understand that the software programs and other materials furnished by KCC to Client and/or developed during the course of the performance of Services are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished to Client. Fees and expenses paid by Client do not vest in Client any rights in such property, it being understood that such property is only being made available for Client's use during and in connection with the Services provided by KCC.

**5. CONFIDENTIALITY**. Each of KCC and Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information. These provisions shall survive termination of Services. KCC will not accept, and Client agrees not to send, any information that may be deemed protected health information under state or federal law without the consent of the data subjects or pursuant to the terms of an agreed qualified protective order entered by a court of competent jurisdiction.

**6. BANK ACCOUNTS**. At Client's request, KCC shall be authorized to establish accounts with financial institutions as agent for Client or as otherwise agreed by the parties. All Client accounts established by KCC shall be deposit accounts of commercial banks with capital exceeding $1 billion and an FIR rating of above Investment Grade or higher (each, an "Approved Bank"). Notwithstanding the foregoing, the parties may utilize any financial institution or electronic payment service provider specified in the Proposal in connection with the services to be provided hereunder, or as otherwise agreed to in writing, which institution or provider will be deemed an Approved Bank. In some cases, KCC may derive financial benefits from financial institutions resulting from settlement funds and other moneys on deposit or invested with them including, for example, discounts provided on certain banking services and service fees. The amounts held pursuant to these Terms and Conditions ("Amounts Held") are at the sole risk of Client and, without limiting the generality of the foregoing, KCC shall have no responsibility or liability for any diminution of the fund that may result from any deposit made with an Approved Bank including any losses resulting from a default by the Approved Bank or other credit losses. It is acknowledged and agreed that KCC will have acted prudently in depositing the fund at any Approved Bank, and KCC is not required to make any further inquiries in respect of any such bank.

**7. TERMINATION**. The Services may be terminated by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to Client, (ii) the failure of Client to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services where KCC reasonably believes it will not be paid. Termination of Services shall not relieve Client of its obligations to pay all fees and expenses incurred prior to such termination.

In the event that the Services are terminated, regardless of the reason for such termination, KCC shall reasonably coordinate with Client to maintain an orderly transfer of data, programs, storage media or other materials furnished by Client to KCC or received by KCC in connection with the Services. Client agrees to pay for such services in accordance with KCC's then existing prices for such services.

**8. LIMITATIONS OF LIABILITY AND INDEMNIFICATION**. Client shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance of Services. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. Client shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that Client becomes aware of with respect to the Services provided by KCC.

Except as provided herein, KCC's liability to Client or any person making a claim through or under Client or in connection with Services for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability for any Losses, whether direct or indirect, arising out of the Services exceed the greater of (i) the total amount billed and paid by or through Client for the Services and (ii) solely in the event of any loss of the Amount Held caused by KCC's gross negligence or willful misconduct, the total Amount Held under Section 6. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the Services. Except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. The provisions of this Section 8 shall survive termination of Services.

**9. FORCE MAJEURE**. Whenever performance hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond the performing party's reasonable control, then such performance shall be excused and shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**10. INDEPENDENT CONTRACTORS**. KCC is and shall be an independent contractor of Client and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of the Services or these Terms and Conditions.

**11. NOTICES**. All notices and requests hereunder shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth in the Proposal or to such other address as the party to receive the notice or request so designates by written notice to the other.

**12. APPLICABLE LAW**. These Terms and Conditions will be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice of law principles.

**13. ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY; BINDING EFFECT**. These Terms and Conditions, together with the Proposal delivered pursuant hereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersede all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any provision herein shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. These Terms and Conditions may be modified only by a written instrument duly executed by the parties. All of the terms, agreements, covenants, representations, warranties and conditions of these Terms and Conditions are binding upon, and inure to the benefit of and are enforceable by, the parties and their respective successors and permitted assigns.