# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION | MDL NO. 2492<br>Master Docket No. 1:13-cv-09116<br>This Document Relates To:<br>All Cases<br>Judge John Z. Lee<br>Magistrate Judge M. David Weisman |

## THE NCAA'S RESPONSE TO PLAINTIFFS' MOTION TO RESET THE EFFECTIVE DATE

Defendant National Collegiate Athletic Association ("NCAA") respectfully submits the following response to the motion of Settlement Class Plaintiffs ("Plaintiffs") to reset the Effective Date:[1]

## I. INTRODUCTION

In their motion, Plaintiffs ask the Court to reset the Effective Date of the Settlement Agreement to September 26, 2019, notwithstanding the express terms of the Settlement Agreement and the pending appeal by counsel for Plaintiff Dan Ahern, McIlwain LLC ("McIlwain"). In so doing, Plaintiffs are asking the Court to ignore the terms previously agreed to and to, instead, rewrite the Settlement Agreement itself.

The Settlement Agreement unambiguously states that the Effective Date occurs following the resolution of <u>all</u> appeals. See Second Am. Settlement Agt. (Dkt. #558-1) § XIV. As Plaintiffs do not and cannot dispute, the Settlement Agreement does <u>not</u> include a carve-out for

---

[1] Unless otherwise defined, capitalized terms have the meaning ascribed to them in the Settlement Agreement, which is Exhibit 1 to the Amended Final Order and Judgment Approving the Second Amended Class Action Settlement ("Amended Final Order") issued by the Court on August 19, 2019. See Second Am. Settlement Agt. (Dkt. #558-1).

appeals relating to attorneys' fees only. Nor does it include a carve-out for appeals that may not or likely will not result in a material modification of the Settlement. Moreover, whether or not the pending appeal will result in a modification of the Settlement Agreement will not be certain until the appeal is resolved. For these reasons and as set forth more fully below, Plaintiffs' motion should be denied.

## II. FACTUAL BACKGROUND

Negotiations over what ultimately became the Settlement Agreement commenced in August of 2013 and entailed five (5) mediation sessions before two different mediators. See Pls.' Mem. in Supp. of Mot. for Prelim. Approval (Dkt. #65) at 13-14; Phillips Decl. (Dkt. #67) ¶ 5; Andersen Decl. (Dkt. #68) ¶ 5; NCAA's Mem. in Supp. of Joint Mot. for Prelim. Approval of Second. Am. Class Settlement Agt. (Dkt. #268) at 1. Those sessions occurred in at least three (3) different locations and included not only the NCAA and Plaintiffs' counsel but also counsel for various of the NCAA's insurance carriers. See Pls.' Mem. in Supp. of Mot. for Prelim. Approval (Dkt #65) at 13-14.

The terms of the Settlement Agreement were finalized on May 20, 2016, almost three (3) years after negotiations had begun.[2] See Joint Mot. for Prelim. Approval of Second. Am. Class

---

[2] While the Second Amended Settlement Agreement was finalized on May 20, 2016, many of the terms remained unchanged from the initial settlement agreement that was submitted for preliminary approval on July 29, 2014. See Pls.' Mot. for Prelim. Approval (Dkt. #64-1). Since initially entering into the settlement agreement in 2014, however, the NCAA has been diligently working to utilize guidelines established by a broad interdisciplinary group of industry experts for purposes of developing and periodically updating a checklist of suggested concussion management practices for member institutions, relying most recently (July 2019) on the expertise of the Interassociation Concussion Advisory Group ("ICAG"), which coincidentally includes three members of the MSC, namely (1) Dr. Robert Cantu, (2) Dr. Ruben Echemendia and (3) Dr. Brian Hainline. See Spellman Decl., Ex. A hereto, ¶ 2; see also Mem. Op. and Order (Dkt. #522) at 9. The aforementioned checklist has been developed and updated separate and apart from the NCAA's obligations under the Settlement Agreement. See Spellman Decl., Ex. A hereto, ¶ 2. The requirements of the checklist, however, overlap to a substantial degree with the injunctive

2

Settlement Agt. (Dkt. #266). The terms of the Settlement Agreement were <u>extensively</u> negotiated and carefully scrutinized by the Parties as well as by the NCAA's insurance carriers, who ultimately agreed to bear substantial responsibility for the funding of the Settlement. See Phillips Decl. (Dkt. #67) ¶¶ 1, 5, 10; Andersen Decl. (Dkt. #68) ¶¶ 1, 5, 10; Mem. Op. and Order (Dkt. #552) at 3; Second Am. Settlement Agt. (Dkt. #558-1) § IV(A)(1)(a).

### III. ARGUMENT

As addressed in detail below, the Settlement Agreement leaves no doubt whatsoever that the Effective Date does not occur until any and all appeals have been resolved, including the appeal of McIlwain. See disc. infra at 3–8.

**A. Under The Clear Language Of The Settlement Agreement, The Effective Date Will Not Occur Until The Resolution Of McIlwain's Appeal**

The Settlement Agreement plainly and unambiguously states that the Effective Date does not arise until <u>all</u> appeals have been resolved. Indeed, the Settlement Agreement could not be more clear on that point:

> A. The Settlement provided for in this Agreement shall be final and unconditional fourteen (14) Days after all of the following conditions have been satisfied or waived (<u>i.e.</u>, the Effective Date):

\* \* \* \*

---

requirements of the Settlement Agreement. <u>See</u> id. ¶ 3. Since the injunctive requirements of the Settlement Agreement were agreed upon more than five (5) years ago, the state of medical knowledge has progressed considerably. <u>See</u> id. ¶ 4. This progress has resulted in the additional review of and updates to the checklist, which have created minor differences between the checklist and the Settlement Agreement. These differences have been the principal focus of the discussions between the parties and Judge Andersen since the filing of Plaintiffs' motion. <u>See</u> id. It is nevertheless important to note that the checklist already developed, which represents a consensus of the ICAG, will remain in full force and effect during the pendency of the existing appeal. <u>See</u> id. ¶ 5.

6. Expiration of Appeal Periods and/or Resolution of <u>All</u> Appeals.

   A. If no appeal is taken from a court order or judgment, the date after the time to appeal therefrom has expired; or

   B. If <u>any</u> appeal is taken from a court order or judgment, the date after <u>all</u> appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom has expired, in a manner resulting in an affirmance without material modification of the relevant order or judgment.

Second Am. Settlement Agt. (Dkt. #558-1) § XIV (emphasis supplied). As such, the Effective Date does not occur until after resolution of <u>all</u> appeals, including McIlwain's pending appeal. See <u>id.</u>; Notice of Appeal, <u>McIlwain, et al. v. NCAA, et al.</u>, Case No. 19-2638 (7th Cir., filed Aug. 26, 2019). And the suggestion by Plaintiffs that the Effective Date should be reset to September 26, 2019 is unwarranted and contrary to the terms agreed to by the parties and their counsel.[3]

Given the plain, unambiguous language of the Settlement Agreement, Plaintiffs' motion should be denied. <u>See</u>, <u>e.g.</u>, <u>In re Trans Union Corp. Privacy Litig.</u>, 741 F.3d 811, 818 (7th Cir.

---

[3] In their motion, Plaintiffs incorrectly suggest that the Effective Date would be September 26, 2019 if there were no appeal. See Pls.' Mot. (Dkt. #563) at 1, 4 n.2. Under the Settlement Agreement, however, the earliest the Effective Date could possibly occur is fourteen (14) days after the time to appeal has expired. See Second Am. Settlement Agt. (Dkt. #558-1) § XIV(A). On August 19, 2019, the Court granted the motion of Class Counsel for clarification and issued the Amended Final Order, restarting the 30-day appeal period. See Minute Order (Dkt. #557); Amended Final Order (Dkt. #558); Fed. R. App. P. 4(a)(4)(A)(iv)-(vi). The case on which Plaintiffs rely in asserting that the Amended Final Order does not affect the Effective Date is no longer controlling authority, as a 1993 amendment to Fed. R. App. P. 4 clarified that a timely-filed Rule 60 motion for a correction based on clerical mistake tolls the time for filing an appeal. See Fed. R. App. P. 4 advisory committee's notes to 1993 amendment; <u>Martinez v. City of Chicago</u>, 499 F.3d 721, 725 (7th Cir. 2007) ("Once the Rule 59(e) [or timely Rule 60] motion has been ruled on, the thirty-day appeal clock begins to run.") (internal citations omitted); Pls.' Mot. (Dkt. #563) at 4 n.2. Thus, under the terms of the Settlement Agreement, the Effective Date would have been October 2, 2019 in the absence of any appeal (<u>i.e.</u>, fourteen (14) days after the deadline to appeal the Amended Final Order). See Second Am. Settlement Agt. (Dkt. #558-1) § XIV(A)(6).

2014) ("For purposes of applying the settlement, the meaning agreed upon by the parties and approved by the district court is the one that counts."); Southeast & Sw. Areas Pension Fund v. Art Pape Transfer, 881 F. Supp. 1168, 1172 (N.D. Ill. 1995) ("When the terms of a [settlement agreement] are clear and certain, the [settlement agreement] itself is the only proper evidence of the parties' intent, and the court may not infer that intent which is contrary to the [settlement agreement's] obvious meaning."); May v. Mitchell, 2014 WL 4455032, at *3 (N.D. Ill. 2014) ("The court must enforce the terms of the clear and unambiguous terms of the settlement agreement as agreed to by both parties in open court.").[4]

### B. The Definition Of Effective Date In The Settlement Agreement In This Matter Does Not Contain A Carve Out For Appeals Relating To Fees, Unlike Other Settlement Agreements In Other Matters

As detailed above, the Parties reached agreement on the terms of the Settlement Agreement, including the definition of Effective Date, after extensive, careful, deliberate and detailed negotiations and with due regard for the interests of the NCAA as well as its insurance carriers, who are responsible for funding a significant portion of the Settlement Agreement. See Phillips Decl. (Dkt. #67) ¶¶ 1, 5, 10; Mem. Op. and Order (Dkt. #552) at 3; Second Am. Settlement Agt. (Dkt. #558-1) § XX(A)(1) (addressing the role of the NCAA's insurers in funding). There is, however, no carve out from the Settlement Agreement's definition of Effective Date for appeals relating to attorneys' fees (or any other type of appeal). See Second Am. Settlement Agt. (Dkt. #558-1) XIV(A)(6)(b).

---

[4] In an effort to resolve the issues presented in the instant motion, the NCAA and Plaintiffs' counsel have engaged in negotiations overseen by Judge Andersen. To date, those discussions have not resulted in a resolution acceptable to all relevant parties. See Spellman Decl., Ex. A hereto, ¶ 6. The NCAA, of course, remains willing to continue discussions with Judge Andersen, with the goal of reaching a resolution that facilitates interim funding of the Program Administrator, Garretson Resolution Group and the MSC, so as to avoid any unnecessary disruptions during the pending of the existing appeal.

Had the Parties intended to carve out appeals relating only to attorneys' fees from the conditions necessary for the Effective Date to occur, they could have certainly done so. Indeed, Class Counsel have routinely done so in the past, including in other actions involving the NCAA's counsel in this matter. See, e.g., Settlement Agt. (Dkt. #330-1) § XIII(C), In re Aurora Dairy Corp. Organic Milk Mktg. and Sales Practices Litig., Case No. 4:08-md-01907 (E.D. Mo. 2013) ("[A]ny order or proceedings relating to the applications for Attorneys' Fees and Expenses and Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of Judgment approving the Agreement and the Settlement."); see also, e.g., Settlement Agt. (Dkt. #88) § 1.10, In re Austin Capital Mgmt., Ltd., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig., Case No. 1:09-md-02075 (S.D.N.Y. 2012) ("[A]n 'appeal' shall not include any appeal that concerns only the issue of attorneys' fees and expenses or the Plan of Allocation of the Settlement Fund. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of allocation and/or application for attorneys' fees, costs, or expenses shall not in any way delay or preclude the Judgment from becoming Final."); Stip. and Agt. of Settlement (Dkt. #129-1) § 1(o), Ross v. Reserve Mgmt. Co., Case No. 1:08-cv-10261 (S.D.N.Y. 2015) ("[A]ny disputes or appeals relating solely to amount, payment or allocation of attorneys' fees and expenses shall have no effect on finality for purposes of determining the date on which the Order and Final Judgment becomes Final."); Stip. and Agt. of Settlement (Dkt. #103) § 17, In re Oppenheimer Champion Fund Sec. Fraud Class Actions, Case No. 1:09-cv-00386 (D. Colo. 2011) ("[A]ny decision by the District Court concerning attorneys' fees, allocation, or expenses shall not affect the validity or finality of the Settlement."). The Parties in this case, however, did not agree to such a carve-out, and one cannot be and should not be read

6

into the Settlement Agreement now.[5]  See, e.g., In re Trans Union Corp. Privacy Litig., 741 F.3d at 818.

> C. Contrary To Plaintiffs' Suggestion, The Definition Of Effective Date In The Settlement Agreement Does Not Apply Only To Appeals That Could Result In A "Material Modification" Of The Settlement Itself

In their motion, Plaintiffs incorrectly assert that under the Settlement Agreement, only appeals that may result in a "material modification" of the Final Order and Judgment will or should impact the Effective Date.  See Pls.' Mot. (Dkt. #563) at 2.  In so doing, however, Plaintiffs misconstrue the plain language of the Settlement Agreement, which states that if "any appeal is taken from a court order or judgment," the Effective Date may only occur following the "date after all appeals therefrom . . . have been finally disposed of . . . in a manner resulting in an affirmance without material modification of the relevant order or judgment."  See Second Am. Settlement Agt. (Dkt. #558-1) § XIV (emphasis supplied).  Indeed, Section XIV clearly provides that all appeals must be "finally disposed of" for the Effective Date to occur.  See id.

The Parties obviously could have drafted the Settlement Agreement to provide that only appeals which could result in a material modification of the Settlement would impact the Effective Date.  See, e.g., Settlement Agt. (Dkt. #66-1) § 9, Burrows v. Purchasing Power, Case No. 1:12-cv-22800 (S.D. Fla. 2013) ("Notwithstanding any other provision of this Settlement Stipulation, any order of the Court regarding the Fee and Expense Application, the incentive award to the Plaintiff set out in Paragraph 15, the Plan of Allocation, and/or any appeal from any such order(s), is neither material to, nor part of the Settlement set forth in this Agreement, and shall not operate to terminate or cancel this Agreement, or affect or delay the Judgment

---

[5] In this matter, such a carve out was not included, in part because of the participation of the NCAA's insurance carriers and the role of those carriers in providing funding for the Settlement.  See Second Am. Settlement Agt. (Dkt. #558-1) § IV(A)(1)(a).

approving this Agreement and the Settlement of the Litigation set forth herein from becoming Final."). Again, however, the parties chose not to do so and, instead, specified "all appeals" must be resolved for the Effective Date to occur. See Second Am. Settlement Agt. (Dkt. #558-1) § XIV. Thus, whether or not McIlwain's appeal could result in a material modification of the Settlement Agreement has no effect on the Effective Date.[6]

## IV. CONCLUSION

For the foregoing reasons, the NCAA respectfully requests that the Court deny the pending motion and grant such further relief as it deems appropriate.

Dated: October 8, 2019

Respectfully submitted,

*/s/ Mark S. Mester*
Mark S. Mester, one of the attorneys for
Defendant National Collegiate Athletic Association

---

[6] Plaintiffs argue that McIlwain's appeal does not challenge the merits of the Settlement Agreement, and therefore, there is supposedly no risk whatsoever that the outcome of the appeal could result in a material modification of the Settlement Agreement. As set forth above, however, the Effective Date does not carve out appeals that could not result in a material modification of the Settlement Agreement. See disc. supra at 7–8. Moreover, it is by no means certain that the Seventh Circuit panel assigned to hear the case would not sua sponte take the opportunity to review any other aspect of the Final Order and Judgment, including the Court's decision to grant Final Approval. See Curry v. Beatrice Pocahontas Coal, 67 F.3d 517, 522 n.8 (4th Cir. 1995) ("The normal rule of course is that failure to raise an issue for review in the prescribed manner constitutes a waiver," but "the rule is not an absolute one and review may proceed (even completely sua sponte) when the equities require"); Nuelsen v. Sorensen, 293 F.2d 454, 462 (9th Cir. 1961) ("Exceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below."). While Plaintiffs assert that they would escrow the amount sought by McIlwain in its appeal and that this should alleviate any risk to the NCAA or its insurers (see Settlement Class Pls.' Mot. (Dkt. #563) at 5), an escrow fund would not alleviate the risk posed by the possibility that the appeal could result in a material modification of the Settlement Agreement.

Mark S. Mester – Bar No. 6196140
  mark.mester@lw.com
Johanna Spellman – Bar No. 6293851
  johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

# CERTIFICATE OF SERVICE

I, Mark S. Mester, certify that on October 8, 2019, a true and correct copy of the foregoing THE NCAA'S RESPONSE TO PLAINTIFFS' MOTION TO RESET THE EFFECTIVE DATE was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

                                                   */s/ Mark S. Mester*
                                                   Mark S. Mester – Bar No. 6196140
                                                     mark.mester@lw.com
                                                 LATHAM & WATKINS LLP
                                                 330 North Wabash Avenue, Suite 2800
                                                 Chicago, Illinois, 60611
                                                 Telephone:  (312) 876-7700
                                                 Facsimile:  (312) 993-9767