UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION LITIGATION** | MDL NO. 2492<br>Case No. 13-cv-09116<br><br>Judge John Z. Lee<br><br>Magistrate Judge Weisman |

**SETTLEMENT CLASS PLAINTIFFS' RESPONSE TO SHOW CAUSE ORDER AND CONTINGENT REPLY IN SUPPORT OF MOTION FOR IMPOSITION OF APPEAL BOND AGAINST APPELLANT McILWAIN, LLC/TIMOTHY J. McILWAIN**

Settlement Class Plaintiffs, by and through Settlement Class Counsel, and as their combined Response to Show Cause Order and Contingent Reply in Support of Motion for Imposition of Appeal Bond Against Appellant McIlwain, LLC/Timothy J. McIlwain, hereby state the following:

**I. RESPONSE TO THE COURT'S OCTOBER 28, 2019 RULE TO SHOW CAUSE ORDER**

On October 25, 2019, the Court of Appeals for the Seventh Circuit granted Settlement Class Plaintiffs' Motion for Summary Disposition of the appeal filed by McIlwain, LLC/Timothy J. McIlwain ("McIlwain"), summarily and completely affirming the judgment of this Court. *See generally* Ex. 1. In granting summary disposition, the three-judge panel adopted Settlement Class Plaintiffs' position before the Seventh Circuit and held that this Court, "in its thorough and well-reasoned orders, did not abuse its discretion when denying attorney McIlwain's motions for leave to file an untimely petition for attorney's fees and costs." *Id.* at *2.

Following the Seventh Circuit's Order, this Court directed Settlement Class Plaintiffs and McIlwain to file a response to the Court's show cause order why Settlement Class Plaintiffs' motion for the imposition of an appeal bond (Dkt. 565) should not be stricken as moot. Dkt. 574.

- 1 -

Ordinarily, Settlement Class Plaintiffs would agree that the Seventh Circuit's dismissal of the appeal would moot their request for an appeal bond. *See, e.g.*, *In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, No. 1658 (SRC), 2016 U.S. Dist. LEXIS 124726, at *79 (D.N.J. Sept. 14, 2016) (denying motion for appeal bond as moot as it applied to one objector to a class action settlement where that objector's appeal was been dismissed by the Third Circuit"); *Ariz. Med. Billing Inc. v. FSIX LLC,* No. CV-17-04742-PHX-SPL, 2019 U.S. Dist. LEXIS 153078, at *3 (D. Ariz. Sept. 9, 2019) (denying defendants' motion for appeal bond as moot following the voluntary dismissal of the plaintiff's appeal by the United States Court of Appeals for the Ninth Circuit). In this situation, Settlement Class Counsel ordinarily would voluntarily seek to withdraw the bond motion.

However, in the absence of adequate, enforceable representations from McIlwain that he will not continue his quixotic appellate efforts, striking the bond motion now would be premature. Should McIlwain persist in his appellate efforts, the appeal and administrative costs identified by Settlement Class Plaintiffs would remain in controversy, and that the need for an appeal bond would remain needed to protect the Settlement Class Members' rights, including as further described below.

## II. CONTINGENT REPLY IN SUPPORT OF MOTION FOR IMPOSITION OF APPEAL BOND

In the event that McIlwain persists in his appeal, Settlement Class Plaintiffs submit the following contingent reply in support of their motion for an appeal bond.

### A. Introduction

Despite efforts by Settlement Class Plaintiffs and Counsel across multiple fronts, a lingering appeal filed by McIlwain will delay the prompt implementation of the medical monitoring program and other settlement relief, particularly given the position that the NCAA

has taken on the effective date dispute before this Court. McIlwain's unwarranted quest for approximately $40,000 in fees and costs has real consequences. A lingering appeal—in a case where no substantial question regarding the outcome of the appeal exists—will create costs tenfold the amount McIlwain seeks, diverting funds that would otherwise directly benefit class members.

In responding to Settlement Class Plaintiffs' motion for entry of a bond, McIlwain ignores the cost of his delay. Instead, he offers arguments that mirror those considered and rejected by district courts across the country. On top of this, McIlwain's own response furthers Settlement Class Plaintiffs' case for a bond. While McIlwain declares that "it is highly unlikely that the taxable costs would exceed McIlwain's ability to repay," McIlwain undermines this uncertain statement by declaring that his ability to post a bond is "extremely limited." Such averments highlight an acute need for an appeal bond since such bonds protect appellees against the risk of non-payment by an unsuccessful appellant. McIlwain is already an unsuccessful appellant and by McIlwain's own statements, a real risk of non-payment exists here should McIlwain continue with an appeal. This risk, combined with the Seventh Circuit's summary disposition of McIlwain, confirms that this Court should exercise its discretion to require an appeal bond in the event that McIlwain further pursues appellate activity.

**B.     ARGUMENT**

    **1.     Courts across the country include administrative costs in setting bond amounts.**

In seeking a bond that includes the appeal along with specifically identified administrative costs, Settlement Class Plaintiffs tread no new ground nor ask for novel relief. Instead, their request follows many cases in which courts across the country, including within the Seventh Circuit, have included such costs in a bond. *See* Dkt. 565 at pp.10–11 (collecting cases).

- 3 -

In response, McIlwain cites a single, non-binding case, *In re Navistar Diesel Engine Prods. Liab. Litig.*, No. 2223, 2013 U.S. Dist. LEXIS 113111, at *10 (N.D. Ill. Aug. 12, 2013). For multiple reasons, McIlwain's limited response is not persuasive and serves as no bar preventing this Court from exercising its discretion to include administrative costs in the bond amount.

First, the *Navistar* court declined to include administrative costs because it respectfully declined to "find the decisions persuasive." *Id.* But the *Navistar* court conceded that a number of district courts have required appellants to post a bond in an amount sufficient to cover administrative costs that a party otherwise would not have incurred, it just didn't agree with them. *Id.* at *10 (citing *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP, 2013 U.S. Dist. LEXIS 26700, at *1 (S.D. Ind. Feb. 27, 2013) (collecting cases); *In re Uponor, Inc. F1807 Plumbing Fittings Products Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 U.S. Dist. LEXIS 130140, at *1 (D. Minn. Sept. 11, 2012)). Thus, neither McIlwain nor *Navistar* counter the fact that many cases have included entry of administrative costs as part of an appellate bond. Notwithstanding *Navistar,* it remains Settlement Class Plaintiffs' position that it would be an appropriate exercise of the Court's discretion to include such costs here, particularly in the absence of binding precedent from the Seventh Circuit. *Cf. In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x 53, 61 (3d Cir. 2014) (evaluating the district court's determination that "administrative costs could be secured by a Rule 7 bond" and opining "[w]e do not find that determination to be in error").

Additionally, again citing *Navistar,* McIlwain incorrectly contends that "**Rule 7 is not intended to authorize a court to impose a bond in order to deter or prevent an appeal**." Resp. at 4 (emphasis in original). But Rule 7 bonds *can* be used to deter *frivolous* appeals. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d at 638 ("Appeal bonds also serve to

- 4 -

discourage frivolous appeals.") (citing *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002)). Moreover, appeal bonds serve "to protect the rights of appellees brought into appeals courts by [the] appellants." *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998). Here, an appeal bond that includes administrative costs will protect such rights.

> **2.     McIlwain's response confirms that the balance of factors clearly favor a bond.**

Agreeing that a four-factor test applies, McIlwain offered a handful of additional non-persuasive challenges against a bond. As reflected below, the balance of factors courts consider in determining whether to impose an appeal bond clearly support the Court's exercise of discretion in favor of a bond order. Such an exercise of discretion is now particularly appropriate given the Seventh Circuit's Order summarily affirming this Court's Final Order and Judgment.

> **a.     The lack of merits of the appeal heavily support entry of a bond.**

First, regarding the merits of the appeal, there are no merits to an appeal by McIlwain and this factor weighs significantly in favor of a bond here. In summarily affirming the Court's Final Order and Judgment, the Seventh Circuit did so because the position of Settlement Class Plaintiffs was "'so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists.'" Ex. 1 at 2 (quoting *Williams v. Chrans*, 42 F.3d 1137, 1139 (7th Cir. 1994)). Thus, after carefully reviewing the final order of this Court, the record on appeal, and the motion papers, the Seventh Circuit concluded that this Court, "in its thorough and well-reasoned orders, did not abuse its discretion when denying attorney McIlwain's motions for leave to file an untimely petition for attorney's fees and costs."

In any event, McIlwain contends that "there was no prejudice to any party by McIlwain's slight delay" and that "McIlwaine's [*sic*] appeal can hardly be ruled to be either frivolous, vexatious, or brought in bad faith." Resp. at 7. Here, McIlwain appeals because he missed the

- 5 -

010270-12/1203249 V2

filing deadline to file his fee application. Dkt. 383-4. Then, when McIlwain missed the deadline, he did not follow the procedure under Fed. R. Civ. P. 6(b), providing no explanation or basis for the untimely filing. Dkt. 335–336, 338. Once McIlwain finally presented his basis for the missing the deadline, this Court disagreed that such grounds constituted good cause because problems logging into an ECF account combined with a pre-planned trip to a winery were avoidable problems and did not constitute good cause justifying the delay. Dkt. 533. Thus, the relevant question focused on whether good cause existed to justify the delay (none existed). And while McIlwain claims that no prejudice resulted from his untimely filing in an effort to buttress the weak merits of his appeal, such prejudice at the time of his error is irrelevant here.[1] The prejudice under consideration now is that to the appellees due to being called before the appellate court because of McIlwain's appeal. *See, e.g., Meta v. Target Corp.,* No. 4:14 CV 832, 2018 U.S. Dist. LEXIS 229151, at *3 (N.D. Ohio Sept. 24, 2018) (noting that "the delay in executing the settlement that will be caused by the appeal will significantly impede the Plaintiff and other class member's relief" and imposing $80,000 bond to ensure payment of costs, including administrative costs caused by the delay in administrating the settlement on appeal); *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 U.S. Dist. LEXIS 162710, at *11–12 (E.D. Pa. Dec. 3, 2015) (recognizing that "to significantly delay receipt by the other Class members of their settlement benefits—while causing the Class to incur substantial additional costs without some guarantee that those costs, if taxed, will be recoverable—weighs heavily in favor of requiring a bond for the full amount sought by the Class"). The absence of merits of the appeal heavily

---

[1] While irrelevant for purposes of the motion before the Court, Settlement Class Plaintiffs dispute McIlwain's "no prejudice to any party" contention. Settlement Class Plaintiffs reserve all such arguments in opposition to such a contention.

support a bond here, particularly as illuminated by the Seventh Circuit in its Order summarily affirming this Court's judgment.

### b. McIlwain's purported inability to post a bond.

Next, McIlwain avers that his "ability to post a bond is extremely limited" citing to a purported 2018 tax return that reportedly shows $31,000 in income. Resp. at 5. But Settlement Class Plaintiffs have not seen this exhibit.[2] In any event, McIlwain's cursory income statement parallels that considered and rejected by the district court in Marty v. Anheuser-Busch Cos., *No. 13-11* (S.D. Fla. Feb. 2 2016). In *Marty*, the district court imposed an appeal bond, notwithstanding the appellant's declaration "that he does not have the financial means to pay a large bond." Cos., *supra*. As the court described:

> With respect to his financial ability, Mr. Muller attests:
>
>> 3. . . . I do not presently have the ability to qualify for, pay for or post an appeal bond in the amount of $10,000.00 nor do I have the ability to pay for and post an appeal bond in the amount of $5,000.00—Plaintiffs' estimated taxable costs.
>>
>> 4. I am currently self-employed and live pay check to pay check, leaving little or no discretionary income.

*Id.* The court rejected such a declaration as "conclusory and unhelpful to the Court's assessment of Mr. Mueller's ability to post a bond." *Id. See also In re N.J. Tax Sales Certificates Antitrust*, Civil Action No. 12-1893 (MAS) (TJB), 2017 U.S. Dist. LEXIS 102608, at *12 (D.N.J. June 30, 2017) ("Davies next argues that she is unable to pay for bond premiums . . . Davies, however, fails to proffer documentation related to her ability to pay for the bond. Based on Davies's failure

---

[2] Mr. McIlwain purports to reference that this document was filed under seal. Resp. at 5. But no such under seal entry was entered on the docket, nor did McIlwain serve a courtesy copy on counsel. Even if submitted, citation to purported 2018 income in an October 2019 response brief raises more questions than answers.

to submit sufficient documentation, the Court finds that Davies is able to afford a bond of some amount.") (internal citation omitted). Here, McIlwain's statement fares no better, he states (without a declaration or other evidence) that he has an "extremely limited" ability to post an appeal bond due to $31,000 in income in 2018. McIlwain's failure to submit sufficient documentation supports a bond here.

### c. The risk that McIlwain cannot or will not pay supports a bond.

Finally, McIlwain's averment that his ability to post a bond is "extremely limited" *supports* posting of a bond. McIlwain's statement bleeds into the second factor, the risk of non-payment if the appeal is unsuccessful. One purpose of an appeal bond is "to protect the rights of appellees brought into appeals courts by [the] appellants." *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998). *See also United States ex rel. Ryan v. Endo Pharm., Inc.*, CIVIL ACTION No. 05-3450, 2014 U.S. Dist. LEXIS 118617, at *6 (E.D. Pa. 2014) ("The purpose of appellate bonds is to protect the appellee against the risk of non-payment by an unsuccessful appellant."); *In re N.J. Tax Sales Certificates Antitrust,* 2017 U.S. Dist. LEXIS 102608, at *12 (requiring bond recognizing that an appellants "assertions that she has no savings and her home is subject to foreclosure raises concerns that Davies will not be willing to pay the costs of the appeal should she lose"). Thus, McIlwain's self-professed "extremely limited" ability to post a bond supports the case for a bond to guard against McIlwain's risk of non-payment.[3]

---

[3] Courts also issue bonds to guard against the difficulty with out of state collection. *See generally In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, No. 2:11-md-2233, 2014 U.S. Dist. LEXIS 88693, at *16 (S.D. Ohio June 30, 2014) (recognizing that out-of-state residence outside the court's jurisdiction supports the conclusion that an appellant may not pay the appeal costs); *In re Initial Pub. Offering Sec. Litig.,* 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (finding risk of non-payment factor met where "plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs"). McIlwain did not respond to these cases from Settlement Class Plaintiffs' opening papers. *See generally* Resp.

Furthermore, while McIlwain contends that this second factor weighs against a bond because "it is *highly unlikely* that the taxable costs *would* exceed McIlwain's ability to pay," Resp. at 5-6 (emphases added), McIlwain so argues through sleight of hand. McIlwain attempts to weigh this factor in his favor by removing Settlement Class Plaintiffs' request to include administrative costs from the bond calculus. This attempt should be rejected and *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 U.S. Dist. LEXIS 162710, at *10-11 (E.D. Pa. Dec. 3, 2015), is instructive here. Like McIlwain, the appellant in *Glaberson* attempted a similar tactic in opposing a bond, arguing any exposure for costs were limited to Rule 39(e) costs and not administrative costs. *Id*. at *10–11. Rejecting the appellant's premise, the court imposed a bond:

> We find that including the costs of administering the class settlement in the appeal bond is appropriate under the present circumstances. Out of a class consisting of over 800,000 claimants, only three claimants decided to opt out of the settlement, and the Court received only three objections. Given our previous findings concerning the fairness of the settlement, taking into consideration the relative merits of the surviving Class claims, the substantial risk of obtaining and maintaining class recertification following the Supreme Court's decision vacating certification, and the overwhelming support the settlement received, we conclude that permitting one lone objector, asserting a cash claim valued at $15, to significantly delay receipt by the other Class members of their settlement benefits — while causing the Class to incur substantial additional costs without some guarantee that those costs, if taxed, will be recoverable — weighs heavily in favor of requiring a bond for the full amount sought by the Class

*Id*. at *11–12. The case for a bond here is even stronger. The Court meticulously analyzed the fairness of the settlement, the risks, and all relevant factors. *See In re NCAA Student-Athlete Concussion Injury Litig.,* MDL No. 2492, 2019 U.S. Dist. LEXIS 135682, at *1 (N.D. Ill. Aug. 12, 2019). Out of over four million class members, not one class member appealed. Despite the fact that the Court thrice rejected his fee motions (Dkt. 338, 363, 533) McIlwain appealed

- 9 -

nevertheless. And now, the Seventh Circuit has now summarily affirmed this Court's judgment. Ex. 1. The risk of non-payment clearly supports entry of a bond.

## C. CONCLUSION

Should Mr. McIlwain persist in an appeal, the Settlement Class Plaintiffs' bond motion will not be moot and request that the Court impose a $432,956 appeal bond (or any other such amount that the Court finds appropriate) and grant Settlement Class Plaintiffs all such other relief as the Court deems necessary and appropriate.

Dated: October 31, 2019

Respectfully submitted,

By: */s/ Steve W. Berman*
    Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel.: 206.623.7292
Fax: 206.623.0594
Email: steve@hbsslaw.com

Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Tel.: 708.628.4949
Fax: 708.628.4950
Email: dank@hbsslaw.com

Joseph J. Siprut
SIPRUT PC
17 N. State Street, Suite 1600
Chicago, IL 60602
Email: jsiprut@siprut.com

*Settlement Class Counsel*

- 11 -

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on October 31, 2019, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF electronic filing system, which caused notice to be sent to all counsel of record.

By: */s/ Steve W. Berman*
Steve W. Berman