```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
    IN RE:  NATIONAL COLLEGIATE      ) Docket No. 13 C 9116
 4  ATHLETIC ASSOCIATION STUDENT-    )
    ATHLETE CONCUSSION INJURY        )
 5  LITIGATION                       ) Chicago, Illinois
                                     ) February 5, 2020
 6                                   ) 9:05 o'clock a.m.

 7
                TRANSCRIPT OF PROCEEDINGS - STATUS
 8                BEFORE THE HONORABLE JOHN Z. LEE

 9
    APPEARANCES:
10

11  For the Plaintiffs:       HAGENS BERMAN SOBOL SHAPIRO, LLP
                              BY:  MR. DANIEL J. KUROWSKI
12                            455 North Cityfront Plaza Drive
                              Suite 2410
13                            Chicago, Illinois  60611

14
    For the NCAA:             LATHAM & WATKINS, LLP
15                            BY:  MR. ROBERT C. COLLINS, III
                              330 North Wabash Avenue, Suite 2800
16                            Chicago, Illinois  60611

17
    Court Reporter:           MR. JOSEPH RICKHOFF
18                            Official Court Reporter
                              219 S. Dearborn St., Suite 2128
19                            Chicago, Illinois  60604
                              (312) 435-5562
20

21             *  *  *  *  *  *  *  *  *  *  *  *  *  *

22                      PROCEEDINGS RECORDED BY
                          MECHANICAL STENOGRAPHY
23                    TRANSCRIPT PRODUCED BY COMPUTER

24

25
```

1           THE CLERK:  13 C 9116, NCAA Student-Athlete
2   Concussion Injury Litigation.
3           MR. KUROWSKI:  Good morning, your Honor, Daniel
4   Kurowski for the plaintiffs.
5           MR. COLLINS:  And good morning, your Honor, Robert
6   Collins on behalf of the NCAA.
7           THE COURT:  Good morning.
8           So, where do things stand at this point?
9           MR. KUROWSKI:  Sure, your Honor.
10          As you know, we're here on status on settlement
11  implementation.  And as you would expect, it is in the process
12  of being implemented.  We've been engaged in ongoing efforts
13  to implement the settlement.  Primarily, that work is being
14  borne by Epiq, formerly known as Garretson, who is the medical
15  monitoring program administrator.
16          And, so, we've had ongoing communications with them.
17  And it's our understanding that the various moving pieces and
18  work that they've been undertaking really since final approval
19  has been entered, but also some of that work had been ongoing
20  notwithstanding the entry of final approval.  And things like
21  we've been communicating with them and they've been
22  communicating with others; specifically, the Medical Science
23  Committee.
24          They've been -- the work related to issuance of the
25  attorneys' fees and costs and service awards as ordered by the

1  Court, that part has largely been completed.
2          They've continued their extensive recruitment efforts
3  of provider networks in the 34 target cities, and the number
4  that it looks like of medical providers that they've indicated
5  they're negotiating with at this point is 81 institutions.
6          They're continuing IT planning design and
7  coordination efforts.  And, so, one of the things that they're
8  going to do is class members will be able to register and take
9  the screening questionnaire.  Well, they need to have the IT
10 system in place to do that, and they're working on doing all
11 that sort of development work and effort.
12         And, then, in addition, we received updated fee and
13 cost information yesterday from Epiq.  We had -- so, we
14 anticipate there's going to be a second motion for release of
15 fees and costs from the medical monitoring fund.  However, we
16 just received that yesterday.  And, so, we haven't had
17 a fully chance to vet that, let alone send it up the flagpole
18 on our various respective sides, prior to submitting a motion
19 to the Court for release of those funds.
20         But in terms of sort of a high-level understanding of
21 where we understand those costs relate to as it relates to
22 implementation, the program planning, provider network and IT
23 development costs, we understand, are all in line with the
24 cost estimate expectations as last expressed to the Court and
25 adjusted for inflation, which is a allowed provision under the

1  contract with Epiq.
2          So, at this point, we understand that class mem- --
3  the medical monitoring program is set to launch as scheduled
4  on February 17th.  Class members at that point will be able to
5  register for the settlement.  And as part of the registration,
6  then there's going to be somewhat of a verification process
7  involved, as well, in order to make sure that those
8  registering for the settlement are class members entitled to
9  benefits under it.
10         THE COURT:  Will there be any public notification of
11 the rollout of the settlement, either through various Web
12 sites or newspapers?
13         MR. KUROWSKI:  I don't know about the second part,
14 but there is a whole separate settle- -- the case settlement
15 Web site is being updated in order to -- it's being converted
16 from the notice Web site to a medical monitoring Web site.
17 So, in that sense, yes.
18         THE COURT:  I would like Epiq and settlement counsel
19 to consider whether it would be helpful, once the system is
20 rolled out, to have some sort of -- public announcement of
21 some sort -- I know previously, with regard to notice, the
22 parties used, for example, various Web sites -- the NCAA Web
23 site, as well as other sports-related Web sites -- or maybe
24 even just a press release that the parties can issue -- just
25 to let everyone know that the rollout is happening.  Because

1   it has been some time since the preliminary approval of
2   settlement and, then, the notice going out to the class.  Then
3   we had the appeal, which now has finally been resolved.
4            So, I would think that at minimum some sort of press
5   release that's sent out to the various media outlets would be
6   necessary.  And as far as kind of what other media
7   announcement or advertisements would be appropriate, I leave
8   that up to the parties and the settlement administrator to
9   kind of noodle through it.
10           Obviously, I don't want anything to cost an
11  exorbitant amount or even a lot.  But if there's a reasonable
12  amount that can be allocated just through, again, either
13  through Web sites or some sort of less costly way of just
14  letting everyone know in the class that this is now -- they
15  can now go onto the Web site and start taking part in this
16  process, I think that would be very beneficial.
17           MR. KUROWSKI:  Certainly, your Honor.  We can
18  absolutely consider cost-effective methods for letting people
19  know that they're able to start the process.
20           THE COURT:  And, so, you're expecting the process,
21  then, to roll out by the end of the month?  Is that --
22           MR. KUROWSKI:  The -- well, it's -- the medical
23  monitoring program is supposed to launch February 17th.
24           THE COURT:  All right.
25           So, why don't you -- I'd like the settling class

1 counsel to file a short status report by February 21st just
2 letting me know that it has launched and letting me know kind
3 of what sort of public announcement -- avenues of public
4 announcement -- the parties contemplate and propose.  Okay?
5       And otherwise -- and if I need to see the parties in
6 before then, I'll call a status.  But otherwise, it sounds
7 like things are going well.  And I'll set a status for about
8 six months out.
9       MR. COLLINS:  Great.  Thank you, your Honor.
10       THE COURT:  So, perhaps the -- well, let's look at
11 early July, Carmen.
12       THE CLERK:  July 1st at 9:00 o'clock.
13       MR. KUROWSKI:  Your Honor, I'm actually scheduled to
14 be before you on another case on July 8th.  Would that be an
15 option?
16       THE COURT:  I think July 8th would be fine.
17       THE CLERK:  July 8th at 9:00 o'clock.
18       MR. COLLINS:  We will make that work, yes, your
19 Honor.
20       THE COURT:  Okay.  Thank you.
21       MR. KUROWSKI:  Thank you.
22       *   *   *   *   *

I certify that the foregoing is a correct transcript from the
23 record of proceedings in the above-entitled matter.

24
/s/ Joseph Rickhoff                  February 7, 2020
25 Official Court Reporter